Andy C. Warshaw, Esq. (State Bar No. 263880)
**FINANCIAL RELIEF LAW CENTER, APC**
1200 Main St., Suite C
Irvine, CA 92614
Direct Phone: 714-442-3319
Facsimile: 714-361-5380
Email: awarshaw@bwlawcenter.com

Attorneys for Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

IN RE

2ND CHANCE INVESTMENT GROUP, LLC,

Debtor and Debtor in Possession.

Case No. 8:22-bk-12142-SC

Chapter 11

**MOTION TO DISALLOW CLAIM 6 AS FILED BY WELLS FARGO BANK, N.A; DECLARATION OF ANDY C. WARSHAW IN SUPPORT THEREOF**

**Hearing Information**
Date:  May 31, 2023
Time:  1:30 pm
Place:  United States Bankruptcy Court
411 West Fourth Street, Suite 5130 /
Courtroom 5C (via zoom)
Santa Ana, CA 92701-4593

## OBJECTION

   THIS OBJECTION SEEKS TO HAVE THE CLAIM 6, AS FILED BY WELLS FARGO BANK, N.A., TO BE DISALLOWED IN ITS ENTIRETY (the "Disputed Claim").

Pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 from the Federal Rules of bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, 2nd Chance Investment Group, LLC (the "Debtor") respectfully submits this Motion to Disallow Claim 6 as filed by Wells Fargo Bank, N.A. (the "Objection")

and hereby moves this Court for the entry of an order disallowing Claim 6 (the "<u>Disputed</u> <u>Claim</u>") on the grounds described herein.

The Debtor requests that the Disputed Claim be disallowed in its entirety. Pursuant to Local Bankruptcy Rule 3007-1(c), true and correct copies of each of the Disputed Claim is attached to the Objection. The Objection is supported by these moving papers, Claim 6, the attached declaration of Andy C. Warshaw, the record in the bankruptcy case, the arguments, and representations of counsel, and any oral or documentary evidence submitted at or prior to the time of the hearing on this Objection.

WHEREFORE, the Debtor respectfully requests that the Court sustain the Objection and disallow the Disputed Claim, and to grant such other and further relief as may be necessary or appropriate.

Dated: April 5, 2023                    Respectfully Submitted,

                                        /s/ Andy C. Warshaw

                                        Andy C. Warshaw, Esq.
                                        Attorneys for Debtor in Possession
                                        1200 Main St., Suite C
                                        Irvine, CA 92614

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND

2nd Chance Investment Group, LLC is the debtor and debtor in possession ("Debtor" or "2nd Chance") in the above-captioned Chapter 11 bankruptcy case ("Case").  On December 21, 2022 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code" or "Code"). No trustee has been appointed in the bankruptcy case.  The Official Committee of Unsecured Creditors is represented by Goe, Forsythe & Hodges LLP.

The Court entered an order that set the bar date for filing proofs of claim on January 23, 2023, as ECF No. 28.  The general bar date is April 10, 2023, with exceptions as set forth in mandatory court form F 3003-1.Notice.BarDate.  The Debtor filed and served the Notice of Bar date for Filing Proofs of Claim in a Chapter 11 on January 24, 2023, as ECF No. 30. The Debtor is now examining claims as they come in, and with the assistance of counsel and determined that claim 6, as filed by Wells Fargo Bank, N.A., should be disallowed.

### II.    JURISDICTION AND NOTICE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(A),(B) & (O).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein is 11 U.S.C. § 502(b) and Federal Rules of Bankruptcy Procedure 3001.Notice of this Objection is being served on the holder of the Disputed Claim as required by Local Bankruptcy Rule 3007(b)(3), and all parties requiring notice in this case.

### III.OBJECTION

Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a party in interest objects.  Absent an objection, a proof of claim constitutes *prima facie* evidence of the

validity and amount of the claim under Federal Rule of Bankruptcy Procedure ("FRBP") 3001(f).

Lundell v. Anchor Constr. Specialists, Inc., 223 F. 3d 1035, 1039 (9th Cir. 2000).  When a party

files an objection to a proof of claim, that filing "creates a dispute which is a contested matter"

within the meaning of FRBP 9014 and the court must resolve the matter after notice and

opportunity for hearing upon a motion for relief.  Id.

When a creditor has filed a proof of claim that complies with the rules (thereby giving

rise to the presumption of validity), the burden shifts to the objecting party who must "present

evidence to overcome the *prima facie case*."  United States v. Offord Fin., Inc., (In re Medina),

205 B.R. 216 222 (9th Cir.Bap 1996). To defeat the claim, the objecting party must provide

sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of

the allegations of the proofs of claim themselves." Lundell, 223 F. 3d at 1039 (quoting In re

Holm, 931 F.2d 620, 623 (9th Cir. 1991)). "The objector must produce evidence, which, if

believed, would refute at least one of the allegations that is essential to the claim's legal

sufficiency." Lundell, 223 F.3d at 1040 (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-

74 (3d Cir. 1992).  An objection to claim may be based on nonbankruptcy law.  [11 USC §502

(b)(2)-(8), (d).  An objection to claim may be made on any ground for which the claim could be

contested in the absence of bankruptcy, and may be factual or legal in nature.  (In re G.I. Indus.,

Inc. (9th Cir. 1999) 165 F3d 1243, 1247.

If the objecting party produces sufficient evidence to negate one or more of the sworn

facts in the proof of claim, the burden reverts back to the claimant to prove the validity of the

claim by a preponderance of the evidence.  Ashford v. Consol. Pioneer Mort.  (In re Consol.

Pioneer Mort.), 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996)

(quoting Allegheny Int'l, 954 F2d at 173-74).  The ultimate burden of persuasion remains at all

1  times on the claimant <u>Lundell</u>, 223, F3d at 1039; <u>Holm</u>, 931 F.2d at 623.  After the presumption

2  is rebutted, the creditor bears the burden of proof as to the validity and amount of its claim. <u>In re</u>

3  <u>Southern California Plastics, Inc</u>. , 165 F.3d 1243 1248 (9th Cir. 1999); <u>In re Palmdale Hills</u>

4  <u>Property, LLC</u> , 423 B.R. 655, 665 (9th Cir. BAP 2009), *aff'd* 654 F.3d 868 (9th Cir. 2011).

5      Federal Rule of Bankruptcy Procedure 3001 provides that proofs of claim must conform

6  to the applicable proof of claim form. The claim must include a reasonable amount of supporting

7  documentation, including, where appropriate, an explanation of the claim together with contracts,

8  invoices, statements of accounts, or other documentary supporting the claim. If sufficient

9  documentation is not attached, the court might disallow the claim outright.  <u>Virginia Broadband,</u>

10 <u>LLC v. Manuel</u>, 538 B.R. 253 (W.D. Va. 2015)).

11     The Disputed Claim here should be disallowed because: (1) The Debtor does not owe

12 money to Wells Fargo Bank, N.A. ("<u>Creditor</u>") as a secured creditor against real property located

13 at 3232-3234 Folsom St., San Francisco, CA 94110 (the "<u>Property</u>"); and (2) The Property

14 should not be or is not part of the bankruptcy estate (the "<u>Estate</u>").

15 **(1) The Debtor does not owe money to Wells Fargo Bank, N.A. as a secured creditor against Estate Property**

16     Creditor asserts a claim of $594,915.37 against the Estate as a fully secured claim,

17 including an arrearage portion of $76,807.28. The Disputed Claim, although filed in this

18 bankruptcy case, refers to individuals named Richard A. Frenzel, Sr. and Sharon A. Drummond,

19 husband and wife, as the obligees on the promissory note for real property that is not listed on

20 Schedules A/B of the Debtor.  *See* ECF No. and 64. Neither is the alleged debt of the Debtor to

21 Creditor listed on Debtor's Schedules D/EF or the deed of trust accompanying Claim 6.  *See*

22 ECF Nos. 23 and 72 for the Debtor's schedules, as amended.

23

Because the promissory note and the deed of trust are between Richard A. Frenzel, Sr. and Sharon A. Drummond, husband and wife and Wachovia Mortgage, FSB, its Successors and/or Assignees, the Debtor is not liable on the obligation and there is no privity of contract between the Debtor and Creditor. The Debtor cannot treat this claim in a plan because there is no amount owed by the Debtor to Creditor and the Property is not property of the Estate.

## (2) The Property is not part of the bankruptcy estate (the "Estate") and therefore is not secured by property of the Estate

The alleged security interest in the deed of trust is for real property located at 3232-3234 Folsom Street, San Francisco, CA 94110.  The Debtor's principal, under penalty of perjury, indicated that the Debtor has no knowledge or interest in the Property in a relief from stay declaration. *See* the Declaration of Rayshon Foster Supporting Response to Motion Regarding the Automatic Stay and Declaration(s) in Support filed on March 7, 2023, as ECF No. 65 (the "Declaration").

Although 11 U.S.C. § 541 broadly defines property of the bankruptcy estate, the Property was not validly transferred to the Debtor because of a defective grant deed.

> A deed is a written instrument conveying or transferring the title to real property; it is an executed conveyance and operates as a present transfer of the real property. (3 Miller Starr, Cal. Real Estate (3d ed. 2000) Deeds, § 8.1, p. 5 (Miller Starr).) As a deed is "an executed contract, it is subject to the rules applicable to contracts." ( *Ibid*.; see also Civ. Code, § 1040; *Johnston v. City of Los Angeles* (1917) 176 Cal. 479, 485-486 [deeds must be read like any other contracts].)

*Estate of Stephens*, 28 Cal.4th 665, 671-72 (Cal. 2002)

The Debtor is not privy to any contract and did not accept any property as part of a transaction with Richard A. Frenzel, Sr. and/or Sharon A. Drummond. Acceptance of any transfer is required for there to be a valid transfer.

> In contrast to an agreement in which both parties agree to terms, a transfer or conveyance of real property requires merely that the party who is the intended

recipient of the conveyance *accept* the title that the grantor is attempting to convey, often by way of symbolic acceptance of the transferring document. Indeed, "the essential requirements to convey real property [pursuant to a deed] under California law [are] as follows: '... To be effective, an instrument conveying real property must be written and must name a grantor and a grantee. It must be subscribed by the grantor or the grantor's agent, and it must be delivered to *and accepted by* , the grantee. These are the minimum requirements for a valid deed, and if they are all present, the deed is effective to transfer title to the grantee, but if one of the essential elements is missing, the deed is ineffective to transfer title.

*Wozniak v. Wozniak (In re Marriage of Wozniak)*, 59 Cal.App.5th 120, 133-34 (Cal. Ct. App. 2020)

The grant deed attached to Creditor's relief from stay motion does not include the Debtor's signature, authorization, or knowledge. It wrongly lists the Property as being in the County of Los Angeles rather than its actual location in San Francisco. The defective grant deed also lists Sharon Drummond as an unmarried man even though the supporting documents show that title is held by Richard A. Frenzel Sr. and Sharon A. Drummond as husband as wife.   *See* Exhibit C of Creditor's relief from stay motion filed on February 28, 2023, as ECF No. 58-1.

## IV. CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Court sustain this Objection and disallow the Disputed Claim in its entirety and for any other relief that the Court deems appropriate.

Dated: April 5, 2023          Respectfully Submitted,

/s/ Andy C. Warshaw

Andy C. Warshaw, Esq.
Attorneys for Debtor in Possession
1200 Main St., Suite C
Irvine, CA 92614

## DECLARATION OF ANDY C. WARSHAW

I, Andy C. Warshaw, declare and state as follows:

1. I am over eighteen years of age.  Except as otherwise indicated, if called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge.

2. I am an attorney duly admitted to practice in the State of California and before this Court.

3. I am an attorney representing the Debtor in Possession in this bankruptcy case as an attorney with Financial Relief Law Center, APC.

4. I submit this declaration in support of the **MOTION TO DISALLOW CLAIM 6 AS FILED BY WELLS FARGO BANK, N.A.** and to comply with Local Bankruptcy Rule 3007-1.

5. Attached hereto as <u>Exhibit 1</u> is a true and correct copy of Claim 6 filed in the Debtor's bankruptcy case by Wells Fargo Bank, N.A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of April 2023 at Irvine, CA

/s/ Andy C. Warshaw<br>
Andy C. Warshaw

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Attached hereto as **<u>Exhibit 1</u>** is a true and correct copy of Claim 6 filed in the Debtor's

bankruptcy case by Wells Fargo Bank, N.A.

**Fill in this information to identify the case:**

Debtor 1  2nd Chance Investment Group, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Central District of California

Case number 8:22-bk-12142-SC

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Official Form 410
# Proof of Claim

04/22

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Wells Fargo Bank, N.A.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

[X] No
[ ] Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Wells Fargo Bank, N.A.
Default Document Processing
MAC# N9286-01Y

Name
P.O. Box 1629

Number       Street
Minneapolis MN 55440-9790

City                          State          ZIP Code
Contact phone    800-274-7025

Contact email    POCNOTIFICATIONS@WELLSFARGO.COM

**Where should payments to the creditor be sent?** (if different)

Wells Fargo Bank, N.A.
Attention: Payment Processing
MAC# F2302-04C

Name
1 Home Campus

Number       Street
Des Moines IA 50328

City                          State          ZIP Code
Contact phone    800-274-7025

Contact email    POCNOTIFICATIONS@WELLSFARGO.COM

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

W F C M G E 2 2 1 2 1 4 2 C A C 6 9 8 0 1 3 2 8

**4. Does this claim amend one already filed?**  ☒ No  ☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____ MM/DD/YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**  ☒ No  ☐ Yes. Who made the earlier filing? _____

---

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**  ☐ No  ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 1328

**7. How much is the claim?**  $ 594,915.37    **Does this amount include interest or other charges?**
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

**9. Is all or part of the claim secured?**  ☐ No  ☒ Yes. The claim is secured by a lien on property.

**Nature of property:**
☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe:    3232 FOLSOM STREET  SAN FRANCISCO CA 94110

**Basis for perfection:**    Recorded Mortgage/Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ _____
**Amount of the claim that is secured:**    $ 594,915.37
**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 76,807.28

**Annual Interest Rate** (when case was filed)  3.9 _____ %
☐ Fixed
☒ Variable
☐ Fixed with Steps due to loan modification

**10. Is this claim based on a lease?**  ☒ No  ☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**  ☒ No  ☐ Yes. Identify the property: _____

---

Official Form 410    **Proof of Claim**    page 2

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | | |
|---|---|---|---|

<table>
<tr><td>12.</td><td><b>Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?</b><br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.</td><td colspan="2">☒ No<br>☐ Yes. <i>Check all that apply:</i><br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).<br><br>☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.<br><br>* Amounts are subject to adjustment on 04/01/2025 and every 3 years after that for cases begun on or after the date of adjustment.</td></tr>
</table>

**Amount entitled to priority**

$ _____

$ _____

$ _____

$ _____

$ _____

$ _____

---

| **Part 3:** | **Sign Below** |
|---|---|

| The person completing this proof of claim must sign and date it. **FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571. | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☒ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  02/23/2023<br>MM / DD / YYYY |

/s/ Jennifer C. Wong
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Jennifer C. Wong, Esq.
            _____
            First name          Middle name          Last name

Title       Attorney for Creditor

Company     McCarthy & Holthus, LLP
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     2763 Camino Del Rio South, Suite 100
            Number          Street

            San Diego, CA 92108
            City                    State          ZIP Code

Contact phone  877-369-6122

Email
            bknotice@mccarthyholthus.com

---

## Mortgage Proof of Claim Attachment

**(12/15)**

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 8:22-bk-12142-SC | Principal balance: | 558,658.82 | Principal & interest due: | 54,036.72 | Principal & interest: | 3,584.48 |
| Debtor 1: | 2nd Chance Investment Group, LLC | Interest due: | 21,604.98 | Prepetition fees due: | 3,619.41 | Monthly escrow: | 963.94 |
| Debtor 2: | | Fees, costs due: | 3,619.41 | Escrow deficiency for funds advanced: | 11,032.16 | Private mortgage insurance: | 0.00 |
| Last 4 digits to identify: | 1328 | Escrow deficiency for funds advanced: | 11,032.16 | Projected escrow shortage: | 8,118.99 | Optional Products: | 0.00 |
| Creditor: | Wells Fargo Bank, N.A. | Other: | 0.00 | Other: | 0.00 | | |
| Servicer: | N/A | Less total funds on hand: −  0.00 | | Less funds on hand: −  0.00 | | Total monthly payment: | 4,548.42 |
| Fixed accrual/daily simple interest/other: | Fixed Accrual | Total debt: | 594,915.37 | Total prepetition arrearage: | 76,807.28 | *Additional changes to the monthly payment amount may be required because interest rate adjustments or escrow requirement changes. | |
| | | *Not to be used for payoff purposes | | | | | |

## Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 10/15/2021 | | | | Beginning Balances | 10/15/2021 | 0.00 | | | | | | 558,658.82 | 0.00 | 9,440.34 | 0.00 | 0.00 |
| 10/15/2021 | 5,001.61 | | | Monthly payment | 10/15/2021 | 5,001.61 | | | | | | 558,658.82 | 0.00 | 9,440.34 | 0.00 | 0.00 |
| 11/01/2021 | | | 181.47 | Late Charge | 10/15/2021 | 5,001.61 | | | | 181.47 | | 558,658.82 | 0.00 | 9,440.34 | 181.47 | 0.00 |
| 11/15/2021 | 5,001.61 | | | Monthly payment | 10/15/2021 | 10,003.22 | | | | | | 558,658.82 | 0.00 | 9,440.34 | 181.47 | 0.00 |
| 11/24/2021 | | | 7,374.08 | County tax disbursement | 10/15/2021 | 10,003.22 | 0.00 | 0.00 | -7,374.08 | | 0.00 | 558,658.82 | 0.00 | 2,066.26 | 181.47 | 0.00 |
| 11/30/2021 | | | 181.47 | Late Charge | 10/15/2021 | 10,003.22 | | | | 181.47 | | 558,658.82 | 0.00 | 2,066.26 | 362.94 | 0.00 |
| 12/15/2021 | 5,001.61 | | | Monthly payment | 10/15/2021 | 15,004.83 | | | | | | 558,658.82 | 0.00 | 2,066.26 | 362.94 | 0.00 |
| 12/30/2021 | | | 181.47 | Late Charge | 10/15/2021 | 15,004.83 | | | | 181.47 | | 558,658.82 | 0.00 | 2,066.26 | 544.41 | 0.00 |
| 12/31/2021 | | 59.32 | | Interest on Escrow deposit | 10/15/2021 | 15,004.83 | 0.00 | 0.00 | 59.32 | | 0.00 | 558,658.82 | 0.00 | 2,125.58 | 544.41 | 0.00 |
| 01/15/2022 | 5,001.61 | | | Monthly payment | 10/15/2021 | 20,006.44 | | | | | | 558,658.82 | 0.00 | 2,125.58 | 544.41 | 0.00 |
| 02/15/2022 | 5,001.61 | | | Monthly payment | 10/15/2021 | 25,008.05 | | | | | | 558,658.82 | 0.00 | 2,125.58 | 544.41 | 0.00 |
| 03/15/2022 | 4,858.41 | | | Monthly payment | 10/15/2021 | 29,866.46 | | | | | | 558,658.82 | 0.00 | 2,125.58 | 544.41 | 0.00 |
| 03/18/2022 | | | 7,374.08 | County tax disbursement | 10/15/2021 | 29,866.46 | 0.00 | 0.00 | -7,374.08 | | 0.00 | 558,658.82 | 0.00 | -5,248.50 | 544.41 | 0.00 |

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

| Case number: | 8:22-bk-12142-SC |
|---|---|
| Debtor 1: | 2nd Chance Investment Group, LLC |

### Part 5 : Loan Payment History from First Date of Default

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual payment due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 04/15/2022 | 4,813.49 | | | Monthly payment | 10/15/2021 | 34,679.95 | | | | | | 558,658.82 | 0.00 | -5,248.50 | 544.41 | 0.00 |
| 05/15/2022 | 4,813.49 | | | Monthly payment | 10/15/2021 | 39,493.44 | | | | | | 558,658.82 | 0.00 | -5,248.50 | 544.41 | 0.00 |
| 05/26/2022 | | | 540.00 | Attorney's fees | 10/15/2021 | 39,493.44 | | | | 540.00 | | 558,658.82 | 0.00 | -5,248.50 | 1,084.41 | 0.00 |
| 06/01/2022 | | | 845.00 | Tsg | 10/15/2021 | 39,493.44 | | | | 845.00 | | 558,658.82 | 0.00 | -5,248.50 | 1,929.41 | 0.00 |
| 06/02/2022 | | | 98.00 | Recording fees | 10/15/2021 | 39,493.44 | | | | 98.00 | | 558,658.82 | 0.00 | -5,248.50 | 2,027.41 | 0.00 |
| 06/06/2022 | | | 990.00 | Attorney's fees | 10/15/2021 | 39,493.44 | | | | 990.00 | | 558,658.82 | 0.00 | -5,248.50 | 3,017.41 | 0.00 |
| 06/06/2022 | | | 104.00 | Recording fees | 10/15/2021 | 39,493.44 | | | | 104.00 | | 558,658.82 | 0.00 | -5,248.50 | 3,121.41 | 0.00 |
| 06/15/2022 | 4,813.49 | | | Monthly payment | 10/15/2021 | 44,306.93 | | | | | | 558,658.82 | 0.00 | -5,248.50 | 3,121.41 | 0.00 |
| 07/15/2022 | 4,813.49 | | | Monthly payment | 10/15/2021 | 49,120.42 | | | | | | 558,658.82 | 0.00 | -5,248.50 | 3,121.41 | 0.00 |
| 08/15/2022 | 4,813.49 | | | Monthly payment | 10/15/2021 | 53,933.91 | | | | | | 558,658.82 | 0.00 | -5,248.50 | 3,121.41 | 0.00 |
| 09/15/2022 | 4,813.49 | | | Monthly payment | 10/15/2021 | 58,747.40 | | | | | | 558,658.82 | 0.00 | -5,248.50 | 3,121.41 | 0.00 |
| 09/15/2022 | | | 50.00 | Title costs | 10/15/2021 | 58,747.40 | | | | 50.00 | | 558,658.82 | 0.00 | -5,248.50 | 3,171.41 | 0.00 |
| 09/20/2022 | | | 98.00 | Recording fees | 10/15/2021 | 58,747.40 | | | | 98.00 | | 558,658.82 | 0.00 | -5,248.50 | 3,269.41 | 0.00 |
| 09/23/2022 | | | 125.00 | Advertisement costs | 10/15/2021 | 58,747.40 | | | | 125.00 | | 558,658.82 | 0.00 | -5,248.50 | 3,394.41 | 0.00 |
| 09/23/2022 | | | 225.00 | Advertisement costs | 10/15/2021 | 58,747.40 | | | | 225.00 | | 558,658.82 | 0.00 | -5,248.50 | 3,619.41 | 0.00 |
| 10/15/2022 | 4,813.49 | | | Monthly payment | 10/15/2021 | 63,560.89 | | | | | | 558,658.82 | 0.00 | -5,248.50 | 3,619.41 | 0.00 |
| 11/15/2022 | 4,813.49 | | | Monthly payment | 10/15/2021 | 68,374.38 | | | | | | 558,658.82 | 0.00 | -5,248.50 | 3,619.41 | 0.00 |
| 11/22/2022 | | | 5,783.66 | County tax disbursement | 10/15/2021 | 68,374.38 | 0.00 | 0.00 | -5,783.66 | | 0.00 | 558,658.82 | 0.00 | -11,032.16 | 3,619.41 | 0.00 |
| 12/15/2022 | 4,813.49 | | | Monthly payment | 10/15/2021 | 73,187.87 | | | | | | 558,658.82 | 0.00 | -11,032.16 | 3,619.41 | 0.00 |
| 12/21/2022 | | | | Bankruptcy Filed | 10/15/2021 | 73,187.87 | | | | | | 558,658.82 | 0.00 | -11,032.16 | 3,619.41 | 0.00 |

**Addendum Page**

Basis for asserting that the applicable party has the right to foreclose: A non-filing, third party executed a promissory note secured by a mortgage, deed of trust or security deed. The Promissory note is either made payable to creditor or has been duly endorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage, deed of trust or security deed.

## Additional Disclaimers (where applicable)

The debtor(s) is not an obligor on the note or debt instrument that supports this claim. The debtor(s) asserts an interest in property that is subject to Wells Fargo's mortgage or deed of trust. This claim is being filed in rem to facilitate disbursements under the plan.

## 410

> **Part 2:** Question 9-<u>Describe</u> contains the property address and may contain a description for "Other".

## 410A

> ### Part 1:
>
> Full creditor name cannot be displayed due to space limitation, see 410 part 1.1 for full name.
>
> ### Part 2:
>
> <u>Principal Balance</u> is from Part 5, Column M as of the Bankruptcy File Date.
>
> <u>Interest Due</u> is the interest due as of the Bankruptcy File Date.
>
> <u>Fees, costs due</u> is from Part 5, Column P as of the Bankruptcy File Date and includes any outstanding fees (i.e. late charges, property inspections) and cost (i.e. attorney costs), also included are corporate advances (i.e. tax, insurance) for non-escrowed loans as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.
>
> <u>Escrow deficiency for funds advanced</u> is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.
>
> <u>Other</u> includes any applicable Private Mortgage Insurance, other Optional Products (i.e. A & H, Life) or Deferred Interest, where applicable, due as of the Bankruptcy File Date. This line was added to ensure transparency.
>
> <u>Less Total Funds on hand</u> is the total of Part 5, Column O (if positive balance) and Q as of the Bankruptcy File Date.
>
> <u>Total Debt</u> not to be used for payoff purposes.
>
> ### Part 3:
>
> <u>Principal and Interest</u> is the principal and interest portion of Part 5, Column G, as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition principal and interest amounts).
>
> <u>Pre-Petition Fees Due</u> is from Part 5, Column P as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.
>
> <u>Escrow Deficiency for Funds Advanced</u> is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.
>
> <u>Projected Escrow Shortage</u> is the Escrow Required from the escrow analysis minus a positive escrow balance as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition escrow amounts).
>
> <u>Other</u> includes any applicable Optional Products (i.e. A & H, Life) due as of the bankruptcy file date. This line was added to ensure transparency. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition Optional Product amounts).
>
> <u>Less Funds on Hand</u> is from Part 5, column Q as of the Bankruptcy File Date.
>
> ### Part 4:
>
> <u>Optional Products</u> includes any applicable optional products (i.e. A & H, Life) due as of the Bankruptcy File Date. This line was added to ensure transparency.
>
> (*)This disclaimer has been added to the form to explain that the monthly payment amount may change periodically throughout the life of the loan.
>
> ### Part 5:
>
> If any of the transactions in the loan payment history contain amounts for optional products, the amount for that product will be reflected in either the Contractual payment amount or the Funds Received amount, and will be applied in those amounts. It will also be reflected in column G as described below.
>
> <u>Column G</u> In addition to the items listed, this also includes any past due PMI or optional products (i.e. A & H, Life) amounts, as applicable. Optional product (i.e. A & H, Life) amounts will not be included in columns H-Q due to no appropriate column heading for this type of transaction.
>
> <u>Column J</u> includes taxes, insurance and MIP/PMI as applicable.
>
> <u>Column N</u> will only be populated if the loan is Daily Simple Interest or if Deferred Interest exists on the account.
>
> <u>Column O</u> includes taxes, insurance and MIP/PMI as applicable.

M&H File No. CA-23-172761

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2763 Camino Del Rio S., Suite 100
San Diego, CA 92108

A true and correct copy of the foregoing document entitled (*specify*): **PROOF OF CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 2/23/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**US TRUSTEE COUNSEL**
Queenie K Ng
queenie.k.ng@usdoj.gov

**DEBTOR(S) COUNSEL**
Amanda G Billyard
abillyard@bwlawcenter.com

Andy C Warshaw
awarshaw@bwlawcenter.com

Richard L. Sturdevant
rich@bwlawcenter.com

**US TRUSTEE**
ustpregion16.sa.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 2/23/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR(S)**
2nd Chance Investment Group, LLC, 600 W. Santa Ana Blvd., PMB 5045, Santa Ana, CA 92701

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/23/2023 | wai tang | /s/ wai tang |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**RECORDING REQUESTED BY:**
WACHOVIA MORTGAGE, FSB

**WHEN RECORDED MAIL TO:**
WACHOVIA MORTGAGE, FSB
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: ████

NOTE AMOUNT: $748,000.00

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2008-I537415-00
Acct 1-CHICAGO Title Company
Wednesday, FEB 20, 2008 08:00:00
Ttl Pd $57.00      Rcpt # 0003405151
REEL J581 IMAGE 0074
oJ1/JL/1-17

**FOR RECORDER'S USE ONLY**

## DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $935,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.    **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
      **(A)  Security Instrument.** This Deed of Trust, which is dated **February 14, 2008**, will be called the "Security Instrument."

      **(B)  Borrower.** RICHARD A FRENZEL, SR AND SHARON A DRUMMOND, HUSBAND AND WIFE sometimes will be called "Borrower" and sometimes simply "I" or "me."

      **(C)  Lender.** WACHOVIA MORTGAGE, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 4101 Wiseman Blvd., San Antonio, TX 78251 .

**LENDER'S USE ONLY**

SD001A (2004-03-3)
DEFERRED INTEREST                    Page 1                    CA

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$748,000.00,** plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **March 15, 2038** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)    The Property which is located at **3232-3234 FOLSOM STREET, San Francisco, CA 94110.** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-3)
DEFERRED INTEREST                          Page 2                                    CA

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.    PAYMENTS FOR TAXES AND INSURANCE

### (A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)                                                          CA

**(B)   Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

Page 4                                                      CA

3. **APPLICATION OF BORROWER'S PAYMENTS**
Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4. **BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien**. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-3)                                                                    CA

Page 5

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)                                                                 CA



**7.  LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.  LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.  AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-3)                                    Page 7                                    CA

**10.     CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)     Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)     Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.     OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.     MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-3)

CA

**13. LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **254A PRECITA AVE, SAN FRANCISCO, CA 94110-4623.** A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15. GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16. BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD001i (2004-03-3)

**Page 9**

CA

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if i assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.     CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.     LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.     WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.     CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.     MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)

Page 10                                                                    CA

**(B)** The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master or blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.   FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)

**CA**

## 26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 27.    SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)                                                                CA

Page 12

### 28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

### 29.   RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

### 30.   STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-3)                                                                                          CA

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    (  )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-3)                                                                                      CA

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S):

_____    (Seal)
RICHARD A FRENZEL, SR

_____    (Seal)
Sharon A Drummond

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD001 (2004-03-1)    [AF1 (2004-03-1)]        Page 15           CA
                [B01 (2004-03-1)]

State of _Califonia_ )
County of _San Francisco_ )

On _2/15/2008_ before me,
_Leslie Hom_ , Notary Public (here insert name and title of the officer),
personally appeared _Richard A. Frenzel, Sr._ & _Sharon A. Drummond_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify UNDER PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LESLIE HOM
Commission # 1692623
Notary Public - California
San Francisco County
My Comm. Expires Oct 6, 2010

(notary)(12-07)

Escrow No.:
Locate No.:
Title No.:

# EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO , COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Beginning at a point on the Westerly line of Folsom Street, distant thereon 450 feet Northerly from the Northerly line of Stoneman Street; running thence Northerly along said Westerly line of Folsom Street 25 feet; thence at a right angle Westerly 80 feet; thence at a right angle Southerly 25 feet; and thence at a right angle, Easterly 80 feet to the point of beginning.

Being a portion of Lot No. 119 of Precita Valley Lands, as per Map thereof filed September 27, 1859, in Liber 2 "A" and "B" of Maps, at Pages 108 and 109, in the Office of the Recorder of the City and County of San Francisco, State of California.

APN: Lot 005, Block 5523



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:   Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
      bank and application to merge the converted bank with and into Wells Fargo Bank,
      National Association, Sioux Falls, South Dakota
      Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert

**WACHOVIA MORTGAGE, FSB**

# ADJUSTABLE RATE MORTGAGE NOTE

## 3 YEAR FIXED RATE PICK-A-PAYMENT <sup>sm</sup> LOAN

### WACHOVIA AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER: ▮▮▮▮▮▮▮                    DATE: **February 14, 2008**

BORROWER(S): **RICHARD A FRENZEL, SR AND SHARON A DRUMMOND, HUSBAND AND WIFE**
sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: **3232-3234 FOLSOM STREET, San Francisco, CA 94110**

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$748,000.00** , called "Principal," plus interest, and any other charges incurred during the course of the loan, to the order of the Lender. The Lender is **WACHOVIA MORTGAGE, FSB, a FEDERAL SAVINGS BANK**, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

**2. INTEREST RATE MODIFICATION PERIOD**

This Note contains a "Modification Period." The Modification Period begins at the same time the obligations evidenced by this Note begin and it continues until **March 15, 2011**.

During this Modification Period, I will pay interest at the fixed yearly rate of **6.700%**. After the Modification Period, I will pay interest as described in Section 3 of this Note.

**3. INTEREST**

**(A)  Interest Rate**

Interest will be charged on unpaid Principal until the full amount of the Principal has been paid. I will pay interest at the yearly rate of the Margin stated in Section 3(E) below plus the then current Index. The interest rate I will pay may change as described in this Section 3. Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 3 is the rate I will pay both before and after any default described in Section 8(B) of this Note.



LENDER'S USE ONLY

**(B)   Interest Change Dates**

The interest rate I will pay may change on the **15th** day of **March, 2011** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

**(C)   Interest Rate Limit**

My lifetime maximum interest rate limit is **12.250%**, called "Lifetime Rate Cap."

**(D)   Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The Index is the "Cost of Savings Index" as published by Wachovia Corporation. The Cost of Savings Index is the weighted average of the interest rates in effect as of the last business day of each calendar month on the U.S. dollar denominated personal time deposits (as defined by the Board of Governors of the Federal Reserve System for purposes of reporting deposits on FR 2900 by commercial banks) held by the U.S. branches and non-U.S. branches located on U.S. military facilities of the depository institution subsidiaries of Wachovia Corporation that hold federally insured deposits.

For this purpose, a business day is any calendar day other than Saturday, Sunday, or any legal holiday for national banks.

The Index will be published monthly by Wachovia Corporation, on or before the fifteenth day of each month, and made readily available. The most recent Index figure available on each Interest Change Date is called the "Current Index".

If an Index is substituted pursuant to Section 3(F) of this Note, the alternate index will become the Index.

**(E)   Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **2.850** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 3(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)   Alternate Index**

The Lender may choose an alternate index if the Index is no longer available.  For purposes of this Section 3(F), the Cost of Savings Index or an alternate index is no longer available if:

(1)   The Lender, in its sole discretion, determines that (a) the Board of Governors of the Federal Reserve System has made a material change in the definition of personal time deposits or time deposits for purposes of reporting deposits on FR 2900 or a comparable successor report; or (b) the Index is otherwise calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or

(2)   Applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note.

The selection of an alternate index shall be at Lender's sole discretion. The alternate index may be a national or regional index or another type of index accepted or approved by the Lender's primary regulator. The Lender will give me notice of the alternate index.

# 4.   PAYMENTS

**(A)   Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **April 15, 2008**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **March 15, 2038**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 659568, San Antonio, TX 78265** or at a different place if required by notice from the Lender.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **3,400.75**. This amount will change as described in Sections 4(C) and 4(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)   Payment Change Dates**

My monthly payment will change as required by Section 4(D) below beginning on the **15th** day of **April, 2009** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 4(F) or 4(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 4(F) or 4(G) below.

**(D) Calculation of Payment Changes**

Subject to Sections 4(F) and 4(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 4(E) below, together with interest at the interest rate in effect on the day of calculation by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**(E) Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 4(C) and 4(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G) Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 4(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H) Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**5. FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**6. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so. The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing. I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal. During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**7. MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**8. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **6.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**9.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **254A PRECITA AVE, SAN FRANCISCO, CA 94110-4623**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at Wachovia Mortgage, FSB, P.O. Box 659558, San Antonio, TX 78265 or at a different address if I am given a notice of that different address.

**10.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**11.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor, notice of acceleration, and protest. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**12.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26:**

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>**Acceleration of Payment of Sums Secured.**</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

SD260D (2007-04-4)      [D01 (2007-04-4)]      ADJUSTABLE PICK-A-PAYMENT NOTE - 3 YEAR FIXED                                        CA

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

        (i)     Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

        (ii)     Lender approves the creditworthiness of the transferee in writing;

        (iii)     transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

        (iv)     an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and Interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

        (v)     the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**13. GOVERNING LAW; SEVERABILITY**

    This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

**14. CLERICAL ERRORS**

    In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**15. LOST, STOLEN OR MUTILATED DOCUMENTS**

    If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS**

**SIGNATURE PAGE**

**NOTICE TO BORROWER(S):**

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED**

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**


_____  (Seal)
**RICHARD A FRENZEL, SR**

_____  (Seal)
**Sharon A Drummond**

WITHOUT RECOURSE
PAY TO THE ORDER OF 8-20-18
AL

Wells Fargo Bank, N.A., successor by merger with
Wells Fargo Bank Southwest, N.A.,
F/K/A Wachovia Mortgage, FSB

CANCELLED

WITHOUT RECOURSE
PAY TO THE ORDER OF 8-20-18
AL

Wells Fargo Bank, N.A., successor by merger with
Wells Fargo Bank Southwest, N.A.,
F/K/A Wachovia Mortgage, FSB

CANCELLED

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A., successor by merger with
Wells Fargo Bank Southwest, N.A.,
F/K/A Wachovia Mortgage, FSB

Angie Longoria

**Angie Longoria**
Vice President Loan Documentation

**WELLS FARGO HOME MORTGAGE**

Wells Fargo Home Mortgage
One Home Campus
Des Moines, IA 50328-0001

Loan number: ▓▓▓▓▓▓

| Transaction Description | Date Applied | Escrow Disbursement(s): | Escrow Receipt(s): | Escrow Account Balance |
|---|---|---|---|---|
| Account History Range | 12/21/21 - 12/21/22 | | | |
| Starting Balance | 11/30/2021 | | | $2,066.26 |
| Interest on Escrow | Dec 2021 | | $59.32 | $2,125.58 |
| County Tax | Mar 2022 | ($7,374.08) | | ($5,248.50) |
| County Tax | Nov 2022 | ($5,783.66) | | ($11,032.16) |
| Ending Totals/Balances | | ($13,157.74) | $68.29 | ($11,032.16) |
| Bankruptcy filed | 12/21/2022 | | | |



**WELLS FARGO HOME MORTGAGE**

**Return Mail Operation**
PO Box 14547
Des Moines, IA 50306-4547

Escrow Review Statement
*For informational purposes only*

**Statement Date:** January 27, 2023
**Loan number:**
**Property address:**
    3232 FOLSOM STREET
    SAN FRANCISCO CA 94110

| 0000001 | SP | 4323 | -C01-I | CKLM |
|---------|----|----|-------|------|

SHARON A DRUMMOND
RICHARD A FRENZEL SR
5 BIRD ST APT 2
SAN FRANCISCO CA 94110-1108

### Customer Service

**Online** 
wellsfargo.com

**Correspondence**
PO Box 10335
Des Moines, IA 50306

**To learn more, go to**
wellsfargo.com/escrow

**Telephone** 
1-800-340-0473

**Hours of operation**
Mon – Fri 7 a.m. – 7 p.m. CT

We accept telecommunications relay service calls

*PLEASE NOTE: If you are presently seeking relief (or have previously been granted relief) under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only.*

These amounts are governed by the terms of the loan unless otherwise reduced by an order of the bankruptcy court. Because the amounts billed for the escrow items can change over time, we review the escrow account at least once per year to ensure there will be enough money to make these payments. Once the review is complete, we send the escrow review statement, also known as the escrow account disclosure statement

Here's what we found
⟨ **Required minimum balance:** The escrow account balance is projected to be above the required minimum balance. This means there is an **overage**.

If payments required under the bankruptcy plan have not been made, any escrow overage will be held in the escrow account.

⟨ **Payments:** As of the **January 15, 2023** payment, the contractual portion of the escrow payment **decreases**.

> The escrow account has an overage of
> **$5,236.12**

## Part 1 - Mortgage payment

### New Payment
**The new total payment will be $4,548.42**

|  | Previous payment through 12/15/2022 payment date | New payment beginning with the 01/15/2023 payment |
|---|---|---|
| **Principal and/or interest** | $3,584.48 | $3,584.48 |
| **Escrow payment** | $1,229.01 | $963.94 |
| **Total payment amount** | $4,813.49 | $4,548.42 |

**Note:** If this is an adjustable rate mortgage (ARM), a separate notice will be sent before the payment is scheduled to change.

### No action required

Starting **January 15, 2023** the new contractual payment amount will be **$4,548.42**

**See Page 2 for additional details**

## Part 2 - Payment calculations

For the past review period, the amount of the escrow items was $5,783.66. For the coming year, we expect the amount paid from escrow to be $11,567.32.

### How was the escrow payment calculated?

To determine the escrow payment, we add the projected escrow items to be paid over the next 12 months. We base these projected amounts on any escrow items that may have been paid in the past and any future anticipated payments to be made. We then divide the amounts by 12 payments to determine the escrow amount.

The chart below includes any actual escrow disbursements as well as any shortage that may have been identified for the past three analysis periods up through the date of the analysis.

### Escrow comparison

|  | 04/21 - 04/22 (Actual) | 03/22 - 03/23 (Actual) | 08/22 - 01/23 (Actual) | 01/23 - 12/23 (Projected) |  | # of months |  | New monthly escrow amount |
|---|---|---|---|---|---|---|---|---|
| **Property taxes** | $14,748.16 | $13,157.74 | $5,783.66 | $11,567.32 | ÷ | 12 | = | $963.94 |
| **Property insurance** | $0.00 | $0.00 | $0.00 | $0.00 | ÷ | 12 | = | $0.00 |
| **Total taxes and insurance** | $14,748.16 | $13,157.74 | $5,783.66 | $11,567.32 | ÷ | 12 | = | $963.94 |
| **Total escrow** | $14,748.16 | $13,157.74 | $5,783.66 | $11,567.32 |  |  |  | $963.94 |

### Projected escrow account activity over the next 12 months

To determine if there will be a shortage or overage in the account, we calculate whether the amount of the lowest projected escrow balance will be greater or less than the required minimum balance. This is determined by subtracting the required minimum balance from the lowest projected balance. If the outcome is positive, there is an overage. If it is negative, there is a shortage. The calculation is below:

| Lowest projected escrow balance  March, 2023 | $5,236.12 | (Calculated in Part 3 - Escrow account projections table) |
|---|---|---|
| Minimum balance for the escrow account  − | $0.00 |  |
| **Escrow overage  =** | **$5,236.12** |  |

### Important messages

You've received interest in the amount of $8.97

## Part 3 - Escrow account projections

Escrow account projections from January, 2023 to December, 2023

| Date | Payments to escrow | What we expect to pay out | Description | Projected escrow balance | Balance required in the account |
|---|---|---|---|---|---|
| Dec 2022 | | | Starting balance | $8,127.96 | $2,891.84 |
| Jan 2023 | $963.94 | $0.00 | | $9,091.90 | $3,855.78 |
| Feb 2023 | $963.94 | $0.00 | | $10,055.84 | $4,819.72 |
| Mar 2023 | $963.94 | $5,783.66 | SAN FRANCISCO COUNTY(W) | $5,236.12 | $0.00 |
| Apr 2023 | $963.94 | $0.00 | | $6,200.06 | $963.94 |
| May 2023 | $963.94 | $0.00 | | $7,164.00 | $1,927.88 |
| Jun 2023 | $963.94 | $0.00 | | $8,127.94 | $2,891.82 |
| Jul 2023 | $963.94 | $0.00 | | $9,091.88 | $3,855.76 |
| Aug 2023 | $963.94 | $0.00 | | $10,055.82 | $4,819.70 |
| Sep 2023 | $963.94 | $0.00 | | $11,019.76 | $5,783.64 |
| Oct 2023 | $963.94 | $0.00 | | $11,983.70 | $6,747.58 |
| Nov 2023 | $963.94 | $5,783.66 | SAN FRANCISCO COUNTY(W) | $7,163.98 | $1,927.86 |
| Dec 2023 | $963.94 | $0.00 | | $8,127.92 | $2,891.80 |
| Totals | $11,567.28 | $11,567.32 | | | |

## Part 4 - Escrow account history

Escrow account activity from August, 2022 to December, 2022

| Date | Deposits to escrow | | | Payments from escrow | | | Description | Escrow balance | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Projected | Difference | Actual | Projected | Difference | | Actual | Projected | Difference |
| Aug 2022 | | | | | | | Starting Balance | -$5,248.50 | $4,916.08 | -$10,164.58 |
| Aug 2022 | $0.00 | $1,229.01 | -$1,229.01 | $0.00 | $0.00 | $0.00 | | -$5,248.50 | $6,145.09 | -$11,393.59 |
| Sep 2022 | $0.00 | $1,229.01 | -$1,229.01 | $0.00 | $0.00 | $0.00 | | -$5,248.50 | $7,374.10 | -$12,622.60 |
| Oct 2022 | $0.00 | $1,229.01 | -$1,229.01 | $0.00 | $0.00 | $0.00 | | -$5,248.50 | $8,603.11 | -$13,851.61 |
| Nov 2022 | $0.00 | $1,229.01 | -$1,229.01 | $5,783.66 | $7,374.08 | -$1,590.42 | SAN FRANCISCO COUNTY(W) | -$11,032.16 | $2,458.04 | -$13,490.20 |
| Dec 2022 | $8.97 | $1,229.01 | -$1,220.04 | $0.00 | $0.00 | $0.00 | | -$11,023.19 | $3,687.05 | -$14,710.24 |
| Totals | $8.97 | $6,145.05 | -$6,136.08 | $5,783.66 | $7,374.08 | -$1,590.42 | | | | |

