# COMPOSITE EXHIBIT "A"

**WORLD SAVINGS BANK, FSB**

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT
AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES
AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT
OF THE SAME DATE.

LOAN NUMBER: ███████████                      DATE: **August 18, 2006**

BORROWER(S):   **CLOTEE DOWNING, AN UNMARRIED WOMAN**   sometimes called "Borrower" and sometimes simply called "I" or
"me."

PROPERTY ADDRESS: **37472 YORKSHIRE DR, PALMDALE, CA  93550-6239**

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$239,000.00** , called "Principal," plus interest, to the order of the
Lender. The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK,. ITS SUCCESSORS AND/OR
ASSIGNEES**, or anyone to whom this Note is transferred.

I HEREBY CERTIFY THAT THIS IS TRUE AND
CORRECT COPY OF THE ORIGINAL INSTRUMENT
BY ░░░░░░ 3-18-20

### 2. INTEREST

#### (A)   Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at the yearly rate of
**7.340%**. The interest rate I will pay  may change as described in this Section 2.  Interest will be charged on the basis of a twelve
month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of
this Note.

#### (B)   Interest Change Dates

The interest rate I will pay may change on the **1st** day of **October, 2006** and on the same day every month thereafter. Each
date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on
each Interest Change Date.

#### (C)   Interest Rate Limit

My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap."



LENDER'S USE ONLY

**(D)  Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an Index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)  Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **3.400** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)  Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available.  For purposes of this Section 2(F) the Index is not "available" if:  (a) the Index is for any reason no longer published; or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note.  The selection of the alternative index shall be at Lender's sole discretion.  The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator.  The Lender will give me notice of the alternative index.

**3.  PAYMENTS**

**(A)   Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **1st** day of each month beginning on **October 1, 2006**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **September 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 883.40**. This amount will change as described in Sections 3(C) and 3(D) below. My initial  monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)   Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **1st** day of **October, 2007** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and Interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**(E)   Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)   Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)   Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.



**(B)    Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)    Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)    No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)    Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **37472 YORKSHIRE DR, PALMDALE, CA  93550-6239**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.    SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26:**

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 12. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for **federally chartered savings institutions, called "Federal Law."** In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

## 13. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

## 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

**SIGNATURE PAGE**

**NOTICE TO BORROWER(S):**

**BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.**

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED**

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____  (Seal)

CLOTEE DOWNING

.

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A., successor by merger with
Wells Fargo Bank Southwest, N.A., F/K/A Wachovia Mortgage, FSB,
F/K/A World Savings Bank, FSB

Christina Gusme

**Christina Gusme**
**Vice President Loan Documentation**

**This page is part of your document - DO NOT DISCARD**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**08/24/06 AT 08:00am**

**TITLE(S) :**

I HEREBY CERTIFY THAT THIS IS TRUE AND
CORRECT COPY OF THE ORIGINAL INSTRUMENT
BY

L E A D    S H E E T

**FEE**

FEE $  SS
DAF $
C-20

**CODE
20**

**CODE
19**    NCPF Code 19  $

**CODE
9**

D.T.T.

NOTIFICATION SENT

Received
SEP 18 2006
Connie Torres

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.    Number of AIN's Shown

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER:

NOTE AMOUNT: $239,000.00

ASSESSOR'S IDENTIFICATION #:

_____        _____
                                                FOR RECORDER'S USE ONLY

# DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND
AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES
AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE
RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY
PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS
$298,750.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

_____

I.        DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
        (A)  Security Instrument. This Deed of Trust, which is dated **August 18, 2006,** will be called the
"Security Instrument."

        (B)  Borrower. CLOTEE DOWNING, AN UNMARRIED/MAN sometimes will be called "Borrower"
and sometimes simply "I" or "me."              WOMAN

Received
SEP 1 8 2006
Connie Torres

        (C)  Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be
called "Lender." Lender is **a FEDERAL SAVINGS BANK,** which is organized and exists under the laws of
the United States. Lender's address is  **1901 Harrison Street, Oakland, CA 94612** .



SD001A (2004-03-2)              DEED OF TRUST-ADJUSTABLE          CA        LENDER'S USE ONLY
DEFERRED INTEREST                     Page 1

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$239,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **September 1, 2036** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)     The Property which is located at **37472 YORKSHIRE DR, PALMDALE, CA 93550-6239**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                          **CA**
DEFERRED INTEREST                                    Page 2

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.    PAYMENTS FOR TAXES AND INSURANCE

### (A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                    CA
                                      Page 3

**(B)  Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-2)  DEED OF TRUST-ADJUSTABLE  CA
Page 4

**3.    APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.
•

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.
•

**6.     BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                    **CA**
                                              Page 6

•

## 7.     LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8.     LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9.     AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-2)                              DEED OF TRUST-ADJUSTABLE                                          CA
                                                          Page 7



## 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Pàragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

## 11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

## 12. MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-2)                DEED OF TRUST-ADJUSTABLE                CA
Page 8

**13. LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**                                    •

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **37472 YORKSHIRE DR, PALMDALE, CA  93550-6239**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15. GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

                                                                                          •

**16. BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by
                                                                                          •



Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

**(B)** The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.    FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.



**26. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

<u>Exception to Acceleration of Payment of Sums Secured.</u> If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if: •

(i) Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii) Lender approves the creditworthiness of the transferee in writing;

(iii) transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv) an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v) the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27. SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

### 28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

### 29.   RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

### 30.   STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-2)                      DEED OF TRUST-ADJUSTABLE                      CA
                                              Page 13



**31.   ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.   ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-2)                                    DEED OF TRUST-ADJUSTABLE                                    **CA**
                                                              Page 14

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____  (Seal)

CLOTEE DOWNING

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)        [AF1 (2004-03-1)]          Page 15                    CA
                         [B01 (2004-03-1)]

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

STATE OF CALIFORNIA          } ss
COUNTY OF _Los Angeles_       }

On _8-18-06_ before me, _Wendy Barrios, Notary Public_
personally appeared _ClotEE Downing_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

> **WENDY BARRIOS**
> COMM.
> NOTARY PUBLIC-CALIFORNIA
> LOS ANGELES COUNTY
> My Comm. Expires Jan. 13, 2009

---

**OPTIONAL**

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### DESCRIPTION OF ATTACHED DOCUMENT

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) other than named above _____

### CAPACITY(IES) CLAIMED BY SIGNER(S)

| | | |
|---|---|---|
| [ ] INDIVIDUAL | | Right Thumbprint of Signer |
| [ ] CORPORATE OFFICER(S) TITLE(S) _____ | | Top of thumb here |
| [ ] PARTNER(S)- [ ] LIMITED [ ] GENERAL | | |
| [ ] ATTORNEY-IN-FACT | | |
| [ ] TRUSTEE(S) | | |
| [ ] GUARDIAN OR CONSERVATOR | | |
| [ ] OTHER _____ | | |

| | | |
|---|---|---|
| [ ] INDIVIDUAL | | Right Thumbprint of Signer |
| [ ] CORPORATE OFFICER(S) TITLE(S) _____ | | Top of thumb here |
| [ ] PARNER(S)-[ ] LIMITED [ ] GENERAL | | |
| [ ] ATTORNEY-IN-FACT | | |
| [ ] TRUSTEE(S) | | |
| [ ] GUARDIAN OR CONSERVATOR | | |
| [ ] OTHER _____ | | |

SIGNER IS REPRESENTING:

_____      _____

_____      _____

EXHIBIT A

Lot 88, of Tract No. 43031, in the City of Palmdale, County of Los Angeles, State of California,
as per Map recorded in Book 1058, Page(s) 11 to 15 inclusive of Maps, in the office of the
County Recorder of said County.

08/24/05

**This page is part of your document - DO NOT DISCARD**



Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/07/19 AT 01:27PM**

| | | |
|---|---|---|
| FEES: | | 20.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| SB2: | | 75.00 |
| PAID: | | 95.00 |



SEQ:
01

SECURE - Daily

THIS FORM IS NOT TO BE DUPLICATED

***Send All Notices to Assignee***

RECORDING REQUESTED BY:
**WELLS FARGO BANK, N.A.**
**1000 BLUE GENTIAN RD**
**SUITE 200**
**EAGAN, MN 55121**

AND WHEN RECORDED MAIL TO
**WELLS FARGO BANK, N.A.**
**1000 BLUE GENTIAN RD #200**
**MAC:**
**EAGAN, MN 55121-4400**
**ATTN: ASSIGNMENT TEAM**

---

### ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A., S/B/M TO WELLS FARGO BANK SOUTHWEST, N.A., F/K/A WACHOVIA MORTGAGE, FSB, F/K/A WORLD SAVINGS BANK, FSB , 1 HOME CAMPUS , DES MOINES, IA 50328** . For VALUE RECEIVED, the undersigned hereby does convey, assign, transfer and set over to: **MTGLQ INVESTORS, L.P. , 2001 ROSS AVENUE, SUITE 2800 , DALLAS, TX 75201** , assignee, the described deed of trust, with all interest, all liens, and any rights due or to become due thereon. Said Deed of Trust for **$239000.00** is recorded in the State of CA , County of **Los Angeles** Official Records, dated **08/18/2006** and recorded **08/24/2006** , as Instrument No.███████

Executed by **CLOTEE DOWNING, AN UNMARRIED WOMAN** , as Trustors and **WORLD SAVINGS BANK, FSB** as the original beneficiary. Legal Description: **As more fully described in said Deed of Trust.**

Dated: **03/05/2019**

WELLS FARGO BANK, N.A., S/B/M TO WELLS FARGO BANK SOUTHWEST, N.A., F/K/A WACHOVIA MORTGAGE, FSB, F/K/A
WORLD SAVINGS BANK, FSB

*Juliane M Christensen*

By: JULIANE M CHRISTENSEN Vice President Loan Documentation

STATE OF MN
COUNTY OF Dakota } S.S.

On **03/05/2019** before me, **MARY E MATHEWSON** , a Notary Public, personally appeared **JULIANE M CHRISTENSEN , Vice President Loan Documentation** of **WELLS FARGO BANK, N.A., S/B/M TO WELLS FARGO BANK SOUTHWEST, N.A., F/K/A WACHOVIA MORTGAGE, FSB, F/K/A WORLD SAVINGS BANK, FSB** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Mary E Mathewson*

MARY E MATHEWSON, Notary Public
Expires: 01/31/2022



**MARY E MATHEWSON**
**NOTARY PUBLIC - MINNESOTA**
**MY COMMISSION EXPIRES 01/31/2022**

eRecord



**This page is part of your document - DO NOT DISCARD**

Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/06/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |



SEQ:
01

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

FOR REFERENCE ONLY
Exhibits

Recording Requested by Simplifile
Prepared By and Return To:
**Maged Farag**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No: ████████

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MTGLQ INVESTORS, L.P., whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, whose address is **888 7TH AVENUE 10TH FLOOR, NEW YORK, NY 10019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 8/18/2006
Original Loan Amount: $239,000.00
Executed by (Borrower(s)): **CLOTEE DOWNING**
Original Trustee: **GOLDEN WEST SAVINGS ASSOCIATION CO., A CALIFORNIA CORPORATION**
Original Beneficiary: **WORLD SAVINGS BANK, FSB**
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: ████████ in the Recording District of **LOS ANGELES, CA**, Recorded on 8/24/2006.

Property more commonly described as: **37472 YORKSHIRE DR, PALMDALE, CA 93550-6239**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: ____UCT 1 0 2019____

MTGLQ INVESTORS, L.P.

By: **MATT FANKHAUSER**
Title: **VICE PRESIDENT**

Witness Name: ____Valerie Ramos____

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **TEXAS**
County of    **DALLAS**

On _____ **OCT 1 8 2019** _____, before me, _____**Blake Doyle**_____, a Notary Public, personally
appeared **MATT FANKHAUSER, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P.**, personally known to
me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify
under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and
correct. I further certify MATT FANKHAUSER, signed, sealed, attested and delivered this document as a
voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _____**Blake Doyle**_____
My commission expires: _____ **SEP 1 4 2021**

BLAKE DOYLE
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID

**Mail Workflow**

Date of this Agreement:                                    May 3, 2013
Note known as Loan Number:        **MAY 16 2013**
Property Address:                                          37472 YORKSHIRE DR
                                                           PALMDALE, CA 93550-6239

Principal Balance Prior to Modification:          $212,206.61
Return Date for this Agreement:                   May 19, 2013

### MODIFICATION AGREEMENT

This Modification Agreement ("Agreement") is made as of the Date of this Agreement between the undersigned ("Borrower"), as obligor(s), or as title holder(s) to the Property, as the context may require, on the Loan evidenced by that certain Promissory Note ("Note"), known as the loan number referenced above, executed by Borrower or later assumed by Borrower (the "Loan") and Wells Fargo Bank, N.A. ("Lender"). Borrower's obligations under the Note are secured by a properly recorded deed of trust, mortgage or security deed, dated the same date as the Note (the "Security Instrument"), encumbering the Property, identified as Property Address above. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Security Instrument remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

Unless this Agreement is executed without alteration and returned by the Return Date above this Agreement will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Note and Security Instrument. This Agreement will only be deemed received when actually received by Lender at: Wells Fargo Home Mortgage, Loan Modifications,          4101 Wiseman Blvd., San Antonio, Texas, 78251. Upon receipt of a properly executed Agreement, this Agreement will become effective on July 1, 2013.

Through this Agreement, Borrower and Lender agree to modify the Loan as follows:

1. If outstanding and owed as of the Date of this Agreement, Lender agrees to:
a. Waive outstanding Late Charges and Fees; and

b. Add amounts owed for Escrow and Corporate Advances to the Loan balance; and

c. Forgive accrued, outstanding, and not capitalized interest through          May 31, 2013

2. Lender and Borrower further agree to modify the Loan as follows:
a. The maturity date of the Loan is                                          June 1, 2053

b. After capitalization, the principal balance owed on the Loan will be
reduced to a Modified Principal Balance equal to                            $212,206.61

c. Included in the Modified Principal Balance is a Deferred Balance of $27,271.81 which will accrue interest at a rate of 0.00% for the life of the loan.

Work-Out                                          1 of 4



d. Included in the Deferred Principal Balance is a Conditional Forgiveness of $27,271.81 which will be permanently forgiven in equal portions of one-third provided the borrower is in Good Standing on the first, second, and third anniversaries of the Effective Date. Good Standing means the borrower has never been delinquent since the Effective Date of this Agreement by the equivalent of three full monthly payments at the end of the month in which the last of the three delinquent payments is due. Each portion of the Conditional Forgiveness will be considered Deferred Principal Balance and will remain owed until it has been permanently forgiven.

Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date an interest in the Property is sold or transferred, (ii) the date on which the entire Interest Bearing Principal Balance is paid off, or (iii) the new Maturity Date. Borrower agrees that any partial prepayments of Principal may be applied at Lender's discretion first to any Deferred Principal Balance before applying such partial prepayment to other amounts due

**Notice to Borrower:** The Deferred Principal Balance will result in a balloon payment. A balloon payment is a lump sum payment due at the end of your loan. If you do not have the funds to pay the balloon payment when it comes due, you may have to obtain a new loan against your property to make the balloon payment. In that case, you may have to pay commissions, fees, and expenses for the arranging of the new loan. In addition, if you are unable to make the monthly payments or the balloon payment, you may lose the property and all of your equity through foreclosure. Keep this in mind in deciding upon this modification    The balloon payment on this loan is due on the maturity date referenced under 2(a) above or upon earlier payoff of the loan.

The Modified Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance."

3. Monthly payments will be due on the same day of each month. Each Interest Rate will go into effect on the corresponding Interest Rate Effective Date. **The payments DO NOT include amounts necessary for escrow.** Each Payment is a principal and interest payment calculated at the interest rate specified to pay off the interest bearing principal balance of $184,934.80 by the maturity date   The Principal and Interest payment(s) on the Loan will be as follows:

| Payment Due Date | Payment | Interest Rate | Interest Rate Eff. Date |
|---|---|---|---|
| 7/1/2013 | $560.03 | 2.000% | 6/1/2013 |
| 7/1/2016 | $642.89 | 2.875% | 6/1/2016 |
| 7/1/2017 | $729.94 | 3.750% | 6/1/2017 |

Principal and Interest payment for the remaining term of the Loan:

| Payment Due Date | Payment | Interest Rate | Interest Rate Eff. Date |
|---|---|---|---|
| 7/1/2018 | $794.15 | 4.375% | 6/1/2018 |

If there is a decrease in the interest bearing principal balance due to principal curtailment, Borrower agrees that any future payment changes indicated above may be recalculated to payoff the then existing interest bearing principal balance at the corresponding interest rate at Lender's discretion upon receipt of written request from Borrower absent additional agreement or modification of this Agreement.

4. The Loan will be escrowed for the payment of taxes and insurance for the remaining term of the Loan. Amounts necessary for escrow are not included in the payments referenced above. Please reference the cover letter for the initial payment amount with escrow and reference the monthly billing statements for the future payment amount with escrow.

5. If the loan was an Adjustable Rate Mortgage or a Pay Option Loan, the Interest Change Dates, Calculation of Interest Rate Changes, Payment Change Dates, Calculation of Payment Changes, Index and Payment Cap Limitation no longer apply.

6. The Loan may not be assumed by any other person or entity.

7. If a biweekly loan, the Loan will convert to a monthly payment schedule. References to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.

As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled

8. Lender acknowledges that one or more of the undersigned may have filed for bankruptcy or may have received a discharge in a bankruptcy proceeding. Said individual(s) acknowledge and agree that this Agreement is not a reaffirmation agreement as defined in 11 U.S.C. §524, that any references in this Agreement that imply liability under the Note obligation instead refer to the amounts secured by the property and is not meant to impart personal liability on such individual(s), and that this Agreement and communications related to this Agreement are not attempts to collect, assess or recover a claim against the individual(s) that arose before the commencement of the bankruptcy or that has been discharged.

9 If there is a principal reduction or forgiveness as part of this Agreement, Borrower acknowledges that any principal reduction or forgiveness is reported to the Internal Revenue Service and may have tax consequences

10 If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

11. CONSENT TO DISCLOSE PERSONAL INFORMATION
I consent to the disclosure of my personal information, including the terms of this modification, to any investor, owner, servicer, insurer or guarantor who owns, services, insures or guarantees

my first lien account for purposes related to the second mortgage Industry Lien Match program.
I also consent to the disclosure of my personal information to any entity that performs support
services for the second mortgage Industry Lien Match program, including marketing, survey,
research or other borrower outreach, data processing and technical systems consulting.

Borrower agrees that (a) Borrower has read this Agreement in its entirety; (b) Borrower has
consulted, or had opportunity to consult, with an attorney of Borrower's choosing; and (c)
Borrower has voluntarily entered into this Agreement.

BORROWER(S):

**CLOTEE DOWNING**

Wells Fargo Bank, N.A.

6/17/13

Lucia Zamarripa
Vice President Loan Documentation

RECORDER MEMO: This COPY has not been QUALITY ASSURED.



This page is part of your document - DO NOT DISCARD





# 20201395931

**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/04/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 22.00 |
| TAXES: | 330.00 |
| OTHER: | 0.00 |
| | |
| PAID: | 352.00 |



**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E460670*

RECORDER MEMO: This COPY has not been QUALITY ASSURED.
RECORDER MEMO: This COPY has not been QUALITY ASSURED.



RECORDER MEMO: This COPY has not been QUALITY ASSURED.

**RECORDING REQUESTED BY:**
Pacific Coast Title

**WHEN RECORDED MAIL DOCUMENT AND TAX STATEMENT TO:**

2nd Chance Investment Group, LLC
12523 Limonite Ave. #440-198
Mira Loma, CA 91752

APN:
TITLE ORDER NO.:
ESCROW NO.

THIS SPACE FOR RECORDER'S USE ONLY

## GRANT DEED

The undersigned Grantor(s) declare(s) that the **DOCUMENTARY TRANSFER TAX IS: $ 330.00 County**
XX computed on the full value of the interest of property conveyed, or
___ computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale.
___ OR transfer is EXEMPT from tax for the following reason:

_____         BYNRGO
Signature of declarant or agent determining tax        Firm Name

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,** Clotee Downing, an Unmarried Woman

**HEREBY GRANT(S) to** 2nd Chance Investment Group, LLC, a California Limited Liability Company

All that real property situated in the City of Palmdale, County of Los Angeles, State of California, described as:
Lot 88, of Tract no 43031, in the City of Palmdale, County of Los Angeles, State of California, as per map recorded in Book 1058, Page(s) 11 to 15 inclusive of Maps, in the Office of the County Recorder of said County.

**Commonly Known As:** 37472 Yorkshire Drive, Palmdale, CA 93550

October 28, 2020

_____
Clotee Downing

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document

STATE OF CALIFORNIA
COUNTY OF LOS Angeles
On OCTOber 31, 2020, before me, Mellsca Gonzalez, a Notary Public
personally appeared Clotee Downing

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        (SEAL)

MELISSA GONZALEZ
Notary Public - California
Los Angeles County
Commission # 2333199
My Comm. Expires Sep 5, 2024

MAIL TAX STATEMENTS AS DIRECTED ABOVE

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

# EXHIBIT "B"

Fill in this information to identify the case:

Debtor name   **2nd Chance Investment Group, LLC**

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)   _____

☐ Check if this is an
amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property
12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

  ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

  ■ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

| 2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. | **Column A**<br>Amount of claim<br><br>Do not deduct the value of collateral. | **Column B**<br>Value of collateral that supports this claim |
|---|---|---|

| 2.1 | **Fay Servicing** | | | |
|---|---|---|---|---|
| | Creditor's Name | **Describe debtor's property that is subject to a lien**<br>**3025 Glenview Ave. San Bernardino CA 92407** | **$180,000.00** | **$377,000.00** |
| | **8001 Woodland Center Blvd. Suite 10 Tampa, FL 33614**<br>Creditor's mailing address | **Describe the lien**<br>**1st Deed of Trust** | | |
| | | **Is the creditor an insider or related party?**<br>■ No<br>☐ Yes | | |
| | Creditor's email address, if known | **Is anyone else liable on this claim?**<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Date debt was incurred**<br>**5/17/21**<br>Last 4 digits of account number | | | |
| | **Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |

| 2.2 | **Ally** | | | |
|---|---|---|---|---|
| | Creditor's Name | **Describe debtor's property that is subject to a lien**<br>**2021 Mercedes Benz Sprinter 2500 with 38,620**<br>**value based on kbb.org** | **$41,207.05** | **$50,456.00** |
| | **PO Box 380902 Minneapolis, MN 55438**<br>Creditor's mailing address | **Describe the lien**<br>**Auto Loan** | | |
| | | **Is the creditor an insider or related party?**<br>■ No<br>☐ Yes | | |
| | Creditor's email address, if known | **Is anyone else liable on this claim?**<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Date debt was incurred**<br>**2020**<br>Last 4 digits of account number | | | |
| | **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:**<br>Check all that apply | | |

Debtor  **2nd Chance Investment Group, LLC**
Name

Case number (if known) _____

- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

---

| 2.3 | **Del Toro Loan Servicing, Inc.** | Describe debtor's property that is subject to a lien | $286,000.00 | $488,000.00 |

**Del Toro Loan Servicing, Inc.**
Creditor's Name

**2300 Boswell Road
Suite 215
Chula Vista, CA 91914**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
1/4/22**
**Last 4 digits of account number**

Describe debtor's property that is subject to a lien
**25641 Byron St. San Bernardino CA 92404**

Describe the lien
**1st Deed of Trust**
**Is the creditor an insider or related party?**
- ■ No
- ☐ Yes
**Is anyone else liable on this claim?**
- ■ No
- ☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Do multiple creditors have an interest in the same property?**
- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

---

| 2.4 | **Del Toro Loan Servicing, Inc.** | Describe debtor's property that is subject to a lien | $286,631.00 | $477,000.00 |

**Del Toro Loan Servicing, Inc.**
Creditor's Name

**2300 Boswell Road
Suite 215
Chula Vista, CA 91914**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
6/17/22**
**Last 4 digits of account number**

Describe debtor's property that is subject to a lien
**827 N Meridian  Ave. San Bernardino CA 92410**

Describe the lien
**1st Deed of Trust**
**Is the creditor an insider or related party?**
- ■ No
- ☐ Yes
**Is anyone else liable on this claim?**
- ■ No
- ☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Do multiple creditors have an interest in the same property?**
- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

---

| 2.5 | **Del Toro Loan Servicing, Inc.** | Describe debtor's property that is subject to a lien | $442,928.00 | $691,000.00 |

**Del Toro Loan Servicing, Inc.**
Creditor's Name

**2300 Boswell Road
Suite 215
Chula Vista, CA 91914**
Creditor's mailing address

Describe debtor's property that is subject to a lien
**1611 151st St. San Leandro CA 94578**

Describe the lien

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**

Debtor **2nd Chance Investment Group, LLC**     Case number (if known) _____
     Name

**1st Deed of Trust**

Is the creditor an insider or related party?

■ No

☐ Yes

Is anyone else liable on this claim?

Creditor's email address, if known

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**8/15/22**

Last 4 digits of account number

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

■ No

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated

☐ Disputed

---

| 2.6 | **FCI** | | Describe debtor's property that is subject to a lien | $266,000.00 | $424,000.00 |
|-----|---------|---|------|----|----|

Creditor's Name
**43933 30 St E Lancaster CA 93535**

**8180 E Kaiser Blvd
Anaheim, CA 92808**

Creditor's mailing address

Describe the lien
**1st Deed of Trust**

Is the creditor an insider or related party?

■ No

☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

■ No

Date debt was incurred
**subject to**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account number

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

■ No

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated

☐ Disputed

---

| 2.7 | **FCI** | | Describe debtor's property that is subject to a lien | $288,000.00 | $426,000.00 |
|-----|---------|---|------|----|----|

Creditor's Name
**1004 Peachwood Crt. Los Banos CA 93635**

**8180 E Kaiser Blvd
Anaheim, CA 92808**

Creditor's mailing address

Describe the lien
**1st Deed of Trust**

Is the creditor an insider or related party?

■ No

Creditor's email address, if known

☐ Yes

Is anyone else liable on this claim?

■ No

Date debt was incurred
**4/21/22**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account number

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

■ No

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated

☐ Disputed

---

Official Form 206D     Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**     page 3 of 8

| Debtor | **2nd Chance Investment Group, LLC** | | Case number (if known) | |
| | Name | | | |

---

**2.8** | **FCI**
Creditor's Name

**8180 E Kaiser Blvd
Anaheim, CA 92808**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**7/14/22**
Last 4 digits of account number

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**730 E 78th St Los Angeles CA 90001**

Describe the lien
**1st Deed of Trust**
Is the creditor an insider or related party?
■ No
☐ Yes
Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

$510,000.00    $735,000.00

---

**2.9** | **FCI**
Creditor's Name

**8180 E Kaiser Blvd
Anaheim, CA 92808**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**5/18/22**
Last 4 digits of account number

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**1016 Portal Ave. Bakersfield CA 93308**

Describe the lien
**1st Deed of Trust**
Is the creditor an insider or related party?
■ No
☐ Yes
Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

$127,000.00    $266,000.00

---

**2.10** | **FCI**
Creditor's Name

**8180 E Kaiser Blvd
Anaheim, CA 92808**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**6/6/22**

Describe debtor's property that is subject to a lien
**37915 Marsala Dr. Palmdale CA 93552**

Describe the lien
**1st Deed of Trust**
Is the creditor an insider or related party?
■ No
☐ Yes
Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

$295,000.00    $492,000.00

---

Debtor **2nd Chance Investment Group, LLC**
<u>                                        </u>
Name                                                    Case number (if known)  _____

Last 4 digits of account number

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 2.1 1 | **Mercedes-Benz Financial Services** | | | |
|---|---|---|---|---|
| | Creditor's Name | Describe debtor's property that is subject to a lien | $53,822.23 | $52,269.00 |
| | PO Box 5260 Carol Stream, IL 60197-5260 | 2021 Mercedes 2500 with 33,123 miles value based on kbb.org | | |
| | Creditor's mailing address | | | |
| | | Describe the lien | | |

Creditor's email address, if known

Is the creditor an insider or related party?
■ No
☐ Yes

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Date debt was incurred

Last 4 digits of account number

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 2.1 2 | **Mercedes-Benz Financial Services** | | | |
|---|---|---|---|---|
| | Creditor's Name | Describe debtor's property that is subject to a lien | $92,551.00 | $58,536.00 |
| | PO Box 5209 Carol Stream, IL 60197-5209 | 2021 Mercedes 2500 with 11,063 miles value based on kbb.org | | |
| | Creditor's mailing address | | | |
| | | Describe the lien | | |

Creditor's email address, if known

Is the creditor an insider or related party?
■ No
☐ Yes

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Date debt was incurred

Last 4 digits of account number

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 2.1 3 | **Select Portfolio Servicing** | Describe debtor's property that is subject to a lien | $431,668.00 | $928,000.00 |
|---|---|---|---|---|

---

| Debtor | **2nd Chance Investment Group, LLC** | | Case number (if known) |
|---|---|---|---|
| | Name | | |

| Creditor's Name | **13352 Marty Lane Garden Grove CA 92843** |
|---|---|

**PO Box 65250
Salt Lake City, UT 84165**

Creditor's mailing address

**Describe the lien**
**1st Deed of Trust**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**4/6/21 subjec to**
**Last 4 digits of account number**

**Do multiple creditors have an
interest in the same property?**

■ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 4 | **Select Portfolio Servicing** | Describe debtor's property that is subject to a lien | $512,000.00 | $773,000.00 |
|---|---|---|---|---|
| | Creditor's Name | **324 W 47th Pl. Los Angeles CA 90037** | | |

**PO Box 65250
Salt Lake City, UT 84165**

Creditor's mailing address

**Describe the lien**
**1st Deed of Trust**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**4/7/22**
**Last 4 digits of account number**

**Do multiple creditors have an
interest in the same property?**

■ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 5 | **Selene Finance** | Describe debtor's property that is subject to a lien | $162,000.00 | $515,000.00 |
|---|---|---|---|---|
| | Creditor's Name | **37472 Yorkshire Dr. Palmdale CA  93550** | | |

**PO Box 422039
Houston, TX 77242-2039**

Creditor's mailing address

**Describe the lien**
**1st Deed of Trust**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No

**Date debt was incurred**
**11/4/2020 subject to**
**Last 4 digits of account number**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

---

Official Form 206D        Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**        page 6 of 8

| Debtor | 2nd Chance Investment Group, LLC | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.16 | **Small Business Administration** | **Describe debtor's property that is subject to a lien** | $150,000.00 | $0.00 |
|---|---|---|---|---|
| | Creditor's Name | abstract | | |

10737 Gateway West
#300
El Paso, TX 79935

Creditor's mailing address

**Describe the lien**
UCC

**Is the creditor an insider or related party?**

☑ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

☑ No

**Date debt was incurred**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.17 | **Superior Loan Servicing** | **Describe debtor's property that is subject to a lien** | $252,000.00 | $426,000.00 |
|---|---|---|---|---|
| | Creditor's Name | 8607 Custer Rd SW Lakewood WA 98499 | | |

7525 Topanga Canyon Blvd
Canoga Park, CA 91303

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**

☑ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

☑ No

**Date debt was incurred**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.

| $4,376,807.28 |
|---|

**Part 2:** List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

Debtor   **2nd Chance Investment Group, LLC**   Case number (if known) _____
　　　　　Name

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| _____ | | |
| _____ | | |

# EXHIBIT "C"

| Loan Number | ▮▮▮▮ | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | 2nd Chance Investment Group, LLC | | | | | | |
| Payments in POC (Arrears details) | POC not filed. | | | | | | |
| Case Number | 22-12142 | | | | | | |
| Filing Date | 12/21/2022 | | | | | | |
| 1st Post Due Date | 1/1/2023 | | | | | | |

| POST-PETITION PAYMENT CHANGES | | | | | | | |
|---|---|---|---|---|---|---|---|
| **EFFECTIVE** | 01/01/23 | | | | | | |
| **AMOUNT** | 2017.15 | | | | | | |

| Date Received | Amount Received | Payment Amount Due | To/From Suspense | Suspense Balance | Due Date | Comments | |
|---|---|---|---|---|---|---|---|
| | | | | | | Monthly post amount concider as per Escrow account | |
| | | | 0.00 | 0.00 | | | |
| | | | 0.00 | 0.00 | | | |
| | | | 0.00 | 0.00 | | | |
| | | | 0.00 | 0.00 | | | |
| | | | 0.00 | 0.00 | | Next due for 01/01/2023 | |

| Arrears Due: | 1/1/2023 | 2017.15 |
|---|---|---|
| | 2/1/2023 | 2017.15 |
| | 3/1/2023 | 2017.15 |
| | 4/1/2023 | 2017.15 |
| Less suspense: | | 0 00 |
| **TOTAL:** | | **$8,068.60** |

**PAYOFF FUNDS PANEL**                          614      4/27/2023   1:28:33 PM ET        PFSP576

| Account Number | | Name CLOTEE DOWNING |
|---|---|---|

| **Funds Detail Information** | | **Escrow/Impound Required** | |
|---|---|---|---|
| Principal | 161846.96 | 05/01/23  HAZARD INSUR | 131.15 |
| Interest  From      08/01/22 | | ESCROW ADVANCED | 8829.81 |
| To          04/27/23 | 5172.60 | | |
| Prepayment Penalty Interest | 0.00 | | |
| Escrow/Impound Required | 8960.96 | | |
| FHA Premium Due HUD | 0.00 | | |
| Optional Insurance | 0.00 | | |
| Late Charges Due | 158.80 | **Interest Calculations** | | | |
| P&I Advance | 0.00 | Rate      From      To/Thru      Int Due | | | |
| Deferred Amounts | 0.00 | 4.375 08/01/22 04/01/23    4675.93 | | | |
| Fees Assessed with Payoff Quote | 0.00 | 4.375 04/01/23 04/27/23    496.67 | | | |

**Interest Calculations**

| | | |
|---|---|---|
| Fees Required with Payoff Funds | 0.00 | |
| Fees Currently Assessed | 615.00 | **Per Diem/Expiration Information** |
| Buyer Assistance | 0.00 | After 04/26/23        Add        19.1025 |

**Funds to be Credited**

| | | |
|---|---|---|
| Less Escrow/Impound Funds | 0.00 | FOR INTEREST PER DAY |
| Less Unapplied Funds | 0.00 | Quote Expires            04/27/23 |
| Less Buydown Funds | 0.00 | Financed Cov Rebate Good Until 00/00/00 |
| Less Financed Cov Rebate Funds | 0.00 | After 04/26/23        Add        0.0000 |
| Less SAC Amounts Paid | 0.00 | FOR SIMPLE INSURANCE PER DAY |
| Less Remaining PRA | 0.00 | |
| Less Early Refunds | 0.00 | |
| Payoff Funds Required | 175954.32 | |

**Funds Retained**

| | |
|---|---|
| Escrow/Impound Funds | 0.00 |
| Unapplied Funds | 0.00 |
| Buydown Funds | 0.00 |

**Message:**    CLICK RETURN TO EXIT                        OK

# EXHIBIT "F"

# DRIVE-BY BPO
by ClearCapital

**37472 YORKSHIRE DR**
PALMDALE, CA 93550

**Loan Number**

**$465,000**
● As-Is Value

Please Note: This report was completed with the following assumptions: Market Approach: **Fair Market Price** , Marketing Time: **Typical** . Important additional information relating to this report, including use and restrictions, is contained in an attached addendum which is an integral part of this report.

| | | | | | |
|---|---|---|---|---|---|
| **Address** | 37472 Yorkshire Dr, Palmdale, CA 93550 | **Order ID** | | **Property ID** | |
| **Inspection Date** | 04/05/2023 | **Date of Report** | 04/05/2023 | | |
| **Loan Number** | | **APN** | | | |
| **Borrower Name** | CLOTEE DOWNING | **County** | Los Angeles | | |

**Tracking IDs**

| | | | |
|---|---|---|---|
| **Order Tracking ID** | Tue Apr 04 23 5:00P - Wed Apr 05 23 5:00 P Batch | **Tracking ID 1** | |
| **Tracking ID 2** | | **Tracking ID 3** | |

## General Conditions

| | |
|---|---|
| Owner | II CHANCE INVESTMENT GROUP LLC |
| R. E. Taxes | $13,412 |
| Assessed Value | $351,900 |
| Zoning Classification | Residential PDR1* |
| Property Type | SFR |
| Occupancy | Occupied |
| Ownership Type | Fee Simple |
| Property Condition | Average |
| Estimated Exterior Repair Cost | $0 |
| Estimated Interior Repair Cost | $0 |
| Total Estimated Repair | $0 |
| HOA | No |
| Est. Monthly Rental | $2,700/month |
| Visible From Street | Visible |
| Road Type | Public |

**Condition Comments**

From exterior view the subject property appears to be in average condition in comparison to its immediate market area and is an appropriate improvement for the neighborhood.

## Neighborhood & Market Data

| | |
|---|---|
| Location Type | Suburban |
| Local Economy | Stable |
| Sales Prices in this Neighborhood | Low: $341600 High: $492500 |
| Market for this type of property | Remained Stable for the past 6 months. |
| Normal Marketing Days | <90 |

**Neighborhood Comments**

Neighborhood market trends have remained stable over the last few months. The majority of sales are arms length fair market transactions. There is limited REO transactions within the market area. Seller concessions are common with certain types of financing such as FHA and conventional loans.

# DRIVE-BY BPO
by ClearCapital



**37472 YORKSHIRE DR**
PALMDALE, CA 93550

Loan Number

**$465,000**
● As-Is Value

## Current Listings

| | Subject | Listing 1 | Listing 2 * | Listing 3 |
|---|---|---|---|---|
| **Street Address** | 37472 Yorkshire Dr | 1702 E Avenue R3 | 36755 Fiddleneck Ct | 37226 27th St E |
| **City, State** | Palmdale, CA | Palmdale, CA | Palmdale, CA | Palmdale, CA |
| **Zip Code** | 93550 | 93550 | 93550 | 93550 |
| **Datasource** | Public Records | MLS | MLS | MLS |
| **Miles to Subj.** | -- | 0.66 [1] | 0.98 [1] | 0.59 [1] |
| **Property Type** | SFR | SFR | SFR | SFR |
| **Original List Price $** | $ | $435,000 | $495,000 | $454,000 |
| **List Price $** | -- | $435,000 | $495,000 | $454,000 |
| **Original List Date** | | 03/23/2023 | 10/30/2022 | 12/13/2022 |
| **DOM · Cumulative DOM** | -- · -- | 13 · 13 | 157 · 157 | 113 · 113 |
| **Age** (# of years) | 37 | 41 | 42 | 39 |
| **Condition** | Average | Average | Average | Average |
| **Sales Type** | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| **Location** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **View** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **Style/Design** | 2 Stories Historical | 1 Story Other | 2 Stories Traditional | 1 Story Other |
| **# Units** | 1 | 1 | 1 | 1 |
| **Living Sq. Feet** | 2,052 | 1,299 | 1,805 | 1,593 |
| **Bdrm · Bths · ½ Bths** | 3 · 3 | 3 · 2 | 3 · 3 | 4 · 2 |
| **Total Room #** | 8 | 7 | 8 | 8 |
| **Garage** (Style/Stalls) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) |
| **Basement** (Yes/No) | No | No | No | No |
| **Basement** (% Fin) | 0% | 0% | 0% | 0% |
| **Basement Sq. Ft.** | -- | -- | -- | -- |
| **Pool/Spa** | -- | Pool - Yes<br>Spa - Yes | -- | Pool - Yes<br>Spa - Yes |
| **Lot Size** | 0.18 acres | 0.15 acres | 0.14 acres | 0.14 acres |
| **Other** | none | none | none | none |

\* Listing 2 is the most comparable listing to the subject.
[1] Comp's "Miles to Subject" was calculated by the system.
[2] Comp's "Miles to Subject" provided by Real Estate Professional.
[3] Subject $/ft based upon as-is sale price.

DRIVE-BY BPO
by ClearCapital

57472 YORKSHIRE DR
PALMDALE, CA 93550



$465,000

Loan Number          ● As-Is Value

## Current Listings - Cont.

**Listing Comments** *Why the comparable listing is superior or inferior to the subject.*

**Listing 1**  This Property Is An Excellent Fit For A First-time Homebuyer!!! This Stunning Three-bedroom And Two Bathrooms Home Might Be Just What You're Looking For! The Property Boasts Beautiful Wood Flooring That Adds Warmth And Charm To The Space. The Bedrooms Are Generously Sized, Offering Space For A King Or Queen-sized Bed, Along With Dressers, Nightstands, And Other Furnishings. The Home Is Fenced For Privacy And Peace Of Mind. Paid Solar Panels Are Included And It Eliminates The Need To Pay For The Power Utility. The Open Floor Plan Is Perfect For Those Who Love To Entertain. Whether You're Hosting A Dinner Party Or Just Spending Time With Loved Ones, The Well-equipped Kitchen With Appliances Makes Meal Preparation An Absolute Breeze.

**Listing 2**  Two Story House Very Close To Shopping Center Very Close To Pearblossom Hwy

**Listing 3**  Discover A Bright And Open Interior With Plenty Of Natural Light And A Neutral Color Palette, Complimented By A Fireplace. Step Into The Kitchen, Complete With An Eye Catching Stylish Backsplash. Head To The Spacious Primary Suite With Good Layout And Closet Included. Extra Bedrooms Add Nice Flex Space For Your Everyday Needs. The Primary Bathroom Features Plenty Of Under Sink Storage Waiting For Your Home Organization Needs. Take It Easy In The Fenced In Back Yard.

# DRIVE-BY BPO
by ClearCapital

**37472 YORKSHIRE DR**
PALMDALE, CA 93550


Loan Number

**$465,000**
● As-Is Value

## Recent Sales

| | Subject | Sold 1 * | Sold 2 | Sold 3 |
|---|---|---|---|---|
| Street Address | 37472 Yorkshire Dr | 37136 Ran Dr | 2123 E Avenue R12 | 1722 E Avenue R4 |
| City, State | Palmdale, CA | Palmdale, CA | Palmdale, CA | Palmdale, CA |
| Zip Code | 93550 | 93550 | 93550 | 93550 |
| Datasource | Public Records | Public Records | Public Records | Public Records |
| Miles to Subj. | -- | 0.49 [1] | 0.17 [1] | 0.58 [1] |
| Property Type | SFR | SFR | SFR | SFR |
| Original List Price $ | -- | $465,000 | $466,000 | $460,000 |
| List Price $ | -- | $465,000 | $466,000 | $460,000 |
| Sale Price $ | -- | $465,000 | $466,000 | $460,000 |
| Type of Financing | -- | Conventional | Conventional | Conventional |
| Date of Sale | -- | 12/12/2022 | 06/29/2022 | 12/15/2022 |
| DOM · Cumulative DOM | -- · -- | 1 · 303 | 1 · 0 | 1 · 0 |
| Age (# of years) | 37 | 37 | 38 | 34 |
| Condition | Average | Average | Average | Average |
| Sales Type | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| Location | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| View | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| Style/Design | 2 Stories Historical | 2 Stories Traditional | 2 Stories Traditional | 1 Story Traditional |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 2,052 | 2,036 | 1,995 | 1,744 |
| Bdrm · Bths · ½ Bths | 3 · 3 | 3 · 3 | 3 · 3 | 4 · 3 |
| Total Room # | 8 | 8 | 8 | 9 |
| Garage (Style/Stalls) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) |
| Basement (Yes/No) | No | No | No | No |
| Basement (% Fin) | 0% | 0% | 0% | 0% |
| Basement Sq. Ft. | | -- | -- | -- |
| Pool/Spa | -- | -- | -- | -- |
| Lot Size | 0.18 acres | 0 25 acres | 0.16 acres | 0.15 acres |
| Other | none | none | none | none |
| Net Adjustment | -- | $0 | $0 | $0 |
| Adjusted Price | -- | $465,000 | $466,000 | $460,000 |

* Sold 1 is the most comparable sale to the subject.
[1] Comp's "Miles to Subject" was calculated by the system.
[2] Comp's "Miles to Subject" provided by Real Estate Professional.
[3] Subject $/ft based upon as-is sale price.

**Reasons for Adjustments** Why the comparable sale is superior or inferior to the subject.

| Sold 1 | No MLS commentary available for Sale 1 |
|---|---|
| Sold 2 | No MLS commentary available for Sale 2 |
| Sold 3 | No MLS commentary available for Sale 3 |

# DRIVE-BY BPO
by ClearCapital

**37472 YORKSHIRE DR**
PALMDALE, CA 93550

Loan Number 

**$465,000**
🟡 As-Is Value

## Subject Sales & Listing History

| Current Listing Status | Not Currently Listed |
|---|---|
| Listing Agency/Firm | |
| Listing Agent Name | |
| Listing Agent Phone | |
| # of Removed Listings in Previous 12 Months | 0 |
| # of Sales in Previous 12 Months | 0 |

**Listing History Comments**

No recent listing history per mls, tax and internet search.

| Original List Date | Original List Price | Final List Date | Final List Price | Result | Result Date | Result Price | Source |
|---|---|---|---|---|---|---|---|

## Marketing Strategy

| | As Is Price | Repaired Price |
|---|---|---|
| **Suggested List Price** | $475,000 | $475,000 |
| **Sales Price** | $465,000 | $465,000 |
| **30 Day Price** | $455,000 | -- |

**Comments Regarding Pricing Strategy**

Price conclusion is based on recent comparable sold and listed properties within the immediate market area of the subject property. *No address # was visible on the subject property at the time of inspection, a photo of the street sign has been uploaded for address verification.

## Clear Capital Quality Assurance Comments Addendum

**Reviewer's Notes**   The broker's as-is conclusion reflects the market for the subject. Comps are within a reasonable distance, relatively current, and accurately reflect the subject's defining characteristics. Thus, the as-is conclusion appears to be adequately supported.

# DRIVE-BY BPO
by ClearCapital

57477 YORKSHIRE DR
PALMDALE, CA 93550

Loan Number

$465,000

● As-Is Value

## Subject Photos



Front




Address Verification



Street



DRIVE-BY BPO
by ClearCapital

37472 YORKSHIRE DR
PALMDALE, CA 93550

Loan Number

$465,000
● As-Is Value

## Listing Photos

**L1** 1702 E Avenue R3
Palmdale, CA 93550



Front

**L2** 36755 Fiddleneck Ct
Palmdale, CA 93550



Front

**L3** 37226 27th St E
Palmdale, CA 93550



Front



DRIVE-BY BPO
by ClearCapital

37472 YORKSHIRE DR
PALMDALE, CA 93550

Loan Number

$465,000
● As-Is Value

## Sales Photos

**S1** 37136 Ran Dr
Palmdale, CA 93550



Front

**S2** 2123 E Avenue R12
Palmdale, CA 93550



Front

**S3** 1722 E Avenue R4
Palmdale, CA 93550



Front

# DRIVE-BY BPO
by ClearCapital

**37472 YORKSHIRE DR**
PALMDALE, CA 93550

Loan Number ██████

● As-Is Value **$465,000**

---

## ClearMaps Addendum

**Address** ⭐ 37472 Yorkshire Dr, Palmdale, CA 93550
**Loan Number** ██████   **Suggested List** $475,000   **Suggested Repaired** $475,000   **Sale** $465,000



| Comparable | | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|---|
| ⭐ | Subject | 37472 Yorkshire Dr, Palmdale, CA 93550 | -- | Parcel Match |
| L1 | Listing 1 | 1702 E Avenue R3, Palmdale, CA 93550 | 0.66 Miles [1] | Parcel Match |
| L2 | Listing 2 | 36755 Fiddleneck Ct, Palmdale, CA 93550 | 0.98 Miles [1] | Parcel Match |
| L3 | Listing 3 | 37226 27th St E, Palmdale, CA 93550 | 0.59 Miles [1] | Parcel Match |
| S1 | Sold 1 | 37136 Ran Dr, Palmdale, CA 93550 | 0.49 Miles [1] | Parcel Match |
| S2 | Sold 2 | 2123 E Avenue R12, Palmdale, CA 93550 | 0.17 Miles [1] | Parcel Match |
| S3 | Sold 3 | 1722 E Avenue R4, Palmdale, CA 93550 | 0.58 Miles [1] | Parcel Match |

[1] The Comparable "Distance from Subject" value has been calculated by the Clear Capital system.
[2] The Comparable "Distance from Subject" value has been provided by the Real Estate Professional.

# DRIVE-BY BPO
by ClearCapital

**37472 YORKSHIRE DR**
PALMDALE, CA 93550

**Loan Number** ████████

**$465,000**
● As-Is Value

## Satellite Map Addendum

**Address** ⭐ 37472 Yorkshire Dr, Palmdale, CA 93550
**Loan Number** ████████    **Suggested List** $475,000    **Suggested Repaired** $475,000    **Sale** $465,000



| Comparable | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|
| ⭐ Subject | 37472 Yorkshire Dr, Palmdale, CA 93550 | -- | Parcel Match |
| L1 Listing 1 | 1702 E Avenue R3, Palmdale, CA 93550 | 0.66 Miles [1] | Parcel Match |
| L2 Listing 2 | 36755 Fiddleneck Ct, Palmdale, CA 93550 | 0.98 Miles [1] | Parcel Match |
| L3 Listing 3 | 37226 27th St E, Palmdale, CA 93550 | 0.59 Miles [1] | Parcel Match |
| S1 Sold 1 | 37136 Ran Dr, Palmdale, CA 93550 | 0.49 Miles [1] | Parcel Match |
| S2 Sold 2 | 2123 E Avenue R12, Palmdale, CA 93550 | 0.17 Miles [1] | Parcel Match |
| S3 Sold 3 | 1722 E Avenue R4, Palmdale, CA 93550 | 0.58 Miles [1] | Parcel Match |

[1] The Comparable "Distance from Subject" value has been calculated by the Clear Capital system.
[2] The Comparable "Distance from Subject" value has been provided by the Real Estate Professional.

# DRIVE-BY BPO
by ClearCapital

17472 YORKSHIRE DR
PALMDALE, CA 93550

Loan Number 

$465,000
● As-Is Value

---

### Addendum: Report Purpose

**Market Approach and Market Time**

The Market Approach of this report, as established by the customer, is: **Fair Market Price**. (See definition below.)
The Marketing Time as specified by the customer is **Typical**. (See definition below.)

| | |
|---|---|
| Definitions: | |
| Fair Market Price | A price at which the property would sell between a willing buyer and a willing seller neither being compelled by undue pressure and both having reasonable knowledge of relevant facts. |
| Distressed Price | A price at which the property would sell between a willing buyer and a seller acting under duress. |
| Marketing Time | The amount of time the property is exposed to a pool of prospective buyers before going into contract. The customer either specifies the number of days, requests a marketing time that is typical to the subject's market area and/or requests an abbreviated marketing time. |
| Typical for Local Market | The estimated time required to adequately expose the subject property to the market resulting in a contract of sale. |



# DRIVE-BY BPO
by ClearCapital

37472 YORKSHIRE DR      $465,000
PALMDALE, CA 93550    Loan Number    ● As-Is Value

---

## Addendum: Report Purpose - cont.

### Report Instructions

This section shows the instructions that were approved by the customer and provided to the broker prior to completing the report.
Instructions last updated: 7/19/2017
Purpose:
Please determine a fair market price for this property at which it would sell in a typical marketing time for the area.

Customer Requirements:
**Do not use updated or renovated comps, unless you can provide concrete proof that the subject has been recently renovated.
**Please copy and paste the comparable's description and condition comments directly from MLS. This request is unique to this customer only**
1. The client is under the assumption the property is in average condition. If the property is in better than average condition, detailed commentary must be added to the report along with documentation supplied through the Docs & Data tab.
2. Please do not use updated or renovated comps, unless you can provide concrete proof that the subject is renovated.
3. If the subject is being priced above its current list price, extensive commentary must be put into the report to explain why.
4. Please take photos of any notices on the subject, and comment on them in the report. If you can not get close enough to read what is contained in the notice, then comment on this as well.
New York:
**If this property is located within one of the 5 boroughs of New York City, please make sure to follow and include commentary, within the report on the following**

1. You are an expert in the borough the subject is located in and preferably located within 4 miles of the subject (no comment needed)
2. You have access to local MLS/Property Shark/NYC comp search sites
3. Your report identifies the following:

· Comps from the same neighborhood as the subject
· Any rent control for the subject/comps
· Legal Use of the subject
· Is the subject located in any historical areas
· Any utility liens on the subject
· Comps are of the same construction as the subject (brick, brownstone, limestone, siding)

Comparable Requirements:

1. Please use fair market comps from the same neighborhood, block or subdivision whenever possible.

# DRIVE-BY BPO
by ClearCapital

**37472 YORKSHIRE DR**
PALMDALE, CA 93550

Loan Number

**$465,000**
⬤ As-Is Value

## Report Instructions - cont.

2. Please only use REO comparables if the market is driven by REOs and they are comparable in characteristics and condition.
3. Please use comps that have closed in the past 3 months to show the current market conditions or comment in the report if this is not possible. In rapidly changing markets, active listing comps should be given equal or greater weight than sold comps in your analysis.

Standard Instructions:
1. Clear Capital Code Of Conduct - Please make sure that you are always abiding by the Clear Capital Code of Conduct when completing valuation reports.
2. If the subject is currently listed, please consider all available information pertaining to the subject's condition. This information should be utilized when developing the assumption of the subject's condition.
3. Use the subject characteristics provided in the report Grid (if preloaded) to evaluate the property. This information is from a full interior appraisal and is assumed to be most accurate. If your inspection reveals obvious inaccuracies, please explain in the narrative of the report.
4. Include sufficient detail to help our mutual customer gain a complete understanding of the subject's neighborhood such as neighborhood desirability, amenities, parks, schools, commercial or industrial influences, REO activity, traffic, board-up-homes, etc.
5. Do not approach occupants or owners.
6. If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for direction on how to proceed with the report.
7. Please do not accept if you or your office has completed a report on this property in the last month, are currently listing this property, or have any vested interest in the subject property.
8. Clear Capital does not allow any log ins from IP addresses from foreign countries. This includes, but is not limited to; data entry services, form completion services, etc. Also, it is against Clear Capital code of conduct to share your password with anyone who is not a W2 employee in your office.
9. Clear Capital and our mutual customers greatly appreciate your expertise. If you cannot personally inspect the property, select comparables, and determine a price for the subject, please do not accept this report. Per the standards and guidelines adopted by Clear Capital and other industry leaders, the use of assistants to complete any of the aforementioned tasks is not permitted.
10. No part of your analysis or reporting may be based on the race, color, religion, sex, actual or perceived sexual orientation, actual or perceived gender identity, age, actual or perceived marital status, disability, familial status, national origin of either the prospective owners or occupants of the subject property, present owners or occupants of the property, or present owners or occupants of the properties in the vicinity of the subject property, or on any other basis prohibited by federal, state or local law.

Due to the importance of an independent opinion of price, please do not discuss your price with anyone or be influenced by list price, pending offers, accept comp packets, repair estimates or the listing agent's opinion.
1. One current, original photo of the front of the subject
2. One current, original address verification photo
3. One current, original street scene photo looking down the street
4. Labeled MLS listing and sold comp photos required; please comment if no MLS.

# DRIVE-BY BPO
by ClearCapital

Case 8:22-bk-12143-SC    Doc 124-1    Filed 05/03/23    Entered 05/03/23 12:47:15    Desc
Exhibits    Page 65 of 67

17472 YORKSHIRE DR
PALMDALE, CA 93550

$465,000

Loan Number

● As-Is Value



## Broker Information

| | | | |
|---|---|---|---|
| **Broker Name** | Ian Twyford | **Company/Brokerage** | ReEbroker |
| **License No** | 01822519 | **Address** | 45228 SAIGON AVE LANCASTER CA 93534 |
| **License Expiration** | 08/28/2023 | **License State** | CA |
| **Phone** | 7072170779 | **Email** | ianmtwyford@gmail.com |
| **Broker Distance to Subject** | 10.54 miles | **Date Signed** | 04/05/2023 |

*By confirming the above contact and real estate license information and submitting the report, the above signed hereby certifies and agrees that: 1) I personally took the pictures, selected comparables, and determined the price conclusion. 2) To the best of my knowledge, the statements of fact contained in this report are true and correct. 3) The reported analyses, opinions, and conclusions are my personal, impartial, and unbiased professional analyses, opinions, and conclusions. 4) I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved. 5) I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment. 6) My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined price point. 7) I did not base, either partially or completely, my analysis and/or opinion and conclusions in this report on race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law. 8) I maintain errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of this Report.*

## Disclaimer

**This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). It is not to be construed as an appraisal and may not be used as such for any purpose.**

**Unless otherwise specifically agreed to in writing:**
**The intended purpose of this report is to assist the Clear Capital account holder in making decisions within the scope of applicable statutory and regulatory requirements and performing required due diligence. This document is provided solely for the use of the Clear Capital account holder and not any other party, is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. In the event that this document is found to be defective, incorrect, negligently prepared or unfit for its authorized use, Clear Capital's sole liability shall be to promptly refund the total fee expended by the account holder for this report or to replace it at no charge to the account holder, but in no event shall Clear Capital be responsible to the account holder for any indirect or consequential damages whatsoever. This warranty is in lieu of all other warranties, express or implied, except where otherwise required by law. The account holder shall notify Clear Capital within thirty (30) days of this report's delivery to the account holder if it believes that this document is defective, incorrect, negligently prepared or unfit for its authorized use. Under no circumstances may Clear Capital forms or their contents be published, copied, replicated, or mimicked.**

## DECLARATION

I, _Ian Twyford_ declare as follows:

1.    I have been a real estate _Salesperson_, duly licensed by the State of California, and I have been actively involved in real property sales transactions in the State of California since _2007_. I am currently associated with _REe Broker_ located at _Lancaster, CA_. My responsibilities include the inspection and valuation of residential real property listed for sale and the review and analysis of data concerning the sale and listing prices of similar properties. During my _13_ years as a real estate _Salesperson_, I have performed more than _1,000_ property valuations of residential real property in the State of California based upon visual inspection and comparable sales and listing information.

2.    On _4/5/2023_, at the request of _Clear Capital_, I performed a property value analysis of a residential property located at _37472 Yorkshire Dr._ and prepared a written report of my analysis, a true and correct copy of which is attached hereto as Exhibit "D" and incorporated herein by this reference. I have no present or future interest in the property, which was the subject of my analysis and report, and I have no personal interest in or bias toward the parties involved in this matter. Neither my employment nor my compensation si contingent upon the reporting of any pre-determined value of the property, the attainment of any particular result or the outcome of the matter presently before the court.

3.    I personally performed an exterior inspection of the subject property and the exterior of each of the comparable properties described in my written report. I also examined and considered secondary sources of information concerning the subject property and the comparable properties described in my written report. Based upon those inspections and upon the information

- 1 -

1  contained in my written report, I estimate that the subject property has a fair market value of

2  $ _465,000_____, as of _4/5/2023___.

3      4.      The foregoing facts are known to me personally, and if called as a witness, I would

4  testify competently thereto.

5      I declare under penalty of perjury under the laws of the United States that the foregoing

6  facts are true and correct.

7

8      Executed this _6th_ day of _April_____, 2023, at _Lancaster___,

9  California.

10

11                              X _____

12                              Signature

13                              _Realtor_____

14                              Title

15

16

...

-2-