1

Andy C. Warshaw, Esq. (State Bar No. 263880)
Financial Relief Law Center, APC

2

1200 Main St., Suite C
Irvine, CA 92614

3

Direct Phone: 714-442-3319
Facsimile: 714-361-5380

4

Email: awarshaw@bwlawcenter.com

5

Attorneys for Debtor in Possession

6

7

UNITED STATES BANKRUPTCY COURT

8

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

9

IN RE

10

2ND CHANCE INVESTMENT GROUP, LLC

11

Debtor and Debtor in Possession.

| | |
|---|---|
| Case No. 8:22-bk-12142-SC | |

Chapter 11

**DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11
LIQUIDATING PLAN DATED MAY 10,
2023**

**Disclosure Statement Hearing:**
Date:  July 19, 2023
Time:  1:30 pm
Place:  United States Bankruptcy Court[1]
411 West Fourth Street, Suite 5130 /
Courtroom 5C
Santa Ana, CA 92701-4593

**Plan Confirmation Hearing:**
Date:   TBD
Time:
Place:

12

13

14

15

16

17

18

19

20

21

22

23

24

---

[1] By way of Zoom.gov.  See the Notice for Additional Information and Hearing Access.

# I.    Table of Contents

I.    Introduction ...................................................................................................... 5

A.    The Purpose of this Docummument ................................................. 6
B.    Deadlines for Voting and Objecting .............................................. 7
C.    Time and Place for the Plan Confirmation Hearing ....................... 7
D.    Disclaimer .................................................................................... 8
II.    Background .................................................................................................. 8

A. Description of the Debtor's Business .......................................................... 8
B.    Events Leading to the Filing of the Debtor's Chapter 11 Case ..... 8
C.    Events Occurring During the Chapter 11 Case .............................. 9
III.    Plan Summary ........................................................................................ 15

IV.    Classification and Treatment of Claims and Interests Under the Plan ...... 15

I.    Classified Claims .................................................................. 20
A.    Secured Claims ............................................................... 20
1.    Class 1 – Unimpaired Secured Claims ............................ 20
There are no claims in this class. ................................................. 20
2.    Class 2 – Impaired Secured Claims .............................. 20
B.    Class of Priority Claims ................................................. 24
1.    Lease Assumptions and Rejections ................................ 24
2.    General Unsecured Claims .............................................. 26
V.    Means of Effectuating the Plan ............................................... 27

A.    The Liquidating Trust .......................................................... 27
1.    Execution of the Liquidating Trust Agreement ............... 27
2.    Purpose of the Liquidating Trust .................................. 27
3.    Transfer of Property to the Liquidating Trust ................. 28
4.    Governance of the Liquidating Trust ........................... 29
5.    Designation of Liquidating Trustee ............................... 29
6.    Rights, Powers, and Privileges of the Liquidating Trustee ............ 30
7.    Agents and Professionals ................................................ 30
8.    Investment and Safekeeping of Trust Property ............... 30
9.    Use of Existing Accounts .............................................. 31
10.    Limitations on the Liquidating Trustee and Payment of Fees ....... 31
11.    Bankruptcy Court Approval of Liquidating Trustee Actions ........ 32
12.    Valuation of Trust Property .......................................... 32
13.    Distributions .................................................................. 32
14.    Pro Rata Share of Distributions .................................... 33
15.    Delivery of Distributions .............................................. 33
16.    Undelivered Property .................................................... 33
17.    De Minimus Distributions .............................................. 33
18.    Payments Limited to Trust Property ............................. 34
19.    Fees and Expenses ........................................................ 34

20. Priority of Distributions ................................................................. 34
21. Compliance with Laws ................................................................... 34
22. Identification fo the Beneficiaries of the Liquidating Trust ........................... 35
23. Beneficial Interest Only ................................................................. 35
24. Ownership of Beneficial Interest Hereunder ............................................. 35
25. Evidence of Beneficial Interest .......................................................... 35
26. Conflicting Claims ...................................................................... 35
27. Limitation on Transferability ........................................................... 36
28. Parties Dealing with the Liquidating Trustee ........................................... 36
29. Liquidating Trustee's Rights ............................................................ 36
30. Liquidating Trustee as Successor in Interest to the Debtor and Committee ... 37
31. Indemnity ............................................................................... 37
32. Initial Liquidating Trustee .............................................................. 38
33. Terms of Service for the Liquidating Trustee ........................................... 38
34. Removal of the Liquidating Trustee ..................................................... 38
35. Resignation of the Liquidating Trustee .................................................. 38
36. Appointment of Successor Trustee ...................................................... 39
37. Powers and Duties of Successor Trustee ................................................ 39
38. Trust Continuance ...................................................................... 39
39. Compensation of Costs of Administration ............................................... 39
40. Annual Reporting and Filing Requirements ............................................. 40
41. Confidentiality .......................................................................... 40
42. Maintenance of records ................................................................. 41
43. Duration of the Liquidating Trust ...................................................... 41
44. Termination of the Liquidating Trust ................................................... 41
45. Continuance of the Liqudating Trust for Winding Up.................................... 42
46. Preservation of Privilege ................................................................ 42
47. No Bond ................................................................................ 43
48. Governing Law of the Liquidating Trust ................................................ 43
49. Successors and Assigns .................................................................. 43
50. No Execution ........................................................................... 43
51. Intention to Establish Grantor Trust .................................................... 43
52. Amendment of the Liquidating Trust ................................................... 43
B. Settlement Agreements .................................................................. 44
C. Claims and Administration and Prosecution and Plan Distributions.............. 44
D. Books and Records of the Debtor ...................................................... 44
E. Corporate Action........................................................................ 45
F. Effectuating Documents and Further Transactions....................................... 45
G. Dissolution of the Debtor................................................................ 45
H. Dissolution of the Debtor's Board ...................................................... 45
I. Termination of the Committee .......................................................... 46
J. Procedures for Disputed, Contingent, or Unliquidated Claims ..................... 46
i. Objections to Claims.................................................................... 46
ii. No Distribution Pending Allowance of Claims .......................................... 46
iii. Establishment and Maintenance of a Reserve for Disputed Claims.............. 46
iv. Distributions upon Allowance of Disputed Claims ...................................... 47
v. Resolution of Disputed Claims ......................................................... 47
vi. Estimation ............................................................................. 47

K.          Distributions  to be Made Pursuant to this Plan.................................... 48
L.          Exculpations and Release .................................................................. 48
M.          Retention and Distribution ................................................................. 49
    VI.    Tax Consequences of the Plan .............................................................. 50

    VII.   Confirmation Requirements and Procedures ......................................... 51

    VIII.  Risk Factors Regarding the Plan.......................................................... 55

    IX.    Effect of Confirmation of the Plan ....................................................... 56

1.          Discharge ........................................................................................... 56
2.          Modification of the Plan ..................................................................... 56
3.          Post-Confirmation Status Reports....................................................... 56
4.          Final Decree ....................................................................................... 56
N.          Temporal Conditional Injunction......................................................... 56
    X.     General Provisions.............................................................................. 57

1.          Definitions and Rules of Construction.................................................. 57
2.          Binding Effect .................................................................................... 57
3.          Captions ............................................................................................ 57

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

## I.    Introduction

2nd Chance Investment Group, LLC, the debtor and debtor in possession provides this Disclosure Statement Describing Chapter 11 Plan of Reorganization ("Disclosure Statement") to creditors, pursuant to 11 U.S.C. § 1125 of the Bankruptcy Code, in connection with the solicitation of acceptance of its Chapter 11 Plan of Reorganization ("Plan") filed with the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court") in the above-captioned chapter 11 case (the "Case").

On December 21, 2022 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code") or "Code").  Chapter 11 allows the Debtor, and in some circumstances, creditors, and other parties in interest, to propose a plan of reorganization or plan of liquidation.  The Plan proposed by the Debtor, as the plan proponent, is a plan of liquidation. The following exhibit list provides general information and supporting evidence for the Disclosure Statement.

| Exhibit Number | Description |
| --- | --- |
| 1 | Liquidating Trust Agreement |
| 2 | Hypothetical Chapter 7 Liquidation |
| 3 | Claims of the Estate |
| 4 | Tax Analysis |
| 5 | Disputed, Contingent, and Unliquidated Claims |
| 6 | Chapter 11 Ballot |
| 7 | Stipulation and Order thereon with Committee |

Your rights may be affected by the Plan and Disclosure Statement.  You should read these papers carefully and discuss them with your attorney if you have one. If you do not have an attorney, you may wish to consult with one.  Any interested party desiring further information about the Plan should contact Andy C. Warshaw or Amanda G. Billyard, by phone at (949) 570-5466 or by email at awarshaw@bwlawcenter.com or abillyard@bwlawcenter.com.

The effective date of this Plan (the "Effective Date") is the first day of the following month that is at least fifteen days after the date an order confirming Debtor's plan is entered, assuming that there has been no order staying the effectiveness of the order confirming the plan (the "Confirmation Order"). For example, if the Confirmation Order is entered on October 18, 2023, the Effective Date would be December 1, 2023.

## A.  The Purpose of this Documument

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process that the Court follows to determine whether it is appropriate to confirm the Plan. READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:

(1) WHO CAN VOTE OR OBJECT;
(2) WHAT THE TREATMENT OF YOUR CLAIM IS UNDER THE PLAN (i.e. what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT AND WHEN YOUR CLAIM WOULD RECEIVE A DIVIDEND IN A CHAPTER 7 LIQUIDATION VERSUS THE PROPOSED PLAN.
(3) THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE;
(4) WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;
(5) THE EFFECT OF PLAN CONFIRMATION; AND
(6) WHETHER THE PLAN IS FEASIBLE.

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting with your own attorney to obtain more specific legal advice about the Plan and its impact on your claim, including what your best course of action may be.  Financial Relief Law Center, APC is counsel for the Debtor in Possession and does not represent you or any creditor.  Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, then the Plan controls. The Bankruptcy Code requires that a disclosure statement

contain "adequate information" relating to the Plan.  [This Bankruptcy Court has not yet approved this

document as having adequate information.][2]

## B.  Deadlines for Voting and Objecting

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

DISCLOSURE STATEMENT SO THAT THE TERMS OF THE PLAN ARE NOT YET BINDING

ON ANYONE.  IF THE COURT DOES CONFIRM THE PLAN, THEN THE PLAN WILL BE

BINDING ON THE DEBTOR AND ALL CREDITORS IN THIS CASE.

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and

return the ballot in the enveloped envelope to Financial Relief Law Center, APC, Attn: Andy C.

Warshaw, 1200 Main St., Suite C, Irvine, CA 92614.  You may, preferably, utilize email by submitting

your ballot to awarshaw@bwlawcenter.com.  Facsimile is also an option by sending to (714) 361-5380.

Your ballot must be received by 5:00 pm, Pacific Standard Time, on or before [_____][3] or it will not

be counted.

Objections to the confirmation of the Plan must be filed with the Court and served upon cou nsel

for the Debtor as to be received no later than [_____][4].

## C.  Time and Place for the Plan Confirmation Hearing

The Hearing where the Court will determine whether to confirm the Plan (the "Plan

Confirmation Hearing") will take place on [_____][5], before the Honorable Scott C. Clarkson, United

States Bankruptcy Judge for the Central District of California, in Courtroom 5C (Virtual), located at 411

W. Fourth St., Santa Ana, CA 92701-4593.

---

[2] This information will be updated upon approval of the Disclosure Statement as having adequate information for solicitation purposes.
[3] Id.
[4] Id.
[5] Id.

### D. Disclaimer

The information contained in this Disclosure Statement is provided for and created by the Debtor and its professionals. The financial data relied upon in formulating the Plan is based on the Debtor's books and records which are unaudited. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should oppose or support the Plan.

## II.    Background

### A. Description of the Debtor's Business

Debtor began operations in 2016 as a real estate investment company that bought, fixed, and sold real property. The Debtor obtained financing to purchase real property and then used those funds to fix and re-sell the real property. Available funds were then disbursed to investors of the projects. The investors were typically paid upon the sale of real property when the company generated a profit; but the shift in the real estate market and rising interest rates obliterated the profitability of the Debtor's business model, forcing it into bankruptcy.

### B. Events Leading to the Filing of the Debtor's Chapter 11 Case

The shifting of economic forces meant that the Debtor was no longer able to sell real estate at a profit and generate ample returns to cover promissory note obligations. The result subjected the Debtor to litigation initiated by Plaintiffs, Hiten Ram Bhakta & Sajan Bhakta, along with their related entities ASB Ventures and Precision Realty Fund ("Bhakta"). These creditors are listed as insiders based on their influence on the Debtor, including the unduly influenced, pre-petition payments listed in the Debtor's Statement of Financial Affairs to Schorr Law Group and Precision Realty Fund LLC totaling $475,000.

The lawsuit by Bhakta alleged $5 million in damages relating to the following properties: 1016 Portal Ave., Bakersfield, CA 93308; 37915 Marsala Drive, Palmdale, CA 93552; 25641 Byron Street, San Bernardino, CA 92410; 827 North Meridian Avenue, San Bernardino, CA 92410; and 730 - 732 East 78th Street, Los Angeles, CA 90001. The Debtor's bankruptcy proceeding stayed the Bhakta

litigation with claims being provided for in the Plan. The Debtor maintains the right post-confirmation to pursue preference or other claims against Bhakta.

## C.  Events Occurring During the Chapter 11 Case

### 1.  The Debtor's Schedules, Interim Statements, and Operating Reports

The Debtor believes that the Estate complies with the requirements under 11 U.S.C. §§521, 1006, and 1107, and the applicable Guidelines of the Office of the United States Trustee ("UST")[6]. The Debtor filed a complete petition, schedules, and statement of financial affairs on the Petition Date. Subsequent schedules were amended as additional or updated information became available. The Debtor filed all its monthly operating reports through March of 2023. April 2023 MOR is not yet due.

### 2.  Use of Cash Collateral

The Debtor filed two separate stipulations with Lantzman Investment Group, LLC and LMF 2, LP on January 11, 2023 ("CC Stipulations").  The CC Stipulations address eight of the Debtor's parcels of real property and are the only parcels of real property that are both subject to assignment of rent provision or a lien on cash proceeds, some of which generate rental income during the Case. The Debtor sought approval of the CC Stipulations by way of a motion to approve the stipulations which was granted after a hearing, with an order entered on February 9, 2023, as ECF No. 41 for the final use of cash collateral. The order approving the CC Stipulations allows the Debtor to use cash collateral for expenses incurred in connection with each of the parcels of real property of the bankruptcy estate that are necessary to preserve the real property of the bankruptcy estate. No payments are required to the secured creditor in 2023 as part of the CC Stipulations.

### 3.  Insider Compensation

The principal of the Debtor did not and does not request insider compensation.  There are no other insiders who sought approval of or will seek approval of insider compensation.

---

[6] https://www.justice.gov/ust/file/volume_3_chapter_11_case_administration.pdf/download

### 4. Formation of the Official Committee of Unsecured Creditors

The UST filed an amended notice of appointment of a Creditor's Committee ("Committee"), which comprises Felipe Gutierrez Jr., Jesus Acosta, Straten Lending Group, LLC, ASB Ventures LLC, Precision Realty Fund, LLC, and Zona AZ LLC. The Committee employed Goe Forsythe & Hodges LLP ("Goe Forsythe") as its counsel.

### 5. Employment of Estate Professionals

#### a. Financial Relief Law Center, APC

The Debtor filed an application to employ Financial Relief Law Center, APC ("Lawcenter") on December 21, 2022, as ECF No. 2. The Court entered an order approving employment on January 19, 2023, as ECF No. 25.

#### b. David Goodrich as the Debtor's Chief Restructuring Officer

The Debtor filed its Motion of The Debtor and Debtor-In-Possession for Order Approving Services Agreement with David M. Goodrich Pursuant To 11 U.S.C. § 363(B) ("CRO Motion") on February 10, 2023, as ECF No. 42.

The CRO Motion sought approval of a services agreement ("Agreement") entered between the Debtor and David M. Goodrich ("Goodrich"). Under the Agreement, Goodrich serves as the Debtor's chief restructuring officer and will be compensated monthly at a discounted hourly rate from his regular attorney rate. The CRO Motion indicated that engagement of Goodrich would enable the Debtor to better navigate the bankruptcy process, prepare and report the Debtor's financial data to the other interested parties in the Case and to the Court, ensure the interests of the Debtor's creditors are protected, and assist with formulating a chapter 11 plan. In addition to assisting with bankruptcy-related matters, Goodrich, an experienced bankruptcy trustee and lawyer, will collect rent, pay ordinary business expenses, maintain the Debtor's properties, communicate with tenants, and assist with general and special counsel with preparing the Debtor's property for sale. The CRO Motion was approved by an order entered on March 1, 2023, as ECF No. 61.

#### c. Broker Employment to Liquidate Real Property

The Debtor is liquidating all real property of the Estate.  The Debtor filed its Application of 2nd Chance Investment Group LLC to Employ Broke & co-Brokers Pursuant to 11 U.S.C. §§327 and 328 on March 26, 2023.  The employment application was approved employing brokers and co-brokers as summarized below.

| Address | Broker | Co-Broker | Listing Price | Commission |
|---|---|---|---|---|
| 324 W. 47th Pl. Los Angeles, CA 90037 | Coldwell Banker | None. | $640,000 | 6% |
| 730 E. 78th St. Los Angeles, CA 90001 | Coldwell Banker | None. | $685,000 | 6% |
| 13352 Marty Lane Garden Grove, CA 92843 | Coldwell Banker | None. | $700,000 | 6% |
| 37472 Yorkshire Dr. Palmdale, CA 93550 | Coldwell Banker | Citrus Grove Real Estate | $410,000 | 6% |
| 37915 Marsala Dr. Palmdale, CA 93552 | Coldwell Banker | Citrus Grove Real Estate | $420,000 | 6% |
| 43933 30 St. E. Lancaster, CA 93535 | Coldwell Banker | Citrus Grove Real Estate | $305,000 | 6% |
| 25641 Byron St. San Bernardino, CA 92404 | Coldwell Banker | 44 Realty | $480,000 | 6% |
| 3025 Glenview Ave. San Bernardino, CA 92407 | Coldwell Banker | 44 Realty | $365,000 | 6% |
| 827 N. Meridian Ave. San Bernardino, CA 92410 | Coldwell Banker | 44 Realty | $460,000 | 6% |

| 1004 Peachwood Ct., Los Banos, CA 93635 | Coldwell Banker | Keller Williams / Coldwell Banker | $400,000 | 6% |
|---|---|---|---|---|
| 1611 151st St., San Leandro, CA 94578 | Coldwell Banker Southern California | Coldwell Banker Northern California | $600,000 | 6% |
| 1016 Portal Ave. Bakersfield, CA 93308 | Coldwell Banker | REMAX Golden Empire | $240,000 | 6% |
| 3122 Emery Lane Robbins, IL 60472 | EXP Realty | None. | $85,000 | 6% |
| 8607 Custer Road SW, Lakewood, WA 98499 | Keller Williams Tacoma | None | $395,000 | 6% |

    d.   Eviction Counsel

The Debtor intends to employ Bewley, Lassleben & Miller, LLP to assist the Debtor with any eviction actions. The terms of this professional's engagement will be subject to court approval of both employment as well as fees and expenses.

    e.   Committee's Counsel

The Committee employed Goe Forsythe & Hodges LLP by motion filed on February 14, 2023, as ECF No. 51. The rights of the Debtor to pursue claims of the Estate are subject to a Stipulation with the Official Committee of Unsecured Creditors ("Stipulation"). The terms of the Stipulation, by which a copy of the terms and agreement with the Official Committee of Unsecured Creditors is attached as Exhibit C to the Plan, are incorporated into the Plan and Disclosure Statement.

The Stipulation provides the Official Committee of Unsecured Creditors, by and through its counsel, the ability to (a) investigate Avoidance Actions, (b) file, serve, prosecute, and settle (subject to separate Bankruptcy Court approval) Avoidance Actions, whether in the Bankruptcy Court or another forum, and (c) grant releases of liability with respect to Avoidance Actions that are settled pursuant to

separate Bankruptcy Court approval. It grants further authority to the Committee to investigate and

prosecute objections to non-Committee Member proofs of claim on behalf of the Estate.  The Committee

may continue to pursue claims post-confirmation consistent with the terms of the Stipulation or

alternatively the Trustee may hire the Committee's counsel to continue with the terms of the Stipulation.

f.   Grobstein Teeple LLP

A motion is pending to employ Grobstein Teeple LLP which will provide tax advice, prepare tax

returns, assist in the preparation of monthly operating reports and both pre- and post-confirmation UST

guidelines, such as post-confirmation reporting.  Grobstein Teeple LLP created the liquidation analysis

in Exhibit 2 and the tax analysis in Exhibit 4 as part of this Disclosure Statement.

### 6.  Abandonment of Mercedes-Benz Vehicles

Debtor's Motion to Abandon Personal Property of the Estate was filed on February 21, 2023, as

ECF No. 55 ("Abandonment Motion"). The Abandonment Motion sought to abandon four separate 2021

Mercedes-Benz Sprinter 2500 Cargo High Roof vans because there was no value or benefit to the

bankruptcy estate after accounting for encumbrances, accompanied by the Debtor's non-operating Plan

whereby no vehicles are required to effectuate the Plan.

Ally Financial sought relief from stay on its collateral, the fourth 2021 Mercedes-Benz Sprinter

2500 Cargo High Roof Van, and the Debtor anticipates that Mercedes-Benz Financial Services, which is

the creditor on three of the four 2021 Mercedes-Benz Sprinter 2500 Cargo High Roof vans, will seek

relief from stay on its collateral.  The Debtor filed a non-opposition to the granting of Ally Financial's

relief from stay motion.

### 7.  Professional Fee Applications

Financial Relief Law Center, APC, David M. Goodrich, and Grobstein Teeple LLP intend to file

fee applications soon after the Plan and Disclosure Statement documents are filed. The Debtor will work

with the Committee to sync all professional fee applications for a hearing.

### 8. Claims Bar Date

The Court entered an order setting bar date for filing proofs of claim on January 23, 2023, as ECF No. 28. The general bar date set was April 10, 2023, with exceptions as set forth in mandatory court form F 3003-1.Notice.BarDate. The Debtor filed and served the Notice of Bar date for Filing Proofs of Claim in a Chapter 11 on January 24, 2023, as ECF No. 30.

### 9. Summary of Outstanding Debts of the Estate

The outstanding debts of the Estate consist of:

- <u>Secured Debt</u>. The Estate consists of secured claims on three separate Mercedes-Benz vehicles by Mercedes-Benz Financial, and a third by Ally Bank, each of which are subject to relief from stay motions. Mercedes-Benz Financial Services filed its claims past the claims bar date.

- The Small Business Administration holds an abstract claim against the Debtor but because there is nothing for the lien to attach, the claim is being treated in full as a general unsecured claim.

- The remaining secured claims of the Estate attach to the real property of the Debtor that will be paid in the sale of the encumbered real property.

- <u>Administrative Debt</u>. The administrative claims of the Estate, such as post-petition debt, will consist of (i) all outstanding fees and expenses of the professionals employed in the Case in the amounts allowed by the Court in connection with interim and final fee applications that each of the professionals will be required to file with the Court following confirmation of the Plan; and (ii) any outstanding amounts owed to the UST[7] and the Clerk of the Court.

- <u>Priority Tax Debt</u>. The priority unsecured debt consists of Claim 7 filed by the Internal Revenue Service for WT-FICA claims in 2021 and 2022, and estimated tax liabilities for 2022. The total priority unsecured claim of the Internal Revenue Service is $7,972.89. The other priority unsecured claim is by

---

[7] The Debtor takes the position that quarterly fees to the United States Trustee are not generated by the creation of the Liquidating Trust.

the Franchise Tax Board filed as Claim 7 for $866.63. These claims may be affected by the filing of payroll tax returns by the Debtor with the employment of Grobstein Teeple LLP.

-   <u>General Unsecured Debt</u>.  The general unsecured debt of the Estate consists of all debt scheduled by the Debtor as not being disputed, contingent, or unliquidated and debt asserted by creditors in all timely filed proofs of claim that are not successfully objected to by a party in interest. <u>Exhibit 3</u> to the Disclosure Statement provides information on claims, including estimated allowed claims in the general unsecured class.

## III.   Plan Summary

This Plan is a liquidating Plan.  On the Effective Date, the Debtor shall create and enter a liquidating trust (the "<u>Liquidating Trust</u>") for the benefit of creditors, as set forth in the Plan.  The Liquidating Trust shall be a creditors' liquidating trust for all purposes, including Treasury Regulations Section 301.77701-4(d), and is intended to be treated as a grantor trust for federal income tax purposes. The Liquidating Trust will be organized for the purpose of collecting, distributing, liquidating and otherwise disposing of all of the funds, property, claims, rights and causes of action of the Debtor and its Estate, which is assigned to the Liquidating Trustee and the Committee.  After the Liquidating Trust is created and takes ownership/assignment of all funds, property, claims, rights, and causes of action of the Debtor and its Estate, the Debtor shall dissolve or otherwise wind down pursuant to applicable law and shall not conduct any further business or activities.

## IV.   Classification and Treatment of Claims and Interests Under the Plan
### 1. General Overview

As required by the Bankruptcy Code, the Plan classifies claims in various classes according to their right to priority.  The Plan states whether each class of claims is impaired or unimpaired.  The Plan provides the treatment each class will receive.  In no event shall any creditor receive more than the creditor's Allowed Claim, plus interest, to the extent provided herein.

Unless otherwise expressly stated in the Plan, the treatment of Allowed Claims under the Plan supersedes any agreements or rights of the holders of those claims and will be in full satisfaction of any legal, equitable, or contractual rights of the holders of the claims.  Unless the Plan provides otherwise, no distributions will be made, and no rights retained on account of any claim that has not become an Allowed Claim.

### 2.  Treatment of Unclassified Claims

Certain types of claims are not placed into voting classes but are instead unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to certain treatment under the Bankruptcy Code.  Accordingly, the following claims have not been placed into any class:

### a.  Administrative Expenses

Administrative expense claims are those for costs or expenses of administering the Debtor's Case that are allowed under § 507(a)(2) of the Bankruptcy Code.  The Bankruptcy Code requires tha tall allowed administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.  The following chart lists all of the Debtor's § 507(a)(2) unpaid administrative claims and their treatment under the Plan:

| Description | Estimated Amount Owed | Treatment |
|---|---|---|
| Bankruptcy Court Clerk's Office | $0 | Paid in full before or upon the Effective Date |
| United States Trustee | To be determined | The quarterly fee is calculated by totaling the reported disbursements for the three-month calendar quarter, or portion thereof, according to the fee schedules shown below.  The quarterly fee amount will be estimated if disbursements for all the months of a calendar quarter that the case is open have not been reported to the United States Trustee. The estimated fee is based on a) the reported disbursement history, b) the debtor's initial financial data submitted when the case was filed, or c) the United States Trustee's estimate.  If there is a disagreement with the estimated quarterly fee noted on the billing statement, then Monthly |

| | | Operating Reports or actual disbursement reports supporting a different calculation must be filed with the bankruptcy court and served on the United States Trustee office. The applicable minimum fee is due even if there were no disbursements during a calendar quarter.  The fee is not prorated.

The Bankruptcy Administration Improvement Act of 2020, Pub. L. No. 116-325, enacted on January 12, 2021, temporarily amended the calculation of chapter 11 quarterly fees for calendar quarters beginning April 1, 2021, through December 31, 2025. Under this amendment, the quarterly fee payable for a calendar quarter shall be the greater of: (1) 0.4% of disbursements or $250 for each quarter in which disbursements total less than $1,000,000, and (2) 0.8% of disbursements but not more than $250,000 for each quarter in which disbursements total at least $1,000,000.

The creation of the Liquidating Trust does not qualify for and is not considered a disbursement for purposes of calculating United States Trustee fees. |
|---|---|---|
| Ordinary Course Administrative Claims | $0 | Unless the Debtor objects to the ordinary- course administrative claim, the claim will be allowed and the person holding the ordinary-course administrative claim need not file any request for payment of its claim. The ordinary-course administrative claim will be paid in full over six (6) months.  However, any request for payment, or motion to allow a claim as an ordinary-course administrative claim must be filed with the Court and served on counsel for the Debtor or the Liquidating Trustee and the OUST by no later than sixty (60) days after the Effective Date. |
| Administrative Tax Claim | $0 | Unless the Debtor objects to an administrative tax claim or otherwise disputes the administrative tax claim in accordance with applicable law, the claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the administrative tax claim, and the person holding the administrative tax claim need not file any request for payment of its claim. Any allowed administrative tax claim will be paid in the ordinary course of business, currently and timely as they are incurred and assessed, unless the Debtor objects to or otherwise disputes such administrative tax claim in accordance with applicable law.  In an event of default, and to the extent such administrative tax claim is also secured, the payment thereof will include all costs, fees, charges and interest, if applicable, as required under 11 U.S.C. §511, 11 U.S.C. § 506(b) and 511, and applicable non-bankruptcy law. The Debtor |

| | | calculates tax claims in the Disclosure Statement based on the sale of property of the Estate. |
|---|---|---|
| David Goodrich of Golden Goodrich LLP ("GGLLP") | $25,000 | GGLLP is employed under 11 U.S.C. § 363. The balance due to GGLLP will be paid directly by the Debtor. The amounts listed here are an estimate for administrative fees for GGLLP. |
| Financial Relief Law Center, APC ("Lawcenter") | $150,000 | The balance due to Lawcenter will be paid directly by the Debtor after fees and expenses are awarded by the Court. The amounts listed here are an estimate for administrative fees for Lawcenter. |
| Goe, Forsythe & Hodges, LLP ("Committee") | $75,000 | The balance due to the Committee will be paid directly by the Debtor after fees and expenses are awarded by the Court. The amounts listed here are an estimate for administrative fees for the Committee. |
| Grobstein Teeple ("GT") | $50,000 | The balance due to GT will be paid directly by the Debtor after fees and expenses are awarded by the Court. The amounts listed here are an estimate for administrative fees for GT. |
| Bewley, Lassleben & Miller, LLP | $15,000 | The Debtor intends to employ Bewley, Lassleben & Miller, LLP to assist the Debtor with any eviction actions. The terms of this professional's engagement will be subject to court approval of both employment as well as fees and expenses. |
| Estimated Total | $315,000 +/- | - |

b.  Professional Fee Claims

Any professional seeking allowance of a professional fee claim for services rendered prior to the Effective Date in connection with the Debtor's Case must (1) file their application for allowance of compensation and reimbursement of expenses on or before 45 days after the Effective Date or such other date as may be set by the Court, and (2) have the fees and expenses allowed by a ifnal order. Any party in interest may file an objection to such an applicatoin within the time provided by the Local Bankruptcy Rules or within any other period that the Court sets. Persons holding professional fee claims who do not timely file and serve their applications for payment will be forever barred from asserting these claims against the Estate or the Liquidating Trust.

c.  Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by Bankruptcy Code § 507(a)(8). The Bankruptcy Code requires that each holder of such a § 507(a)(8) priority tax claim receive the present value of such claim in regular installment payments in cash, over a period not exceeding five (5) years from the Petition Date.  The following chart lists all the Debtor's known §11 U.S.C. § 507(a)(8) claims and their treatment under the Plan.

| Description | Amount Owed | Treatment[8] |
|---|---|---|
| United States of America, on behalf of its agency, the Internal Revenue Service ("IRS")[9] | $0 | To the extent there is Trust Property available, the allowed priority tax claim will be paid in full. Alternatively, each holder of an allowed priority tax claim will receive, in full and final satisfaction of such claim, a pro rata share of the remaining Trust Property. The Debtor projects that this claim will be paid in full since it is $0.  To the extent any additional taxes become due with the sale of real property, those taxes will be paid through escrow, in full or as agreed to in writing by the IRS[10]. |

---

[8] Nothing in the Plan or Confirmation Order shall discharge, release, relieve, impair, or otherwise preclude collection of any tax liability asserted against officers or members of the Debtor's board, including, but not limited to, any assessments under 26 U.S.C. § 6672.

[9] Nothing contained in the Plan or Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtor and the Liquidating Trust, as defined in the Plan.  Nor shall the Plan or the Confirmation Order be deemed to determine the federal tax treatment of any items, distribution, or entity, including the federal tax consequences of this Plan. Nor shall anything in this Plan or the Confirmation Order be deemed to confer jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under §11 U.S.C. 505.

[10] Notwithstanding anything contained in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of the United States arising on or after the Confirmation Date; or (3) the refiling of a notice of federal tax lien to maintain perfection of the lien.  Nor shall anything in this Confirmation Order or the Plan: (i) enjoin or otherwise bar the United States or any Governmental Unit, as defined in section 101(27), from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by the United States or any Governmental Unit are discharged or otherwise barred by the Confirmation Order, the Plan, or the Bankruptcy Code.

| Franchise Tax Board ("FTB") Claim 4 Priority: $866.63 | $866.63 | To the extent there is Trust Property available, the allowed priority tax claim will be paid in full. Alternatively, each holder of an allowed priority tax claim will receive, in full and final satisfaction of such claim, pro rata shares of the remaining Trust Property. The Debtor projects that this claim will be paid in full. To the extent any additional taxes become due with the sale of real property, those taxes will be paid through escrow, in full or as agreed to in writing by the FTB. |
|---|---|---|

## I.    Classified Claims

### A.  Secured Claims

Secured Claims are claims secured by liens on property of the Estate.  The following are the classes of secured claims and their treatment under the Plan:

### 1.  Class 1 – Unimpaired Secured Claims

There are no claims in this class.

| Secured Claims[11] | | | |
|---|---|---|---|
| **Class, Creditor, and POC** | **Description** | **Impaired (Y/N)** | **Treatment** |
| **Class 1-1** | - | - | - |

### 2.  Class 2 – Impaired Secured Claims

Each of the claims in Class 2 are impaired. Each of the claims in Class 2 are impaired. There are no insiders in any Class or member of Class 2 or its subclasses.

| Secured Claims[12] | | |
|---|---|---|
| **Class, Creditor, and POC** | **Description** | **Treatment** |
| **Class 2-1** **Ally Bank** **Claim 1** | Secured Claim of Ally Bank for 2021 Mercedes-Benz Sprinter | The Debtor filed DEBTOR'S MOTION TO ABANDON PERSONAL PROPERTY OF THE ESTATE ("Motion to Abandon") on February 21, 2023, as ECF No. 55.  A relief from stay motion is currently pending that the Debtor does not oppose. Ally Bank's deficiency claim, if any exists, shall be re-classified as a general unsecured claim |

---

[11] The claim amounts set forth in this chart are based on the Debtor's records and/or proofs of claim filed by the creditor. Such amounts may vary based on, among other things, the incurrence of interest and/or payments made on account of such Secured Claims following the Petition Date.

[12] The claim amounts set forth in this chart are based on the Debtor's records and/or proofs of claim filed by the creditor. Such amounts may vary based on, among other things, the incurrence of interest and/or payments made on account of such Secured Claims following the Petition Date.

| | | |
|---|---|---|
| | ("MB1" in the Debtor's Motion to Abandon). | in Class 4. There shall be no disbursement on any secured claim in this class. |
| **Class 2-2**<br><br>**Claim 56** | Secured Claim of Mercedes-Benz Financial Services for 2021 Mercedes-Benz Sprinter ("MB2" in the Debtor's Motion to Abandon). | The Debtor filed DEBTOR'S MOTION TO ABANDON PERSONAL PROPERTY OF THE ESTATE on February 21, 2023, as ECF No. 55. A relief from stay motion is currently pending that the Debtor does not oppose. There shall be no disbursement on any secured claim in this class. Mercedes-Benz Financial Service shall not be entitled to any deficiency claim in Class 4 based on its late-filed claim. |
| **Class 2-3**<br><br>**Claim 56** | Secured Claim of Mercedes-Benz Financial Services for 2021 Mercedes-Benz Sprinter ("MB3" in the Debtor's Motion to Abandon). | The Debtor filed DEBTOR'S MOTION TO ABANDON PERSONAL PROPERTY OF THE ESTATE on February 21, 2023, as ECF No. 55. A relief from stay motion is currently pending that the Debtor does not oppose. There shall be no disbursement on any secured claim in this class. Mercedes-Benz Financial Service shall not be entitled to any deficiency claim in Class 4 based on its late-filed claim. |
| **Class 2-4**<br><br>**Claim 57** | Secured Claim of Mercedes-Benz Financial Services for 2021 Mercedes-Benz Sprinter ("MB4" in the Debtor's Motion to Abandon). | The Debtor filed DEBTOR'S MOTION TO ABANDON PERSONAL PROPERTY OF THE ESTATE on February 21, 2023, as ECF No. 55. A relief from stay motion is currently pending that the Debtor does not oppose. There shall be no disbursement on any secured claim in this class. Mercedes-Benz Financial Service shall not be entitled to any deficiency claim with no proof of claim being filed by the claims bar date of April 10, 2023. |

| Class 2-5<br><br>**U.S. Small Business Administration**<br><br>**Claim 5** | Secured Claim of U.S. Small Business Administration | The claim of U.S. Small Business Administration is secured by a UCC Financing Statement securing, "All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies, and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto, EXEMPT Per California Government Code Section 6103 PLEASE EXPEDITE [redacted text] 7808."<br><br>To the extent the Debtor or Trustee liquidate any assets secured by the U.S. Small Business Administration debt, the U.S. Small Business Administration will receive a distribution on the asset liquidated in the same extent, priority and amount that existed on the petition date, but subject to any senior lien rights perfected against the asset liquidated.  Unless the U.S. Small Business Administration agrees to release its lien or recharacterize its debt as a general unsecured debt, the U.S. Small Business Administration will not receive any distribution under the Plan as an unsecured creditor. |
| --- | --- | --- |
| Class 2-6<br><br>**Wells Fargo Bank, N.A.**<br><br>**Claim 6** | Secured claim of Wells Fargo Bank, N.A. | Wells Fargo Bank, N.A. filed Claim 6 on February 23, 2023, relating to its lien against real property located at 33232-3234 Folson Street, San Francisco, CA 94110, which is not property of the bankruptcy estate.  The Debtor objected to this claim on April 5, 2023.  The Class 2-6 creditor withdrew the claim on April 6, 2023.<br><br>Claim 6 will be treated, in its entirety, under Class 5: Disputed, Contingent, and Unliquidated Claims and will receive no dividend under the Plan. |
| Class 2-7<br><br>**Fay Servicing**<br><br>**Claim 51** | Secured claim of Fay Servicing | Real property located at 3025 Glenview Ave., San Bernardino, CA 92407 shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-7 shall be paid pursuant to the Liquidating Trust. |
| Class 2-8<br><br>**Del Toro Servicing, Inc.**<br><br>**Claim 48** | Secured Claim of Del Toro Servicing, Inc. | Real property located at 25641 Byron St., San Bernardino, CA 92404, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-8 shall be paid pursuant to the Liquidating Trust. |

| Class 2-9<br><br>**Del Toro Servicing, Inc.**<br><br>**Claim 48** | Secured Claim of Del Toro Servicing, Inc. | Real property located at 827 N. Meridian Ave., San Bernardino, CA 92410, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-9 shall be paid pursuant to the Liquidating Trust. |
|---|---|---|
| Class 2-10<br><br>**Del Toro Servicing, Inc.**<br><br>**Claim 48** | Secured Claim of Del Toro Servicing, Inc. | Real property located at 1611 1551st St., San Leandro, CA 94578, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-10 shall be paid pursuant to the Liquidating Trust. |
| Class 2-11<br><br>**FCI**<br><br>**Claim 50** | Secured claim of FCI | Real property located at 43933 30 St. E., Lancaster, CA 93535, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-11 shall be paid pursuant to the Liquidating Trust. |
| Class 2-12<br><br>**FCI**<br><br>**Claim 50** | Secured claim of FCI | Real property located at 1004 Peachwood Crt, Los Banos, CA 93635, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-12 shall be paid pursuant to the Liquidating Trust. |
| Class 2-13<br><br>**FCI**<br><br>**Claim 50** | Secured claim of FCI | Real property located at 730 E. 78th St., Los Angeles, CA 90001, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-13 shall be paid pursuant to the Liquidating Trust. |
| Class 2-14<br><br>**FCI**<br><br>**Claim 50** | Secured claim of FCI | Real property located at 1016 Portal Ave., Bakersfield, CA 93308, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-14 shall be paid pursuant to the Liquidating Trust. |
| Class 2-15<br><br>**FCI**<br><br>**Claim 50** | Secured claim of FCI | Real property located at 37915 Marsala Dr., Palmdale, CA 93552, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-15 shall be paid pursuant to the Liquidating Trust. |
| Class 2-16<br><br>**Select Portfolio Servicing**<br><br>**No claim filed.** | Secured claim by Select Portfolio Servicing | Real property located at 13352 Marty Lane, Garden Grove, CA 92843, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-16 shall be paid pursuant to the Liquidating Trust. |

| | | |
|---|---|---|
| **Class 2-17**<br><br>**Select Portfolio Servicing**<br><br>**No claim filed.** | Secured claim by Select Portfolio Servicing | Real property located at 324 W. 47th Pl., Los Angeles, CA 90037, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-17 shall be paid pursuant to the Liquidating Trust. |
| **Class 2-18**<br><br>**Selene Finance**<br><br>**Claim 55** | Secured claim by Selene Finance | Real property located at 37472 Yorkshire Dr., Palmdale, CA, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-18 shall be paid pursuant to the Liquidating Trust. |
| **Class 2-19**<br><br>**Superior Loan Servicing**<br><br>**No claim filed** | Secured claim by Superior Loan Servicing | Real property located at 8607 Custer Rd SW, Lakewood, WA 98499, shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in Class 2-19 shall be paid pursuant to the Liquidating Trust. |

## B. Class of Priority Claims

Certain priority claims that are referred to in Bankruptcy Code §§ 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes in a Chapter 11 Plan. The Bankruptcy Code requires that each holder of a priority claim receive cash on the Effective Date equal to the allowed amount of such Claim absent agreement or vote to the contrary. The Debtor in this case has no claims that fit these criteria.

### 1. Lease Assumptions and Rejections

On the Effective Date, the following executory contracts, unexpired leases, or personal guarantees of leases or contracts will be treated as obligations of the Reorganized Debtor, as follows under this Chapter 11 Plan:

| **Property Address** | **Lessee / Status** | **Summary of Lease** | **Intention** |
|---|---|---|---|

| 3025 Glenview Ave. San Bernardino CA 92407 | Occupied | To the extent that a valid contract or lease existed, it was breached by occupant for non-payment of rent. | Reject |
|---|---|---|---|
| 13352 Marty Lane Garden Grove CA 92843 | Kathy Martinez and Fabien Martinez | To the extent that a valid contract or lease existed, it was breached by occupant for non-payment of rent. | Reject |
| 37472 Yorkshire Dr. Palmdale CA 93550 | Clotee Downing | To the extent that a valid contract or lease existed, it was breached by Tenant for non-payment of rent. | Reject |
| 324 W 47th Pl. Los Angeles CA 90037 | Michael Robert Chapman, Sr. | Subject to 11 U.S.C. §§ 544(a), 548, 550, 551, and Cal. Civ. Code Pro. Section 3439.01 et seq. | Reject |
| 25641 Byron St. San Bernardino CA 92404 | Margaret Adams | Subject to 11 U.S.C. §§ 544(a), 548, 550, 551, and Cal. Civ. Code Pro. Section 3439.01 et seq. | Reject |
| 43933 30 St E Lancaster CA 93535 | Thamar Ann Peterson | To the extent that a valid contract or lease existed, it was breached by Tenant for non-payment of rent. | Reject |
| 1004 Peachwood Crt. Los Banos CA 93635 | Rosendo Quiroz Estroga | To the extent that a valid contract or lease existed, it was breached by Tenant for non-payment of rent. | Reject |
| 8607 Custer Rd SW Lakewood WA 98499 | Vacant. | No lease exists. | Not applicable. |
| 827 N Meridian Ave. San Bernardino CA 92410 | Teresa Miller | To the extent that a valid contract or lease existed, it was breached by Tenant for non-payment of rent. | Reject |
| 730 E 78th St Los Angeles CA 90001 | Keisha Marie Terrell | To the extent that a valid contract or lease existed, it was breached by the Tenant for non-payment of rent. | Reject |
| 1611 151st St. San Leandro CA 94578 | Shawn Southern | To the extent that a valid contract or lease existed, it was breached by occupant for non-payment of rent. | Reject |
| 1016 Portal Ave. Bakersfield CA 93308 | Vacant. | No lease exists. | Not applicable. |
| 37915 Marsala Dr. Palmdale CA 93552 | Gregory Steven | To the extent that a valid contract or lease existed, it was breached by Tenant for non-payment of rent. | Reject |
| 3122 Emery Lane, Robbins, IL | Vacant. | No lease exists. | Not applicable. |

## Rejections

On the Effective Date, any lease or unexpired executory contract that is not specifically assumed is rejected under the Plan. The order confirming this Plan shall constitute an Order approving the rejection of any other leases or contracts. If you are a party to a lease or contract to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to confirmation of the Plan.

The bar date for filing a proof of claim based on a claim arising from the rejection of a lease or contract is thirty (30) days after entry of the order confirming the Plan. Any claim based on rejection of

a contract or lease will be barred if the proof of claim is not timely filed unless the Court later orders otherwise.

### 2. General Unsecured Claims

Class 4 contains unsecured claims that are unsecured claims that are not entitled to priority under Code Section 507(a).  Each allowed general unsecured claim that is not disputed, contingent, or subject to a claim objection or plan treatment stipulation will receive its pro rata share.  The following chart identifies the Plan's treatment of General Unsecured Claims:

| **General Unsecured Claims** | | | | |
|---|---|---|---|---|
| **Class** | **Description** | **Insider Claims** | **Impaired (Y/N)** | **Treatment** |
| **4** | General Unsecured Claims<br><br>Estimated total amount of claims: $9,636,685.55 | 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 44, 45, 49 | Y | General Unsecured Claims have been estimated at $9,636,685.55.  Claims 2, 3, 4, 5, 27, 28, 20, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 47, 49, 52, 53, and 54 are included in this class. The exact amount of Class 4 Allowed Claims will not be known until the claims process has been completed.   Each holder of an allowed Class 4 claim will receive a pro rata share of the unencumbered cash remaining in the Liquidating Trust after the payment of all other Allowed Claims such as administrative claims (including the fees and costs of the Liquidating Trust), and all allowed priority claims, which are not classified, including priority tax claims.  The Debtor projects that General Unsecured Claims will be paid in 2023-2026 from funds received the sale of real property and assets of the bankruptcy estate. |

### Class 5: Disputed, Contingent, and Unliquidated Claims

Class 5 members do not have allowed claims in this bankruptcy proceeding.  Accordingly, pursuant to Federal Rules of Bankruptcy Procedure Rule 3003(c)(2), those claims or interests that were scheduled as disputed, contingent, or unliquidated by the Debtor in its petition and schedules shall not be treated as a creditor for purposes of voting and shall receive no distribution under the plan.

A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Pursuant to 11 U.S.C. Section 1111(a), those claims or interests that were scheduled as disputed, contingent, or unliquidated by the Debtor in their petition and schedules are treated as unfiled claims unless the creditor filed a proof of claim in this case on or before the claims bar date.

Creditors and interest holders in Class 5 are listed in <u>Exhibit 5</u> to the Disclosure Statement and are subject to having their debts and interests discharged under 11 U.S.C. Section 1141 without receiving any distribution under the Chapter 11 plan. Parties in Class 5 shall be enjoined from demanding, pursuing, or obtaining payment from the Debtor on their alleged debt for a period of sixty-two months following the Effective Date, conditioned upon the Debtor making payments as required under the terms of the Chapter 11 plan.  This injunction ensures that Debtor can perform under the terms of the Chapter 11 plan in funding sixty months of payments for the benefit of the allowed claims belonging to secured and unsecured creditors in this case, without having to defend against claims that were not filed in the Debtor's bankruptcy case.

## V.    Means of Effectuating the Plan
### A. The Liquidating Trust
#### 1. Execution of the Liquidating Trust Agreement

On the Effective Date, a Liquidating Trust Agreement in a form approved by the Bankruptcy Court at the Plan Confirmation Hearing shall be executed, and all other necessary steps shall be taken to establish a Liquidating Trust and the beneficial interests therein, which shall be for the benefit of all creditors entitled to receive distributions under the Plan from the Liquidating Trust.

#### 2. Purpose of the Liquidating Trust

The Liquidating Trust shall be established and maintained for the purpose set forth in the Liquidating Trust Agreement, including for the purpose of collecting, distributing, and liquidating all of the funds and property assigned to the Liquidating Trust, and pursuing claims and causes of actions assigned to the Liquidating Trust under this Plan for the benefit of the creditors entitled to receive distributions under the Plan from the Liquidating Trust according to the terms of the Liquidating Trust Agreement and the Plan.  The Liquidating Trust will be updated with appropriate dates and information

upon plan confirmation.  The Liquidating Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business.

### 3.  Transfer of Property to the Liquidating Trust

b. On the Effective Date, all right, title and interest of the Debtor and the Estate in property and assets of any kind (the "Trust Property"), shall be, and shall be deemed to be, irrevocably transferred, absolutely assigned, conveyed, set over and delivered to the Liquidating Trust, in trust to and in trust for the benefit of the beneficiaries of the Liquidating Trust for the uses and purposes stated herein and in the Liquidating Trust Agreement, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under section 1141(c) of the Bankruptcy Code, except as set forth in the Plan Confirmation Order or this Plan.  To the extent that certain assets of the Debtor or the Debtor's Estate (and their rights, title, and interests in such assets), because of the nature or because they will accrue subsequent to the Effective Date, cannot be irremovably transferred, absolutely assigned, conveyed, set over or delivered to the Liquidating Trust on the Effective Date, such assets are deemed assigned, set over, transferred and conveyed to the Liquidating Trust as soon as practicable after the Effective Date.  The Liquidating Trustee is hereby granted the Power of Attorney to execute documents on behalf of the Debtor, as reasonably determined by the Liquidating Trustee (in recordable form where necessary or appropriate) to vest or perfect in or confirm to the Liquidating Trustee title to and possession of the Trust Property.

c. On or after the Effective Date, the Liquidating Trustee and the Committee shall continue as the plaintiff in all litigation or causes of action in which the Debtor or the Committee were plaintiff prior to the Effective Date.  On the Effective Date, all causes of action that belong to the Debtor and/or the Debtor's Estate are assigned to the Liquidating Trustee or the Committee, as provided for in the stipulation between the parties attached hereto as Exhibit 7.

d.  The transfer of assets of the Estate to the Liquidating Trust shall be made for the benefit of the beneficiaries of the Liquidating Trust, but only to the extent the beneficiaries are entitled to distributions under the Plan. In conjunction with the Debtor's motion to confirm the Plan, the Debtor will seek an order finding that the transfer of the assets of the Estate to the Liquidating Trust shall not constitute a distribution under 28 U.S.C. §1930(a)(6).

e. For all federal, state, and local income tax purposes, the Debtor, the beneficiaries of the Liquidating Trust, and the Liquidating Trustee shall treat the transfer of the Trust Property to the Liquidating Trust as a transfer of the Trust Property by the Debtor to the beneficiaries of the Liquidating Trust in exchange for their beneficial interests in the Liquidating Trust.  The beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of the Liquidating Trust.

## 4.  Governance of the Liquidating Trust

The Liquidating Trust shall be governed by the Liquidating Trustee in accordance with the Liquidating Trust Agreement and consistent with the Plan.  A proposed form of the Liquidating Trust Agreement is attached hereto as <u>Exhibit 1</u>.

## 5.  Designation of Liquidating Trustee

David Goodrich shall serve as the Liquidating Trustee, subject to the provisions of the Liquidating Trust Agreement.  The Liquidating Trustee currently serves as the Debtor's Chief Restructuring Officer.  As the Liquidating Trustee, he will be the sole officer of the Debtor and responsible for all further decisions, bywhich his historical knowledge of the Debtor is crucial.  The designation of the Liquidating Trustee shall be effective on the Effective Date without the need for any further order of the Bankruptcy Court.  The duties, obligations, and responsibilities of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement and shall include, but not be limited to, the following: (a) oversee the preservation, holding, management and maximization of all Trust Property and distribute it to the beneficiaries of the Liquidating Trust; (b) take or not take those actions that the Liquidating Trustee, in his business discretion believes to be in accordance with the best interests of the

beneficiaries of the Liquidating Trust and which actions or inactions are consistent with the Plan.  The

Liquidating Trustee's responsibilities, duties and obligations are soley to the beneficiaries of the

Liquidating Trustee.  The Liquidating Trustee shall have an independent right and standing to request

relief from the Bankruptcy Court that the Liquidating Trustee believes to be in accordance with the best

interests of the beneficiaries of the Liquidating Trust.  The Liquidating Trustee shall be deemed to be a

"party in interest" within the meaning of section 1109(b) of the Bankruptcy Code and a representative of

the Debtor's Estate under Bankruptcy Code sections 1123(b)(3) and 1129(a)(5).

### 6.  Rights, Powers, and Privileges of the Liquidating Trustee

The Liquidating Trustee shall have all of the rights, powers, and privileges expressly provided

for by the Liquidating Trust Agreement and the Plan.  The Liquidating Trustee shall have the power to

take the actions granted in the Liquidating Trust Agreement and any powers reasonably incidental

thereto so that the Liquidating Trustee, in his[13] reasonable discretion, deems necessary or appropriate to

fulfill the purpose of the Liquidating Trust, unless otherwise specifically limited or restricted by this

Plan or the Liquidating Trust Agreement.

### 7.  Agents and Professionals

The Liquidating Trustee shall consult with and retain attorneys, accountants, appraisers, or other

parties deemed by the Liquidating Trustee to have qualifications necessary to assist in the proper

administration of the Liquidating Trust.  The Liquidating Trustee may pay the reasonable salaries, fees

and expenses of such persons as himself, and contingency fees out of the Trust Property in the ordinary

course to the extent permitted herein.

### 8.  Investment and Safekeeping of Trust Property

All monies other than Trust Property received by the Liquidating Trustee shall, until distributed

or paid over as provided in the Liquidating Trust Agreement and this Plan, be held in the Liquidating

---

[13] Any reference to him/he/his relating to the Liquidating Trustee shall be treated with gender neutrality to the Liquidating Trustee and any successor.

Trust for the benefit of the beneficiaries of the Liquidating Trust, but need not be segregated from other

Trust Property, unless and to the extent required by law or this Plan. The Liquidating Trustee shall have

no liability for interest or producing income or any money received by the Liquidating Trust and held

for distribution or payment to the beneficiaries of the Liquidating Trust, except as such interest shall

actually be received by the Liquidating Trustee. Investments of any money held by the Liquidating

Trustee shall be administered in the view of the manner in which individuals of ordinary prudence,

discretion and judgment would act in the management of their own affairs. For the removal of doubt,

the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the

value of the Trust Property and to further the liquidating purpose of the Liquidating Trust are limited to

powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or

other savings institutions, or other temporary, liquid investments such as treasury bills.

### 9. Use of Existing Accounts

The Liquidating Trustee may use the Debtor's existing bank accounts (as of the Effective Date)

for the purposes set forth herein, to the extent possible and desired. The Liquidating Trustee may also

close the existing bank accounts of the Debtor and transfer all amounts to one or more separate accounts.

### 10. Limitations on the Liquidating Trustee and Payment of Fees

The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or beneificaries

of the Liquidating Trust: (i) enter into or engage in trade or business, and no part of the Trust Property or

Proceeds, revenue, or income therefrom shall be used or disposed by the Liquidating Trust in

furtherance of any trade or business, or (ii) except as provided in the Liquidating Trust Agreement,

reinvest any Trust Property. The Liquidating Trustee may invest funds held in the Liquidating Trust

consistently with the requirements of the Liquidating Trust Agreement and the prudent person standard

of care, provided that the Liquidating Trustee shall have no liability in the event of insolvency of any

financial institution from invested funds to the extent that such institution is on the list of approved

depositories by the United States Trustee. The Liquidating Trustee shall hold, collect, conserve, protect

and administer the Liquidating Trust in acordance with the provisions of the Liquidating Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in the Liquidating Trust Agreement.  Any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be determinative.

### 11. Bankruptcy Court Approval of Liquidating Trustee Actions

Except as provided in this Plan or otherwise specified in the Liquidating Trust Agreement, the Liquidating Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court.  The Liquidating Trustee shall exercise his business judgment for the beneficiaries of the Liquidating Trust to maximize the value of the Trust Property.  The Liquidating Trustee shall have the right to submit to the Bankruptcy Court any questions regarding the Trust Property, the Liquidating Trust, the Liquidating Trust Agreement, the Plan, or the Debtor.

### 12. Valuation of Trust Property

The Trustee shall make best efforts to understand and apprise the Trust Beneficiaries of the fair market value of the Trust Property. The valuation shall be used consistently by all parties (including the Trustee and Trust Beneficiaries) for all federal income tax purposes.  Any dispute regarding the valuation of Trust Property shall be resolved by the Bankruptcy Court.

### 13. Distributions

The Liquidating Trustee shall distribute at least annually to the beneficiaries of the Liquidating Trust all net cash income plus all net cash rpoceeds from the liquidation of Trust Property; provided, however, that the Liquidating Trustee shall maintain at all times adequate cash reserves or marketable securiesi as reserves, including the Disputed Claim Reserve (defined below) as may be reasonable necessary to maintain the value of the Trust Property, satisfy projected expenses nad meet claims and contingent liabilities of the Liquidating Trust.  The Liquidating Trustee may request the Bankruptcy Court to resolve any dispute or to rule upon any inquiry regarding the adequacy of reserves.

### 14. Pro Rata Share of Distributions

Each of the beneficiaries of the Liquidating Trust shall receive its share or its pro rata share (as applicable) of distirbutions made by the Liquidating Trustee. The Liquidating Trustee may withhold from amounts distributable to any beneficiary of the Liquidating Trust any and all amounts determined in the Liquidating Trustee's reasonable sole discretion to be required by law, regulation, rule, ruling, director, or other governmental requirement.

### 15. Delivery of Distributions

All distributions to be made to the beneficiaries of the Liquidating Trust shall be made by the Liquidating Trustee under the terms of the Plan.

### 16. Undelivered Property

Any beneficiary of the Liquidating Trust that fails to claim any cash within ninety (90) days from the date upon which a distribution is first made to such entity shall forfeit all rights to receive any distribution under the Plan, and shall not be subject to the unclaimed property or escheat laws of any governmental unit. Upon forfeiture, such cash (inlcuding interest thereon) shall be made available for re-distribution to all other beneficiaries of the Liquidating Trust. Beneficiaries of the Liquidating Trust who fail to claim cash shall forfeit their rights thereto and have no claim whatsoever against the Liquidating Trust or the Liquidating Trustee, or any of the other beneficiaires of the Liquidating Trust to whom distributions are made under the Plan. The Liquidating Trustee is authorized to, but is not required to, undertake reasonable efforts, in his business judgment, to locate beneficiaries of the Liquidating Trust whose distributions are returned as undeliverable or whose checks are not timely cashed.

### 17. De Minimus Distributions

No distribution shall be required to be made to any beneficiary of the Liquidating Trust under the Plan and the Liquidating Trust Agreement to any beneficiary unless such distribution amounts to greater than $25.00. Any beneficiary of the Liquidating Trust on account of which the amount of cash to be

distributed pursuant to any distribution from the Liquidating Trust of less than $25.00 shall be deemed to have no claim for any distribution of the Debtor, the Liquidating Trust, the Liquidating Trustee, or the Trust Property.

### 18. Payments Limited to Trust Property

All payments to be made by the Liquidating Trustee to or for the benefit of any beneficiary of the Liquidating Trust shall be made only to the extent that the Liquidating Turstee has sufficient cash reserves to make such payments according to the Liquidating Trust Agreement and the Plan.  Each beneficiary of the Liquidating Trust shall have recourse only to the Trust Proprety for distribution under the Liquidating Trust Agremenet and this Plan.

### 19. Fees and Expenses

Subject to the limitations set forth in the Liquidating Trust Agreement and in this Plan, the Liquidating Trustee shal pay and/or reserve for the operating and administrative expenses of the Liquidating Trust before approving distributions to or for the benefit of the beneficiaries of the Liquidating Trust.  The Liquidating Trustee shall satisfy any fees and expenses of the Liquidating Trust with Trust Property.

### 20. Priority of Distributions

Any recovery of the Liquidating Trust on account of the Trust Property shall be applied in the following Order: First, to pay and/or reserve for any unpaid or reasonably anticipated costs and expenses of the Liquidating Trust, including, without limitation, reasonable professional fees, expenses, and court costs.  Second, distributed to the beneficiaires of the Liquidating Trust per the Liquidating Trust Agreement and the Plan.

### 21. Compliance with Laws

Any and all distributions of Trust Property shall be in compliance with applicable laws, including, but not limited to applicable federal and state securities laws.

## 22. Identification fo the Beneficiaries of the Liquidating Trust

Each of the beneficiaries of the Liquidating trust shall be recorded and set forth in a schedule (the "Beneficiary Schedules") maintained by the Liquidating Trustee.  In order to determine the actual names and addresses of the beneficiaries of the Liquidating Trust, the Liquidating Trustee may either: (i) rely on the Beneficiary Schedules, or (ii) deliver a notice to the beneciaries of the Liquidating Trust to complete in order to be properly registered as a beneficiary of the Liquidating Trust and be eligible for distributions under the Liquidating Trust.

## 23. Beneficial Interest Only

The ownership of a beneficial interest in the Liquidating Trust shall not entitle any beneficiary of the Liquidating Trust or the Debtor to any title in or to the Trust Property or to any right to call for a partition or division of such Trust Property or to require an accounting, except as specifically provided in the Liquidating Trust Agreement.

## 24. Ownership of Beneficial Interest Hereunder

Subject to the requirements and limitations of the Liquidating Turst Agreement, each benefiicary of the Liquidating Trust shall own a beneficial interest in the Liquidating Trust equal in proportion to such Trust Beneficiary's pro-rata share of its Allowed Claim under the Plan.

## 25. Evidence of Beneficial Interest

Ownership of a beneficial interest in the Liquidating Trust shall not be evidenced by any certificate, security, or receipt in any other form or manner, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee, including the Beneficiary Schedule.

## 26. Conflicting Claims

If any conflicting claims or demands are made or asserted with respect to a beneficial interest, the Liquidating Trustee shall be entitled, at his sole election, to refuse to comply with such conflicting claims or demands.  In so refusing, the Liquidating Trustee may elect to make no payment or distribution with respect ot the beneficial interest represnted by the claims or demands involved, or any part thereof, and the Liquidating Trustee shall refer such conflicting claims or demands to the

Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Liquidating Trustee shall not be or become liable to any party for his refusal to comply with any of such conflicting claims or demands.  The Liquidating Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a final order; or (b) all differences have been resolved by a written agreement among the parties and the Liquidating Trustee, by which the agreement includes a complete release of the Liquidating Trust and the Liquidating Trustee (the occurrence of either (a) or (b) is a "Dispute Resolution" in this paragraph. Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Liquidating Trustee shall hold in a segregated account with a United States financial institution approved by the United States Trustee for any payments or distributions from the Liquidating Trust to be made with respect to the beneficial interest at tissue.  Promptly after a Dispute Resolution is reached, the Liquidating Trustee shall transfer the payments and distributions, if any, held in the segregated account, in accordance with the terms of the Dispute Resolution.

### 27. Limitation on Transferability

The beneficial interests in the Liquidating Trust are unassignable, other than by operation of law.

### 28. Parties Dealing with the Liquidating Trustee

In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents or professionals to act in connection with the Trust Property. No person or entity dealing with the Liquidating Trustee shall have any obligation to inquire into the validity, expediency or propriety of any transaction by the Liquidating Trustee or any agent or professional of the Liquidating Trustee.

### 29. Liquidating Trustee's Rights

In exercising the rights granted in the Liquidating Trust Agreement and this Plan, the Liquidating Trustee shall exercise his best judgment to the end that the affairs of the Liquidating Trust shall be

properly managed and the interests of all the beneficiaries of the Liquidating Trust and the Debtor are safeguarded.

### 30. Liquidating Trustee as Successor in Interest to the Debtor and Committee

The Liquidating Trustee is the successor in interest to the Debtor and the Committee, and thus, after the Effective Date, to the extent this Plan requires an action by the Debtor, the action shall be taken by the Liquidating Trustee on behalf of the Debtor and the Committee, as applicable.  The Liquidating Trustee may not materially alter or amend the terms of the Plan.

### 31. Indemnity

The Liquidating Trustee and each of the Liquidating Trustee's respective agents, employees, professionals, attorneys, accountants, advisors and representatives (collecitvely, the "Liquidating Trust Indemnified Parties") are and shall be indemnified and held harmless by the Liquidating Trust, to the fullest extent permitted by law, solely from the Trust Property for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorney fees, disbursements and related expenses that the Liquidating Trust Indemnified Parties may incur or to which the Liquidating Trust Indemnified Parties may incur or to which the Liquidating Trust Indemnified Parties may become subject to in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Liquidating Trust Indemnified Parties on account of the acts or omissions of a Liquidating Trust Indemnified Party solely in its capacity as such; provided, however, that the Liquidating Trust shall not be liable to indemnify any Liquidating Trust Indemnified Party or any act or omission constituting bad faith, fraud, or willful misconduct by such Liquidating Trust Indemnified Party.  Notwithstanding any provision herein to the contrary, the Liquidating Trust Indemnified Parties shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of a Liquidating Trust Indemnified Party in its capacity as such.  The foregoing indemnity in respect of the Liquidating Trust Indemnified Party shall survive the termination of the Liquidating Trust.

### 32. Initial Liquidating Trustee

The Liquidating Trustee shall be David M. Goodrich.

### 33. Terms of Service for the Liquidating Trustee

The Liquidating Trustee shall serve until (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under the Liquidating Trust Agreement and the Plan; (b) termination of the Liquidating Trustee in accordance with the Liquidating Trust Agreement; or (c) the Liquidating Trustee's death, resignation, or removal.

### 34. Removal of the Liquidating Trustee

The Liquidating Trustee may be removed only upon the entry of an order of the Bankruptcy Court that such removal is appropriate upon a showing of good cause.  The removal shall be effective upon the date specified in the entered order of the Bankruptcy Court, subject to the payment of all amounts owing to the Liquidating Trustee as of such date.  In the event of any such removal, the Liquidating Trustee shall submit to the Bankruptcy Court and any successor a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of the Liquidating Trustee.

### 35. Resignation of the Liquidating Trustee

The Liquidating Trustee may resign at any time by filing with the Bankruptcy Court at least ninety (90) days written notice of his intention to do so.  In the event of a resignation, the resigning Liquidating Trustee shall submit to the Bankruptcy Court a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of that Liquidating Trustee. The resignation shall be effective on the later to occur of: (i) the date specified in the notice; (ii) the appointment of a successor Liquidating Trustee by order of the Bankruptcy Court and the acceptance by such successor of such appointment; provided, that if a successor Liquidating Trustee is not appointed or does not accept his/her appointment within ninety (90) days following the delivery of notice of

resignation, the resigning Liquidating Trustee may petition the Bankruptcy Court for the appointment of a successor Liquidating Trustee.

### 36. Appointment of Successor Trustee

Upon the resignation, death, incapacity, or removal of the Liquidating Trustee, a successor Liquidating Trustee shall be appointed pursuant to an order of the Bankruptcy Court. Any successor Liquidating Trustee so appointed shall consent to and accept in writing the terms of the Liquidating trust Agreement and agree that the provisions of the Liquidating Trust Agreement and this Plan shall be binding upon and inure to the benefit of the successor Liquidating Trustee.

### 37. Powers and Duties of Successor Trustee

A successor Liquidating Trustee shall have the rights, privileges, powers, and duties of his/her predecessor under the Agreement and this Plan.  Notwithstanding anything to the contrary herein, a removed or resigning Liquidating Trustee shall, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee under the Trust Agreement and all the estates, properties, rights, power, and trusts of such predecessor Liquidating Trustee.

### 38. Trust Continuance

The death, resignation or removal of the Liquidating Trustee does not terminate the Liquidating Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the original Liquidating Trustee. In the event that a successor Liquidating Trustee is not appointed within thirty (30) days of when required under Agreement, a Trust Beneficiary may apply to the Bankruptcy Court for appointment of a successor Liquidating Trustee upon notice to the Liquidating Trustee.

### 39. Compensation of Costs of Administration

The Liquidating Trustee shall receive compensation of $350 per hour plus expenses for services provided under the Liquidating Trust Agreement. This is the same rate as the Liquidating Trustee's

current hourly rate as the Chief Restructuring Officer for the Debtor and is a reduction of his typical rate as a practicing bankruptcy attorney of $650 per hour.  The CRO will use his staff to assist him with certain functions which will create a blended rate of $225 per hour.

### 40. Annual Reporting and Filing Requirements

The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to the Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations and shall furnish information statements to the Trust Beneficiaries setting forth their allocable share of the income, loss, deduction or credit of the Liquidating Trust and instruct them to report such items on their federal income tax returns. The Liquidating Trustee may withhold from amounts distributable to any Trust Beneficiary any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, director, or other governmental requirement.  The Liquidating Trustee shall have the right to employ an accountant and any other professionals needed to assist the Liquidating Trustee for annual reporting and filing requirements.  The tax returns filed by the Liquidating Trustee shall report all Liquidating Trust earnings for the taxable year being reported.  All of the Liquidating Trust's income shall be treated as subject to tax on a current basis.   For federal income tax purposes, items of income, gain, loss, and deduction of the Liquidating Trust will be allocated to the Trust Beneficiaries in a manner to be determined by the Liquidating Trustee, that is consistent with the applicable Treasury Regulations that reflect the Trust Beneficiaries' respective contributions and their respective interests in the interim and final distributions to be made by the Liquidating Trust, and such Trust Beneficiaries shall be responsible for the payment of taxes on a current basis that result from such allocations.

### 41. Confidentiality

The Liquidating Trustee shall, while serving as the Liquidating Trustee under the Liquidating Trust Agreement and for a period of twelve (12) months following the termination of the Liquidating Trust Agreement or following his removal or resignation thereunder, hold strictly confidential and not

use for personal gain any material, non-public information of or pertaining to any entity to which any of

the Trust Property relate or of which he/she has become aware in his capacity as Liquidating Trustee.

### 42. Maintenance of records

The Liquidating Trustee shall maintain books and records containing a description of all property

from time to time constituting the Trust Property and accounting of all receipts and disbursements.

Upon sixty (60) days' prior written notice delivered to the Liquidating Trustee, such books and records

shall be open to inspection by any beneficiary of the Liquidating Trust at any reasonable time during

normal business hours, provided that, if so requested, such beneficiary of the Liquidating Trust shall

have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating

Trustee.  The Liquidating Trustee shall furnish to any beneficiary of the Liquidating Trust upon written

request an annual statement of receipts and disbursements of the Liquidating Trust.  Such books and

records may be destroyed without further notice to parties or approval of the Bankruptcy Court five (5)

years after the final report to the Bankruptcy Court has been rendered by the Liquidating Trustee (unless

such records and documents are necessary to fulfill the Liquidating Trustee's obligations pursuant to the

Liquidating Trust Agreement.

### 43. Duration of the Liquidating Trust

The Liquidating Trust shall become effective upon the Effective Date of this Plan.  Thereupon,

the Liquidating Trust Agreement shall remain and continue in full force and effect until the Liquidating

Trust is terminated according to the provisions of the Liquidating Trust Agreement and this Plan.

### 44. Termination of the Liquidating Trust

The Liquidating Trust (and the duties, responsibilities and powers of the Liquidating Trustee)

shall terminate on the later of (a) the date which is five (5) years after the Effective Date; and (b) the

date when full resolution of all Trust Property transferred to the Liquidating Trust occurs, including

distribution of the Trust Property and the net proceeds thereof, according to the Plan and the Liquidating

Trust Agreement, provided however, that for cause, the Liquidating Trustee may seek early termination

of the Liquidating Trust upon application to the Bankruptcy Court. The Liquidating Trustee shall not

unduly prolong the duration of the Liquidating Trust and shall at all times endeavor to resolve, settle, or

otherwise dispose of all claims that constitute Trust Property and to effect the distribution of the Trust

Property to the beneficiaries of the Liquidating Trust according to the Plan and terminate the Liquidating

Trust as soon as practicable.  Upon such termination, except as otherwise set forth in this Plan and the

Liquidating Trust Agreement, the Liquidating Trustee shall be discharged from his position as

Liquidating Trustee and from al further duties, obligations and responsibilities under this Plan.

### 45. Continuance of the Liqudating Trust for Winding Up

After the termination of the Liquidating Trust and for the purpose of liquidating and winding up

the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until his duties

have been fully performed, including, without limitation, such post-distribution tasks as necessary to

windup the affairs of the Liquidating Trust.  After the termination of the Liquidating Trust, the

Liquidating Trustee shall retain for a period of five (5) years the books, records, beneficiary lists, and

certificates and other documents and files that have been created by the Liquidating Trustee.  At the

Liquidating Trustee's discretion, all such records and documents may, but need not, be destroyed at any

time after five (5) years from the completion and winding up of the affairs of the Liquidating Trust.

Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidating

Trust and final distribution of the Trust Property, the Liquidating Trustee shall have no further duties or

obligations under this Plan or the Liquidating Trust Agreement.  The Liquidating Trustee may pay in

advance from the Trust Property all costs of document management.

### 46. Preservation of Privilege

In connection with the rights, claims and causes of action that constitute the Trust Property, any

attorney-client privilege, work product privilege, or other privilege or immunity attaching to any

documents or communications (whether written or oral) transferred to the Liquidating Trust pursuant to

the terms of this Plan or otherwise, shall vest in the Liquidating Trustee and his representatives, and the

Debtor and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, as necessary.

### 47. No Bond

Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

### 48. Governing Law of the Liquidating Trust

The Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflicts of law.

### 49. Successors and Assigns

The Liquidating Trust Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

### 50. No Execution

All Trust Property shall be deemed in custodia legis until such times as the Trust Property has actually been paid to or for the benefit of a beneficiary of the Liquidating Trust, and no beneficiary of the Liquidating Trust or any person can execute upon, garnish or attach the Trust Property or the Liquidating Trust in any manner or compel payments from the Liquidating Trust except as by order of the Bankruptcy Court that becomes a final order. Payments will be solely governed by the Liquidating Trust Agreement and this Plan.

### 51. Intention to Establish Grantor Trust

The Liquidating Trust Agreement is intended to create a grantor trust for United States Federal Income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

### 52. Amendment of the Liquidating Trust

The Liquidating Trust Agreement may be amended at any time by order of the Bankruptcy Court after motion by the Liquidating Trustee or by the Debtor's bankruptcy counsel.

### B. Settlement Agreements

Any settlement effectuated prior to the confirmation of this Plan, upon notice thereof to the Bankruptcy Court, shall be deemed incorporated into this Plan and the Plan Confirmation Order, including provisions of such settlement that shall be deemed a settlement pursuant to section 1123(b)(3)(A) of the Bankruptcy Code.

### C. Claims and Administration and Prosecution and Plan Distributions

On and after the Effective Date, in addition to the rights provided to the Liquidating Trustee in the Liquidating Trust Agreement, the Liquidating Trustee and Debtor's bankruptcy counsel shall have the power and authority to prosecute and resolve objections to disputed secured claims, disputed administrative claims, disputed priority tax claims, disputed propriety non-tax claims and disputed general unsecured claims. The Liquidating Trustee and Debtor's counsel shall have the rights, powers, and authority to retain and assert all defenses, rights of setoff, recoupment, and counterclaims with respect to each of the foregoing. The Liquidating Trustee shall also have the power and authority to hold, manage and distribute Plan distributions to the holders of Allowed Claims consistent with this Plan and the Liquidating Trust Agreement.

### D. Books and Records of the Debtor

Unless applicable non-bankruptcy law permits the distribution or destruction of certain of the Debtor's business records at an earlier date, or the Debtor or the Liquidating Trust obtains an order from the Bankruptcy Court providing otherwise, subject to the terms and conditions of the Liquidating Trust Agreement governing the books and records of the Liquidating Trust, the Liquidating Trustee shall have the responsibility of storing and maintaining the Debtor's books and records until one year after the Effective Date, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order, unless applicable nonbankruptcy law requires the retention and maintenance of any such books and records for a longer period, in which instance the Liquidating Trustee shall retain such books and records for at least the minimum period required by applicable non-bankruptcy law. For

purposes of this section, books and records include computer generated or computer-maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the claims and rights of the Debtor with any books and records wherever located.

### E.  Corporate Action

On the Effective Date, the Liquidating Trustee may perform each of the actions and effect each of the transfers required by the terms of the Plan in the time period allocated therefor, and all matters provided for under this Plan that would otherwise require approval of the directors or comparable governing body of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable corporation law (or other applicable governing law) of the state in which the Debtor is incorporated or organized, without any requirement of further action by the directors (or other governing body) of the Debtor.

### F.  Effectuating Documents and Further Transactions

The Liquidating Trustee is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and the Liquidating Trust Agreement.

### G.  Dissolution of the Debtor

On the Effective Date, and after the transfer of the Trust Property to the Liquidating Trust, the Debtor shall be dissolved, or otherwise wind down, under applicable law.

### H.  Dissolution of the Debtor's Board

Upon the Effective Date, the Debtor's board of directors shall be dissolved, and the then current members of the board of directors and officers of the Debtor shall be relieved of their positions and corresponding duties and obligations.

## I.  Termination of the Committee

Upon the Effective Date, the Committee shall be dissolved, the retention and employment of the Committee's professionals shall terminate, and the members of the Committee will be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Case, other than for purposes of filing and/or objecting to final fee applications filed in the Case.

## J.  Procedures for Disputed, Contingent, or Unliquidated Claims

From and after the Effective Date, the Liquidating Trust shall be entitled to object to any and all claims against the Debtor's bankruptcy Estate.

### i.  Objections to Claims

From and after the Effective Date, the Liquidadting Trust shall be entitled to object to any and all claims against the Debtor's bankruptcy estate.

### ii.  No Distribution Pending Allowance of Claims

Notwithstanding any other provision of this Plan, if any portion of a claim is a disputed claim, no payment or distribution provided under this Plan shall be made on account of such disputed Claim unless and until the disputed Claim becomes an Allowed Claim.

### iii.  Establishment and Maintenance of a Reserve for Disputed Claims

The Liquidating Trust shall maintain a disputed claim reserve (the "Disputed Claim Reserve") at an amount equal to the aggregate of 100% of the distributable amounts to which holders of such disputed claims would be entitled under this Plan if such disputed Claims were Allowed Claims in their disputed amounts or such lesser amount as required by a final order of the Bankruptcy Court. The Bankruptcy Court may fix or liquidate the amount of any disputed claims pursuant to 11 U.S.C. §502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed the amounts of the disputed claims for purposes of distribution under the Plan. In lieu of fixing or liquidating the amount of any disputed claim, the Bankruptcy Court may determine the amount to be reserved for such

disputed claim or such amount may be fixed by agreement in writing between the Liquidating Trustee or

Debtor's counsel and the holder of a disputed claim.

### iv.  Distributions upon Allowance of Disputed Claims

The holder of a disputed claim that becomes an Allowed Claim shall receive a distribution in

cash from the Disputed Claim Reserve and subject to the terms of the Plan and the Liquidating Trust

Agreement.  Such distributions shall be made in accordance with the Plan based upon distributions that

would have been made to such holder under this Plan if the disputed claim had been an Allowed Claim

or prior to the Effective Date.  No holder of a disputed claim shall have any claim against the Disputed

Claim Reserve or the Liquidating Trust with respect to such disputed claim until such disputed claim

becomes an Allowed Claim, and no holder of a disputed claim shall have any right to interest on such

disputed claim.

### v.  Resolution of Disputed Claims

Unless otherwise ordered by the Bankruptcy court after notice and a hearing following the

Effective Date, the Liquidating Trustee shall have the right to the exclusion of all others (except as to

applications for allowance of compensation and reimbursement of expenses under sections 328(a), 330

and 503 of the Bankruptcy Code) to make and file objections to claims and shall serve a copy of each

objection upon the holder of the claim to which the objection is made as soon as practicable, but in no

event later than one hundred eighty (180) days after the Effective Date, subject, however, to the right of

the Liquidating Trustee to seek an extension to file such objections with the Bankruptcy Court.

### vi.  Estimation

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any

contingent, unliquidated or disputed claim pursuant to 11 U.S.C. § 502(c) of the Bankruptcy Code

regardless of whether the Debtor or the Liquidating Trust previously objected to such claim, and the

Bankruptcy Court shall retain jurisdiction to estimate any claim at any time during litigation concerning

any objection to any claim, including, without limitation, during the pendency of any appeal relating to

such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or disputed claim, the amount so estimated shall constitute either the allowed amount of such claim or maximum limitation on such claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and no exclave of one another.  On and after the Effective Date, claims that have been estimated by may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

### K.  Distributions to be Made Pursuant to this Plan

Distributions to be made to holders of Allowed Claims pursuant to this Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may be from time to time amended in accordance with Bankruptcy Rule 1000 or, if a different address is provided in a proof of claim timely filed with the Bankruptcy Court, then to that address.  Checks issued to pay Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof with no requirement for further distribution on the claim.

### L.  Exculpations and Release

To the maximum extent permitted by law, neither the Debtor, the Liquidating Trust, the Liquidating Trustee, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or professionals employed or retained by any of them shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of this Plan or the Liquidating Trust Agreement, or in contract, instrument, release, or other agreement or document created in connection therewith, or the solicitation of acceptances for confirmation of the Plan and for transactions contemplated therein.

## M. Retention and Distribution

After confirmation of the Plan and the occurrence of the Effective Date, in addition to any jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including the following purposes:

i.    To resolve any disputes regarding the operation and interpretation of the Plan;

ii.    To resolve any disputes regarding the operation and interpretation of the Confirmation Order;

iii.    To determine the allowability, classification, or priority of claims upon objection by the Debtor, the Liquidating Trustee, or any other parties in interest withstanding to bring such objection or proceeding and to consider any objection to claim whether such objection is filed before or after the Effective Date.

iv.    To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's Estate;

v.    To construe and take any action to enforce this Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issues such orders as may be necessary for the implementation, execution, performance, and consummation of this Plan and the Plan Confirmation Order and all matters referred to in this Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date with respect to any persons or entity related thereto;

vi.    To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vii.    To determine any request for payment of administrative expenses;

viii.    To determine motions for rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

ix.    To determine all applications, motions, adversary proceedings, contested matters, and all other litigated matters instituted during the pendency of the Case whether before, on, or after the Effective Date, including avoidance causes of action.  The Liquidating Trustee shall have the right and standing to commence any avoidance causes of action after the Effective Date and to continue with the prosecution and avoidance causes of action commenced by the Debtor and/or Committee prior to the Effective Date;

x.    To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

xi.    To modify this plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in this Plan or to reconcile any inconsistency in this Plan so as to carry out its intent and purpose;

xii.    Except as otherwise provided in this Plan or Plan Confirmation Order, ton issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of this Plan or the Plan Confirmation Order;

xiii.    To issue such orders in aid of consummation of the Plan or the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xiv.    To enter an interim or final decree closing this Case.

## VI.   Tax Consequences of the Plan

The Debtor will liquidate fourteen parcels of real property.  The projected tax consequences to the bankruptcy estate that are considered in Exhibit 4.    Based on an analysis of the 2020 and 2021

debtor tax returns, 2nd Chance Investment Group LLC is taxed as a partnership. As such, 2nd Chance Investment Group, LLC does not pay federal income taxes. Instead, the Debtor passes through all income to its partners. Per the 2021 debtor return, Rayshon Foster owns a 52% interest in the partnership and Sonja Foster owns a 48% interest. The total taxable gain is estimated to be $1,482,980 and 52% of the taxable gain or $771,150, will be allocated to Rayshon Foster and 48% or $711,830 will be allocated to Sonja Foster. The taxes owed by the partners related to the liquidation of Debtor's real estate assets are estimated to be a total of $469,664 with Rayshon Foster owing $244,756 and Sonja Foster owing $224,908. Tax liabilities will be paid from the sale of real property.

Creditors concerned with how the Plan may affect their tax liability should consult with their own accountances, attorneys, and/or advisors.  The following disclosure of possible tax consequences is intended solely for the puprose of alerting readers about possible tax issues that the Plan may present to the Debtor.  The Debtor and its professionals cannot, do not, and will not represent that the tax consequences or possibilities below are the only ones, because the Tax Code embodies complicated ruels that make it difficult to state all of the possible tax implications.

Due to the unsettled, complex nature of some of the tax issues, as well as the possibilitiy that the developments subsequent to the date hereof could affect the tax consequences of the Plan, the following discussion should not be regarded as definitive or as coverying all possible tax consequences. Additionally, this summary does not discuiss all aspects of federal income taxation that may be relevant to a particular creditor in light of individual circumstances or to certain creditors subject to special treatment under the federal income tax law.

## VII.  <u>Confirmation Requirements and Procedures</u>

Persons or entitiets concerned with confirmation of the Plan should consult with their own attorneys because the law on confirming a plan of reorganization is complex.  The following discussion is intended solely for the purpose of alerting readers about basic plan confirmation topics and deadlines

for filing claims.  The Debtor cannot and does not represent that the discusion contained herein is a

complete summary of the law on the topic.  Many requirements msut be met before the Bankruptcy

Court can confirm a plan.  Some of the requirements include that the plan must be proposed in good

faith, that the plan pays creditors at least what would be received in a chapter 7 liquidation, and that the

plan is feasible.

### 1.   Who May Vote or Object

Any party in interest may object to confirmation of the Plan, but as explained below, not

everyone is entitled to vote on the Plan.  A creditor or interest holder has the right to vote for or against

the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting

purposes; and (2) classified as an impaired class.

An Allowed Claim or interest only has the right to vote if it is in a class that is impaired under

the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members

of that class. For example, the class comprised of general unsecured claims (e.g., Class 4 is frequently

impaired if the Plan provides for payments to members of that class receiving less than one hundred

percent or an equivalent value based on time, or interest, of what they are owed.

The following four types of claims are not entitled to vote: (1) claims that have been disallowed;

(2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1),

(a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.

Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted

the Plan.  Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8) are not

entitled to vote because such claims are not placed in classes, and they are not required to receive certain

treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan

do not vote because such classes are deemed to reject the Plan.

### 2.  Who Can Vote in More than One Class

A creditor whose claim is allowed in part as a secured claim and in part as an unsecured claim may vote to accept or reject the plan in both classes by casting one ballot for the secured class claim and another for the unsecured class claim.

### 3.  Votes Necessary to Confirm the Plan

The Court cannot confirm the Plan unless (1) at least one impaired class accepts the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "craw down" on non-accepting classes.

If the claims (or interests) in a class are impaired, the debtor needs to rely on §1129(a)(8)(A) and solicit votes of the class members. The plan can be confirmed with respect to a voting class with a majority in number and two-thirds in amount.  The numbers are of those voting (not "of all creditors"). So, if there are 50 creditors in a class and only 10 cast ballots, the majority requirement is met with six ballots in favor of the Plan.  For the dollar amount requirement, the requirement is met based not on total claims in the class but on an analysis of the ballots returned.  For example, if claims total $1 million and only claims aggregating $50,000 return ballots, then you have two-thirds in amount if you get the votes of claims aggregating $34,000. See Code §1126.

### 4.  Treatment of Non-Accepting Classes

The Court may confirm the Plan if the non-accepting classes are treated in the manner required by the Code. If the Debtor does not achieve an accepting class from all possible voting classes, the Debtor will ask the Court to confirm the Plan by cram down on the impaired class or classes so long as a single class votes in favor of the Plan.

The process by which non-accepting classes are forced to be bound by the terms of the plan is commonly referred to as "cram down."  The Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all the consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. Section 1129(b).

### 5. Request for Confirmation Despite Nonacceptance by Impaired Classes

The Debtor will ask the Court to confirm the Plan by cramdown on any and all impaired classes that do not vote to accept the Plan.

### 6. Liquidation Analysis

The "Best Interest Test" requires a liquidation analysis showing that a claimant must receive or retain under the Plan, property of a value not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the debtor's assets may be sold by a Chapter 7 Trustee. Secured creditors are paid first from the sale proceeds of property on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from remaining proceeds, according to priority rights.  Unsecured creditors with the same priority share in the proportion of the amount of their Allowed Claim in relation to the amount of the total allowed unsecured claims pool. For the Court to confirm the Plan, the Court must find that all creditors not accpeting the Plan will receive at least as much as they would in a Chapter 7 liquidation.

The Plan is a liquidating Plan.  As showin in the Liquidation Analysis attached hereto as <u>Exhibit 3</u>, the Debtor believes that all classes of claims are receiving at least as much under the Plan as they would receive in a chapter 7 liquidation.  The Liquidating Plan achieves a quicker payout and resolution than that under a Chapter 7 liquidation.  The Debtor therefore satisfies the "Best Interests Test" and submits that the Plan provides fair and equitable treatment to all classes of creditors.

### 7. Feasibility

Another requirement for confirmatoin involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by a liquidation, or the need for further financial reorganization of the Debtor. There are at least two important aspects to consider.  The first aspect is

whether the Debtor will have enough cash on hand on the Effective Date to pay all claims and expenses that are entitled to be paid on such date.  As shown on the projections attached hereto as <u>Exhibit 1</u>, the Debtor anticipates that upon the Effective Date, it will have funds on hand to make the necessary payments under the Plan.  All other payments will be made after the assets are transferred to the Liquidating Trust and real property is sold by the Liquidating Trust.

The second aspect considers whether the Debtor will have ample cash flow to make required Plan payments.  Because the Plan is a liquidating plan, this aspect is not applicable.

## VIII.   <u>Risk Factors Regarding the Plan</u>

The Disclosure Statement and the corresponding Chapter 11 Plan contain certain forward-looking statements and assumptions.  These forward-looking statements are subject to known and unknown risks and factors. Uncertainties and other factors may cause results, performance, or achievements to be materially different from those expressed or implied by the forward-looking statements.

Factors that could impact projections of the Plan are as follows (i) the Debtor may have difficulty in evicting certain tenants from real property of the Estate which impacts the real property salability; (ii) general economic conditions with a declining real estate market that could impact available proceeds, (iii) requests, proceedings, or litigation caused by the Committee or other litigations/plaintiffs that the Debtor needs to defend may impact administrative fees that reduce the return to general unsecured claims.

Aside from these factors, there is no meaningful risk to the Debtor's ability to satisfy the first aspect of feasibility because the Liquidating Trust will have enough cash on hand to pay claims and expenses entitled to be paid on the Effective Date or shortly thereafter.  The second aspect is not relevant because the Liquidating Trust will take ownership of the Trust Property for the benefit of its beneficiaries and will liquidate all the Trust Property.

### IX.    Effect of Confirmation of the Plan

#### 1. Discharge

The Debtor will not receive a discharge under this Plan pursuant to and in accordance with the provisions of section 1141 of the Bankruptcy Code because the Plan contemplates and will result in a sale or liquidation of all or substantially all the property of the Debtor's Estate.

#### 2. Modification of the Plan

The Debtor may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting of the Plan if the Debtor modifies the plan prior to confirmation.  The Liquidating Trustee may seek to modify this Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated; and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

#### 3. Post-Confirmation Status Reports

Until a final decree closing the Case is entered, the Liquidating Trustee or Debtor's counsel will file a quarterly status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The Liquidating Trustee or Debtor's counsel will also be required to file post-confirmation quarterly reports consistent with guidelines of the OUST.

#### 4. Final Decree

Once this chapter 11 Estate has been fully administered as referred to in Bankruptcy Rule 3022, the Liquidating Trustee will file a motion with the Bankruptcy Court to obtain a final decree to close the Case.  The Liquidating Trustee shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. §1930(a)(6) from the Trust Property.

### N. Temporal Conditional Injunction

The provisions contained with 11 U.S.C. 362 shall apply to assets of the bankruptcy estate post-confirmation for a period of 365 days after the Effective Date. The Bankruptcy Court shall retain jurisdiction to address any issues under this provision relating to 11 U.S.C. Section 362. The Court maintains this authority to impose the injunction under § 105 of the Bankruptcy Code.

Furthermore, section 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate. *See* [ *In re Burstein–Applebee Co.,* 63 B.R. 1011, 1020–21 (Bankr.W.D.Mo.1986) ] ... *In re Askew,* 61 B.R. 87, 89 (Bankr.S.D.Ohio 1986)

*In re Linda Vista Cinemas, L.L.C.*, 442 B.R. 724, 744 (Bankr. D. Ariz. 2010)

The temporal conditional injunction is imperative to protect assets of the bankruptcy estate and allow ample time to facilitate the Liquidating Trust. Without the temporal conditional injunction, creditors of the estate will be harmed with a windfall to potential foreclosing creditors. The Debtor's liquidation analysis shows ample equity in each of the Debtor's parcels of real property that are protected under the temporal conditional injunction for the benefit of creditors of the Liquidating Trust.

Creditors may not take any action to enforce either pre-confirmation obligations or obligations due under the Plan, so long as the Liquidating Trustee is not in material default under the Plan. If the Liquidating Trustee is in material default under the Plan, affected creditors may: (1) take any action permitted under non-bankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this Case or to convert this case to a chapter 7 bankruptcy case.

X.    General Provisions
    1. Definitions and Rules of Construction
The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined and construed in the Bankruptcy Code are used in the Plan and Disclosure Statement. The terms defined in the Plan shall apply to capitalized terms as definitions for the Disclosure Statement.

    2. Binding Effect
The rights and obligations of any entity named or referred to in the Plan and Disclosure Statement will be binding upon and inure to the benefit of the successors and assignees of each entity.

    3. Captions
The headings contained in this Disclosure Statement are for convenience or reference only and do not impact the meaning or interpretation of the Plan.

Dated: May 10, 2023

Respectfully Submitted,
/s/ Andy C. Warshaw
Andy C. Warshaw, Esq.
Attorneys for Debtor in Possession
1200 Main St., Suite C
Irvine, CA 92614

# Exhibit 1

| Exhibit Number | Description |
|---|---|
| 1 | Liquidating Trust Agreement |

Andy C. Warshaw, Esq. (State Bar No. 263880)
Financial Relief Law Center, APC
1200 Main St., Suite C
Irvine, CA 92614
Direct Phone: 714-442-3319
Facsimile: 714-361-5380
Email: awarshaw@bwlawcenter.com

Attorneys for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| IN RE<br>2ND CHANCE INVESTMENT GROUP, LLC<br><br>Debtor and Debtor in Possession. | Case No. 8:22-bk-12142-SC<br><br>Chapter 11<br><br>**LIQUIDATING TRUST OF 2ND CHANCE INVESTMENT GROUP, LLC**<br><br>**<u>Disclosure Statement Hearing</u>:**<br>Date:  July 19, 2023<br>Time:  1:30 pm<br>Place:  United States Bankruptcy Court[1]<br>411 West Fourth Street, Suite 5130 /<br>Courtroom 5C<br>Santa Ana, CA 92701-4593<br><br>**<u>Plan Confirmation Hearing:</u>**<br>Date:    TBD<br>Time:<br>Place: |

---

[1] By way of Zoom.gov.  See the Notice for Additional Information and Hearing Access.

PAGE **1** OF **27**

LIQUIDATING TRUST OF 2ND CHANCE INVESTMENT GROUP, LLC

# TRUST AGREEMENT

This Trust Agreement (the "Agreement") dated as of June 1, 2023, is entered into by and among 2nd Chance Investment Group, LLC (the "Debtor"), as settlor, and David M. Goodrich as the trustee of the Trust referred to herein (the "Trustee"), and is executed in connection with and pursuant to the terms of the Debtor's Liquidating Plan Dated May 10, 2023 ("Plan") that was proposed by the Debtor and filed with the Bankruptcy Court as ECF No. _____, and confirmed by the Plan confirmation order entered by the Bankruptcy Court on _____ ____, 2023 as ECF No. _____ (the "Plan Confirmation Order"), which provides for, among other things, the establishment of a trust evidenced hereby (the "Trust").

## Witnesseth

WHEREAS, on December 21, 2022, the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court, Central District of California – Santa Ana Division (the "Bankruptcy Court");

WHEREAS, on _____ ____, 2023, the Bankruptcy Court entered the Confirmation Order confirming the Plan.  All references herein to the "Plan" mean the Plan as modified by the Confirmation Order.

WHEREAS, the Trust is created pursuant to the Plan;

WHEREAS, the Trust is created on behalf, and for the sole benefit of the creditors of the Debtor (the "Trust Beneficiaries"), as set forth in the Plan and provided herein.

WHEREAS, the Trust is established and maintained for the purpose of collecting, distributing, and liquidating all of the funds and property assigned to the Trust, as well as pursuing claims and causes of actions assigned to the Trust under the Plan 9 (the "Trust Corpus") for the benefit of the Trust Beneficiaries in accordance with the terms of this Agreement and the Plan;

WHEREAS, the Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business;

WHEREAS, the Plan provides that the Trust Beneficiaries are entitled to their applicable share of the Trust Corpus, as described in the Plan;

WHEREAS, concurrently with the effectiveness of this Agreement, the Effective Date under the Plan has occurred, the Plan has become effective, and the Debtor has been conclusively deemed to have irrevocably transferred, absolutely assigned, conveyed, set over and delivered all right, title and interest of the Debtor and the Debtor's bankruptcy estate in property and assets of any kind (the "Trust Property") to the Trust (except as specifically set forth in the Plan), and the Trustee will cause the Debtor to be dissolved pursuant to the terms of the Plan.   The corpus of the Trust Property will be subject to United States Trustee fees as provided for under the Plan as administrative expenses.

WHEREAS, pursuant to the Plan, the Debtor, the Trustee, and the Trust Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Property to the Trust as a transfer of the Trust Property by the Debtor to the Trust Beneficiaries in satisfaction of their claims under the Plan, followed by a transfer of the Trust Property by the Trust Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Trust Beneficiaries as the grantors and owners of the Trust for federal income tax purposes;

WHEREAS, the Trust is intended to qualify as a liquidating trust for federal income tax purposes pursuant to Treasury Regulation Section 301.770-4(d), and to be treated as a grantor trust for federal income tax purposes pursuant to Sections 671 through 679 of the Internal Revenue Code;

WHEREAS, pursuant to the Plan, the Plan Confirmation Order, and the order of the Bankruptcy Court entered as ECF No. _____ granting the motion filed by the Debtor as ECF No. _____ requesting that the Bankruptcy Court approve the agreement with David Goodrich for Trustee Services, the Bankruptcy Court approved David Goodrich to serve as the Trustee of the Trust; .

WHEREAS, the Bankruptcy Court shall have jurisdiction over the Trust, the Trustee, and the Trust Property, including, without limitation, any claims and causes of action, as provided herein and in the Plan; and

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and, in the Plan, the Debtor and the Trustee hereby agree as follows.

**Article I**
Definitions and Interpretations

1.1.    Definitions

1.1.1.    "Agreement" shall mean this document and have the meaning set forth in the introductory paragraph to this Agreement.

1.1.2.    "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the Central District of California, in which the case is currently pending, or such other court of competent jurisdiction that is exercising jurisdiction over the case at the time of Confirmation.

1.1.3.    "Debtor" shall mean 2nd Chance Investment Group, LLC as the Debtor in bankruptcy case number 8:22-bk-12142-SC filed in the Central District of California – Santa Ana Division.

1.1.4.    "Effective Date" is defined as the first day of the month following the entry of the order confirming the plan that is at least fifteen days after the date an order confirming Debtor's

plan is entered, assuming that there has been no order staying the effectiveness of the

Confirmation Order.

     1.1.5.   "Plan" shall mean the Chapter 11 Plan of Reorganization Dated May 10, 2023, as

part of case number 8:22-bk-12142SC filed in the Central District of California – Santa Ana

Division

     1.1.6.   "Trust" shall have the same meaning as set forth in the introductory paragraph of

this Agreement.

     1.1.7.   "Trustee" shall mean David M. Goodrich and any successor or replacement

appointed under the terms of this Agreement.

     1.1.8.   "Trust Beneficiaries" shall have the meaning set forth in the Recitals to this

Agreement, or any successors to such Trust Beneficiaries pursuant to Article VI of this

Agreement.

     1.1.9.   "Trust Property" shall mean the Trust Corpus (as defined in the Recitals of this

Agreement) and shall include all of the assets assigned to the Trust under the Plan.

1.2.    Use of Plan Definitions. All capitalized terms which are used in this Agreement and not

otherwise defined herein shall have the same meaning as set forth in the Plan or the Disclosure

Statement Describing the Plan, and the Plan Confirmation Order. In the case of any inconsistency

between the terms of this agreement and the terms of the Plan or Disclosure Statement, then the

terms of the Plan govern and control.  The Plan Confirmation Order governs above all others.

1.3.    Certain References. Reference in this Agreement to any Section or Article is, unless

otherwise specified, to such section or article under this Agreement.  The words "hereof", "herein"

and similar terms shall refer to this Agreement but not to any particular section or article of this Agreement.

## Article II
### Establishment, Purpose, and Funding of the Trust

2.1    <u>Creation and Name</u>. There is hereby created the Trust, referred to in the Plan as the Liquidating Trust.

2.2    <u>Purpose of the Trust</u>. The Debtor and the Trustee, pursuant to the Plan and in accordance with title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), hereby create the Trust for the purpose of (i) collecting, distributing, liquidating and otherwise disposing of all of the funds and property in the Trust for the benefit of  Trust Beneficiaries in accordance with the terms of this Agreement and the Plan, (ii) causing all proceeds of Trust Property to be deposited into the Trust in accordance with the Plan and this Agreement, (iii) controlling, defending, prosecuting, settling, and/or pursuing the resolution or litigation of all claims, rights, and causes of action included in the Trust Property, in each such case, in accordance with the Plan and this Agreement, (iv) overseeing and, where appropriate, directly initiating actions to resolve any remaining issues regarding the allowance and payment of disputed claims or any other claims that require resolution, including, as necessary, initiation and/or participation in proceedings before the Bankruptcy Court, and (v) taking such actions permitted hereunder that are necessary or useful to maximize the value of the Trust, including, without limitation, the borrowing of funds and the retention of employees.  The Activities of the Trust shall be limited to those activities set forth herein and as otherwise contemplated by the Plan.  The Trustee understands and agrees that the Trust has no objective to continue or to engage in the conduct of any trade or business, except to

the extent reasonably necessary to operate consistently with the purpose of the Liquidating Trust and the Plan.

2.3    Transfer of Trust Property.

2.3.1    The Debtor hereby irrevocably grants, releases, assigns, conveys, transfers, and delivers, for the benefit of the Trust Beneficiaries, pursuant to Sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code and in accordance with the Plan and the Plan Confirmation Order, the Trust Property to the Trust for the uses and purposes as specified in this Agreement and the Plan, free and clear of any and all liens, claims, encumbrances and interest (legal, beneficial, or otherwise) to the maximum extent contemplated by and permissible under Section 1141(c) of the Bankruptcy Code, except as set forth in the Confirmation Order or the Plan.  To the extent that certain assets of the Debtor's or the Debtor's bankruptcy estate (and the right, title and interest in such assets), because of their nature or because they will accrue subsequent to the Effective Date, cannot be irrevocably transferred, absolutely assigned, conveyed, and set over or delivered to the Trust on the Effective date, such assets shall be deemed assigned, set over, transferred and conveyed to the Liquidating Trust as soon as practicable after the Effective Date. The Trustee is hereby granted the Power of Attorney to execute documents on behalf of the Debtor, as reasonably determined by the Trustee (in recordable form where necessary or appropriate) to vest or perfect in or confirm to the Trustee title to and possession of the Trust Property.

2.3.2    Except as expressly provided herein or as provided in the Plan Confirmation Order, in no event shall any part of the Trust Property revert to or be distributed to the Debtor.

2.3.3    For all federal, state, and local income tax purposes, the Debtor, the Trust Beneficiaries, and the Trustee shall treat the transfer of Trust Property by the Debtor to the Trust Beneficiaries in

satisfaction of their claims, in exchange for their beneficial interests in the Trust. Thus, the Trust Beneficiaries shall be treated as grantors and owners of the Trust.

### Article III
Appointment, Duties, and Powers of the Trustee

3.1    <u>Appointment</u>: David M. Goodrich hereby acknowledges his acceptance of his appointment as the Trustee to serve pursuant to the terms of the Plan and this Agreement, until such time as he resigns, is removed, discharged, or this Agreement and the Trust terminate as set forth herein.

3.2    <u>Trustee Duties</u>. The duties, obligations and responsibilities of the Trustee shall include, but not be limited to, the following: (a) oversee the preservation, holding, management and maximization of all Trust Property and distribute them to the Trust Beneficiaries; (b) take or not take those actions that the Trustee in his business discretion believes to be in accordance with the best interests of the Trust Beneficiaries and which actions or inactions are consistent with the Plan.

3.2.1    The Trustee's responsibilities, duties and obligations are solely to the Trust Beneficiaries. The Trustee shall have an independent right and standing to request relief from the Bankruptcy Court that the Trustee believes to be in accordance with the best interests of the Trust Beneficiaries. For purposes of performing his duties and fulfilling his obligations under the Plan, this Agreement, and the Plan Confirmation Order, the Trustee shall be deemed to be a "party in interest" within the meaning of Section 1109(b) of the Bankruptcy Code and to be a representative of the Debtor's bankruptcy estate under Bankruptcy Code Section 1123(b)(3) and 1129(a)(5).

3.3    <u>Trustee's Rights, Powers, Privileges, and Limitations</u>

The Trustee's rights, powers, privileges, and any limitations thereto are set forth below in Sections 4.1 and 4.4, respectively.

**Article IV**
Administration of the Trust

4.1   <u>Rights, Powers, and Privileges</u>. The Trustee shall have all of the rights, powers and privileges expressly provided in this Agreement and the Plan.  The Trustee shall have the power to take the actions granted in the subsections below and any powers reasonably incidental thereto, that the Trustee, in their reasonable discretion, deems necessary or appropriate to fulfil the purpose of the Trust, unless otherwise specially limited or restricted by the Plan or this Agreement:

4.1.1   Make continuing efforts to collect, sell, or otherwise liquidate or dispute of Trust Property, and take any of the actions set forth in this Agreement without the approval of the Bankruptcy Court and free of restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, other than restrictions expressly imposed by the Plan, the Plan Confirmation Order or this Agreement.

4.1.2   File, initiate, analyze, investigate, compromise and settle all causes of action that are Trust Property, including all claims and causes of action, that could be brought by a trustee or debtor in possession under the Bankruptcy Cod, and prosecute or defend all appeals on behalf of the Debtor, as representative of the Debtor within the meaning of section 1123(b)(3)(B) of the Bankruptcy Code.

4.1.3   Commence and/or pursue all actions involving Trust Property that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan, including all claims and causes of action.

4.1.4   Hold legal title to all rights of the Debtor and the Trust Beneficiaries in or arising from the Trust Property.

4.1.5     Protect and enforce the rights to the Trust Property (including, without limitations, any and all claims and causes of action that are Trust Property) vested in the Trustee by this Agreement and the Plan by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise.

4.1.6     Compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle, in accordance with the terms of this Agreement, claims in favor of or against the Trust, and release and discharge, to the fullest extent permitted by law, non-Debtor parties to claims or causes of action from all claims and causes of action that the Trustee (as successor to the Debtor on behalf of the Trust Beneficiaries) has or may have whether known or unknown against such persons without further notice to, or approval of, the Bankruptcy Court.

4.1.7     Exercise any and all powers granted to the Trustee by any agreements or by common law or any statute which serves to increase the extent of the powers granted to the Trustee hereunder;

4.1.8     Manage all litigation instituted by or against the Trust or the Trustee, and administer the Trust expenses related thereto;

4.1.9     Determine and satisfy any and all liabilities created or incurred by the Trust;

4.1.10    Effectuate the wind-down and ultimate dissolution of the Debtor as a legal entity;

4.1.11    File any and all tax information or returns with respect to the Trust and pay taxes payable by the Trust, if any;

4.1.12    Request any appropriate tax determination with respect to the Trust;

4.1.13    Maintain on the Trustee's books and records a schedule evidencing the beneficial interest held by each of the Trust Beneficiaries, using data such as the official claims register in the Debtor's Chapter 11 bankruptcy case.

4.1.14    Make timely distributions to the Trust Beneficiaries of Trust Property in accordance with this Agreement;

4.1.15    Open and maintain bank accounts on behalf of or in the name of the Trust;

4.1.16    Make all tax withholdings, file tax information and returns, make tax elections by and on behalf of the Trust and file returns for the Trust.

4.1.17    Establish such reserves for, among other things, payment of taxes, assessments, Trustee fees and professional expenses, such as for the administration of the Trust as the Trustee deems appropriate, for the proper operation of matters incidental to the Trust.

4.1.18    Pay all expenses and make all other payments relating to the Trust Property and the administration of the Trust.

4.1.19    Retain and pay third parties pursuant to Section 4.2 herein;

4.1.20    Obtain insurance coverage or a bond with respect to the liabilities and obligations of the Trustee under this Agreement (in the form of an errors and omissions policy or otherwise) and use the Trust Property to obtain and maintain the same, if necessary;

4.1.21    Employ and compensate professionals as the Trustee deems necessary or appropriate;

4.1.22     Pay required or Court ordered, post-Effective Date quarterly fees to the U.S. Trustee;

4.1.23    Prepare and file post-confirmation quarterly reports with the U.S. Trustee and post-confirmation status reports with the Bankruptcy Court, as required;

4.1.24    All powers provided under the Plan to the Trustee;

4.1.25    Invest any monies held as part of the Trust Property in accordance with the terms of Section 4.3 hereof; and

4.1.26   Terminate the Trust consistent with the terms of this Agreement and the Plan, and not unduly prolong the duration of the Trust.

4.2    Agents and Professionals.  The Trustee shall consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Trustee to have qualifications necessary to assist in the proper administration of the Trust.  The Trustee may pay the reasonable salaries, fees, and expenses of such persons (including himself or herself), also including contingency fees, out of the Trust Property in the ordinary course and to the extent permitted herein.

4.3    Investment and Safekeeping of Trust Property. All monies and other Trust Property received by the Trustee shall, until distributed or paid over as herein provided, be held in trust for the benefit of Trust Beneficiaries, but need not be segregated from other Trust Property, unless and to the extent required by law or the Plan.  The Trustee shall be under no liability for interest or producing income on any money received by the Trust and held for distribution or payment to the Trust Beneficiaries, except as such interest that is actually received by the Trustee.  Investments of any monies held by the Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs. For the removal of doubt, the investment powers of the Trustee, other than those reasonably necessary to maintain the value of the Trust Property and to further the liquidating purpose of the Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, other temporary, liquid investments, such as treasury bills.

4.4    Limitations on Trustee and Payment of Fees. The Trustee shall not at any time on behalf of the Trust or Trust Beneficiaries: (i) enter into or engage in any trade or business, and no part of

the Trust Property or its proceeds, revenue or income therefrom shall be used or disposed of by the Trust in furtherance of any trade or business, or (ii) except as provided below, reinvest any Trust Property.

4.4.1    The Trustee may invest funds held in the Trust consistent with the requirements of this Agreement and the prudent person standard of car, provided that the Trustee shall have no liability in the event of insolvency of any financial institution which holds invested funds of the Trust, to the extent such institution is on the list of approved depositories by the United States Trustee.

4.4.2    The Trustee shall hold, collect, conserve, protect and administer the Trust in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Agreement.  Any determination by the Trustee as to what actions are in the best interests of the Trust shall be determinative.

4.5    Bankruptcy Court Approval of Trustee Actions. Except as provided in the Plan or otherwise specified by this Agreement, the Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court. The Trustee shall exercise their own business judgment for the benefit of the Trust Beneficiaries in order to maximize the value of the Trust Property and distributions, giving due regard to the cost, risk, and delay of any course of action.  Notwithstanding the foregoing, the Trustee shall have the right to submit to the Bankruptcy Court any questions of interpretation seeking direction and/or approval of the Bankruptcy Court with respect to the Trust Property, the Trust, this Agreement, the Plan, or the Debtor. The Trustee shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Trust Property free and clear of any and all liens, claims, and encumbrances.

4.6      Valuation of Trust Property.  The Trustee shall make best efforts to understand and

apprise the Trust Beneficiaries of the fair market value of the Trust Property.  The valuation shall

be used consistently by all parties (including the Trustee and Trust Beneficiaries) for all federal

income tax purposes.  Any dispute regarding the valuation of Trust Property shall be resolved by

the Bankruptcy Court.

**Article V**
Distributions from the Trust

5.1.     Distributions. The Trustee shall distribute at least annually to the Trust Beneficiaries all net

cash income plus all net cash proceeds from the liquidation of Trust Property; provided, however,

that the Trustee shall maintain at all times adequate cash or marketable securities as reserves,

including the Disputed Claim Reserve, as may be reasonably necessary to maintain the value of

the Trust Property, satisfy projected expenses and meet claims and contingent liabilities of the

Trust.  The Trustee may request the Bankruptcy Court to resolve any dispute or to rule upon any

inquiry regarding the adequacy of reserves.

5.2.     Pro Rata Share of Distributions. Each of the Trust Beneficiaries shall receive its share or

pro rata share (as applicable) of any and all distributions made by the Trustee.  The Trustee may

withhold from amounts distributable to any Trust Beneficiary any and all amounts determined in

the Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling,

directive or other governmental requirement.

5.3.     Delivery of Distributions. All distributions to be made to the Trust Beneficiaries shall be

made by the Trustee in accordance with the terms of the Plan.

5.4.     Undelivered Property. Any Trust Beneficiary that fails to claim any cash within ninety (90)

days from the date upon which a distribution is first made to such entity shall forfeit all rights of

any distribution under the Plan and shall not be subject to the unclaimed property or escheat laws of any governmental unit.  Upon forfeiture of such rights, any cash or interest thereon shall be made available for re-distribution to the remaining Trust Beneficiaries.  Trust Beneficiaries who fail to claim cash shall forfeit their rights thereto and shall have no claim whatsoever against the Trust or the Trustee, as applicable, or any of the other Trust Beneficiaries to whom distributions are made under the Plan, provided, however, that the Trustee may, but is not required to, undertake reasonable efforts, in his or her business judgment, to locate Trust Beneficiaries whose distributions are returned as undeliverable or whose checks are not timely cashed.

5.5.    <u>De Minimus Distributions</u>. No distribution shall be required to be made hereunder to any Trust Beneficiary unless such distribution amounts to at least $25.  Any Trust Beneficiary on account of which the amount of cash to be distributed pursuant to any distribution from the Trust of less than $25 shall be deemed to have no claim for such distribution against the Debtor, the Trust, the Trustee or the Trust Property.  Subject to Section 5.4 of this Agreement, any cash not distributed pursuant to this Section 5.5 shall be the property of the Trust, free and clear of any restrictions thereon.

5.6.    <u>Payments Limited to Trust Property</u>. All payments to be made by the Trustee to or for the benefit of any Trust Beneficiary shall be made only to the extent that the Trustee has sufficient reserves to make such payments in accordance with this Agreement and under the Plan.  Each Trust Beneficiary shall have recourse only to the Trust Property for distribution under this Agreement and the Plena.

5.7.    <u>Fees and Expenses</u>.

5.7.1.  Subject to the limitations set forth herein and, in the Plan, the Trustee shall pay, and/or reserve estimated amounts for the operating and administrative expenses of the Trust (such as the Trustee's professional fees or outstanding administrative claims), before approving distributions to or for the benefit of the Trust Beneficiaries.

5.7.2.  The Trustee shall satisfy any fees and expenses of the Trust with Trust Property.

5.8.    Priority of Distributions.

    (i)    First, to pay and/or reserve for any unpaid or reasonably anticipated costs and expenses of the Trust, including, without limitation, reasonable professional fees and expenses and court costs;

    (ii)    Second, distributed to Trust Beneficiaries in accordance with this Agreement and the Plan.

5.9.    Compliance with Laws. Any and all distributions of Trust Property comply with applicable laws, including, but not limited to, federal and state securities laws.

**Article VI**
Trust Beneficiaries

6.1.    Identification of the Trust Beneficiaries. Each of the Trust Beneficiaries shall be recorded and set forth in a schedule (the "Schedule") maintained by the Trustee. In order to determine the actual names and addresses of the Trust Beneficiaries, the Trustee may either (i) rely upon the Schedule, or (ii) deliver a notice to the Trust Beneficiaries.  Such notice will include a form for each Trust Beneficiary to complete in order to be properly registered as a Trust Beneficiary and be eligible for distributions under the Trust.

6.2.    Beneficial Interest Only. The ownership of a beneficial interest in the Trust shall not entitle any Trust Beneficiary or the Debtor to any title in or to the Trust Property or to any right to call for

PAGE **16** OF 27
LIQUIDATING TRUST OF 2ND CHANCE INVESTMENT GROUP, LLC

a partition or division of such Trust Property or to require an accounting, except as specifically provided hereunder.

6.3.     Ownership of Beneficial Interests Hereunder. Subject to the requirements and limitations of this Agreement, each Trust Beneficiary shall own a beneficial interest in the Trust equal in proportion to such Trust Beneficiary's pro rata share of its allowed claim under the Plan.

6.4.     Evidence of Beneficial Interest.  Ownership of a beneficial interest in the Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained in the books and records of the Trust by the Trustee.

6.5.     Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to a beneficial interest, the Trustee shall be entitled, as his sole election, to reuse to comply with any such conflicting claims or demands.  In so refusing, the Trustee may elect to make no payment or distribution with respect to the beneficial interest represented by the claims or demands involved, or any part thereof, and the Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In doing so, the Trustee shall not be or become liable to any party for his refusal to comply with any of such conflicting claims or demands.  The Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimant have been adjudicated by a final order, or (b) all differences have been resolved by a written agreement among such parties and the Trustee, which agreement shall include a complete release of the Trust and the Trustee (the occurrence of either (a) or (b) referred to as a "Dispute Resolution" in Section 6.5).  Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Trustee shall hold in a segregated and I nterest bearing account any payments or distributions from the

Trust to be made with respect to the Beneficial Interest at issue.  Upon the Dispute Resolution, the

Trustee shall promptly transfer payments and distributions due, if any, that are held in the

segregated account together with any interest and income generated thereon, in accordance with

the terms of the Dispute Resolution.

6.6.    <u>Limitation on Transferability</u>. It is understood and agreed that the beneficial interests in the

Trust shall not be assignable, other than by operation of law.

**Article VII**
Third Party Rights; Limitation of Liability and Indemnity

7.1.    <u>Parties Dealing with the Trustee</u>.  In the absence of actual knowledge to the contrary, any

person dealing with the Trust, or the Trustee shall be entitled to rely on the authority of the Trustee

or any of the Trustee's agents or professionals to act in connection with the Trust Property.  No

person or entity dealing with the Trustee shall have any obligation to inquire into the validity,

expediency, or propriety of any transaction by the Trustee or any agent or professional of the

Trustee.

7.2.    <u>Trustee's Liability</u>.  In exercising the rights granted herein, the Trustee shall exercise his

best judgment to the end that the affairs of the Trust shall be properly managed and the interests of

all of the Trust Beneficiaries and the Debtor are safeguarded.

7.3.    <u>Indemnity</u>. The Trustee and each of the Trustee's respective agents, employees,

professionals, attorneys, accountants, advisors and representatives (collectively, the "<u>Indemnified</u>

<u>Parties</u>") shall be indemnified and held harmless by the Trust, to the fullest extent permitted by

law, solely from the Trust Property for any losses, claims, damages, liabilities and expenses,

including, without limitation, reasonable attorneys' fees, disbursements and related expenses that

the Indemnified Parties may incur or to which the Indemnified Parties may become subject in

connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of an Indemnified Party solely in its capacity as such; provided, however, that the Trust shall not be liable to indemnify any Indemnified Party for any act or omission constituting bad faith, fraud or willful misconduct by such Indemnified Party. Notwithstanding any provision herein to the contrary, the Indemnified Parties shall be entitled to obtain advances from the Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such. The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which it is indemnified.

### Article VIII

Selection, Removal, and Compensation of the Trustee

8.1.    <u>Initial Trustee</u>. The Liquidating Trustee shall be David M. Goodrich.

8.2.    <u>Term of Service</u>. The Liquidating Trustee shall serve until (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under the Liquidating Trust Agreement and the Plan; (b) termination of the Liquidating Trustee in accordance with the Liquidating Trust Agreement; or (c) the Liquidating Trustee's death, resignation, or removal.

8.3.    <u>Removal of the Trustee</u>. The Liquidating Trustee may be removed only upon the entry of an order of the Bankruptcy Court that such removal is appropriate upon a showing of good cause. The removal shall be effective upon the date specified in such entered order of the Bankruptcy Court, subject to the payment of all amounts owing to the Liquidating Trustee as of such date.  In the event of any such removal, the Liquidating Trustee shall submit to the Bankruptcy Court and

any successor a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of the Liquidating Trustee.

8.4.     <u>Resignation of the Trustee</u>.   The Liquidating Trustee may resign at any time by filing with the Bankruptcy Court at least ninety (90) days written notice of his intention to do so.  In the event of a resignation, the resigning Liquidating Trustee shall submit to the Bankruptcy Court a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of that Liquidating Trustee. The resignation shall be effective on the later to occur of: (i) the date specified in the notice; (ii) the appointment of a successor Liquidating Trustee by order of the Bankruptcy Court and the acceptance by such successor of such appointment; provided, that if a successor Liquidating Trustee is not appointed or does not accept his/her appointment within ninety (90) days following the delivery of notice of resignation, the resigning Liquidating Trustee may petition the Bankruptcy Court for the appointment of a successor Liquidating Trustee.

8.5.     <u>Appointment of Successor Trustee</u>. Upon the resignation, death, incapacity, or removal of the Liquidating Trustee, a successor Liquidating Trustee shall be appointed pursuant to an order of the Bankruptcy Court. Any successor Liquidating Trustee so appointed shall consent to and accept in writing the terms of the Liquidating trust Agreement and agree that the provisions of the Liquidating Trust Agreement and this Plan shall be binding upon and inure to the benefit of the successor Liquidating Trustee.

8.6.    <u>Powers and Duties of Successor Trustee</u>. A successor Liquidating Trustee shall have the rights, privileges, powers, and duties of their predecessor under the Agreement and this Plan. Notwithstanding anything to the contrary herein, a removed or resigning Liquidating Trustee shall, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee under the Trust Agreement and all the estates, properties, rights, power, and trusts of such predecessor Liquidating Trustee.

8.7.    <u>Trust Continuance</u>. The death, resignation or removal of the Liquidating Trustee does not terminate the Liquidating Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the original Liquidating Trustee. In the event that a successor Liquidating Trustee is not appointed within thirty (30) days of when required under Agreement, any Trust Beneficiary may apply to the Bankruptcy Court for appointment of a successor Liquidating Trustee upon notice to the Liquidating Trustee.

8.8.    <u>Compensation and Costs of Administration</u>. The Liquidating Trustee shall receive compensation of $350 per hour plus expenses for services provided under the Liquidating Trust Agreement. This is the same rate as the Liquidating Trustee's current hourly rate as the Chief Restructuring Officer for the Debtor and is a reduction of his typical rate as a practicing bankruptcy attorney of $650 per hour.  The CRO will use his staff to assist him with certain functions which will create a blended rate of $225 per hour.

8.9.    <u>Annual Reporting and Filing Requirements</u>. The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to the Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations and shall furnish information statements to the Trust

Beneficiaries setting forth their allocable share of the income, loss, deduction or credit of the Liquidating Trust and instruct them to report such items on their federal income tax returns. The Liquidating Trustee may withhold from amounts distributable to any Trust Beneficiary any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, director, or other governmental requirement. The Liquidating Trustee shall have the right to employ an accountant and any other professionals needed to assist the Liquidating Trustee for annual reporting and filing requirements. The tax returns filed by the Liquidating Trustee shall report all Liquidating Trust earnings for the taxable year being reported. All of the Liquidating Trust's income shall be treated as subject to tax on a current basis. For federal income tax purposes, items of income, gain, loss, and deduction of the Liquidating Trust will be allocated to the Trust Beneficiaries in a manner to be determined by the Liquidating Trustee, that is consistent with the applicable Treasury Regulations that reflect the Trust Beneficiaries' respective contributions and their respective interests in the interim and final distributions to be made by the Liquidating Trust, and such Trust Beneficiaries shall be responsible for the payment of taxes on a current basis that result from such allocations.

8.10.   <u>Confidentiality</u>.  The Liquidating Trustee shall, while serving as the Liquidating Trustee under the Liquidating Trust Agreement and for a period of twelve (12) months following the termination of the Liquidating Trust Agreement or following his removal or resignation thereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Trust Property relate or of which he/she has become aware in his capacity as Liquidating Trustee.

**Article IX**
Maintenance of Records

PAGE **22** OF **27**
LIQUIDATING TRUST OF 2ND CHANCE INVESTMENT GROUP, LLC

9.1.    The Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Property and an accounting of all receipts and disbursements. Upon 60 days' prior written notice delivered to the Trustee, such books and records shall be open to inspection by any Trust Beneficiary at any reasonable time during normal business hours; *provided* that, if so requested, such Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Trustee.  The Trustee shall furnish to any Trust Beneficiary upon written request an annual statement of receipts and disbursements of the Trust.  Such books and records may be destroyed without further notice to parties or approval of the Bankruptcy Court after five years from the final report to the Bankruptcy Court has been filed by the Trustee (unless such records and documents are necessary to fulfil the Trustee's obligations pursuant to this Agreement).

**Article X**
Duration of Trust

10.1.    Duration.  The Trust shall become effective upon the Effective Date of the Plan. Thereupon, this Agreement shall remain and continue in full force and effect until the Trust is terminated in accordance with the provisions of this Agreement and the Plan.

10.2.    Termination of the Trust. The Trust (and the duties, responsibilities and powers of the Trustee) shall terminate on the later of (a) the date which is five (5) years after the Effective Date; and (b) the date when full resolution of all Trust Property transferred to the Trust has occurred, including distribution of the Trust Property and the net proceeds thereof, in accordance with the Plan and this Agreement, provided, however, that for cause the Trustee may seek earlier termination of the Trust upon application to the Bankruptcy Court.  The Trustee shall not unduly prolong the duration of the Trust and shall at all times endeavor to resolve, settle or otherwise

dispose of all claims that constitute Trust Property and to the effect the distribution of the Trust Property to the Trust Beneficiaries in accordance with the Plan and terminate the Trust as soon as practicable.  Upon such termination, except as set forth in Section 10.3 below, the Trustee shall be discharged from his position as Trustee and from all further duties, obligations, and responsibilities under the Plan.

10.3.   <u>Continuance of Trust for Winding Up</u>. After the termination of the Trust and for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until his duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to windup the affairs of the Trust.  After the termination of the Trust, the Trustee shall retain for a period of five (5) years the books, records, Beneficiary lists, and certificates and other documents and filed created by the Trustee.  At the Trustee's discretion, all such records and documents may, but need not, be destroyed at any time after five (5) years from the completion and winding up of the affairs of the Trust.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust and final distribution of the Trust Property, the Trustee shall have no further duties or obligations hereunder.  The Trustee may pay in advance from the Trust Property all costs of document management.

### Article XI
Miscellaneous

11.1.   <u>Preservation of Privilege</u>. In connection with the rights, claims, and causes of action that constitute the Trust Property, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Trust pursuant to the terms of the Plan or otherwise shall vest in the Trustee and

his representatives, and the Debtor and the Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, as necessary.

11.2.    <u>Notices</u>. Any notice of other communication which may be or is required to be given, served, or sent to the Trustee, as applicable, shall be in writing and shall be sent by Federal Express and email, or transmitted by hand delivery and email, addressed as follows:

If to the Trustee:
David M. Goodrich.
Golden Goodrich LLP
650 Town Center Dr., Suite 600
Costa Mesa, CA 92626
Phone: (714) 766-1000
Email: dgoodrich@go2.law


With a copy to:
Andy C. Warshaw
Financial Relief Law Center, APC
1200 Main St., Suite C
Irvine, CA 92614
Phone: (714) 442-3319
Email: awarshaw@bwlawcenter.com

11.3.    <u>No Bond</u>.  Notwithstanding any state law to the contrary, the Trustee or the Trustee's successor, shall be exempt from giving any bond or other security in any jurisdiction.

11.4.    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflicts of law.

11.5.    <u>Successor and Assigns</u>. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

11.6.    <u>Headings</u>. The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

PAGE **25** OF **27**
LIQUIDATING TRUST OF 2ND CHANCE INVESTMENT GROUP, LLC

11.7.   No Execution.  All Trust Property shall be deemed *in custodia legis* until such times as the Trust Property has actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Property or the Trust in any manner or compel payment from the Trust except by order of the Bankruptcy Court that becomes a final order.  Payment will be solely governed by this Agreement and the Plan.

11.8.   Intention of Parties to Establish Grantor Trust. This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

11.9.   Amendment. This Agreement may be amended at any time by order of the Bankruptcy Court after motion by the Trustee.

11.10.  Severability.  If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

11.11.  Counterparts and Facsimile Signatures. This Agreement (of any amendment thereto) may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original signature.

//

//

//

IN WITNESS WHEREOF, the parties executed this agreement as of the day and year written in the paragraph titled <u>TRUST AGREEMENT</u>.

2nd Chance Investment Group, Inc.

By: _____
Name: Rayshon Foster
Title: Chief Executive Officer

Trustee

By: _____
Name: David M. Goodrich
Title: Chief Restructuring Officer

# Exhibit 2

| Exhibit Number | Description |
|---|---|
| 2 | Hypothetical Chapter 7 Liquidation Analysis |

**2nd Chance Investment Group, LLC, Debtor**

**Liquidation Analysis**

| | Chapter 11 Orderly Liquidation | Chapter 7 Trustee Forced Liquidation | Note |
|---|---|---|---|
| **Assets Available for Liquidation** | | | |
| Cash | 1,000 | 1,000 | [1] |
| Real Property | | | |
| 3025 Glenview Ave. San Bernardino CA 92407 | 377,000 | 320,000 | |
| 13352 Marty Lane Garden Grove CA 92843 | 700,000 | 595,000 | |
| 37472 Yorkshire Dr. Palmdale CA  93550 | 400,000 | 340,000 | |
| 324 W 47th Pl. Los Angeles CA 90037 | 700,000 | 595,000 | |
| 25641 Byron St. San Bernardino CA 92404 | 480,000 | 408,000 | |
| 43933 30 St E Lancaster CA 93535 | 305,000 | 259,000 | |
| 1004 Peachwood Crt. Los Banos CA 93635 | 400,000 | 340,000 | |
| 8607 Custer Rd SW  Lakewood WA 98499 | 480,000 | 408,000 | |
| 827 N Meridian  Ave. San Bernardino CA 92410 | 460,000 | 391,000 | |
| 730 E 78th St Los Angeles CA 90001 | 685,000 | 582,000 | |
| 1611 151st St. San Leandro CA 94578 | 600,000 | 510,000 | |
| 1016 Portal Ave. Bakersfield CA 93308 | 460,000 | 391,000 | |
| 37915 Marsala Dr. Palmdale CA 93552 | 420,000 | 357,000 | |
| 3122 Emery Lane Robbins IL 60472 | 50,000 | 43,000 | |
| Total Real Property | 6,517,000 | 5,539,000 | [2] |
| **Total Assets Available for Liquidation** | **6,518,000** | **5,540,000** | |
| | | | |
| **Administrative Costs of Liquidation** | | | |
| Real Estate Commission at 6% | (391,000) | | |
| Marketing Costs | (50,000) | | |
| Mortgage Payments | (278,000) | | |
| Insurance | (27,000) | | |
| Property Taxes | (98,000) | | |
| Chapter 11 UST Fees | (49,000) | | |
| Miscellaneous | (6,000) | | |
| **Total Administrative Costs of Liquidation** | **(899,000)** | | |
| | | | |
| **Administrative Professional Fees (Chapter 11)** | | | |
| Liquidating Trustee | (90,000) | | |
| Debtor's Counsel | (150,000) | | |
| Debtor's Financial Advisor | (50,000) | | |
| Committee Professionals | (150,000) | | |
| **Total Administrative Professional Fees (Chapter 11)** | **(440,000)** | | |

4/26/2023

**2nd Chance Investment Group, LLC, Debtor**
**Liquidation Analysis**

| | Chapter 11 Orderly Liquidation | Chapter 7 Trustee Forced Liquidation | Note |
|---|---|---|---|
| **Administrative Professional Fees (Chapter 7)** | | | |
| Trustee's Counsel | | (394,000) | |
| Trustee's Financial Advisor | | (100,000) | |
| Trustee's Real Estate Broker at 4% | | (222,000) | |
| Trustee's Handle | | | |
| 25% of <5k | | (1,000) | |
| 10% of 5k-50k | | (5,000) | |
| 5% of 50k-1m | | (50,000) | |
| 3% of >$1m | | (169,000) | |
| **Total Administrative Professional Fees (Chapter 7)** | | **(941,000)** | |
| | | | |
| **Cash Available for Distribution to Creditors** | **5,179,000** | **4,599,000** | |
| | | | |
| **Priority Claims** | | | |
| Chapter 7 Administrative Costs | - | (205,000) | [3] |
| Other Allowed Priority Claims | (21,000) | (21,000) | |
| **Total Priority Claims** | **(21,000)** | **(226,000)** | |
| | | | |
| **Allowed Secured Claims** | (3,069,000) | (3,069,000) | |
| | | | |
| **Remaining Cash Available for General Unsecured Creditors** | **2,089,000** | **1,304,000** | |
| | | | |
| **General Unsecured Claims** | | | |
| Allowed General Unsecured Creditors | (9,637,000) | (9,637,000) | |
| Chapter 11 Administrative Claims | - | (310,000) | [4] |
| **Total General Unsecured Claims** | **(9,637,000)** | **(9,947,000)** | |
| | | | |
| **Remaining Cash Available for Equity** | **-** | **-** | |
| **Percentage Recovery on GUCs** | **21.7%** | **13.1%** | |

NOTES:

[1] Cash is determined from estimated amount on hand.

[2] Property values are based upon estimated amounts set forth in the Debtor's application to employ real estate brokers.  This analysis assumes that the Chapter 7 forced liquidation value will be 85% of the Chapter 11 orderly liquidation value.  The estimated timeline to liquidate all of the properties in a Chapter 11 is 12 months and 6 months under a Chapter 7 proceeding.

[3] Assumed to be half of the costs incurred under Chapter 11 and is comprised of mortgage payments, insurance, property taxes and miscellaneous expenses.

[4]  As estimated in the Debtor's Plan.

# Exhibit 3

| Exhibit Number | Description |
|---|---|
| 3 | Claims of the Estate |

| Claimant | Claim No. | Date POC Filed | Claimed Secured | Claimed Priority Unsecured | Claimed General Unsecured | Scheduled Disputed/Unliq | Scheduled Secured | Scheduled Priority Unsecured | Scheduled General Unsecured | Plan's Allowed Secured | Plan's Allowed Priority | Plan's Allowed General Unsecured |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ally Bank [1] | 1 | 12/28/22 | $41,992.14 | $0.00 | $0.00 | - | $41,207 | $0 | | $0 | $0 | $0.00 |
| American Express | 2 | 12/30/22 | $0.00 | $0.00 | $227,492 | Disputed | $0 | $0 | $209,091 | $0 | $0 | $227,492 |
| Jesus Acosta & Michelle Acosta | 3 | 1/6/23 | $0.00 | $0.00 | $180,000.00 | Disputed | $0 | $0 | Unknown | $0 | $0 | $180,000 |
| Franchise Tax Board | 4 | 1/17/23 | $0.00 | $866.63 | $355.45 | Disputed | $0 | $0 | $0 | $0 | $867 | $355.45 |
| U.S. Small Business Administration | 5 | 2/16/23 | $146,894.05 | $0.00 | $0.00 | - | $150,000 | $0 | $0 | $0 | $0 | $150,000.00 |
| Wells Fargo Bank, N.A. | 6 | 2/23/23 | $594,915.37 | $0.00 | $0.00 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $0.00 |
| Internal Revenue Service | 7 | 3/2/23 | $0.00 | $7,972.89 | $0.00 | Disputed | $0 | $0 | $0 | $0 | $7,973 | $0.00 |
| Salvador Jimenez | 8 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 9 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 10 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 11 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 12 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 13 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 14 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 15 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 16 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 17 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 18 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 19 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 20 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 21 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 22 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 23 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 24 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| Salvador Jimenez | 25 | 3/21/23 | Unknown | Unknown | Unknown | Disputed | $0 | $0 | Unknown | $0 | $0 | TBD |
| ASB Ventures LLC | 26 | 3/22/23 | $0.00 | $0.00 | $261,283 | Disputed | $0 | $0 | Unknown | $0 | $0 | $261,283 |
| Ronak Parikh | 27 | 3/22/23 | $0.00 | $0.00 | $59,479 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $59,479 |
| Deven Bhakta | 28 | 3/22/23 | $0.00 | $0.00 | $62,018 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $62,018 |
| Abhishek Bhakta | 29 | 3/22/23 | $0.00 | $0.00 | $62,176 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $62,176 |
| Jatin Bhakta | 30 | 3/22/23 | $0.00 | $0.00 | $60,035 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $60,035 |
| Parin Bhakta | 31 | 3/22/23 | $0.00 | $0.00 | $171,619 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $171,619 |
| Anand Bhakta | 32 | 3/22/23 | $0.00 | $0.00 | $60,411 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $60,411 |
| Sima Patel | 33 | 3/22/23 | $0.00 | $0.00 | $109,640 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $109,640 |
| Vishal Bhakta | 34 | 3/22/23 | $0.00 | $0.00 | $172,895 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $172,895 |
| Bhavesh Bhakta | 35 | 3/22/23 | $0.00 | $0.00 | $60,443 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $60,443 |
| Zona AZ LLC | 36 | 3/22/23 | $0.00 | $0.00 | $196,729 | Disputed | $0 | $0 | Unknown | $0 | $0 | $196,729 |
| Zona AZ LLC | 37 | 3/22/23 | $0.00 | $0.00 | $731,460.12 | Disputed | $0 | $0 | Unknown | $0 | $0 | $731,460.12 |
| Stratten Lending Group, LLC | 38 | 3/22/23 | $0.00 | $0.00 | $1,012,169.32 | Disputed | $0 | $0 | Unknown | $0 | $0 | $1,012,169.32 |
| David Guzman | 39 | 3/27/23 | $0.00 | $0.00 | $60,000 | Disputed | $0 | $0 | Unknown | $0 | $0 | $60,000 |
| Merah LLC | 40 | 3/27/23 | $0.00 | $0.00 | $240,000 | Disputed | $0 | $0 | Unknown | $0 | $0 | $240,000 |
| Midare LLC | 41 | 3/27/23 | $0.00 | $0.00 | $1,057,500 | Disputed | $0 | $0 | Unknown | $0 | $0 | $1,057,500 |
| Steven Kinsbursky | 42 | 3/29/23 | $0.00 | $0.00 | $150,000 | - | $0 | $0 | Unknown | $0 | $0 | $150,000 |
| Zisman Family Trust | 43 | 3/29/23 | $0.00 | $0.00 | $270,000 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | $0 | $0 | $270,000 |
| Kiwi Capital Group LLC | 44 | 3/30/23 | $0.00 | $0.00 | $822,161.10 | Disputed | $0 | $0 | Unknown | $0 | $0 | $822,161.10 |
| Pramira LLC | 45 | 3/30/23 | $0.00 | $0.00 | $690,524.38 | Disputed | $0 | $0 | Unknown | $0 | $0 | $690,524.38 |
| Internal Revenue Service | 46 | 4/4/23 | $0.00 | $12,485.00 | $0.00 | Disputed | $0 | $0 | $0 | $0 | $12,485 | $0.00 |
| Lamar Central Outdoor, LLC | 47 | 4/5/23 | $0.00 | $0.00 | $1,164,618.17 | Disputed | $0 | $0 | $1,286,803 | $0 | $0 | $1,164,618.17 |
| Lantzman Investments, Inc. | 48 | 4/6/23 | $1,119,387.19 | $0.00 | $0.00 | - | $1,015,559 | $0 | $0 | $1,119,387 | $0 | $0.00 |
| Precision Realty Fund LLC | 49 | 4/7/23 | $0.00 | $0.00 | $1,256,031.58 | Disputed | $0 | $0 | Unknown | $0 | $0 | $1,256,031.58 |
| LMF2, LP | 50 | 4/7/23 | $1,588,962.55 | $0.00 | $0.00 | - | $1,486,000 | $0 | $0 | $1,588,963 | $0 | $0.00 |
| Forethough Life Insurance Compan | 51 | 4/7/23 | $194,913.29 | $0.00 | $0.00 | - | $180,000 | $0 | $0 | $194,913.29 | $0 | $0.00 |
| Felipe Gutierrez Jr. | 52 | 4/7/23 | $0.00 | $0.00 | $66,125.00 | Disputed | $0 | $0 | Unknown | $0 | $0 | $66,125.00 |
| Maher Abou Khzam | 53 | 4/9/23 | $58,728.77 | $0.00 | $287,131.00 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | TBD | $0 | TBD |
| Maher Abou Khzam | 54 | 4/9/23 | $58,445.21 | $0.00 | $287,216.43 | Unscheduled | Unscheduled | Unscheduled | Unscheduled | TBD | $0 | TBD |
| U.S. Bank Trust N.A. | 55 | 4/10/23 | $165,647.56 | $0.00 | $0.00 | - | $162,000 | $0 | $0 | $165,648 | $0 | $0.00 |
| Mercedes-Benz Financial Services | 56 | 4/11/23 | $77,308.52 | $0.00 | $0.00 | - | $58,336 | $0 | $34,015 | $0 | $0 | $0.00 |
| Mercedes-Benz Financial Services | 57 | 4/11/23 | $46,868.43 | $0.00 | $0.00 | - | $52,669 | $0 | $1,553 | $0 | $0 | $0.00 |
| Comcast/Effectv | - | - | - | - | - | - | $0 | $0 | $78,021 | $0 | $0 | $78,021 |

| Claimant | Claim No. | Date POC Filed | Claimed Secured | Claimed Priority Unsecured | Claimed General Unsecured | Scheduled Disputed/Unliqu | Scheduled Secured | Scheduled Priority Unsecured | Scheduled General Unsecured | Plan's Allowed Secured | Plan's Allowed Priority | Plan's Allowed General Unsecured |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Google Adwords | - | - | - | - | - | - | $0 | $0 | Unknown | $0 | $0 | $0 |
| Margaret Adams | - | - | - | - | - | - | $0 | $0 | $96,000 | $0 | $0 | $96,000 |
| Michael Chapman Sr. | - | - | - | - | - | - | $0 | $0 | $107,500 | $0 | $0 | $107,500 |
|  | - | - | - | - | - | - |  |  |  |  |  |  |
| **Totals** |  |  | $783,801.56 | $8,839.52 | $6,310,542.35 |  | $3,145,771 | $0 | $1,812,983 | $3,068,911 | $21,325 | $9,636,685.55 |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
| **Exhibit B** to Plan |  |  |  |  |  |  |  |  |  |  |  |  |
| **Exhibit 3** to Disclosure Statement |  |  |  |  |  |  |  |  |  |  |  |  |

# Exhibit 4

| Exhibit Number | Description |
|---|---|
| 4 | Tax Analysis |



**In Re: 2nc Chance Investment Group LLC**
**Sale of 2nd Chance Investment Group Property Gain and Tax Analysis**

Assumptions/Facts:

Date of FMV    A-1    3/26/2023

| Fed Taxes: | Total Gain | Tax Rate | Est Tax | Rayshon Foster 52.00% Gain | Est Tax | Sonja Foster 48.00% Gain | Est Tax |
|---|---|---|---|---|---|---|---|
| Section 1231 Gain - Land | - | 0.2 | - | - | - | - | - |
| CAP/Section 1231 Gain - Building | 1,482,980 | 0.2 | 296,596 | 771,150 | 154,230 | 711,830 | 142,366 |
| Section 1250 Gain - Building | - | 0.25 | - | - | - | - | - |
| NIT | | | 46,853 | | 24,364 | | 22,490 |
| Total Gain | 1,482,980 | | | 771,150 | 178,594 | 711,830 | 164,856 |

| CA Taxes: | | | | | | | |
|---|---|---|---|---|---|---|---|
| Estimated Taxes (MFJ) | | | | | | | |
| Up to income of $677,279 | Tables | | 112,988 | | 56,494 | | 56,494 |
| Income between $677,279 and $812,728 | 10.3% | | 13,227 | | 9,669 | | 3,559 |
| Mental Health Tax - Income > $1M | NA | | - | | - | | - |
| Total Taxes | | | 469,664 | | 244,756 | | 224,908 |
| Effective Tax Rate | | | | | 32% | | 32% |

Note:

Based on an analysis of the 2020 and 2021 debtor tax returns, 2nd Chance Investment Group LLC is taxed as a partnership. As such, 2nd Chance Investment Group, LLC does not pay federal income taxes. Instead the Debtor passes through all income to its partners. Per the 2021 debtor return, Rayshon Foster owns a 52% interest in the partnership and Sonja Foster owns a 48% interest. The total taxable gain is estimated to be $1,482,980 and 52% of the taxable gain or $771,150, will be allocated to Rayshon and 48%  or $711,830 will be allocated to Sonja.

The taxes owed by the partners related to the liquidation of the Debtor's real estate assets are estimated to be a total of $469,664 with Rayshon owing $244,756 and Sonja owing $224,908. The debtor will be responsible for the normal $800 CA minimum tax and an LLC fee of $11,790.


**GT GROBSTEIN TEEPLE|LLP**

**In Re: 2nc Chance Investment Group Inc**
**Sale of 2nd Chance Investment Group Property Tax Analysis and Cash Flow**

**Assumptions/Facts:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date of FMV | | 3/26/2023 | 3/26/2023 | 3/26/2023 | 3/26/2023 | 3/26/2023 | 3/26/2023 | 3/26/2023 |
| FMV | A-1 | 6,517,000 | 377,000 | 700,000 | 400,000 | 700,000 | 480,000 | 305,000 |

| | | Total | | 1 - 3025 Glenview Ave | | 2 - 13352 Marty Lane | | 3 - 37472 Yorkshire Dr | | 4 - 324 W 47 th Pl (Rental) | | 5 - 25641 Byron St | | 6 - 43933 30th St | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Analysis:** | | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow |
| FMV | A-1 | 6,517,000 | 6,517,000 | 377,000 | 377,000 | 700,000 | 700,000 | 400,000 | 400,000 | 700,000 | 700,000 | 480,000 | 480,000 | 305,000 | 305,000 |
| Basis | | | | | | | | | | | | | | | |
| Land | | | | | | | | | | | | | | | |
| Building | B | (4,333,000) | | (210,000) | | (548,000) | | (300,000) | | (495,000) | | (350,000) | | (320,000) | |
| Depreciation | | - | | | | | | | | | | | | | |
| Total Basis | | (4,333,000) | - | (210,000) | - | (548,000) | - | (300,000) | - | (495,000) | - | (350,000) | - | (320,000) | - |
| Cost of Sale | A-1 | (391,020) | (391,020) | (22,620) | (22,620) | (42,000) | (42,000) | (24,000) | (24,000) | (42,000) | (42,000) | (28,800) | (28,800) | (18,300) | (18,300) |
| Security Claim | A-1 | | (3,924,227) | | (180,000) | | (431,668) | | (162,000) | | (512,000) | | (286,000) | | (266,000) |
| Admin Claims | | (310,000) | (310,000) | | | | | | | | | | | | |
| **Taxable Gain/(Loss)** | | **1,482,980** | | **144,380** | | **110,000** | | **76,000** | | **163,000** | | **101,200** | | **(33,300)** | |
| **Net Cash Flow** | | | **1,891,753** | | **174,380** | | **226,332** | | **214,000** | | **146,000** | | **165,200** | | **20,700** |

**Breakdown of Gain:**

| | Land | Building | Land | Building | Land | Building | Land | Building | Land | Building | Land | Building | Land | Building |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **% of Cost** | 0.00% | 100.00% | 0.00% | 100.00% | 0.00% | 100.00% | 0.00% | 100.00% | 0.00% | 100.00% | 0.00% | 100.00% | 0.00% | 100.00% |
| Alloc of Sales | - | 6,517,000 | - | 377,000 | - | 700,000 | - | 400,000 | - | 700,000 | - | 480,000 | - | 305,000 |
| Basis - Purchase price | - | (4,333,000) | - | (210,000) | - | (548,000) | - | (300,000) | - | (495,000) | - | (350,000) | - | (320,000) |
| Alloc of Other Costs | - | (391,020) | - | (22,620) | - | (42,000) | - | (24,000) | - | (42,000) | - | (28,800) | - | (18,300) |
| Admin Claims | | (310,000) | | | | | | | | | | | | |
| **Gain** | - | 1,482,980 | - | 144,380 | - | 110,000 | - | 76,000 | - | 163,000 | - | 101,200 | - | (33,300) |
| 1231 Gain | - | 1,482,980 | - | 144,380 | - | 110,000 | - | 76,000 | - | 163,000 | - | 101,200 | - | (33,300) |
| 1250 Gain | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | 1,482,980 | - | 144,380 | - | 110,000 | - | 76,000 | - | 163,000 | - | 101,200 | - | (33,300) |
| | | - | | - | | - | | - | | - | | - | | - |



| | 7 - 1004 Peachwood Crt | | 8 - 8607 Custer Rd | | 9 - 827 N Meridian Ave | | 10 - 730 E 78th St | | 11 - 611 151st St | | 12 - 1016 Portal Ave | | 13 - 37915 Marsala Dr | | 14 - 3122 Emery Lane | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow | Gain Analysis | Cash flow |
| 3/26/2023 | 400,000 | 400,000 | 480,000 | 480,000 | 460,000 | 460,000 | 685,000 | 685,000 | 600,000 | 600,000 | 460,000 | 460,000 | 420,000 | 420,000 | 50,000 | 50,000 |
| | (335,000) | | (200,000) | | (355,000) | | (590,000) | | (125,000) | | (150,000) | | (355,000) | | | |
| | (335,000) | - | (200,000) | - | (355,000) | - | (590,000) | - | (125,000) | - | (150,000) | - | (355,000) | - | - | - |
| | (24,000) | (24,000) | (28,800) | (28,800) | (27,600) | (27,600) | (41,100) | (41,100) | (36,000) | (36,000) | (27,600) | (27,600) | (25,200) | (25,200) | (3,000) | (3,000) |
| | | (288,000) | | (252,000) | | (286,631) | | (510,000) | | (442,928) | | (127,000) | | (180,000) | | |
| | **41,000** | | **251,200** | | **77,400** | | **53,900** | | **439,000** | | **282,400** | | **39,800** | | **47,000** | |
| | | 88,000 | | 199,200 | | 145,769 | | 133,900 | | 121,072 | | 305,400 | | 214,800 | | 47,000 |

| Land | Building | Land | Building | Land | Building | Land | Building | Land | Building | Land | Building | Land | Building | Land | Building |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **0.00%** | **100.00%** | **0.00%** | **100.00%** | **0.00%** | **100.00%** | **0.00%** | **100.00%** | **0.00%** | **100.00%** | **0.00%** | **100.00%** | **0.00%** | **100.00%** | **0.00%** | **100.00%** |
| - | 400,000 | - | 480,000 | - | 460,000 | - | 685,000 | - | 600,000 | - | 460,000 | - | 420,000 | - | 50,000 |
| - | (335,000) | - | (200,000) | - | (355,000) | - | (590,000) | - | (125,000) | - | (150,000) | - | (355,000) | - | - |
| - | (24,000) | - | (28,800) | - | (27,600) | - | (41,100) | - | (36,000) | - | (27,600) | - | (25,200) | - | (3,000) |
| - | 41,000 | - | 251,200 | - | 77,400 | - | 53,900 | - | 439,000 | - | 282,400 | - | 39,800 | - | 47,000 |
| - | 41,000 | - | 251,200 | - | 77,400 | - | 53,900 | - | 439,000 | - | 282,400 | - | 39,800 | - | 47,000 |
| - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| - | 41,000 | - | 251,200 | - | 77,400 | - | 53,900 | - | 439,000 | - | 282,400 | - | 39,800 | - | 47,000 |
| - | | - | | - | | - | | - | | - | | - | | - | |

# Exhibit 5

| Exhibit Number | Description |
|---|---|
| 5 | Disputed, Contingent, and Unliquidated Claims |

| Class Member | Amount Listed on Schedule D, E/F | Disputed | POC Filed | Plan Treatment |
|---|---|---|---|---|
| Aaron Zistman [1] | Unknown | Yes. | No. | |
| Fabian Martinez | Unknown | Yes. | No. | |
| Hitem Ram Bhakta & Sajan Bhakta | $5,000,000.00 | Yes. | No. | |
| Home Depot Credit Servcies | $18,155.00 | Yes. | No. | |
| Lowes Business | Unknown | Yes. | No. | |
| Google Adwords | Unknown | No. | No. | |
| Rosendo Quiroz Estorga, Jr. | Unknown | No. | No. | |
| Staples Credit Plan | $852.00 | Yes. | No. | |
| Thamar A. Peterson | Unknown | No. | No. | Each Class 7 Member will receive $0 over the life of the plan. Creditors and interest holders in Class 7 are listed here are subject to having their debts and interests discharged under 11 U.S.C. Section 1141 without receiving any distribution under the Chapter 11 plan. |
| | | | | |
| **Totals** | 5019007 | | | |

4/13/2023

# Exhibit 6

| Exhibit Number | Description |
| --- | --- |
| 6 | Chapter 11 Ballot |

Bankruptcy Case of 2nd Chance Investment Group, LLC
Case No. 8:22-bk-12142-SC

---

**Class [    ] Ballot for Accepting or Rejecting Plan by 2ND Chance Investment Group, LLC**

---

2nd Chance Investment Group, LLC filed a plan of reorganization dated May 10, 2023 (the Plan) for the Debtor in this case. **You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in class [     ] under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Andy C. Warshaw, 1200 Main St., Suite C, Irvine, CA 92614 on or before TBD, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**Acceptance or Rejection of the Plan**

If the voter is the holder of a secured, priority, or unsecured nonpriority claim:

The undersigned, the holder of a Class [    ] claim against the Debtor in the unpaid amount of Dollars ($    )

Bankruptcy Case of 2nd Chance Investment Group, LLC
Case No. 8:22-bk-12142-SC

*Check one box only*

**Accepts the plan [   ]**

**Rejects the plan  [   ]**


Dated: _____


Print or type name: _____


Signature: _____ Title (if corporation or partnership) _____


Address: _____

_____

_____


_____


**Return this ballot to:**


**Andy C. Warshaw, 1200 Main St., Suite C, Irvine, CA 92614**

**Ballots will be accepted by mail, facsimile to (714) 361-5380 or email to awarshaw@bwlawcenter.com.  Electronic transmission is preferable.**

# Exhibit 7

| Exhibit Number | Description |
|---|---|
| 7 | Stipulation with Committee |

1  Robert P. Goe – State Bar No. 137019
   Brandon J. Iskander – State Bar No. 300916
2  **GOE FORSYTHE & HODGES LLP**
   17701 Cowan, Bldg. D, Suite 210
3  Irvine, CA 92614
   rgoe@goeforlaw.com
4  biskander@goeforlaw.com
   Telephone:  (949) 798-2460
5  Facsimile:   (949) 955-9437

6  Attorneys for Official Committee of Unsecured Creditors

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10                         **SANTA ANA DIVISION**

11

12  In re:                                    Case No. 8:22-bk-12142-SC

13  **2ND CHANCE INVESTMENT GROUP, LLC,**      Chapter 11 Proceeding

14

15           Debtor and Debtor-in-possession.  **STIPULATION BETWEEN DEBTOR
                                                AND THE OFFICIAL COMMITTEE OF
16                                              UNSECURED CREDITORS GRANTING
                                                THE COMMITTEE STANDING TO
17                                              PURSUE CERTAIN AVOIDANCE
                                                ACTIONS ON BEHALF OF THE
18                                              ESTATE**

19                                             [No Hearing Required]

20

21         The Official Committee of Unsecured Creditors ("Committee") for the above-referenced

22  bankruptcy estate ("Estate") and 2nd Chance Investment Group, LLC, the Debtor and Debtor-in-

23  Possession ("Debtor"), by and through their counsel of record, agree and stipulate as follows:

24                         **I.    RECITALS**

25         1.      This case was commenced on December 21, 2022 ("Petition Date"), by the filing of

26  a voluntary Chapter 11 petition by Debtor.

27         2.      On February 7, 2023, the United States Trustee's Office appointed (as amended) the

28  following unsecured creditors to serve on the Committee:  (1) Felipe Gutierrez Jr., (2) Jesus Acosta,

    (3) Straten Lending Group, LLC, c/o Shan Patel, (4) ASB Ventures LLC, c/o Sajan Bhakta, (5)

                                           1

1    Precision Realty Fund, LLC, c/o Hiten Ram Bhakta, and (6) Zona AZ LLC, c/o Vishal Bhakta.

2    (Docket No. 39) (individually, "Committee Member," and collectively, "Committee Members.")

3          3.       The Estate may have claims, counterclaims, causes of action, lawsuits, actions

4    and/or the like, whether arising before, on, or after the Petition Date for preferences, fraudulent

5    transfers, and other avoidance claims under Sections 502(d), 510, 544, 545, 547, 548, 549, 550, and

6    553 of the Bankruptcy Code or any avoidance actions under applicable non-bankruptcy law

7    (collectively "Avoidance Actions").

8          4.       Subject to Bankruptcy Court approval, the Debtor and Committee desire to grant the

9    Committee standing to investigate, prosecute, and, if appropriate, compromise and settle the

10   Avoidance Actions on behalf of the Estate, with the exception that any claims against an individual

11   or corporation of the Committee Members are not included in the Avoidance Actions.

12                       **II.    <u>STIPULATION</u>**

13          1.       **WHEREFORE**, based on the foregoing Recitals, and subject to Bankruptcy Court

14   approval, the Committee, by and through its counsel, shall have standing and authority, without

15   further order of the Bankruptcy Court, to (a) investigate Avoidance Actions, (b) file, serve,

16   prosecute and settle (subject to separate Bankruptcy Court approval) Avoidance Actions, whether

17   in the Bankruptcy Court or another forum, and (c) grant releases of liability with respect to

18   Avoidance Actions that are settled pursuant to separate Bankruptcy Court approval.

19          2.       The Committee, by and through its counsel, shall also have standing and non-

20   exclusive authority to investigate and prosecute objections to non-Committee Member proofs of

21   claim on behalf of the Estate. Nothing in this paragraph is intended to limit the right of (i) any

22   other party in interest to object to proofs of claim or (ii) the rights of the Estate to object to proofs

23   of claim.

24          3.       This Stipulation may be executed in multiple counterparts each of which will

25   constitute an original and all of which together will constitute one and the same agreement.

26   Facsimile or PDF signatures shall be considered original signatures for all purposes.

27

28

1       4.     This Stipulation constitutes the entire and complete understanding and agreement of

2 the Parties hereto, and supersedes prior understandings and agreements, if any, among the Parties

3 hereto with respect to the subject matter hereof.

4       5.     This Stipulation shall be binding upon the Parties hereto and all of their respective

5 successors, heirs, legal representatives and assigns, including any subsequently appointed

6 liquidating trustee or chapter 11 or chapter 7 trustee.

7    **IT IS SO STIPULATED AND AGREED.**

8

9 Dated: March 22, 2023                 **GOE FORSYTHE & HODGES LLP**

10

                                      By: /s/ Robert P. Goe

11                                         Robert P. Goe
                                        Brandon J. Iskander

12                                         Counsel for the Official Committee of
                                        Unsecured Creditors

13

14 Dated: March 22__, 2023             **FINANCIAL RELIEF LAW CENTER,**

15                                     **APC**

16

17                                         By: _____
                                        Andy C. Warshaw

18                                         Amanda G. Billyard
                                        Attorneys for 2nd Chance Investment

19                                       Group, LLC, Debtor and Debtor in
                                        Possession

20

21

22

23

24

25

26

27

28

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 17701 Cowan, Bldg. D, Suite 210, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **STIPULATION BETWEEN DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS GRANTING THE COMMITTEE STANDING TO PURSUE CERTAIN AVOIDANCE ACTIONS ON BEHALF OF THE ESTATE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>March 22, 2023</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒   Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) <u>March 22, 2023</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒   Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: (state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>March 22, 2023</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

- The Honorable Scott C. Clarkson, 411 W. Fourth Street, Suite 5130; Santa Ana, CA  92701-4593
- (SUSPENDED DUE TO COVID-19 PROTOCOLS)

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 22, 2023 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1

# Mailing Information for Case 8:22-bk-12142-SC

2

## Electronic Mail Notice List

3

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

4

5
- **Amanda G. Billyard**   abillyard@bwlawcenter.com
- **Stephan M Brown**   ECF@thebklawoffice.com,
  stephan@thebklawoffice.com;roslyn@thebklawoffice.com

6
- **Dane W Exnowski**   dane.exnowski@mccalla.com,
  bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com

7
- **Lazaro E Fernandez**   lef17@pacbell.net, lef-sam@pacbell.net;lef-
  mari@pacbell.net;OfficeLR74738@notify.bestcase.com;lefkarina@gmail.com

8
- **Robert P Goe**   kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **David M Goodrich**   dgoodrich@go2.law,

9
  kadele@wgllp.com;lbracken@wgllp.com;wggllp@ecf.courtdrive.com;gestrada@wgllp.com
- **Brandon J Iskander**   biskander@goeforlaw.com, kmurphy@goeforlaw.com

10
- **Charity J Manee**   cmanee@goeforlaw.com, kmurphy@goeforlaw.com
- **Queenie K Ng**   queenie.k.ng@usdoj.gov

11
- **Douglas A Plazak**   dplazak@rhlaw.com
- **Arvind Nath Rawal**   arawal@aisinfo.com

12
- **Richard L. Sturdevant**   rich@bwlawcenter.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov

13
- **Andy C Warshaw**   awarshaw@bwlawcenter.com,
  warshaw.andyb110606@notify.bestcase.com

14
- **Jennifer C Wong**   bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

15

## Manual Notice List

16

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who

17
therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into
your word processing program in order to create notices or labels for these recipients.

18
      **Financial Relief Law Center APC**

19
      1200 Main St., Ste C
      Irvine, CA 92614

20

21

22

23

24

25

26

27

28

1 | Robert P. Goe – State Bar No. 137019
Brandon J. Iskander – State Bar No. 300916
2 | **GOE FORSYTHE & HODGES LLP**
17701 Cowan, Bldg. D, Suite 210
3 | Irvine, CA 92614
rgoe@goeforlaw.com
4 | biskander@goeforlaw.com
Telephone:  (949) 798-2460
5 | Facsimile:   (949) 955-9437

6 | Attorneys for Official Committee of Unsecured Creditors

FILED & ENTERED

MAR 22 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SANTA ANA DIVISION**

11

12 | In re:

13 | **2ND CHANCE INVESTMENT GROUP, LLC,**

14

15 | Debtor and Debtor-in-possession.

Case No. 8:22-bk-12142-SC

Chapter 11 Proceeding

**ORDER APPROVING STIPULATION BETWEEN DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS GRANTING THE COMMITTEE STANDING TO PURSUE CERTAIN AVOIDANCE ACTIONS ON BEHALF OF THE ESTATE**

[No Hearing Required]

22 |      The Court, having read and considered the *Stipulation Between Debtor and the Official*

23 | *Committee of Unsecured Creditors Granting the Committee Standing to Pursue Certain Avoidance*

24 | *Actions on Behalf of the Estate* ("Stipulation") entered into between 2nd Chance Investment Group,

25 | LLC, the Debtor and Debtor-in-Possession ("Debtor") and The Official Committee of Unsecured

26 | Creditors ("Committee"), filed March 22, 2023 as Docket No. 76, and for good cause appearing,

27 | \\\

28

1

**IT IS ORDERED:**

1.  The Stipulation is approved.

###

Date: March 22, 2023

Scott C. Clarkson
United States Bankruptcy Judge