SULLIVAN HILL REZ & ENGEL, APLC
  James P. Hill, SBN 90478
  Gary B. Rudolph, SBN 101921
  Kathleen A. Cashman-Kramer, SBN 128861
600 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 233-4100
Fax No.: (619) 231-4372
Attorneys for Creditor and Party in Interest Lantzman Investments, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>2ND CHANCE INVESTMENT GROUP, LLC,<br><br>            Debtor. | CASE NO.: 8:22-bk-12142-SC<br><br>Chapter 11<br><br>**MOTION TO APPROVE STIPULATION RESOLVING MOTION FOR RELIEF FROM THE AUTOMATIC STAY (ECF #131) 25641 BYRON ST., SAN BERNARDINO, CA 92404, APN NO. 0273-353-01-0-000 AND FOR APPROVAL OF STIPULATION FOR RELIEF FROM STAY RE: 827 NORTH MERIDIAN AVENUE, SAN BERNARDINO, CA 92404, APN NO. 0142-461-25-0-000; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  August 15, 2023<br>Time: 10:30 a.m.<br>Judge:  Hon. Scott C. Clarkson |

1

# **MOTION**

Lantzman Investments, Inc., a California corporation ("Lender"), by its attorneys of record, hereby moves this Court for an order approving the STIPULATION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. §§ 362(d)(1) AND 362(d)(2) RE: 25641 BYRON ST., SAN BERNARDINO, CA 92404, APN NO. 0273-353-01-0-000 (the "Byron Property") ("Byron Stipulation").  A true copy of this Byron Stipulation is attached hereto as Exhibit "1."  This Stipulation resolves the Amended Motion for Relief from the Automatic Stay that Lender filed in this case on May 4, 2023 (see ECF No.'s 131, 134), which is currently set for hearing on August 15, 2023 at 10:30 a.m.  See ECF No.'s 160, 178.

By this Motion Lender also seeks approval of the STIPULATION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. §§ 362(d)(1) AND 362(d)(2) RE: 827 NORTH MERIDIAN AVANUE, SAN BERNARDINO, CA 92404, APN NO. 0142-461-25-0-000 (the "Meridian Property") ("Meridian Stipulation").  A true copy of this Meridian Stipulation is attached hereto as Exhibit "2."

As grounds therefore, Lender states that the Debtor and its chief restructuring officer, Mr. David Goodrich, had attempted to market both the Byron and Meridian Properties.  The highest and best offers they had received for these properties was insufficient to pay the Lender in full on its secured claim, as well as all costs of sale, and there would be no proceeds left for the estate.  As a result, the parties agreed to stipulate to relief from stay for cause, including that there is no equity in either the Byron of Meridian Properties for the estate.

Lender submits that cause exists to grant the relief requested and approve the two Stipulations.  True and correct copies of the proposed orders approving these stipulations are attached hereto as Exhibits "3" (Byron) and "4" (Meridian), respectively.

/ / /

/ / /

## STATEMENT OF THE FACTS

The Debtor's schedules in this case (ECF No. 1) listed that the Debtor owned an interest in the Byron and Meridian Properties, amongst others.  On April 13, 2023, this Court entered the order approving the retention of a broker to market these and other real properties of the Chapter 11 estate.  ECF No. 102.

Lender filed a proof of claim in this case on April 6, 2023, in which it listed several properties in this estate in which it held a first priority secured claim in both the Byron and Meridian Properties.  See Exhibit "5," a true copy of the amended proof of claim filed April 18, 2023 as Claim No. 48-2.

As set forth in the accompanying declaration of Kathleen A. Cashman-Kramer ("Kramer Decl."), the Byron and Meridian Properties were listed for sale sometime in May 2023.  The debtor received offers for both properties; however, the highest and best offers for both properties showed that the proposed purchase prices were insufficient to pay the Lender's secured claim in full, as well as all other costs of sale. Specifically, Lender's counsel was provided with escrow closing statements dated June 2, 2023 for each property which showed the offer, the amount of Lender's liens on both properties, fire abatement charges (the Byron Property), payoff amounts for other liens, real property taxes owing, broker's commission, and costs of sale.  Kramer Decl., ¶6.

As to the Byron Property, the proposed purchase price (the best offer received) was $350,000, but the amount needed to pay everything in full was $353,358.16 (a difference of $3,358.16).  Kramer Decl., ¶7.

As to the Meridian Property, the proposed purchase price (the best offer received) was $360,000, by the amount needed to pay everything in full was $437,650.89 (a difference of $77,650.89).  Kramer Decl., ¶8.

Because both the Byron and Meridian Properties are underwater, with no equity for the Debtor's estate, the parties agreed to stipulate to relief from the automatic stay to permit the Lender to foreclose on both properties.  Kramer Decl., ¶9. The terms of

both stipulations are as follows:

1.    The Lender is entitled to relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) and 362(d)(2).

2.    Lender (and any and all successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Real Property.

3.    Mr. Goodrich specifically agrees that any insurance currently in effect for the Real Property shall not be cancelled for the Real Property until after the order approving this Stipulation has been entered into and is final and non-appealable.

4.    Upon entry of the order approving this Stipulation, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

See Exhibits "1" and "2" hereto.  These Stipulations were filed with this Court on June 26, 2023.  See ECF #s 183, 184.

## DISCUSSION

## GOOD CAUSE EXISTS TO GRANT THE MOTION, AND TO APPROVE THE STIPULATIONS.

Good cause exists to grant the motion and approve the stipulations.   Section 362(d) of the Bankruptcy Code (11 United States Code) states:

> On request of a party in interest and after notice of a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.
> (2) with respect to a stay of an act against property under subsection (a) of this Section if-
>
> (A) the debtor does not have any equity in such property; and
> (B) such property is not necessary to an effective reorganization.

Pursuant to 11 U.S.C. § 362(d)(1), the Court shall grant relief from automatic stay for cause on the request of a party in interest and after notice and a hearing if cause exists. Section 362 of the Bankruptcy Code does not give a comprehensive definition of "cause" but this Court has discretion in finding the existence of cause and must "determine whether discretionary relief from stay is appropriate on a case by case basis." In re Davis, 91 B.R. 470, 471 (Bankr. N.D. Ill. 1988); In re MacDonald, 755 F.2d 715, 919 (9th Cir. 1985). A number of factors may also be considered when deciding whether cause exists. See In re Bogdanovich, 292 F.3d 104, 110 (2d Cir. 2002). Among these factors is the "impact of the stay on the parties and the balance of harms." In re Bogdanovich, 292 F.3d at 110 (quoting Sonnax Indus., Inc. v. Tri Component Prods. Corp., 907 F.2d 1280, 1285-86 (2d Cir. 1990).

"A debtor has no equity in the property for purposes of section 362(d)(2) when the debts secured by liens on the property exceed the value of the property." 3 Lawrence P. King, Collier on Bankruptcy, ¶ 362.07[4][a] (15th ed. 2003); see Stewart v. Gurley, 745 F.2d 1194, 1195-96 (9th Cir. 1984) [when determining whether a debtor has equity in the property, the court must consider "the amount of value of a property above the total liens or charges"].

In this case, it is undisputed that the Debtor has no equity in either the Byron or the Meridian Properties. Approval of the Stipulation will result in resolution of the pending relief from stay motion on the Byron Property (ECF #131), and will obviate the need for Lender to file and have heard the same motion, on the same grounds, for the Meridian Property. Lastly, the Debtor has agreed to the relief requested, and the Lender has no reason to believe that any other party in interest will object to the requested relief based upon the undisputed facts of this case.

## CONCLUSION

Cause exists for the relief requested by this Motion. For the reasons set forth herein, Lender respectfully requests that this Court grant this Motion, approve both the Byron and Meridian Stipulations, including finding that the approval of the Byron

1  Stipulation resolves the pending motion for relief from the automatic stay (ECF #131)

2  such that that motion may come off calendar as moot, and for any additional relief this

3  Court may deem necessary and proper.

4

5  Dated: June 29, 2023                                    SULLIVAN HILL REZ & ENGEL
                                                           A Professional Law Corporation
6

7                                                  By:    /s/ Kathleen A. Cashman-Kramer
                                                          Gary B. Rudolph
8                                                          Kathleen A. Cashman-Kramer
                                                          Attorneys for Lender Lantzman
9                                                          Investments, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 600 B Street, Suite 1700 San Diego, CA 92101

A true and correct copy of the foregoing document entitled (*specify*):

**MOTION TO APPROVE STIPULATION RESOLVING MOTION FOR RELIEF FROM THE AUTOMATIC STAY (ECF #131) 25641 BYRON ST., SAN BERNARDINO, CA 92404, APN NO. 0273-353-01-0-000 AND FOR APPROVAL OF STIPULATION FOR RELIEF FROM STAY RE: 827 NORTH MERIDIAN AVENUE, SAN BERNARDINO,  CA 92404, APN NO. 0142-461-25-0-000; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 June 29, 2023     , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) June 29, 2023      , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)
_____
, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 29, 2023 | Laurel L. Dinkins | *Laurel Dinkins* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

# SERVICE INFORMATION

## Case No. 8:22-bk-12142 –

## 2nd Chance Investment Group, LLC

1. To be served by the Court via Notice of Electronic Filing [NEF]:

- **Amanda G. Billyard**    abillyard@bwlawcenter.com

- **Stephan M Brown**    ECF@thebklawoffice.com,
  stephan@thebklawoffice.com;roslyn@thebklawoffice.com

- **Kathleen A Cashman-Kramer**    cashman-kramer@sullivanhill.com,
  theresam@psdslaw.com

- **Dane W Exnowski**    dane.exnowski@mccalla.com,
  bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com

- **Lazaro E Fernandez**    lef17@pacbell.net, lef-sam@pacbell.net;lef-
  mari@pacbell.net;OfficeLR74738@notify.bestcase.com;lefkarina@gmail.c
  om

- **Robert P Goe**    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com

- **David M Goodrich**    dgoodrich@go2.law,
  kadele@wgllp.com;lbracken@wgllp.com;wgllp@ecf.courtdrive.com;gestr
  ada@wgllp.com

- **Daniel J Griffin**    daniel@thebklawoffice.com,
  tclayton@thebklawoffice.com;daniel@thebklawoffice.com

- **Brandon J Iskander**    biskander@goeforlaw.com,
  kmurphy@goeforlaw.com

- **Charity J Manee**    cmanee@goeforlaw.com, kmurphy@goeforlaw.com

- **Randall P Mroczynski**    randym@cookseylaw.com

- **Queenie K Ng**    queenie.k.ng@usdoj.gov

- **Douglas A Plazak**    dplazak@rhlaw.com

- **Arvind Nath Rawal**    arawal@aisinfo.com

- **Gary B Rudolph**    rudolph@sullivanhill.com,
  bkstaff@sullivanhill.com;vidovich@ecf.inforuptcy.com;rudolph@ecf.court
  drive.com;james@ecf.courtdrive.com

- **Cheryl A Skigin**    caskigin@earthlink.net, caskigin@earthlink.net

- **Richard L. Sturdevant**    rich@bwlawcenter.com

- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

- **Christopher P. Walker**    cwalker@cpwalkerlaw.com,
  lhines@cpwalkerlaw.com;r57253@notify.bestcase.com

- **Fanny Zhang Wan**    fwan@raslg.com

- **Andy C Warshaw**    awarshaw@bwlawcenter.com,
  warshaw.andyb110606@notify.bestcase.com

- **Jennifer C Wong**    bknotice@mccarthyholthus.com,
  jwong@ecf.courtdrive.com

2.  Served by United States Mail:

| **Debtor** | 2nd Chance Investment Group, LLC<br>600 W. Santa Ana Blvd.<br>PMB 5045<br>Santa Ana, CA 92701 |
|---|---|
| **Residents of Real Property** | Margaret Adams/Resident<br>25641 Byron Street<br>San Bernardino, CA 92404<br><br>Teresa Miller/Resident<br>827 N Meridian Ave.<br>San Bernardino CA 92410 |
| **Judge – Courtesy Copy** | Honorable Scott C. Clarkson<br>United States Bankruptcy Court<br>Central District of California<br>Ronald Reagan Federal Building and<br>Courthouse<br>411 West Fourth Street, Suite 5130 /<br>Courtroom 5C<br>Santa Ana, CA 92701-4593 |

**Exhibit 1**



1

2

3

4  SULLIVAN HILL REZ & ENGEL, APLC
   Gary B. Rudolph, SBN 101921
5  James P. Hill, SBN 90478
   Kathleen A. Cashman-Kramer, SBN 128861
6  600 B Street, Suite 1700
7  San Diego, California 92101
   Telephone: (619) 233-4100
8  Fax No.: (619) 231-4372
9  Attorneys for Creditor and Party in Interest Lantzman Investments, Inc.

10              **UNITED STATES BANKRUPTCY COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

12  In re                                ) CASE NO.: 8:22-bk-12142-SC
13                                        )
    2ND CHANCE INVESTMENT                 ) Chapter 11
14  GROUP, LLC,                           )
                                          ) **STIPULATION FOR RELIEF**
15              Debtor.                   ) **FROM AUTOMATIC STAY**
                                          ) **UNDER 11 U.S.C. §§ 362(d)(1)**
16                                        ) **AND 362(d)(2) RE: 25641 BYRON**
                                          ) **ST., SAN BERNARDINO, CA**
17                                        ) **92404, APN NO. 0273-353-01-0-000**
18                                        )
                                          ) Date: None required
19                                        ) Time: None required
                                          ) Judge: Hon. Scott C. Clarkson
20                                        )

21          This Stipulation is entered into by and between 2nd Chance Investment Group

22  LLC, debtor ("Debtor"), by David Goodrich, its Chief Restructuring Officer, and

23  Lantzman Investments, Inc., a California corporation ("Lender") (Debtor and Lender

24  are hereinafter collectively referred to as the "Parties"), with respect to the following

25  facts:

26                              <u>**RECITALS**</u>

27          1.    The Debtor listed an ownership interest in certain real property commonly

28  known as 25641 Byron Street, San Bernardino, San Bernardino County, California

92404, assessors parcel no. 0273-353-01-0-00 (the "Real Property").   The legal description for the Real Property is attached hereto as Exhibit "1."

2.   On or about January 4, 2022 the Debtor borrowed from the Lender the sum of $325,000 which the Debtor used to purchase the Real Property.  Repayment of this loan was secured by a deed of trust recorded in the San Bernardino County Recorder's office on January 4, 2022 as instrument no. 2022-0004179, and was memorialized by a note of even date.

3. The Debtor defaulted on the monthly payments due under the Note beginning with the payment due to the Lender on August 1, 2022.  Further, the Debtor has not made any payments on the subject loan, nor has the Debtor paid real property taxes due and owing on the Real Property.

4.  Lender asserts that pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant it relief from the automatic stay because: (1) Lender's interest in the Property is not adequately protected; (2) the fair market value of the Real Property is declining and payments are not being made to Lender sufficient to protect its interest against that decline; (3) real property taxes are not being paid current; (4) proof of insurance regarding the Property has not been provided to Lender, despite the Debtor's obligation to insure the collateral under the terms of the Note and Deed of Trust; and (5)  pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Real Property, and, as a result, pursuant to  11 U.S.C. §362(d)(2)(B), the Real Property is not necessary to an effective reorganization.   Further, recent offers received for the Real Property demonstrate that there is no equity in the Real Property for the Debtor's benefit.

5.  The Parties have met and conferred, and have agreed to the terms of this Stipulation, as set forth herein.

## STIPULATION

As a result of the foregoing, it is hereby stipulated and agreed as follows:

1.     The above recitals are hereby incorporated into this Stipulation.

2.     The Lender is entitled to relief from the automatic stay under 11 U.S.C. §§

362(d)(1) and 362(d)(2).

3.    Lender (and any and all successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Real Property.

4.    Mr. Goodrich specifically agrees that any insurance currently in effect for the Real Property shall not be cancelled for the Real Property until after the order approving this Stipulation has been entered and is final and non-appealable.

5.    Upon entry of the order approving this Stipulation, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

IT IS SO STIPULATED.

Dated: June 24, 2023

By: _____
David M. Goodrich,
Chief Restructuring Officer for the Debtor
2nd Chance Investment Group, LLC

Dated: June 27, 2023

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

*/s/ Kathleeen A. Cashman-Kramer*
By: _____
Gary B. Rudolph
Kathleen A. Cashman-Kramer
Attorneys for Lender Lantzman
Investments, Inc.

**Exhibit 1**

Loan Number: 549300AAWFEC6CRH6N89-1217A-21

Date: DECEMBER 17, 2021

Property Address:   25641 BYRON STREET
                    SAN BERNARDONO, CALIFORNIA 92404

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 0273-353-01-0-000

✯ DocMagic

Ca3005.dot.xml

## Exhibit "A"

Lot 66, Tract No. 4289, Sterling Homes Unit No. 4, in the City of Highlands, County of San Bernardino, State of California, as per Plat Recorded in Book 53 of Maps, Pages 96 and 97, Records of said County.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

600 B Street, Suite 1700
San Diego, California 92101

A true and correct copy of the foregoing document entitled (*specify*): Stipulation for Relief from Automatic Stay under
11 U.S.C. Section 362 (d) (1) and 362 (d)(2) re 25641 Byron Street San Bernardino, CA 92404. APN No. 0273-353-01-0
-00

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/27/2023        , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)    06/27/2023       , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)                  , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/27/2023 | Laurel Dinkins | | /s/ Laurel Dinkins |
|---|---|---|---|
| *Date* | *Printed Name* | | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

## SERVICE INFORMATION

### Case No. 8:22-bk-12142 –

### 2nd Chance Investment Group, LLC

1. To be served by the Court via Notice of Electronic Filing [NEF]:

- **Amanda G. Billyard    abillyard@bwlawcenter.com**

- **Stephan M Brown    ECF@thebklawoffice.com,
  stephan@thebklawoffice.com;roslyn@thebklawoffice.com**

- **Kathleen A Cashman-Kramer    cashman-kramer@sullivanhill.com,
  theresam@psdslaw.com**

- **Dane W Exnowski    dane.exnowski@mccalla.com,
  bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com**

- **Lazaro E Fernandez    lef17@pacbell.net, lef-sam@pacbell.net;lef-
  mari@pacbell.net;OfficeLR74738@notify.bestcase.com;lefkarina@gma
  il.com**

- **Robert P Goe    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com**

- **David M Goodrich    dgoodrich@go2.law,
  kadele@wgllp.com;lbracken@wgllp.com;wggllp@ecf.courtdrive.com;ge
  strada@wgllp.com**

- **Daniel J Griffin    daniel@thebklawoffice.com,
  tclayton@thebklawoffice.com;daniel@thebklawoffice.com**

- **Brandon J Iskander    biskander@goeforlaw.com,
  kmurphy@goeforlaw.com**

- **Charity J Manee    cmanee@goeforlaw.com, kmurphy@goeforlaw.com**

- **Randall P Mroczynski    randym@cookseylaw.com**

- **Queenie K Ng    queenie.k.ng@usdoj.gov**

- **Douglas A Plazak    dplazak@rhlaw.com**

- **Arvind Nath Rawal    arawal@aisinfo.com**

- **Gary B Rudolph    rudolph@sullivanhill.com,
  bkstaff@sullivanhill.com;vidovich@ecf.inforuptcy.com;rudolph@ecf.co
  urtdrive.com;james@ecf.courtdrive.com**

- **Cheryl A Skigin    caskigin@earthlink.net, caskigin@earthlink.net**

- **Richard L. Sturdevant    rich@bwlawcenter.com**

- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

- **Christopher P. Walker    cwalker@cpwalkerlaw.com,
  lhines@cpwalkerlaw.com;r57253@notify.bestcase.com**

- **Fanny Zhang Wan    fwan@raslg.com**

- **Andy C Warshaw    awarshaw@bwlawcenter.com,
  warshaw.andyb110606@notify.bestcase.com**

- **Jennifer C Wong    bknotice@mccarthyholthus.com,
  jwong@ecf.courtdrive.com**

2. Served by United States Mail:

| **Debtor** | 2nd Chance Investment Group, LLC<br>600 W. Santa Ana Blvd.<br>PMB 5045<br>Santa Ana, CA 92701 |
|---|---|
| **Residents of Real Property** | Margaret Adams and/or Resident<br>25641 Byron Street<br>San Bernardino, CA 92404<br><br>Teresa Miller and/or David Miller and/or Frances Miller and/or Resident<br>827 N Meridian Ave.<br>San Bernardino CA 92410 |
| **Judge – Courtesy Copy** | Honorable Scott C. Clarkson<br>United States Bankruptcy Court<br>Central District of California<br>Ronald Reagan Federal Building and Courthouse<br>411 West Fourth Street, Suite 5130 / Courtroom 5C<br>Santa Ana, CA 92701-4593 |

| | |
|---|---|
| **Misc.** | San Bernardino Fire Abatement<br>385 N. Arrowhead Ave.<br>San Bernardino, CA 92415 |
| | San Bernardino County Tax Collector's Office<br>268 West Hospitality Lane, First Floor<br>San Bernardino, CA 92415-0360 |
| | San Bernardino Associated Governments<br>(SANBAG)<br>1170 W. 3rd St., 2nd Floor,<br>San Bernardino, CA 92410-1715 |

**Exhibit 2**

SULLIVAN HILL REZ & ENGEL, APLC
  Gary B. Rudolph, SBN 101921
  James P. Hill, SBN 90478
  Kathleen A. Cashman-Kramer, SBN 128861
600 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 233-4100
Fax No.: (619) 231-4372
Attorneys for Creditor and Party in Interest Lantzman Investments, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>2ND CHANCE INVESTMENT GROUP, LLC,<br><br>        Debtor. | CASE NO.: 8:22-bk-12142-SC<br><br>Chapter 11<br><br>**STIPULATION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. §§ 362(d)(1) AND 362(d)(2) RE: 827 NORTH MERIDIAN AVENUE, SAN BERNARDINO, CA 92404, APN NO. 0142-461-25-0-000**<br><br>Date: None required<br>Time: None required<br>Judge: Hon. Scott C. Clarkson |

This Stipulation is entered into by and between 2nd Chance Investment Group LLC, debtor ("Debtor"), by David Goodrich, its Chief Restructuring Officer, and Lantzman Investments, Inc., a California corporation ("Lender") (Debtor and Lender are hereinafter collectively referred to as the "Parties"), with respect to the following facts:

## RECITALS

1.    The Debtor listed an ownership interest in certain real property commonly known as 827 North Meridian Avenue, San Bernardino, San Bernardino County,

1    California 92410, assessors parcel no. 0142-461-25-0-00 (the "Real Property"). The
2    legal description for the Real Property is attached hereto as Exhibit "1."

3        2. On or about June 17, 2022 the Debtor's predecessor in interest, Advance Real
4    Estate & Construction Solutions Corporation, borrowed from the Lender the sum of
5    $305,000 which the Debtor used to purchase the Real Property. Repayment of this loan
6    was secured by a deed of trust recorded in the San Bernardino County Recorder's office
7    on June 17, 2022 as instrument no. 2022-0218661, and was memorialized by a note of
8    even date.

9        3. The Debtor defaulted on the monthly payments due under the Note beginning
10    with the payment due to the Lender on August 1, 2022. Further, the Debtor has not
11    made any payments on the subject loan, nor has the Debtor paid real property taxes due
12    and owing on the Real Property.

13        4. Lender asserts that pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant it
14    relief from the automatic stay because: (1) Lender's interest in the Property is not
15    adequately protected; (2) the fair market value of the Real Property is declining and
16    payments are not being made to Lender sufficient to protect its interest against that
17    decline; (3) real property taxes are not being paid current; (4) proof of insurance
18    regarding the Property has not been provided to Lender, despite the Debtor's obligation
19    to insure the collateral under the terms of the Note and Deed of Trust; and (5) pursuant
20    to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Real Property, and, as a
21    result, pursuant to 11 U.S.C. §362(d)(2)(B), the Real Property is not necessary to an
22    effective reorganization. Further, recent offers received for the Real Property
23    demonstrate that there is no equity in the Real Property for the Debtor's benefit.

24        5. The Parties have met and conferred, and have agreed to the terms of this
25    Stipulation, as set forth herein.

26                        **STIPULATION**
27        As a result of the foregoing, it is hereby stipulated and agreed as follows:
28        1.     The above recitals are hereby incorporated into this Stipulation.

#5503603v2                                        2

2.     The Lender is entitled to relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) and 362(d)(2).

3.     Lender (and any and all successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Real Property.

4.     Mr. Goodrich specifically agrees that any insurance currently in effect for the Real Property shall not be cancelled for the Real Property until after the order approving this Stipulation has been entered and is final and non-appealable.

5.     Upon entry of the order approving this Stipulation, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

IT IS SO STIPULATED.

Dated: June 26, 2023

By: _____
      David M. Goodrich,
      Chief Restructuring Officer for the Debtor
      2nd Chance Investment Group, LLC

Dated: June 27, 2023

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

By:     */s/ Kathleen A. Cashman-Kramer*
      _____
      Gary B. Rudolph
      Kathleen A. Cashman-Kramer
      Attorneys for Lender Lantzman
      Investments, Inc.

**Exhibit 1**

Loan Number: 549300AAWFEC6CRH6N89-0607A-22

Date: June 7, 2022

Property Address:   827 NORTH MERIDIAN AVENUE
                    SAN BERNARDINO, CALIFORNIA 92410

---

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 0142-461-25-0-000

☆ DocMagic

PRELIMINARY REPORT
ESCROW NO.:

PACIFIC COAST TITLE COMPANY
TITLE NO.: 10263664-GLT-U33

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN BERNARDINO, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 22 OF TRACT 5207, IN THE CITY OF SAN BERNARDINO, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 83, PAGES 86 AND 87, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 0142-461-25-0-000

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

600 B Street, Suite 1700
San Diego, California 92101

A true and correct copy of the foregoing document entitled (*specify*): Stipulation for Relief from Automatic Stay under
11 U.S.C. Section 362 (d) (1) and 362 (d)(2) re 827 North Meridian Avenue, San Bernardino, CA 92404 APN NO. 0142-
461-25-01-000

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/27/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __06/27/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/27/2023 | Laurel Dinkins | | /s/ Laurel Dinkins |
|---|---|---|---|
| *Date* | *Printed Name* | | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# SERVICE INFORMATION

## Case No. 8:22-bk-12142 –

## 2nd Chance Investment Group, LLC

1.  To be served by the Court via Notice of Electronic Filing [NEF]:

- **Amanda G. Billyard    abillyard@bwlawcenter.com**

- **Stephan M Brown    ECF@thebklawoffice.com,
  stephan@thebklawoffice.com;roslyn@thebklawoffice.com**

- **Kathleen A Cashman-Kramer    cashman-kramer@sullivanhill.com,
  theresam@psdslaw.com**

- **Dane W Exnowski    dane.exnowski@mccalla.com,
  bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com**

- **Lazaro E Fernandez    lef17@pacbell.net, lef-sam@pacbell.net;lef-
  mari@pacbell.net;OfficeLR74738@notify.bestcase.com;lefkarina@gma
  il.com**

- **Robert P Goe    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com**

- **David M Goodrich    dgoodrich@go2.law,
  kadele@wgllp.com;lbracken@wgllp.com;wgllp@ecf.courtdrive.com;ge
  strada@wgllp.com**

- **Daniel J Griffin    daniel@thebklawoffice.com,
  tclayton@thebklawoffice.com;daniel@thebklawoffice.com**

- **Brandon J Iskander    biskander@goeforlaw.com,
  kmurphy@goeforlaw.com**

- **Charity J Manee    cmanee@goeforlaw.com, kmurphy@goeforlaw.com**

- **Randall P Mroczynski    randym@cookseylaw.com**

- **Queenie K Ng    queenie.k.ng@usdoj.gov**

- **Douglas A Plazak    dplazak@rhlaw.com**

- **Arvind Nath Rawal    arawal@aisinfo.com**

- **Gary B Rudolph    rudolph@sullivanhill.com,
  bkstaff@sullivanhill.com;vidovich@ecf.inforuptcy.com;rudolph@ecf.co
  urtdrive.com;james@ecf.courtdrive.com**

- **Cheryl A Skigin    caskigin@earthlink.net, caskigin@earthlink.net**

- **Richard L. Sturdevant    rich@bwlawcenter.com**

- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

- **Christopher P. Walker    cwalker@cpwalkerlaw.com,
  lhines@cpwalkerlaw.com;r57253@notify.bestcase.com**

- **Fanny Zhang Wan    fwan@raslg.com**

- **Andy C Warshaw    awarshaw@bwlawcenter.com,
  warshaw.andyb110606@notify.bestcase.com**

- **Jennifer C Wong    bknotice@mccarthyholthus.com,
  jwong@ecf.courtdrive.com**

2. Served by United States Mail:

| Judge – Courtesy Copy | Honorable Scott C. Clarkson |
|---|---|
| | United States Bankruptcy Court |
| | Central District of California |
| | Ronald Reagan Federal Building and Courthouse |
| | 411 West Fourth Street, Suite 5130 / Courtroom 5C |
| | Santa Ana, CA 92701-4593 |

**Exhibit 3**

SULLIVAN HILL REZ & ENGEL, APLC
  Gary B. Rudolph, SBN 101921
  James P. Hill, SBN 90478
  Kathleen A. Cashman-Kramer, SBN 128861
600 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 233-4100
Fax No.: (619) 231-4372
Attorneys for Creditor and Party in Interest Lantzman Investments, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>2ND CHANCE INVESTMENT GROUP, LLC,<br><br>   Debtor. | CASE NO.: 8:22-bk-12142-SC<br><br>Chapter 11<br><br>**ORDER GRANTING STIPULATION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. §§ 362(d)(1) AND 362(d)(2) RE: 25641 BYRON ST., SAN BERNARDINO, CA 92404, APN NO. 0273-353-01-0-000**<br><br>Date:  None required<br>Time: None required<br>Judge:  Hon. Scott C. Clarkson |

  Having reviewed the Stipulation For Relief From Automatic Stay Under 11 U.S.C. §§ 362(D)(1) And 362(D)(2) Re: 25641 Byron St., San Bernardino, California 92404, APN No. 0273-353-01-0-000 filed on June 27, 2023 as ECF No. 183 and entered into by and between 2nd Chance Investment Group LLC, debtor ("Debtor"), by David Goodrich, its Chief Restructuring Officer, and Lantzman Investments, Inc., a California corporation ("Lender") (Debtor and Lender are hereinafter collectively referred to as the "Parties"), regarding that certain real property located at 25641 Byron Street, San Bernardino, San Bernardino County, California  92404, APN No. 0273-353-01-0-00

(the "Real Property"), and good cause appearing therefor, the Court orders as follows:

**IT IS HEREBY ORDERED**

1.      The Stipulation is APPROVED as the Parties have stipulated and agreed therein.

2.      The Lender is entitled to relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) and 362(d)(2).

3.      Lender (and any and all successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Real Property.

4.      Mr. Goodrich will not cancel any insurance currently in effect for the Real Property until after the order approving this Stipulation has been entered and is final and non-appealable.

5.      Upon entry of this order approving this Stipulation, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

**IT IS SO ORDERED.**

# # #

Dated: _____          _____

                                        Hon. Scott C. Clarkson
                                        United States Bankruptcy Judge

**Exhibit 4**

SULLIVAN HILL REZ & ENGEL, APLC
 Gary B. Rudolph, SBN 101921
 James P. Hill, SBN 90478
 Kathleen A. Cashman-Kramer, SBN 128861
600 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 233-4100
Fax No.: (619) 231-4372
Attorneys for Creditor and Party in Interest Lantzman Investments, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>2ND CHANCE INVESTMENT GROUP, LLC,<br><br>            Debtor. | CASE NO.: 8:22-bk-12142-SC<br><br>Chapter 11<br><br>**ORDER GRANTING STIPULATION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. §§ 362(d)(1) AND 362(d)(2) RE: 827 NORTH MERIDIAN AVENUE, SAN BERNARDINO, CA 92404, APN NO. 0142-461-25--000**<br><br>Date:  None required<br>Time: None required<br>Judge:  Hon. Scott C. Clarkson |

Having reviewed the Stipulation For Relief From Automatic Stay Under 11 U.S.C. §§ 362(D)(1) And 362(D)(2) Re: 827 North Meridian Avenue, San Bernardino, California, 92404, APN. No. 0142-461-25-0-000 filed on June 27, 2023 as ECF No. 184 and entered into by and between 2nd Chance Investment Group LLC, debtor ("Debtor"), by David Goodrich, its Chief Restructuring Officer, and Lantzman Investments, Inc., a California corporation ("Lender") (Debtor and Lender are hereinafter collectively referred to as the "Parties"), regarding that certain real property

located at 827 North Meridian Avenue, San Bernardino, San Bernardino County, California 92410, APN No. 0142-461-25-0-00 (the "Real Property"), and good cause appearing therefor, the Court orders as follows:

**IT IS HEREBY ORDERED**

1.    The Stipulation is APPROVED as the Parties have stipulated and agreed therein.

2.    The Lender is entitled to relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) and 362(d)(2).

3.    Lender (and any and all successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Real Property.

4.    Mr. Goodrich will not cancel any insurance currently in effect for the Real Property until after the order approving this Stipulation has been entered and is final and non-appealable.

5.    Upon entry of this order approving this Stipulation, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

**IT IS SO ORDERED.**

# # #

Dated: _____            _____

Hon. Scott C. Clarkson

United States Bankruptcy Judge

**Exhibit 5**

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | 2nd Chance Investment Group, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 8:22-bk-12142-SC11 |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Lantzman Investments, Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Gary B. Rudolph, Esq. c/o Sullivan Hill Rez & Engel, APLC<br>Name | Lantzman Investments, Inc. c/o Marc Lantzman<br>Name |
| 600 B Street, 17th Floor<br>Number        Street | 11696 Sorrento Valley Road, Suite 201<br>Number        Street |
| San Diego        CA        92101<br>City        State        ZIP Code | San Diego        CA        92121<br>City        State        ZIP Code |
| Contact phone (619) 595-3225 | Contact phone (858) 720-0224 |
| Contact email rudolph@sullivanhill.com | Contact email marc@lantzmanlending.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☑ Yes.  Claim number on court claims registry (if known) 48        Filed on 04/06/2023
                                                                         MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

---

Official Form 410          **Proof of Claim**          page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

---

**7. How much is the claim?**   $_____1,107,927.81__. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

defaulted mortgages for three real properties

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:    See attachment for list of properties and amounts owing

**Basis for perfection:**    recorded deeds of trust - see attached

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)__9.00__%

☑ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

Official Form 410                         **Proof of Claim**                         page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  04/14/2023
                   MM / DD / YYYY

_Signature_

**Print the name of the person who is completing and signing this claim:**

| Name | Marc | Lantzman |
|---|---|---|
| | First name | Middle name | Last name |

| Title | President |
|---|---|

| Company | Lantzman Investments, Inc. |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 11696 Sorrento Valley Road, Suite 201 |
|---|---|
| | Number        Street |
| | San Diego        CA      92121 |
| | City        State   ZIP Code |

| Contact phone | (858) 720-0224 | Email | marc@lantzmanlending.com |
|---|---|---|---|

---

| Print | Save As... | Add Attachment | | Reset |
|---|---|---|---|---|

Official Form 410                    Proof of Claim                    page 3

# List of Properties
# and Amounts Owing

## Attachment to Proof of Secured Claim for
## Creditor: Lantzman Investments, Inc.
## Debtor: 2nd Chance Investment Group, LLC
## Case No. 8:22-bk-12142-SC11

| Charges Owing | 25641 Byron Street, Highland, CA 92404 DOT[1]: 1/4/2022 2022-0004179 $350,000 | 827 N. Meridian Ave. San Bernardino, CA 92410 DOT: 6/17/2022 2022-0218661 $305,000 | 1611 151st Street San Leandro, CA 94578 DOT: 8/16/2022 $460,000 |
|---|---|---|---|
| Unpaid loan principal | $286,831.50 | $287,000 | $443,000.00 |
| Unpaid pre-petition interest | $10,460 | $9,681 | $11,103 |
| Unpaid pre-petition late charges | $1,600.06 | $1,337.60 | $1,550.25 |
| Notice of default fees paid | $2,531 | $2,427 | $3,228.24 |
| Unpaid post-petition interest | $10,460 | $9,681 | $14,804 |
| Unpaid post-petition late charges | $2,569.18 | $1,337.60 | $2,067.00 |
| Advances (property taxes, insurance) | $2,453.66 | 0 | $3,805.72 |
| Total | $316,905.40 | $311,464.20 | $479,558.21 |

Total claimed for secured loans on all three Real Properties: $1,107,927.81

Notes:

1. The above amounts are estimated at this time and are subject to change.
2. The post-petition figures above only reflect payments due through the April 1, 2023 payments due.
3. Interest amounts above do not yet include default interest.
4. The above amounts do not include attorneys fees, which as of the date of this proof of claim are estimated at $15,000.

---

[1] This identifies the property owned by the Debtor which secures the obligation, as well as the date on which the deed of trust was recorded, the recording information, and the original principal amount of the obligation.

#5461013v2

# Recorded Deeds of Trust

25641 Byron Street,
Highland, CA 92404

Recording Requested by:
ORANGE COAST TITLE CO.



Electronically
Recorded In Official Records
San Bernardino County

Bob Dutton
Assessor-Recorder-County Clerk

Recording Requested By:
LANTZMAN INVESTMENTS, INC.

**DOC# 2022-0004179**

And After Recording Return To:
LANTZMAN INVESTMENTS,
INC.
11696 SORRENTO VALLEY ROAD, #201
SAN DIEGO, CALIFORNIA 92121
Loan Number:
549300AAWFEC6CRH6N89-1217A-21

| | | |
|---|---|---|
| 01/04/2022 | Titles: 1 | Pages: 20 |
| 01:39 PM | | |
| SAN | | |
| | Fees | $71.00 |
| | Taxes | $0.00 |
| F3010 | CA SB2 Fee | $0.00 |
| | Total | $71.00 |

210-2302384-15  [Space Above This Line For Recording Data]
APN: 0273-353-01

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   DECEMBER 17, 2021   , together with all Riders to this document.
(B)  "Borrower" is 2ND CHANCE INVESTMENT GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY BORROWER'S ADDRESS IS 4295 E JURUPA STREET #209, ONTARIO, CALIFORNIA 91761.

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is  LANTZMAN INVESTMENTS, INC.

Lender is a                    CALIFORNIA CORPORATION                    organized and existing under the laws of                    CALIFORNIA
Lender's address is   11696 SORRENTO VALLEY ROAD, #201, SAN DIEGO, CALIFORNIA 92121

Lender is the beneficiary under this Security Instrument.
(D)  "Trustee" is  DEL TORO LOAN SERVICING, INC.
P.O. BOX 211000, CHULA VISTA, CALIFORNIA 91921

(E)  "Note" means the promissory note signed by Borrower and dated   DECEMBER 17, 2021
The Note states that Borrower owes Lender  THREE HUNDRED TWENTY-FIVE THOUSAND AND 00/100
Dollars (U.S. $ 325,000.00                )

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    ☆DocMagic
Form 3005  1/01
Page 1 of 15

Ca3005.dot.xml

Recording Requested by:
ORANGE COAST TITLE CO.

Recording Requested By:
LANTZMAN INVESTMENTS, INC.

And After Recording Return To:
LANTZMAN INVESTMENTS,
INC.
11696 SORRENTO VALLEY ROAD, #201
SAN DIEGO, CALIFORNIA 92121
Loan Number:
549300AAWFEC6CRH6N89-1217A-21

210-2302384-15 _____ [Space Above This Line For Recording Data] _____

APN: 0273-353-01

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated           DECEMBER 17, 2021           , together with all Riders to this document.
(B) **"Borrower"** is 2ND CHANCE INVESTMENT GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY BORROWER'S ADDRESS IS 4295 E JURUPA STREET #209, ONTARIO, CALIFORNIA 91761.

Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is  LANTZMAN INVESTMENTS, INC.

Lender is a                        CALIFORNIA CORPORATION                        organized and existing under the laws of                        CALIFORNIA
Lender's address is    11696 SORRENTO VALLEY ROAD, #201, SAN DIEGO, CALIFORNIA 92121

Lender is the beneficiary under this Security Instrument.
(D) **"Trustee"** is  DEL TORO LOAN SERVICING, INC.
P.O. BOX 211000, CHULA VISTA, CALIFORNIA 91921

(E) **"Note"** means the promissory note signed by Borrower and dated           DECEMBER 17, 2021           .
The Note states that Borrower owes Lender  THREE HUNDRED TWENTY-FIVE THOUSAND AND 00/100
                                            Dollars (U.S. $ 325,000.00           )

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                        •      ☆DocMagic
Form 3005  1/01
                                        Page 1 of 15

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than          JANUARY 1, 2023          .

(F)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)  "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☐ Other(s) [specify] |

(I)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "**Escrow Items**" means those items that are described in Section 3.

(M)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

---

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | SAN BERNARDINO | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 0273-353-01-0-000

which currently has the address of   25641 BYRON STREET

[Street]

SAN BERNARDONO                    , California    92404      ("Property Address"):

[City]                                           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights

---

hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

---

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for

Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    •    ☆ DocMagic
Form 3005  1/01

Ca3005.dot.xml

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such

---

other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    •    ☆DocMagic
Form 3005  1/01

Page 11 of 15

Ca3005.dot.xml

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

### NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXX (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

---

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

```
2ND CHANCE INVESTMENT GROUP,
LLC, A CALIFORNIA LIMITED
LIABILITY COMPANY
```

By: _____
Borrower RAYSHON ANDREW            Date
FOSTER, MANAGING MEMBER

_____        _____
Witness                                      Witness

———————————— [Space Below This Line For Acknowledgment] ————————————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of  CALIFORNIA     )

County of  SAN BERNARDINO     )

On _12/20/21_ before me, _A. Arnao, notary public_
     Date                      Here Insert Name and Title of the Notarizing Officer

personally appeared  RAYSHON ANDREW FOSTER

_____

_____

Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

A. ARNAO
COMM. # 2371078
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
MY COMM. EXP. AUG. 16, 2025

Notary Seal

Signature of Notary Public

Loan Originator: JUSTIN LANTZMAN, NMLSR ID 312223
Loan Originator Organization: LANTZMAN MANAGEMENT, INC., NMLSR ID 296471

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005  1/01                             ●    ☆DocMagic

Ca3005.dot.xml

Loan Number: 549300AAWFEC6CRH6N89-1217A-21

Date: DECEMBER 17, 2021

Property Address:  25641 BYRON STREET
                   SAN BERNARDONO, CALIFORNIA 92404

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 0273-353-01-0-000

☆ DocMagic

**Exhibit "A"**

Lot 66, Tract No. 4289, Sterling Homes Unit No. 4, in the City of Highlands, County of San Bernardino, State of California, as per Plat Recorded in Book 53 of Maps, Pages 96 and 97, Records of said County.

Loan Number: 549300AAWFEC6CRH6N89-1217A-21

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 17th day of DECEMBER, 2021 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to LANTZMAN INVESTMENTS, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

25641 BYRON STREET, SAN BERNARDONO, CALIFORNIA 92404
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

Us3170.rid.xml

E. **"BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

F. **BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. **ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

2ND CHANCE INVESTMENT
GROUP, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY

By_____(Seal)
                                                -Borrower
RAYSHON ANDREW
FOSTER, MANAGING MEMBER

827 N. Meridian Ave.
San Bernardino, CA 92410

Electronically
Recorded in Official Records
San Bernardino County
Bob Dutton
Assessor-Recorder-County Clerk

Recording Requested By: *PLT*
LANTZMAN INVESTMENTS, INC.

And After Recording Return To:
LANTZMAN INVESTMENTS,
INC.
11696 SORRENTO VALLEY ROAD, #201
SAN DIEGO, CALIFORNIA 92121
Loan Number:
549300AAWFEC6CRH6N89-0607A-22

**DOC# 2022-0218661**

| 06/17/2022 09:52 AM | Titles: 1 | Pages: 20 |
| --- | --- | --- |
| SAN | Fees | $71.00 |
| | Taxes | $0.00 |
| V0956 | CA SB2 Fee | $0.00 |
| | Total | $71.00 |

*1026366Y-33*
*APN 0142-461-250-000*  ———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    June 7, 2022    , together with all Riders to this document.

(B) "Borrower" is ADVANCE REAL ESTATE & CONSTRUCTION SOLUTIONS CORPORATION, A CALIFORNIA CORPORATION BORROWER'S ADDRESS IS 4295 E. JURUPA ST., #209, ONTARIO, CALIFORNIA 91761.

Recorded concurrently and in connection with a transfer subject to the imposition of Documentary Transfer Tax - GC 27388.1(a)(2)

Borrower is the trustor under this Security Instrument.

(C) "Lender" is  LANTZMAN INVESTMENTS, INC.

Lender is a               CALIFORNIA CORPORATION               organized and existing under the laws of               CALIFORNIA
Lender's address is  11696 SORRENTO VALLEY ROAD, #201, SAN DIEGO, CALIFORNIA 92121

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is  DEL TORO LOAN SERVICING, INC.
P.O. BOX 211000, CHULA VISTA, CALIFORNIA 91921

(E) "Note" means the promissory note signed by Borrower and dated    June 7, 2022
The Note states that Borrower owes Lender  THREE HUNDRED FIVE THOUSAND AND 00/100
Dollars (U.S. $ 305,000.00                    )

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 01/01                                                    ☆DocMagic

Ca3005.dot.xml

Recording Requested By: *Pct*
LANTZMAN INVESTMENTS, INC.

And After Recording Return To:
LANTZMAN INVESTMENTS,
INC.
11696 SORRENTO VALLEY ROAD, #201
SAN DIEGO, CALIFORNIA 92121
Loan Number:
549300AAWFEC6CRH6N89-0607A-22

*1026366L-33*
*APN 0142-461-250-000* ———— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated          June 7, 2022          , together with all Riders to this document.

(B)  "Borrower" is ADVANCE REAL ESTATE & CONSTRUCTION SOLUTIONS CORPORATION, A CALIFORNIA CORPORATION BORROWER'S ADDRESS IS 4295 E. JURUPA ST., #209, ONTARIO, CALIFORNIA 91761.

> Recorded concurrently and in connection
> with a transfer subject to the imposition of
> Documentary Transfer Tax - GC 27388.1(a)(2)

Borrower is the trustor under this Security Instrument.

(C)  "Lender" is  LANTZMAN INVESTMENTS, INC.

Lender is a                          CALIFORNIA CORPORATION                          organized
and existing under the laws of                          CALIFORNIA
Lender's address is    11696 SORRENTO VALLEY ROAD, #201, SAN DIEGO, CALIFORNIA 92121

Lender is the beneficiary under this Security Instrument.

(D)  "Trustee" is  DEL TORO LOAN SERVICING, INC.
P.O. BOX 211000, CHULA VISTA, CALIFORNIA 91921

(E)  "Note" means the promissory note signed by Borrower and dated          June 7, 2022          .
The Note states that Borrower owes Lender  THREE HUNDRED FIVE THOUSAND AND 00/100
                                       Dollars (U.S. $ 305,000.00                )

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                        •        ☆DocMagic
Form 3005  01/01
                                       Page 1 of 15

Ca3005.dot.xml

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than            July 1, 2023                  .

(F)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☐ | Planned Unit Development Rider |
| ☐ | Balloon Rider | ☐ | Biweekly Payment Rider |
| ☒ | 1-4 Family Rider | ☐ | Second Home Rider |
| ☐ | Condominium Rider | ☐ | Other(s) [specify] |

(I)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)   "Escrow Items" means those items that are described in Section 3.

(M)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Ca3005.dot.xml1

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| | COUNTY | of | SAN BERNARDINO | : |

[Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 0142-461-25-0-000

which currently has the address of  827 NORTH MERIDIAN AVENUE

[Street]

SAN BERNARDINO                      , California    92410      ("Property Address"):

[City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights

Ca3005.dot.xml

# LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN BERNARDINO, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 22 OF TRACT 5207, IN THE CITY OF SAN BERNARDINO, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 83, PAGES 86 AND 87, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 0142-461-25-0-000

hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

---

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

---

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for

Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such

---

Ca3005.dot.xml

other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

```
ADVANCE REAL ESTATE &
CONSTRUCTION SOLUTIONS
CORPORATION, A CALIFORNIA
CORPORATION
```

By: _____    6-7-22
Borrower RAYSHON ANDREW          Date
FOSTER, CHIEF EXECUTIVE
OFFICER

Witness _____    Witness _____

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005  01/01

☆ DocMagic

Ca3005.dot.xml

——————— [Space Below This Line For Acknowledgment] ———————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___CALIFORNIA___ )

County of ___SAN BERNARDINO___ )

On __6/7/22__ before me, __A. Arnao, notary public__
　　　　Date　　　　　　　　　　　　　Here Insert Name and Title of the Notarizing Officer

personally appeared __RAYSHON ANDREW FOSTER__ _____

_____

_____
　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
A. ARNAO
COMM. # 2371078
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
MY COMM. EXP. AUG. 16, 2025
```

_____
Signature of Notary Public

Notary Seal

Loan Originator: JUSTIN LANTZMAN, NMLSR ID 312223
Loan Originator Organization: LANTZMAN MANAGEMENT, INC., NMLSR ID 296471

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 01/01　　　　　　　　　　　　　　　　　　　•　　☆DocMagic

Ca3005.dot.xml

Loan Number: 549300AAWFEC6CRH6N89-0607A-22

Date: June 7, 2022

Property Address:   827 NORTH MERIDIAN AVENUE
                    SAN BERNARDINO, CALIFORNIA 92410

---

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 0142-461-25-0-000

☆ DocMagic

Ca3005.doi.xml

**PRELIMINARY REPORT**
**ESCROW NO.:**

**PACIFIC COAST TITLE COMPANY**
**TITLE NO.: 10263664-GLT-U33**

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN BERNARDINO, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 22 OF TRACT 5207, IN THE CITY OF SAN BERNARDINO, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 83, PAGES 86 AND 87, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 0142-461-25-0-000

Loan Number: 549300AAWFEC6CRH6N89-0607A-22

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this  7th  day of         June, 2022         ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to LANTZMAN INVESTMENTS, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

827 NORTH MERIDIAN AVENUE, SAN BERNARDINO, CALIFORNIA 92410
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss
in addition to the other hazards for which insurance is required by Section 5.

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 1 of 3

☆ DocMagic

Us3170.rid.xml

E. **"BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

F. **BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. **ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

---

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                              Page 2 of 3

☆ DocMagic

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

ADVANCE REAL ESTATE &
CONSTRUCTION SOLUTIONS
CORPORATION, A CALIFORNIA
CORPORATION


_____ (Seal)
RAYSHON ANDREW                      -Borrower
FOSTER, CHIEF EXECUTIVE
OFFICER

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 3 of 3

✡DocMagic

Us3170.rid.xml

1611 151st Street
San Leandro, CA, 94578

2022144699      08/18/2022 12:27 PM      **23 PGS**

OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $90.00

Recording Requested By:
LANTZMAN INVESTMENTS, INC.

And After Recording Return To:
LANTZMAN INVESTMENTS,
INC.
11696 SORRENTO VALLEY ROAD, #201
SAN DIEGO, CALIFORNIA 92121
Loan Number:
549300AAWFEC6CRH6N89-0815A-22

**ELECTRONICALLY RECORDED**

Recorded concurrently and in connection
with a transfer subject to the imposition of
Documentary Transfer Tax - GC 27388.1(a)(2)

——————————— [Space Above This Line For Recording Data] ———————————

11266609

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined under the caption
TRANSFER OF RIGHTS IN THE PROPERTY and in Sections 3, 4, 10, 11, 12, 16, 19, 24, and 25. Certain rules
regarding the usage of words used in this document are also provided in Section 17.

**Parties**

**(A) "Borrower"** is ADVANCE REAL ESTATE & CONSTRUCTION SOLUTIONS CORPORATION, A CALIFORNIA CORPORATION
BORROWER'S ADDRESS IS 4295 E. JURUPA ST., #209, ONTARIO, CALIFORNIA 91761.

currently residing at 4295 E. JURUPA ST., #209, ONTARIO, CALIFORNIA 91761

Borrower is the trustor under this Security Instrument.
**(B) "Lender"** is LANTZMAN INVESTMENTS, INC.

Lender is a          CALIFORNIA CORPORATION          organized and existing under the laws of
          CALIFORNIA          . Lender's address is 11696 SORRENTO VALLEY ROAD, #201,
SAN DIEGO, CALIFORNIA 92121                                        .
Lender is the beneficiary under this Security Instrument. The term "Lender" includes any successors and assigns of
Lender.
**(C) "Trustee"** is DEL TORO LOAN SERVICING, INC.

PACIFIC COAST TITLE

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          ☆ DocMagic
Form 3005 07/2021

Page 1 of 19

Ca3005.dot.xml

Trustee's address is P.O. BOX 211000, CHULA VISTA, CALIFORNIA 91921

The term "Trustee" includes any substitute/successor Trustee.

**Documents**

**(D)** **"Note"** means the promissory note dated          August 15, 2022          , and signed by each Borrower who is legally obligated for the debt under that promissory note, that is in either (i) paper form, using Borrower's written pen and ink signature, or (ii) electronic form, using Borrower's adopted Electronic Signature in accordance with the UETA or E-SIGN, as applicable. The Note evidences the legal obligation of each Borrower who signed the Note to pay Lender FOUR HUNDRED SIXTY THOUSAND AND 00/100
                                              Dollars (U.S. $ 460,000.00          ) plus interest. Each Borrower who signed the Note has promised to pay this debt in regular monthly payments and to pay the debt in full not later than          September 1, 2023          .
**(E)** **"Riders"** means all Riders to this Security Instrument that are signed by Borrower. All such Riders are incorporated into and deemed to be a part of this Security Instrument. The following Riders are to be signed by . Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | |
| ☒ 1-4 Family Rider | ☐ Planned Unit Development Rider | |
| ☐ Second Home Rider | ☐ Other(s) [specify]: | |

**(F)** **"Security Instrument"** means this document, which is dated August 15, 2022          , together with all Riders to this document.

**Additional Definitions**

**(G)** **"Applicable Law"** means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(H)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association, or similar organization.
**(I)** **"Default"** means: (i) the failure to pay any Periodic Payment or any other amount secured by this Security Instrument on the date it is due; (ii) a breach of any representation, warranty, covenant, obligation, or agreement in this Security Instrument; (iii) any materially false, misleading, or inaccurate information or statement to Lender provided by Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent, or failure to provide Lender with material information in connection with the Loan, as described in Section 8; or (iv) any action or proceeding described in Section 12(e).
**(J)** **"Electronic Fund Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by

telephone or other electronic device capable of communicating with such financial institution, wire transfers, and automated clearinghouse transfers.

**(K)** "**Electronic Signature**" means an "Electronic Signature" as defined in the UETA or E-SIGN, as applicable.

**(L)** "**E-SIGN**" means the Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 *et seq.*), as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

**(M)** "**Escrow Items**" means: (i) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property; (ii) leasehold payments or ground rents on the Property, if any; (iii) premiums for any and all insurance required by Lender under Section 5; (iv) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 11; and (v) Community Association Dues, Fees, and Assessments if Lender requires that they be escrowed beginning at Loan closing or at any time during the Loan term.

**(N)** "**Loan**" means the debt obligation evidenced by the Note, plus interest, any prepayment charges, costs, expenses, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(O)** "**Loan Servicer**" means the entity that has the contractual right to receive Borrower's Periodic Payments and any other payments made by Borrower, and administers the Loan on behalf of Lender. Loan Servicer does not include a sub-servicer, which is an entity that may service the Loan on behalf of the Loan Servicer.

**(P)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(Q)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or Default on, the Loan.

**(R)** "**Partial Payment**" means any payment by Borrower, other than a voluntary prepayment permitted under the Note, which is less than a full outstanding Periodic Payment.

**(S)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3.

**(T)** "**Property**" means the property described below under the heading "TRANSFER OF RIGHTS IN THE PROPERTY."

**(U)** "**Rents**" means all amounts received by or due Borrower in connection with the lease, use, and/or occupancy of the Property by a party other than Borrower.

**(V)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter. When used in this Security Instrument, "RESPA" refers to all requirements and restrictions that would apply to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(W)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**(X)** "**UETA**" means the Uniform Electronic Transactions Act, as enacted by the jurisdiction in which the Property is located, as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | ALAMEDA | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 080-0022-032-00

which currently has the address of 1611 A & B 151ST AVENUE
[Street]

SAN LEANDRO , California 94578 ("Property Address");
[City] [Zip Code]

TOGETHER WITH all the improvements now or subsequently erected on the property, including replacements and additions to the improvements on such property, all property rights, including, without limitation, all easements, appurtenances, Rents, issues and profits thereof, royalties, mineral rights, oil or gas rights or profits, water rights, miscellaneous proceeds, insurance proceeds, and fixtures now or subsequently a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER REPRESENTS, WARRANTS, COVENANTS, AND AGREES that: (i) Borrower lawfully owns and possesses the Property conveyed in this Security Instrument in fee simple or lawfully has the right to use and occupy the Property under a leasehold estate; (ii) Borrower has the right to grant and convey the Property or Borrower's leasehold interest in the Property; and (iii) the Property is unencumbered, and not subject to any other ownership interest in the Property, except for encumbrances and ownership interests of record. Borrower warrants generally the title to the Property and covenants and agrees to defend the title to the Property against all claims and demands, subject to any encumbrances and ownership interests of record as of Loan closing.

THIS SECURITY INSTRUMENT combines uniform covenants for national use with limited variations and non-uniform covenants that reflect specific California state requirements to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower will pay each Periodic Payment when due. Borrower will also pay any prepayment charges and late charges due under the Note, and any other amounts due under this Security Instrument. Payments due under the Note and this Security Instrument must be made in U.S. currency. If any check or other instrument received by Lender as payment under

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       ✰ DocMagic
Form 3005 07/2021

Page 4 of 19

the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (d) Electronic Fund Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 16. Lender may accept or return any Partial Payments in its sole discretion pursuant to Section 2.

Any offset or claim that Borrower may have now or in the future against Lender will not relieve Borrower from making the full amount of all payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Acceptance and Application of Payments or Proceeds.**

(a)  **Acceptance and Application of Partial Payments.** Lender may accept and either apply or hold in suspense Partial Payments in its sole discretion in accordance with this Section 2. Lender is not obligated to accept any Partial Payments or to apply any Partial Payments at the time such payments are accepted, and also is not obligated to pay interest on such unapplied funds. Lender may hold such unapplied funds until Borrower makes payment sufficient to cover a full Periodic Payment, at which time the amount of the full Periodic Payment will be applied to the Loan. If Borrower does not make such a payment within a reasonable period of time, Lender will either apply such funds in accordance with this Section 2 or return them to Borrower. If not applied earlier, Partial Payments will be credited against the total amount due under the Loan in calculating the amount due in connection with any foreclosure proceeding, payoff request, loan modification, or reinstatement. Lender may accept any payment insufficient to bring the Loan current without waiver of any rights under this Security Instrument or prejudice to its rights to refuse such payments in the future.

(b)  **Order of Application of Partial Payments and Periodic Payments.** Except as otherwise described in this Section 2, if Lender applies a payment, such payment will be applied to each Periodic Payment in the order in which it became due, beginning with the oldest outstanding Periodic Payment, as follows: first to interest and then to principal due under the Note, and finally to Escrow Items. If all outstanding Periodic Payments then due are paid in full, any payment amounts remaining may be applied to late charges and to any amounts then due under this Security Instrument. If all sums then due under the Note and this Security Instrument are paid in full, any remaining payment amount may be applied, in Lender's sole discretion, to a future Periodic Payment or to reduce the principal balance of the Note.

If Lender receives a payment from Borrower in the amount of one or more Periodic Payments and the amount of any late charge due for a delinquent Periodic Payment, the payment may be applied to the delinquent payment and the late charge.

When applying payments, Lender will apply such payments in accordance with Applicable Law.

(c)  **Voluntary Prepayments.** Voluntary prepayments will be applied as described in the Note.

(d)  **No Change to Payment Schedule.** Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.**

(a)  **Escrow Requirement; Escrow Items.** Borrower must pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum of money to provide for payment of amounts due for all Escrow Items (the "Funds"). The amount of the Funds required to be paid each month may change during the term of the Loan. Borrower must promptly furnish to Lender all notices or invoices of amounts to be paid under this Section 3.

(b)  **Payment of Funds; Waiver.** Borrower must pay Lender the Funds for Escrow Items unless Lender waives this obligation in writing, or unless prohibited by Applicable Law. Lender may waive this obligation for any Escrow Item at any time. In the event of such waiver or prohibition, Borrower must pay directly, when and where payable,

the amounts due for any Escrow Items and Lender may require Borrower to provide proof of direct payment of those items within such time period as Lender may require. Borrower's obligation to make such timely payments and to provide proof of payment is deemed to be a covenant and agreement of Borrower under this Security Instrument. If Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay timely the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to pay such amount and Borrower will be obligated to repay to Lender any such amount in accordance with Section 9.

Unless prohibited by Applicable Law, Lender may withdraw the waiver as to any or all Escrow Items at any time by giving a notice in accordance with Section 16; upon such withdrawal, Borrower must pay to Lender all Funds for such Escrow Items, and in such amounts, that are then required under this Section 3.

**(c) Amount of Funds; Application of Funds.** Lender may, at any time, collect and hold Funds in an amount up to, but not in excess of, the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due in accordance with Applicable Law.

The Funds will be held in an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender will apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender may not charge Borrower for: (i) holding and applying the Funds; (ii) annually analyzing the escrow account; or (iii) verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on the Funds, Lender will not be required to pay Borrower any interest or earnings on the Funds. Lender will give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**(d) Surplus; Shortage and Deficiency of Funds.** In accordance with RESPA, if there is a surplus of Funds held in escrow, Lender will account to Borrower for such surplus. If Borrower's Periodic Payment is delinquent by more than 30 days, Lender may retain the surplus in the escrow account for the payment of the Escrow Items. If there is a shortage or deficiency of Funds held in escrow, Lender will notify Borrower and Borrower will pay to Lender the amount necessary to make up the shortage or deficiency in accordance with RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender will promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower must pay (a) all taxes, assessments, charges, fines, and impositions attributable to the Property which have priority or may attain priority over this Security Instrument, (b) leasehold payments or ground rents on the Property, if any, and (c) Community Association Dues, Fees, and Assessments, if any. If any of these items are Escrow Items, Borrower will pay them in the manner provided in Section 3.

Borrower must promptly discharge any lien that has priority or may attain priority over this Security Instrument unless Borrower: (aa) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing under such agreement; (bb) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which Lender determines, in its sole discretion, operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (cc) secures from the holder of the lien an agreement satisfactory to Lender that subordinates the lien to this Security Instrument (collectively, the "Required Actions"). If Lender determines that any part of the Property is subject to a lien that has priority or may attain priority over this Security Instrument and Borrower has not taken any of the Required Actions in regard to such lien, Lender may give Borrower a notice identifying the lien. Within 10 days after the date on which that notice is given, Borrower must satisfy the lien or take one or more of the Required Actions.

**5. Property Insurance.**

**(a) Insurance Requirement; Coverages.** Borrower must keep the improvements now existing or subsequently erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance. Borrower must maintain the types of insurance Lender requires in the amounts (including deductible levels) and for

---

the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan, and may exceed any minimum coverage required by Applicable Law. Borrower may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove Borrower's choice, which right will not be exercised unreasonably.

(b) **Failure to Maintain Insurance.** If Lender has a reasonable basis to believe that Borrower has failed to maintain any of the required insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and at Borrower's expense. Unless required by Applicable Law, Lender is under no obligation to advance premiums for, or to seek to reinstate, any prior lapsed coverage obtained by Borrower. Lender is under no obligation to purchase any particular type or amount of coverage and may select the provider of such insurance in its sole discretion. Before purchasing such coverage, Lender will notify Borrower if required to do so under Applicable Law. Any such coverage will insure Lender, but might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect, but not exceeding the coverage required under Section 5(a). Borrower acknowledges that the cost of the insurance coverage so obtained may significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender for costs associated with reinstating Borrower's insurance policy or with placing new insurance under this Section 5 will become additional debt of Borrower secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(c) **Insurance Policies.** All insurance policies required by Lender and renewals of such policies: (i) will be subject to Lender's right to disapprove such policies; (ii) must include a standard mortgage clause; and (iii) must name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender will have the right to hold the policies and renewal certificates. If Lender requires, Borrower will promptly give to Lender proof of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy must include a standard mortgage clause and must name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

(d) **Proof of Loss; Application of Proceeds.** In the event of loss, Borrower must give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Any insurance proceeds, whether or not the underlying insurance was required by Lender, will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and determines that Lender's security will not be lessened by such restoration or repair.

If the Property is to be repaired or restored, Lender will disburse from the insurance proceeds any initial amounts that are necessary to begin the repair or restoration, subject to any restrictions applicable to Lender. During the subsequent repair and restoration period, Lender will have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Lender will not be required to pay Borrower any interest or earnings on such insurance proceeds unless Lender and Borrower agree in writing or Applicable Law requires otherwise. Fees for public adjusters, or other third parties, retained by Borrower will not be paid out of the insurance proceeds and will be the sole obligation of Borrower.

If, in accordance with Applicable Law, Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the insurance proceeds will be applied to the

---

Ca3005.dot.xml

sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

(e) **Insurance Settlements; Assignment of Proceeds.** If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 26 or otherwise, Borrower is unconditionally assigning to Lender (i) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note and this Security Instrument, and (ii) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, to the extent that such rights are applicable to the coverage of the Property. If Lender files, negotiates, or settles a claim, Borrower agrees that any insurance proceeds may be made payable directly to Lender without the need to include Borrower as an additional loss payee. Lender may use the insurance proceeds either to repair or restore the Property (as provided in Section 5(d)) or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due, in accordance with Applicable Law.

6. **Occupancy.** Borrower must occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and must continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

7. **Preservation, Maintenance, and Protection of the Property; Inspections.** Borrower will not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower must maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless Lender determines pursuant to Section 5 that repair or restoration is not economically feasible, Borrower will promptly repair the Property if damaged to avoid further deterioration or damage.

If insurance or condemnation proceeds are paid to Lender in connection with damage to, or the taking of, the Property, Borrower will be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower remains obligated to complete such repair or restoration.

Lender may make reasonable entries upon and inspections of the Property. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

(a) **Protection of Lender's Interest.** If: (i) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (ii) there is a legal proceeding or government order that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that has priority or may attain priority over this Security

Instrument, or to enforce laws or regulations); or (iii) Lender reasonably believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and/or rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (I) paying any sums secured by a lien that has priority or may attain priority over this Security Instrument; (II) appearing in court; and (III) paying: (A) reasonable attorneys' fees and costs; (B) property inspection and valuation fees; and (C) other fees incurred for the purpose of protecting Lender's interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, exterior and interior inspections of the Property, entering the Property to make repairs, changing locks, replacing or boarding up doors and windows, draining water from pipes, eliminating building or other code violations or dangerous conditions, and having utilities turned on or off. Although Lender may take action under this Section 9, Lender is not required to do so and is not under any duty or obligation to do so. Lender will not be liable for not taking any or all actions authorized under this Section 9.

(b) **Avoiding Foreclosure; Mitigating Losses.** If Borrower is in Default, Lender may work with Borrower to avoid foreclosure and/or mitigate Lender's potential losses, but is not obligated to do so unless required by Applicable Law. Lender may take reasonable actions to evaluate Borrower for available alternatives to foreclosure, including, but not limited to, obtaining credit reports, title reports, title insurance, property valuations, subordination agreements, and third-party approvals. Borrower authorizes and consents to these actions. Any costs associated with such loss mitigation activities may be paid by Lender and recovered from Borrower as described below in Section 9(c), unless prohibited by Applicable Law.

(c) **Additional Amounts Secured.** Any amounts disbursed by Lender under this Section 9 will become additional debt of Borrower secured by this Security Instrument. These amounts may bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(d) **Leasehold Terms.** If this Security Instrument is on a leasehold, Borrower will comply with all the provisions of the lease. Borrower will not surrender the leasehold estate and interests conveyed, or terminate or cancel the ground lease. Borrower will not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title will not merge unless Lender agrees to the merger in writing.

**10. Assignment of Rents.**

(a) **Assignment of Rents.** If the Property is leased to, used by, or occupied by a third party ("Tenant"), Borrower is unconditionally assigning and transferring to Lender any Rents, regardless of to whom the Rents are payable. This assignment of Rents constitutes a perfected, absolute and present assignment. Lender grants to Borrower a license to collect, but not prior to accrual, and retain the Rents; however, upon the occurrence and during the continuance of an event of Default, Borrower's license to collect and retain the Rents will immediately terminate. Under this license, Borrower will receive the Rents until (i) Lender has given Borrower notice of Default pursuant to Section 26, and (ii) Lender has given notice to the Tenant that the Rents are to be paid to Lender. This Section 10 constitutes an absolute assignment and not an assignment for additional security only.

(b) **Notice of Default.** If Lender gives notice of Default to Borrower, all of the following will apply, unless prohibited by Applicable Law: (i) all Rents received by Borrower must be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender will be entitled to collect and receive all of the Rents; (iii) Borrower agrees to instruct each Tenant that Tenant is to pay all Rents due and unpaid to Lender upon Lender's written demand to the Tenant; (iv) Borrower will ensure that each Tenant pays all Rents due to Lender and will take whatever action is necessary to collect such Rents if not paid to Lender; (v) unless Applicable Law provides otherwise, all Rents collected by Lender will be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, reasonable attorneys' fees and costs, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes,

assessments, and other charges on the Property, and then to any other sums secured by this Security Instrument; (vi) Lender, or any judicially appointed receiver, will be liable to account for only those Rents actually received; and (vii) Lender will be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

(c) **Funds Paid by Lender.** If the Rents are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds paid by Lender for such purposes will become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

(d) **Limitation on Collection of Rents.** Borrower may not collect any of the Rents more than one month in advance of the time when the Rents become due, except for security or similar deposits.

(e) **No Other Assignment of Rents.** Borrower represents, warrants, covenants, and agrees that Borrower has not signed any prior assignment of the Rents, will not make any further assignment of the Rents, and has not performed, and will not perform, any act that could prevent Lender from exercising its rights under this Security Instrument.

(f) **Control and Maintenance of the Property.** Unless required by Applicable Law, Lender, or a receiver appointed under Applicable Law, is not obligated to enter upon, take control of, or maintain the Property before or after giving notice of Default to Borrower. However, Lender, or a receiver appointed under Applicable Law, may do so at any time when Borrower is in Default, subject to Applicable Law.

(g) **Additional Provisions.** Any application of the Rents will not cure or waive any Default or invalidate any other right or remedy of Lender. This Section 10 does not relieve Borrower of Borrower's obligations under Section 6.

This Section 10 will terminate when all the sums secured by this Security Instrument are paid in full.

11. **Mortgage Insurance.**

(a) **Payment of Premiums; Substitution of Policy; Loss Reserve; Protection of Lender.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower will pay the premiums required to maintain the Mortgage Insurance in effect. If Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, and (i) the Mortgage Insurance coverage required by Lender ceases for any reason to be available from the mortgage insurer that previously provided such insurance, or (ii) Lender determines in its sole discretion that such mortgage insurer is no longer eligible to provide the Mortgage Insurance coverage required by Lender, Borrower will pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Borrower will continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use, and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve will be non-refundable, even when the Loan is paid in full, and Lender will not be required to pay Borrower any interest or earnings on such loss reserve, unless required by Applicable Law.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower will pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 11 affects Borrower's obligation to pay interest at the Note rate.

(b) **Mortgage Insurance Agreements**. Mortgage Insurance reimburses Lender for certain losses Lender may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy or coverage.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. Any such agreements will not: (i) affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan; (ii) increase the amount Borrower will owe for Mortgage Insurance; (iii) entitle Borrower to any refund; or (iv) affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 (12 U.S.C. § 4901 *et seq.*), as it may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter ("HPA"). These rights under the HPA may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

12. **Assignment and Application of Miscellaneous Proceeds; Forfeiture.**

(a) **Assignment of Miscellaneous Proceeds**. Borrower is unconditionally assigning the right to receive all Miscellaneous Proceeds to Lender and agrees that such amounts will be paid to Lender.

(b) **Application of Miscellaneous Proceeds upon Damage to Property**. If the Property is damaged, any Miscellaneous Proceeds will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and Lender's security will not be lessened by such restoration or repair. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, unless prohibited by Applicable Law, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

(c) **Application of Miscellaneous Proceeds upon Condemnation, Destruction, or Loss in Value of the Property**. In the event of a total taking, destruction, or loss in value of the Property, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, unless prohibited by Applicable Law, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property (each, a "Partial Devaluation") where the fair market value of the Property immediately before the Partial Devaluation is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the Partial Devaluation, a percentage of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, unless prohibited by Applicable Law, or unless Borrower and Lender otherwise agree in writing. The amount of the Miscellaneous

☆ DocMagic

Cx3005.dot.xml

Proceeds that will be so applied is determined by multiplying the total amount of the Miscellaneous Proceeds by a percentage calculated by taking (i) the total amount of the sums secured immediately before the Partial Devaluation, and dividing it by (ii) the fair market value of the Property immediately before the Partial Devaluation. Any balance of the Miscellaneous Proceeds will be paid to Borrower.

In the event of a Partial Devaluation where the fair market value of the Property immediately before the Partial Devaluation is less than the amount of the sums secured immediately before the Partial Devaluation, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not the sums are then due, unless Borrower and Lender otherwise agree in writing.

**(d) Settlement of Claims.** Lender is authorized to collect and apply the Miscellaneous Proceeds either to the sums secured by this Security Instrument, whether or not then due, or to restoration or repair of the Property, if Borrower (i) abandons the Property, or (ii) fails to respond to Lender within 30 days after the date Lender notifies Borrower that the Opposing Party (as defined in the next sentence) offers to settle a claim for damages. "Opposing Party" means the third party that owes Borrower the Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to the Miscellaneous Proceeds.

**(e) Proceeding Affecting Lender's Interest in the Property.** Borrower will be in Default if any action or proceeding begins, whether civil or criminal, that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument, unless prohibited by Applicable Law. Borrower can cure such a Default and, if acceleration has occurred, reinstate as provided in Section 20, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower is unconditionally assigning to Lender the proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property, which proceeds will be paid to Lender. All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order that Partial Payments are applied in Section 2(b).

**13. Borrower Not Released; Forbearance by Lender Not a Waiver.** Borrower or any Successor in Interest of Borrower will not be released from liability under this Security Instrument if Lender extends the time for payment or modifies the amortization of the sums secured by this Security Instrument. Lender will not be required to commence proceedings against any Successor in Interest of Borrower, or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument, by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, will not be a waiver of, or preclude the exercise of, any right or remedy by Lender.

**14. Joint and Several Liability; Signatories; Successors and Assigns Bound.** Borrower's obligations and liability under this Security Instrument will be joint and several. However, any Borrower who signs this Security Instrument but does not sign the Note: (a) signs this Security Instrument to mortgage, grant, and convey such Borrower's interest in the Property under the terms of this Security Instrument; (b) signs this Security Instrument to waive any applicable inchoate rights and any available homestead exemptions, unless prohibited by Applicable Law; (c) signs this Security Instrument to assign any Miscellaneous Proceeds, Rents, or other earnings from the Property to Lender; (d) is not personally obligated to pay the sums due under the Note or this Security Instrument; and (e) agrees that Lender and any other Borrower can agree to extend, modify, forbear, or make any accommodations with regard to the terms of the Note or this Security Instrument without such Borrower's consent and without affecting such Borrower's obligations under this Security Instrument.

Subject to the provisions of Section 19, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, will obtain all of Borrower's rights, obligations, and benefits under this Security Instrument. Borrower will not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.

**15. Loan Charges.**

**(a) Tax and Flood Determination Fees.** Lender may require Borrower to pay (i) a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan, and (ii) either (A) a one-time charge for flood zone determination, certification, and tracking services, or (B) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur that reasonably might affect such determination or certification. Borrower will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency, or any successor agency, at any time during the Loan term, in connection with any flood zone determinations.

**(b) Default Charges.** If permitted under Applicable Law, Lender may charge Borrower fees for services performed in connection with Borrower's Default to protect Lender's interest in the Property and rights under this Security Instrument, including: (i) reasonable attorneys' fees and costs; (ii) property inspection, valuation, mediation, and loss mitigation fees; and (iii) other related fees.

**(c) Permissibility of Fees.** In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

**(d) Savings Clause.** If Applicable Law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**16. Notices; Borrower's Physical Address.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.

**(a) Notices to Borrower.** Unless Applicable Law requires a different method, any written notice to Borrower in connection with this Security Instrument will be deemed to have been given to Borrower when (i) mailed by first class mail, or (ii) actually delivered to Borrower's Notice Address (as defined in Section 16(c) below) if sent by means other than first class mail or Electronic Communication (as defined in Section 16(b) below). Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. If any notice to Borrower required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**(b) Electronic Notice to Borrower.** Unless another delivery method is required by Applicable Law, Lender may provide notice to Borrower by e-mail or other electronic communication ("Electronic Communication") if: (i) agreed to by Lender and Borrower in writing; (ii) Borrower has provided Lender with Borrower's e-mail or other electronic address ("Electronic Address"); (iii) Lender provides Borrower with the option to receive notices by first class mail or by other non-Electronic Communication instead of by Electronic Communication; and (iv) Lender otherwise complies with Applicable Law. Any notice to Borrower sent by Electronic Communication in connection with this Security Instrument will be deemed to have been given to Borrower when sent unless Lender becomes aware that such notice is not delivered. If Lender becomes aware that any notice sent by Electronic Communication is not delivered, Lender will resend such communication to Borrower by first class mail or by other non-Electronic Communication. Borrower may withdraw the agreement to receive Electronic Communications from Lender at any time by providing written notice to Lender of Borrower's withdrawal of such agreement.

**(c) Borrower's Notice Address.** The address to which Lender will send Borrower notice ("Notice Address") will be the Property Address unless Borrower has designated a different address by written notice to Lender. If Lender and Borrower have agreed that notice may be given by Electronic Communication, then Borrower may designate an

☆ DocMagic

Ca3005.doc.xml

Electronic Address as Notice Address. Borrower will promptly notify Lender of Borrower's change of Notice Address, including any changes to Borrower's Electronic Address if designated as Notice Address. If Lender specifies a procedure for reporting Borrower's change of Notice Address, then Borrower will report a change of Notice Address only through that specified procedure.

**(d) Notices to Lender.** Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated in this Security Instrument unless Lender has designated another address (including an Electronic Address) by notice to Borrower. Any notice in connection with this Security Instrument will be deemed to have been given to Lender only when actually received by Lender at Lender's designated address (which may include an Electronic Address). If any notice to Lender required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**(e) Borrower's Physical Address.** In addition to the designated Notice Address, Borrower will provide Lender with the address where Borrower physically resides, if different from the Property Address, and notify Lender whenever this address changes.

**17. Governing Law; Severability; Rules of Construction.** This Security Instrument is governed by federal law and the law of the State of California. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. If any provision of this Security Instrument or the Note conflicts with Applicable Law (i) such conflict will not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision, and (ii) such conflicting provision, to the extent possible, will be considered modified to comply with Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence should not be construed as a prohibition against agreement by contract. Any action required under this Security Instrument to be made in accordance with Applicable Law is to be made in accordance with the Applicable Law in effect at the time the action is undertaken.

As used in this Security Instrument: (a) words in the singular will mean and include the plural and vice versa; (b) the word "may" gives sole discretion without any obligation to take any action; (c) any reference to "Section" in this document refers to Sections contained in this Security Instrument unless otherwise noted; and (d) the headings and captions are inserted for convenience of reference and do not define, limit, or describe the scope or intent of this Security Instrument or any particular Section, paragraph, or provision.

**18. Borrower's Copy.** One Borrower will be given one copy of the Note and of this Security Instrument.

**19. Transfer of the Property or a Beneficial Interest in Borrower.** For purposes of this Section 19 only, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

**20. Borrower's Right to Reinstate the Loan after Acceleration.** If Borrower meets certain conditions, Borrower will have the right to reinstate the Loan and have enforcement of this Security Instrument discontinued at any time up to the later of (a) five days before any foreclosure sale of the Property, or (b) such other period as

Applicable Law might specify for the termination of Borrower's right to reinstate. This right to reinstate will not apply in the case of acceleration under Section 19.

To reinstate the Loan, Borrower must satisfy all of the following conditions: (aa) pay Lender all sums that then would be due under this Security Instrument and the Note as if no acceleration had occurred; (bb) cure any Default of any other covenants or agreements under this Security Instrument or the Note; (cc) pay all expenses incurred in enforcing this Security Instrument or the Note, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument or the Note; and (dd) take such action as Lender may reasonably require to assure that Lender's interest in the Property and/or rights under this Security Instrument or the Note, and Borrower's obligation to pay the sums secured by this Security Instrument or the Note, will continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (aaa) cash; (bbb) money order; (ccc) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (ddd) Electronic Fund Transfer. Upon Borrower's reinstatement of the Loan, this Security Instrument and obligations secured by this Security Instrument will remain fully effective as if no acceleration had occurred.

**21. Sale of Note.** The Note or a partial interest in the Note, together with this Security Instrument, may be sold or otherwise transferred one or more times. Upon such a sale or other transfer, all of Lender's rights and obligations under this Security Instrument will convey to Lender's successors and assigns.

**22. Loan Servicer.** Lender may take any action permitted under this Security Instrument through the Loan Servicer or another authorized representative, such as a sub-servicer. Borrower understands that the Loan Servicer or other authorized representative of Lender has the right and authority to take any such action.

The Loan Servicer may change one or more times during the term of the Note. The Loan Servicer may or may not be the holder of the Note. The Loan Servicer has the right and authority to: (a) collect Periodic Payments and any other amounts due under the Note and this Security Instrument; (b) perform any other mortgage loan servicing obligations; and (c) exercise any rights under the Note, this Security Instrument, and Applicable Law on behalf of Lender. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing.

**23. Notice of Grievance.** Until Borrower or Lender has notified the other party (in accordance with Section 16) of an alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action, neither Borrower nor Lender may commence, join, or be joined to any judicial action (either as an individual litigant or a member of a class) that (a) arises from the other party's actions pursuant to this Security Instrument or the Note, or (b) alleges that the other party has breached any provision of this Security Instrument or the Note. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 23. The notice of Default given to Borrower pursuant to Section 26(a) and the notice of acceleration given to Borrower pursuant to Section 19 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 23.

**24. Hazardous Substances.**

**(a) Definitions.** As used in this Section 24: (i) "Environmental Law" means any Applicable Laws where the Property is located that relate to health, safety, or environmental protection; (ii) "Hazardous Substances" include (A) those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and (B) the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, corrosive materials or agents, and radioactive materials; (iii) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (iv) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**(b) Restrictions on Use of Hazardous Substances.** Borrower will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower will not do, nor allow anyone else to do, anything affecting the Property that: (i) violates Environmental Law; (ii) creates an Environmental Condition; or (iii) due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects or could adversely affect the value of the Property. The preceding two sentences will not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**(c) Notices; Remedial Actions.** Borrower will promptly give Lender written notice of: (i) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (ii) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (iii) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower will promptly take all necessary remedial actions in accordance with Environmental Law. Nothing in this Security Instrument will create any obligation on Lender for an Environmental Cleanup.

**25. Electronic Note Signed with Borrower's Electronic Signature.** If the Note evidencing the debt for this Loan is electronic, Borrower acknowledges and represents to Lender that Borrower: (a) expressly consented and intended to sign the electronic Note using an Electronic Signature adopted by Borrower ("Borrower's Electronic Signature") instead of signing a paper Note with Borrower's written pen and ink signature; (b) did not withdraw Borrower's express consent to sign the electronic Note using Borrower's Electronic Signature; (c) understood that by signing the electronic Note using Borrower's Electronic Signature, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms; and (d) signed the electronic Note with Borrower's Electronic Signature with the intent and understanding that by doing so, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:
**26. Acceleration; Remedies.**

**(a) Notice of Default.** Lender will give a notice of Default to Borrower prior to acceleration following Borrower's Default, except that such notice of Default will not be sent when Lender exercises its right under Section 19 unless Applicable Law provides otherwise. The notice will specify, in addition to any other information required by Applicable Law: (i) the Default; (ii) the action required to cure the Default; ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ (iv) that failure to cure the Default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property; (v) Borrower's right to reinstate after acceleration; and (vi) Borrower's right to bring a court action to deny the existence of a Default or to assert any other defense of Borrower to acceleration and sale.

**(b) Acceleration; Power of Sale; Expenses.** If the Default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender will be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 26, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument.

**(c) Notice of Sale; Sale of Property.** If Lender invokes the power of sale, Lender will execute or cause Trustee to execute a written notice of the occurrence of an event of Default and of Lender's election to cause the Property to be sold. Trustee will cause this notice to be recorded in each county in which any part of the Property is located.

☆DocMagic

Ca3005.dot.xml

Lender or Trustee will mail copies of the notice as prescribed by Applicable Law to Borrower and to the other required recipients. Trustee will give public notice of sale to the persons and in the manner prescribed by Applicable Law. At a time permitted by, and in accordance with Applicable Law, Trustee, without further demand on Borrower, will sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Unless prohibited by Applicable Law, Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

(d) **Trustee's Deed; Proceeds of Sale.** Trustee will deliver to the purchaser a Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed will be prima facie or conclusive evidence of the truth of the statements made in that deed, in accordance with Section 2924(c) of the Civil Code of California. Trustee will apply the proceeds of the sale in the following order: (i) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (ii) to all sums secured by this Security Instrument; and (iii) any excess to the person or persons legally entitled to it.

**27. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender will request Trustee to reconvey the Property and will surrender this Security Instrument and all Notes evidencing the debt secured by this Security Instrument to Trustee. Upon such request, Trustee will reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**28. Substitute Trustee.** Lender may, from time to time appoint a successor trustee to any Trustee appointed under this Security Instrument by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument will contain the name of the original Lender, Trustee, and Borrower, the instrument number or the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee will succeed to all the rights, title, power, and duties conferred upon Trustee in this Security Instrument and by Applicable Law. This procedure for substitution of trustee will govern to the exclusion of all other provisions for substitution.

**29. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider signed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower's Notice Address.

```
ADVANCE REAL ESTATE &
CONSTRUCTION SOLUTIONS
CORPORATION, A CALIFORNIA
CORPORATION
```

By: _____    8-15-22

Borrower RAYSHON ANDREW    Date
FOSTER, CHIEF EXECUTIVE
OFFICER

_____    _____
Witness    Witness

Ca3005.dot.xml

——————— [Space Below This Line For Acknowledgment] ———————

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___CALIFORNIA_____ )

County of ~~ALAMEDA~~ San Bernardino )

On ___8/15/22___ before me_A. Arnao, notary public
      Date        Here Insert Name and Title of the Notarizing Officer

personally appeared ___RAYSHON ANDREW FOSTER_____

_____

_____

Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

A. ARNAO
COMM. # 2371078
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Exp. Aug. 16, 2025

Signature of Notary Public

Notary Seal

Loan Originator: JUSTIN LANTZMAN, NMLSR ID 312223
Loan Originator Organization: LANTZMAN MANAGEMENT, INC., NMLSR ID 296471

Cs3005.dot.xml

Loan Number: 549300AAWFEC6CRH6N89-0815A-22

Date: August 15, 2022

Property Address:   1611 A & B 151ST AVENUE
                    SAN LEANDRO, CALIFORNIA 94578

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 080-0022-032-00

✰ DocMagic

**PRELIMINARY REPORT**
**ESCROW NO.:**

**PACIFIC COAST TITLE COMPANY**
**TITLE NO.: 10266689-GLT-U33**

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA OF SAN LEANDRO, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 102, MAP OF EAST FOURTEENTH STREET JUNCTION CITY TRACT, FILED MAY 5, 1926, MAP BOOK 3, PAGE 78, ALAMEDA COUNTY RECORDS.

APN: 080-0022-032-00

# 1-4 FAMILY RIDER

THIS 1-4 FAMILY RIDER is made this  15th  day of  August, 2022                         ,
and is incorporated into and amends and supplements the Mortgage, Mortgage Deed, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to LANTZMAN INVESTMENTS, INC., A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the Property
described in the Security Instrument and located at:

1611 A & B 151ST AVENUE, SAN LEANDRO, CALIFORNIA 94578
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the representations, warranties, covenants, and
agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A.  ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
**INSTRUMENT.** In addition to the Property described in the Security Instrument, the
following items now or later attached to the Property, to the extent they are fixtures, are
added to the Property description, and will also constitute the Property covered by the
Security Instrument: building materials, appliances and goods of every nature whatsoever
now or later located in, on, or used, or intended to be used in connection with the Property,
including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus,
security and access control apparatus, plumbing, bath tubs, water heaters, water closets,
sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm
windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors,
cabinets, paneling, and attached floor coverings, all of which, including replacements and
additions, will be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred
to in this 1-4 Family Rider and the Security Instrument as the "Property."

### B.  USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower will
not seek, agree to, or make a change in the use of the Property or its zoning classification,
unless Lender has agreed in writing to the change. Borrower will comply with all laws,
ordinances, regulations, and requirements of any governmental body applicable to the
Property.

### C.  BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise
agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

### D.  ASSIGNMENT OF LEASES. Upon Lender's request after default,
Borrower will assign to Lender all leases of the Property and all security deposits made in
connection with leases of the Property. Upon the assignment, Lender will have the right to
modify, extend, or terminate the existing leases and to execute new leases, in Lender's sole

---

discretion. As used in this paragraph D the word "lease" will mean "sublease" if the
Security Instrument is on a leasehold.

     **E.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under
any note or agreement related to the Property in which Lender has an interest will be a
breach under the Security Instrument and Lender may invoke any of the remedies permitted
by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4
Family Rider.

ADVANCE REAL ESTATE &
CONSTRUCTION SOLUTIONS
CORPORATION, A CALIFORNIA
CORPORATION


By:_____ (Seal)
  RAYSHON ANDREW      -Borrower
  FOSTER, CHIEF EXECUTIVE
  OFFICER

Us3170.rid.xml