SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
 James P. Hill, SBN 90478
 Gary B. Rudolph, SBN 101921
 Kathleen A. Cashman-Kramer, SBN 128861
600 B Street, 17th Floor
San Diego, California 92101
Telephone:    (619) 233-4100
Fax Number:   (619) 231-4372

Attorneys for Creditors Lantzman Investments, Inc. and LMF2 LP

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA–SANTA ANA DIVISION

In re

2ND CHANCE INVESTMENT
GROUP, LLC,

                    Debtor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: 8:22-bk-12142-SC

**OBJECTIONS BY LANTZMAN
INVESTMENTS, INC. AND LMF2
LP TO THE DEBTOR'S
DISCLOSURE STATEMENT
AND PLAN (ECF #S 140, 139)**


**Disclosure Statement Hearing:**

Date:    July 19, 2023
Time:    1:30 p.m.
Judge:   Hon. Scott C. Clarkson

United States Bankruptcy Court
411 West Fourth Street
Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593
(Via Zoom.gov)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................... 2

SUMMARY OF THE OBJECTIONS............................................................................. 1

STATEMENT OF BACKGROUND FACTS .................................................................. 2

GROUNDS FOR OBJECTION ..................................................................................... 1

ARGUMENT .................................................................................................................. 2

A.    The Disclosure Statement Fails to Comply with Statutory
       Requirements: Its Does Not Contain Adequate Information.................... 2

    1.    The Secured Creditors Are Being Unlawfully Deprived of
            Their Rights as Secured Creditors ...................................... 8

    2.    The Secured Creditors' Rights Are Not Being Adequately
            Protected ............................................................................. 9

    3.    There is no Time Limit Set for the Subject Real Properties to
            Be Sold, and for the Secured Creditors' Claims to Be Paid In
            Full ...................................................................................... 9

    4.    The Secured Creditors Do Not Consent to the Use of Their
            Collateral to Pay Future and Unknow Costs of
            Administration of a Confirmed Plan That Could Go On
            Indefinitely. ........................................................................ 10

    5.    The Secured Creditors Object to Any Attempt by the Debtor
            to Fix Its Claims as to Particular Properties at a Specific
            Amount, Since by the Terms of the Applicable Notices and
            Deeds of Trust, Interest, Fees and Costs Continue to Accrue
            Until the Lien is Satisfied In Full ...................................... 10

B.    The Debtor Has Failed to Carry Its Burden With Respect to the
       Proposed Plan........................................................................ 10

    1.    The Plan is Not Feasible ..................................................... 10

    2.    The Plan is Not Proposed In Good Faith ............................ 12

    3.    The Plan Unfairly Deprives the Secured Creditor of the
            Right to Credit Bid its Claim ............................................. 12

    4.    The Plan Cannot be Confirmed Because the Impaired
            Classes are Rejecting the Plan ........................................... 14

CONCLUSION............................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

In re Arnold & Baker Farms,
   177 BR 648 (9th Cir. BAP 1994) ......................................................................... 10

In re Bashas' Inc.,
   437 B.R. 874 (Bankr. D. Ariz. 2010) ................................................................. 11

In re Beyond.com Corp.,
   289 B.R. 138 (Bankr. N.D. Cal. 2003) ............................................................. 10

In Re Calvanese,
   169 B.R. 104 (Bankr. E.D. Pa. 1994) .......................................................... 11, 13

In re Cardinal Congregate I,
   121 B.R. 760 (Bankr. S.D. Ohio 1990) ............................................................... 6

In re Cascade Hydraulics and Utility Service, Inc.,
   815 F.2d 546 (9th Cir. 1987) .............................................................................. 10

In re Crowthers McCall Pattern, Inc.,
   120 B.R. 279 (Bankr. S.D. N.Y. 1990) ................................................................. 7

In re Dakota Rail Inc.,
   104 B.R. 138 (Bankr. D. Minn. 1989) ......................................................... 6, 7, 8

In re Ionosphere Clubs, Inc.,
   179 B.R. 24 (Bankr. S.D. N.Y. 1995) .................................................................. 5

In re Main Street AC, Inc.,
   234 B.R. 771 (Bankr. N.D. Cal. 1999) ............................................................... 10

In re Momentum Mfg. Corp.,
   25 F.3d 1132 (2d Cir. 1994) ................................................................................. 5

In Re Monarch Beach Venture, Ltd.,
   166 B.R. 428 (C.D. Cal. 1993) ..................................................................... 12, 13

In re Oxford Homes,
   204 B.R. 264 (Bankr. D.Me. 1977) ..................................................................... 5

In re Pecht,
   57 B.R. 137 (Bankr. E.D. Va. 1986) ................................................................... 11

In re Phoenix Petroleum Co.,
   278 B.R. 385 (Bankr. E.D. Pa. 2001) ................................................................... 6

In re Pizza of Hawaii, Inc.,
   761 F.2d 1374 (9th Cir. 1985) ............................................................................ 11

In re Reilly,
    71 B.R. 132 (Bankr. D. Mont. 1987).................................................................12

In re Seasons Partners, LLC,
    439 B.R. 505 (Bankr. D. Ariz. 2010) ...............................................................11

In re SM 104 Ltd.,
    160 B.R. 202 (Bankr. S.D. Fla. 1993) ..............................................................11

In Re Sunnyslope Housing Limited Partnership,
    859 F.3d 637 (9th Cir. 2017)............................................................................14

In Re Walker,
    165 B.R. 994 (E.D. Va. 1994) ..........................................................................11

Kirk v. Texaco, Inc.,
    82 B.R. 678 (S.D.N.Y. 1988) ..............................................................................5

Matter of Martindale,
    125 B.R. 32 (Bankr. D. Idaho 1995) ................................................................13

Matter of Transwest Resort Properties, Inc.,
    881 F.3d 724 (9th Cir. 2018).............................................................................14

RadLAX Gateway Hotel v. Amalgamated Bank,
    132 S. Ct. 2065 (2012) .....................................................................................13

S &P, Inc. v. Pfeifer,
    189 B.R. 173 (N.D. 1995) .................................................................................11

Stewart v. Gurley,
    745 F.2d 1194 (9th Cir. 1984) ............................................................................6


**Statutes**

11 U.S.C. § 363(c)(2)...........................................................................................10

11 U.S.C. § 363(k) ...............................................................................................13

11 U.S.C. § 506(b) ...............................................................................................13

11 U.S.C. § 1125....................................................................................................5

11 U.S.C. § 1125(a) ...............................................................................................5

11 U.S.C. § 1125(a)(1).....................................................................................4, 5, 6

11 U.S.C. § 1125(b) ..........................................................................................4, 6

11 U.S.C. § 1129(a) & (b) ...................................................................................10

11 U.S.C. § 1129(a)(1)....................................................................................10, 12

11 U.S.C. § 1129(a)(11)..................................................................................... 11

11 U.S.C. § 1129(a)(5)....................................................................................... 11

11 U.S.C. § 1129(a)(7)....................................................................................... 12

11 U.S.C. § 1129(b).......................................................................................... 12

11 U.S.C. § 1129(b)(1)...................................................................................... 12

11 U.S.C. § 1129(b)(2)(A).................................................................................. 12

11 U.S.C. § 1129(b)(2)(A)(i)............................................................................... 14

11 U.S.C. § 1129(b)(2)(A)(i)(I)............................................................................ 13

11 U.S.C. § 1129(b)(2)(A)(ii).......................................................................... 12, 14

11 U.S.C. § 1129(b)(2)(B).................................................................................. 12

**Other Authorities**

H.R. Rep. 595 (1977)........................................................................................... 5

**Treatises**

3 Lawrence P. King, Collier on Bankruptcy, (15th ed. 2003)...................................... 6

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY COURT JUDGE, THE DEBTOR, DEBTOR'S COUNSEL, AND OTHER INTERESTED PARTIES**

Secured Creditors and parties in interest Lantzman Investments, Inc. ("Lantzman") and LMF2 LP ("LMF2") (collectively the "Secured Creditors"), as serviced by Del Toro Servicing, Inc. (servicer for Lantzman) and FCI (servicer for LMF2) hereby object to the confirmation of the Chapter 11 Plan [ECF #139] and Disclosure Statement [ECF #140] of the Debtor 2nd Chance Investments Group LLC (the "Debtor").

## SUMMARY OF THE OBJECTIONS

Secured Creditors together hold the largest secured claim in this estate, which claims are secured by eight (8) of the fourteen (14) pieces of real estate listed in the Debtor's disclosure statement [ECF #140] at pp. 22–23. Secured Creditors' secured claims against those 8 properties total more than $2.7 million. See timely filed proofs of claim nos. 48-1 and 50-1, as amended by 50-2. This combined amount comprises the bulk of the secured claims in the estate and, as such, Secured Creditors have standing to object to the Debtor's Chapter 11 Plan and Disclosure Statement [ECF #s 139 and 140].

## GROUNDS FOR OBJECTION

Secured Creditors' Claims are listed in Class 2[1], as impaired [ECF #139, pp. 20–ff], which provides: "[the Property] shall be transferred to and subject to the terms of the Liquidating Trust. The claimant in [Class 2] shall be paid pursuant to the Liquidating Trust." A copy of the proposed liquidating trust is attached as Exhibit D to the Plan [ECF #139].

/ / /

---

[1] The disclosure statement places the following properties in the following subparts of Class 2: 2-8 (Byron), 2-9 (Meridian), 2-10 (151st Street, erroneously listed as 1551st Street), 2-11 (30th Street), 2-12 (Peachwood), 2-13 (E. 78th), 2-14 (Portal), and 2-15 (Marsala).

In addition, according to the Hypothetical Liquidation Analysis set forth in Exhibit 2 to the Disclosure Statement, pursuant to § 2.3.1 of the proposed liquidating trust, the Debtor proposes to transfer all trust property to the trust free and clear of any and all liens, claims, encumbrances and interests except as set forth in the Confirmation Order or the Plan.  As a result, Secured Creditors object to the Debtor's Chapter 11 Plan and its Disclosure Statement (ECF #s 139, 140) on the following grounds:

1.    The disclosure statement fails to comply with statutory requirements.

2.    The Plan is Not Feasible.

3.    The Plan is Not Proposed In Good Faith.

4.    The Plan Unfairly Deprives the Secured Creditor of its Rights under state law, including the right to Credit Bid its Claim. Also, Any proceeds from the sale of the properties subject to Secured Creditors liens must be paid directly from the close of escrow and not turned over to the Liquidating Trustee to hold indeterminately and paid out at his discretion.

5.    The Plan Cannot be Confirmed Because the Impaired Classes are Rejecting the Plan.

Each of these bases will be discussed further below.

## ARGUMENT

## STATEMENT OF BACKGROUND FACTS

Between January 2022 and August 2022, Secured Creditors entered into eight separate agreements with the Debtor so that that could purchase certain residential real properties (these are also listed in the disclosure statement [ECF #140] at pp. 23 and 25).  The list below identifies the lender, the property address, and the date that the deed of trust ("DOT") was recorded.  Copies of the recorded deeds of trust were attached to the Secured Creditors' proofs of claim (50-1 for LMF2 and 48-2 for Lantzman):

Agreements with LMF2:

1.    37915 Marsala Dr., Palmdale, CA  93552 ("Marsala"); DOT recorded 6/17/2022 as instrument no. 20220641678;

2.    1016 Portal Ave., Bakersfield, CA 93308 ("Portal"); DOT recorded 6/7/2022 as instrument no. 222089912;

3.    1004 Peachwood Ct., Los Banos, CA 93635 ("Peachwood"); DOT recorded 4/21/2022 as instrument no. 2022015964;

4.    43933 30th St. East, Lancaster, CA 93535 ("30th St."); DOT recorded 8/29/2022 as instrument no. 20220855698; and

5.    730&732 East 78th St., LA, CA 90001 ("E. 78th"); DOT recorded 7/14/2022;

Agreements with Lantzman:

1.    25641 Byron Street, Highland, CA  92404 ("Byron"); DOT recorded 1/4/2022 as instrument no. 2022-0004179;

2.    827 N. Meridian Ave.  San Bernardino, CA 92410 ("Meridian"); DOT recorded 6/17/2022 as instrument no. 2022-0218661; and

3.    1611 151st Street San Leandro, CA 94578 ("151 St."); DOT recorded 8/16/2022.

The Debtor had previously listed its interests in these 8 properties in its schedules [ECF #s 15, 64] and in the disclosure statement [ECF #140] and the Secured Creditors' claims were not disputed.

What is in dispute, however, is whether and/or how much equity the Debtor may have in these 8 properties. On May 4, 2023, Lantzman filed an Amended Motion for Relief from the Automatic Stay in this case on the Byron Property (see ECF #'s 131, 134), which is currently set for hearing on August 15, 2023, at 10:30 a.m. See ECF #s 160, 178.  Grounds for relief included cause and lack of equity.

As set forth in the Motion recently filed on behalf of Lantzman [ECF #187], the Debtor and its chief restructuring officer, Mr. David Goodrich, had attempted to market[2] both the Byron and Meridian Properties.  The highest and best offers they had received

---

[2] On April 13, 2023, this Court entered the order approving the retention of a broker to market these and other real properties of the Chapter 11 estate.  ECF No. 102.

for these properties was insufficient to pay the Lender in full on its secured claim, as well as all costs of sale, and there would be no proceeds left for the estate.[3]  As a result, the parties agreed to stipulate to relief from stay for cause, including that there is no equity in either the Byron or Meridian Properties for the estate.  That motion is set for hearing on approval of those stipulations on August 15, 2023, at 10:30 a.m.  As a result of those stipulations, and the recognition that there is no equity of the Byron and Meridian Properties, those properties will need to be removed from any consideration or treatment in any future plan.

Once the Byron and Meridian Properties are removed from the plan, the Debtor will be left with 12 residential real properties.  Of those 12 properties, 6 of them are secured by the deeds of trust held by these Secured Creditors.  Secured Creditors object to the plan and disclosure statements for the reasons set forth herein.

**A.     The Disclosure Statement Fails to Comply with Statutory Requirements: Its Does Not Contain Adequate Information**

The Debtor's disclosure statement [ECF #140] fails to provide creditors and the Court adequate information to make informed choices about the proposed plan and its treatment of creditors.  Pursuant to Section[4] 1125(b) of the Bankruptcy Code, a plan proponent may not solicit the acceptance or rejection of a plan of reorganization unless the holders of the relevant claims or interests, as applicable, are provided, at or before the time of such solicitation, with a disclosure statement approved by a bankruptcy court that contains "adequate information" regarding the debtor's plan of reorganization.  Section 1125(a)(1) defines "adequate information" in relevant part to mean:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a

---

[3] As to the Byron Property, the proposed purchase price (the best offer received) was $350,000, but the amount needed to pay everything in full was $353,358.16 (a difference of $3,358.16).  Kramer Decl. [ECF #188], ¶7.  As to the Meridian Property, the proposed purchase price (the best offer received) was $360,000, by the amount needed to pay everything in full was $437,650.89 (a difference of $77,650.89).  Kramer Decl. [ECF #188], ¶8.

[4] All references to "Section" are to the Bankruptcy Code, 11 United State Code, unless otherwise specified.

hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. . . .

Section 1125(a)(1). Thus, a disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to vote on a plan of reorganization. See In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir. 1994); see also In re Ionosphere Clubs, Inc., 179 B.R. 24, 29 (Bankr. S.D. N.Y. 1995) (the adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the chapter 11 policy of fair settlement through a negotiation process between informed interested parties."). This particular point, especially in light of its underlying notions of practicality and flexibility, also is underscored in the legislative history of Section 1125:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation. In chapter 11 cases, there is frequently great uncertainty. Therefore, the need for flexibility is greatest.

See H.R. Rep. 595, at 408–09 (1977).

Courts are vested with wide discretion to determine whether a disclosure statement contains "adequate information" within the meaning of Section 1125(a). See Kirk v. Texaco, Inc., 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be clearer in granting broad discretion to bankruptcy judges under §1125(a) . . ."); see also In re Oxford Homes, 204 B.R. 264, 267 (Bankr. D.Me. 1977) (noting Congress intentionally drew vague contours of what constitutes adequate information so that bankruptcy courts can exercise discretion to tailor them to each case's particular circumstances). This grant of discretion is intended to permit courts to tailor the disclosures made in connection with the solicitation of votes on a plan to facilitate the effective reorganization of debtors in a broad range of businesses and circumstances. See H.R. Rep. 595, at 409; see also Texaco, 82 B.R. at 682 (stating

1  bankruptcy judges have a clear congressional mandate to exercise "broad discretion in
2  their supervision of corporate reorganizations"). Accordingly, the determination of
3  whether a disclosure statement contains adequate information must be made on a case-
4  by-case basis, focusing on the unique facts and circumstances of each case. See In re
5  Phoenix Petroleum Co., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001). Disapproval of the
6  adequacy of a disclosure statement may be appropriate "where it describes a plan of
7  reorganization which is so fatally flawed that confirmation is impossible." In re
8  Cardinal Congregate I, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990).

9          In this case, the Debtor is misleading this Court and all parties in interest by
10  ignoring the undisputed facts, namely, that the real properties that purport to serve as
11  the vehicle to fund the so-called plan shall not yield as much money as the Debtor
12  asserts. Specifically, one of two options are available to the Debtor: either sell the real
13  properties AFTER payment of the valid and undisputed liens on those properties, and
14  then collect whatever equity may be available for the debtor, OR if a particular property
15  has no equity (as is the case with the Byron and Meridian Properties, discussed above),
16  then the Debtor has no business selling them through the Chapter 11 case. "A debtor
17  has no equity in the property for purposes of section 362(d)(2) when the debts secured
18  by liens on the property exceed the value of the property." 3 Lawrence P. King, Collier
19  on Bankruptcy, ¶ 362.07[4][a] (15th ed. 2003); see Stewart v. Gurley, 745 F.2d 1194,
20  1195–96 (9th Cir. 1984) [when determining whether a debtor has equity in the property,
21  the court must consider "the amount of value of a property above the total liens or
22  charges"].

23          The primary purpose of a disclosure statement is to give creditors the information
24  necessary to decide whether to accept a plan. Section 1125(b). In re Dakota Rail Inc.,
25  104 B.R. 138, 142 (Bankr. D. Minn. 1989). "Adequate information" is defined under
26  § 1125(a)(1) to mean:

27
28          . . . information of a kind, and in sufficient detail, as far as is reasonably
            practicable in light of the nature and history of the debtor and the condition

of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

There is no room for harmless error. The standard is one of materiality focusing on the information needed by a "hypothetical reasonable investor typical of holders of claims or interests of the relevant class." Section 1125(a)(1); In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr. S.D. N.Y. 1990).

In ruling on a disclosure statement, the court should consider (1) whether the disclosure statement contains adequate information to allow the typical creditor to make an informed decision on how to vote and (2) whether the plan can be confirmed. In re Dakota Rail, 104 B.R. 138, 143 (Bankr. D. Mn. 1989). Courts have considered the following nonexclusive, nonexhaustive factors:

The following is a nonexclusive and nonexhaustive list of types of information that should be included in a disclosure statement:

1. The circumstances that gave rise to the filing of the bankruptcy petition;

2. A complete description of the available assets and their value;

3. The anticipated future of the debtor;

4. The source of the information provided in the disclosure statement;

5. A disclaimer, which typically indicates that no statements of information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

6. The condition and performance of the debtor while in chapter 11;

7. Information regarding claims against the estate;

8. A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

9. The accounting and valuation methods used to produce the financial information in the disclosure statement;

10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

11. A summary of the plan of reorganization;

12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

13. The collectibility of any accounts receivable;

14. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

15. Information relevant to the risks being taken by the creditors and interest holders;

16. The actual or projected value that can be obtained from avoidable transfers;

17. The existence, likelihood and possible success of nonbankruptcy litigation;

18. The tax consequences of the plan; and

19. The relationship of the debtor with affiliates.

Id. at 142–43.

In this case, a review of the facts and the above factors favor a finding that neither the disclosure statement nor the plan meet the Code's requirements for approval. The disclosure statement makes it clear that this is a Debtor with virtually no income going forward, and in fact proposes to reject leases for those properties that have tenants. See Disclosure Statement [ECF #140, p. 24–25.] The proposed "plan" is a liquidating plan and proposes to set up a liquidating trust.  ECF #140, pp. 15–16.  However, the liquidating trust is faulty for many reasons.

**1.    The Secured Creditors Are Being Unlawfully Deprived of Their Rights as Secured Creditors**

The liquidating trust proposes that the liquidating trustee will sell properties and/or make disbursements to creditors on an annual basis; is also (by implication) provides that all sale proceeds shall go to the liquidating trust to be dispersed by the liquidating trustee at his discretion and after payment of administrative expenses. See ECF #140, pp. Secured Creditors find this offensive for many reasons, including: (a) they cannot be deprived of their rights as secured creditors and rather the Secured Creditors' specific claims should be paid directly from each escrow, pursuant to a valid

beneficiary demand.  See Exhibit 2 to the Disclosure Statement (ECF #140, pp. 88–89), which demonstrates that the plan requires all proceeds to go to the liquidating trust.  The Debtor also cannot deprive the Secured Creditors of the right to credit bid their own claims or get paid their secured claim directly from escrow at the close of escrow.  Any plan should provide that Secured Creditors' claim be paid directly and in full from any escrow–there is no valid reason for a liquidating trustee to hold funds that under all applicable law should be paid to the secured creditor.

### 2.    The Secured Creditors' Rights Are Not Being Adequately Protected

As valid, perfected secured creditors under state law, these Secured Creditors– who (as set forth in POC's 48-2 and 50-1) have not been paid since months before this Chapter 11 case was filed on December 21, 2022–have no way of knowing when or how their claims will be paid.  And as stated above, the current "plan" does not even propose to pay these valid secured claims from an escrow but rather proposes that the sale funds will be out into the trust to be used for litigation expenses, costs of administration, etc.  If these properties are worth less than the Debtor has opined (which Secured Creditors believe, see, *e.g.* the stipulations for relief relative to the Byron and Meridian Properties, ECF #s 183, 184), then it is wholly inappropriate for the Debtor to sell those properties since it can expect no benefit for such a sale.

### 3.    There is no Time Limit Set for the Subject Real Properties to Be Sold, and for the Secured Creditors' Claims to Be Paid In Full

For secured creditors like these–who have already gone close to a year since receiving any payments on their claims (and who have received no post-petition payments), such an open-ended provision is inappropriate and should not be countenanced.

/ / /

/ / /

**4.** **The Secured Creditors Do Not Consent to the Use of Their Collateral to Pay Future and Unknown Costs of Administration of a Confirmed Plan That Could Go On Indefinitely**

Section 363(c)(2) provides in pertinent part that a secured creditor's collateral cannot be used, sold or lease without consent or authorization by the court. See also In re Cascade Hydraulics and Utility Service, Inc., 815 F.2d 546, 548 (9th Cir. 1987) [finding administrative expenses could not be paid from sale of creditor's collateral].

**5.** **The Secured Creditors Object to Any Attempt by the Debtor to Fix Its Claims as to Particular Properties at a Specific Amount, Since by the Terms of the Applicable Notices and Deeds of Trust, Interest, Fees and Costs Continue to Accrue Until the Lien is Satisfied In Full**

A review of the relevant factors establishes, beyond doubt, that the Disclosure Statement and Plan are, thus, fatally flawed. The Plan is not in the best interests of all creditors.

**B.** **The Debtor Has Failed to Carry Its Burden With Respect to the Proposed Plan**

"The debtor carries the burden of proving that a Chapter 11 plan complies with the statutory requirements for confirmation under §§ 1129(a) & (b)." In re Arnold & Baker Farms, 177 BR 648, 654 (9th Cir. BAP 1994). Section 1129(a)(1) requires that a Chapter 11 plan comply with the applicable provisions of Title 11.

In this case, and as set forth herein, the Debtor's plan fails to comply with all of the relevant requirements of Section 1129 and, as a result, it cannot be confirmed.

**1.** **The Plan is Not Feasible**

This Court may refuse to permit solicitation of plan acceptances if it determines that the proposed Plan violates applicable provisions of the Bankruptcy Code. In re Beyond.com Corp., 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003); In re Main Street AC, Inc., 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999). "If, on the face of the plan, the plan could not be confirmed, then the Court will not subject the estate to the expense of

soliciting votes and seeking confirmation." In re Pecht, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986).

In construing the requirements of Section 1129(a)(11), the Ninth Circuit has stated that "the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable." In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1382 (9th Cir. 1985). The plan proponent must demonstrate concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the Plan to determine feasibility. S &P, Inc. v. Pfeifer, 189 B.R. 173, 183 (N.D. 1995) (quoting In re SM 104 Ltd., 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993)).   This is especially important when–as is the case here–the plan provides for events to happen in the future–with no deadlines–and dependent upon litigation.  Courts require "credible evidence proving that obtaining that future financing is a reasonable likelihood." In re Seasons Partners, LLC, 439 B.R. 505, 515 (Bankr. D. Ariz. 2010); In re Bashas' Inc., 437 B.R. 874, 915–16 (Bankr. D. Ariz. 2010).

The Plan is not feasible and incapable of confirmation pursuant to Section 1129(a)(11) for many reasons. First, the estimated amounts of each of the claims of these Secured Creditors is not yet known since they are subject to change based upon the terms of the applicable promissory notes and deeds of trust.  Furthermore, and as stated above, the claims will not be paid when the properties are sold.

A plan must have adequate means of implementation.  See Sections 1129(a)(5) and 1129(a)(11).  The Plan's structure of a hypothetical future sales is not feasible under Section 1129(a)(11) because the details of such sales is missing.  See, e.g., In Re Walker, 165 B.R. 994, 1003 (E.D. Va. 1994).  See also In re Calvanese, supra, 169 B.R. at 107 [liquidating plans are not an exception to the feasibility requirement).

Further, the only "support" provided by the Debtor is contained in its liquidation analysis–Exhibit 2 to the disclosure statement, pp. 88–89, and the properties' estimated values range significantly (30th St.–$259,000–305,000;  Peachwood–$340,000–400,000; E. 78th–$582,000–685,000; 151st St.–$510,000–600,000; Portal–$391,000–

460,000, and Marsala–$357,000–$420,000).[5] These value ranges suggest that, in most if not all cases, there will not be any equity in these properties for this estate.

Therefore, simply stated, the source of plan payments is illusory, the Plan violates Section 1129(a)(1), and cannot be confirmed as a matter of law.  It is not feasible.

## 2.    The Plan is Not Proposed In Good Faith

The Plan is not fair and equitable as provided under Sections 1129(b)(1), 1129(b)(2)(A) and 1129(b)(2)(B) as it proposes an indefinite and hypothetical sale.  The liquidating plan proposes to strip these secured creditors of their state law lien rights, without compensation, and for no good reason.

Furthermore, the Debtor's liquidation analysis attached to the Plan and disclosure statement is flawed and fails the "best interests of the creditors" test under Section 1129(a)(7).  Debtor offers no other "evidence" of value but merely (as set forth above), please a range of values as to each property.  And, as stated above, these values ignore the amount of the secured claims against the properties.  See In re Reilly, 71 B.R. 132, 135 (Bankr. D. Mont. 1987).

Based on the information provided in the Disclosure Statement and Plan, the Plan violates Section 1129(a)(1), and cannot be confirmed as a matter of law.

## 3.    The Plan Unfairly Deprives the Secured Creditor of the Right to Credit Bid its Claim

The Plan does not afford these Secured Creditors the right to credit bid at any sale of the Property and, as a result, it violates Section 1129(b)(2)(A)(ii) and is thus not fair and equitable under Section 1129(b)(1).  See In Re Monarch Beach Venture, Ltd., 166 B.R. 428, 433 (C.D. Cal. 1993) (explaining that the right to credit bid may not be taken from the creditor and that a chapter 11 plan under § 1129(b)(2)(A)(ii) without such credit bid cannot qualify as 'fair and equitable').

In addition, with respect to the 'cram-down' provisions of Section 1129(b), in the

---

[5] For the reasons set forth above the Byron and Meridian Properties are not included in this analysis.

event a chapter 11 plan proponent proposes to satisfy a secured claim by a sale of the collateral, the proponent must afford the secured claimant the right to credit bid at any sale as required by § 363(k). <u>RadLAX Gateway Hotel v. Amalgamated Bank</u>, 132 S. Ct. 2065, 2073 (2012). This applies whether the plan proponent attempts to seek confirmation of a plan proposing such a sale pursuant to Section 1129(b)(2)(A)(ii) or Section1129(b)(2)(A)(iii). <u>Id</u>. at 2072.  <u>See also</u> <u>In Re Monarch Beach Venture, Ltd.</u>, 166 B.R. 428, 433 (C.D. Cal. 1993) [right to credit bid may not be taken from the creditor, and denial of that right means the plan cannot qualify as fair and equitable].

These Secured Creditors also submit that the Plan's proposed treatment is not fair and equitable because it only appears to propose a hypothetical sale in the future at some point, with an undefined marketing or sale period, and Secured Creditors would be stayed from taking any action against the Property, presumably without receiving any payment and without any defined default provisions should the Property not be sold or actively marketed in good faith. <u>See</u> <u>Matter of Martindale</u>, 125 B.R. 32, 40 (Bankr. D. Idaho 1995) [a plan is not fair and equitable where such plan proposed to retain right to sell secured creditor's collateral and thereafter surrender if no sale occurred; debtor retained the benefits derived from the collateral while paying nothing to the secured creditor]; <u>see also</u> <u>In Re Calvanese</u>, 169 B.R. 104, 107–08 (Bankr. E.D. Pa. 1994) [plans where the debtor proposes to keep the creditor 'on hold' indefinitely while the debtor seeks to sell real estate are "speculative ventures" and improperly place the risk on the secured creditor].

In addition, these Secured Creditors submit that they are entitled to the full value of their respective claims as to each real property [including accrual of interest at the contract rate and any fees or costs] at the time of any sale, as provided by Section 506(b) or otherwise under applicable non-bankruptcy law. <u>See also</u> Section 1129(b)(2)(A)(i)(I) ['fair and equitable' treatment to a non-consenting secured claimant in a plan must provide that the secured claimant retain its lien securing such claim, whether the property subject to such lien is retained by the debtor or transferred to another entity, to

the extent of the allowed amount of such claim][6] and Section 1129(b)(2)(A)(ii) [subjecting this sale provision to Section 1129(b)(2)(A)(i)]. And because the Debtor is not paying any of the current costs of the properties, nor does it appear that the liquidating trust will do so either, these Secured Creditors anticipate having to advance more monies in the future for items such as property taxes and insurance.

**4.    The Plan Cannot be Confirmed Because the Impaired Classes are Rejecting the Plan**

These Secured Creditors hold the lion's share of the claims in impair class 2 and, for the reasons set forth herein, will vote to reject a liquidating plan that contains the existing terms. Since other secured creditors in class 2 have also objected to the plan and disclosure statement [ECF #s 153 and 185] it is possible that there will be no accepting class and, as a result, the Debtor cannot confirm a plan. See Matter of Transwest Resort Properties, Inc., 881 F.3d 724, 729 (9th Cir. 2018).

## CONCLUSION

The Debtor's disclosure statement, as amended, is inadequate and misleading, and fails to fairly apprise all parties in interest of the true facts as well as the risks associated with the currently-proposed liquidating plan. further the proposed plan is not fair or equitable. As a result, these Secured Creditors respectfully request that the disclosure statement not be approved, that the proposed liquidating plan be denied confirmation, and for other such relief as the Court deems just and proper.

Dated: July 5, 2023

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

By:    /s/Gary B. Rudolph
        Gary B. Rudolph
        Kathleen A. Cashman-Kramer
        Attorneys for Secured Creditors
        Lantzman Investments, Inc. and LMF2 LP

---

[6] See also In Re Sunnyslope Housing Limited Partnership, 859 F.3d 637, 646 (9th Cir. 2017).

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

600 B Street, Suite 1700
San Diego, CA 92101

A true and correct copy of the foregoing document entitled (*specify*):
**OBJECTIONS BY LANTZMAN INVESTMENTS, INC. AND LMF2 LP TO THE DEBTOR'S DISCLOSURE STATEMENT AND PLAN (ECF #S 140, 139)**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/05/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached list.

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  07/05/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 5, 2023 | Laurel Dinkins | /s/ Laurel Dinkins |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Amanda G. Billyard    abillyard@bwlawcenter.com
Stephan M Brown    ECF@thebklawoffice.com, stephan@thebklawoffice.com;roslyn@thebklawoffice.com
Kathleen A Cashman-Kramer    cashman-kramer@sullivanhill.com, theresam@psdslaw.com
Dane W Exnowski    dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
Lazaro E Fernandez    lef17@pacbell.net, lef-sam@pacbell.net;lef-
mari@pacbell.net;OfficeLR74738@notify.bestcase.com;lefkarina@gmail.com
Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
David M Goodrich    dgoodrich@go2.law,
kadele@wgllp.com;lbracken@wgllp.com;wgllp@ecf.courtdrive.com;gestrada@wgllp.com
Daniel J Griffin    daniel@thebklawoffice.com, tclayton@thebklawoffice.com;daniel@thebklawoffice.com
Brandon J Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
Charity J Manee    cmanee@goeforlaw.com, kmurphy@goeforlaw.com
Randall P Mroczynski    randym@cookseylaw.com
Queenie K Ng    queenie.k.ng@usdoj.gov
Douglas A Plazak    dplazak@rhlaw.com
Arvind Nath Rawal    arawal@aisinfo.com
Gary B Rudolph    rudolph@sullivanhill.com,
bkstaff@sullivanhill.com;vidovich@ecf.inforuptcy.com;rudolph@ecf.courtdrive.com;james@ecf.courtdrive.com
Cheryl A Skigin    caskigin@earthlink.net, caskigin@earthlink.net
Richard L. Sturdevant    rich@bwlawcenter.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Christopher P. Walker    cwalker@cpwalkerlaw.com, lhines@cpwalkerlaw.com;r57253@notify.bestcase.com
Fanny Zhang Wan    fwan@raslg.com
Andy C Warshaw    awarshaw@bwlawcenter.com, warshaw.andyb110606@notify.bestcase.com
Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com