1  ndy C. Warshaw, Esq. (State Bar No. 263880)
Financial Relief Law Center, APC

2  1200 Main St., Suite C
Irvine, CA 92614

3  Direct Phone: 714-442-3319
Facsimile: 714-361-5380

4  Email: awarshaw@bwlawcenter.com

5  Attorneys for Debtor in Possession

6

7                    UNITED STATES BANKRUPTCY COURT

         CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

8
   IN RE                                    Case No. 8:22-bk-12142-SC
9
   2ND CHANCE INVESTMENT GROUP, LLC         Chapter 11
10
   Debtor and Debtor in Possession.         **DEBTOR'S RESPONSES TO**
11                                          **OBJECTIONS TO THE DISCLOSURE**
                                            **STATEMENT DESCRIBING CHAPTER**
12                                          **11 LIQUIDATING PLAN DATED MAY**
                                            **10, 2023**
13
                                            **Disclosure Statement Hearing:**
14                                          Date:  July 19, 2023
                                            Time:  1:30 pm
15                                          Place:  United States Bankruptcy Court
                                            411 West Fourth Street, Suite 5130 /
16                                          Courtroom 5C
                                            Santa Ana, CA 92701-4593
17
                                            **Plan Confirmation Hearing:**
18                                          Date:   TBD
                                            Time:
19                                          Place:

20        **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

21  **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED**

22  **PARTIES:**

23        2nd Chance Investment Group, LLC, the debtor, and debtor in possession ("Debtor") filed its

                              PAGE 1 OF **15**

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER
11 LIQUIDATING PLAN DATED MAY 10, 2023**

Chapter 11 Liquidating Plan Dated May 10, 2023, as ECF No. 139 ("Plan"). The Debtor filed the Disclosure Statement Describing Chapter 11 Liquidating Plan Dated May 10, 2023, as ECF No. 140 ("Disclosure Statement").

Sajan Bhakta, ASB Ventures LLC, Ram Bhakta, Ronak Parikh, Precision Realty Fund, Deven Bhakta, Abhishek Bhakta, Jatin Bhakta, Parin Bhakta, Anand Bhakta, Sima Patel, Vishal Bhakta, Bhavesh Bhakta, Zona AZ LLC, Straten Lending, Kiwi Capital Group, and Primira LLC (collectively, "Bhakta Parties"), through their counsel of record, Reid & Hellyer APC, filed their objection to the Disclosure Statement on June 29, 2023, as ECF No. 185. An objection to the Plan was filed on June 29, 2023, as ECF No. 186.

Lantzman Investments, Inc. and LMF2 LP (collectively, "Lantzman Parties"), through their counsel of record, Sullivan Hill Rez & Engel, filed their objection to the Disclosure Statement and Plan on July 5, 2023, as ECF No. 191.

The Official Committee of Unsecured Creditors ("Committee") provided its objections to the Plan and Disclosure Statement on July 10, 2023, by email to counsel for the Debtor.

## I.    Introduction

The Debtor filed a liquidating Plan by way of a liquidating trust to efficiently liquidate assets of the bankruptcy estate for the benefit of creditors.  The Plan contemplates a distribution based upon cash generated from substantially all of the Debtor's assets, which are primarily real estate, as well as the resolution, settlement, or liquidation of claims of the bankruptcy estate against third parties.  Objections to the Disclosure Statement include the Debtor's characterization of insiders, the adequacy of the information in the Disclosure Statement, the treatment of secured creditor claims, adequate protection, cash collateral, and other that are addressed in the Debtor's response here.

DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 LIQUIDATING PLAN DATED MAY 10, 2023

The Debtor, for the reasons stated herein, requests that each and every objection raised by Bhakta Parties, Lantzman Parties, and the Committee, are overruled, and that the Court enter an order approving the adequacy of the Disclosure Statement.

## II.    Bhakta Parties

The Bhakta Parties make two general arguments: 1) that they should not be characterized as insiders; and 2) that Claims 26 and 29 are untreated.

### A.    Characterization and Treatment of Insiders

The Debtor characterizes Claims 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 33, 35, and 49 as insider claims because of the sufficiently close relationship that the claimants had with the Debtor and the degree of control that the insiders held over the Debtor. Specifically, the wire transfers to the insiders occurred due to their pressure, influence, and control that they had over the Debtor. The parties listed as insiders are either members of Precision Realty Fund LLC or have a sufficiently close relationship with Precision Realty Fund LLC and the Debtor to improperly influence the Debtor. *See* the Declaration of Rayshon Foster.

These transfers are the subject to Debtor's forthcoming adversary proceeding against Precision Realty Fund, LLC[1], under 11 U.S.C. § 547(b)(4)(B) based upon undisputed pre-petition transfers of $375,000 to Precision Realty Fund LLC and $100,000 to Schorr Law Group.  Pre-petition wire transfers from the Debtor to Precision Realty Fund LLC are listed on the Statement of Financial Affairs on July 7, 2022, July 21, 2022, and August 19, 2022.  There is also another transfer listed on the Statement of Financial Affairs, question 13, to Schorr Law Group, who represents Precision Realty Fund LLC in pre-petition state court litigation.  Additional funds were transmitted by the Debtor to Precision Realty Fund

---

[1] The adversary may include other parties, including Schorr Law Group.

LLC as provided in <u>Exhibit 1</u>.  The Debtor's bankruptcy petition was filed on December 21, 2022, meaning that the transfers are subject to § 547 if they are determined to be insider claims.

### B.  Treatment of Claims 26 and 29

<u>Exhibit B</u> of the Plan provides for Claims of the Estate. Claims 26 and 29 are provided for as allowed general unsecured claims and should be included in Class 4.  *See* ECF No. 139, Page 56. To the extent that the Plan lacks clarity relating to Claims 26 and 29, they are classified in Class 4, thereby treating them consistently with other similarly situated claims in Class 4.

### III.    Lantzman Parties

The Debtor met and conferred with counsel for the Lantzman Parties to address the objections and believe that the following summary will resolve said objections.  The Debtor intends to prepare a stipulation with the following terms to resolve the Lantzman Parties Objections:

a.  The transfer of estate property to the liquidating trust will be subject to all existing liens, claims and interests.
b.  The liquidating trustee will pay the proceeds of any sale of property post-confirmation to all holders of valid liens, claims and interests.
c.  If the liquidating trustee intends to treat a lien, claim or interest as disputed, he will notify the claimant of the dispute and withhold funds for that lien, claim or interest in a segregated account until the dispute is resolved.  Once the dispute is resolved, the liquidating trustee will pay the allowed/stipulated amount to the holder of a dispute lien, claim or interest.

Although the Debtor believes that the issues raised by the Lantzman Parties will be resolved by stipulation, the commentary, and characterization by the Lantzman Party in its objections warrant a response.

### A.  Removal of Byron and Meridian Properties from the Plan

The Debtor classifies the secured claim of Del Toro Servicing, Inc., in Class 2-8 of the plan, in which 25641 Byron St., San Bernardino, CA 92404 is to be transferred to the Liquidating Trust. Similarly, the Debtor classifies 827 N. Meridian Ave., San Bernardino, CA 92410 in Class 2-9 where it is transferred to and subject to the Liquidating Trust. Since the filing of the Plan and Disclosure

Statement, the Debtor entered into relief from stay stipulations for the Claimants in Class 2-8 and 2-9 of the Plan.  The relief rom stay stipulation provides that the lender is entitled to relief from stay and may proceed with nonbankruptcy law to enforce its remedies to foreclose and obtain possession of the real property.  To the extent that relief from stay is granted, the Debtor will no longer have a possessory or legal interest in the Byron[2] or Meridian Properties and they will not be part of the liquidating trust.

## B.   Adequate Information

The information contained within the Disclosure Statement is adequate within the meaning of 11 U.S.C. § 1125 of title 11 of the United States Code (the "Bankruptcy Code"). Each of the objecting parties, who are represented by sophisticated counsel, understand the Plan and Disclosure Statement, despite lengthy objections that increase the cost of administration of this bankruptcy estate.  The entire Disclosure Statement contains 109 pages of information, which simplistically, places all of the Debtor's assets into a liquidating trust whereby David Goodrich, who is a Chapter 7 Trustee in the Los Angeles Division, appointed by the Office of the US Trustee[3], will act as the Liquidating Trustee.

Lantzman focuses its objection on its treatment within the Liquidating Trust, which is a plan confirmation issue, not a Disclosure Statement issue.  "However, feasibility of a Chapter 11 reorganization plan is generally determined in connection with plan confirmation, and not approval of the disclosure statement. 11 U.S.C. § 1129(a)(11)." *In re Spehar*, 2:10-bk-47181-RK, at *1 (Bankr. C.D. Cal. Feb. 24, 2014).

## C.   Secured Creditors Deprivation of Rights as Secured Creditors

The intention of the Plan and the Liquidating Trust are to classify claims and interests as required under the Bankruptcy Code. Certain arguments raised by Lantzman are plan confirmation issues that are

---

[2] Capitalization of certain terms shall take on the meaning as defined in the Plan, Disclosure Statement, or relevant objections that are the subject of this response.
[3] https://www.cacb.uscourts.gov/office-us-trustee

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER
11 LIQUIDATING PLAN DATED MAY 10, 2023**

not appropriate for disclosure statement approval. "Plan confirmation issues should and will be dealt with during the plan confirmation process" *In re Cascade Grain Products, LLC*, Bankruptcy No. 09-30508-elp11, at *13-14 (Bankr. D. Or. Aug. 31, 2009).

As an example, Lantzman's characterization of the Liquidating Trust focuses not on the adequacy of the information, but instead on the treatment of the claims.  Specifically, Lantzman characterizes the Liquidating Trust as a vehicle for the Debtor to transfer all of its assets and then to make annual installment payments to creditors after the sale of real property, arguing that the Liquidating Trust is a deprivation of its rights.  Because these are plan confirmation issues and not related to the adequacy of the Disclosure Statement, the Debtor requests that the Court overrule the objections.

## D.  Adequate Protection and Cash Collateral

Certain objections made by Lantzman are in direct conflict of this Court's order approving the Debtor's noticed motion and hearing to approve a stipulation between the Debtor and Lantzman for the Debtor's use of cash collateral, granting of adequate protection, and related relief ("Cash Collateral Stipulation").  *See* ECF Nos. 19 and 41.  Specifically, the Cash Collateral Stipulation provides that no post-petition contractual payment shall be required in 2023 absent a sale of the real property and that each of the parcels of real property are adequately protected by equity.

## E.  Time Limits

Lantzman argues that there is no time limit for Secured Creditors' claims to be paid in full.  To the contrary, the Debtor's Plan provides for a temporal conditional injunction.  *See* ECF No. 139, page 49. Specifically,

> *The provisions contained with 11 U.S.C. 362 shall apply post-confirmation to assets of the bankruptcy estate for a period of 365 days after the Effective Date. The Bankruptcy Court shall retain jurisdiction to address any issues under this provision*

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 LIQUIDATING PLAN DATED MAY 10, 2023**

*relating to 11 U.S.C. Section 362. Creditors may not take any action to enforce either pre-confirmation obligations or obligations due under the plan, so long as the Liquidating Trustee is not in material default under the Plan. If the Liquidating Trustee is in material default under the Plan, affected creditors may: (1) file a motion for the Court to consider relief from the automatic stay while balancing adequate protections and the benefit to creditors of the bankruptcy estate; or (ii) move to dismiss this Case or convert this Case to one under Chapter 7. The post-confirmation injunction shall be liberally construed to protect the Debtor and assets of the Debtor while it is granted ample time to consummate the Liquidating Trust.*

## F. Fixed Claims

The Debtor does not intend to "fix" secured claims. Rather, the Debtor will pay claims in line with the terms provided in Section III of this response. The Plan does not provide for the cram-down of secured claim values, but rather the liquidation of assets of the estate to pay secured claims while paying a dividend to the general unsecured members class in Class 4.

## G. Plan Feasibility

The Debtor's liquidation analysis was handled by a reputable firm in Grobstein Teeple, LLP. The liquidation analysis includes estimates on real property value, capital gain analysis, and cash flow. The liquidation analysis provides for a total cash flow from the sale of the Debtor's assets. There is no evidence to the contrary, with no supporting declaration or evidence of property value that differs from that presented by the Debtor. The fact that secured claim values may change is irrelevant, as property values are also going to deviate, potentially creating even more equity available for allowed claims. To the extent that one or more of the Debtor's parcels of real property lack equity, the result may be relief from stay or abandonment from the estate; but there is no evidence that all of the parcels of real property lack equity pay claims. Additionally, if certain real property does lack equity, then the secured creditors have remedies that they can take to protect their rights. If there were truly no equity in any of the

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 LIQUIDATING PLAN DATED MAY 10, 2023**

Lantzman properties, then we would have seen relief from stay motions relating to each and every property. That simply has not happened.

## H. Good Faith

The Debtor's Plan was proposed in good faith with the intention of having a liquidating trust be the most efficient and effective method to provide the maximum dividend to the general unsecured class. The Debtor is not required to provide appraisals of property value to show that the Plan is proposed in good faith.

## I. Credit Bid – normal sale process, no deprivation of rights

This objection is resolved in Section III of this response.

## J. Impaired Classes Rejecting the Plan

This objection is one for plan confirmation and is not appropriately brought for whether the disclosure statement provides adequate information. The fact that certain secured and unsecured creditors do not like the content of the plan does not have a bearing on the adequacy of the disclosure statement, or quite frankly, whether the plan is confirmable because creditors do not yet cast ballots yet and there is no motion in play to confirm the plan which has not yet been disseminated for ballots.

## IV. Committee Objections

The Official Committee of Unsecured Creditors provided the Debtor with its position and objections to the Disclosure Statement. The general objections and responses are provided below.

## A. Adequate Information and Insider Transactions

The Committee's objection provides that the Disclosure Statement should have additional information about the Debtor's description and events that led to the filing of the bankruptcy petition. As an example, the objection indicates that the Disclosure Statement does not specify how interest rates, or the real estate market impacted the Debtor or explain the insider transactions that contributed to the

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER
11 LIQUIDATING PLAN DATED MAY 10, 2023**

bankruptcy filing. The Debtor is willing to expand on these subjects in an Amended Disclosure

Statement, to the extent that the Court agrees.

### B. The Committee's Power Under the Plan.

The Committee is concerned that it will lose its power upon Plan confirmation. The Debtor has

no intention to strip the Committee of its power, and instead, offered the Committee to hire it post-

confirmation, potentially on a contingency basis based on recovery.

### C. Lis Pendens Release

Members within the Bhakta Parties caused a lis pendens to be recorded that impacts the Debtor's

ability to sell property of the estate. The Debtor is in the process of resolving the lis pendens recordation

and may file an appropriate stipulation or motion providing additional information to approve terms.

The resolution may include the Debtor paying for the recording fee of the Notice of Withdrawal of the

Lis Pendens of approximately $700.

### D. Liquidating Trust Most Efficient Method to Generate Return for All Creditors

The Liquidating Trust simplifies the Debtor's liquidation efforts and maximizes a return to all

creditors. The Committee will maintain its power, secured creditors will be paid from the sale of escrow,

and unsecured creditors will be paid per the terms of Class 4 in the Plan.  The administrative fees are

also vastly reduced, whereby David M. Goodrich is employed at approximately half of his normal rate,

while attorneys for the Debtor in Possession maintain a significantly lower than market rate for similarly

situated professionals in in the area.

### E. Real Estate Evictions and Sale Efforts

The Debtor is preparing sale motions for three parcels of real property, including 37472

Yorkshire Dr., Palmdale, CA 93550; 3025 Glenview Avenue, San Bernardino, CA 92407, and 8607

Custer Road SW, Lakewood, WA 98499. The sale of 3025 Glenview Avenue, San Bernardino, CA

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER
11 LIQUIDATING PLAN DATED MAY 10, 2023**

92407 will resolve the pending objection filed by Forethought Life Insurance Company dated May 18, 2023, as ECF No. 153.

Walter Pena of Bewley, Lassleben & Miller is handling any eviction efforts of the Debtor. To date, the Debtor is working with the occupant of 37472 Yorkshire Dr., Palmdale, CA 93550 in what is expected to be an agreed upon stipulation for entry of judgment and possession whereby the occupant vacates the property prior to an order being entered on a sale motion.

### F.  Discharge Provision

The Debtor will not receive a discharge in this case and any provision to the contrary should be stricken.  Creditors and interest holders in Class 5 should not be subject to discharge.

### G.  Treatment of Secured Claims

The Debtor recommends that any objection to the treatment of secured claims be treated similarly to the resolution with the Lantzman Parties described in Section III.

### H.  Fees of Liquidating Trustee

The Liquidating Trust provides that the Liquidating Trustee may pay the reasonable salaries, fees, and expenses of professionals hired by the Liquidating Trust.

### I.  Exculpations and Release

The Committee voices concern in its objection that the exculpation clause on Page 48 of the Plan/Liquidating Trust shields the Debtor's principal, directors, and shareholders from actions that the Committee could have commenced pre-confirmation.  The Plan does not provide for the general release, but instead, a release specifically related to the formulation and implementation of the Plan or the Liquidating Trust.

### J.  Liquidation Analysis

The Committee has not provided the Debtor with information relating to its ability to recover funds on behalf of the estate and therefore the Debtor has no additional information to publish in the Disclosure Statement.  The Debtor is not privy to any claim or activity by the Committee against the principal of the Debtor or any other party, aside from its due diligence and requests for substantial

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 LIQUIDATING PLAN DATED MAY 10, 2023**

levels of documents and information from the Debtor, which were all transmitted soon after any request

and around the time of the 341(a) meeting of creditors.

## V.      Conclusion

The objections raised by the Bakhta Parties, the Lantzman Parties, Forethought Life Insurance

Company, and the Committee should be overruled for the reasons set forth in the Debtor's response.

Dated: July 12, 2023                              Respectfully Submitted,

                                                  /s/ Andy C. Warshaw

                                                  Andy C. Warshaw, Esq.
                                                  Attorneys for Debtor in Possession
                                                  1200 Main St., Suite C
                                                  Irvine, CA 92614

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER
11 LIQUIDATING PLAN DATED MAY 10, 2023**

I, <u>Rayshon Foster</u>[4], do hereby declare and say as follows:

1. I am over eighteen (18) years of age and a citizen of the United States of America. I make this Declaration based upon the following facts, all of which are within my personal knowledge or belief. As to all matters alleged on information and belief, I believe them to be true. If called upon as a witness, I could and would competently testify thereto.

2. I am the principal of the Debtor in the above-captioned bankruptcy case. On December 21, 2022 (the "<u>Petition Date</u>"), the Debtor filed the voluntary petition for relief under Chapter 11 of Title 11 of the United State Bankruptcy Code. I signed the voluntary petition for relief.

3. The Debtor made payments to Precision Realty Fund LLC and ASB Ventures LLC ("<u>Investors</u>") pursuant to an amended investment agreement ("<u>Amended Investment Agreement</u>") dated August ___[5], 2022. Attached as <u>Exhibit 1</u> is a true and correct copy of the Amended Investment Agreement.

4. The Amended Investment Agreement provides generally, as a recital, that the Debtor made $600,000 in payments to the Investors between March 1, 2022, and July 21, 2022.

5. Additional payments totaling $375,000 were made, as described in the Debtor's Statement of Financial Affairs. $125,000 was transmitted to Precision Realty Fund LLC on July 7, 2022; a payment was made to Precision Realty Fund of $150,000 by the Debtor on July 21, 2022; another payment was made by the Debtor to Precision Realty Fund on August 19, 2022, for $100,000.

6. An additional payment was made by the Debtor to Schorr Law Group, who are counsel to the Bhakta Parties, for $100,000 on June 23, 2022.

7. These payments were made to Precision Realty Fund LLC and Schorr Law Group based on the

---

[4] Capitalization of certain terms shall take on the meaning as defined in the Plan, Disclosure Statement, or relevant objections that are the subject of this response.
[5] No party filled in the day of execution on the attached version.

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 LIQUIDATING PLAN DATED MAY 10, 2023**

1    undue influence that the members of Precision Realty Fund, LLC, had on the Debtor.

2        8. Notably, Rom Bhakta and Sajan Bhakta, were the Debtor's contact for investments in real estate

3    and each of them well understood the Debtor's business model.  The Debtor would not have been able to

4    operate without the relationship that it had with Sajan and Rom Bhakta.

5        9. I believe that Rom and Sajan Bhakta were familiar with, aware, and privy to all or substantially all

6    of the Debtor's financials and business dealings, particularly in the 12 months prior to the Petition Date.

7    Each deal would be discussed with Hitem or Sajan Bhakta and most of the money invested into the

8    Debtor resulted from Hitem or Sajan Bhakta's actions or relationships.  Sajan Bhakta kept spreadsheets

9    that I have copies of for each of the transactions that they were involved in.

10       10. Sajan and Rom Bhakta were aware of the Debtor's financial constraints and difficulties in 2022,

11   pushing for payments to protect their own investments to the detriment of other creditors of the Debtor.

12       11. There was a point in time where Sajan Bhakta asked for money before the loan terms expired.

13       12. At some point in the Spring or Summer of 2022, Rom Bhakta and Sajan Bhakta began making

14   demands on me to pay their claims even though the real property associated with those claims was sold

15   for a profit.  When Rom Bhakta and Sajan Bhakta were not paid, they threatened to sue me personally,

16   along with the Debtor, if I did not turn over 50% of the company to them.

17       13. Providing Sajan and Rom Bhakta control of the company would have allowed them to prioritize

18   their own claims, which I would not allow.  Sajan and Rom Bhakta threatened to halt current and future

19   operations and investments if their claims were not paid after I rejected their controlling share offer in

20   the company.

21       14. The Amended Investment Agreement attached as Exhibit 1 was made out of duress and due to the

22   undue influence that Precision Realty Fund LLC, Sajan Bhakta, and Rom Bhakta had over the Debtor

23   and its operations.

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER
11 LIQUIDATING PLAN DATED MAY 10, 2023**

15. I equate the actions of Sajan and Rom Bhakta to blackmail for their attempt to gain control of the Debtor and receive payments prior to the Debtor's filing for bankruptcy protection.

16. After the payment made to Precision Realty Fund LLC on August 19, 2022, for $100,000, the Debtor defaulted on the Amended Investment Agreement and a lawsuit ensued with the caption, Hitem Ram Bhakta; ASB Ventures, LLC, and Precision Realty Fund, LLC.  The lawsuit was filed in the Superior Court, County of Riverside, case number CVRI 2204640, for breach of contract and other accusations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of July 2023.

    (signature forthcoming)    
Rayshon Foster
Principal of the Debtor in Possession

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 LIQUIDATING PLAN DATED MAY 10, 2023**

1

2

3

4

5

6

7    Attached as <u>Exhibit 1</u> is a true and correct copy of the Amended Investment Agreement.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**DEBTOR'S RESPONSES TO OBJECTIONS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 LIQUIDATING PLAN DATED MAY 10, 2023**

## AMENDED INVESTMENT AGREEMENT

This Amended Investment Agreement ("AIA" or "Agreement") is made by and among PRECISION REALTY FUND LLC ("Precision"), ASB VENTURES LLC ("ASB Ventures"), (collectively "Investors"), on the one hand, and Rayshon Andrew Foster, an individual ("Foster"), and 2nd Chance Investments Group, LLC ("2nd Chance"), on the other hand (Foster and 2nd Chance shall collectively be referred to as "2F"). At times below, any of the above are referred to generically as a "Party" and collectively referred to as the "Parties."

## RECITALS

A.    Between March 11, 2021, and December 10, 2021, the Parties and/or their agents and/or representatives entered into a series of loans evidenced by promissory notes. Those loans and promissory notes are specifically identified on **Exhibit A** and are expressly incorporated by reference hereto (the "Loans").

B.    2nd Chance agreed with and represented to the Investors that in exchange for the Investors providing a loan to 2nd Chance that 2nd Chance would provide the Investors a secured Deed of Trust on the appropriate and corresponding real property for which the loan was made.

C.    The Investors contend that the Loans required 2nd Chance to secure the Loans by a Deed of Trust on the appropriate and corresponding real property for which the loan was made.

D.    2nd Chance contends that even though it was required to secure the Loans, it did not secure the Loans because the securities would restrict the alienability of the real property.

E.    The Loans have maturity dates between November 11, 2021, and August 10, 2022.

F.    The outstanding balance on the Loans is $4,545,000.00.

G.    The outstanding interest on the Loans is $984,700.00.

H.    The Investors contend that, to date, 2nd Chance has made $600,000.00 in payments towards the Loans. 2nd Chance made a payment in the amount of $50,000, on or about March 1, 2022. 2nd Chance made a payment in the amount of $60,000 on or about April 12, 2022. 2nd Chance made two payments, one in the amount of $65,000 and one in the amount of $50,000 on or about April 15, 2022. 2nd Chance made a payment on June 23, 2022, in the amount of $100,000.00. 2nd Chance made an additional payment on July 7, 2022, in the amount of $125,000.00. 2nd Chance made a further payment on July 21, 2022, in the amount of $150,000.00. The Investors also contend that the maturity dates on the outstanding Loans have not been respected.

I.    The Investors, on the one hand, and 2F, on the other hand, wish to resolve their dispute related to the payments regarding the Loans by entering into this Agreement.

DocuSign Envelope ID: 3947E8F9-CA11-4EAC-AD8A-6B4A035CBE08

## Agreement

1.     <u>Recitals</u>. The recitals set forth above are true and correct and are hereby incorporated into the terms of this Agreement. Section 622 of the Evidence Code applies to the recitals.

2.     <u>Under Oath Verification.</u> In consideration of the Investors willingness to enter into this AIA, Foster agrees to provide, within 10 days of signing the AIA, the following information via a declaration signed under penalty of perjury:

    a.   <u>Property Disclosures</u>. A list of all real property currently owned by 2nd Chance, and any other related business entities for which 2nd Chance owns an interest ("FRES"). This list shall include:

        i.     The addresses of all real property owned by the FRES;

        ii.    Any liens or encumbrances on the real property;

        iii.   The expected sale price of the real property;

        iv.   Identity of the entity that is on record title to the real property; and

        v.    Any work to be performed on the real property to make it available for sale and/or listing for sale.

    b.   <u>Ownership List.</u> A list of all real property for which 2nd Chance has an ownership or equity interest via a creative finance structure. "A creative finance structure" is meant to be a broad phrase covering unrecorded interests, beneficial interests, equity stake, interest in loans and any other financial interest in real property.

3.     <u>Notice of Sale or Refinance.</u> At least 3 business days prior to 2nd Chance's and any related entity's sale or refinance of any real property for which 2nd Chance and any related entity claims an interest, 2nd Chance shall provide written notice of the sale or refinance.

4.     <u>Insurance.</u> Foster shall provide any and all insurance policies in effect relating to any real property owned by FRES. The insurance policies shall be accompanied by a declaration under oath by Rayshon Andrew Foster that the insurance policy insures the real property it purports to insure.

5.     <u>Security for Existing Promissory Notes.</u> 2nd Chance shall provide security (deed of trust) for all existing loans referenced in **Exhibit A**.

6.     <u>Payments.</u>

    a.   2nd Chance shall provide a $125,000.00 payment made payable by wire transfer to Precision Realty Fund LLC on August 19, 2022. 2nd Chance shall then provide a $125,000.00 payment made payable by wire transfer to Precision Realty Fund LLC on August 21, 2022.

    b.   Each month, with the month following the payments set forth in Section 6(a), 2nd Chance shall provide two payments of $125,000.00 per month made payable by wire transfer to Precision Realty Fund LLC. The first monthly payment shall be due on the 7th day of the month and the second monthly payment shall be due on the 21st day of the month.

DocuSign Envelope ID: 3947E8F9-CA11-4EAC-AD8A-CB8AC55A56C8A

    c. Interest shall continue to accrue in the amount of 10% per annum, accruing monthly ("accrued interest fees"), until FRES has satisfied their debt in full to the Investors.

    d. FRES shall pay all debt obligations/ balance/ unpaid interest/ principal owed to the Investors by July 1, 2024 "Maturity Date" subject to any reduction in interest payments due to payments made that satisfy section 6(c) above.

7.    <u>Maturity Date.</u> The unpaid principal advanced by the Investors and any accrued interest shall be due in full on July 1, 2024. The Maturity Date shall only be extended by written agreement, signed by all parties to this agreement.

8.    <u>Security for Loans.</u>

    a. <u>Recorded Security</u>. All unsecured promissory notes entered into between Investors on the one hand, and FRES on the other, shall be secured by a recorded deed of trust against existing FRES assets. All deeds of trust provided as security for the promissory notes must be recorded with the appropriate County Recorder's office for the county where the real property is located within 15 days of Foster's signing of this AIA. The deeds of trust shall provide Investors with security against the several properties identified through disclosure in compliance with Section 2 and **Exhibit A**.

    b. <u>Cross-Collateralization.</u> The recorded security mentioned in Section 8(a), above, shall be cross-collateralized debt owed by FRES. The collective debt shall be secured against all real property identified pursuant to Section 2.

    c. <u>Removal of Security.</u> Upon 2F's timely compliance with the payment terms in Section 6, the Investors agree to remove the cross-collateralized debt from a particular property that 2F is selling to reduce debt provided 2F also timely complies with the notice requirement set forth in Section 4 and provided 2F provides the Investors with the escrow instructions. Upon termination of this Agreement and repayment to the Investors of all secured obligations and the performance of all obligations under this Agreement the Investors shall release any remaining security interest in all properties identified through disclosures made in compliance with Section 2.

9.    <u>Breach.</u> 2nd Chance shall be in breach under this Agreement upon the happening of any of the following events or conditions:

    a. A failure to pay any amount due under this Agreement within **five (5) days** of the date the same is due.

    b. The FRES failure to perform any of its obligations under this Agreement within **five (5) days** of notice from the Investors of the same.

    c. Falsity, inaccuracy, or material breach by FRES of any written warranty, representation or statement made or furnished to the Investors, their agents, or representatives, by or on behalf of Rayshon Andrew Foster.

    d. The filing of a bankruptcy petition by Foster.

    e. The occurrence of any event of default under the Loans.

DocuSign Envelope ID: 3947E8F9-CA11-4EAC-AD8A-A45AA9F3CC6A

10.     Personal Guaranty. Rayshon Andrew Foster personally agrees and guarantees to pay all of the debts owed to the Investors by 2nd Chance, a company in which Rayshon Andrew Foster has an ownership interest pursuant to the terms of the Loans identified in **Exhibit A** and this Agreement.

11.     Remedies. In the event of breach, and at any time thereafter, the Investors may declare all obligations immediately due and payable and shall have available any remedies provided herein or by any applicable law or in equity. The remedies include, but are not limited to: ·

   a. Exercise any and all rights and remedies available at law or in equity and also any and all rights and remedies provided in the Loans and newly recorded deeds of trust. The remedies of Investors, as provided in this Agreement and in the Loans documents, shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of the Investors, and may be exercised as often as occasion therefor shall arise.
   b. To the extent permitted by law, the right to non-judicial foreclosure.
   c. Commencement of a civil action.

12.     Non-Waiver. No act of omission or commission of the Investors, including specifically any failure to exercise any right, remedy or recourse shall be deemed to be a waiver or release of any right, remedy or recourse by the Investors. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to any subsequent event.

13.     Investors Representations. The Investors represent and warrant they have the authority to bind the several different parties to the Loans with respect to this Agreement.

14.     Indemnity. The Investors agree to indemnify and hold harmless 2nd Chance and/or Foster from and against any and all claims, losses, and liabilities 2nd Chance and/or Foster incur as a result of any claim by the several different parties to the Loans identified in **Exhibit A** that the Investors did not have the authority to enter into this Agreement.

15.     Non-Disparagement. The Parties agree to not disparage or portray in a negative light each other or their officers, directors, employees, shareholders, affiliates or agents in any manner likely to be harmful to them or their business reputation or personal reputation and shall not disclose any information regarding each other that is non-public, confidential, or proprietary. This non-disparagement agreement applies to any form of communication, including communications on digital platforms and/or web-based applications such as e-mail, text messages, and social media platforms such as, but not limited to Facebook, Twitter, Instagram, Snapchat, Yelp and Google Reviews. Notwithstanding the foregoing, nothing herein shall prevent any party from responding accurately and fully to any question, inquiry or request for information when required by the legal process or this Agreement. This non-disparagement provision shall become void and unenforceable upon the occurrence of any event that constitutes a breach of this Agreement as defined in Section 9. "Disparagement" means any communication, comment, remark, or statement, made to a third party in writing or verbally, that is negative, belittling, untrue, or degrading as to the quality of a product or a business or individual.

4

DocuSign Envelope ID: 3947E8F9-CA11-4EAC-AD8E-28AC5ECC00F9

16.    <u>Attorneys' Fees</u>. If any legal action or other proceeding is brought for the enforcement of this AIA, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this AIA, the successful or prevailing Party or Parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which the Party or Parties may be entitled.

17.    <u>Integration</u>. This AIA constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof and, all prior and contemporaneous discussions and negotiations have been and are merged and integrated into, and are superseded by, this AIA. Thus, no covenants, agreements, representations, or warranties of any kind whatsoever, whether express or implied in law or fact, have been made by any Party, except as specifically set forth in this AIA or any contemporaneous or subsequent written agreement between the Parties subscribed by them or their duly authorized officers or agents.

18.    <u>Further Assurances</u>. Each of the Parties agrees that it will execute and deliver all such documents and instruments as may be necessary and appropriate to effectuate the terms hereof.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the respective dates set forth below.

DATED: August __, 2022

PRECISION REALTY FUND, LLC
A Texas limited liability company

By:    _____
Name: Hiten Bhakta
Title: CEO

DATED: August __, 2022

ASB Ventures, LLC
A California limited liability company

By:    _____
Name: Sajan Bhakta
Title: CEO

DATED: August __, 2022

2nd Chance Investment Group, LLC, LLC
A California limited liability company

By:    _____
Name: Rayshon Andrew Foster
Title: CEO

[CONTINUED ON NEXT PAGE]

DocuSign Envelope ID: 3947E8F9-CA11-4EAC-AD8...

DATED:  August __, 2022                      Rayshon Andrew Foster
                                             An individual

                                             By:
                                             Name:  Rayshon Andrew Foster