Andy C. Warshaw, State Bar No. 263880
Rich Sturdevant SBN 269088
**FINANCIAL RELIEF LAW CENTER, APC**
1200 Main St., Suite C
Irvine, CA 92614
Direct Phone: (714) 442-3319
Facsimile: (714) 361-5380
Email: awarshaw@bwlawcenter.com
Email: rich@bwlawcenter.com

Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:22-bk-12142-SC |
| 2nd CHANCE INVESTMENT GROUP, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | **DEBTOR'S MOTION FOR ORDER:** |

**DEBTOR'S MOTION FOR ORDER:**
(1) **AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f);**
(2) **APPROVING OVERBID PROCEDURES;**
(3) **APPROVING BUYER, SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(m);**
(4) **AUTHORIZING PAYMENT OF UNDISPUTED LIENS, REAL ESTATE BROKER'S COMMISSIONS, AND OTHER ORDINARY COSTS OF SALE;**
(5) **WAIVING STAY UNDER RULE 6004(h);**
**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DAVID M. GOODRICH, WILLIAM FRIEDMAN, GLENN PORTER, AND FRANK ST. CLAIR IN SUPPORT**

**[1016 Portal Avenue, Bakersfield, California 93308; APN: 117-222-13-00-7]**

**Remote Hearing:**
**DATE:        December 6, 2023**
**TIME:         1:30 p.m.**
**PLACE:       Courtroom 5C/Via ZoomGov**
**                    411 West Fourth Street**
**                    Santa Ana, California 92701**

MOTION

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES**

**BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE; AND**

**PARTIES IN INTEREST:**

2ND Chance Investment Group, LLC, the debtor and debtor-in-possession in the above-captioned case ("Debtor"), files this *Motion for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant 11 U.S.C. §§ 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); (4) Authorizing Payment of Undisputed Liens, Real Estate Broker's Commissions, and Other Ordinary Costs of Sale; and (5) Waiving Stay Under Rule 6004(h)* ("Motion").  In support of the Motion, the Debtor submits the following memorandum of points and authorities and the Declarations of David M. Goodrich ("Goodrich Decl."), William Friedman ("Friedman Decl."), Glenn Porter ("Porter Decl."), and Frank St. Clair ("St. Clair Decl."), and represents as follows:

**I.    INTRODUCTION**

The Debtor requests authority to sell its right, title and interest to real property located at 1016 Portal Avenue, Bakersfield, California 93308 ("Property"), for a purchase price of $236,000.00, subject to overbids and free and clear of all liens, claims and interests.  As discussed below, the Debtor believes the purchase price represents the fair market value of the Property.  Further, the proposed sale is reasonable and in the best interest of the Estate because the sale will generate unencumbered funds to pay administrative and unsecured claims of the Estate.  The Debtor also requests (i) approval of the buyer, successful bidder and back-up bidder as good-faith purchasers, (ii) approval of proposed overbid procedures, (iii) approval to pay liens, real estate taxes owed, the broker's commission, and other costs of sale, and (iv) waivers of the lodging period and any stay of the order granting this Motion.

## II.    FACTUAL BACKGROUND

### A.    Debtor's Bankruptcy Filing and CRO's Employment

On December 21, 2022 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California ("Court"), case no. 8:22-bk-12142-SC ("Case").  See Docket No. 1.  The Debtor continues to operate and manage its affairs as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On March 1, 2023, the Court approved David M. Goodrich ("CRO") to serve in the capacity of the Debtor's chief restructuring officer. The CRO is authorized to manage and oversee the Debtor's affairs, including supervising the Debtor's financial affairs and outside consultants.

The bar date for filing proofs of claim was April 10, 2023.

### B.    Property

In his amended Schedule A/B ("Amended Schedule A/B"), the Debtor lists an ownership interest in the Property with a scheduled value of $240,000.00.  As more fully described below, Schedule D and the Debtor's books and records reflect the Property is encumbered by the following secured claim:

- a lien held by LMF 2, LP (now California TD Specialists) to secure a claim of approximately $127,000.00.

The relevant portions of Amended Schedule A/B and Schedule D are attached hereto collectively as **Exhibit 1**.  *See* Goodrich Decl.

### C.    Employment of Co-Brokers

On March 26, 2023, the Debtor filed its application (dkt. #80, "Application") to employ Coldwell Banker Realty and Re/Max Golden Empire (together, "Co-Brokers") and their respective agents (together, "Agents"), William Friedman and Glenn Porter, to market and sell the Property.  The Application was approved by Court order entered on April 13, 2023 (dkt. #102, "Co-Broker Order").  A copy of the Co-Broker Order is attached as **Exhibit 2**.  *See* Goodrich Decl.  The Co-Broker Order provides, among other things, for

1 the payment of a commission to the Co-Brokers.  *See* Exhibit 2.  The total broker's

2 commission is 6% if this Motion is granted and the sale closes, but subject to Court

3 approval.  *Id.*

4       **D.**   **Value and Marketing of the Property**

5       Mr. Porter has extensive experience in marketing and selling real property in the

6 area where the Property is located and, based on an investigation of surrounding property

7 values and the interest generated by the listing, he believes the proposed purchase price

8 for the Property represents current fair market value for the Property and the highest and

9 best offer.  *See* attached Porter Decl.  Mr. Porter has listed the Property for sale in the

10 Multiple Listing Service.  The listing is also available on various real estate websites and

11 has had more than 400 views from the MLS and other websites.  Mr. Porter and his team

12 have received and responded to numerous inquiries regarding the Property, have shown

13 the property to eight potential buyers, and have received a total of three offers for the

14 Property.  Mr. Porter is continuing to market the Property for overbids.  Prior to the sale

15 hearing, the Agents will publish the details of the hearing and the overbid procedures in

16 the MLS.  *See* Porter and Friedman Decls.

17       **E.**   **Liens, Claims and Interests on the Property**

18       According to the Preliminary Report prepared by Orange Coast Title Company with

19 an effective date of July 19, 2023 ("Title Report"), a copy of which is attached as

20 **Exhibit 3**, the following items have been recorded against the Property:

21

22

23

24

25

26

27

28

**4**                                   MOTION

| Recording Date | Lien Holder | Type of Encumbrance | Instrument Number | Original Lien Amount of Payoff Amount |
|---|---|---|---|---|
| (item 1) | County Assessor's Office | General and special taxes for fiscal year 2022-2023 | | 1st installment, $1,352.51, delinquent; 2nd installment, $1,352.50, delinquent |
| (item 2) | County Assessor's Office | Defaulted 2022 tax | | $3,122.22 (amount to redeem if paid by September 2023) |
| 06/07/2022 (item 9) | LMF 2, LP | Deed of Trust | 2022-89912 | $152,338.91 (approximate payoff amount) |
| 10/21/2022 | California TD Specialists | Substitution | 2022-158302 | |
| 10/21/2022 | | Notice of Default | 2022-158303 | |
| 10/21/2022 (item11) | Advance Real Estate & Construction Solutions Corp. to 2nd Chance Investment Group, LLC[1] | Conveyance[2] | 2022-158437 | |
| 12/16/2022 (item12) | Hiten Ram Bhakta, an individual; Sajan Bhakta, an individual; ASB Ventures, LLC; Precision Realty Fund, LLC | Notice of Pendency of Action CVR12204640, Superior Court of California, County of Riverside ("Lis Pendens") | 2022-185461 | |
| 06/08/2023 (item 13) | | Declaration of Substandard Property | 223065743 | |

The lien of California TD Specialists is undisputed unless the payoff demand contains fees, costs, or interests that appear unsubstantiated.

The Lis Pendens has been released. A withdrawal of the Lis Pendens was signed and recorded on or about October 5, 2023.

The Debtor intends to pay the following undisputed lien or claim at closing of the sale:

---

[1] The Debtor's principal, Rayshon Foster, is also the principal of Advance Real Estate & Construction Solutions Corp.

[2] Title has requested confirmation of conveyance from the grantor to establish the validity of the conveyance. Documentation is being provided by the Debtor through escrow.

(i) the California TD Specialists lien recorded on June 7, 2022, as

instrument no. 2022-89912 of official records (substituted by instrument

no. 2022-158302) shall be paid in full as of the date of the closing of the

sale.

According to the Court's register of claims ("Claims Register"), a copy of which is

attached as **Exhibit 4**, the following relevant claims have been filed:

| Claim Number | Claimant | Date Filed | Claim Amount/Basis | Classification |
|---|---|---|---|---|
| 15-1 | Salvador Jimenez | 03/21/2023 | $66,000.00 | Secured |
| 50-1 | LMF2, LP | 04/07/2023 | $1,588,962.55 – mortgage/deed of trust | Secured |

On March 21, 2023, Salvador Jimenez filed a secured claim against the Debtor in

the amount of $66,000.00, designated as Claim No. 15-1 ("Claim 15") in the Court's

register of claims. On April 3, 2023, the Debtor filed its omnibus objection to claims

(dkt. 88, "Claim Objections"), including Claim 15. Hearing on the Claims Objections was

set for May 31, 2023. On April 27, 2023, the Debtor filed the *Stipulation Between Debtor

and Salvador Jimenez Resolving the Debtor's First Omnibus Objections to Claims* (dkt.

116, "Stipulation"). The Stipulation classifies Claim 15-1 as a general unsecured claim for

$66,000.00 with no secured claim portion allowed.[3] The terms of the Stipulation are

incorporated in the Order on Objections to Claims entered on May 31, 2023, as dkt. 167.

On April 7, 2023, LMF2, LP filed a secured claim against the Debtor in the amount

of $1,588,962.55, designated as Claim No. 50-1 ("Claim 50") in the Court's register of

claims. The basis for Claim 50 is "defaulted mortgages for multiple properties." The

attachment to Claim 50 indicates that the total claimed ($1,588,962.55) is for secured

loans on five real properties, including the Property. The amount attributed to the

Property is $141,824.91.

---

[3] Salvador Jimenez filed claims 8-1 through 25-1 and then amended each of the claims on April 5, 2023, which are the subject of the Stipulation.

1  The Debtor reserves the right to object to the validity, scope and priority of any

2  disputed liens, claims and interest that have been or will be asserted against the Property.

3  *See* Goodrich Decl.

4  **F.    Property Taxes**

5  Pursuant to the Purchase Agreement, real property taxes and assessments are to

6  be prorated between the Debtor and the Buyer through escrow as of the closing, including

7  the unsecured property taxes reflected in the Title Report.  All real property taxes owed

8  will be paid in full through escrow.  *See* Goodrich Decl.

9  **III.    TERMS OF THE PROPOSED SALE**

10  Giuliana Vista GP, a California General Partnership ("Buyer"), has offered to

11  purchase the Property, and the Debtor has accepted that offer.  The salient terms of the

12  sale are as follows:

13  1.    The purchase price ("Purchase Price") is $236,000.00;

14  2.    The Buyer has made an initial deposit of $7,080.00 ("Deposit") which

15  is held by A&A Escrow Services, Inc. ("Escrow").  The Deposit is refundable to the

16  Buyer only in the event the Bankruptcy Court accepts a third party overbid or does

17  not approve the Purchase Agreement for reasons not attributable to the Buyer.

18  The Debtor shall retain the Deposit as liquidated damages if the Bankruptcy Court

19  approves the sale and the Buyer defaults under the Purchase Agreement;

20  3.    The balance of the Purchase Price shall be tendered upon Close of

21  Escrow (as defined in the Purchase Agreement);

22  4.    The sale is as is, where is, with all faults, without warranty or

23  recourse, but free and clear of any and all liens, claims, and interests, together with

24  all improvements, as well as all easements and appurtenances pursuant to

25  11 U.S.C. §§ 363(b) and  (f);

26  5.    The sale is subject to approval of the Bankruptcy Court; and

27  6.    The sale is subject to overbids.

28

4894-5608-4103.1                                7                                MOTION

The complete terms of the proposed sale are set out in the *California Residential Purchase Agreement and Joint Escrow Instructions, Counter-Offer* and *Addendum to Counter Offer Dated July 17, 2023* (together, "Purchase Agreement") attached as **Exhibit 5**. *See* Goodrich Decl.

## IV.    PROPOSED OVERBID PROCEDURES

### A.    Overbid Procedures

The Debtor proposes the following procedure to allow for overbids prior to the Court's approval of the sale of the Property to ensure that the Property is sold for the best possible price:

1.    Qualifying bidders ("Qualifying Bidder") shall:

    a.    Bid at least $246,000.00 in cash for the Property;

    b.    Set forth in writing the terms and conditions of the offer that are at least as favorable to the Debtor as those set forth in the Purchase Agreement attached as **Exhibit 5**;

    c.    Be financially qualified, in the Debtor's exercise of its sound business judgment, to close the sale as set forth in the Purchase Agreement;

    d.    Submit an offer that does not contain any contingencies to closing the sale, including, but not limited to, financing, inspection, or repair contingencies;

    e.    Submit a cash deposit in the amount of $17,080.00 ($7,080.00 deposit plus $10,000.00) ("Overbid Deposit") payable to David M. Goodrich, Chief Restructuring Officer for 2nd Chance Investment Group, LLC, in the form of a cashier's check, which Overbid Deposit shall be non-refundable if the bid is deemed to be the Successful Bid, as defined in paragraph 4 below.  The Overbid Deposit, written offer, and evidence of financial qualification must be delivered to the CRO (at 3070 Bristol Street, Suite 640, Costa Mesa, California 92626) by no later than **4:00 p.m**., Pacific Standard

Time, two business days before the hearing on this Motion ("Overbid Deadline").  In its absolute and sole discretion, the Debtor shall have the right to accept additional overbids submitted prior to the hearing but after the Overbid Deadline.

2.      At the hearing on the Motion, only the Buyer and any party who is deemed a Qualifying Bidder shall be entitled to bid.

3.      Any incremental bid in the bidding process shall be at least $5,000.00 higher than the prior bid.

4.      At the hearing on the Motion and upon conclusion of the bidding process, the Debtor shall decide, subject to Court approval, which of the bids is the best bid, and such bid shall be deemed to be the "Successful Bid."  The bidder who is accepted by the Debtor as the successful bidder ("Successful Bidder") must pay all amounts reflected in the Successful Bid in cash at the closing of the sale.  At the hearing on the Motion, and upon conclusion of the bidding process, the Debtor may also acknowledge a back-up bidder ("Back-Up Bidder") which shall be the bidder with the next best bid.  Should the Successful Bidder fail to close escrow on the sale of the Property, the Debtor may sell the Property to the Back-Up Bidder without further Court order.

5.      Overbids shall be all cash and no credit shall be given to the purchaser or overbidder(s).

6.      Upon the conclusion of the auction, any Overbid Deposits, other than the deposits submitted by the Successful Bidder and the Back-Up Bidder, will be promptly returned.  The deposit of the Back-Up Bidder will be returned promptly following the close of escrow for the sale of the Property to the Successful Bidder.

## V.    ARGUMENT

### A.    Legal Standard for Approving Sales Under §363(b)

Section 363(b) of the Bankruptcy Code empowers a trustee to "use, sell or lease . . . other than in the ordinary course of business, property of the estate."    In

1  considering a proposed transaction to use, sell, or lease, courts look at whether the

2  transaction is in the best interests of the estate based on the facts and history of the case.

3  *In re American West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel*

4  *Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business

5  justification" for the proposed transaction.  *In re 240 North Brand Partners, Ltd.*, 200 B.R.

6  653 (9th Cir. B.A.P. 1996); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D.

7  Cal. 1991); *In re Ernst Home Center, Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997).

8
9
10
11

> In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e., it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith and that it is an 'arms-length' transaction.

12  *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re 240*

13  *North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. B.A.P. 1996).  A bankruptcy court's

14  power to authorize a sale under § 363(b) is reviewed for abuse of discretion.  *In re Walter*,

15  83 B.R. 14, 19 (9th Cir. B.A.P. 1988).

16     The paramount goal in any proposed sale of property of the estate is to maximize

17  the proceeds received by the estate.  *See e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d

18  558, 564-65 (8th Cir. 2010) (in bankruptcy sales, "a primary objective of the Code [is] to

19  enhance the value of the estate at hand"); *In re Integrated Resources, Inc.*, 147 B.R. 650,

20  659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . .

21  . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall

22  benefit possible for the estate.") (quoting *Cello Bag Co. Inc. v. Champion Int'l Corp. (In re*

23  *Atlanta Packaging Prods., Inc.*) 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)); *995 Fifth Ave.,*

24  *Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).  As long as the sale appears to enhance

25  a debtor's estate, court approval of a trustee's decision to sell should only be withheld if

26  the trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions

27  of the Bankruptcy Code.  *In re Lajijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *GBL*

28  *Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re*

1 | *WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to

2 | administer the estate, including authority to conduct public or private sales of estate

3 | property.  Courts have much discretion on whether to approve proposed sales, but the

4 | trustee's business judgment is subject to great judicial deference.").

5 | **B.    The Sale Should Be Approved Because It Is Supported By A Good**

6 | **Business Justification and Is In the Best Interest of the Estate**

7 | Here, the proposed transaction has a legitimate business justification and is in the

8 | best interest of the Estate because it will generate proceeds for the benefit of the creditors

9 | of the Estate.  The Purchase Price represents market value.  *See* Porter Decl.  Notice of

10 | the sale is being provided to all creditors, and the Debtorr has proposed an overbid

11 | procedure to ensure the Debtor's estate receives the highest and best price for the

12 | Property at the hearing.  After payment of real estate taxes, liens, brokers' commissions,

13 | and costs of sale, the Debtor estimates that the sale will generate approximately

14 | $54,000.00 for the benefit of the Estate, plus an additional amount to pay costs of sale.

15 | Accordingly, the Debtor believes that the proposed sale is fair and reasonable and within

16 | the proper exercise of its business judgment.  *See* Goodrich Decl.

17 | **C.    The Price is Reasonable Based Upon the Debtor's Marketing Efforts**

18 | In April 2023, the Debtor listed the Property for sale at $236,000.00.  Mr. Porter has

19 | received and responded to numerous inquiries from agents and potential buyers and has

20 | shown the Property at least eight times.  The Debtor has received three offers to purchase

21 | the Property.  The Buyer's offer is the highest and best offer received.  *See* Porter Decl.

22 | Based upon the Debtor's marketing efforts and the length of time on the market, the

23 | Buyer's offer is fair and reasonable.  As such, the price is reasonable under the

24 | circumstances.

25 | **D.    The Sale is Made in Good Faith**

26 | "Good faith encompasses fair value, and further speaks to the integrity of the

27 | transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal.

28 | 1991) (internal quotation marks omitted).  Bad faith includes collusion between buyer and

1    seller or otherwise taking unfair advantage of other potential purchasers, such as a

2    collusive insider transaction.; *id.*; see also *In re Indus. Valley Refrigeration & Air*

3    *Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).

4        The sale of the Property was negotiated at arms' length.  There is no fraud,

5    collusion, or insider transactions present here, and the Buyer received no special

6    treatment or consideration.  There is no connection or relation between the Debtor and the

7    Buyer, or the CRO and the Buyer.  Moreover, the Property has been actively marketed,

8    the sale will be properly publicized on the Bankruptcy Court's website, and the Debtor

9    intends to further market the property pending a hearing on this Motion.  In short, the

10   Debtor has accepted the highest and best offer. As a result, the sale is made in good faith.

11   **E.      The Debtor May Sell the Property Free and Clear of Liens, Claims, and**

12   **Interests**

13       The Debtor seeks this Court's authority to sell the Property free and clear of liens

14   pursuant to 11 U.S.C. §§ 363(b) and (f) of the Bankruptcy Code.  Section  363(b) of the

15   Bankruptcy Code provides that:

16           [t]he trustee, after notice and a hearing, may use, sell, or
             lease, other than in the ordinary course of business, property
17           of the estate.

18   In addition, 11 U.S.C. § 363(f) provides that:

19           [t]he trustee may sell property. . . free and clear of any interest
             in such property of an entity other than the estate, only if _. . .
20           (1)    applicable nonbankruptcy law permits sale of
                    such property free and clear of such interest;. . .
21           (2)    such entity consents;. . .
             (3)    such interest is a lien and the price at which such
22                  property is to be sold is greater than the
                    aggregate value of all liens on such property;
23           (4)     such interest is in bona fide dispute; or
             (5)    such entity could be compelled, in a legal or
24                  equitable proceeding, to accept a money
                    satisfaction of such interest.
25
26       Because subsections (1) through (5) of Bankruptcy Code  § 363(f)  are written in

27   the disjunctive, authority to sell the Property free and clear of any and all interests therein

28   should be granted if, with respect to each lien holder, any of the conditions are met.

4894-5608-4103.1                              12                              MOTION

**1.      The Sale Should Be Free and Clear Under § 363(f)(1)**

Under §363(f)(1), estate property may be sold free and clear of certain liens, claims and interest if applicable nonbankruptcy law permits a sale free and clear of such interest. §363(f)(1).

Here, the lien California TD Specialists (LMF 2, LP) will be paid in full.  Because the lien will be satisfied in full, the sale should be approved free and clear of the liens. Section 363(f)(1) is satisfied as to this lien.

**2.      The Sale Should Be Free and Clear Under §363(f)(2)**

As noted above, a proposed sale of estate property can be approved by the Court under §363(f)(2) where an entity consents.  §363(f)(2).

The Debtor intends to notify all interested parties through the notice of the Motion. Any party objecting to the sale may file their objection and be heard at the hearing on the Motion. If there is no objection, the parties will be deemed to have consented to the sale of the Property. *See Veltman v. Whetzal*, 93 F.3d 517 (8th Cir. 1996) (failure to object to proposed sale, coupled with agreement authorizing sale free of interest, constituted consent); *In re Tabore, Inc.*, 175 B.R. 855 (Bankr. D. N.J. 1994) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of § 363); *In re Shary*, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to object to transfer of liquor license constituted consent to sale). Thus, pursuant to §363(f)(2), the Debtor may sell the Property free and clear of any lien, claim or interest of entities who fail to object because the noticed parties will be deemed to have consented to the sale of the Property if they make no objection to the sale.  The Lis Pendens has been released.  A withdrawal of the Lis Pendens was signed and recorded on or about October 5, 2023.

**3.      The Sale Should Be Free and Clear of all Liens and
Encumbrances Pursuant to Section 363(f)(3)**

The Purchase Price exceeds the value of all encumbrances against the Property. The California TD Specialists lien and any real property taxes are undisputed unless the payoff demands contain fees, costs, or interests that appear unsubstantiated.

**F.**    **Tax Consequences**

Grobstein Teeple LLP, the Debtor's financial advisor, has prepared a property gain and tax analysis and has advised the Debtor that the capital gains from the sale are estimated to be $71,881.00.  The total Federal and state tax on the capital gains is estimated to be $22,087.00.  The estimated capital gains taxes will be paid by the Debtor's principals, Rayshon and Sonja Foster, as the Debtor passes through all income to its principals.  Rayshon Foster owns 52% of the Debtor and will be allocated 52% of the capital gains taxes. Sonja Foster owns 48% and will be allocated 48% of the capital gains taxes. *See* **Exhibit 6**.

**G.**    **Adequate Notice of the Sale is Proper**

The Debtor proposes to provide notice of the sale to be posted by the Clerk's Office and to serve notice of the sale on the Office of the United States Trustee, all creditors, all potential overbidders, and all other parties receiving ECF and special notice in this case. The Agents will also post the overbid procedures on the MLS.  Further, the Property is subject to overbid, and the ability of other potentially interested parties to provide competing offers for the Property ensures that the proposed sale will not result in a lucrative "windfall" to the Buyer at the expense of creditors of the Estate.  *See In re Onouli Kona Land Co.*, 846 F.2d 1170 (9th Cir. 1988).

**H.**    **Waiver of the Fourteen-Day Period for Effectiveness of the Sale Order**

Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FRBP 6004(h).  The legislative history to Rule 6004 provides:

> The court may, in its discretion, order that Rule 6004(g) [now 6004(h)] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court.

1    Alternatively, the court may order that the stay under Rule 6004(g)

2    [now 6004(h)] is for a fixed period less than 10 [now 14] days.

3    Given the notice and full opportunity to object, respond, or participate in overbid

4    procedures presented by this Motion, the Debtor believes that, unless there are objections

5    to the Motion that are not consensually resolved, it is appropriate and good cause exists

6    for the Court to order that Rule 6004(h) is not applicable, and the Property may be sold

7    immediately. Accordingly, the Debtor requests that the Court authorize the sale to be

8    effectuated immediately upon entry of the order approving this Motion.

9    **I.        The Buyer Should Be Deemed a "Good Faith Purchaser" Pursuant to**

10    **11 U.S.C. § 363(m)**

11    Section  363(m) of the Bankruptcy Code provides:

12    The reversal or modification on appeal of an authorization under
    subsection (b) or (c) of this section of a sale or lease of property

13    does not affect the validity of a sale or lease under such
    authorization to an entity that purchased or leased such property

14    in good faith, whether or not such entity knew of the pendency of
    the appeal, unless such authorization and such sale or lease

15    were stayed pending appeal.

16    A good faith buyer "is one who buys 'in good faith' and 'for value.'"  *Ewell v. Diebert*

17    *(In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of*

18    *Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically]

19    shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an

20    attempt to take grossly unfair advantage of other bidders.'" *Id.* (quoting *Community Thrift*

21    *& Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

22    Here, the Buyer is buying in good faith and has agreed to pay market value for the

23    Property.  The anticipated sale of the Property has been negotiated with the Buyer in

24    "arms'-length" discussions.  *See* Goodrich Decl.  Moreover, the Buyer has no connections

25    to the Debtor, the CRO, the Court, or the Office of the United States Trustee.  Finally, the

26    sale is subject to overbid and all parties-in-interest are permitted, subject to certain

27    conditions, to bid.  Based on such facts and circumstances, the Debtor believes that this

28    Court should find the Buyer is a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

1
2

**J.      The Bankruptcy Court Has the Authority to Implement the Proposed**

**Overbid Procedures**

3      Implementation of the bidding procedures is an action outside of the ordinary

4   course of business.  11 U.S.C. § 363(b)(1) provides that a trustee "after notice and

5   hearing, may use, sell or lease, other than in the ordinary course of business, property of

6   the estate."  Furthermore, under 11 U.S.C. § 105(a), "[t]he court may issue any order,

7   process, or judgment that is necessary or appropriate to carry out the provisions of this

8   title."  Thus, pursuant to §§ 363(b)(1) and  105(a),  this Court may authorize the

9   implementation of overbidding procedures. The bankruptcy court may issue orders

10  determining the terms and conditions for overbids with respect to a sale of estate assets,

11  including specifying the minimum consideration required for an overbid, the particular

12  contractual terms required to be offered by overbidders, and requiring and setting the

13  amount of potential overbidder's deposits.  *In re Crown Corporation*, 679 F.2d 774 (9th

14  Cir. 1982).

15     Here, the overbid procedures proposed by the Debtor are fair and reasonable

16  under the circumstances.  Additionally, the proposed overbid procedures will ensure the

17  sale of generates the greatest possible value to the Debtor's estate.  Accordingly, the

18  proposed overbidding procedures should be approved by the Court.

19     **K.      The Broker Commission Should Be Approved**

20     Real estate brokers are "professionals" for purposes of section § 327 of the

21  Bankruptcy Code and, as such, their employment must be approved by the court.  *In re*

22  *Cummins*, 15 B.R. 893, 895 (B.A.P. 9th Cir. 1981).

23     The employment of the Co-Brokers and the Agents was approved by the Court

24  under §328.  If the sale is consummated, the Co-Brokers and the Agent will have

25  performed a valuable service for the Estate.  Accordingly, the commission arrangement as

26  outlined in this Motion is reasonable, should be approved by the Court and payment

27  should be authorized out of escrow in lieu of the requirement of a fee application.

28

**L.    Estimated Benefit to the Estate**

The Debtor estimates the Estate will receive net proceeds of $54,343.22 from the sale of the Property, plus an additional amount to cover the Estate's closing costs.  Based on anticipated net sale proceeds from the Property and other properties the Debtor intends to sell, the Debtor estimates a meaningful distribution will be made to creditors of the Debtor's estate if the Property is sold.

Upon close of escrow, the Estate shall receive funds from the sale as follows:

| | |
|---|---|
| Purchase Price | $236,000.00 |
| Payoff to CA TD Specialists | (155,998.95) |
| Brokers Commission | (14,160.00) |
| Title, taxes, NHD report, recording charges | (10,172.83) |
| Escrow charges | (1,325.00) |
| Net proceeds: | $54,343.22 |

The seller's estimated settlement statement ("Settlement Statement") prepared by Escrow is attached as **Exhibit 7**.

**VI.    CONCLUSION**

Based on the foregoing, the Debtor respectfully requests that this Court find that:

A.    Notice of the Motion was proper and adequate;

B.    The Debtor's marketing of the Property was adequate and proper;

C.    The standards set forth in 11 U.S.C. §§ 363(b) and (f)(1), (2) or (3) for selling the Property free and clear of all liens, claims and interests, including all leasehold interests, have been satisfied;

D.    The Property is property of the Estate;

E.    Giuliana Vista GP ("Buyer") has acted in good faith and is entitled to the protections of 11 U.S.C. § 363(m); and

F.    Cause exists to grant the Motion.

4894-5608-4103.1                    17                    MOTION

1    The Debtor respectfully requests that this Court enter an order as follows:

2    1.    The notice of the Motion and the hearing thereon is approved as proper and

3    adequate under the circumstances.

4    2.    The Motion is granted and the sale to Buyer is approved as the highest and

5    best offer.

6    3.    The Property is property of the Estate and the Debtor is authorized to sell

7    the Property to Buyer pursuant to 11 U.S.C. §§ 363(b) and (f) "as is," "where is," "with all

8    faults," and without warranty or recourse, but free and clear of any and all liens, claims,

9    and interests, together with all improvements, as well as all easements and

10   appurtenances, pursuant to 11 U.S.C. § 363(b) and (f), for the purchase price of

11   $236,000.00, and in accordance with the terms and conditions that are set forth in the

12   Purchase Agreement which is attached to the Motion.

13   4.    The Debtor is authorized to pay the following undisputed liens or claims at

14   closing of the sale:

15   (i)  the California TD Specialists lien recorded on June 7, 2022, as

16   instrument no. 2022-89912 of official records (substituted by instrument no. 2022-

17   158302) shall be paid in full as of the date of the closing of the sale.

18   5.    Pursuant to Sections 363(f)(1) and/or (f)(2) of the Bankruptcy Code, effective

19   upon closing, the sale of the Property will vest in Buyer all right, title and interest of the

20   Debtor and the bankruptcy estate in the Property, free and clear of the following:

21   -    Lis Pendens recorded on December 19, 2022 as instrument no.

22   20221181203 in Riverside County, California.

23   6.    Unless the holder of the liens, claim or interests identified in paragraph 5

24   above has agreed to other treatment, such lien, claim or interest, to the extent such lien,

25   claim or interest has not been extinguished by this Order, shall attach to the proceeds of

26   the sale with the same force, effect, validity and priority that previously existed against the

27   Property.

28

4894-5608-4103.1

MOTION

7.      The Order is and shall be effective as a determination that, upon and subject to the occurrence of the closing of the sale, the Lis Pendens has been and hereby is adjudged and declared to be unconditionally released as to the Property.

8.      The Debtor, , and any escrow agent upon the Debtor's written instruction, shall be authorized to make such disbursements on or after the closing of the sale as are required by the Purchase Agreement or order of this Court, including, but not limited to, (a) real property taxes and assessments pro rated as of the closing with respect to the Property; (b) the broker's commission; and (c) any escrow fees, title insurance premiums and other ordinary and typical closing costs and expenses payable by the Debtor pursuant to the Purchase Agreement or in accordance with local custom.  The sales proceeds remaining after payment of these items shall constitute the net sale proceeds ("Net Proceeds").  The Net Proceeds will not be disbursed without further order of this Court.

9.      The CRO is authorized to execute the Purchase Agreement, or other related documents that are reasonably necessary or appropriate to complete the sale, and to undertake such other actions as may be reasonably necessary or appropriate to complete the sale.

10.      The Debtor reserves the right to object to the validity, scope and priority of any disputed liens, claims and interest that have been or will be asserted against the Property.

11.      The Buyer is approved as a buyer in good faith in accordance with Section 363(m) of the Bankruptcy Code, and the Buyer shall be entitled to all protections to Section 363(m) of the Bankruptcy Code.

12.      This Order shall be effective immediately upon entry.  No automatic stay of execution, pursuant to Rule  62(a) of the Federal Rules of Civil Procedure, or Bankruptcy Rules 6004(h) or 6006(d), applies with respect to this Order.

13.      This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the documents executed in connection

1  therewith in all respects, including retaining jurisdiction to (a) compel delivery of the

2  Property to the Buyer, (b) resolve any disputes arising under or related to the Purchase

3  Agreement, and (c) resolve any disputes regarding liens, claims, or interests asserted

4  against the Property.

5      14.    The Purchase Agreement and any related documents or other instruments

6  may be modified, amended or supplemented by the parties thereto, in a writing signed by

7  both parties without further order of the Court, provided that any such modification,

8  amendment or supplement does not have a material adverse effect on the Estate.

9      15.    The Debtor may retain, as the Estate's liquidated damages, the deposit of

10  the Buyer should the Purchase Agreement be cancelled by the Buyer or, alternatively, the

11  Debtor may return the Buyer's deposit, at the Debtor's discretion.

12      16.    To the extent there is any tax liability to the Estate from the sale of the

13  Property, the Debtor's principals are authorized to pay capital gains taxes.

14      17.    The overbidding procedures in the Motion are approved.

15      18.    For such other and further relief as the Court may deem just and proper.

16

17                                    Respectfully submitted,

18  Dated:  October 30, 2023          FINANCIAL RELIEF LAW CENTER, APC

19

20                             By:    _____
                                      ANDY WARSHAW
21                                    RICH STURDEVANT
                                      General Counsel for 2nd Chance
22                                    Investment Group, LLC

23

24

25

26

27

28

## DECLARATION OF DAVID M. GOODRICH[4]

I, David M. Goodrich, declare as follows:

1.      I am Chief Restructuring Officer ("CRO") of 2nd Chance Investment Group, LLC, the debtor and debtor-in-possession in the above-captioned case ("Debtor").  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated, and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Motion for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant 11 U.S.C. §§ 363(b) and  (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); (4) Authorizing Payment of Undisputed Liens, Real Estate Broker's Commissions, and Other Ordinary Costs of Sale; and (5) Waiving Stay Under Rule 6004(h)* ("Motion").

2.      Attached as **Exhibit 1** is a true and correct copy of the relevant portion of Amended Schedule A/B and Schedule D.

3.      Attached as **Exhibit 2** is a true and correct copy of the Co-Broker Order.

4.      Attached as **Exhibit 3** is a true and correct copy of the Title Report.

5.      Attached as **Exhibit 4** is a true and correct copy of the Claims Register.

6.      I seek approval of the proposed Purchase Agreement, a true and correct copy of which is attached as **Exhibit 5**.  Escrow is holding the proposed Buyer's Deposit.

7.      The lien of California TD Specialists as well as property taxes are undisputed.

8.      I am informed that a withdrawal of the Lis Pendens was signed and recorded on or about October 5, 2023.

9.      A true and correct copy of the Settlement Statement is attached as **Exhibit 7**.

---

[4] All capitalized terms have the same meaning or definition as the capitalized terms in the Motion.

1    10.    I believe the proposed sale is fair and reasonable, within the proper exercise

2   of the Debtor's business judgment, and is in the best interest of the Estate. Based on the

3   Agents' advice, I believe the Buyer is offering fair market value for the Property. The

4   anticipated sale of the Property has been negotiated in good faith with the Buyer in "arms'-

5   length" discussions. I have no relationship with the Buyer. Moreover, the sale will be

6   conducted in a commercially reasonable manner following appropriate notice, with an

7   opportunity for overbids.

8    11.    At my request, Grobstein Teeple LLP, the Debtor's financial advisor, has

9   prepared a property gain and tax analysis and has advised the Debtor that the capital

10  gains from the sale are estimated to be $71,881.00. The total Federal and state tax on

11  the capital gains is estimated to be $22,087.00. The estimated capital gains taxes will be

12  paid by the Debtor's principals, Rayshon and Sonja Foster, as the Debtor passes through

13  all income to its principals. Rayshon Foster owns 52% of the Debtor and will be allocated

14  52% of the capital gains taxes. Sonja Foster owns 48% and will be allocated 48% of the

15  capital gains taxes. A true and correct copy of the gain and tax analysis is attached as

16  **Exhibit 6**.

17   12.    The Debtor reserves the right to object to the validity, scope and priority of

18  any disputed liens, claims and interest that have been or will be asserted against the

19  Property.

20   13.    I am informed that the sale of the Property will generate approximately

21  $54,000.00 for the benefit of the Estate plus an additional amount to pay costs of sale.

22   14.    All real property taxes owed will be paid in full through escrow.

23   I declare under penalty of perjury that the foregoing is true and correct.

24   Executed on this 27th day of October, 2023, at Costa Mesa, California.

25

26   David M. Goodrich

27

28

**DECLARATION OF WILLIAM FRIEDMAN**

I, William Friedman, declare:

1.    I am a California-licensed real estate agent with Coldwell Banker ("Broker"), one of the brokers employed by 2nd Chance Investment Group, LLC, to market and sell the real property located at 1016 Portal Ave., Bakersfield, CA 93308 (the "Property"). I make this declaration in support of the foregoing motion. Each of the following facts is of my own knowledge, and if called upon and sworn as a witness, I could and would competently testify thereto.

2.    I am informed and believe that on April 13, 2023, the order authorizing the employment of the Broker by the estate was entered.

3.    Since the approval of Broker's employment, I have actively marketed the Property. The Property was listed and placed on Coldwell Banker's website. I will update such listing with the sale hearing information.

4.    I prepared the currently accepted counteroffer. I communicated with several potential buyers and brokers to explain the bankruptcy overbid process.

5.    My co-broker's and my efforts resulted in the offer for the Property from Giuliana Vista GP in the amount of $236,000 which is being submitted for the Court's approval.

6.    I will continue to market the Property through the hearing date so as to maximize the price ultimately received by the estate from the sale of the Property, which will include publishing the date, time, and location of the overbid hearing on the Coldwell Banker's website so as to provide information to encourage overbidding.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on September 22, 2023, at Santa Monica, California.


WILLIAM FRIEDMAN

23

## <u>DECLARATION OF GLENN PORTER</u>

I, Glenn Porter, declare:

1.      I am a California-licensed real estate broker with RE/MAX Golden Empire ("Broker"), one of the brokers employed by 2nd Chance Investment Group, LLC, to market and sell the real property located at 1016 Portal Ave., Bakersfield, CA 93308 (the "Property").  I make this declaration in support of the foregoing motion.  Each of the following facts is of my own knowledge, and if called upon and sworn as a witness, I could and would competently testify thereto.

2.      I am informed and believe that on April 13, 2023, the order authorizing the employment of the Broker by the estate was entered.

3.      Since approval of Broker's employment and receipt of signed listing agreement, I have actively marketed the Property. The Property was listed on the Golden Empire Multiple Listing Service in Bakersfield, CA, Keller Williams International site, teammomentumrealestate.com, my office's Google Business pages, and syndicated to a large number of internet and landing page sites like CrisNet MLS, GAVAR MLS, Zillow.com, Realtor.com, Homelight, Redfin, Trulia, Movoto, Estately, and many other aggregation websites specializing in the promulgation of Real Estate listings. As of today, we have had more than 1250 views on my team's website in addition to other sites as named above.

4.       The property has been available for in person showings, and our team showed the property to 8 potential buyers. I received offers for purchase from three potential buyers.

5.      My efforts resulted in the offer for the Property from St Clair Realty, and Frank St Clair  ("Buyer") in the amount of $236,000 which is being submitted for the Court's approval. I do not anticipate having any overbidders present at the sale hearing as the other offers were lower and they did not want to increase their offer.

6.      I will continue to market the Property through the hearing date to maximize the price ultimately received by the estate from the sale of the Property, and it is currently listed as "pending backup", meaning we are seeking back up offers.

1

2   I declare under penalty of perjury under the laws of the United States of America that

3 the foregoing is true and correct and that this Declaration was executed on September 25,

4 2023, at Bakersfield, California.

5

6

7

8                _____

9                  GLENN PORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DECLARATION OF FRANK ST. CLAIR**

2

3      I, Frank M. St. Clair, hereby declare and state as follows:

4      1.      I know each of the following facts to be true of my own personal knowledge

5  except as otherwise stated and, if called as a witness, I could and would competently

6  testify with respect thereto.

7      2.      I am the authorized signer for Giuliana Vista GP, proposed buyer for the real

8  property located at 1016 Portal Avenue, Bakersfield, California 93308 ("Property").

9      3.      I have no connection or relationship with David M. Goodrich, Chief

10  Restructuring Officer of 2nd Chance Investment Group, LLC.  Until I entered into

11  negotiations with the CRO to purchase the Property, I had never met or heard of Mr.

12  Goodrich.

13      4.      I am not a creditor of 2nd Chance Investment Group, LLC, the Honorable

14  Scott C. Clarkson or Peter Anderson.

15      5.      I have negotiated the purchase of the Property from the Debtor in good faith.

16  I have not colluded with anyone regarding the purchase of the Property.

17      I declare under penalty of perjury that the foregoing is true and correct.

18      Executed on this 23 day of October, 2023, at _Bakersfield_, California.

19

20

Frank St. Clair

21

22

23

24

25

26

27

28

4894-5608-4103.1                                26                                MOTION

# Exhibit 1

| Debtor | 2nd Chance Investment Group, LLC | | Case number (if known) | 8:22-bk-12142 |
|---|---|---|---|---|
| | Name | | | |

| | | | | |
|---|---|---|---|---|
| 55.8. | 8607 Custer Rd SW Lakewood WA 98499 | Fee simple | $0.00 | $426,000.00 |
| 55.9. | 827 N Meridian Ave. San Bernardino CA 92410 | Fee simple | $0.00 | $460,000.00 |
| 55.10. | 730 E 78th St Los Angeles CA 90001 | Fee simple | $0.00 | $685,000.00 |
| 55.11. | 1611 151st St. San Leandro CA 94578 | Fee simple | $0.00 | $691,000.00 |
| 55.12. | 1016 Portal Ave. Bakersfield CA 93308 | Fee simple | $0.00 | $240,000.00 |
| 55.13. | 37915 Marsala Dr. Palmdale CA 93552 | Fee simple | $0.00 | $410,000.00 |
| 55.14. | 3122 Emery Lane, Robbins, IL | Fee simple | $0.00 | $50,000.00 |

56. **Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$6,280,000.00

57. **Is a depreciation schedule available for any of the property listed in Part 9?**
   ■ No
   ☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
   ■ No
   ☐ Yes

**Part 10:** Intangibles and intellectual property

59. **Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61. **Internet domain names and websites** www.homebuyersca.com | $0.00 | | $0.00 |

Official Form 206A/B  Schedule A/B Assets - Real and Personal Property  page 4

Exhibit 1, Page 27

Debtor **2nd Chance Investment Group, LLC**                    Case number (if known) _____
         Name

---

| 2.8 | **FCI** | | | Describe debtor's property that is subject to a lien | $510,000.00 | $735,000.00 |

**2.8 FCI**
Creditor's Name

**8180 E Kaiser Blvd
Anaheim, CA 92808**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
7/14/22**
Last 4 digits of account number

**Do multiple creditors have an
interest in the same property?**
☒ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

Describe debtor's property that is subject to a lien
**730 E 78th St Los Angeles CA 90001**

Describe the lien
**1st Deed of Trust**
Is the creditor an insider or related party?

☒ No
☐ Yes
Is anyone else liable on this claim?

☒ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

$510,000.00    $735,000.00

---

**2.9 FCI**
Creditor's Name

**8180 E Kaiser Blvd
Anaheim, CA 92808**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
5/18/22**
Last 4 digits of account number

**Do multiple creditors have an
interest in the same property?**
☒ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

Describe debtor's property that is subject to a lien
**1016 Portal Ave. Bakersfield CA 93308**

Describe the lien
**1st Deed of Trust**
Is the creditor an insider or related party?

☒ No
☐ Yes
Is anyone else liable on this claim?

☒ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

$127,000.00    $266,000.00

---

**2.10 FCI**
Creditor's Name

**8180 E Kaiser Blvd
Anaheim, CA 92808**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
6/6/22**

Describe debtor's property that is subject to a lien
**37915 Marsala Dr. Palmdale CA 93552**

Describe the lien
**1st Deed of Trust**
Is the creditor an insider or related party?

☒ No
☐ Yes
Is anyone else liable on this claim?

☒ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

$295,000.00    $492,000.00

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 4 of 8

# Exhibit 2

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Amanda G. Billyard 256838<br>Financial Relief Law Center, APC<br>1200 Main St., Suite C<br>Irvine, CA 92614<br>Phone: (714) 442-3349<br>Email: abillyard@bwlawcenter.com | **FILED & ENTERED**<br><br>**APR 13 2023**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY bolte        DEPUTY CLERK |
| ☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor in Possession | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – <u>SANTA ANA</u> DIVISION**

| In re: 2nd Chance Investment Group, LLC | CASE NO.: 8:22-bk-12142-SC |
|---|---|
| | CHAPTER: 11 |
| | **ORDER RE MOTION IN INDIVIDUAL CHAPTER 11 CASE TO AUTHORIZE DEBTOR-IN-POSSESSION TO EMPLOY A PROFESSIONAL OTHER THAN GENERAL COUNSEL**<br><br>**[11 U.S.C. § 327, LBR 2014-1]** |
| | ☒ **No Hearing: LBR 9013-1(o)(3)**<br>☐ **Hearing Information:**<br>DATE:<br>TIME:<br>COURTROOM:<br>ADDRESS: |
| Debtor(s). | |

1. The court has considered the Notice of Motion and Motion In Individual Chapter 11 Case for Order Authorizing Debtor-in-Possession to Employ General Counsel and File Interim Fee Applications using procedure in LBR 9013-1(o).

2. The Motion was:    ☐ Opposed    ☒ Unopposed    ☐ Settled by stipulation

3. Based upon the motion and supporting documents, and the findings and conclusions made at the hearing if a hearing was held, IT IS ORDERED THAT:

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

a.  ☒ The Motion is granted pursuant to  11 U.S.C. § 327 and the Debtor-in-Possession is
    authorized to employ:
    <u>Coldwell Banker (Broker) and Citrus Grove Real estate, 44 Realty, Keller Williams, and
    Remax  & Coldwell Banker Northern California (Co-Brokers) as of April 13, 2023. .</u>

b.  Broker and Co-Brokers will seek compensation pursuant to 11 U.S.C. ☐ §  328 or ☒ § 330

c.  ☐ The Motion is denied.

4.  ☐  Notwithstanding 11 U.S.C. § 331, General Counsel may file interim fee applications in this case
    _____ days apart;

5.  ☐  General Counsel may use the procedures set forth in LBR 9013-1(o) regarding Notice of
    Opportunity to Request Hearing when requesting approval of interim fee applications in this
    case; and

6.  ☐  Other (*specify*):

###

Date: April 13, 2023

Scott C. Clarkson
United States Bankruptcy Judge

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                                    Page 2                              **F 2081-**
**2.5.ORDER.EMPLOY.GEN.COUNSEL**                              Exhibit 2, Page 30

# Exhibit 3

# NOTICE

**PLEASE BE ADVISED THAT THE DATA AND INFORMATION FROM THE PUBLIC RECORDS CONTAINED HEREIN WILL NEED TO BE UPDATED PRIOR TO CLOSING AS MANY COUNTY FACILITIES ARE CLOSED OR HAVE LIMITED STAFFING AS A RESULT OF THE CORONAVIRUS PANDEMIC. IF THE INFORMATION FROM THE COUNTY IS NOT AVAILABLE THERE WILL BE ADDITIONAL REQUIREMENTS IN ORDER TO CLOSE AND INSURE THIS TRANSACTION. PLEASE CONTACT YOUR LOCAL TITLE OFFICER FOR DETAILS.**

Order No. 150-2355106-06



**Orange Coast Title Company**

1551 N. Tustin Ave., Suite 840
Santa Ana, CA 92705
714-822-3211

| | **PRELIMINARY REPORT** | |
|---|---|---|

A&A Escrow Services, Inc.
15250 Ventura Blvd., Suite 715
Sherman Oaks, CA 91403

**Attention:**  Antonia Delgado  **Your no.:**  105744-AA
**Property address:**  1016 Portal Avenue, in an unincorporated area known as  **Order no.:**  150-2355106-06
Bakersfield, County of Kern, State of CA 93308.

**Dated:**  July 19, 2023

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of July 12, 2023 at 7:30 AM

Steve Fernando, Sr. Title Officer
Email: stevef@octitle.com
Ph: 714-822-3211
Fax: 714-822-3349

Page 1

Exhibit 3, Page 32

Order No. 150-2355106-06

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06)

**The Policy of Title Insurance, if issued, will be underwritten by:** Real Advantage Title Insurance Company
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of    TBD    Subject to any filed rate increases and/or changes in the liability.**


# Schedule "A"


**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee


**Title to said estate or interest at the date hereof is vested in:**

Advance Real Estate & Construction Solutions Corp, subject to paragraph no(s). 10 of Schedule B.


**The land referred to in this report is situated in an unincorporated area known as Bakersfield, the County of Kern, State of California, and is described as follows:**

Lot 44 in Tract No. 2170, in the County of Kern, State of California, as per Map recorded May 12, 1960, in Book 11, Page 84 of Maps, in the Office of the County Recorder of said County.

Excepting therefrom 98% of all oil, gas, petroleum, minerals and other hydrocarbon substances within or underlying said land, but without the right to the use of the surface of said land or any other portion thereof above a depth of 500 feet for the purpose of drilling for or developing all minerals, oil, gas and other hydrocarbon substances, provided however, that the grantors, their heirs or assigns shall have the right to develop such substances by slant drilling form locations on adjacent lands at depths of more than 500 feet and in such a manner as not to disturb the surface of said land or any improvements thereon, as reserved in Deed from Maurice Orloff et al, dated August 21, 1958 and recorded September 16, 1958 in Book 3007, Page 378 of Official Records.


Assessor's Parcel Numbers(s):  117-222-13-00-7

Exhibit 3, Page 33

Order No. 150-2355106-06

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1   General and Special taxes for the fiscal year 2022-2023, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$2,705.01** |
| 1st installment | **$1,352.51**, Delinquent |
| Penalty | **$135.25** (after 12/12/2022) |
| 2nd installment | **$1,352.50**, Delinquent |
| Penalty | **$145.25** (after 04/10/2023) |
| Code area | 121-022 - Unincorporated |
| Parcel No. | **117-222-13-00-7** |
| Exemption | $7,000.00 |

2   NOTE:  DEFAULTED TAX shown below:

Delinquent Tax Year(s) and Installment(s): 2022/Both - Regular
Total Amount to redeem if paid by:
      July 2023, $3,041.08
      August 2023, $3,081.65
      September 2023, $3,122.22

3   The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the State of California

4   Prior to close this company will require the Tax Collector's Office be contacted to verify open and delinquent taxes.

5   An easement for public utilities as shown on the map of said tract affects: rear 5 feet of said land recorded in Book 11, Page(s) 84, of Maps.

6   An easement for purposes herein stated, as shown on or dedicated by the map of said tract

| | |
|---|---|
| For : | guy easement and incidental purposes |
| Affects : | 5 feet wide as shown on said Tract map of said land |
| Recorded: | in Book 11, Page(s) 84, of Maps. |

7   An easement for purposes herein stated, and rights incidental thereto as provided in an instrument

| | |
|---|---|
| Recorded: | 03/10/1959, as Instrument No. 1959-15717, Official Records. |
| For : | Lay, construct, reconstruct, replace, renew, repair, maintain, operate, change the size of, increase the number of and remove pipe lines, and appurtenance thereof, for the transportation of oil, petroleum, gas, gasoline, water or other substances, with the right of ingress and egress to and from the same and incidental purposes |
| In favor of : | Standard Oil Company of California, a Corporation and Standard Gasoline Company, a Corporation |
| Affects : | The location of said easement is set forth therein. |

Exhibit 3, Page 34

Order No. 150-2355106-06

8    Covenants, conditions and restrictions in an instrument recorded 06/13/1960, as Instrument No. 1960-33856, Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identify, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

"NOTE: Section 12956.1 (b)(1) of California Government Code provide the following: if this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

9    A Deed of Trust to secure the indebtedness of
Amount:                    **$140,000.00**
Trustor:                    **Advance Real Estate & Construction Solutions, Corporation a California Corporation**
Trustee:                    FCI Lender Services, Inc., a California Corporation
Beneficiary:                LMF 2, LP., a California Limited Partnership
Dated:                      05/18/2022
Recorded:                   **06/07/2022 as Instrument No. 2022-89912** of Official Records

The trustee in said Deed of Trust was substituted by an instrument
Recorded:                   10/21/2022 as Instrument No. 2022-158302, Official Records.
New trustee:                California TD Specialists

Notice of default under the terms of said Deed of Trust was
Recorded:                   10/21/2022 as Instrument No. 2022-158303, Official Records.

10   "The right of the vestee named in Schedule A, or his/her predecessors in interest, to cancel, avoid or rescind any deed or mortgage recorded subsequent to the Notice of Default recorded 10/21/2022, as Instrument No. 2022-158303, Official Records based on California Civil Code Sections 1695 et seq., or 2945 et seq."

11   The effect of a conveyance of said land
From:                       Advance Real Estate & Construction Solutions Corp
To:                         2nd Chance Investment Group, LLC, a California Limited Liability Company
Recorded:                   10/21/2022, as Instrument No. 2022-158437, Official Records.

Prior to close of this transaction we will require evidence of the validity of the above conveyance.  The documentation appropriate to establish the validity of said conveyance will vary according to circumstances.  Therefore this office must be contacted to determine what documentation will be acceptable to this company.
**An approved notary of any documentation must be utilized and coordinated by this office.**

12   An action commenced, notice of which
Recorded:                   12/16/2022 as Instrument No. 2022-185461 , Official Records
Court:                      Superior Court of California
Case no.:                   CVRI2204640
Judicial District:          Riverside
Plaintiff:                  Hiten Ram Bhakta, an individual; Sajan Bhakta, an individual; ASB Ventures, LLC, a California limited liability company; Precision Realty Fund, LLC, a Texas limited liability company
Defendant:                  2nd Chance Investment Group, LLC a California limited liability company, Rayshon Andrew Foster, an individual; Advance Real Estate & Construction Solutions, Corporation, a California Corporation; Sonja Foster, an individual; and Does 1 through 25, inclusive
Purpose of action:          This action affects title or possession to real property

Exhibit 3, Page 35

Order No. 150-2355106-06

13   An instrument, upon the terms and conditions contained therein
Entitled:                    Declaration of Substandard Property
Recorded:                    6/8/2023, as Instrument No., 223065743, Official Records.

14   Rights of parties in possession of said land by reason of unrecorded leases, if any.  Please forward said leases for our examination.

15   **Please note that all transactions involving a hard money or a private party loan will require underwriting approval prior to closing.  Please forward all closing documents as soon as possible.  Orange Coast Title will also require the following:**

1. Lender will need to confirm how borrower(s) were vetted and that they have met the borrower(s) in person.
2. We will require copies of two forms of identification from all individuals executing the loan documents.
3. All closing documents must be executed in escrow or in the presence of an Orange Coast Title employee or a Notary approved by Orange Coast Title AND an "Identity Verification and Notary Certification" must be filled out by the Notary involved in the signing (Form will be provided by Orange Coast Title).  We will require that the notary collect on Orange Coast Title's behalf, 2 forms of identification and provide a copy of the notary ledger with the thumbprint.  ANY DOCUMENTS NOTARIZED BY A NON-ORANGE COAST APPROVED NOTARY WILL NOT BE INSURED.
4. A Standard Policy be issued and standard pricing will apply.

**PLEASE NOTE THAT THE FOLLOWING EXCEPTION WILL APPEAR IN ALL LOAN POLICIES INVOLVING A "HARD MONEY" OR "PRIVATE MONEY" LENDER:**

"Any impairment, loss or failure of title to the beneficial interest of the insured in the mortgage insured by this policy resulting from:

(a) lack of possession on the original promissory note secured by the insured mortgage, or
(b) the absence from the original promissory note of a proper endorsement to the insured assignee.
(c) any claim, allegation or determination that the beneficial interest insured herein, or the underlying transaction   involves the sale of a Security and/or is in violation of State or Federal Security Laws.
(d) any interest or claim of interest by the mortgage company, servicing agent, or broker under the Insured Mortgage or Indebtedness."

16   (A) Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records;

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

(B) Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

(C) Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

(D) Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records

(E) (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records

(F) Any lien or right to a lien for services, labor or material theretofore or hereafter not shown by the public records.

**Exceptions A-F will be omitted on extended coverage policies.**

Page 5

17    This company will require the following in order to insure title in, or a conveyance or encumbrance from the entity named below.

Name:                            Advance Real Estate & Construction Solutions Corporation, a California Corporation

(a) A copy of the by-laws or articles of association (sometimes known as the "agreement" or "charter").

(b) A copy of the resolution of the association approving the present transaction and identifying the subject land. The resolution should also state that the transaction is necessary for the business purposes of the association and should name the parties who are authorized to execute documents for the association.

(c) Articles of incorporation

18    The requirement that we be provided:

(1) A copy of the filed articles of organization of 2nd Chance Investment Group, LLC, a California, a limited liability company.

(2) A current list of the names of said limited liability company members.

(3) A copy of said limited liability company's operating agreement, with a verified certificate that the operating agreement is a true and correct copy of the agreement now in effect.

**End of Schedule B**

Order No. 150-2355106-06

## "NOTES AND REQUIREMENTS SECTION"

**NOTE NO. 1**

California Revenue and Taxation Code Section 18662, effective January 1, 1994 and by amendment effective January 1, 2003, provides that the buyer in all sales of California Real Estate may be required to withhold 3 and 1/3% of the total sales price as California State Income Tax, subject to the various provisions of the law as therein contained.

**NOTE NO. 2 PAYOFF INFORMATION:**

Note: this company does require current beneficiary demands prior to closing.
If the demand is expired and a correct demand cannot be obtained, our requirements will be as follows:

A.      If this company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. The amount of this hold will be over and above the verbal hold the lender may have stipulated.

B.      If this company cannot obtain a verbal update on the demand, will either pay off the expired demand or wait for the amended demand, at the discretion of the escrow.

C.      In the event that a payoff is being made to a servicing agent for the beneficiary, this company will require a complete copy of the servicing agreement prior to close.

**NOTE NO. 3**

If this company is requested to disburse funds in connection with this transaction, chapter 598, statutes of 1989 mandates hold periods for checks deposited to escrow or sub-escrow accounts. The mandatory hold is one business day after the day deposited. Other checks require a hold period from three to seven business days after the day deposited.

### Notice Regarding Your Deposit of Funds

California Insurance Code Sections 12413 *et. Seq.* Regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow and sub-escrow accounts and be available for withdrawal prior to disbursement. Funds deposited with the Company by wire transfer may be disbursed upon receipt. Funds deposited with the Company via cashier's checks drawn on a California based bank may be disbursed the next business day after the day of deposit. If funds are deposited with by other methods, recording or disbursement may be delayed. All escrow and sub-escrow funds received by the Company will be deposited with other funds in one or more non-interest bearing escrow accounts of the Company in a financial institution selected by the Company. The Company and/or its parent company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and the Company shall have no obligation to account to the depositing party in any manner for the value of, or to pay such party, any benefit received by the Company and/or its parent Company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the Company and/or its parent company and earnings on investments made on the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the Company for its services in connection with the escrow or sub-escrow.  If funds are to be deposited with **Orange Coast Title Company**  by wire transfer, they should be wired to the following bank/account:

Wiring Instructions for This Office:

**Citizens Business Bank**
**301 Vanderbilt Way**
**San Bernardino, CA 92408**
**Account No. 245123027**
**ABA 122234149**
**Account name:  Orange Coast Title Company**
**Reference Order No.150-2355106-06**
**Steve Fernando, Title Officer**

**Note No. 4:**  The premium for the requested title work shall be split between the agent and underwriter 88%-12%.

Exhibit 3, Page 38

Order No. 150-2355106-06



# Orange Coast Title Company

1551 N. Tustin Ave., Suite 840
Santa Ana, CA 92705
714-822-3211

Coldwell Banker Realty
1608 Montana Avenue
Santa Monica, CA 90403

**Attention:**      **Bill Friedman**
**Borrower:**      **Giuliana Vista GP**

**Lenders supplemental report**

The above numbered report (including any supplements or amendments thereto) is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06) form as follows:

A.      This report is preparatory to this issuance of an American Land Title Association loan policy of title insurance. This report discloses nothing, which would preclude the issuance of said American land title association loan policy of title insurance with endorsement no. 100 attached thereto.

B.      The improvements on said land are designated as:

A single family residence

1016 Portal Avenue, in an unincorporated area known as Bakersfield, County of Kern, State of California.

C.      The only conveyance(s) affecting said land recorded within 24 months of the date of this report are as follows:

Grantor:            Shondra A. Spain, an unmarried woman and Carolyn Ann Spain, a married woman as her sole and separate property as joint tenants
Grantee:            Advance Real Estate & Construction Solutions Corp
Recorded:          6/13/1960 as Instrument No. 1960-33856, Official Records.

Grantor:            Advance Real Estate & Construction Solutions Corp
Grantee:            2nd Chance Investment Group, LLC, a California Limited Liability Company
Recorded:          10/21/2022 as Instrument No. 2022-158437, Official Records.

Page 8

Order No. 150-2355106-06

# Attention

Please note that this preliminary report now has an extra copy of the legal description on a separate sheet of paper. There are no markings on the page. The idea is to provide you with a legal description that can be attached to other documents as needed.  That legal description page immediately follows this page.

Thank you for your support of **Orange Coast Title Company**. We hope that this makes your job a little easier.

Exhibit 3, Page 40

**Exhibit "A"**

Lot 44 in Tract No. 2170, in the County of Kern, State of California, as per Map recorded May 12, 1960, in Book 11, Page 84 of Maps, in the Office of the County Recorder of said County.

Excepting therefrom 98% of all oil, gas, petroleum, minerals and other hydrocarbon substances within or underlying said land, but without the right to the use of the surface of said land or any other portion thereof above a depth of 500 feet for the purpose of drilling for or developing all minerals, oil, gas and other hydrocarbon substances, provided however, that the grantors, their heirs or assigns shall have the right to develop such substances by slant drilling form locations on adjacent lands at depths of more than 500 feet and in such a manner as not to disturb the surface of said land or any improvements thereon, as reserved in Deed from Maurice Orloff et al, dated August 21, 1958 and recorded September 16, 1958 in Book 3007, Page 378 of Official Records.

Order No. 150-2355106-06

# CLTA Preliminary Report Form – Exhibit B (06-03-11)

### CLTA STANDARD COVERAGE POLICY – 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured claimant; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02/03/10)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning: a. building, b. zoning, c.land use d. improvements on the Land, e.land division; and ,f. environmental protection. This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks: a. that are created, allowed, or agreed to by You, whether or not they recorded in the Public Records; b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date; c. that result in no loss to You; or d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e, 25, 26, 27, or 28.
5. Failure to pay value for Your Title.
6. Lack of a right: a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and b. in streets, alleys, or waterways that touch the Land. This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
• For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 10,000 |
| Covered Risk 18: | 1% of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| Covered Risk 19: | 1% of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| Covered Risk 21: | 1% of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 5,000 |

### ALTA RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning: * land use * improvements on the land * land division * environmental protection. This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date. This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless: * a notice of exercising the right appears in the public records * on the Policy Date * the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking
3. Title Risks: *that are created, allowed, or agreed to by you *that are known to you, but not to us, on the Policy Date -- unless they appeared in the public records *that result in no loss to you *that first affect your title after the Policy Date -- this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks.
4. Failure to pay value for your title.
5. Lack of a right: *to any land outside the area specifically described and referred to in Item 3 of Schedule A OR *in streets, alleys, or waterways that touch your land. This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

### 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of land; or (iv) environmental protection; or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims or other matters:(a)created, suffered, assumed or agreed to by the Insured Claimant; (b)not known to the Company, not recorded in the Public records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy; (c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14);or(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state in which the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b):

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:
1.(a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.Any facts, rights, interests or claims which are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the  Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.(a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.

### 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

Exhibit 3, Page 42

Order No. 150-2355106-06

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to: (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; (iii) the subdivision of land; or (IV) environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5. (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters: (a) created, suffered, assumed, or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is (a) a fraudulent conveyance or fraudulent transfer; or (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of the land; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14, and 16.(b) Any governmental police power. This Exclusion 1(b)does not modify or limit the coverage provided under Covered Risks 5, 6, 13(c), 13(d), 14, and 16.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims or other matters (a) created, suffered, assumed or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant;(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks  11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 26); or (e)resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured to comply with applicable doing-business laws of the state in which the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth in lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no

longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6..

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

# Orange Coast Title Company
## PRIVACY POLICY

### We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information that you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

### Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means.

- Information we receive from providers of services to us, such as appraisers, appraisal management companies, real estate agents and brokers and insurance agencies (this may include the appraised value, purchase price and other details about the property that is the subject of your transaction with us).

- Information about your transactions with us, our Affiliated Companies, or others; and

- Information we receive from a consumer reporting agency.

**Your California Rights (immediately following this Privacy Policy) or you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373.  Only applies to CA residents**

### Use of Information

We request information from you for our own legitimate business purposes and not for benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis.

### Former Customers

**Even if you are no longer our customer, our Privacy Policy will continue to apply to you.**

### Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

### Other Important Information

We reserve the right to modify or supplement this Privacy Policy at any time.  If our Privacy Policy changes, we will provide the new Privacy Policy before the new policy becomes effective.

Last Revision 12/26/2019
Effective on 1/01/2020

## Your California Rights

*If you are a California resident, you may have certain rights under California law, including but not limited to the California Consumer Privacy Act ("CCPA"). All phrases used herein shall have the same meaning as those phrases used under relevant California law, including but not limited to the CCPA.*

**Right to Know**

You have the right to know:

- The categories of personal information we have collected about or from you;

- The categories of sources from which we collected your personal information;

- The business or commercial purpose for collecting or sharing your personal information;

- The categories of third parties with whom we have shared your personal information; and

- The specific pieces of your personal information we have collected.

*Process to Submit a Request*. To submit a verified request for this information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by visiting our website https://www.titleadvantage.com/privacypolicy.htm or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure your personal information is not disclosed to unauthorized parties, and to protect against fraud, we will verify your identity before responding to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the personal information requested, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right of Deletion**

You have a right to request that we delete the **personal information** we have collected from or about you.

*Process to Submit a Request.* To submit a verified request to delete you information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by clicking here or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure we do not inadvertently delete your **personal information** based on a fraudulent request, we will verify your identity before we respond to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the **personal information** requested to be deleted, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right to Opt-Out**

We do not sell your **personal information** to third parties, and do not plan to do so in the future.

**Right of Non-Discrimination**

You have a right to exercise your rights under the CCPA without suffering discrimination. Accordingly, OC Title & family of Companies will not discriminate against you in any way if you choose to exercise your rights under the CCPA.

**California Minors**

If you are a California resident under the age of 18, California Business and Professions Code § 22581 permits you to request and obtain removal of content or information you have publicly posted on any of our Applications or Websites. To make such a request, please send an email with a detailed description of the specific content or information to dataprivacy@octitle.com. Please be aware that such a request does not ensure complete or comprehensive removal of the content or information you have posted and there may be circumstances in which the law does not require or allow removal even if requested.

**Collection Notice**

The following is a list of the categories of **personal information** we may have collected about California residents in the twelve months preceding the date this Privacy Notice was last updated, including the business or commercial purpose for said collection, the

categories of sources from which we may have collected the **personal information**, and the categories of third parties with whom we may have shared the **personal information**:

## Categories of Personal Information Collected

The categories of **personal information** we have collected include, but may not be limited to:

- real name
- Signature
- Alias
- SSN
- physical characteristics or description, including protected characteristics under federal or state law
- address

- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number
- employment history

- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

## Categories of Sources

Categories of sources from which we've collected **personal information** include, but may not be limited to:

- the consumer directly
- public records
- governmental entities
- non-affiliated third parties
- affiliated third parties

## Business Purpose for Collection

The business purposes for which we've collected **personal information** include, but may not be limited to:

- completing a transaction for our Products
- verifying eligibility for employment
- facilitating employment
- performing services on behalf of affiliated and non-affiliated third parties
- protecting against malicious, deceptive, fraudulent, or illegal activity

## Categories of Third Parties Shared

The categories of third parties with whom we've shared **personal information** include, but may not be limited to:

- service providers
- government entities

- operating systems and platforms

- non-affiliated third parties
- affiliated third parties

### Sale Notice

We have not sold the **personal information** of California residents to any third party in the twelve months preceding the date this Privacy Notice was last updated, and we have no plans to sell such information in the future. We also do not, and will not sell the **personal information** of minors under sixteen years of age without affirmative authorization.

### Disclosure Notice

The following is a list of the categories of **personal information** of California residents we may have disclosed for a business purpose in the twelve months preceding the date this Privacy Notice was last updated.

- real name
- Signature
- Alias
- SSN
- physical characteristics or description, including protected characteristics under federal or state law

- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number

- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

Order No. 150-2355106-06

- address
- employment history

If you have any questions and/or comments you may contact us:

**Call Us** at our toll free number (866) 241-7373

**Email Us** at dataprivacy@octitle.com

Mail:

Orange Coast Title

Attn: Privacy Officer

1551 N. Tustin Ave., Ste. 300

Santa Ana, CA 92705

Effective on 1/1/2019
Revised on 12/23/2019

Page 16

Exhibit 3, Page 47

Order No. 150-2355106-06



# Orange Coast Title Company

## 1551 N. Tustin Ave., Suite 840
## Santa Ana, CA 92705
## 714-822-3211

### OWNER'S AFFIDAVIT

State of _____
County of _____ } S.S.

Order No.: 150-2355106-06

The undersigned, _____, (owner's name)
being first duly sworn, depose and say as follows:

1. That the undersigned is/are the owner(s) of certain real property situated in an unincorporated area known as Bakersfield, County of Kern and State of California, commonly known as 1016 Portal Avenue and more particularly described in Schedule "A" attached hereto (the "Property"):

2. That within the last ninety (90) days, including the date hereof, no person, firm or corporation has furnished any labor, services or materials in connection with the construction or repair of any buildings, fixtures or improvements on the Property, EXCEPT (if work has been performed or materials furnished within the last (90) days, please explain fully and state whether payment for the same has been made in full): _____.

3. That there are no present tenants, lessees or other parties in possession or who have a right to possession of said Property, EXCEPT: (if none, state "None") _____.

4. That the undersigned has/have no knowledge of any taxes or special assessments which are not shown as existing liens by the public records other than as follows: _____.

5. That the taxes for Installment ____ of fiscal year _____ are paid.  Installment ____ of fiscal year _____ is not yet due.

6. That the undersigned has/have no knowledge of, nor has/have the undersigned created, any violations of any covenants, restrictions, agreements, conditions or zoning ordinances affecting the Property.

7. That Property is free of all liens, taxes, encumbrances and  claims of every kind, nature and description whatsoever, except for the following mortgages or deeds of trust;
_____ and except for real estate and personal property taxes for Installment ____ of fiscal year _____ and subsequent years.

8. That there are no mechanic's, materialmen's or laborer's liens against the above described Property, nor is any party entitled to assert any mechanic's, materialmen's or laborer's liens against the Property.

9. That there are no unrecorded leases or agreements affecting the Property, other than the Agreement of Sale between the undersigned and _____ as purchasers of the Property dated _____.

10. That there are no open, unexercised options to purchase or rights of first refusal to purchase the Property.

11. That no judgment or decree has been entered in any court of this State or the United States against the undersigned and which remain unsatisfied, EXCEPT _____.

12. The undersigned further state(s) that he/she/they are each familiar with the nature of an oath; and with the penalties under the laws of the state for making false statements in any instruments of this nature.  The undersigned further certify(ies) that they have read, this affidavit, or have had it read to them, and understand its context.

13. That I/WE have made this Affidavit for the purpose of inducing Orange Coast Title Company to issue one or more policy(ies) of title insurance insuring interests in the Property, and that said title company is relying on the statements set forth in this Affidavit in issuing said policies, free and harmless from and against any and all actions, causes, of action loss, cost, expense, or damages that may be brought against or suffered or incurred by Orange Coast Title Company or its underwriters, in relying

Exhibit 3, Page 48

Order No. 150-2355106-06

on the truth and accuracy of the statements contained herein.

By: _____
Name: _____


By: _____
Name: _____

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

State of _____ }
County of _____ } S.S.

On _____, before me, _____,

personally appeared _____

_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS MY HAND and OFFICIAL SEAL

Signature: _____

(Notary Seal)

Order No. 150-2355106-06

**Exhibit "A"**

Lot 44 in Tract No. 2170, in the County of Kern, State of California, as per Map recorded May 12, 1960, in Book 11, Page 84 of Maps, in the Office of the County Recorder of said County.

Excepting therefrom 98% of all oil, gas, petroleum, minerals and other hydrocarbon substances within or underlying said land, but without the right to the use of the surface of said land or any other portion thereof above a depth of 500 feet for the purpose of drilling for or developing all minerals, oil, gas and other hydrocarbon substances, provided however, that the grantors, their heirs or assigns shall have the right to develop such substances by slant drilling form locations on adjacent lands at depths of more than 500 feet and in such a manner as not to disturb the surface of said land or any improvements thereon, as reserved in Deed from Maurice Orloff et al, dated August 21, 1958 and recorded September 16, 1958 in Book 3007, Page 378 of Official Records.

Exhibit 3, Page 50

Order No. 150-2355106-06



# Orange Coast Title Company

1551 N. Tustin Ave., Suite 840
Santa Ana, CA 92705
714-822-3211

## <u>DECLARATION OF OCCUPANCY</u>
### (Loan Transaction)

The undersigned, _____,
(owner's name) depose(s) and say(s) as follows:

1.  The undersigned is/are the owner(s) of certain real property situated in an unincorporated area known as Bakersfield, County of Kern and State of California, commonly known as 1016 Portal Avenue, herein referred to as "Property":

2.  The undersigned is/are obtaining a loan from _____ to be secured by a Deed of Trust against the Property, which is the subject of this transaction.

3.  The undersigned currently occupy the Property as the undersigned's principal address, and intend to continue to occupy the same as the undersigned's principal residence following the close of this transaction.

4.  The undersigned understand(s) that Orange Coast Title Company is relying on this information in calculating the recording fees for all real estate instruments, papers, and notices recorded in connection with this transaction in accordance with *California Government Code §27388.1(a)(2)*.

5.  The undersigned agree(s) to indemnify and hold Orange Coast Title Company harmless from and against, and to pay any additional recording fees and/or penalties arising out of, or in connection with, the inaccuracy of the information set forth herein.

The undersigned declare(s) under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on _____, at _____, _____.


By: _____    By: _____
Name: _____    Name: _____

Exhibit 3, Page 51

Order No. 150-2355106-06



# Orange Coast Title Company

1551 N. Tustin Ave., Suite 840
Santa Ana, CA 92705
714-822-3211

## CONFIRMATION OF CONVEYANCE
(Low or No Consideration Transfer)

I/We _____

Declare as Follows:

1. That I/We am/are the grantor(s) named in a certain grant deed or quit claim deed recorded as Instrument No. _____, in the County of _____, State of California.
2. That I/We did execute said conveyance on or about the date indicated.
3. That said Deed is valid and in full force and effect and that I/We claim no ownership interest in the property described therein.
4. That I/We hereby acknowledge, confirm, and ratify the above described conveyance.
5. That I/We did convey and transfer said property to the grantees and I/We am/are due no other consideration for my/our interest in the transferred property.
6. That I/We am/are making this declaration for the purposes of inducing Orange Coast Title Company to issue certain policies of title insurance, insuring title to said land, and that Orange Coast Title Company is not willing to insure title to said land if my/our interest was not transferred free from any remaining agreements or consideration.

I/We declare under penalty of perjury that the foregoing is true and correct and that this declaration is made this _____Day of _____, _____, at _____, California.

BY: _____    Social Security # _____

BY: _____    Social Security # _____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

State of California
County of <u>Kern</u> } S.S.

On _____, before me, _____,

personally appeared _____

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS MY HAND and OFFICIAL SEAL

Signature: _____

(Notary Seal)

**DO NOT USE THE SAME NOTARY AS USED TO EXECUTE THE DEED OR QUITCLAIM**



ASSESSORS MAP NO. 117-22
COUNTY OF KERN

Note 1 This map is for assessment purposes only. It is not to be construed as portraying legal ownership or division of land for purposes of zoning or subdivision law.

TRACT 2170
PTN. OF SE1/4 OF SEC.6 T. 29 S. R. 28 E. SCHOOL DIST. 121-22

THIS MAP SHOULD BE USED FOR REFERENCE PURPOSES ONLY. NO LIABILITY
IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. PARCELS MAY NOT COMPLY
WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES.

Exhibit 3, Page 53

# Exhibit 4

Printed on Oct 4 2023 12:14 pm

# 8:22-bk-12142 - 2nd Chance Investment Group, LLC

| # ↓⊨ | Original File Date | Creditor | Total Claimed Amount | Last Updated |
|------|-------------------|----------|---------------------|--------------|
| 58 | 08/15/2023 | San Bernardino County | $3,166.40 | 10/01/2023 |
| 57 | 04/11/2023 | Mercedes-Benz Financial Services USA LLC | $45,868.43 | 10/01/2023 |
| 56 | 04/11/2023 | Mercedes-Benz Financial Services USA LLC | $77,308.52 | 10/01/2023 |
| 55 | 04/10/2023 | U.S. Bank Trust National Association, not in its i | $165,647.56 | 10/01/2023 |
| 54 | 04/09/2023 | Maher Abou Khzam | $345,661.64 | 10/01/2023 |
| 53 | 04/09/2023 | Maher Abou Khzam | $345,860.14 | 10/01/2023 |
| 52 | 04/07/2023 | Felipe Gutierrez Jr. | $66,125.00 | 10/01/2023 |
| 51 | 04/07/2023 | Forethought Life Insurance Company | $194,913.29 | 10/01/2023 |
| 50 | 04/07/2023 | LMF2 LP | $1,588,962.55 | 10/01/2023 |
| 49 | 04/07/2023 | Precision Realty Fund LLC | $1,256,031.58 | 10/01/2023 |
| 48 | 04/06/2023 | Lantzman Investments Inc | $1,107,927.81 | 10/01/2023 |
| 47 | 04/05/2023 | Lamar Advertising | $1,164,618.17 | 10/01/2023 |
| 46 | 04/04/2023 | INTERNAL REVENUE SERVICE | $12,485.00 | 10/01/2023 |
| 45 | 03/30/2023 | Pramira LLC | $690,524.38 | 10/01/2023 |
| 44 | 03/30/2023 | Kiwi Capital Group LLC | $822,161.10 | 10/01/2023 |
| 43 | 03/29/2023 | Zisman Family Trust | $270,000.00 | 10/01/2023 |
| 42 | 03/29/2023 | Steven Kinsbursky | $150,000.00 | 10/01/2023 |
| 41 | 03/27/2023 | Midare LLC | $1,057,500.00 | 10/01/2023 |

Exhibit 4, Page 54

| # ↓≡ | Original File Date | Creditor | Total Claimed Amount | Last Updated |
|---|---|---|---|---|
| 39 | 03/27/2023 | David Guzman | $60,000.00 | 10/01/2023 |
| 38 | 03/22/2023 | Straten Lending Group, LLC | $1,012,169.32 | 10/01/2023 |
| 37 | 03/22/2023 | Zona AZ LLC | $731,460.12 | 10/01/2023 |
| 36 | 03/22/2023 | Zona AZ LLC | $196,728.67 | 10/01/2023 |
| 35 | 03/22/2023 | Bhavesh Bhakta | $60,442.83 | 10/01/2023 |
| 34 | 03/22/2023 | Vishal Bhakta | $172,894.68 | 10/01/2023 |
| 33 | 03/22/2023 | Sima Patel | $109,640.11 | 10/01/2023 |
| 32 | 03/22/2023 | Anand Bhakta | $60,411.32 | 10/01/2023 |
| 31 | 03/22/2023 | Parin Bhakta | $171,618.65 | 10/01/2023 |
| 30 | 03/22/2023 | Jatin Bhakta | $60,035.31 | 10/01/2023 |
| 29 | 03/22/2023 | Abhishek Bhakta | $62,175.70 | 10/01/2023 |
| 28 | 03/22/2023 | Deven Bhakta | $62,018.17 | 10/01/2023 |
| 27 | 03/22/2023 | Ronak Parikh | $59,478.60 | 10/01/2023 |
| 26 | 03/22/2023 | ASB Ventures LLC | $261,283.39 | 10/01/2023 |
| 25 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 24 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 23 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 22 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 21 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 20 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 19 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 18 | 03/21/2023 | Salvador Jimenez | $72,600.00 | 10/01/2023 |
| 17 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 16 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 15 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 14 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |

| # ↓≡ | Original File Date | Creditor | Total Claimed Amount | Last Updated |
|---|---|---|---|---|
| 13 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 12 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 11 | 03/21/2023 | Salvador Jimenez | $72,600.00 | 10/01/2023 |
| 10 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 9 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 8 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 7 | 03/02/2023 | INTERNAL REVENUE SERVICE | $7,972.89 | 10/01/2023 |
| 6 | 02/23/2023 | Wells Fargo Bank, N.A. | $594,915.37 | 10/01/2023 |
| 5 | 02/16/2023 | U.S. Small Business Administration | $146,894.05 | 10/01/2023 |
| 4 | 01/17/2023 | FRANCHISE TAX BOARD | $1,222.08 | 10/01/2023 |
| 3 | 01/06/2023 | Jesus Acosta And Michelle Acosta | $180,000.00 | 10/01/2023 |
| 2 | 12/30/2022 | American Express National Bank | $227,492.42 | 10/01/2023 |
| 1 | 12/28/2022 | Ally Bank c/o AIS Portfolio Services, LLC | $41,992.14 | 10/01/2023 |

# Exhibit 5

CALIFORNIA
ASSOCIATION
OF REALTORS®

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 6/22)

Date Prepared: _July 5, 2023_

**1. OFFER:**
  **A.** THIS IS AN OFFER FROM _____ *Giuliana Vista GP* _____ ("Buyer").
  **B.** THE PROPERTY to be acquired is _____ *1016 Portal Ave* _____ , situated
  in _*Bakersfield*_ (City), _*Ca*_ (County), California, _93308_ (Zip Code),
  Assessor's Parcel No(s): _11722213_ ("Property").
  **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
  **C.** THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.
  **D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

**2. AGENCY:**
  **A. DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
  **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
  Seller's Brokerage Firm _*Re/Max Golden Empire*_ License Number _01824778_
  Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
  Seller's Agent _*Glenn E. Porter*_ License Number _859000_
  Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
  Buyer's Brokerage Firm _*St. Clair Realty*_ License Number _00958777_
  Is (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
  Buyer's Agent _*Frank St Clair*_ License Number _00958777_
  Is (check one): [X] the Buyer's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
  **C.** More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
  **D. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B (cash) | **Purchase Price** | $ *236,000.00* | [X] All Cash |
| **B** | | **Close of Escrow (COE)** | [X] _10_ Days after Acceptance OR on _____ (date) | |
| **C** | 32A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or [ ] AM/[ ] PM | |
| **D(1)** | 5A(1) | **Initial Deposit Amount** | $ *2,000.00* ( _0.8_ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _____) business days after Acceptance by wire transfer OR [ ] |
| **D(2)** | 5A(2) | [ ] **Increased Deposit** (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR [ ] _____ (date) OR [ ] _____ |
| **E(1)** | 5C(1) | **Loan Amount(s):** First Interest Rate Points | $ _____ ( _____ % of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed _____ % Buyer to pay zero points or up to _____ % of the loan amount | Conventional or, if checked, [ ] FHA [ ] VA (CAR Forms FVAC, HID attached) [ ] Seller Financing [ ] Other: |
| | | If FHA or VA checked, Deliver list of lender required repairs | 17 (or _____) Days after Acceptance | |
| **E(2)** | 5C(2) | **Additional Financed Amount** Interest Rate Points | $ _____ ( _____ % of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed _____ % Buyer to pay zero points or up to _____ % of the loan amount | Conventional or, if checked, [ ] Seller Financing [ ] Other: |
| **E(3)** | 7A | **Occupancy Type** | Primary, or if checked, [ ] Secondary [ ] Investment | |
| **F** | 5D | **Balance of Down Payment** | $ *234,000.00* | |
| | | **PURCHASE PRICE TOTAL** | $ *236,000.00* | |

© 2022, California Association of REALTORS®, Inc.

**RPA Revised 6/22 (PAGE 1 OF 16)**     Buyer's Initials _____ / _____     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

St. Clair Realty 3401 Wible Road Bakersfield, CA 93309     Phone: 661.834.0640     Fax: 661.834.5120     3724 Eucalyptus
Frank St. Clair     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Property Address: 1016 Portal Ave, Bakersfield       Date: July 5, 2023

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | **Seller Credit,** if any, **to Buyer** | ☐ $_____ (_____ % of purchase price)<br>(% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR<br>☐ Other: _____ |
| G(2) | | ADDITIONAL FINANCE TERMS: _____ | | |
| H(1) | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | |
| H(2) | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | |
| H(3) | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | ☐ Prequalification ☐ Preapproval<br>☐ Fully underwritten preapproval |
| **I** | | **Intentionally Left Blank** | | |
| J | 16 | **Final Verification of Condition** | 5 (or _____ ) Days prior to COE | |
| K | 23 | **Assignment Request** | 17 (or _____ ) Days after Acceptance | |
| **L** | **8** | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | **Loan(s)** | 17 (or _____ ) Days after Acceptance | ☐ No loan contingency |
| L(2) | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $_____ | 17 (or _____ ) Days after Acceptance | ☐ No appraisal contingency<br>Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | **Investigation of Property** | 17 (or *0* ) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | **Informational Access to Property**<br>Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or _____ ) Days after Acceptance | Any contingency in L(1)-L(7 removed or waived by che applicable box above or att Contingency Removal (C.A CR) and checking the a box therein. Removal or V time of offer is against Age See **paragraph 8H.** |
| L(4) | 8D, 14A | **Review of Seller Documents** | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(5) | 8E, 13A | **Preliminary ("Title") Report** | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(6) | 8F, 11K | **Common Interest Disclosures** required by Civil Code § 4525 or this Agreement | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(7) | 8G, 9B(6) | **Review of leased or liened items** (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | ☐ CR attached |
| L(8) | 8J | **Sale of Buyer's Property**<br>Sale of Buyer's property is not a contingency, UNLESS checked here:<br>☐ C.A.R. Form COP attached | | |
| **M** | | **Possession** | **Time for Performance** | **Additional Terms** |
| M(1) | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or ☐ _____ AM/☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | **Seller Occupied or Vacant units** | COE date or, if checked below,<br>☐ _____ days after COE (29 or fewer days)<br>☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | | **Tenant Occupied units** | See Tenant Occupied Property Addendum (C.A.R. form TOPA) | If tenant occupied ☐ TOPA or ☐ Other, attached |
| **N** | | **Documents/Fees/Compliance** | **Time for Performance** | |
| N(1) | 14A | **Seller Delivery of Documents** | 7 (or _____ ) Days after Acceptance | |
| N(2) | 19B | **Sign and return Escrow Holder Provisions and Instructions** | 5 (or _____ ) Days after receipt | |
| N(3) | 11K(2) | **Time to pay fees for ordering HOA Documents** | 3 (or _____ ) Days after Acceptance | |
| N(4) | 10B(1) | **Install smoke alarm(s), CO detector(s), water heater bracing** | 7 (or _____ ) Days after Acceptance | |
| N(5) | 28 | **Evidence of representative authority** | 3 Days after Acceptance | |
| **O** | | **Intentionally Left Blank** | | |

**RPA Revised 6/22 (PAGE 2 OF 16)**     Buyer's Initials _____ / _____     Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    3724 Eucalyptus

| P | Items Included and Excluded |
|---|---|

**P(1)** 9 — Items Included - All items specified in Paragraph 9B are included and the following, if checked:

- ☐ Stove(s), oven(s), stove/oven combo(s);
- ☐ Refrigerator(s);
- ☐ Wine Refrigerator(s);
- ☐ Washer(s);
- ☐ Dryer(s);
- ☐ Dishwasher(s);
- ☐ Microwave(s);

- ☐ Video doorbell(s);
- ☐ Security camera equipment;
- ☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
- ☐ Smart home control devices;
- ☐ Wall mounted brackets for video or audio equipment;

- ☐ Above-ground pool(s) / ☐ spa(s);
- ☒ Bathroom mirrors, unless excluded below;
- ☐ Electric car charging systems and stations;
- ☐ Potted trees/shrubs;

**Additional Items included:**
- ☐ _____ .
- ☐ _____ .
- ☐ _____ .
- ☐ _____ .

**P(2)** 9 — **Excluded Items:**
- ☐ _____ ; ☐ _____ ; ☐ _____

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | Paragraph # | Item Description | Who Pays (if Both is checked, cost to be split equally unless Otherwise Agreed) | Additional Terms |
| **Q(1)** | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____ <br> ☐ Provided by: **_Click here to select your Service Provider_** | ☐ Environmental <br> ☐ Other _____ |
| **Q(2)** | | Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(3)** | | Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(4)** | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(5)** | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(6)** | 10B(2)(A) | Government Required Point of Sale **corrective/remedial actions** | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(7)** | 19B | Escrow Fees | ☐ Buyer ☐ Seller ☒ Both *1/2 Each* <br> ☐ Each to pay their own fees | Escrow Holder: *Seller's Choice* |
| **Q(8)** | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____ | Title Company (If different from Escrow Holder): |
| **Q(9)** | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| **Q(10)** | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(11)** | | City transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(12)** | 11K(2) | HOA fee for preparing disclosures | Seller | |
| **Q(13)** | | HOA certification fee | Buyer | |
| **Q(14)** | | HOA transfer fees | ☐ Buyer ☐ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee.   Applies if separately billed or itemized with cost in transfer fee. |
| **Q(15)** | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both _____ | |
| **Q(16)** | | ___ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(17)** | | ___ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(18)** | 10C | Home warranty plan: _____ | ☐ Buyer ☐ Seller ☐ Both _____ <br> ☒ Buyer waives home warranty plan <br> Issued by: _____ | Cost not to exceed $ _____ . |

| R | OTHER TERMS: *1. Sold "As is" 2. Buyer understands sale is subject to court approval 4. Buyer is selling agent 5. Proof of funds upon request.* |
|---|---|

RPA Revised 6/22 (PAGE 3 OF 16)      Buyer's Initials  _____      Seller's Initials _____ / _____      

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com      3724 Eucalyptus

Exhibit 5, Page 59

Property Address: *1016 Portal Ave , Bakersfield ,*   Date: *July 5, 2023*

4. **PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)
   A. **PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
      ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
      ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
      ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
      ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
      ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
      ☐ Other
   B. **OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
      ☐ Addendum #_____ (C.A.R. Form ADM)    ☐ Short Sale Addendum (C.A.R. Form SSA)
      ☐ Back Up Offer Addendum (C.A.R. Form BUO)    ☐ Court Confirmation Addendum (C.A.R. Form CCA)
      ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
      ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)  ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
      ☐ Other    ☐ Other
   C. **BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
      ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)    ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
      ☒ Wire Fraud Advisory (C.A.R. Form WFA)    ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
      (Parties may also receive a privacy disclosure from their own Agent.)
      ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)    ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
      ☐ Trust Advisory (C.A.R. Form TA)    ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
      ☐ REO Advisory (C.A.R. Form REO)    ☐ Probate Advisory (C.A.R. Form PA)
      ☐ Other    ☐ Other

5. **ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **DEPOSIT:**
      (1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
      (2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.
      (3) **RETENTION OF DEPOSIT:** Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.
   B. **ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.
   C. **LOAN(S):**
      (1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.
      (2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.
      (3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
      (4) **FHA/VA:** If FHA or VA is checked in **paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.
   D. **BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   E. **LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

6. **ADDITIONAL FINANCING TERMS:**
   A. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.
   B. **VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

RPA Revised 6/22 (PAGE 4 OF 16)    Buyer's Initials ____ / ____    Seller's Initials ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    3724 Eucalyptus

C. **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

7. **CLOSING AND POSSESSION:**
   A. **OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.
   B. **CONDITION OF PROPERTY ON CLOSING:**
      (1) Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.
      (2) **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**
   C. **SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.
   D. **At Close Of Escrow:** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.
   E. Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.
8. **CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**
   A. **LOAN(S):**
      (1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**
      (2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.
      (3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingenc**ies of this Agreement, unless Otherwise Agreed.
      (4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
      (5) NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   B. **APPRAISAL:**
      (1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.
      (2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.
      (3) ☐ Fair Appraisal Act: The Parties acknowledge receipt of the attached Fair Appraisal Act Addendum (C.A.R. Form FAAA).
   C. **INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property.  **See paragraph 12.**
   D. REVIEW OF SELLER DOCUMENTS: This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review of Seller's documents required in **paragraph 14A**.

**RPA Revised 6/22 (PAGE 5 OF 16)**    Buyer's Initials _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    3724 Eucalyptus

E.  **TITLE:**
   (1)  This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
   (2)  Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

F.  **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11K** ("CI Disclosures").

G.  **BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

H.  **REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

I.  **REMOVAL OF CONTINGENCY OR CANCELLATION:**
   (1)  **For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
   (2)  For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after receipt of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
   (3)  If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

J.  **SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

9.  **ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
A.  **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

B.  **ITEMS INCLUDED IN SALE:**
   (1)  All EXISTING fixtures and fittings that are attached to the Property;
   (2)  EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window), attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
       **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.
   (3)  Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
   (4)  Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
   (5)  Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Buyer is advised to change all passwords and ensure the security of any smart home features.
   (6)  LEASED OR LIENED ITEMS AND SYSTEMS: Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.
   (7)  Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

RPA Revised 6/22 (PAGE 6 OF 16)          Buyer's Initials _____ / _____          Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          3724 Eucalyptus

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

## 10. ALLOCATION OF COSTS:

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Paragraphs **3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; **it does not determine who is to pay for any work recommended or identified in the Report. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).**

**B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**
   (1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.
   (2) **POINT OF SALE REQUIREMENTS:**
      **(A)** Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6)**. Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.
      **(B)** Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
   (3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.
   (4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C. HOME WARRANTY:**
   (1) Buyer shall choose the coverages, regardless of any optional coverages indicated, of the home warranty plan and Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18)**. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
   (2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

## 11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:

**A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**
   (1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).
   (2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.
   (3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.
   (4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**RPA Revised 6/22 (PAGE 7 OF 16)**        Buyer's Initials _____ / _____        Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com        3724 Eucalyptos

Exhibit 5, Page 63

**B. LEAD DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
    (2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C,** and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(3)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11 A, B, C or D,** and defensible space addendum in **paragraph 11D,** whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**
    (1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C,** or **D,** or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
    (2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F,** Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
    **(1)** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
    **(2)** If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

RPA Revised 6/22 (PAGE 8 OF 16)    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   3724 Eucalyptus

    **M. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

## 12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:

    **A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

    **B.** Buyer Investigations include, but are not limited to:

      (1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

        (A) A general home inspection.

        (B) An inspection for lead-based paint and other lead-based paint hazards.

        (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

        (D) Any other specific inspections of the physical condition of the land and improvements.

      (2) All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

      (3) A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to **paragraphs 3, 10, 11,** and **14A**.

    **C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

    **D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

    **E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

## 13. TITLE AND VESTING:

    **A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

    **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

    **C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

    **D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

    **E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

    **F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

---

RPA Revised 6/22 (PAGE 9 OF 16)    Buyer's Initials _____ / _____    Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    3724 Eucalyptus

Property Address: *1016 Portal Ave , Bakersfield ,*        Date: *July 5, 2023*

G. Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and Buyer owns. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between an ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A. **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 13A, and 13D.**

B. **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in **paragraph 11A** or **11B**, is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to **paragraph 14C(1)**.

C. **SELLER RIGHT TO CANCEL:**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8G**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2) and 29; (x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

D. **BUYER RIGHT TO CANCEL:**

(1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**RPA Revised 6/22 (PAGE 10 OF 16)**      Buyer's Initials _____ / _____      Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    3724 Eucalyptas

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer would be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

F. **EFFECT OF REMOVAL OF CONTINGENCIES:**
   (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
   (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

G. **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow cancellation fee charged to that Party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds** (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. **Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS AND AGENTS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

RPA Revised 6/22 (PAGE 11 OF 16)          Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          3724 Eucalyptus

Exhibit 5, Page 67

Property Address: *1016 Portal Ave , Bakersfield , 93307-7402*                        Date: *July 5, 2023*

19. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

    **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11K(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A or paragraph C of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

    **B.** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11**, or elsewhere in this Agreement.

    **C.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance**. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H**.

    **D.** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

    **E.** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

    **F.** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

    **G.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

20. **SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

21. **MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

22. **ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A**.

23. **ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

24. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

25. **DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

    **A.** "Acceptance" means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

RPA Revised 6/22 (PAGE 12 OF 16)    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com        3724 Eucalyptus

- **B.** **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**
- **C.** **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.
- **D.** **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.
- **E.** **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.
- **F.** **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.
- **G.** **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.
- **H.** **"Copy"** means copy by any means including photocopy, facsimile and electronic.
- **I.** **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.
- **J.** **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.
- **K.** **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.
- **L.** **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
- **M.** **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
- **N.** **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**
- **O.** **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.
- **P.** **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
- **Q.** **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.
- **26.** **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.
- **27.** **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**
- **28.** **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

RPA Revised 6/22 (PAGE 13 OF 16)        Buyer's Initials ____/ ____        Seller's Initials ____/ ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    3724 Eucalyptus

Exhibit 5, Page 69

29. **LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages):
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

30. **MEDIATION:**
   A. The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
   B. **ADDITIONAL MEDIATION TERMS: (i)** Exclusions from this mediation agreement are specified in paragraph 31B; **(ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.**

31. **ARBITRATION OF DISPUTES:**
   A. **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties, OR** ☐
   _____. **The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**
   B. **EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.**
   C. **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.**
   D. **AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agent(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**
   E. **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

   **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**RPA Revised 6/22 (PAGE 14 OF 16)**          Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          3724 Eucalyptus

Exhibit 5, Page 70

Property Address: *1016 Portal Ave , Bakersfield* ,                                                    Date: *July 5, 2023*

**32. BUYER'S OFFER**

**A. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

**B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

    (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

    (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

    (3) The name(s) of the Legally Authorized Signer(s) is/are: _____ , _____ .

    (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**C.** The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. BUYER SIGNATURE(S):**

(Signature) By, _____                    Date: *7/5/23.*

Printed name of BUYER: *Giuliana Vista GP*

☒ Printed Name of Legally Authorized Signer: *Frank St. Clair*          Title, if applicable, _____

(Signature) By, _____                    Date: _____

Printed name of BUYER: _____

☐ Printed name of Legally Authorized Signer: _____          Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

**A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.

    ☐ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)

    ☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

**B.** ☐ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

    (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

    (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

    (3) The name(s) of the Legally Authorized Signer(s) is/are: _____ , _____ .

    (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**C.** The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. SELLER SIGNATURE(S):**

(Signature) By, _____                    Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____          Title, if applicable, _____

(Signature) By, _____                    Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____          Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

---

**OFFER NOT ACCEPTED:** _____ / _____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date)
    Seller's Initials

---

**RPA Revised 6/22 (PAGE 15 OF 16)**       Buyer's Initials _____ / _____       Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          3724 Eucalyptus

Exhibit 5, Page 71

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

A. Buyer's Brokerage Firm _St. Clair Realty_ _____ Lic. # _00958777_
By _[signature]_ _Frank St Clair_ Lic. # _00958777_ Date _7/5/23_
By _____ Lic. # _____ Date _____
☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

**Designated Electronic Delivery Address(es):**
Email _____ Text # _____
Alternate: _____
☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
Address _____ City _____ State ____ Zip ____

B. Seller's Brokerage Firm _Re/Max Golden Empire_ _____ Lic. # _01824778_
By _____ _Glenn E. Porter_ Lic. # _859000_ Date _____
By _____ Lic. # _____ Date _____
☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

**Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent):**
Email _____ Text # _____
Alternate: _____
☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
Address _____ City _____ State ____ Zip ____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____ , and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _Seller's Choice_ _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail // _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** ____ / ____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
 Agent or Seller Initials

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RPA Revised 6/22 (PAGE 16 OF 16) Buyer's Initials _[initials]_ / ____ Seller's Initials ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 3724 Eucalyptus

CALIFORNIA
ASSOCIATION
OF REALTORS®

# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
(C.A.R. Form WFA, Revised 12/21)

Property Address: _**1016 Portal Ave , Bakersfield , Ca  93308**_ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| Buyer/Tenant | _Giuliana Vista GP_ Date 7/5/23 |
|---|---|
| Buyer/Tenant | Date |
| Seller/Landlord | Date |
| Seller/Landlord | Date |

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

WFA REVISED 12/21 (PAGE 1 OF 1)

### WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)

| St. Clair Realty 3401 Wible Road Bakersfield, CA 93309<br>Frank St. Clair | Phone: 661.834.0640 | Fax: 661.834.5120 | 3724 Eucalyptus |
|---|---|---|---|
| Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com | | | |



CALIFORNIA
ASSOCIATION
OF REALTORS®

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/21)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, "opt out" or stop the transfer of your PI to others, and the right to request that the business delete your PI entirely. You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Also, even businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _____    Date 7/5/23
Giuliana Vista GP

Buyer/Seller/Landlord/Tenant _____    Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/21 (PAGE 1 OF 1)**

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)

St. Clair Realty 3401 Wible Road Bakersfield, CA 93309          Phone: 661.834.0640          Fax: 661.834.5120          3724 Eucalyptus
Frank St. Clair          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com



CALIFORNIA
ASSOCIATION
OF REALTORS®

# FAIR HOUSING & DISCRIMINATION ADVISORY
**(C.A.R. Form FHDA, 6/22)**

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7.; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC § 10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2022, California Association of REALTORS®, Inc.
**FHDA REVISED 6/22 (PAGE 1 OF 2)**


EQUAL HOUSING OPPORTUNITY

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

St. Clair Realty 3401 Wible Road Bakersfield, CA 93309    Phone: 661.834.0640    Fax: 661.834.5120    3724 Eucalyptus
Frank St. Clair    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

**E.** Inquiring about protected characteristics of prospective purchasers if they are married, or prospective purchasers if they have children or are planning to start a family);

**F.** Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

**G.** Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

**H.** Denying a home loan or homeowner's insurance;

**I.** Offering inferior terms, conditions, privileges, facilities or services;

**J.** Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

**K.** Harassing a person;

**L.** Taking an adverse action based on protected characteristics;

**M.** Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheelchair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

**N.** Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,
   **(ii)** Charging that person higher rent or increased security deposit, or
   **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

**O.** Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

**A.** Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

**B.** Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

**C.** Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

**D.** Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

**E.** Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

**A.** Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

**B.** State: **https://www.dfeh.ca.gov/housing/**

**C.** Local: local Fair Housing Council office (non-profit, free service)

**D.** DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

**E.** Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.

**F.** Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

**A.** Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

**B.** An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

**C.** An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

**D.** An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

**E.** Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

**F.** Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | | |
|---|---|---|
| Buyer/Tenant | *Giuliana Vista GP* | Date 7/5/23 |
| Buyer/Tenant | | Date |
| Seller/Landlord | | Date |
| Seller/Landlord | | Date |

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**FHDA REVISED 6/22 (PAGE 2 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 3724 Eucalyptus

Exhibit 5, Page 76

**DISCLOSURE REGARDING**
## REAL ESTATE AGENCY RELATIONSHIP
**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 12/21)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to,
        or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential
        information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to,
        or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential
        information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _(signature)_ | _Giuliana Vista GP_ Date 7/5/23 |
| ☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ | Date _____ |

Agent _____ **St. Clair Realty** _____ DRE Lic. # _00958777_

                      Real Estate Broker (Firm)

By _(signature)_                  _Frank St Clair_ DRE Lic. # _00958777_      Date _____

      (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Exhibit 5, Page 77

**2079.13.** As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:

**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to be obtained to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means real estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential real property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as an agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

**CONFIRMATION: (c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**AD REVISED 12/21 (PAGE 2 OF 2)**



# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Exhibit 5, Page 78

## COUNTER-OFFER

This agreement (the "Agreement" or "Counter-Offer") is intended to set forth the terms and conditions of a contract for the purchase by and sale to Giuliana Vista GP (the "Buyer") from 2nd Chance Investment Group, LLC, by and through its Chief Restructuring Officer David M. Goodrich and solely in its capacity as chapter 11 debtor in the bankruptcy case 8:22-bk-12142-SC.) (the "Seller"), of the real property more commonly known as 1016 Portal Ave, Bakersfield, California (the "Property"). When executed below, this Agreement will constitute conclusive evidence and the exclusive terms and conditions of the contract for such purchase and sale (the "Sale") of the Property and will supersede and replace in its entirety Buyer's written Residential Property Purchase Agreement and all attachments in support thereof dated July 5, 2023 (the "Offer") and any oral or written negotiations since the Offer.

**PURCHASE PRICE; DEPOSIT; ESCROW.** The purchase price for the Property shall be **$236,000** (the "Purchase Price"). Buyer shall make an initial deposit of **$7,080** (the "Initial Deposit") in the form of cashier's check or wire transfer made payable to "A&A Escrow Services, Inc." (the "Escrow Holder") which shall be delivered to A&A Escrow Services, Inc., 15250 Ventura Blvd, suite 715, Sherman Oaks, California, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement.

**FINANCIAL WHEREWITHAL.** Buyer shall deliver to the Seller, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement, proof of committed funds available to Buyer sufficient to enable Buyer to consummate the acquisition contemplated herein, which proof shall be in the form of a letter of credit, loan commitment, or other form acceptable to Seller in Seller's sole discretion. In the event that either (i) Buyer fails timely to provide any such proof, or (ii) Seller determines, in Seller's sole discretion, that any proof of funds provided to Seller by Buyer is unacceptable, Seller shall have the right, at Seller's option, to provide written notice to Buyer that this Counter-Offer is terminated. In the event that Seller exercises such termination right, this Counter-Offer shall terminate effective as of the date of Seller's written notice to Buyer, whereupon the Initial Deposit (if theretofore deposited with the Escrow Holder) shall be returned to Buyer and Buyer and Seller shall each be relieved of any further obligations hereunder.

**ESCROW INSTRUCTIONS.** Escrow instructions corresponding to the terms of this Agreement shall be provided by the Escrow Holder and signed by the parties within five (5) business days of the date of Buyer's and Seller's receipt of said escrow instructions. Buyer and Seller shall deposit such documents and instruments with the Escrow Holder as and when reasonably required to complete the sale. Prior to the Seller's filing of its motion to approve the sale of the Property, Buyer shall be free to assign this Agreement to another person or entity (the "Assignee") subject to Seller's prior review and written approval (which approval Seller may grant or withhold in his sole discretion), but Buyer shall remain liable

approval Seller may grant or withhold in his sole discretion), but Buyer shall remain liable hereunder, together with such Assignee, in the event that such Assignee fails to perform any of Buyer's obligations hereunder. Buyer shall not assign this Agreement to another person or entity after the Seller has filed its motion for approval of the sale of the Property with the Bankruptcy Court.

**BUYER'S DUE DILIGENCE.** Buyer has inspected the property and waives the inspection contingency

**APPRAISAL AND FINANCING.** Buyer waives the appraisal and financing contingencies and is paying all cash for the property.

**TITLE; TITLE INSURANCE.** Within three (3) business days after acceptance of this Agreement, Orange Coast Title Company or such other title company of Seller's choice (the "Title Company") will be instructed to provide a preliminary report of the condition of title to the Property, including copies of underlying documents referred to in Schedule B thereof, for Buyer's review. Buyer shall have three (3) business days after receipt of the preliminary title report and underlying documents in which to provide Seller written notice (the "Notice of Title Disapproval") that Buyer disapproves the condition of title with respect to a material matter(s) that interfere with the use or marketability of the Property for the purpose for which it is currently used or intended to be used. Such notice must refer to the specific exception(s) in Schedule B of the preliminary title report and the specific underlying document(s) which are the basis for Buyer's disapproval. Within five (5) business days after receipt of the Notice of title Disapproval, Seller may, in Seller's sole discretion, either (i) cancel this Agreement and the Sale, in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of the Initial Deposit, or (ii) elect to correct the item(s) that were disapproved by Buyer, in which event the Sale shall proceed. Seller may correct such item by any means that will result in the Title Company either removing the disapproved exception(s) from the preliminary report, providing title insurance coverage by endorsement against such exception(s), or providing that the order approving the Sale entered by the Bankruptcy Court shall resolve such exception. At the close of the Sale, Seller shall convey and Buyer shall accept title to the Property as shown in Schedule B of the preliminary title report, subject to any corrections as in this paragraph above, free and clear of all monetary liens, subject to the terms of the Agreement and the order approving the Sale. Seller shall pay the costs of a CLTA Standard Owner's policy of title insurance.

**REMOVAL OF CONTINGENCIES; COURT CONFIRMATION; CLOSING** If Buyer does not give Seller written Notice of Cancellation or Notice of Title Disapproval as and when provided in this Agreement, Buyer's silence shall be deemed acceptance and Buyer shall be deemed to have satisfied and removed all of Buyer's contingencies and to proceed with the Sale. Seller shall then file a motion with the Bankruptcy Court to confirm the Sale, which sale shall be subject to qualified overbids as approved by the Bankruptcy Court. Upon such removal of contingencies, Buyer shall be unconditionally obligated to proceed with the Sale, subject only to Bankruptcy Court confirmation as set forth below. If the Bankruptcy Court confirms the Sale to Buyer, the closing shall take place as soon as practicable after entry of the order approving the Sale, but no later than the later to occur of (i) the first business day after

Page 2 of 10

Exhibit 5, Page 80

fourteen (14) calendar days following the entry of the operative Order of the Bankruptcy Court approving the Sale or (ii) if the effectiveness of the Order of the Bankruptcy Court approving the Sale is stayed, the first business day after the Order is no longer stayed (the "Closing Date"). The closing shall occur on the date the deed transferring the Property to Buyer is recorded with the County Recorder where the Property is located.

**BANKRUPTCY SALE.** Buyer acknowledges that Seller is a chapter 11 debtor in possession duly appointed to administer the bankruptcy estate, and is a party to this Agreement solely in that capacity. Seller and its brokers and agents (collectively, the "Seller's Brokers") have not and will not determine the condition or fitness for use of the Property for any particular purpose. The Sale shall be "as is," "where is," "with all faults," and with no warranty by or recourse whatsoever to Seller or Seller's Brokers herein. Transfer of the Property shall be by Quitclaim Deed. All parties acknowledge that Seller is a party to this Agreement solely in its capacity as chapter 11 debtor in possession and that in the event of any default in the performance of any of Seller's obligations under the Offer (as modified hereby) or in the event that any other claim is asserted against Seller, its Chief Restructuring Officer David M. Goodrich, or the estate in connection with this transaction, the the Seller and Mr. Goodrich shall in no event have any personal liability whatsoever , it being expressly understood and agreed that Buyer's sole recourse, if any, in such event shall be to the assets of the Seller's bankruptcy estate.

**TAXES; PRORATIONS; COSTS OF SALE.** All real property taxes and assessments for the current tax year shown in the current County Tax Bill shall be prorated between Seller and Buyer and charged as of the closing date to the applicable accounts of Seller and Buyer. The Sale shall be free and clear of any homeowner's association assessments and all real property taxes (other than those prorated as provided above) enforceable against the Property through the closing date of the Sale. Escrow fees shall be split between Buyer and Seller in the manner customary in the County where the Property is located. Seller shall pay any real property transfer tax. Seller shall pay the cost of a Natural Hazard Disclosure Report, from a vendor selected by Seller, to be furnished to Buyer through escrow. Buyer shall pay and have sole responsibility for compliance with any requirements imposed on the Property or this Sale by any governmental agency(ies), including compliance with any applicable governmental retrofit requirements. Buyer shall pay the cost of recording the deed. Buyer and Seller shall each pay their own expenses of every other type except as specifically provided in this Agreement.

**BANKRUPTCY COURT APPROVAL; OVERBIDDING.** The Sale is subject to notice to creditors, approval by the Bankruptcy Court, and better qualified bids received by Seller through and including the Bankruptcy Court hearing to confirm the Sale. Payment of any and all real estate brokers' commissions is also subject to notice to creditors and approval by the Bankruptcy Court. Buyer acknowledges and agrees that Seller may not seek to obtain the Bankruptcy Court's approval if Seller has determined that it would be in the best interest of the bankruptcy estate not to do so, and Seller holds sole and absolute discretion with regard to the foregoing. Buyer acknowledges and agrees that if the Bankruptcy Court approves the Sale to a different buyer (the "Successful Overbidder") at the hearing on the Sale, the Seller may hold the Buyer's deposit pending close of the Sale to the Successful Overbidder and, if the Successful Overbidder does not timely close its purchase of the Property, the Seller has the right to close the Sale to the Buyer at the

Page 3 of 10

Purchase Price hereunder, or such higher price as the Buyer may have bid at the hearing on the Sale.

**BROKERS.** Seller is represented by Coldwell Banker and ReMax Golden Empire. Buyer is represented by St. Clair Realty. Subject to Bankruptcy Court approval, Seller will pay a real estate broker's commission aggregating 6% of net sales price of the Property as follows: 1.5% to Coldwell Banker, 1.5% to ReMax Golden Empire and 3% to St. Clair Realty in connection with the closing of the Sale. Seller's Brokers and Buyer's Brokers are collectively referred to herein as the "Brokers". No commission or compensation shall be due or payable to Brokers in connection with this Agreement or Sale except from the cash proceeds of an actual Sale of the Property that closes to Buyer. Buyer hereby represents and warrants that, other than the Brokers, Buyer has not dealt with any broker, finder, or other person entitled to any fee, commission, or other compensation in connection with the Sale and Buyer shall indemnify, defend, protect, and hold Seller and the related bankruptcy estate harmless of, from, and against any claims, demands, actions, causes of action, losses, liabilities, costs, and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as Seller may suffer or incur in the event that any claims for any such fees, commissions, or other compensation of any kind are hereafter asserted.

**MATERIAL CHANGE OF CONDITION.** In the event of any material change in the condition of the Property after the date of acceptance of this Counter-Offer, if Buyer demands repair of any resulting actual damage to the Property, Seller may, at Seller's sole option: (i) elect to terminate this Agreement, in which event Buyer's and Seller's obligations to buy or sell shall terminate and the Initial Deposit shall be refunded to Buyer without interest; or (ii) make required repairs at the bankruptcy estate's expense; or (iii) assign any insurance proceeds for the damage to the Property to Buyer as of the close of the Sale; or (iv) credit the cost of such repairs to Buyer through escrow, it being agreed that in the event that Seller elects and complies with subpart (b), (c), or (d) of this paragraph, Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property. Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property. Conditions related to the Covid-19 pandemic shall not constitute a material change in condition under this Counter-Offer.

**REMEDY FOR BUYER'S OR SELLER'S FAILURE TO CLOSE.** Buyer's sole remedy in the event that the Sale fails to close as a result of Seller's inability or failure to close for any reason, including but not limited to the reason of failure to obtain approval of the Sale by the Bankruptcy Court, shall be the mutual release of Buyer's and Seller's obligations to buy or sell and a full refund of the Initial Deposit (plus any increase thereof by Buyer). In the event Buyer fails to close the Sale for any reason other than Seller's default, after Buyer's contingencies have been removed as under this Agreement, Buyer's Initial Deposit (plus any increase thereof by Buyer) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action. This provision shall apply equally to the Initial Deposit (and any increase thereof by Buyer) without interest. If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, signed release instructions from both Buyer and

Page 4 of 10

Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT, BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R.FORM RID).

[Buyer's Initials]

**BANKRUPTCY COURT JURISDICTION.** The United States Bankruptcy Court for the Central District of California, Santa Ana Division shall have sole and exclusive jurisdiction to interpret and enforce the terms of this Agreement and Buyer hereby consents and submits to such exclusive jurisdiction. This Agreement shall be interpreted and enforced pursuant to the laws of the State of California, the United States of America, and title 11 of the United States Code.

**"AS-IS," "WHERE-IS" CONDITION; NO WARRANTIES.** Buyer acknowledges and agrees that, to the maximum extent permitted by law, the sale contemplated by this Agreement is made "as-is," "where-is," and "with all faults," except as specifically provided in this Agreement. Seller and Seller's Brokers have not made, do not make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever, whether express or implied, oral or written, concerning or respecting (i) the value of the Property; (ii) the income to be derived from the Property; (iii) the suitability of the Property, or lack thereof for any activity or use which Buyer may intend to conduct thereon, including any possibilities or limitations for future development; (iv) the habitability, merchantability, marketability, profitability, or fitness for a particular purpose, of the Property, or lack thereof; (v) the manner, quality, state of repair, or lack of repair of the Property; (vi) the nature, quality, or condition of the Property, or any portion, system, or component thereof, including without limitation, water, soil, and geology; (vii) the compliance of the Property or its operation, or lack thereof, with any laws, ordinances, regulations, rules, or orders of any applicable governmental authority or body; (viii) the manner or quality of engineering, design, construction or materials, if any, incorporated into the Property; (ix) the compliance or lack of compliance with any land use, building and safety, or other laws, ordinances, regulations, rules, orders, or other requirements imposed or enforced by any governmental or non-governmental body, including without limitation the Americans with Disabilities Act of 1990; (x) the presence or absence at, on, under, or adjacent to the Property, of materials described as "hazardous substances, hazardous materials, or toxic substances" or by similar terms under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§ 9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. §§1801, et seq.), the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901, et seq.), the Toxic Substance Control Act (15 U.S.C. § 2601, et seq.), the Clean Water Act (33 U.S.C. § 1251, et seq.), California Health and Safety Code §§ 25117 or 25316, or other statutes and laws, all as amended and including all regulations issued thereunder; (xi) the content, completeness or accuracy of any due diligence materials or preliminary report regarding title to the Property; (xii) the conformity or lack of conformity of the improvements to any plans or specifications for the Property, including any plans and

specifications that may have been or may be provided to Buyer; (xiii) the conformity or lack of conformity of the Property to past, current, or future applicable zoning or building requirements; (xiv) any deficiency of any undershoring, drainage, or other aspects, systems, or components of or affecting the Property; (xv) the fact, if applicable, that all or a portion of the Property may be located on or near any natural hazard zone as determined by any governmental agency or body; (xvi) the existence of vested land use, zoning, or building entitlements affecting the Property or any other property; or (xvii) any other matter. Without in any manner limiting the foregoing, Buyer hereby acknowledges and agrees that (i) Seller's Brokers have provided (and will hereafter provide) to Buyer various materials and information relating to the Property, including, without limitation, information and materials relating to the condition of the Property, and (ii) all such materials and information so provided to Buyer by Seller's Brokers shall, for all purposes of this Agreement, be deemed to have been disclosed to Buyer by the Seller, as well.

**BROKERS.** Seller's Brokers herein have not and will not perform any inspections, investigations, or due diligence on behalf of Buyer unless otherwise specified herein. Buyer is informed that Buyer must arrange for any inspections and investigations desired by Buyer utilizing suitable third party professionals selected and compensated by Buyer. In no event shall Seller have any liability or responsibility for any representation, warranty, statement made, or information furnished by Seller's Brokers, or any other person or entity, concerning the Property, this Agreement, or any other matter, unless expressly set forth in writing and signed personally by Seller.

**OPPORTUNITY TO INSPECT; BUYER'S SOLE RELIANCE.** Buyer represents, warrants, acknowledges, and agrees that Buyer has been given the opportunity to inspect and investigate the Property and all other facts and circumstances deemed by Buyer relevant and significant, and to review information and documentation affecting the Property. In deciding to proceed with the Sale, Buyer is relying solely on Buyer's own inspections and investigation of the Property (including by any outside professionals whom Buyer has elected to engage for such services) and review of such information and documentation, and not on any information provided or to be provided by Seller. Buyer further acknowledges and agrees that any information made available to Buyer or provided or to be provided by or on behalf of Seller with respect to the Property was obtained from a variety of sources and that neither Seller nor Seller's Brokers nor any other person has made or makes any representations as to the accuracy or completeness of such information. Buyer hereby fully and irrevocably releases all such sources and preparers of information and documentation affecting the Property which were retained or engaged by Seller or Seller's Brokers from any and all claims that Buyer may now or hereafter have against such sources and preparers of information, for any costs, expenses, losses, liabilities, damages, demands, actions, or causes of action arising from any such information or documentation. NEITHER SELLER NOR BROKERS HAVE PROVIDED OR WILL PROVIDE ANY LEGAL OR TAX ADVICE TO BUYER. Buyer is informed that Buyer must obtain any such advice, if desired by Buyer, from independent professionals selected and engaged by Buyer.

Exhibit 5, Page 84

**PHYSICAL, GEOLOGICAL, PEST CONTROL, AND ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS.**

A.     OTHER THAN AN INTERIOR INSPECTION, BUYER SHALL CONDUCT THOROUGH PHYSICAL, GEOLOGICAL, PEST CONTROL, ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS MAY BE DETERMINED BY BUYER, THROUGH QUALIFIED PROFESSIONALS SELECTED BY BUYER. Seller and Seller's Brokers strongly recommend that Buyer fully exercise and not waive such inspections and investigations.

B.     Buyer shall select and employ, at Buyer's sole expense, a licensed engineer(s), architect(s), contractor(s), geologist(s), pest control licensee(s), environmental consultant(s), or other qualified professional(s), to make inspection(s) and investigations of the Property, including, but not limited to, (i) its general structure, plumbing, heating, air conditioning (if any), electrical system, built-in appliances, cesspool/sewer/septic system, well, roof, soils, foundation, mechanical systems, pool, spa, related equipment and filters, sprinklers, and those other matters affecting the desirability of the Property (all if and only to the extent any such structures, systems, and components are presently a part of the Property); (ii) any actual or potential wood destroying pests or other conditions damaging to the Property or any portion thereof; (iii) environmental hazards, substances, products, or conditions, including without limitation, asbestos, formaldehyde, lead, lead-based paint, contaminated soil or water, fuel, chemical storage tanks, hazardous waste, electromagnetic fields, and radon gas, any of which may constitute a health risk; (iv) the presence or absence of any required governmental permits, inspections, applications, approvals, and certificates of occupancy, and compliance or lack of compliance with building codes and laws applicable to the Property; (v) plans and specifications for the Property; (vi) all applicable zoning, municipal, county, state, and federal, including those affecting the past, current, or any future use of the Property; (vii) deed restrictions and other matters of public record which may govern, restrict, condition, or prohibit the use, alteration, or development of the Property; and (viii) generally, without limitation, any and all other items and matters of whatsoever nature, character, or description, which Buyer deems material to Buyer's interests, in, on, or affecting the Property, and to approve or disapprove said inspection within the period and in the manner set forth in this Agreement.

**RETROFITTING.** All required retrofitting including but not limited to the payment of City Report, installation of smoke and carbon monoxide detectors, low flow toilets and compliance with all governmental agencies shall be Buyer's responsibility for cost and completion.

**COMPLETE AGREEMENT; NO OTHER REPRESENTATIONS OR WARRANTIES.** Seller shall not be liable or bound in any manner by any oral or written statements, representations, or information pertaining to the Property, or the operation thereof, furnished by any real estate broker, agent, employee, contractor, or other person. Buyer further acknowledges and agrees Seller has no obligations to make repairs,

Page 7 of 10

Exhibit 5, Page 85

replacements, or improvements to the Property except as may otherwise be expressly stated herein. Without limiting any other provision hereof, Buyer represents, warrants, and covenants to Seller that, except for Seller's express representations and warranties specified in this Agreement, Buyer is relying solely upon Buyer's own investigation of the Property.

**WRITTEN AFFIRMATION OF SELLER REQUIRED.** Buyer understands that Seller may continue to receive and respond to other offers on the Property and may be making several counter-offers concurrently containing the same or different terms. This Counter-Offer shall not be binding until accepted by Buyer and executed by Buyer and Seller on the signature page below; and then approved by Seller, in Seller's sole discretion, in the form of the Seller's "Affirmation of Agreement" attached hereto as Exhibit "A" which, if so executed by Seller, will constitute Seller's agreement that Seller will sell the Property to Buyer, subject to Bankruptcy Court approval, the rights of any overbidding parties, and the terms and conditions of this Agreement. Buyer further acknowledges that it would be imprudent and unrealistic to rely upon the expectation of entering into a binding agreement regarding the subject matter of this Counter-Offer prior to receipt of Seller's Affirmation of Agreement, and further represents to Seller that any efforts to complete due diligence, or to perform any of the obligations provided herein shall not be considered as evidence of binding intent without Seller's Affirmation of Agreement, and understands that BUYER'S ACCEPTANCE HEREOF SHALL HAVE NO FORCE OR EFFECT PRIOR TO BUYER'S RECEIPT OF SUCH AFFIRMATION OF AGREEMENT SIGNED BY SELLER.

**ATTORNEYS' FEES.** In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

**EXPIRATION OF COUNTER-OFFER.** This Counter-Offer shall expire if not accepted by Buyer by delivering a copy hereof, fully signed and initialed by Buyer, to Seller, on or before 5:00 p.m., Pacific time, on July 19, 2023. Such acceptance shall nevertheless be subject to the receipt of Seller's Affirmation of Agreement.

**AGREED AND ACCEPTED:**

BUYER:

Dated: 7/17/23

By:

Frank St. Clair For Glultand Vista Gp.

SELLER (subject to execution of Seller's Affirmation of Agreement):

Dated: July 17, 2023

By:

David M. Goodrich, in his capacity as Chief Restructuring Officer, chapter 11 debtor and debtor in possession

## EXHIBIT "A"

### SELLER'S AFFIRMATION OF AGREEMENT

Seller hereby acknowledges Buyer's acceptance of the foregoing Counter-Offer and affirmatively agrees to sell the Property to Buyer on the terms and conditions of the foregoing Agreement, but subject to Bankruptcy Court approval and any qualified overbidders. Seller shall revoke any other outstanding Counter-Offers made to other prospective buyers or make the same subject and subordinate to this Agreement.

SELLER

Dated: July 17, 2023

By: _____

David M. Goodrich, in his capacity as Chief Restructuring Officer, chapter 11 debtor and debtor in possession



**ESCROW SERVICES, INC.**

15250 Ventura Blvd, Suite 715
Sherman Oaks, CA 91403

Phone: (310) 550-6055
Fax: (310) 550-6130

**A & A ESCROW SERVICES, INC. IS LICENSED BY THE CALIFORNIA DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION, LICENSE NUMBER 963 2597**

**ADDENDUM TO COUNTER OFFER DATED JULY 17, 2023**

Antonia Delgado
Sr. Escrow Officer

**Escrow No.:** 105744-AA
**Date:** July 18, 2023

**Giuliana Vista GP, a General Partnership**, (herein known as Buyer) hereby acknowledge his/her agreement to purchase from **2nd Chance Investment Group, LLC**, (herein known as Seller), the real property set forth hereinbelow per terms, conditions, consideration and instructions hereinafter stated. We, the undersigned, hand you a copy of the Counter Offer dated July 17, 2023, (originals of which have been executed by all parties and retained by broker). **Date of Acceptance: July 17, 2023**.

**TERMS OF TRANSACTION**

| | |
|---|---:|
| Buyer has handed A & A ESCROW SERVICES, INC. initial deposit in the amount of | 7,080.00 |
| Prior to close of escrow, buyer will deposit a balance of down payment in the sum of | 228,920.00 |
| **Total Consideration** | **$236,000.00** |

Together with closing costs and funds necessary to close this transaction.

Furthermore, I/We will execute and deliver any instruments and/or funds which this escrow requires to show title as called for, all of which you are instructed to use **by close of escrow**, provided you hold a policy of title insurance with the usual title company's exceptions, issued by **Orange Coast Title Company** with a liability of not less than **$236,000.00**, covering property described as follows:

**SCHEDULED CLOSE OF ESCROW:  If the Bankruptcy Court confirms the Sale to the Buyer, the closing shall take place as soon as practicable after entry of the order approving the Sale, but no later than the later to occur of (i) the first business day after fourteen (14) calendar days following the entry of the operative Order of the Bankruptcy Court approving the Sale or (ii) if the effectiveness of the Order of the Bankruptcy Court approving the Sale is stayed, the first business day after the Order is no longer stayed.**

LEGAL DESCRIPTION AS FURNISHED BY INSURING TITLE COMPANY:

**A RESIDENTIAL PROPERTY**, WHICH PROPERTY SELLER REPRESENTS IS COMMONLY KNOWN AS:
**1016 Portal Ave., Bakersfield, CA 93308**
**ASSESSORS PARCEL NUMBER: 117-222-13-00-7**

**TITLE POLICY TO SHOW TITLE VESTED IN:**  Giuliana Vista GP, a General Partnership (exact vesting to be furnished in writing as soon as possible to provide for the drawing of necessary documents)

**SELLERS:**

2nd Chance Investment Group, LLC

**BUYERS:**

Giuliana Vista GP, a General Partnership

By: _____
David M. Goodrich, in his capacity as Chief Restructuring Officer, Chapter 11 debtor and debtor in possession

By: _____
Frank Maurice St. Clair, Authorized Signer

Exhibit 5, Page 89

Date:  July 18, 2023                                                                                        Escrow No.:  105744-AA

Page  2 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

**FREE FROM ENCUMBRANCES EXCEPT:**

(1)    All General  and special  Taxes for the fiscal year 2023 through 2024, including bonds, special assessments, assessed against former owner, and/or supplemental  taxes assessed pursuant to the provisions of Chapter 498, Statutes of the State of California.  (Change of Ownership will affect the taxes to be paid.  A Supplemental Tax Bill will be issued and BUYER accepts  all responsibility  for all additional taxes due because  of said reassessment. TAX BILLS ISSUED AFTER THE CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYERS AND SELLERS.)

(2)    Covenants, conditions, restrictions, reservations, rights, rights of way, and easements, and any oil, gas, or mineral reservations now of record, if any.

**INSTRUCTIONS TO ESCROW:**

(1)    **CLOSING FUNDS:**  Each party acknowledges that the close of escrow is conditioned on check clearances. All funds required to be deposited for the close of escrow must be in the form of a **direct electronic "wire" transfer** to **A & A Escrow Services, Inc.** Trust Account, and be deposited at least two (2) business days prior to close of escrow. **(PLEASE CONTACT ESCROW HOLDER  FOR WIRING INSTRUCTIONS  AND CALL TO VERIFY PRIOR TO INITIATING THE WIRE TRANSFER).**

(2)    **IN  THE EVENT**  EITHER  PARTY REQUESTS  CANCELLATION  OF  THIS ESCROW  AT ANY TIME, ALL PARTIES ARE AWARE THAT THIS ESCROW WILL NOT BE CONSIDERED CANCELLED, AND NO FUNDS WILL BE DISBURSED  UNTIL ESCROW HOLDER  HAS RECEIVED MUTUALLY SIGNED CANCELLATION INSTRUCTIONS FROM BUYERS AND SELLER.

(3)    **PRORATIONS:**  Prorate as of Close of Escrow
   •    Real Property taxes based on latest tax bill or on amount furnished by title company.

(4)    The parties herein acknowledge that Frank Maurice St. Clair, is a licensed Real Estate Agent and is acting as an Agent for his/her account in this transaction.

(5)    Rather than as stated on page 4 of the Counter Offer dated July 17, 2023, Buyer's agent commission will be made payable to Frank Maurice St Clair and not St. Clair Realty.

THESE ESCROW INSTRUCTIONS ARE NOT INTENDED TO SUPERSEDE THE REAL ESTATE PURCHASE CONTRACT AND RECEIPT FOR DEPOSIT, BUT TO CARRY OUT ITS TERMS AND CONDITIONS IN CONSUMMATING THE PURCHASE AND SALE, EXCEPT AS MAY BE AMENDED OR MODIFIED BY THE MUTUAL WRITTEN INSTRUCTIONS OF THE PARTIES.

IMPORTANT:  IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW, SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED.  A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.


**SELLERS:**                                                            **BUYERS:**

2nd Chance Investment Group, LLC                    Giuliana Vista GP, a General Partnership


By: _____        By:  _____
     David M. Goodrich, in his capacity as Chief              Frank Maurice St. Clair, Authorized Signer
     Restructuring Officer, Chapter 11 debtor and debtor in
     possession

Date:  July 18, 2023                                                                                      Escrow No.:  105744-AA

Page  3 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

## GENERAL PROVISIONS

**1.      AGREEMENT TO BE BOUND BY GENERAL PROVISIONS:**   The Parties agree to execute these instructions and any supplemental instructions presented by Escrow Holder confirming their agreement to be bound to any additional terms and conditions of Escrow Holder, including Escrow Holder's general provisions, and authorize Escrow Holder to resign from processing this escrow transaction if mutual agreement cannot be reached between the Parties and Escrow Holder relative to the terms and conditions of Escrow Holder's duty.

**2.      COMMENCEMENT OF ESCROW HOLDER DUTY:**   This escrow transaction is deemed open, and Escrow Holder's duty commences, upon receipt of mutual or matching escrow instructions, signed by all Parties and the initial, good faith deposit are deposited with Escrow Holder.  Said escrow instructions shall be incorporated in the purchase agreement or, if the purchase agreement does not include escrow instructions or no purchase agreement is entered into by the Parties, shall be drafted by Escrow Holder at the direction of the Parties.

**3.      DUTIES OF ESCROW HOLDER:**  The Parties agree that Escrow Holder has only those responsibilities inherent of an escrow service provider and that there are no other legal relationships established between Escrow Holder and the Parties by way of this escrow transaction.  Those duties are limited to the safekeeping of such money and documents received by Escrow Holder and for the disposition and/or disbursement of same in accordance with the written instructions accepted by Escrow Holder in this Escrow.  Escrow Holder shall not be liable for any damages, losses, costs, or expenses incurred by any Party in the handling and processing of this escrow transaction as a result of any act or failure to act made or omitted in good faith or for any action taken that Escrow Holder shall in good faith believe to be genuine, excepting such as may arise through or be caused by Escrow Holder's willful neglect or gross misconduct.

**4.      PROMISE TO PAY AND INDEMNIFY:**   The Parties hereby jointly and severally promise and agree to pay promptly on demand, as well as to indemnify Escrow Holder and hold Escrow Holder harmless from and against all litigation and interpleader costs, damages, judgments, attorney's fees, expenses, obligations, and liability of every kind which in good faith Escrow Holder may incur or suffer in connection with or arising out of this escrow transaction, whether said litigation, interpleader, obligation, liability or expense arises during the performance of this escrow transaction or subsequent thereto, directly or indirectly.  The Parties agree to pay Escrow Holder a reasonable fee for all time spent by officers or employees of Escrow Holder in connection with any dispute resolution action taken relative to this escrow transaction including but not limited to time spent researching, reviewing and/or testifying relative thereto.

**5.      ATTORNEY'S FEES:   IF ESCROW HOLDER REQUIRED TO RESPOND TO ANY LEGAL SUMMONS OR PROCEEDING OR IF ANY ACTION IN INTERPLEADER OR DECLARATORY RELIEF IS BROUGHT BY OR AGAINST ESCROW HOLDER, THE PARTIES JOINTLY AND SEVERALLY AGREE TO PAY ALL COSTS, EXPENSES AND REASONABLE ATTORNEY'S FEES EXPENDED OR INCURRED BY ESCROW HOLDER. A LIEN IS HEREBY CREATED IN ESCROW HOLDER'S FAVOR TO COVER SAID ITEMS.**

**IN THE EVENT ANY PARTY TO THIS ESCROW TRANSACTION, OR ESCROW HOLDER, INSTITUTES OR DEFENDS ANY LITIGATION ARISING OUT OF THIS ESCROW TRANSACTION, AT LAW OR IN EQUITY, THE PREVAILING PARTY, AS DETERMINED BY THE COURT, SHALL, IN ADDITION TO SUCH OTHER RELIEF AS MAY BE AWARDED, BE ENTITLED TO RECOVER REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES OF SUCH LITIGATION.**

SELLERS:                                                      BUYERS:

2nd Chance Investment Group, LLC                              Giuliana Vista GP, a General Partnership

By: _____          By: _____
    David M. Goodrich, in his capacity as Chief              Frank Maurice St. Clair, Authorized Signer
    Restructuring Officer, Chapter 11 debtor and debtor in
    possession

Date:  July 18, 2023                                                               Escrow No.:  105744-AA

Page  4 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

If any party  to this transaction shall require  any of the officers, agents, and/or employees of Escrow to respond  to any subpoena or other order to appear in the action or proceeding in which Escrow's breach or fault is not an issue, the party requiring such appearance agrees to indemnify and hold Escrow harmless  from and against all costs, expenses and reasonable attorneys' fee expended or incurred by Escrow in connection with such appearance. The party requiring such appearance shall pay to Escrow of such officer, agent or employee, in addition to the amounts from time to time provided by law, the sum of $300.00 as witness fees for each day or part thereof that the officer, agents or employees attend of Escrow is actually required to attend. As a condition precedent to the obligation of Escrow and the obligation of any of its officers, agents  or employees attend pursuant to such subpoena or order,  the party requiring such appearance shall, concurrently with the service of the subpoena or order, pay to the party required to attend to fee to which he or it is entitled hereunder for one (1) day's actual attendance.

**6.       UNJUST ENRICHMENT:**  In the event any Party to this escrow transaction received funds or is credited funds to which they are not entitled, said Party agrees, upon written demand, to return said funds immediately to escrow for correct disbursement.

**7.       DEPOSIT OF FUNDS:**  Escrow Holder is instructed to deposit all funds received by Escrow Holder with any state or national bank in a trust account in the name of Escrow Holder, without any liability for payment of interest.  All deposits made by personal check, cashier's check, certified check, or deposit other than wire transfer are subject to clearance and payment by the financial institution upon which they are drawn.  Funds deposited with Escrow Holder in the form of check or similar instrument will be identified as collected funds when the Escrow Holder's financial institution confirms that the funds are available for disbursement.

**BE ADVISED THAT CYBER CRIMINALS  ARE USING PHISHING TECHNIQUES (AKA USING THE INTERNET TO ACQUIRE SENSITIVE INFORMATION SUCH  AS USERNAMES, PASSWORDS, AND CREDIT CARD DETAILS AND SOMETIMES,  INDIRECTLY,  MONEY,  OFTEN  FOR  MALICIOUS  REASONS,  BY  MASQUERADING  AS  A TRUSTWORTHY ENTITY  IN AN ELECTRONIC COMMUNICATION) TO TRY AND DIVERT WIRES COMING INTO AND GOING  OUT OF ESCROW COMPANIES.   TO AVOID SUCH SCAMS, PRIOR TO SENDING  ANY WIRE  TO ESCROW HOLDER, THE WIRING PARTY MUST CONTACT ESCROW HOLDER TO CONFIRM THE APPROPRIATE WIRING INSTRUCTIONS.**

**8.       GOOD FUNDS LAW:**  Pursuant to California Insurance Code Section 12413.1, known as the Good Funds Law, the Parties hereto are made aware that closing funds deposited by the Parties and/or lender must be cleared funds prior to close of escrow. This law places some very specific constraints upon the time frames for funds to be made available for disbursement.   Close of escrow cannot  occur before funds  are cleared  and immediately collectible  and available for withdrawal, which clearance can range from being immediately available upon receipt to seven (7) days depending on the form deposit.   The Parties hereby release Escrow Holder  of any responsibility, claim, and/or liability  in connection with such a delay caused by the manner in which closing funds or lender's funds are deposited.

**9.       RELEASE OF FUNDS:**   In the event the Parties  to this escrow transaction instruct Escrow Holder  to release funds prior to close of escrow, regardless of the fact that this escrow transaction has not closed and/or documents are not yet recorded, the Parties hereby release, relieve, indemnify and agree to hold harmless Escrow Holder from any and all liability and/or responsibility, both legally and equitably, which  may arise, including but not limited  to any legal actions, attorney's fees, costs or claims of any kind, either now, during the course of this escrow transaction, or subsequent to the close of this escrow transaction  by reason  of Escrow Holder complying with said release  of funds, and Escrow Holder

**SELLERS:**                                                    **BUYERS:**

2nd Chance Investment Group, LLC              Giuliana Vista GP, a General Partnership


By: _____      By: _____
      David M. Goodrich, in his capacity as Chief          Frank Maurice St. Clair, Authorized Signer
      Restructuring Officer, Chapter 11 debtor and debtor in
      possession

Exhibit 5, Page 92

Date:  July 18, 2023                                                                                    Escrow No.:  105744-AA

Page  5 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

shall not be responsible to assist in the recovery of same in the event that this escrow transaction is not consummated. Escrow Holder is authorized to release funds, if applicable, from money on deposit to pay for any credit report, appraisal, City Report, lender, or association statement, demand, transfer fees or documents which may be required to be paid in advance of closing.  Funds released prior to the close of escrow are non-refundable regardless of the consummation of this escrow.

**10.    COSTS AND CHARGES:**   From funds due Seller at the close of escrow, deduct  and pay encumbrances of record, plus accrued interest, charges and prepayment penalties, if any, bonds and/or assessments, and any delinquent monthly installment(s) on existing encumbrance(s) as disclosed by beneficiary statement(s), and any county and/or city transfer fees, costs and charges in this transaction which may include, but are not limited to: the Owner's Policy of title insurance, documentary  transfer tax, reconveyance fees, recording  fee's, Seller's customary  escrow fees, fees for preparation, notarization and recording of documents as necessary on Seller's behalf, wire fees, messenger and overnight delivery fees, Seller's portion of the sub-escrow fee, and Broker compensation as per separate agreement.

Buyer agrees  to pay all Buyer's usual costs and charges  in this transaction which  may include, but  are not limited to: Buyer's customary escrow fees, document preparation fees, email document fees, wire fees, messenger and overnight delivery fees, all fees and charges in connection with the new loan(s), Buyer's portion of the sub-escrow fee, recording charges, and inspection fees.

**11.    ARCHIVE FEE:**  The Parties are advised that Escrow Holder charges an archive fee of $50.00 for each refinance escrow transactions, $50.00  for sale transactions charged  to each buyer and seller side, and $8.00  for any file that cancels for the purpose of managing and maintaining records of this escrow transaction as required by California law.

**12.    STATUTE OF LIMITATIONS:**   These instructions  are to be construed  and interpreted according  to California Law.   NO ACTION SHALL  LIE AGAINST  ESCROW HOLDER  FOR ANY CLAIM, LOSS, LIABILITY  OR ALLEGED CAUSE OF ACTION  OF ANY KIND  OR NATURE WHATSOEVER, HOWEVER  CAUSED  OR OCCURRED,  IN THIS ESCROW TRANSACTION  OR IN CONNECTION   WITH THE HANDLING  OR PROCESSING  OF THIS ESCROW TRANSACTION, UNLESS BROUGHT WITHIN TWELVE (12) MONTHS AFTER THE CLOSE  OF ESCROW  OR ANY CANCELLATION OR TERMINATION OF ESCROW FOR ANY REASON WHATSOEVER.

**13.    WRITTEN INSTRUCTIONS REQUIRED:**  Pursuant to California  Civil Code Section 1624,  no notice, demand, supplemental escrow instruction,   or amendment   of the escrow instructions   (hereinafter collectively "supplemental instructions") shall be effective unless given in writing by the Parties affected thereby.  Escrow Holder shall not act upon or consider such supplemental instruction to have any validity until same is fully executed and delivered to Escrow Holder by all Parties concerned.

**14.    AUTHORIZATION TO ACCEPT ELECTRONIC SIGNATURES  AND DOCUMENTS:**    In accordance with California's  Uniform Electronic Transactions  Act (the "Act"),  the Parties hereby authorize  Escrow Holder to accept electronic and/or digital signatures and records, transmitted via facsimile or other electronic means (collectively "electronic signatures")  into this escrow  as originals.    The Parties expressly agree that  this transaction can  be conducted electronically, at the option of the Parties,  to the fullest extent possible under the Act and recording laws.   The Parties agree to transmit original,  wet signatures on (1) all documents  to be recorded, (2) all documents excluded  from being enforceable under the Act, and (3) all documents required to be in original form  by any regulatory agency.  The Parties agree to verify any and all electronic signatures upon request of Escrow Holder.

**SELLERS:**                                                       **BUYERS:**

2nd Chance Investment Group, LLC                   Giuliana Vista GP, a General Partnership

By: _____        By: _____
     David M. Goodrich, in his capacity as Chief           Frank Maurice St. Clair, Authorized Signer
     Restructuring Officer, Chapter 11 debtor and debtor in
     possession

Date:  July 18, 2023                                                                                    Escrow No.:  105744-AA

Page  6 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

**15.    ACTS OUTSIDE  OF ESCROW  AND MEMORANDA ITEMS:**  Whenever  provision is made herein for the payment of any sum, the delivery  of any document, or the performance  of any act "outside of escrow", Escrow Holder shall have no responsibility therefor, shall not be concerned therewith, and is specifically relieved of any obligation relative thereto.  Escrow Holder is expressly instructed not to act upon or be concerned with or liable for those items designated in the purchase agreement, escrow instructions, or supplemental instructions as memoranda items between the Parties, nor any other agreement between  the Parties  not expressly addressed  to Escrow Holder in the form of a supplemental instruction.

**16.    NO DUTY TO DISCLOSE OR INSPECT:**  Escrow Holder's sole duty relative to disclosures shall be the payment of invoices presented to Escrow Holder.  Escrow Holder is not to be concerned with the giving of any disclosures except as expressly required to be given by an escrow service provider pursuant to Federal or State law, including but not limited to those disclosures related to lending, zoning, land division, property condition,  or usury.  Neither will Escrow Holder conduct any lien search or title searches relative to personal property in connection with the sale or transfer of personal property through this escrow transaction, if any.  Escrow Holder urges the Parties to seek appropriate counsel from an attorney or licensed broker to ascertain what disclosures and/or laws, if any, need to be complied with prior to close of escrow.  The Parties jointly and severally agree to indemnify  and hold harmless  Escrow Holder by reason of any misrepresentation or omission by a Party or agents  or failure of the Parties to this escrow transaction to comply with the rules and/or regulations of any governmental agency, whether state, federal, county, municipal, or otherwise and Escrow Holder is not to be concerned with enforcement of same.  If presented with an invoice in connection with any disclosure Escrow Holder is authorized to pay same without further instructions.  Escrow Holder will make no physical inspection of the real property and/or personal property that is the subject of this escrow transaction, and Escrow Holder is not to be concerned with or liable for the condition of same.

**17.    FEDERAL TAX REPORTING:**   The Parties acknowledge  their awareness  of the fact that, upon transfer of property, Escrow Holder must provide information pertaining to the escrow transaction to the Internal Revenue Service as required by Internal Revenue Code Section 6045(e) relative to the production of 1099 forms.  The Parties agree to provide Escrow Holder all information necessary to produce the tax reporting documentation in compliance with Federal Law.

**18.    FEDERAL TAX WITHHOLDING:**  The sale of a U.S. real property interest by a foreign person is subject to the Foreign Investment in Real Property Tax Act of 1980 ("FIRPTA") income tax withholding.  This law authorizes the United States to tax foreign persons on the sale of U.S. real property interests. Persons purchasing U.S. real property interests from foreign persons, certain purchasers' agents,  and settlement officers may be required to withhold a portion of the amount realized. Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The purchaser is liable  if the withholding is  not made when required.  The Parties agree to execute and deliver to Escrow Holder any instrument, affidavit and statement or to perform any act reasonably necessary to carry out the provisions of FIRPTA and regulations promulgated thereunder.

**19.    STATE TAX WITHHOLDING:**  The following disclosure is being provided pursuant to California law for all escrow transactions wherein a transfer of title is being completed as part of the escrow transaction.  In accordance with Section 18662 of the Revenue and Taxation Code, a buyer may be required to withhold an amount equal to 3⅓ percent of the sales price, or an optional gain on sale withholding amount certified by the seller in the case of a disposition of California real property interest  by either: (a) A seller who is an individual, trust, estate,  or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the sellers; or (b) A corporate seller that has no permanent place of business in California immediately after the transfer of title to the California property.  The buyer may become

SELLERS:                                                          BUYERS:

2nd Chance Investment Group, LLC                Giuliana Vista GP, a General Partnership


By: _____        By: _____
    David M. Goodrich, in his capacity as Chief            Frank Maurice St. Clair, Authorized Signer
    Restructuring Officer, Chapter 11 debtor and debtor in
    possession

Date:  July 18, 2023                                                                Escrow No.:  105744-AA

Page  7 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

subject to penalty  for failure to withhold  an amount equal  to the greater of 10 percent of the amount required  to be withheld or five hundred dollars ($500). However, notwithstanding any other provision included in the California statutes referenced above, no buyer will be required to withhold any amount or be subject to penalty for failure to withhold if any of the following apply: (a) The sale price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000); (b) The seller executes a written certificate, under the penalty of perjury, certifying that the seller is a corporation with a permanent  place of business in California; (c) The seller, who is an individual, trust, estate, or a corporation without a permanent  place of business in California, executes a written certificate, under the penalty of perjury, of any of the following: (i) The California real property being conveyed is the seller's or decedent's principal residence (within the meaning of Section 121 of the Internal Revenue Code (IRC)); (ii) The last use of the property being conveyed was use by the transferor as the transferor's principal residence (within the meaning of IRC Section 121); (iii) The California real property being conveyed is, or will be, exchanged for property of like kind (within the meaning of IRC Section 1031), but only to the extent of the amount  of gain not required  to be recognized for California income  tax purposes under  IRC Section 1031; (iv) The California  real property  has been compulsorily  or involuntarily converted (within the meaning of IRC Section 1033) and the seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition  of gain  for California income  tax purposes under  IRC Section 1033;  or (v) The California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes.  The seller is subject  to penalty  for knowingly  filing a fraudulent certificate  for the purpose  of avoiding  the withholding requirement.

**20.    SUPPLEMENTAL PROPERTY TAXES:  PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1102.6C, THE FOLLOWING DISCLOSURE  IS HEREBY  PROVIDED: "CALIFORNIA  PROPERTY  TAX LAW REQUIRES THE ASSESSOR TO REVALUE  REAL PROPERTY  AT THE TIME  THE OWNERSHIP  OF THE PROPERTY  CHANGES. BECAUSE OF THIS LAW, YOU MAY RECEIVE ONE OR TWO SUPPLEMENTAL TAX BILLS, DEPENDING ON WHEN YOUR LOAN CLOSES. THE SUPPLEMENTAL TAX BILLS ARE NOT MAILED TO YOUR LENDER. IF YOU HAVE ARRANGED FOR YOUR PROPERTY  TAX PAYMENTS  TO BE PAID THROUGH  AN IMPOUND  ACCOUNT,  THE SUPPLEMENTAL TAX BILLS WILL  NOT BE PAID BY YOUR LENDER. IT IS YOUR RESPONSIBILITY  TO PAY THESE SUPPLEMENTAL  BILLS  DIRECTLY  TO THE  TAX  COLLECTOR. IF  YOU  HAVE  ANY  QUESTIONS CONCERNING THIS MATTER, PLEASE CALL YOUR LOCAL TAX COLLECTOR'S OFFICE."**

If there is an impound  account for taxes, the borrower is advised to inquire with the lender to determine  if the supplemental tax bill will be paid by the lender from the impound account.  Tax bills issued AFTER the close of escrow shall be handled  or prorated directly between the Parties outside of escrow.  Escrow Holder shall prorate taxes at the close of  escrow  based on the latest available tax statement  and is relieved of any and all liability for taxes and/or prorations necessary after close of escrow as a result of supplemental tax bills issued by the tax assessor.

**21.    PRELIMINARY CHANGE  OF OWNERSHIP REPORT:**  California Revenue and Taxation Code Section 480.3 requires that a Preliminary Change of Ownership  Report be completed  and certified by the transferee and filed concurrently with the recording of any document that reflects a change of ownership in real property.  The Parties herein agree to complete  and  sign said report and deliver same to Escrow Holder for filing, as necessary.    The Parties understands and acknowledges  that the recorder's office may charge  a non-refundable  fee of twenty dollars ($20.00) should the fully completed/certified report not accompany the conveyance document.  If the recorder's office charges such a fee, the Party benefitted by the recording of the transfer document shall be charged the fee at close of escrow.  In such event, a Standard Change of Ownership Statement will be mailed to the transferee by the office of the county assessor. Further, if Buyer fails to file said form upon the request of the county assessor after the close of escrow, severe penalties

**SELLERS:**                                                    **BUYERS:**

2nd Chance Investment Group, LLC                 Giuliana Vista GP, a General Partnership


By: _____      By: _____
      David M. Goodrich, in his capacity as Chief          Frank Maurice St. Clair, Authorized Signer
      Restructuring Officer, Chapter 11 debtor and debtor in
      possession

Date:  July 18, 2023                                                                    Escrow No.: 105744-AA

Page  8 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

may be assessed against the Buyer.

**22.     EXCHANGE TRANSACTIONS:**  In any escrow transaction wherein one  or more of the Parties is performing  a 1031 Exchange transaction, all references  to Seller and Buyer shall respectively  be amended  to read Exchangor and Exchangee, where necessary and appropriate.

**23.     PROPRIETARY INFORMATION:**  Escrow Holder is relieved of any duty, responsibility, and/or liability relative to disclosure of the proprietary information  of the Parties and/or agents  to this or any other escrow transaction.   Such propriety information includes, but is not limited to, any (A) sale, resale, loan, exchange, or other transaction involving the real property and/or personal property that is the subject of this escrow transaction or (B) benefit, including but not limited to financial gain or profit, involving the real property and/or personal property that is the subject of this escrow transaction. Escrow Holder shall be relived of any and all liability if such proprietary information is disclosed as necessary for Escrow Holder to comply with the instructions of the Parties or if requested by a lender, agent, governmental agency, or any other entity entitled  to such propriety  information.   Escrow  Holder is specifically authorized to furnish copies  of all escrow instructions, amendments thereto, preliminary title reports, closing statements and/or related documentation to the agents and/or attorneys representing any party to this escrow transaction, as may be requested by them, without obtaining any further authorization from Buyer or Seller.

**24.     NOTIFICATION  OF DISHONORED  CHECKS** :  If any check submitted  to Escrow  Holder is dishonored upon presentment for payment,  Escrow Holder is authorized  to notify all Parties and/or  their respective agents  of such nonpayment.  The Party receiving credit for the deposit agrees to pay a reasonable fee to Escrow Holder for the returned check.

**25.     ACCEPTANCE AND VERACITY  OF SIGNATURES:**  Escrow Holder shall  not be responsible  or liable  in any manner for the sufficiency or correctness as to form, manner  of execution,  or validity of any document deposited with Escrow Holder relative to the identity, authority, or rights of any person executing the same.  All signatures submitted into this escrow transaction shall be construed as unconditional approval of the within document as to form, content, terms, and conditions.  Escrow Holder shall have no obligation to verify, and will not verify, the authenticity of any signature on any document made relative to this escrow transaction.  Escrow Holder shall not be liable or responsible for any loss that may occur because of forgeries, fraud, or false representations made or involving the Parties to this escrow transaction, any third Parties, the agents or any other person or entity.

**26.     ACCEPTABILITY OF COUNTERPARTS:**  These instructions  may be executed  in counterparts, each  of which shall be deemed  an original regardless  of the date  of its execution and delivery.   All such counterparts together shall constitute one and same document.

**27.     STANDARDIZED FORMS:**  Escrow Holder is to use Escrow Holder's usual document forms or the usual forms of any reliable forms company  or any title company and  in the instructions insert dates and terms  on the instruments if incomplete when executed.  Excepting Escrow Holder's own form, Escrow Holder shall not be liable for the correctness or sufficiency of such standardized preprinted forms.

**28.     NEW FINANCING:**  Escrow Holder  is not  to be responsible  or concerned  with the terms  of any new financing obtained by Buyer or the contents of any loan documents.  Escrow shall have no liability or responsibility relative to the new financing except  to order transmission  of loan documents  to Escrow Holder, transmit  the loan documents  to the

**SELLERS:**                                                        **BUYERS:**

2nd Chance Investment Group, LLC                Giuliana Vista GP, a General Partnership

By: _____          By: _____
        David M. Goodrich, in his capacity as Chief              Frank Maurice St. Clair, Authorized Signer
        Restructuring Officer, Chapter 11 debtor and debtor in
        possession

Date:  July 18, 2023                                                                  Escrow No.:  105744-AA

Page  9 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

appropriate Parties for execution, and transmit the executed loan documents to the lender.  The Parties understand and agree that Escrow Holder is not involved or concerned with the approval or processing of any loan or the contents and effect of any loan documents prepared by a lender.  Escrow Holder is not responsible for any lender's instructions which require Escrow Holder to perform obligation or duties beyond those required by law or which requires Escrow Holder to assume liability for the lender's regulatory duties and responsibilities.  Further, Escrow Holder shall have no obligation to agree to instructions from a lender which threaten to transfer liability or penalize Escrow Holder.

**29.    MASTER/DUAL CLOSING STATEMENT:**  The Parties are hereby made aware that certain lenders may require a copy of the Master/Dual  Closing Statement,  Seller Closing Disclosure  and/or records showing all deposits and disbursements occurring  as part of this escrow transaction.  Escrow Holder is hereby authorized and instructed by the Parties to release the Master/Dual  Closing Statement    and other lender requested document as required.  Said information may be disclosed to the Buyer as part of the Buyer's Closing Disclosure by the lender.

**30.    RESPA GUIDELINES:**  The undersigned Parties acknowledge that in order for Escrow Holder to comply with the Real Estate Settlement Procedures Act ("RESPA") some of the costs and charges may need to be itemized on the lending disclosures in a fashion that differs from the terms agreed to by the parties.  Said costs and charges may include, but are not limited to, the title policy fees and documentary transfer taxes.  Escrow Holder is hereby authorized and instructed to comply with these RESPA guidelines, as necessary.  Said charges and credits shall not change the amount of any other credits between the Parties.

**31.    PROPERTY INSURANCE:**  Excluding transactions whereby the subject property is a parcel of vacant land, Buyer is made aware that, prior to close of escrow, property insurance coverage should be obtained with sufficient liability and replacement cost.  If the Buyer is obtaining  new financing insurance coverage  will be a condition of the loan prior to funding.  Buyer shall deposit sufficient funds to pay for the first year's premium per invoice submitted by insurance agent.  In the event subject property  is covered by a blanket master policy of insurance, Escrow Holder is to order a certificate thereof for the Buyer and order loss payable endorsements for beneficiaries of trust deeds being recorded herein. Should Buyer desire fire insurance on personal property, they are to obtain same outside of escrow.  If Buyer is purchasing the subject property  as an all cash transaction, without financing, Escrow Holder shall have no responsibility whatsoever to order a certificate of insurance.

**32.    ASSIGNMENT OF PROPERTY INSURANCE:**  Seller represents and warrants, and Escrow Holder shall be fully protected in assuming that, as to any property insurance policy handed to Escrow Holder, such policy is in force, has not be hypothecated, and that all necessary premiums therefore have been paid.  Escrow Holder will transmit for assignment, any insurance policy handed Escrow for use in this escrow transaction, but Escrow Holder shall not  be responsible for verifying the acceptance of the assignment and policy by the insurance company.  ESCROW HOLDER WILL MAKE NO ATTEMPT TO VERIFY  THE RECEIPT OF THE REQUEST FOR ASSIGNMENT  BY THE ISSUING COMPANY.   The Buyer is hereby placed  on notice that if the insurance company should  fail to receive said assignment,  the issuing company may deny coverage for any loss suffered by Buyer.  IT IS THE OBLIGATION OF THE BUYER  OR HIS REPRESENTATIVE TO VERIFY  THE ACCEPTANCE  OF THE ASSIGNMENT  OF THE POLICY  BY THE ISSUING COMPANY.

**33.    TITLE INSURANCE:**  Escrow Holder shall order title insurance from the title company designated by the Parties.  If requested in writing  by the mutual instructions of the Parties  or upon the request of any lender, Escrow Holder shall provide copies of the preliminary report of title to them without liability as to its contents.  The Parties acknowledge that

**SELLERS:**                                                    **BUYERS:**

2nd Chance Investment Group, LLC                Giuliana Vista GP, a General Partnership


By: _____        By: _____
David M. Goodrich, in his capacity as Chief          Frank Maurice St. Clair, Authorized Signer
Restructuring Officer, Chapter 11 debtor and debtor in
possession

Date:  July 18, 2023                                                                    Escrow No.:  105744-AA

Page 10 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

the title insurance policies to be issued by the title company shall be delivered directly from the designated title company to the appropriate Parties  after the close  of escrow.   The Parties agree that matters regarding that  title insurance  are between the title company and the insured Party and not Escrow Holder.

**34.    AUTHORIZATION TO USE SUB-ESCROW AGENT:**  Escrow Holder is authorized to use the title company as a sub-escrow agent for the handling of funds and documents in this escrow transaction.  Escrow Holder is to comply with all sub-escrow agent's instructions and requirements, and Escrow Holder is authorized to deliver funds or documents to said sub-escrow agent  at any time during the course  of this escrow transaction as Escrow Holder deems appropriate.   The Parties agree to pay the fee for such sub-escrow service as charged by the title company.

**35.    BENEFICIARY DEMANDS  AND STATEMENTS:**  From funds due, Escrow Holder  is authorized  to pay at the close of escrow, any encumbrances of record, plus accrued interest, charges and bonus if any, and/or pay any delinquent monthly installments(s) on existing encumbrance(s) as disclosed by a beneficiary demand or statement without additional approval.  Should a Party wish to pre approve any such beneficiary demand or statement, the Party shall deliver separate and specific written instruction  to Escrow Holder prior to  the close  of escrow.  Escrow Holder is not responsible for the contents or accuracy of any beneficiary demand or statement delivered to Escrow Holder by the beneficiary.  The Parties are aware that payoffs of encumbrances  are done  by the insuring title company, not Escrow Holder, and agree to seek any redress directly from the beneficiary and/or title company should a dispute arise regarding said payoff.  The Parties are aware some lenders require payment of loans to offices outside of the area and/or outside of the state.  The Parties are advised that interest  will continue  to accrue on  any outstanding loans until the loan is paid in full, regardless  of the date of close of escrow.   The title company  may charge messenger  fees, wire fees, and/or overnight fees, which the benefitted Party agrees to pay at close of escrow.

**36.    LINE OF CREDIT  PAYOFF INDEMNIFICATION  AND CANCELLATION:**    The undersigned  Parties hereby indemnify and hold the title company and Escrow Holder harmless from incurring any costs or additional charges, interest, and advances made but  not disclosed  on the beneficiary demand  or statement provided  for the payoff of that certain equity line of credit deed of trust (hereinafter "line of credit") shown on preliminary title report, if any.  The Parties warrant and represent that instructions to the beneficiary have been made to freeze the line of credit, that no advance on the line of credit has been made since the opening of this escrow transaction, and that no advance  will be made on the line of credit prior to close of escrow.  In the event, after receipt of payoff, the beneficiary makes demand for additional funds, the undersigned Parties agree to deposit those funds immediately with the title company or Escrow Company and authorizes the title company to utilize those funds to effectuate the close of the line of credit.  Upon payoff of the line of credit, Escrow Holder is hereby instructed to request that the beneficiary cancel said line of credit.

**37.    PRORATIONS AND ADJUSTMENTS:**  Escrow Holder is instructed to make all prorations and adjustments on the basis of a thirty (30) day month.  Escrow Holder is to use information contained on latest available tax statement, rental statement, beneficiary's statement, insurance statement,  or other statement  as delivered to Escrow Holder for the prorations provided for herein.

**38.    RECORDING OF DOCUMENTS:**  The Parties authorize the recordation of any instrument delivered through this escrow transaction  if necessary  or proper  for the issuance of the required policies of title insurance or as necessary for close of escrow.  Recording fees shall be charged to the account of the benefited Party unless instructed otherwise by the Parties in writing.


**SELLERS:**                                              **BUYERS:**

2nd Chance Investment Group, LLC                          Giuliana Vista GP, a General Partnership


By: _____          By: _____
     David M. Goodrich, in his capacity as Chief              Frank Maurice St. Clair, Authorized Signer
     Restructuring Officer, Chapter 11 debtor and debtor in
     possession

Date:  July 18, 2023                                                                    Escrow No.:  105744-AA

Page 11 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

**39.     DELIVERY OF DEED:**  Regardless of the date of execution or transmission to Escrow Holder of the deed, same shall be deemed delivered ONLY upon  recordation through this escrow transaction.   The phrase "close of escrow" as used in this escrow transaction shall mean the date on which documents are recorded, unless otherwise specified.

**40.     ASSIGNMENT OF FUNDS:**  If a Party unilaterally assigns or orders the proceeds of this escrow transaction to be paid to other than the original parties to this escrow, such assignment or order shall be subordinate to the expenses of this escrow transaction, liens of record on the subject property, and payments directed to be made by Parties to this escrow transaction.   If the result  of such assignment  or order would  leave the escrow without sufficient funds  to close, then Escrow Holder is directed to close nevertheless and pay such assignments or orders only out of the net proceeds due the Party assigning  their funds except for such assignments  or orders, and to pay them in the order in which such assignments or orders are received by Escrow Holder.  Escrow Holder is not to be concerned with the balance remaining unpaid, if any.

**41.     DISBURSEMENT OF FUNDS  AND DELIVERY  OF DOCUMENTS:**  All disbursements  are to be made  by the Escrow Holder's trust account check unless instructed otherwise in writing.  Escrow Holder will not indemnify any payee or guarantee signatures of any person or entity at any financial institution.  Generally, Escrow Holder or its sub-escrow agent will disburse funds, including  net proceeds and payment  for encumbrances  of record,  on the date the escrow closes; however, there are circumstances which may arise wherein said disbursements could be delayed by one or two business days.   Any funds disbursed during  or at the close of escrow will be issued jointly to the Parties designated as payee unless Escrow Holder is instructed otherwise in writing by all designated payees.  The funds representing loan and/or sale proceeds will be disbursed jointly to all persons who were the record owners of the subject property.  All disbursements of funds and/or delivery of other documents or instruments concerning this escrow transaction will be mailed to the entitled Party by regular first class mail, postage prepaid, at the last address provided to Escrow Holder.  However, at Escrow Holder's discretion, Escrow Holder  may send funds and/or  other documents  by certified  or registered  mail, overnight delivery, or messenger, in which case the Party for whom the delivery was made agrees to pay the costs.

**42.     CONTRACTED RATE:**  Escrow Holder may provide a contracted rate to customers who have completed one or more escrows with Escrow Holder within the last two (2) years.  Said discount will be provided solely to the contracted customer irrespective of the agreement of the Parties relative to the division of escrow fees.

**43.     SEVERABILITY:**  In the event any escrow instruction or supplemental instruction  in this escrow transaction, including these general provisions, is held invalid by judicial proceedings, the remaining shall continue to be operative and enforceable.

**44.     CONFLICTING INSTRUCTIONS:**  If conflicting demands or notices are made or served upon Escrow Holder or any controversy arises between the Parties or with any third person arising out of or relating to this escrow transaction, Escrow Holder shall have the absolute right to withhold and stop all further proceedings in, and in performance of, this escrow transaction until Escrow Holder receives written notification satisfactory to Escrow Holder of the settlement of the controversy by written agreement of the Parties, or by the final order or judgment of a court of competent jurisdiction.

**45.     MUTUAL CANCELLATION INSTRUCTION REQUIREMENTS:**  The Parties acknowledge that they are on notice that Escrow Holder shall exercise its discretion to require mutual or matching cancellation instructions instructing Escrow Holder on how the deposit is to be released, signed by all Parties and deposited with Escrow Holder prior to releasing any deposit held by Escrow Holder relative to this escrow transaction.

**SELLERS:**                                                          **BUYERS:**

2nd Chance Investment Group, LLC                  Giuliana Vista GP, a General Partnership

By: _____       By: _____
    David M. Goodrich, in his capacity as Chief         Frank Maurice St. Clair, Authorized Signer
    Restructuring Officer, Chapter 11 debtor and debtor in
    possession

Date:  July 18, 2023                                                                 Escrow No.:  105744-AA

Page 12 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.


**46.     CANCELLATION FEES:**  In the event of cancellation  or any other termination  of this escrow transaction,  the Parties  agree to pay Escrow  Holder for any costs or expenses which Escrow  Holder may have incurred  or become obligated for pursuant to this escrow transaction and a reasonable escrow fee for the services performed to date.  Such costs and expenses, if any, and Escrow Holder's fee shall  be deposited with Escrow Holder before any cancellation  or other termination  is effective.   The Parties agree that said charges  for costs, expenses and  fees may be apportioned between the Parties in a manner which Escrow Holder, in Escrow Holder's sole discretion, considers equitable, and that Escrow Holder's decision  in that regard will be binding and conclusive upon the Parties unless specifically agreed to or determined by a court of competent jurisdiction.  In the event of failure to pay costs, expenses, and fees due hereunder, on demand, the Parties agree to pay reasonable fees for any attorney services which may be required to collect such fees or expenses.  Upon payment of such cancellation fees, Escrow Holder is authorized to return documents and funds to the respective  Parties depositing  same,  or for whose  benefit an unconditional  deposit was made; or to void executed instruments as appropriate.

**47.     TIME IS OF THE ESSENCE:**  Time is of the essence in these instructions.  In the event that the conditions of this escrow transaction have not been complied with at the expiration of the time provided for herein, or any extension thereof, Escrow Holder  is instructed to complete the same  at the earliest possible date thereafter, unless written demand upon Escrow Holder  to cancel  this Escrow  or for the return  of the money and/or instruments  is deposited  by one or more Parties.  If the date by which the parties' performances are due shall be other than Escrow Holder's regular business day, such performances shall be due on Escrow Holder's next succeeding business day.

**48.     ABANDONMENT OF ESCROW TRANSACTION:**  Escrow Holder duties  and functions related  to this escrow transaction shall terminate six (6) months following the date last set for close of escrow unless the escrow transaction has closed or cancelled.  At such time, Escrow Holder shall have no further obligations as Escrow Holder except to disburse funds and documents pursuant to written instructions and to interplead or otherwise dispose of funds and documents in accordance with a validly issued and validly served order from a court of competent jurisdiction.

**49.     UNCASHED CHECKS:**  In the event any check(s) issued through this escrow transaction or sub-escrow related hereto are uncashed  or unnegotiated  ("uncashed")  Escrow Holder will make every effort to contact  the payee and coordinate negotiation  of the check(s).   The Parties acknowledge  that Escrow Holder incurs significant  expense in tracking uncashed checks, canceling and reissuing checks, and maintaining bank and accounting records of such checks. Therefore, if re-issuance  of the  check is necessitated,  Escrow Holder will require an instruction authorizing such  re-issuance and is authorized to charge an additional services fee of twenty-five dollars ($25.00) which will be deducted from the payee's reissued check(s).

**50.     ESCHEATMENT:**  Any and all funds remaining in escrow three (3) years after the close of escrow or cancellation of this escrow transaction will be escheated to the State of California pursuant to the Unclaimed Property Law codified in California Code of Civil Procedure Section 1518.

**51.     AUTHORIZATION TO INTERPLEAD FUNDS:**  The Parties acknowledge that Escrow Holder has an absolute legal right to file a court action in interpleader.  In the event such an action is filed, the Parties herein jointly and severally agree to pay all escrow fees, title fees, court costs, and litigation expenses, including  attorney's fees, incurred  in connection therewith, the amount thereof to be fixed and judgment to be reached by the court.  Upon filing of such action, Escrow Holder is fully released and discharged from any further performance of duties under the terms of this Escrow.


**SELLERS:**                                                     **BUYERS:**

2nd Chance Investment Group, LLC                 Giuliana Vista GP, a General Partnership



By: _____          By: _____
      David M. Goodrich, in his capacity as Chief          Frank Maurice St. Clair, Authorized Signer
      Restructuring Officer, Chapter 11 debtor and debtor in
      possession

Date:  July 18, 2023                                                                         Escrow No.:  105744-AA

Page 13 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.


**52.        RIGHT TO RESIGN:**  At any time prior to the close of escrow, Escrow Holder, at its sole and absolute discretion and without liability to the Parties to this escrow transaction, may withdraw and resign from acting as Escrow Holder by providing ten (10) days prior written notice to the Parties at their last known addresses.  In such event, Escrow Holder shall be entitled to reasonable compensation for its escrow services performed and for all costs and expenses incurred in the resignation, including, but not limited to, attorney's fees.  Upon resignation, Escrow Holder shall return to the Parties who deposited the same,  the balance  of any funds  it holds,  along  with any property  or documents  in its possession.  Alternatively, at the mutual instruction of the Parties, Escrow Holder shall deliver the funds, property, and documents to a new Escrow Holder.

**53.        DESTRUCTION OF DOCUMENTS:**  Escrow Holder is authorized to destroy or otherwise dispose of any and all documents, papers, escrow instructions, correspondence, records or other material pertaining to this escrow, at any time after five (5) years from the date of close of escrow, cancellation  of this transaction,  or the date of the last activity (whichever comes first), without liability and without further notice to the Parties.

**54.        PRIVACY NOTICE:**  This notification is in compliance with our obligations to comply with federal and state law to safeguard the Parties' non-public personal information.  Escrow Holder collects non-public personal information about the Parties from the following sources; a) Information Escrow Holder receives from the Parties on applications or other forms; b) Information about  the Parties' transactions  with Escrow Holder, Escrow Holder's affiliates,  or others involved  in the processing  of the transaction; and  c) Information Escrow Holder receives  from a consumer reporting agency.  Escrow Holder does not disclose any non-public personal information about customers or former customers to anyone, except as permitted by law.  Escrow Holder restricts access to non-public information about the Parties to those employees who need to know that information to provide products or services to the Parties.  Escrow Holder maintains physical, electronic and procedural safeguards  that comply with federal and state regulations  to guard the Parties' non-public personal information.  By signing below,  the undersigned Parties acknowledge that  they have read and received  a copy  of this notification.

**55.        PROHIBITION UPON GIVING LEGAL OR FINANCIAL ADVICE:**  The Parties acknowledge and understand that Escrow Holder is not authorized  to practice  the law nor does Escrow  Holder give financial  advice.  The Parties are advised to seek legal and financial counsel and advice concerning  the effect of this escrow transaction.   The Parties acknowledge that no representations have been made by Escrow Holder about the legal sufficiency, legal consequences, financial effects, or tax consequences of the within escrow transaction.


ESCROW COMPANIES  ARE NOT AUTHORIZED  TO GIVE LEGAL  ADVICE.   IF YOU DESIRE LEGAL  ADVICE, CONSULT YOUR ATTORNEY BEFORE SIGNING.

EACH PARTY SIGNING THESE INSTRUCTIONS  HAS READ THE ADDITIONAL ESCROW CONDITIONS  AND INSTRUCTIONS CONTAINED HEREIN AND APPROVES, ACCEPTS AND AGREES TO BE BOUND THEREBY.  ALL PARTIES SIGNING THIS AGREEMENT HEREBY ACKNOWLEDGE  RECEIPT OF A COPY OF THESE INSTRUCTIONS.

I/We agree to pay FUNDS REQUIRED TO CLOSE ESCROW UPON DEMAND.


**SELLERS:**                                             **BUYERS:**

2nd Chance Investment Group, LLC              Giuliana Vista GP, a General Partnership



By: _____          By: _____
     David M. Goodrich, in his capacity as Chief          Frank Maurice St. Clair, Authorized Signer
     Restructuring Officer, Chapter 11 debtor and debtor in
     possession

Date:  July 18, 2023                                                    Escrow No.:  105744-AA

Page 14 of 14:  Additional instructions made a  part of previous pages as fully incorporated therein.

SELLER(S) ONLY:   The foregoing  terms, provisions, conditions,  and instructions,  and those  "General Provisions" contained herein are hereby approved and accepted in their entirety and concurred in by me.  I will hand  you necessary documents called for on my part to cause title to be shown as above which you are authorized to deliver when you hold or have caused  to be applied funds  as set forth herein above  within the time as above provided.  Pay your escrow charges, my recording fees, charges for evidence of title as called for, and any other customary chargeable fees to Seller, whether or not this escrow is consummated, except those Buyer agreed to pay.  You are hereby authorized to pay bonds, assessments, taxes, and any liens of record including prepayment penalties, if any, to show title  as called for. Affix and pay Documentary Transfer Tax on deed as required.

**SELLERS:**                                          **BUYERS:**

2nd Chance Investment Group, LLC                       Giuliana Vista GP, a General Partnership


By: _____      By:   _____
    David M. Goodrich, in his capacity as Chief          Frank Maurice St. Clair, Authorized Signer
    Restructuring Officer, Chapter 11 debtor and debtor in
    possession

Exhibit 5, Page 102



**ESCROW SERVICES, INC.**

15250 Ventura Blvd, Suite 715
Sherman Oaks, CA 91403

Phone:  (310) 550-6055
Fax:  (310) 550-6130

Antonia Delgado
Sr. Escrow Officer

Date:  August 31, 2023
Escrow No.:  105744-AA

### AMENDED ESCROW INSTRUCTIONS

Property Address:       1016 Portal Ave., Bakersfield, CA  93308

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS
FOLLOWS:

Buyer herein acknowledges that a **NOTICE OF SUBSTANDARD PROPERTY** has been recorded against
subject property on June 28, 2023 as Instrument Number 223065743, it is further shown as **ITEM #13** of
Preliminary Title Report dated July 19, 2023 as issued by Orange Coast Title Company.  Buyer herein
acknowledges being notified of said Notice and acknowledges their agreement to purchase property
subject to said Notice which, shall remain encumbering subject property until Buyer, at Buyer's option and
expense, meets any/all city requirements to cause the removal of said Notice.  Buyer further
acknowledges that **any and all post-closing city fees and penalties in connection with removal of
said Notice of Substandard Property shall be BUYER's responsibility and expense** and to be
OUTSIDE OF ESCROW.  Buyer further acknowledges their understanding and agreement that Buyer is
purchasing property in its current "AS IS" condition and assumes all responsibility of said notice against
subject property. Buyer hereby release, hold harmless and indemnify Seller, Real Estate Brokers, its
agents, Escrow Holder, its agents, officers and directors from any/all liability or further responsibility in
connection said instructions

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

**SELLERS:**

2nd Chance Investment Group, LLC

**BUYERS:**

Giuliana Vista GP, a California General Partnership

By: _____
       David M. Goodrich, in his capacity as Chief
       Restructuring Officer, Chapter 11 debtor and
       debtor in possession

By: _____
       Frank Maurice St. Clair, Authorized
       Signer

Exhibit 6



**In Re: 2nd Chance Investment Group LLC**
**Sale of 2nd Chance Investment Group Property Gain and Tax Analysis**
**Sale of 1016 Portal Ave. (Estimate)**

<u>Assumptions/Facts:</u>

Date of Estimate      **Est. Escrow**    9/25/2023

| | Total Gain | Tax Rate | Est Tax | Rayshon Foster 52.00% Gain | Rayshon Foster Est Tax | Sonja Foster 48.00% Gain | Sonja Foster Est Tax |
|---|---|---|---|---|---|---|---|
| <u>Fed Taxes:</u> | | | | | | | |
| Section 1231 Gain - Land | 12,919 | 20.0% | 2,584 | 6,718 | 1,344 | 6,201 | 1,240 |
| CAP/Section 1231 Gain - Building | 52,826 | 20.0% | 10,565 | 27,470 | 5,494 | 25,356 | 5,071 |
| Section 1250 Gain - Building | 6,136 | 25.0% | 1,534 | 3,191 | 798 | 2,945 | 736 |
| NIT | - | | - | | - | | - |
| Total Gain | 71,881 | | | 37,378 | 7,635 | 34,503 | 7,048 |
| <u>CA Taxes:</u> | | | | | | | |
| Estimated Taxes (MFJ) | | | | | | | |
| California Income Tax (Net of IL Tax) | | 10.3% | 7,404 | | 3,850 | | 3,554 |
| Mental Health Tax - Income > $1M | | NA | - | | - | | - |
| Total Taxes | | | 22,087 | | 11,485 | | 10,602 |
| Effective Tax Rate | | | 30.7% | | 30.7% | | 30.7% |

<u>Note:</u>
Based on an analysis of the 2020 and 2021 debtor tax returns, 2nd Chance Investment Group LLC is taxed as a partnership. As such, 2nd Chance Investment Group, LLC does not pay federal income taxes. Instead the Debtor passes through all income to its partners. Per the 2021 debtor return, Rayshon Foster owns a 52% interest in the partnership and Sonja Foster owns a 48% interest. The total taxable gain is estimated to be $71,881 and 52% of the taxable gain, or $37,378, will be allocated to Rayshon and 48%, or $34,503, will be allocated to Sonja.

The taxes owed by the partners related to the liquidation of the Debtor's real estate assets are estimated to be a total of $22,087 with Rayshon owing $11,485 and Sonja owing $10,602. The debtor will be responsible for the $800 CA minimum tax and any applicable LLC fee once income exceeds $250,000.



**In Re: 2nd Chance Investment Group Inc**
**Sale of 2nd Chance Investment Group Property Tax Analysis and Cash Flow**
**Sale of 1016 Portal Ave. (Estimate)**

**Assumptions/Facts:**

| | | |
|---|---|---|
| Date of Estimate | | 9/25/2023 |
| Estimated Sale Price | Est. Escrow | 236,000 |

**Analysis:**

| | | 1016 Portal Ave. | |
|---|---|---|---|
| | | **Gain Analysis** | **Cash flow** |
| Estimated Sales Price | Est. Escrow | 236,000 | 236,000 |
| | | | |
| Basis | | | |
| Land | [1] | (29,476) | |
| Building | [1] | (120,524) | |
| Depreciation | [2] | 6,136 | |
| | | | |
| Total Basis | | (143,864) | - |
| | | | |
| Cost of Sale | Est. Escrow | (20,255) | (20,255) |
| Security Claim | A-1 | | (127,000) |
| Admin Claims | Est. Escrow | | (25,339) |
| Property Tax & Utilities | Est. Escrow | | (3,783) |
| **Taxable Gain/(Loss)** | | **71,881** | |
| **Net Cash Flow** | | | **59,623** |

**Breakdown of Gain:**

| | Land | Building |
|---|---|---|
| % of Cost | 19.65% | 80.35% |
| Alloc of Sales Price | 46,376 | 189,624 |
| Basis - Purchase price | (29,476) | (114,388) |
| Alloc of Other Costs | (3,980) | (16,274) |
| Admin Claims | | |
| **Total Gain** | **12,919** | **58,962** |

**Allocation of Gain**

| | | |
|---|---|---|
| 1231 Gain | 12,919 | 52,826 |
| 1250 Gain | | 6,136 |
| **Total Allocation of Gain** | **12,919** | **58,962** |
| | | - |

**Notes:**

[1] Basis value was not listed on the debtor's 2021 tax return. Cost was obtain throught external sources. Basis has been allocated for land and building based on the local county assessor's allocation as of the first subsequent assessment following the date of original purchase (B-12, B-12.2).

[2] Depreciation was not listed on the debtor's 2021 tax return. However, we have estimated the amount of allowable depreciation deductible between the date of purchase and the estimated sale date.

[3] Per Appraiser's Employment App (Doc. 80), the cost of sale was listed as $27,600. However, cost of sale was taken from the most recent estimated closing statement (B-12.1).

Exhibit 6, Page 105

# Exhibit 7



**ESCROW SERVICES, INC.**

15250 Ventura Blvd, Suite 715
Sherman Oaks, CA 91403

Phone: (310) 550-6055
Fax: (310) 550-6130

## SELLER'S ESTIMATED SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **PROPERTY:** | 1016 Portal Ave.<br>Bakersfield, CA 93308 | **DATE:** | October 20, 2023 |
| **SELLER:** | 2nd Chance Investment Group, LLC | **CLOSING DATE:**<br>**ESCROW NO.:** | 105744-AA |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 236,000.00 |
| | | |
| **PAYOFF CHARGES - CA TD Specialists** | | |
| **[Total Payoff $155,998.95]** | | |
| Principal Balance | 127,833.53 | |
| Interest on Principal Balance from 08/01/2022 to 08/22/2023 | 17,556.97 | |
| Interest on Principal Balance at $49.4600/day from 08/22/2023 to 12/12/2023 | 5,638.44 | |
| Total Charges & Advances | 1,482.41 | |
| Total Interest on Advances | 78.89 | |
| Total Foreclosure Fees and Costs | 1,876.77 | |
| Accrued Late Charges | 1,531.94 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| 1st 1/2 Taxes 2023-24 at $1,849.77/semi-annually from 12/12/2023 to 01/01/2024 | | 195.25 |
| 1st 1/2 Suppl Taxes 2023-24 at $321.65/semi-annually from 12/12/2023 to 01/01/2024 | | 33.95 |
| | | |
| **COMMISSION CHARGES** | | |
| Coldwell Banker | 3,540.00 | |
| St. Clair Realty | 7,080.00 | |
| ReMax Golden Empire | 3,540.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| MyNHD, Inc. for NHD Disclosure Report | 74.95 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES - Orange Coast Title Company** | | |
| Title - Owner's Title Insurance | 870.00 | |
| Title - Messenger Fee | 75.00 | |
| Title - BK Work Fee | 500.00 | |
| Title - BK Underwriting Fee but can be more | 2,500.00 | |
| Title - Sub Escrow Fee | 65.00 | |
| Title - Wire Fee | 50.00 | |
| Recording Court Order | 75.00 | |
| Miscellaneous Recording Fees | 75.00 | |
| SB2 Recording Fees | 225.00 | |
| Transfer Tax - County to Kern County | 259.60 | |
| Delinquent Taxes 2022-23 good thru 12/31/2023 | 3,243.93 | |
| 1st 1/2 Taxes 2023-2024 to Kern County Tax Collector | 1,849.77 | |

Date:  October 20, 2023                                    Escrow No.:  105744-AA

Page 2 of 2:

|  | DEBITS | CREDITS |
|---|---|---|
| 1st 1/2 Taxes 2023-2024 Penalty | 184.97 | |
| 1st 1/2 Supplemental Taxes 2023-2024 | 321.65 | |
| 1st 1/2 Supplemental Taxes 2023-2024 Penalty | 32.16 | |
| **ESCROW CHARGES - A & A Escrow Services, Inc.** | | |
| Title - Escrow Fee | 1,000.00 | |
| Title - 1099 Processing Fee | 75.00 | |
| Title - Drawing Documentation Fee | 75.00 | |
| Title - Wire Fee IF ANY | 50.00 | |
| Title - Messenger/FedEx Fees IF ANY | 75.00 | |
| Title - File Archive Fee* | 50.00 | |
| **Net Proceeds** | 54,343.22 | |
| **TOTAL** | $ 236,229.20 | $ 236,229.20 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**


2nd Chance Investment Group, LLC


By: _____
       David M. Goodrich, in his capacity as Chief
       Restructuring Officer, Chapter 11 debtor and
       debtor in possession

Exhibit 7, Page 107