Andy C. Warshaw, State Bar No. 263880
Rich Sturdevant SBN 269088
**FINANCIAL RELIEF LAW CENTER, APC**
1200 Main St., Suite C
Irvine, CA 92614
Direct Phone: (714) 442-3319
Facsimile: (714) 361-5380
Email: awarshaw@bwlawcenter.com
Email: rich@bwlawcenter.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>2nd CHANCE INVESTMENT GROUP, LLC,<br><br>        Debtor and Debtor-in-<br>        Possession. | Case No. 8:22-bk-12142-SC<br><br>Chapter 11<br><br>**DEBTOR'S MOTION FOR ORDER:**<br>**(1)  AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f);**<br>**(2)  APPROVING OVERBID PROCEDURES;**<br>**(3)  APPROVING BUYER, SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(m);**<br>**(4)  AUTHORIZING PAYMENT OF UNDISPUTED LIENS, REAL ESTATE BROKER'S COMMISSIONS, AND OTHER ORDINARY COSTS OF SALE;**<br>**(5)   WAIVING STAY UNDER RULE 6004(h);**<br>**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DAVID M. GOODRICH, WILLIAM FRIEDMAN, JANINE KIRCHNAVY, AND SABRAJ S. NIJJAR IN SUPPORT**<br><br>**[3025 Glenview Avenue, San Bernardino, California 92407; APN: 0268-132-04-0-000]**<br><br><u>**Remote Hearing:**</u><br>**DATE:      December 13, 2023**<br>**TIME:       1:30 p.m.**<br>**PLACE:    Courtroom 5C/Via ZoomGov**<br>                 **411 West Fourth Street**<br>                 **Santa Ana, California 92701** |

1  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES**

2  **BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND**

3  **PARTIES IN INTEREST:**

4       2ND Chance Investment Group, LLC, the debtor and debtor-in-possession in the

5  above-captioned case ("Debtor"), files this *Motion for Order: (1) Authorizing Sale of Real*

6  *Property Free and Clear of Liens, Claims, and Interests Pursuant 11 U.S.C. §§ 363(b) and*

7  *(f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-*

8  *up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); (4) Authorizing*

9  *Payment of Undisputed Liens, Real Estate Broker's Commissions, and Other Ordinary*

10  *Costs of Sale; and (5) Waiving Stay Under Rule 6004(h)* ("Motion").  In support of the

11  Motion, the Debtor submits the following memorandum of points and authorities and the

12  Declarations of David M. Goodrich ("Goodrich Decl."), William Friedman ("Friedman

13  Decl."), Janine Kirchnavy ("Kirchnavy Decl."), and Sabraj S. Nijjar ("Nijjar Decl."), and

14  represents as follows:

15  **I.**     **INTRODUCTION**

16       The Debtor requests authority to sell its right, title and interest to real property

17  located at 3025 Glenview Avenue, San Bernardino, California 92407 ("Property"), for a

18  purchase price of $250,000.00, subject to overbids and free and clear of all liens, claims

19  and interests.  As discussed below, the Debtor believes the purchase price represents the

20  fair market value of the Property.  Further, the proposed sale is reasonable and in the best

21  interest of the Estate because the sale will generate unencumbered funds to pay

22  administrative and unsecured claims of the Estate.  The Debtor also requests (i) approval

23  of the buyer, successful bidder and back-up bidder as good-faith purchasers, (ii) approval

24  of proposed overbid procedures, (iii) approval to pay liens, real estate taxes owed, the

25  broker's commission, and other costs of sale, and (iv) waivers of the lodging period and

26  any stay of the order granting this Motion.

27

28

## II.    **FACTUAL BACKGROUND**

### A.    **Jurisdiction and Venue**

This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue of the case and this Motion in this district are proper under 28 U.S.C. §§ 1408 and 1409.

### B.    **Debtor's Bankruptcy Filing and CRO's Employment**

On December 21, 2022 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California ("Court"), case no. 8:22-bk-12142-SC ("Case").  See Docket No. 1.  The Debtor continues to operate and manage its affairs as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On March 1, 2023, the Court approved David M. Goodrich ("CRO") to serve in the capacity of the Debtor's chief restructuring officer. The CRO is authorized to manage and oversee the Debtor's affairs, including supervising the Debtor's financial affairs and outside consultants.

### C.    **Property**

In its amended Schedule A/B ("Amended Schedule A/B"), the Debtor lists an ownership interest in the Property with a scheduled value of $377,000.00.  As more fully described below, amended Schedule D ("Amended Schedule D") and the Debtor's books and records reflect the Property is encumbered by the following secured claim:

- a lien held by Loan Funder, LLC (Fay Servicing) to secure a claim in the original amount of $180,000.00.

The relevant portions of Amended Schedule A/B and Amended Schedule D are attached hereto collectively as **Exhibit 1**.  *See* Goodrich Decl.

### D.   Employment of Co-Brokers

On March 26, 2023, the Debtor filed its application (dkt. #80, "Application") to employ Coldwell Banker Realty and 44Realty (together, "Co-Brokers") and their respective agents (together, "Agents"), William Friedman and Janine Kirchnavy, to market and sell the Property, as well as other real properties of the Debtor's estate.  The Application was approved by Court order entered on April 13, 2023 (dkt. #102, "Co-Broker Order").  A copy of the Co-Broker Order is attached as **Exhibit 2**.  *See* Goodrich Decl.  The Co-Broker Order provides, among other things, for the payment of a commission to the Co-Brokers.  *See* Exhibit 2.  The total broker's commission is 6% if this Motion is granted and the sale closes, but subject to Court approval.  *Id.*

### E.   Tenancy at the Property

The Property apparently is occupied by a tenant ("Tenant").  Due to the Tenant's occupancy, the interior of the Property has not been viewed by the Debtor, the CRO, the Agents, the Buyer or any other potential buyer.

### F.   Value and Marketing of the Property

Ms. Kirchnavy has extensive experience in marketing and selling real property in the area where the Property is located and, based on an investigation of surrounding property values and the interest generated by the listing, and without having made an interior inspection of the Property, she believes the proposed purchase price for the Property represents current fair market value for the Property and the highest and best offer.  *See* attached Kirchnavy Decl.  Ms. Kirchnavy has listed the Property for sale in the Multiple Listing Service.  The listing is also available on various real estate websites and has had approximately 850 online views from the MLS and other websites.  Ms. Kirchnavy has received and responded to numerous inquiries regarding the Property, has received a total of eight offers for the Property, and is continuing to market the Property for overbids.  Prior to the sale hearing, the Agents will publish the details of the hearing and the overbid procedures in the MLS.  *See* Kirchnavy and Friedman Decls.

### G.     <u>Liens, Claims and Interests on the Property</u>

According to the Preliminary Report prepared by Orange Coast Title Company with an effective date of November 6, 2023 ("Title Report"), a copy of which is attached as **Exhibit 3**, the following items have been recorded against the Property:

| Recording Date | Lien Holder | Type of Encumbrance | Instrument Number | Original Lien Amount or Payoff Amount |
|---|---|---|---|---|
| (item 1) | San Bernardino County Tax Collector | General and special taxes for fiscal year 2023-2024 $1,436.79 – open $1,436.76 – open | | |
| 05/26/2021 (item 8) | Loan Funder LLC | Financing Statement | 2021-242411 | |
| 05/26/2021 (item 9) | Loan Funder LLC | Deed of Trust | 2021-242412 | $182,000.00 (original amount) $196,353.20 (current estimate) |
| 05/26/2021 | Loan Funder, LLC | Assignment of Rents | 2021-242413 | $182,000.00 (original amount) |
| 7/14/2023 | Forethought Life Insurance Company | Assignment of Beneficial Interest | 2023-0171913 | |
| 12/19/2022 (item13) | Hiten Ram Bhakta, an individual; ASB Ventures, LLC; Precision Realty Fund, LLC | Notice of Pendency of Action CVR12204640, Superior Court of California, County of Riverside ("Lis Pendens") | 2022-0402268 | |
| 10/24/2023 | | Withdrawal of Notice of Pendency of Action | 2023-0261438 | |

The lien of Loan Funder LLC (Fay Servicing) is undisputed unless the payoff demands contains fees, costs, or interests that appear unsubstantiated.

San Bernardino County Tax Collector also asserts $6,574.44 in delinquent unsecured tax bills.

The Lis Pendens has been released.  A withdrawal of the Lis Pendens was recorded on October 24, 2023.

The Debtor intends to pay the following undisputed lien or claim at closing of the sale:

5

1

2    (i) the Loan Funder lien recorded on May 26, 2021 as instrument no. 2021-

242412 of official records shall be paid in full as of the date of the closing of the

3    sale.

4    According to the Court's register of claims ("Claims Register"), a copy of which is

5    attached as **Exhibit 4**, the following relevant claim has been filed:

6

| Claim Number | Claimant | Date Filed | Claim Amount/Basis | Classification |
|---|---|---|---|---|
| 51-1 | Forethought Life Insurance Company c/o Fay Servicing, LLC | 04/07/2023 | $194,913.29 – mortgage/deed of trust | Secured |

7

8

9

10    The Debtor reserves the right to object to the validity, scope and priority of any

11   disputed liens, claims and interest that have been or will be asserted against the Property.

12   *See* Goodrich Decl.

13   **H.    Property Taxes**

14   Pursuant to the Purchase Agreement, real property taxes and assessments are to

15   be prorated between the Debtor and the Buyer through escrow as of the closing.  All real

16   property taxes owed will be paid in full through escrow.  *See* Goodrich Decl.

17   **III.    TERMS OF THE PROPOSED SALE**

18   Cobra 28 No. 8, LP, a California limited partnership ("Buyer"), has offered to

19   purchase the Property, and the Debtor has accepted that offer.  The salient terms of the

20   sale are as follows:

21   1.    The purchase price ("Purchase Price") is $250,000.00;

22   2.    The Buyer has made an initial deposit of $10,000.00 ("Deposit")

23   which is held by A&A Escrow Services, Inc. ("Escrow").  The Deposit is refundable

24   to the Buyer only in the event the Bankruptcy Court accepts a third party overbid or

25   does not approve the Purchase Agreement for reasons not attributable to the

26   Buyer.  The Debtor shall retain the Deposit as liquidated damages if the Bankruptcy

27   Court approves the sale and the Buyer defaults under the Purchase Agreement;

28

3.    The balance of the Purchase Price shall be tendered upon Close of

Escrow (as defined in the Purchase Agreement);

4.    The sale is as is, where is, with all faults, without warranty or

recourse, but free and clear of any and all liens, claims, and interests, together with

all improvements, as well as all easements and appurtenances pursuant to

11 U.S.C. §§ 363(b) and  (f);

5.    The sale is subject to approval of the Bankruptcy Court; and

6.    The sale is subject to overbids.

The complete terms of the proposed sale are set out in the *California Residential

Purchase Agreement and Joint Escrow Instructions* and *Counter-Offer* (together,

"Purchase Agreement") attached as **Exhibit 5**.  *See* Goodrich Decl.

## IV.    PROPOSED OVERBID PROCEDURES

### A.    Overbid Procedures

The Debtor proposes the following procedure to allow for overbids prior to the

Court's approval of the sale of the Property to ensure that the Property is sold for the best

possible price:

1.    Qualifying bidders ("Qualifying Bidder") shall:

a.    Bid at least $260,000.00 in cash for the Property;

b.    Set forth in writing the terms and conditions of the offer that are

at least as favorable to the Debtor as those set forth in the Purchase

Agreement attached as **Exhibit 5**;

c.    Be financially qualified, in the Debtor's exercise of its sound

business judgment, to close the sale as set forth in the Purchase

Agreement;

d.    Submit an offer that does not contain any contingencies to

closing the sale, including, but not limited to, financing, inspection, or repair

contingencies;

e.  Submit a cash deposit in the amount of $20,000.00 ($10,000.00 deposit plus $10,000.00) ("Overbid Deposit") payable to David M. Goodrich, Chief Restructuring Officer for 2nd Chance Investment Group, LLC, in the form of a cashier's check, which Overbid Deposit shall be non-refundable if the bid is deemed to be the Successful Bid, as defined in paragraph 4 below.  The Overbid Deposit, written offer, and evidence of financial qualification must be delivered to the CRO (at 3070 Bristol Street, Suite 640, Costa Mesa, California 92626) by no later than **4:00 p.m.**, Pacific Standard Time, two business days before the hearing on this Motion ("Overbid Deadline").  In its absolute and sole discretion, the Debtor shall have the right to accept additional overbids submitted prior to the hearing but after the Overbid Deadline.

2.  At the hearing on the Motion, only the Buyer and any party who is deemed a Qualifying Bidder shall be entitled to bid.

3.  Any incremental bid in the bidding process shall be at least $5,000.00 higher than the prior bid.

4.  At the hearing on the Motion and upon conclusion of the bidding process, the Debtor shall decide, subject to Court approval, which of the bids is the best bid, and such bid shall be deemed to be the "Successful Bid."  The bidder who is accepted by the Debtor as the successful bidder ("Successful Bidder") must pay all amounts reflected in the Successful Bid in cash at the closing of the sale.  At the hearing on the Motion, and upon conclusion of the bidding process, the Debtor may also acknowledge a back-up bidder ("Back-Up Bidder") which shall be the bidder with the next best bid.  Should the Successful Bidder fail to close escrow on the sale of the Property, the Debtor may sell the Property to the Back-Up Bidder without further Court order.

5.  Overbids shall be all cash and no credit shall be given to the purchaser or overbidder(s).

6.     Upon the conclusion of the auction, any Overbid Deposits, other than the deposits submitted by the Successful Bidder and the Back-Up Bidder, will be promptly returned.  The deposit of the Back-Up Bidder will be returned promptly following the close of escrow for the sale of the Property to the Successful Bidder.

V.     **ARGUMENT**

A.     **Legal Standard for Approving Sales Under §363(b)**

Section 363(b) of the Bankruptcy Code empowers a trustee to "use, sell or lease . . . other than in the ordinary course of business, property of the estate."    In considering a proposed transaction to use, sell, or lease, courts look at whether the transaction is in the best interests of the estate based on the facts and history of the case. *In re American West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for the proposed transaction.  *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. B.A.P. 1996); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997).

> In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e., it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith and that it is an 'arms-length' transaction.

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. B.A.P. 1996).  A bankruptcy court's power to authorize a sale under § 363(b) is reviewed for abuse of discretion.  *In re Walter*, 83 B.R. 14, 19 (9th Cir. B.A.P. 1988).

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 2010) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . .

1  . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall

2  benefit possible for the estate.") (quoting *Cello Bag Co. Inc. v. Champion Int'l Corp. (In re*

3  *Atlanta Packaging Prods., Inc.*) 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)); *995 Fifth Ave.,*

4  *Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).  As long as the sale appears to enhance

5  a debtor's estate, court approval of a trustee's decision to sell should only be withheld if

6  the trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions

7  of the Bankruptcy Code.  *In re Lajijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *GBL*

8  *Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re*

9  *WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to

10  administer the estate, including authority to conduct public or private sales of estate

11  property.  Courts have much discretion on whether to approve proposed sales, but the

12  trustee's business judgment is subject to great judicial deference.").

13  **B.    The Sale Should Be Approved Because It Is Supported By A Good**

14  **Business Justification and Is In the Best Interest of the Estate**

15  Here, the proposed transaction has a legitimate business justification and is in the

16  best interest of the Estate because it will generate proceeds for the benefit of the creditors

17  of the Estate.  The Purchase Price represents market value.  *See* Kirchnavy Decl.  Notice

18  of the sale is being provided to all creditors, and the Debtor has proposed an overbid

19  procedure to ensure the Debtor's estate receives the highest and best price for the

20  Property at the hearing.  After payment of real estate taxes, liens, brokers' commissions,

21  and costs of sale, the Debtor estimates that the sale will generate approximately

22  $21,000.00 for the benefit of the Estate, plus an additional amount to pay costs of sale.

23  Accordingly, the Debtor believes that the proposed sale is fair and reasonable and within

24  the proper exercise of its business judgment.  *See* Goodrich Decl.

25  **C.    The Price is Reasonable Based Upon the Debtor's Marketing Efforts**

26  On or about May 26, 2023, the Debtor listed the Property for sale at $245,000.00.

27  To date, due to the Tenant's occupancy, the interior of the Property has not been seen by

28  the Debtor, the CRO, the Agents, the Buyer or any potential buyers, and no tours of the

1  Property have been conducted.  Ms. Kirchnavy has received and responded to numerous

2  inquiries from agents and potential buyers.  The Debtor has received eight offers to

3  purchase the Property.  The Buyer's offer is the highest and best offer received.  *See*

4  Kirchnavy Decl.  Based upon the Debtor's marketing efforts, the length of time on the

5  market, and the inability to inspect the interior of the Property, the Buyer's offer is fair and

6  reasonable.  As such, the price is reasonable under the circumstances.

7       **D.**    **The Sale is Made in Good Faith**

8       "Good faith encompasses fair value, and further speaks to the integrity of the

9  transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal.

10  1991) (internal quotation marks omitted).  Bad faith includes collusion between buyer and

11  seller or otherwise taking unfair advantage of other potential purchasers, such as a

12  collusive insider transaction.; *id.*; see also *In re Indus. Valley Refrigeration & Air*

13  *Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).

14       The sale of the Property was negotiated at arms' length.  There is no fraud,

15  collusion, or insider transactions present here, and the Buyer received no special

16  treatment or consideration.  There is no connection or relation between the Debtor and the

17  Buyer, or the CRO and the Buyer.  Moreover, the Property has been actively marketed,

18  the sale will be properly publicized on the Bankruptcy Court's website, and the Debtor

19  intends to further market the property pending a hearing on this Motion, including tours for

20  potential overbidders once the locks have been changed.  In short, the Debtor has

21  accepted the highest and best offer. As a result, the sale is made in good faith.

22       **E.**    **The Debtor May Sell the Property Free and Clear of Liens, Claims, and**

23             **Interests**

24       The Debtor seeks this Court's authority to sell the Property free and clear of liens

25  pursuant to 11 U.S.C. §§ 363(b) and (f) of the Bankruptcy Code.  Section  363(b) of the

26  Bankruptcy Code provides that:

27            [t]he trustee, after notice and a hearing, may use, sell, or
          lease, other than in the ordinary course of business, property

28            of the estate.

In addition, 11 U.S.C. § 363(f) provides that:

> [t]he trustee may sell property. . . free and clear of any interest
> in such property of an entity other than the estate, only if _. . .
> (1)    applicable nonbankruptcy law permits sale of
>         such property free and clear of such interest;. . .
> (2)    such entity consents;. . .
> (3)    such interest is a lien and the price at which such
>         property is to be sold is greater than the
>         aggregate value of all liens on such property;
> (4)     such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or
>         equitable proceeding, to accept a money
>         satisfaction of such interest.

Because subsections (1) through (5) of Bankruptcy Code  § 363(f)  are written in the disjunctive, authority to sell the Property free and clear of any and all interests therein should be granted if, with respect to each lien holder, any of the conditions are met.

### 1.    The Sale Should Be Free and Clear Under § 363(f)(1)

Under §363(f)(1), estate property may be sold free and clear of certain liens, claims and interest if applicable nonbankruptcy law permits a sale free and clear of such interest. §363(f)(1).

Here, the lien of Loan Funder LLC (Fay Servicing) will be paid in full.  Because the lien will be satisfied in full, the sale should be approved free and clear of the lien.  Section 363(f)(1) is satisfied as to this lien.

### 2.    The Sale Should Be Free and Clear Under §363(f)(2)

As noted above, a proposed sale of estate property can be approved by the Court under §363(f)(2) where an entity consents.  §363(f)(2).

The Debtor intends to notify all interested parties through the notice of the Motion. Any party objecting to the sale may file their objection and be heard at the hearing on the Motion. If there is no objection, the parties will be deemed to have consented to the sale of the Property. *See Veltman v. Whetzal*, 93 F.3d 517 (8th Cir. 1996) (failure to object to proposed sale, coupled with agreement authorizing sale free of interest, constituted consent); *In re Tabore, Inc.*, 175 B.R. 855 (Bankr. D. N.J. 1994) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of § 363); *In re Shary*, 152

1  B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to object to transfer of liquor license

2  constituted consent to sale). Thus, pursuant to §363(f)(2), the Debtor may sell the

3  Property free and clear of any lien, claim or interest of entities who fail to object because

4  the noticed parties will be deemed to have consented to the sale of the Property if they

5  make no objection to the sale.  The Lis Pendens has been released.  A withdrawal of the

6  Lis Pendens was recorded on October 24, 2023.

**3.    The Sale Should Be Free and Clear of all Liens and**

**Encumbrances Pursuant to Section 363(f)(3)**

9    The Purchase Price exceeds the value of all encumbrances against the Property.

10  The Loan Funder lien is undisputed unless the payoff demand contains fees, costs, or

11  interests that appear unsubstantiated.

**F.    Tax Consequences**

13    Grobstein Teeple LLP, the Debtor's financial advisor, has prepared a property gain

14  and tax analysis and has advised the Debtor that the capital gains are estimated to be

15  $34,647.00.  The total tax on the capital gains is estimated to be $11,287.00.  Rayshon

16  Foster owns 52% of the Debtor and will be allocated 52% of the capital gains taxes. Sonja

17  Foster owns 48% and will be allocated 48% of the capital gains taxes. *See* **Exhibit 6**.

**G.    Adequate Notice of the Sale is Proper**

19    The Debtor proposes to provide notice of the sale to be posted by the Clerk's Office

20  and to serve notice of the sale on the Office of the United States Trustee, all creditors, all

21  potential overbidders, and all other parties receiving ECF and special notice in this case.

22  The Agents will also post the overbid procedures on the MLS.  Further, the Property is

23  subject to overbid, and the ability of other potentially interested parties to provide

24  competing offers for the Property ensures that the proposed sale will not result in a

25  lucrative "windfall" to the Buyer at the expense of creditors of the Estate.  *See In re Onouli*

26  *Kona Land Co.*, 846 F.2d 1170 (9th Cir. 1988).

27

28

**H.        The Sale is Made in "As-Is" Condition**

The Buyer has waived the inspection contingency.  The Buyer has not toured the Property and has acknowledged that the Debtor is selling the property in an "as-is" condition or basis by quitclaim deed without any representations or warranties whatsoever.  *See* Goodrich Dec.

**I.        Waiver of the Fourteen-Day Period for Effectiveness of the Sale Order**

Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FRBP 6004(h).  The legislative history to Rule 6004 provides:

> The court may, in its discretion, order that Rule 6004(g) [now 6004(h)] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court. Alternatively, the court may order that the stay under Rule 6004(g) [now 6004(h)] is for a fixed period less than 10 [now 14] days.

Given the notice and full opportunity to object, respond, or participate in overbid procedures presented by this Motion, the Debtor believes that, unless there are objections to the Motion that are not consensually resolved, it is appropriate and good cause exists for the Court to order that Rule 6004(h) is not applicable, and the Property may be sold immediately. Accordingly, the Debtor requests that the Court authorize the sale to be effectuated immediately upon entry of the order approving this Motion.

**J.        The Buyer Should Be Deemed a "Good Faith Purchaser" Pursuant to 11 U.S.C. § 363(m)**

Section  363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

1    A good faith buyer "is one who buys 'in good faith' and 'for value.'"  *Ewell v. Diebert*

2  *(In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of*

3  *Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically]

4  shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an

5  attempt to take grossly unfair advantage of other bidders.'" *Id.* (quoting *Community Thrift*

6  *& Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

7    Here, the Buyer is buying in good faith and has agreed to pay market value for the

8  Property.  The anticipated sale of the Property has been negotiated with the Buyer in

9  "arms'-length" discussions.  *See* Goodrich Decl.  Moreover, the Buyer has no connections

10  to the Debtor, the CRO, the Court, or the Office of the United States Trustee.  Finally, the

11  sale is subject to overbid and all parties-in-interest are permitted, subject to certain

12  conditions, to bid.  Based on such facts and circumstances, the Debtor believes that this

13  Court should find the Buyer is a "good faith purchaser" pursuant to 11 U.S.C. § 363(m)

14  and is paying fair value for the Property.

15    **K.    The Bankruptcy Court Has the Authority to Implement the Proposed**

16    **Overbid Procedures**

17    Implementation of the bidding procedures is an action outside of the ordinary

18  course of business.  11 U.S.C. § 363(b)(1) provides that a trustee "after notice and

19  hearing, may use, sell or lease, other than in the ordinary course of business, property of

20  the estate."  Furthermore, under 11 U.S.C. § 105(a), "[t]he court may issue any order,

21  process, or judgment that is necessary or appropriate to carry out the provisions of this

22  title."  Thus, pursuant to §§ 363(b)(1) and  105(a),  this Court may authorize the

23  implementation of overbidding procedures. The bankruptcy court may issue orders

24  determining the terms and conditions for overbids with respect to a sale of estate assets,

25  including specifying the minimum consideration required for an overbid, the particular

26  contractual terms required to be offered by overbidders, and requiring and setting the

27

28

1  amount of potential overbidder's deposits. *In re Crown Corporation*, 679 F.2d 774 (9th

2  Cir. 1982).

3      Here, the overbid procedures proposed by the Debtor are fair and reasonable

4  under the circumstances.  Additionally, the proposed overbid procedures will ensure the

5  sale of generates the greatest possible value to the Debtor's estate.  Accordingly, the

6  proposed overbidding procedures should be approved by the Court.

7      **L.    The Broker Commission Should Be Approved**

8      Real estate brokers are "professionals" for purposes of section § 327 of the

9  Bankruptcy Code and, as such, their employment must be approved by the court.  *In re*

10  *Cummins*, 15 B.R. 893, 895 (B.A.P. 9th Cir. 1981).

11      The employment of the Co-Brokers and the Agents was approved by the Court

12  under §328.  If the sale is consummated, the Co-Brokers and the Agents will have

13  performed a valuable service for the Estate.  Accordingly, the commission arrangement as

14  outlined in this Motion is reasonable, should be approved by the Court and payment

15  should be authorized out of escrow in lieu of the requirement of a fee application.

16      **M.    Estimated Benefit to the Estate**

17      The Debtor estimates the Estate will receive net proceeds of $21,000.00 from the

18  sale of the Property, plus an additional amount to cover the Estate's closing costs.  Based

19  on anticipated net sale proceeds from the Property and other properties the Debtor

20  intends to sell, the Debtor estimates a meaningful distribution will be made to creditors of

21  the Debtor's estate if the Property is sold.

22      Upon close of escrow, the estate shall receive funds from the sale as follows:

| | |
|---|---|
| Purchase Price | $250,000.00 |
| Payoff to Fay Servicing | (196,353.20) |
| Brokers Commission | (15,000.00) |
| Title, taxes, NHD report, recording charges | (15,567.02) |
| Escrow charges | (1,325.00) |
| Net proceeds: | $21,754.78 |

23

24

25

26

27

28

1    The seller's estimated settlement statement ("Settlement Statement") prepared by

2    Escrow is attached as **Exhibit 7**.

3    **VI.    CONCLUSION**

4    Based on the foregoing, the Debtor respectfully requests that this Court find that:

5    A.    Notice of the Motion was proper and adequate;

6    B.    The Debtor's marketing of the Property was adequate and proper;

7    C.    The standards set forth in 11 U.S.C. §§ 363(b) and (f)(1), (2) or (3) for selling

8    the Property free and clear of all liens, claims and interests, including all leasehold

9    interests, have been satisfied;

10    D.    Cobra 28 No. 8, LP ("Buyer") has acted in good faith, is paying fair value for

11    the Property, and is entitled to the protections of 11 U.S.C. § 363(m);

12    E.    The Court has jurisdiction over this matter;

13    F.    A hearing was held on this matter; and

14    G.    Cause exists to grant the Motion.

15    The Debtor respectfully requests that this Court enter an order as follows:

16    1.    The notice of the Motion and the hearing thereon is approved as proper and

17    adequate under the circumstances.

18    2.    The Motion is granted and the sale to Buyer is approved as the highest and

19    best offer.

20    3.    The Debtor is authorized to sell the Property to Buyer pursuant to 11 U.S.C.

21    §§ 363(b) and (f) for the purchase price of $250,000.00, and in accordance with the terms

22    and conditions that are set forth in the Purchase Agreement which is attached to the

23    Motion.

24    4.    The Debtor is authorized to pay the following undisputed liens or claims at

25    closing of the sale:

26    (i)  the Loan Funder lien recorded on May 26, 2021 as instrument no. 2021-

27    242412 of official records shall be paid in full as of the date of the closing of the

28    sale.

5.    Pursuant to Sections 363(f)(1) and/or (f)(2) of the Bankruptcy Code, effective upon closing, the sale of the Property will vest in Buyer all right, title and interest of the Debtor and the bankruptcy estate in the Property, free and clear of the following:

-    Lis Pendens recorded on December 19, 2022 as instrument no. 2022-0402268 in Riverside County, California.

6.    Unless the holder of the liens, claim or interests identified in paragraph 5 above has agreed to other treatment, such lien, claim or interest, to the extent such lien, claim or interest has not been extinguished by this Order, shall attach to the proceeds of the sale with the same force, effect, validity and priority that previously existed against the Property.

7.    The Order is and shall be effective as a determination that, upon and subject to the occurrence of the closing of the sale, the Lis Pendens has been and hereby is adjudged and declared to be unconditionally released as to the Property.

8.    The Buyer has not assumed any liabilities of the Debtor.

9.    The CRO, and any escrow agent upon the CRO's written instruction, shall be authorized to make such disbursements on or after the closing of the sale as are required by the Purchase Agreement or order of this Court, including, but not limited to, (a) real property taxes and assessments pro-rated as of the closing with respect to the Property; (b) the broker's commission; and (c) any escrow fees, title insurance premiums and other ordinary and typical closing costs and expenses payable by the Debtor pursuant to the Purchase Agreement or in accordance with local custom.

10.    The CRO is authorized to execute the Purchase Agreement, or other related documents that are reasonably necessary or appropriate to complete the sale, and to undertake such other actions as may be reasonably necessary or appropriate to complete the sale.

11.    Except as otherwise provided in the Motion, the Property shall be sold, transferred, and delivered to the Buyer on an "as is, where is" or "with all faults" basis.

12.     The Buyer is approved as a buyer in good faith in accordance with Section 363(m) of the Bankruptcy Code, and the Buyer shall be entitled to all protections to Section 363(m) of the Bankruptcy Code.

13.     This Order shall be effective immediately upon entry.  No automatic stay of execution, pursuant to Rule  62(a) of the Federal Rules of Civil Procedure, or Bankruptcy Rules 6004(h) or 6006(d), applies with respect to this Order.

14.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the documents executed in connection therewith in all respects, including retaining jurisdiction to (a) compel delivery of the Property to the Buyer, (b) resolve any disputes arising under or related to the Purchase Agreement, and (c) resolve any disputes regarding liens, claims, or interests asserted against the Property.

15.     The Purchase Agreement and any related documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Estate.

16.     The Debtor may retain, as the estate's liquidated damages, the deposit of the Buyer should the Purchase Agreement be cancelled by the Buyer or, alternatively, the Debtor may return the Buyer's deposit, at the Debtor's discretion.

17.     To the extent there is any tax liability to the Estate from the sale of the Property, the Debtor's principals are authorized to pay capital gains taxes.

18.     The overbidding procedures in the Motion are approved.

19.    For such other and further relief as the Court may deem just and proper.


Respectfully submitted,

Dated:  November 22, 2023          FINANCIAL RELIEF LAW CENTER, APC


By:    */s/ Rich Sturdevant*
        ANDY C. WARSHAW
        RICH STURDEVANT
        General Counsel for 2nd Chance
        Investment Group, LLC

1

## DECLARATION OF DAVID M. GOODRICH[1]

2     I, David M. Goodrich, declare as follows:

3     1.     I am Chief Restructuring Officer ("CRO") of 2nd Chance Investment Group,

4   LLC, the debtor and debtor-in-possession in the above-captioned case ("Debtor").  I know

5   each of the following facts to be true of my own personal knowledge, except as otherwise

6   stated, and, if called as a witness, I could and would competently testify with respect

7   thereto.  I make this declaration in support of the *Motion for Order: (1) Authorizing Sale of*

8   *Real Property Free and Clear of Liens, Claims, and Interests Pursuant 11 U.S.C.*

9   *§§ 363(b) and  (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful*

10  *Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m);*

11  *(4) Authorizing Payment of Undisputed Liens, Real Estate Broker's Commissions, and*

12  *Other Ordinary Costs of Sale; and (5) Waiving Stay Under Rule 6004(h)* ("Motion").

13    2.     Attached as **Exhibit 1** is a true and correct copy of the relevant portion of

14  Amended Schedule A/B and Amended Schedule D.

15    3.     Attached as **Exhibit 2** is a true and correct copy of the Co-Broker Order.

16    4.     Attached as **Exhibit 3** is a true and correct copy of the Title Report.

17    5.     Attached as **Exhibit 4** is a true and correct copy of the Claims Register.

18    6.     The Debtor seeks approval of the proposed Purchase Agreement, a true

19  and correct copy of which is attached as **Exhibit 5**.  Escrow is holding the proposed

20  Buyer's Deposit.

21    7.     The lien of Loan Funder LLC as well as property taxes are undisputed.

22    8.     A withdrawal of the Lis Pendens was recorded on October 24, 2023.

23    9.     A true and correct copy of the Settlement Statement is attached as

24  **Exhibit 7**.

25    10.    I believe the proposed sale is fair and reasonable, within the proper exercise

26  of my business judgment, and is in the best interest of the Estate.  Based on the Agents'

27  _____

28    [1] All capitalized terms have the same meaning or definition as the capitalized terms in the Motion.

advice, I believe the Buyer is offering fair market value for the Property.  The anticipated

sale of the Property has been negotiated in good faith with the Buyer in "arms'-length"

discussions.  I have no relationship with the Buyer.  Moreover, the sale will be conducted

in a commercially reasonable manner following appropriate notice, with an opportunity for

overbids.

11.     The Buyer has waived the inspection contingency.  The Buyer has not

toured the Property and has acknowledged that the Debtor is selling the property in an

"as-is" condition or basis by quitclaim deed without any representations or warranties

whatsoever.

12.     At my request, Grobstein Teeple LLP, the Debtor's financial advisor, has

prepared a property gain and tax analysis and has advised the Debtor that the capital

gains are estimated to be $34,647.  The total tax on the capital gains is estimated to be

$11,287.00.  Rayshon Foster owns 52% of the Debtor and will be allocated 52% of the

capital gains taxes. Sonja Foster owns 48% and will be allocated 48% of the capital gains

taxes.  A true and correct copy of the gain and tax analysis is attached as **Exhibit 6**.

13.     The Debtor reserves the right to object to the validity, scope and priority of

any disputed liens, claims and interest that have been or will be asserted against the

Property.

14.     I am informed that the sale of the Property will generate approximately

$21,000.00 for the benefit of the Estate plus an additional amount to pay costs of sale.

15.     All real property taxes owed will be paid in full through escrow.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22nd day of November, 2023, at Tucson, Arizona

_____

David M. Goodrich

### DECLARATION OF WILLIAM FRIEDMAN[2]

I, William Friedman, declare as follows:

1.      I am a real estate agent duly licensed in the State of California and employed with Coldwell Banker, located at 1608 Montana, Santa Monica, California 90403. I make this declaration in support of the *Motion for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant 11 U.S.C. §§ 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); (4) Authorizing Payment of Undisputed Liens, Real Estate Broker's Commissions, and Other Ordinary Costs of Sale; and (5) Waiving Stay Under Rule 6004(h)* ("Motion").

2.      I listed the Property for sale on Coldwell Banker's website and the Multiple Listing Service which includes several other websites.

3.      I also prepared the counteroffer which was accepted by the Buyer.

4.      My co-broker's and my efforts resulted in the accepted counteroffer for the Property from Cobra 28 No. 8, LP in the amount of $250,000 which is being submitted for the Court's approval.

5.      I will continue to market the Property through the hearing date so as to maximize the price ultimately received by the estate from the sale of the Property.

6.      When the information becomes available, I will publish the minimum bid amount, hearing date, overbidding instructions and amount of required deposit in the MLS to encourage overbidding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _20_ day of November, 2023, at _Los Angeles_, California.

_____
William Friedman

---

[2] All capitalized terms have the same meaning or definition as the capitalized terms in the Motion.

## DECLARATION OF JANINE KIRCHNAVY[3]

I, Janine Kirchnavy, declare as follows:

1.      I am a real estate agent duly licensed in the State of California and employed with 44Realty located at 829 N. Laurel Avenue, Suite #C, Upland, California 91786.  I make this declaration in support of the *Motion for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant 11 U.S.C. §§ 363(b) and  (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); (4) Authorizing Payment of Undisputed Liens, Real Estate Broker's Commissions, and Other Ordinary Costs of Sale; and (5) Waiving Stay Under Rule 6004(h)* ("Motion").

2.      I am the agent primarily responsible for marketing the Property for sale and am familiar with the value of real property in San Bernardino, California.

3.      On or about May 26, 2023, I listed the Property for sale on the MLS as well as other aggregation websites specializing in real estate listings. As of today, we have had approximately 850 online views from the MLS and other websites.

4.      My co-broker's and my efforts resulted in the offer for the Property from Cobra 28 No. 8, LP in the amount of $250,000.00, which is being submitted for the Court's approval.

5.      The Property was unavailable for in person showings and was shown only via "drive-by".  Eight offers were received for the Property.  The Buyer's offer is the highest and best offer received.

6.      I will continue to market the Property through the hearing date so as to maximize the price ultimately received by the estate from the sale of the Property.

---

[3] All capitalized terms have the same meaning or definition as the capitalized terms in the Motion.

7.      Based on my experience and investigation of surrounding property values I believe the Purchase Price represents fair market value for the Property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _____ day of November, 2023, at Upland, California.

**See Attached**

_____

Janine Kirchnavy

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed on this _21st_ day of November, 2023, at Upland, California.

3    _____

4                                              Janine Kirchnavy

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SABRAJ S. NIJJAR

I, Sabraj S. Nijjar, hereby declare and state as follows:

1.    I know each of the following facts to be true of my own personal knowledge except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.

2.    I am the President of Cobra 28 No. 8, Inc, the general partner of Cobra 28 No. 8, LP, proposed buyer for the real property located at 3025 Glenview Avenue, San Bernardino, California 92407 ("Property").

3.    Coba 28 No. 8, LP, also is the acknowledged backup bidder for the Debtor's real property located at 37472 Yorkshire Drive, Palmdale, California 93550.

4.    I have no connection or relationship with David M. Goodrich, Chief Restructuring Officer of 2nd Chance Investment Group, LLC.  Until I entered into negotiations with the CRO to purchase the Property, I had never met or heard of Mr. Goodrich.

5.    I am not a creditor of 2nd Chance Investment Group, LLC, the Honorable Scott C. Clarkson or Peter Anderson.

6.    I have negotiated the purchase of the Property from the CRO in good faith.  I have not colluded with anyone regarding the purchase of the Property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _20_ day of November, 2023, at _EL MONTE_, California.


_____
Sabraj S. Nijjar

# Exhibit 1

| Debtor | 2nd Chance Investment Group, LLC | Case number (If known) | 8:22-bk-12142 |
|---|---|---|---|
| | Name | | |

machinery and equipment)

**51.** **Total of Part 8.**

Add lines 47 through 50. Copy the total to line 87.

$201,261.00

**52.** **Is a depreciation schedule available for any of the property listed in Part 8?**
■ No
☐ Yes

**53.** **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
■ No
☐ Yes

---

**Part 9:    Real property**

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

■ Yes Fill in the information below.

**55.    Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1.  3025 Glenview Ave. San Bernardino CA 92407 | Fee simple | $0.00 | | $377,000.00 |
| 55.2.  13352 Marty Lane Garden Grove CA 92843 | Fee simple | $0.00 | | $700,000.00 |
| 55.3.  37472 Yorkshire Dr. Palmdale CA 37472 Yorkshire Dr. Palmdale CA  93550 | Fee simple | $0.00 | | $400,000.00 |
| 55.4.  324 W 47th Pl. Los Angeles CA 90037 | Fee simple | $0.00 | | $640,000.00 |
| 55.5.  25641 Byron St. San Bernardino CA 92404 | Fee simple | $0.00 | | $480,000.00 |
| 55.6.  43933 30 St E Lancaster CA 93535 | Fee simple | $0.00 | | $295,000.00 |
| 55.7.  1004 Peachwood Crt. Los Banos CA 93635 | Fee simple | $0.00 | | $426,000.00 |

Official Form 206A/B                Schedule A/B Assets - Real and Personal Property                page 3

Exhibit 1, Page 27

**Fill in this information to identify the case:**

Debtor name **2nd Chance Investment Group, LLC**

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number (if known) **8:22-bk-12142**

■ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

**2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1** **Fay Servicing**<br>Creditor's Name<br><br>**8001 Woodland Center Blvd. Suite 10 Tampa, FL 33614**<br>Creditor's mailing address<br><br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br>**5/17/21**<br>**Last 4 digits of account number** | Describe debtor's property that is subject to a lien<br>**3025 Glenview Ave. San Bernardino CA 92407**<br><br><br>Describe the lien<br>**1st Deed of Trust**<br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | **$180,000.00** | **$377,000.00** |
| **Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| **2.2** **Ally**<br>Creditor's Name<br><br>**PO Box 380902 Minneapolis, MN 55438**<br>Creditor's mailing address<br><br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br>**12/2020**<br>**Last 4 digits of account number** | Describe debtor's property that is subject to a lien<br>**2021 Mercedes Benz Sprinter 2500 with 38,620 value based on kbb.org**<br><br>Describe the lien<br>**Auto Loan**<br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | **$41,207.05** | **$50,456.00** |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:**<br>Check all that apply | | |

Official Form 206D            **Schedule D: Creditors Who Have Claims Secured by Property**            page 1 of 8

Exhibit 1, Page 28

# Exhibit 2

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Amanda G. Billyard 256838<br>Financial Relief Law Center, APC<br>1200 Main St., Suite C<br>Irvine, CA 92614<br>Phone: (714) 442-3349<br>Email: abillyard@bwlawcenter.com<br><br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor in Possession | **FILED & ENTERED**<br><br>**APR 13 2023**<br><br>**CLERK U.S. BANKRUPTCY COURT**<br>**Central District of California**<br>**BY bolte      DEPUTY CLERK** |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – <u>SANTA ANA</u> DIVISION**

</div>

| In re: 2nd Chance Investment Group, LLC | CASE NO.: 8:22-bk-12142-SC |
|---|---|
| | CHAPTER: 11 |
| | **ORDER RE MOTION IN INDIVIDUAL CHAPTER 11 CASE TO AUTHORIZE DEBTOR-IN-POSSESSION TO EMPLOY A PROFESSIONAL OTHER THAN GENERAL COUNSEL**<br><br>**[11 U.S.C. § 327, LBR 2014-1]** |
| | ☒ **No Hearing: LBR 9013-1(o)(3)**<br>☐ **Hearing Information:**<br>DATE:<br>TIME:<br>COURTROOM:<br>ADDRESS: |
| Debtor(s). | |

1. The court has considered the Notice of Motion and Motion In Individual Chapter 11 Case for Order Authorizing Debtor-in-Possession to Employ General Counsel and File Interim Fee Applications using procedure in LBR 9013-1(o).

2. The Motion was:  ☐ Opposed    ☒ Unopposed    ☐ Settled by stipulation

3. Based upon the motion and supporting documents, and the findings and conclusions made at the hearing if a hearing was held, IT IS ORDERED THAT:

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2015*                                    Page 1                                    **F 2081-**
**2.5.ORDER.EMPLOY.GEN.COUNSEL**

Exhibit 2, Page 29

a.  ☒ The Motion is granted pursuant to  11 U.S.C. § 327 and the Debtor-in-Possession is
authorized to employ:
<u>Coldwell Banker (Broker) and Citrus Grove Real estate, 44 Realty, Keller Williams, and</u>
<u>Remax  & Coldwell Banker Northern California (Co-Brokers) as of April 13, 2023. .</u>

b.  Broker and Co-Brokers will seek compensation pursuant to 11 U.S.C. ☐ § 328 or ☒ § 330

c.  ☐ The Motion is denied.

4. ☐ Notwithstanding 11 U.S.C. § 331, General Counsel may file interim fee applications in this case
_____ days apart;

5. ☐ General Counsel may use the procedures set forth in LBR 9013-1(o) regarding Notice of
Opportunity to Request Hearing when requesting approval of interim fee applications in this
case; and

6. ☐ Other (*specify*):

### 

Date: April 13, 2023

*Scott C. Clarkson*
Scott C. Clarkson
United States Bankruptcy Judge

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2015*                                                     Page 2                                             **F 2081-**
**2.5.ORDER.EMPLOY.GEN.COUNSEL**

Exhibit 2, Page 30

# Exhibit 3

# NOTICE

**PLEASE BE ADVISED THAT THE DATA AND INFORMATION FROM THE PUBLIC RECORDS CONTAINED HEREIN WILL NEED TO BE UPDATED PRIOR TO CLOSING AS MANY COUNTY FACILITIES ARE CLOSED OR HAVE LIMITED STAFFING AS A RESULT OF THE CORONAVIRUS PANDEMIC. IF THE INFORMATION FROM THE COUNTY IS NOT AVAILABLE THERE WILL BE ADDITIONAL REQUIREMENTS IN ORDER TO CLOSE AND INSURE THIS TRANSACTION. PLEASE CONTACT YOUR LOCAL TITLE OFFICER FOR DETAILS.**

Order No. 150-2355095-06



**Orange Coast Title Company**

1551 N. Tustin Ave., Suite 840
Santa Ana, CA 92705
714-822-3211

| | **PRELIMINARY REPORT** | |
|---|---|---|

A&A Escrow Services, Inc.
15250 Ventura Blvd., Suite 715
Sherman Oaks, CA 91403

| **Attention:** | Antonia Delgado | **Your no.:** | 105733-AA |
|---|---|---|---|
| **Property address:** | 3025 Glenview Avenue, San Bernardino, CA 92407 | **Order no.:** | 150-2355095-06 |

**Dated:**          November 13, 2023

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of November 6, 2023 at 7:30 AM

Steve Fernando, Sr. Title Officer
Email: stevef@octitle.com
Ph: 714-822-3211
Fax: 714-822-3349

Exhibit 3, Page 32

Order No. 150-2355095-06

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06)

**The Policy of Title Insurance, if issued, will be underwritten by:** Real Advantage Title Insurance Company
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of    TBD    Subject to any filed rate increases and/or changes in the liability.**


## Schedule "A"


**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee


**Title to said estate or interest at the date hereof is vested in:**

 2nd Chance Investment Group, LLC, a California Limited Liability Company


**The land referred to in this report is situated in the City of San Bernardino, the County of San Bernardino, State of California, and is described as follows:**

Lot 134, Tract 3732 Delman Heights, Subdivision, Book 48, Pages 39 and 40, in the City of San Bernardino, County of San Bernardino, State of California.


Assessor's Parcel Numbers(s):  0268-132-04-0-000

Exhibit 3, Page 33

Order No. 150-2355095-06

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1   General and Special taxes for the fiscal year 2023-2024, including any assessments collected with current taxes.
| | |
|---|---|
| Total amount | **$2,873.55** |
| 1st installment | **$1,436.79**, Open |
| Penalty | **$143.68** (after 12/11/2023) |
| 2nd installment | **$1,436.76**, Open |
| Penalty | **$153.68** (after 4/10/2024) |
| Code area | 007010 - City of San Bernardino |
| Parcel No. | **0268-132-04-0-000** |
| Exemption | $0 |

2   The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the State of California

3   Prior to close this company will require the Tax Collector's Office be contacted to verify open and delinquent taxes.

4   A building set back line as shown on the map of said tract
| | |
|---|---|
| Affects : | The front 25 feet of said land |
| Recorded: | in Book 48, Page 39 of Maps |

5   An easement for purposes herein stated, as shown on or dedicated by the map of said tract
| | |
|---|---|
| For : | Public utitlities and incidental purposes |
| Affects : | The rear 5 feet of said land |
| Recorded: | in Book 48, Page 39 of Maps |

6   Covenants, conditions and restrictions in an instrument recorded 4/6/1951 in Book 2744, Page 245, Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identify, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

"NOTE: Section 12956.1 (b)(1) of California Government Code provide the following: if this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

An instrument, upon the terms and conditions contained therein
| | |
|---|---|
| Entitled: | Quitclaim and Waiver of Right of Entry |
| Recorded: | 11/9/1960, in Book 5279, Page 398, Official Records |

7   An easement for purposes herein stated, and rights incidental thereto as provided in an instrument
| | |
|---|---|
| Recorded: | 5/9/1951 in Book 2761, Page 556, of Official Records. |
| For : | electric line consisting of poles, necessary guys and anchors, crossarms, braces, wires, conduits, cables, and other fixtures and appliances, for conveying electric energy and incidental purposes |
| In favor of : | Associated Telephone Company, LTD., a Corporation, and Southern California Edison Company, a Corporation |
| Affects : | The East 6 feet of said land |

Page 3

Exhibit 3, Page 34

Order No. 150-2355095-06

8    A financing statement recorded 5/26/2021 as Instrument No. 2021-242411, of Official Records.
| | |
|---|---|
| Dated: | not shown |
| Debtor: | 2nd Chance Investment Group, LLC |
| Secured party: | Loan Funder LLC |

9    A Deed of Trust to secure the indebtedness of
| | |
|---|---|
| Amount: | **$182,000.00** |
| Trustor: | **2nd Chance Investment Group, LLC, a California Limited Liability Company** |
| Trustee: | Pacific Coast Title Company |
| Beneficiary: | Loan Funder LLC, a Delaware Limited Liability Company |
| Dated: | 5/24/2021 |
| Recorded: | **5/26/2021 as Instrument No. 2021-242412** of Official Records |

An Assignment of rents and agreement not to sell or further encumber given as security for a promissory NOTE
| | |
|---|---|
| Recorded: | **5/26/2021, as Instrument No. 2021-242413**, of Official Records |
| Dated: | 5/24/2021 |
| Executed by: | **2nd Chance Investment Group, LLC, a California Limited Liability Company** |
| In favor of: | Loan Funder LLC, a Delaware Limited Liability Company |
| Amount: | **$182,000.00** |

The beneficial interest under said Deed of Trust was assigned
| | |
|---|---|
| To: | Forethought Life Insurance Company |
| By Assignment Recorded: | 7/14/2023, as Instrument No., 2023-0171913, Official Records. |

10    Rights of parties in possession of said land by reason of unrecorded leases, if any.  Please forward said leases for our examination.

11    The requirement that we be provided:

(1) A copy of the filed articles of organization of 2nd Chance Investment Group, LLC, a limited liability company.

(2) A current list of the names of said limited liability company members.

(3) A copy of said limited liability company's operating agreement, with a verified certificate that the operating agreement is a true and correct copy of the agreement now in effect.

12    The effect of documents, proceedings, liens, decrees or other matters which do not specifically describe said land, but which, if any do exist, may affect the title or impose liens or encumbrances thereon.  The name search necessary to ascertain the existence of such matters has not been completed and will require a statement of information from all parties involved in this transaction.

13    An action commenced, notice of which
| | |
|---|---|
| Recorded: | 12/19/2022 as Instrument No. 2022-0402268 , Official Records |
| Court: | Superior Court of California, County of Riverside |
| Case no.: | CVRI2204640 |
| Judicial District: | Riverside Historic Courthouse |
| Plaintiff: | Hiten Ram Bhakta, an individual; Sajan Bkakta, an individual; ASB Ventures, LLC, a California limited liability company; Precision Realty Fund, LLC, a Texas limited liability company |
| Defendant: | 2nd Chance Investments Group, LLC a California limited liablity company; Rayshon Andrew Foster, an individual; Advance Real Estate & Construction Solutions, Corporation, a California Corporation; Sonja Foster, an individual; and DOES 1 through 25, Inclusive. |
| Purpose of action: | Notice of Pendency of Action |

The effect of the following:

Exhibit 3, Page 35

Order No. 150-2355095-06

An instrument, upon the terms and conditions contained therein
Entitled:                    Withdrawal of Notice of Pendency of Action
Recorded:                    10/24/2023, as Instrument No., 2023-0261438, Official Records.

14  **Please note that all transactions involving a hard money or a private party loan will require underwriting approval prior to closing.  Please forward all closing documents as soon as possible.  Orange Coast Title will also require the following:**

1. Lender will need to confirm how borrower(s) were vetted and that they have met the borrower(s) in person.
2. We will require copies of two forms of identification from all individuals executing the loan documents.
3. All closing documents must be executed in escrow or in the presence of an Orange Coast Title employee or a Notary approved by Orange Coast Title AND an "Identity Verification and Notary Certification" must be filled out by the Notary involved in the signing (Form will be provided by Orange Coast Title).  We will require that the notary collect on Orange Coast Title's behalf, 2 forms of identification and provide a copy of the notary ledger with the thumbprint.  ANY DOCUMENTS NOTARIZED BY A NON-ORANGE COAST APPROVED NOTARY WILL NOT BE INSURED.
4. A Standard Policy be issued and standard pricing will apply.

**PLEASE NOTE THAT THE FOLLOWING EXCEPTION WILL APPEAR IN ALL LOAN POLICIES INVOLVING A "HARD MONEY" OR "PRIVATE MONEY" LENDER:**

"Any impairment, loss or failure of title to the beneficial interest of the insured in the mortgage insured by this policy resulting from:

(a) lack of possession on the original promissory note secured by the insured mortgage, or
(b) the absence from the original promissory note of a proper endorsement to the insured assignee.
(c) any claim, allegation or determination that the beneficial interest insured herein, or the underlying transaction   involves the sale of a Security and/or is in violation of State or Federal Security Laws.
(d) any interest or claim of interest by the mortgage company, servicing agent, or broker under the Insured Mortgage or Indebtedness."

15  (A)  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records;

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

(B)  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

(C)  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

(D)  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records

(E)  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records

(F)  Any lien or right to a lien for services, labor or material theretofore or hereafter not shown by the public records.

**Exceptions A-F will be omitted on extended coverage policies.**

## End of Schedule B

Exhibit 3, Page 36

Order No. 150-2355095-06

## "NOTES AND REQUIREMENTS SECTION"

**NOTE NO. 1**

California Revenue and Taxation Code Section 18662, effective January 1, 1994 and by amendment effective January 1, 2003, provides that the buyer in all sales of California Real Estate may be required to withhold 3 and 1/3% of the total sales price as California State Income Tax, subject to the various provisions of the law as therein contained.

**NOTE NO. 2 PAYOFF INFORMATION:**

Note: this company does require current beneficiary demands prior to closing.
If the demand is expired and a correct demand cannot be obtained, our requirements will be as follows:

A.      If this company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. The amount of this hold will be over and above the verbal hold the lender may have stipulated.

B.      If this company cannot obtain a verbal update on the demand, will either pay off the expired demand or wait for the amended demand, at the discretion of the escrow.

C.      In the event that a payoff is being made to a servicing agent for the beneficiary, this company will require a complete copy of the servicing agreement prior to close.

**NOTE NO. 3**

If this company is requested to disburse funds in connection with this transaction, chapter 598, statutes of 1989 mandates hold periods for checks deposited to escrow or sub-escrow accounts. The mandatory hold is one business day after the day deposited. Other checks require a hold period from three to seven business days after the day deposited.

### Notice Regarding Your Deposit of Funds

California Insurance Code Sections 12413 *et. Seq.* Regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow and sub-escrow accounts and be available for withdrawal prior to disbursement. Funds deposited with the Company by wire transfer may be disbursed upon receipt. Funds deposited with the Company via cashier's checks drawn on a California based bank may be disbursed the next business day after the day of deposit. If funds are deposited with by other methods, recording or disbursement may be delayed. All escrow and sub-escrow funds received by the Company will be deposited with other funds in one or more non-interest bearing escrow accounts of the Company in a financial institution selected by the Company. The Company and/or its parent company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and the Company shall have no obligation to account to the depositing party in any manner for the value of, or to pay such party, any benefit received by the Company and/or its parent Company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the Company and/or its parent company and earnings on investments made on the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the Company for its services in connection with the escrow or sub-escrow.  If funds are to be deposited with **Orange Coast Title Company** by wire transfer, they should be wired to the following bank/account:

Wiring Instructions for This Office:

**Citizens Business Bank**
**301 Vanderbilt Way**
**San Bernardino, CA 92408**
**Account No. 245123027**
**ABA 122234149**
**Account name:  Orange Coast Title Company**
**Reference Order No.150-2355095-06**
**Steve Fernando, Title Officer**

**Note No. 4:**  The premium for the requested title work shall be split between the agent and underwriter 88%-12%.

Exhibit 3, Page 37

Order No. 150-2355095-06



# Orange Coast Title Company

1551 N. Tustin Ave., Suite 840
Santa Ana, CA 92705
714-822-3211

Coldwell Banker Realty
1608 Montana Avenue
Santa Monica, CA 90403

**Attention:**      **Bill Friedman**
**Borrower:**       **Cobra 28 No. 8, LP**

**Lenders supplemental report**

The above numbered report (including any supplements or amendments thereto) is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an A.L.T.A Homeowner's Policy (2/03/10) and A.L.T.A. Loan Policy (06-17-06) form as follows:

A.     This report is preparatory to this issuance of an American Land Title Association loan policy of title insurance. This report discloses nothing, which would preclude the issuance of said American land title association loan policy of title insurance with endorsement no. 100 attached thereto.

B.     The improvements on said land are designated as:

A single family residence

3025 Glenview Avenue, in the City of San Bernardino, County of San Bernardino, State of California.

C.     Our search of the public records revealed conveyance(s) affecting said land recorded within 24 months of the date of this report are as follows:

None.

Exhibit 3, Page 38

Order No. 150-2355095-06

## Attention

Please note that this preliminary report now has an extra copy of the legal description on a separate sheet of paper. There are no markings on the page. The idea is to provide you with a legal description that can be attached to other documents as needed.  That legal description page immediately follows this page.

Thank you for your support of **Orange Coast Title Company**. We hope that this makes your job a little easier.

Exhibit 3, Page 39

Order No. 150-2355095-06

**Exhibit "A"**

Lot 134, Tract 3732 Delman Heights, Subdivision, Book 48, Pages 39 and 40, in the City of San Bernardino, County of San Bernardino, State of California.

Exhibit 3, Page 40

Order No. 150-2355095-06

# CLTA Preliminary Report Form – Exhibit B (06-03-11)

### CLTA STANDARD COVERAGE POLICY – 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02/03/10)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning: a.building, b. zoning, c.land use. d. improvements on the Land, e.land division; and ,f. environmental protection. This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks: a. that are created, allowed, or agreed to by You, whether or not they recorded in the Public Records; b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date; c. that result in no loss to You; or d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e, 25, 26, 27, or 28.
5. Failure to pay value for Your Title.
6. Lack of a right: a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and b. in streets, alleys, or waterways that touch the Land. This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
• For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount shown in Schedule A or $2,500 (whichever is less) | $5,000 |

### ALTA RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning: * land use * improvements on the land * land division * environmental protection. This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date. This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless: * a notice of exercising the right appears in the public records * on the Policy Date * the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking
3. Title Risks: * that are created, allowed, or agreed to by you * that are known to you, but not to us, on the Policy Date -- unless they appeared in the public records * that result in no loss to you * that first affect your title after the Policy Date -- this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks.
4. Failure to pay value for your title.
5. Lack of a right: *to any land outside the area specifically described and referred to in Item 3 of Schedule A OR *in streets, alleys, or waterways that touch your land. This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

### 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of land; or (iv) environmental protection; or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims or other matters:(a)created, suffered, assumed or agreed to by the Insured Claimant; (b)not known to the Company, not recorded in the Public records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy; (c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14);or(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state in which the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b):

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:
1.(a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.Any facts, rights, interests or claims which are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the  Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.(a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.

### 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

Exhibit 3, Page 41

Order No. 150-2355095-06

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to: (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; (iii) the subdivision of land; or (IV) environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5. (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters: (a) created, suffered, assumed, or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is (a) a fraudulent conveyance or fraudulent transfer; or (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of the land; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 1(c), 13(c), 13(d), 14, and 16.(b) Any governmental police power. This Exclusion 1(b)does not modify or limit the coverage provided under Covered Risks 5, 6, 13(c), 13(b), 14, and 16.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims or other matters (a) created, suffered, assumed or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant;(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks  11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 26); or (e)resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured to comply with applicable doing-business laws of the state in which the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth in lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no

longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6..

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

<div align="right">Order No. 150-2355095-06</div>

# Orange Coast Title Company
## PRIVACY POLICY

### We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information that you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

### Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means.

- Information we receive from providers of services to us, such as appraisers, appraisal management companies, real estate agents and brokers and insurance agencies (this may include the appraised value, purchase price and other details about the property that is the subject of your transaction with us).

- Information about your transactions with us, our Affiliated Companies, or others; and

- Information we receive from a consumer reporting agency.

**Your California Rights (immediately following this Privacy Policy) or you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373.  Only applies to CA residents**

### Use of Information

We request information from you for our own legitimate business purposes and not for benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis.

### Former Customers

**Even if you are no longer our customer, our Privacy Policy will continue to apply to you.**

### Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

### Other Important Information

We reserve the right to modify or supplement this Privacy Policy at any time.  If our Privacy Policy changes, we will provide the new Privacy Policy before the new policy becomes effective.

Last Revision 12/26/2019
Effective on 1/01/2020

## Your California Rights

*If you are a California resident, you may have certain rights under California law, including but not limited to the California Consumer Privacy Act ("CCPA"). All phrases used herein shall have the same meaning as those phrases used under relevant California law, including but not limited to the CCPA.*

**Right to Know**
You have the right to know:

- The categories of personal information we have collected about or from you;

- The categories of sources from which we collected your personal information;

- The business or commercial purpose for collecting or sharing your personal information;

- The categories of third parties with whom we have shared your personal information; and

- The specific pieces of your personal information we have collected.

*Process to Submit a Request*. To submit a verified request for this information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by visiting our website https://www.titleadvantage.com/privacypolicy.htm or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure your personal information is not disclosed to unauthorized parties, and to protect against fraud, we will verify your identity before responding to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the personal information requested, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right of Deletion**
You have a right to request that we delete the **personal information** we have collected from or about you.

*Process to Submit a Request.* To submit a verified request to delete you information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by clicking here or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure we do not inadvertently delete your **personal information** based on a fraudulent request, we will verify your identity before we respond to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the **personal information** requested to be deleted, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right to Opt-Out**
We do not sell your **personal information** to third parties, and do not plan to do so in the future.

**Right of Non-Discrimination**
You have a right to exercise your rights under the CCPA without suffering discrimination. Accordingly, OC Title & family of Companies will not discriminate against you in any way if you choose to exercise your rights under the CCPA.

**California Minors**
If you are a California resident under the age of 18, California Business and Professions Code § 22581 permits you to request and obtain removal of content or information you have publicly posted on any of our Applications or Websites. To make such a request, please send an email with a detailed description of the specific content or information to dataprivacy@octitle.com. Please be aware that such a request does not ensure complete or comprehensive removal of the content or information you have posted and there may be circumstances in which the law does not require or allow removal even if requested.

**Collection Notice**
The following is a list of the categories of **personal information** we may have collected about California residents in the twelve months preceding the date this Privacy Notice was last updated, including the business or commercial purpose for said collection, the

categories of sources from which we may have collected the **personal information**, and the categories of third parties with whom we may have shared the **personal information**:

## Categories of Personal Information Collected

The categories of **personal information** we have collected include, but may not be limited to:

- real name
- Signature
- Alias
- SSN
- physical characteristics or description, including protected characteristics under federal or state law
- address

- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number
- employment history

- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

## Categories of Sources

Categories of sources from which we've collected **personal information** include, but may not be limited to:

- the consumer directly
- public records
- governmental entities
- non-affiliated third parties
- affiliated third parties

## Business Purpose for Collection

The business purposes for which we've collected **personal information** include, but may not be limited to:

- completing a transaction for our Products
- verifying eligibility for employment
- facilitating employment
- performing services on behalf of affiliated and non-affiliated third parties
- protecting against malicious, deceptive, fraudulent, or illegal activity

## Categories of Third Parties Shared

The categories of third parties with whom we've shared **personal information** include, but may not be limited to:

- service providers
- government entities

- operating systems and platforms

- non-affiliated third parties
- affiliated third parties

**Sale Notice**

We have not sold the **personal information** of California residents to any third party in the twelve months preceding the date this Privacy Notice was last updated, and we have no plans to sell such information in the future. We also do not, and will not sell the **personal information** of minors under sixteen years of age without affirmative authorization.

**Disclosure Notice**

The following is a list of the categories of **personal information** of California residents we may have disclosed for a business purpose in the twelve months preceding the date this Privacy Notice was last updated.

- real name
- Signature
- Alias
- SSN
- physical characteristics or description, including protected characteristics under federal or state law

- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number

- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

Exhibit 3, Page 45

Order No. 150-2355095-06

- address
- employment history

If you have any questions and/or comments you may contact us:

**Call Us** at our toll free number (866) 241-7373

**Email Us** at dataprivacy@octitle.com

Mail:

Orange Coast Title

Attn: Privacy Officer

1551 N. Tustin Ave., Ste. 300

Santa Ana, CA 92705

Effective on 1/1/2019

Revised on 12/23/2019

Page 15

Exhibit 3, Page 46

Order No. 150-2355095-06



# Orange Coast Title Company

## 1551 N. Tustin Ave., Suite 840
## Santa Ana, CA 92705
## 714-822-3211

### <u>OWNER'S AFFIDAVIT</u>

State of _____  } S.S.
County of _____

Order No.:  150-2355095-06

The undersigned, _____, (owner's name) being first duly sworn, depose and say as follows:

1.  That the undersigned is/are the owner(s) of certain real property situated in the City of San Bernardino, County of San Bernardino and State of California, commonly known as 3025 Glenview Avenue and more particularly described in Schedule "A" attached hereto (the "Property"):

2.  That within the last ninety (90) days, including the date hereof, no person, firm or corporation has furnished any labor, services or materials in connection with the construction or repair of any buildings, fixtures or improvements on the Property, EXCEPT (if work has been performed or materials furnished within the last (90) days, please explain fully and state whether payment for the same has been made in full): _____.

3.  That there are no present tenants, lessees or other parties in possession or who have a right to possession of said Property, EXCEPT: (if none, state "None") _____.

4.  That the undersigned has/have no knowledge of any taxes or special assessments which are not shown as existing liens by the public records other than as follows: _____.

5.  That the taxes for Installment ___ of fiscal year _____ are paid.  Installment ___ of fiscal year _____ is not yet due.

6.  That the undersigned has/have no knowledge of, nor has/have the undersigned created, any violations of any covenants, restrictions, agreements, conditions or zoning ordinances affecting the Property.

7.  That Property is free of all liens, taxes, encumbrances and  claims of every kind, nature and description whatsoever, except for the following mortgages or deeds of trust;
_____ and except for real estate and personal property taxes for Installment ___ of fiscal year _____ and subsequent years.

8.  That there are no mechanic's, materialmen's or laborer's liens against the above described Property, nor is any party entitled to assert any mechanic's, materialmen's or laborer's liens against the Property.

9.  That there are no unrecorded leases or agreements affecting the Property, other than the Agreement of Sale between the undersigned and _____ as purchasers of the Property dated _____.

10. That there are no open, unexercised options to purchase or rights of first refusal to purchase the Property.

11. That no judgment or decree has been entered in any court of this State or the United States against the undersigned and which remain unsatisfied, EXCEPT _____.

12. The undersigned further state(s) that he/she/they are each familiar with the nature of an oath; and with the penalties under the laws of the state for making false statements in any instruments of this nature.  The undersigned further certify(ies) that they have read, this affidavit, or have had it read to them, and understand its context.

13. That I/WE have made this Affidavit for the purpose of inducing Orange Coast Title Company to issue one or more policy(ies) of title insurance insuring interests in the Property, and that said title company is relying on the statements set forth in this Affidavit in issuing said policies, free and harmless from and against any and all actions, causes, of action, loss, cost, expense, or damages that may be brought against or suffered or incurred by Orange Coast Title Company or its underwriters, in relying

Exhibit 3, Page 47

Order No. 150-2355095-06

on the truth and accuracy of the statements contained herein.

By: _____
Name: _____

By: _____
Name: _____

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document. |

---

State of _____  ⎫
County of _____  ⎬  S.S.
                               ⎭

On _____, before me, _____,

personally appeared _____

_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS MY HAND and OFFICIAL SEAL

Signature: _____

(Notary Seal)

Exhibit 3, Page 48

Order No. 150-2355095-06

**Exhibit "A"**

Lot 134, Tract 3732 Delman Heights, Subdivision, Book 48, Pages 39 and 40, in the City of San Bernardino, County of San Bernardino, State of California.

Exhibit 3, Page 49

Order No. 150-2355095-06



# Orange Coast Title Company

1551 N. Tustin Ave., Suite 840
Santa Ana, CA 92705
714-822-3211

## <u>DECLARATION OF OCCUPANCY</u>
**(Loan Transaction)**

The undersigned, _____,
(owner's name) depose(s) and say(s) as follows:

1.  The undersigned is/are the owner(s) of certain real property situated in the City of San Bernardino,
    County of San Bernardino and State of California, commonly known as 3025 Glenview Avenue, herein
    referred to as "Property":

2.  The undersigned is/are obtaining a loan from _____
    to be secured by a Deed of Trust against the Property, which is the subject of this transaction.

3.  The undersigned currently occupy the Property as the undersigned's principal address, and intend to
    continue to occupy the same as the undersigned's principal residence following the close of this
    transaction.

4.  The undersigned understand(s) that Orange Coast Title Company is relying on this information in
    calculating the recording fees for all real estate instruments, papers, and notices recorded in connection
    with this transaction in accordance with *California Government Code §27388.1(a)(2)*.

5.  The undersigned agree(s) to indemnify and hold Orange Coast Title Company harmless from and against,
    and to pay any additional recording fees and/or penalties arising out of, or in connection with, the
    inaccuracy of the information set forth herein.

The undersigned declare(s) under penalty of perjury under the laws of the State of California that the foregoing
is true and correct, and that this Declaration was executed on _____, at _____,
_____.

By: _____     By: _____
Name: _____     Name: _____

Exhibit 3, Page 50

Order No. 150-2355095-06

# STATEMENT OF FACTS

### CONFIDENTIAL INFORMATION FOR YOUR PROTECTION

This statement is to be signed personally by each party to the transaction and by both husband and wife, or domestic partner before title insurance can be written.  When filled in completely it will serve to establish identity, eliminate matters affecting persons of similar name, protect you against forgeries, and speed the completion of your transaction.

**MY FULL NAME**   (First, Middle, Last)_____ Date of Birth :_____

Business Ph: _____ Home Ph: _____ Birthplace: _____

SS#_____ Driver's License No._____ Expiration Date _____ State Issued_____

I have lived continuously in the USA since: _____

Full name of spouse/domestic partner: (First, Middle, Last)_____ -_____

Spouse/domestic partner's Birthplace: _____ Date of Birth: _____

Spouse/domestic partner's SS# _____ I have lived continuously in the USA since: _____

We were married/legally joined on : _____ at _____

Spouse/domestic partner's maiden name: _____

### RESIDENCES & OCCUPATIONS DURING PAST 10 YEARS

Street_____City_____From_____to_____
Street_____City_____From_____to_____
Street_____City_____From_____to_____

### OCCUPATIONS

(Husband/Domestic partner)   Firm Name: _____ Location: _____
Firm Name: _____ Location: _____
Firm Name: _____ Location: _____
(Wife/Domestic partner)   Firm Name: _____ Location: _____
Firm Name: _____ Location: _____

(If no former marriage/union, write "none" Otherwise complete the following)

**Any Former**   Name of former wife/domestic partner: _____

**Marriages**   Deceased: ____ Divorced: ____ Interlocutory: ____ Final: _____ When: _____ Where: _____

(check one item -   Name of former husband/domestic partner: _____

fill in date & place)   Deceased: ____ Divorced: ____ Interlocutory: ____ Final: _____ When: _____ Where: _____

There are no leases, defects, encumbrances, adverse claims, or other matters affecting said property other than as

Shown on the Preliminary Report prepared by: _____

Bearing the above referenced order number dated: _____

There is no-one in possession or entitled to possession of said property other than the Vestee shown in said

Preliminary Report except: _____

There is no work of improvement in progress and no such work has been completed within one year of this date:

(Circle One)                    YES                         NO

The Street address of the property in this transaction is:_____

Single Family Residence: _____ Multiple Residence: _____ Commercial: _____ Vacant Land: _____

Occupied By:  Owner: _____ Lessee: _____ Tenants: _____

Is any portion of new loan funds to be used for construction?  (circle one)     YES            NO

*The subject of this Statement of Identity, assumes full responsibility for any and all discrepancies, and agrees to hold harmless the recipient herein from any losses sustained by relying on such information.*

Date: _____          _____
                                                                          (Signature)

Order No: _____150-2355095-06          _____
                                                                          (Signature)

Exhibit 3, Page 51



Description: San Bernardino,CA Assessor Map - Book.Page 268.13 Page: 1 of 1
Order: 150-2355095-06 Comment:

THIS MAP SHOULD BE USED FOR REFERENCE PURPOSES ONLY. NO LIABILITY IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. PARCELS MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES.

# Exhibit 4

Printed on Oct 4 2023 12:14 pm

# 8:22-bk-12142 - 2nd Chance Investment Group, LLC

| # ↓⫶ | Original File Date | Creditor | Total Claimed Amount | Last Updated |
|---|---|---|---|---|
| 58 | 08/15/2023 | San Bernardino County | $3,166.40 | 10/01/2023 |
| 57 | 04/11/2023 | Mercedes-Benz Financial Services USA LLC | $45,868.43 | 10/01/2023 |
| 56 | 04/11/2023 | Mercedes-Benz Financial Services USA LLC | $77,308.52 | 10/01/2023 |
| 55 | 04/10/2023 | U.S. Bank Trust National Association, not in its i | $165,647.56 | 10/01/2023 |
| 54 | 04/09/2023 | Maher Abou Khzam | $345,661.64 | 10/01/2023 |
| 53 | 04/09/2023 | Maher Abou Khzam | $345,860.14 | 10/01/2023 |
| 52 | 04/07/2023 | Felipe Gutierrez Jr. | $66,125.00 | 10/01/2023 |
| 51 | 04/07/2023 | Forethought Life Insurance Company | $194,913.29 | 10/01/2023 |
| 50 | 04/07/2023 | LMF2 LP | $1,588,962.55 | 10/01/2023 |
| 49 | 04/07/2023 | Precision Realty Fund LLC | $1,256,031.58 | 10/01/2023 |
| 48 | 04/06/2023 | Lantzman Investments Inc | $1,107,927.81 | 10/01/2023 |
| 47 | 04/05/2023 | Lamar Advertising | $1,164,618.17 | 10/01/2023 |
| 46 | 04/04/2023 | INTERNAL REVENUE SERVICE | $12,485.00 | 10/01/2023 |
| 45 | 03/30/2023 | Pramira LLC | $690,524.38 | 10/01/2023 |
| 44 | 03/30/2023 | Kiwi Capital Group LLC | $822,161.10 | 10/01/2023 |
| 43 | 03/29/2023 | Zisman Family Trust | $270,000.00 | 10/01/2023 |
| 42 | 03/29/2023 | Steven Kinsbursky | $150,000.00 | 10/01/2023 |
| 41 | 03/27/2023 | Midare LLC | $1,057,500.00 | 10/01/2023 |

| # ↓⇣ | Original File Date | Creditor | Total Claimed Amount | Last Updated |
|---|---|---|---|---|
| 39 | 03/27/2023 | David Guzman | $60,000.00 | 10/01/2023 |
| 38 | 03/22/2023 | Straten Lending Group, LLC | $1,012,169.32 | 10/01/2023 |
| 37 | 03/22/2023 | Zona AZ LLC | $731,460.12 | 10/01/2023 |
| 36 | 03/22/2023 | Zona AZ LLC | $196,728.67 | 10/01/2023 |
| 35 | 03/22/2023 | Bhavesh Bhakta | $60,442.83 | 10/01/2023 |
| 34 | 03/22/2023 | Vishal Bhakta | $172,894.68 | 10/01/2023 |
| 33 | 03/22/2023 | Sima Patel | $109,640.11 | 10/01/2023 |
| 32 | 03/22/2023 | Anand Bhakta | $60,411.32 | 10/01/2023 |
| 31 | 03/22/2023 | Parin Bhakta | $171,618.65 | 10/01/2023 |
| 30 | 03/22/2023 | Jatin Bhakta | $60,035.31 | 10/01/2023 |
| 29 | 03/22/2023 | Abhishek Bhakta | $62,175.70 | 10/01/2023 |
| 28 | 03/22/2023 | Deven Bhakta | $62,018.17 | 10/01/2023 |
| 27 | 03/22/2023 | Ronak Parikh | $59,478.60 | 10/01/2023 |
| 26 | 03/22/2023 | ASB Ventures LLC | $261,283.39 | 10/01/2023 |
| 25 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 24 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 23 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 22 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 21 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 20 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 19 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 18 | 03/21/2023 | Salvador Jimenez | $72,600.00 | 10/01/2023 |
| 17 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 16 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 15 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| 14 | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |

| # ↓≡ | Original File Date | Creditor | Total Claimed Amount | Last Updated |
|---|---|---|---|---|
| **13** | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| **12** | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| **11** | 03/21/2023 | Salvador Jimenez | $72,600.00 | 10/01/2023 |
| **10** | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| **9** | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| **8** | 03/21/2023 | Salvador Jimenez | $66,000.00 | 10/01/2023 |
| **7** | 03/02/2023 | INTERNAL REVENUE SERVICE | $7,972.89 | 10/01/2023 |
| **6** | 02/23/2023 | Wells Fargo Bank, N.A. | $594,915.37 | 10/01/2023 |
| **5** | 02/16/2023 | U.S. Small Business Administration | $146,894.05 | 10/01/2023 |
| **4** | 01/17/2023 | FRANCHISE TAX BOARD | $1,222.08 | 10/01/2023 |
| **3** | 01/06/2023 | Jesus Acosta And Michelle Acosta | $180,000.00 | 10/01/2023 |
| **2** | 12/30/2022 | American Express National Bank | $227,492.42 | 10/01/2023 |
| **1** | 12/28/2022 | Ally Bank c/o AIS Portfolio Services, LLC | $41,992.14 | 10/01/2023 |

# Exhibit 5



# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

X☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ *COBRA 28 NO. 8, LP* Date 5/26/23

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____ ***MZ BROKERAGE INC*** _____ DRE Lic. # *02054540*
                                    Real Estate Broker (Firm)
By _____ ***MICHAEL GARCIA*** DRE Lic. # *01965127* _____ Date 5/26/23
           (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**

### DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

Exhibit 5, Page 56

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:

**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential real property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**AD REVISED 12/21 (PAGE 2 OF 2)**



## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

**Exhibit 5, Page 57**

**FAIR HOUSING & DISCRIMINATION ADVISORY**
(C.A.R. Form FHDA, 6/22)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A.  FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B.  CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C.  CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D.  AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E.  OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7.; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION: Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A.  California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B.  Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC § 10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A.  Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B.  Refusing to rent (i) an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A.  Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B.  Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C.  "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D.  Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2022, California Association of REALTORS®, Inc.
**FHDA REVISED 6/22 (PAGE 1 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

| Nijjar Realty Inc. 4900 Santa Anita Ave. Ste. 2C El Monte, CA 91731 | Phone: 626.575.0062 x 1 | Fax: 6265753084 | RPA GROUP IV |
| Mike Nijjar | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com | | |

Exhibit 5, Page 58

E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family;

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a physical disability from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
    (i) Failing to allow that person to keep the service animal or emotional support animal in rental property,
    (ii) Charging that person higher rent or increased security deposit, or
    (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

10. **EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

11. **FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: **https://www.dfeh.ca.gov/housing/**

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster.**

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

12. **LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC ,* 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | | |
|---|---|---|
| Buyer/Tenant _____ | **COBRA 28 NO. 8, LP** | Date 5/26/23 |
| Buyer/Tenant _____ | | Date _____ |
| Seller/Landlord _____ | | Date _____ |
| Seller/Landlord _____ | | Date _____ |

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

FHDA REVISED 6/22 (FHDA PAGE 2 OF 2)



**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   RPA GROUP IV

Exhibit 5, Page 59



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller _____ | | Date _____ |
| Seller _____ | | Date _____ |
| Buyer _____*wfc*_____ | *COBRA 28 NO. 8, LP* | Date 5/26/23 |
| Buyer _____ | | Date _____ |
| Buyer's Brokerage Firm *MZ BROKERAGE INC* | DRE Lic # 02054540 | |
| By _____ | DRE Lic # 01965127 | Date 5/26/23 |
| **MICHAEL GARCIA** | | |
| Seller's Brokerage Firm *44REALTY CORP* | DRE Lic # | |
| By _____ | DRE Lic # | Date _____ |
| **JANINE KIRCHNAVY** | | |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Nijjar Realty Inc. 4900 Santa Anita Ave. Ste. 2C El Monte, CA 91731          Phone: 626.575.0062 x 1          Fax: 6265753084          RPA GROUP IV
Mike Nijjar
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Exhibit 5, Page 60

# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
### (C.A.R. Form WFA, Revised 12/21)

Property Address: **3025 GLENVIEW AVE, SAN BERNARDINO, CA 92410** ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | |
|---|---|---|
| Buyer/Tenant _[signature]_ | **COBRA 28 NO. 8, LP** Date 5/26/23 | |
| Buyer/Tenant _____ | Date _____ | |
| Seller/Landlord _____ | Date _____ | |
| Seller/Landlord _____ | Date _____ | |

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/21 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| | | |
|---|---|---|
| Nijjar Realty Inc. 4900 Santa Anita Ave. Ste. 2C El Monte, CA 91731 | Phone: 626.575.0062 x 1    Fax: 6265753084 | RPA GROUP IV |
| Mike Nijjar | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com | |

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 12/22)

**Date Prepared:** *May 26, 2023*

1. **OFFER:**
   - **A.** THIS IS AN OFFER FROM _____ *COBRA 28 NO. 8, LP* _____ ("Buyer").
   - **B.** THE PROPERTY to be acquired is _____ *3025 GLENVIEW AVE* _____ , situated in _____ *SAN BERNARDINO* _____ (City), _____ *SAN BERNARDINO* _____ (County), California, _____ *92410* _____ (Zip Code), Assessor's Parcel No(s). _____ *0268132040000* _____ ("Property").
     **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   - **C.** THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.
   - **D.** Buyer and Seller are referred to herein as the "Parties." Brokers are **not** Parties to this Agreement.

2. **AGENCY:**
   - **A.** **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   - **B.** **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
     Seller's Brokerage Firm _____ *44REALTY CORP* _____ License Number _____
     Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
     Seller's Agent _____ *JANINE KIRCHNAVY* _____ License Number _____
     Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
     Buyer's Brokerage Firm _____ *MZ BROKERAGE INC* _____ License Number _____ *02054540*
     Is the broker of (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
     Buyer's Agent _____ *MICHAEL GARCIA* _____ License Number _____ *01965127*
     Is (check one): [X] the Buyer's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   - **C.** [ ] More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   - **D.** **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B (cash) | Purchase Price | $ *245,000.00* | [X] All Cash |
| **B** | | Close of Escrow (COE) | [X] *20* Days after Acceptance OR on [ ] _____ (date) | |
| **C** | 32A | Expiration of Offer | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or [ ] ____ AM/ __ PM | |
| **D(1)** | 5A(1) | Initial Deposit Amount | $ *10,000.00* ( *4.08* % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or ____) business days after Acceptance by wire transfer OR [ ] |
| **D(2)** | 5A(2) | [ ] Increased Deposit (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( ____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR [ ] _____ (date) OR [ ] _____ |
| **E(1)** | 5C(1) | Loan Amount(s): First / Interest Rate / Points | $ _____ ( ____ % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed ____ % • Buyer to pay up to ____ points to obtain the rate above | Conventional or, if checked, [ ] FHA (Forms FVAC/HID attached) [ ] VA (Form FVAC attached) [ ] Seller Financing [ ] Other: |
| | | If FHA or VA checked, Deliver list of lender required repairs | 17 (or ____) Days after Acceptance | |
| **E(2)** | 5C(2) | Additional Financed Amount / Interest Rate / Points | $ _____ ( ____ % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed ____ % • Buyer to pay up to ____ points to obtain rate above | Conventional or, if checked, [ ] Seller Financing [ ] Other: |
| **E(3)** | 7A | Occupancy Type | Primary, or if checked, [ ] Secondary [X] Investment | |
| **F** | 5D | Balance of Down Payment | $ *235,000.00* | |
| | | **PURCHASE PRICE TOTAL** | $ *245,000.00* | |

© 2022, California Association of REALTORS®, Inc.

**RPA REVISED 12/22 (PAGE 1 OF 16)**     Buyer's Initials *JN* / _____     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

Nijjar Realty Inc. 4900 Santa Anita Ave. Ste. 2C El Monte, CA 91731     Phone: 626.575.0062 x 1     Fax: 6265753084     RPA GROUP IV
Mike Nijjar     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Property Address: 3925 GLENVIEW AVE, SAN BERNARDINO, CA 92410    Date: May 26, 2023

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: _____ |
| G(2) | | ADDITIONAL FINANCE TERMS: | | |
| G(3) | 18 | ☐ Seller agrees to pay the obligation of Buyer to compensate Buyer's Broker under a separate agreement (C.A.R. Form SPBB attached). Seller's Broker's offer, if any, to compensate Buyer's Broker is unaffected unless Otherwise Agreed. | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ___ 3 (or ___ ) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ___ 3 (or ___ ) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ___ 3 (or ___ ) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | | **Intentionally Left Blank** | | |
| J | 16 | Final Verification of Condition | 5 (or ___ ) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or ___ ) Days after Acceptance | |
| L | 8 | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | Loan(s) | 17 (or ___ ) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or ___ ) Days after Acceptance | ☒ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or ___ ) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | Informational Access to Property Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or ___ ) Days after Acceptance | Any contingency in L(1)-L(7 removed or waived by che applicable box above or att |
| L(4) | 8D, 14A | Review of Seller Documents | 17 (or ___ ) Days after Acceptance, or 5 Days after Delivery, whichever is later | Contingency Removal (C.A CR) and checking the a box therein. Removal or V |
| L(5) | 8E, 13A | Preliminary ("Title") Report | 17 (or ___ ) Days after Acceptance, or 5 Days after Delivery, whichever is later | time of offer is against Ager See **paragraph 8H**. |
| L(6) | 8F, 11L | Common Interest Disclosures required by Civil Code § 4525 or this Agreement | 17 (or ___ ) Days after Acceptance, or 5 Days after Delivery, whichever is later | ☐ CR attached |
| L(7) | 8G, 9B(6) | Review of leased or liened items (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or ___ ) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(8) | 8J | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | | **Possession** | **Time for Performance** | **Additional Terms** |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or ☐ _____ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | Seller Occupied or Vacant units | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | Occupied units by tenants or anyone other than the Seller | ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached | Seller shall disclose to Buyer if occupied by tenants or persons other than the Seller, and attach TOPA in a counter offer if not part of Buyer's offer. |
| N | | **Documents/Fees/Compliance** | **Time for Performance** | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or ___ ) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or ___ ) Days after Delivery | |
| N(3) | 11L(2) | Time to pay fees for ordering HOA Documents | 3 (or ___ ) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or ___ ) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |

**RPA REVISED 12/22 (PAGE 2 OF 16)**    Buyer's Initials _JN_ / _____    Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    RPA GROUP IV

Property Address: *3025 GLENVIEW AVE, SAN BERNARDINO, CA 92410*   Date: *May 28, 2023*

| O | | Intentionally Left Blank |
|---|---|---|

**P** — **Items Included and Excluded**

**P(1)** | 9 | Items Included - All items specified in Paragraph 9B are included and the following, if checked:

- ☐ Stove(s), oven(s), stove/oven combo(s);
- ☐ Refrigerator(s);
- ☐ Wine Refrigerator(s);
- ☐ Washer(s);
- ☐ Dryer(s);
- ☐ Dishwasher(s);
- ☐ Microwave(s);

- ☐ Video doorbell(s);
- ☐ Security camera equipment;
- ☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
- ☐ Smart home control devices;
- ☐ Wall mounted brackets for video or audio equipment;

- ☐ Above-ground pool(s) / ☐ spa(s);
- ☒ Bathroom mirrors, unless excluded below;
- ☐ Electric car charging systems and stations;
- ☐ Potted trees/shrubs;

**Additional Items Included:**

**P(2)** | 9 | **Excluded Items:**

**Q** — **Allocation of Costs**

| Q | Paragraph # | Item Description | Who Pays (If Both is checked, cost to be split equally unless Otherwise Agreed) | Additional Terms |
|---|---|---|---|---|
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____  <br> ☐ Provided by: *Click here to select your Service Provider* | ☐ Environmental <br> ☐ Other _____ |
| Q(2) | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(3) | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(6) | 10B(2) | Government Required Point of Sale **corrective/remedial actions** | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(7) | 19B | Escrow Fee | ☐ Buyer ☐ Seller ☐ Both *1/2 BUYER 1/2 SELLE* <br> ☒ Each to pay their own fees | Escrow Holder: *MOSAIC ESCROW* |
| Q(8) | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____ | Title Company (If different from Escrow Holder): *ORANGE COAST TITLE* |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(11) | | City transfer tax, fees | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(12) | 11L(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | ☐ Buyer ☐ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both | |
| Q(16) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(17) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(18) | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: <br> Issued by: *Click here to select your Service Provider* <br> ☐ Buyer waives home warranty plan | ☐ Buyer ☒ Seller ☐ Both _____ | If Seller or Both checked, Seller's cost not to exceed $ _____ |

**R** — **OTHER TERMS:** *BUYER HOLDS A REAL ESTATE LICENSE. ESCROW TO PROVIDE COMPETITIVE RATES. SUBJECT TO INTERIOR INSPECTION.*

RPA REVISED 12/22 (PAGE 3 OF 16)   Buyer's Initials _____ / _____   Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   RPA GROUP IV

Exhibit 5, Page 64

**4. PROPERTY ADDENDA AND ADVISORIES** (Check all that apply)

**A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
- ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
- ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA) ☐ Other

**B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Addendum # _____ (C.A.R. Form ADM) ☐ Short Sale Addendum (C.A.R. Form SSA)
- ☐ Back Up Offer Addendum (C.A.R. Form BUO) ☐ Court Confirmation Addendum (C.A.R. Form CCA)
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA) ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
- ☐ Other ☐ Other

**C. BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
- ☒ Buyer's Investigation Advisory (C.A.R. Form BIA) ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
- ☒ Wire Fraud Advisory (C.A.R. Form WFA) ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
  (Parties may also receive a privacy disclosure from their own Agent.)
- ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA) ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
- ☐ Trust Advisory (C.A.R. Form TA) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
- ☐ REO Advisory (C.A.R. Form REO) ☐ Probate Advisory (C.A.R. Form PA)
- ☐ Other ☐ Other

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. DEPOSIT:**
(1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.

(2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.

(3) **RETENTION OF DEPOSIT: Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.**

**B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C. LOAN(S):**
(1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.

(2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.

(3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.

(4) **FHA/VA: If FHA or VA is checked in paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Buyer has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**

**A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

**B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

RPA REVISED 12/22 (PAGE 4 OF 16) Buyer's Initials _JN_ / _____ Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com RPA GROUP IV

Exhibit 5, Page 65

C. **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (paragraph 3B) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

7. **CLOSING AND POSSESSION:**

   A. **OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

   B. **CONDITION OF PROPERTY ON CLOSING:**

      (1) Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

      (2) **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

   C. **SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

   D. **At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

   E. Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

8. **CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

   A. **LOAN(S):**

      (1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

      (2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.

      (3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

      (4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

      (5) NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

   B. **APPRAISAL:**

      (1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

      (2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

      (3) ☒ Fair Appraisal Act: The Parties acknowledge receipt of the attached Fair Appraisal Act Addendum (C.A.R. Form FAAA).

   C. **INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12**.

   D. **REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A**.

RPA REVISED 12/22 (PAGE 5 OF 16)        Buyer's Initials ___/___        Seller's Initials ___/___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com        RPA GROUP IV

**E. TITLE:**

(1) This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.

(2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11L** ("CI Disclosures").

**G. BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**H. REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**I. REMOVAL OF CONTINGENCY OR CANCELLATION:**

(1) **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**

(2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.

(3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**J. SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

**9. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B. ITEMS INCLUDED IN SALE:**

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
**Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.

(3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.

(4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.

(5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.

(6) LEASED OR LIENED ITEMS AND SYSTEMS: Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

RPA REVISED 12/22 (PAGE 6 OF 16)          Buyer's Initials ____ / ____          Seller's Initials ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          RPA GROUP IV

Exhibit 5, Page 67

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to paragraph **9B(6)**, and (ii) are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

C. **ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

10. **ALLOCATION OF COSTS:**
   A. **INSPECTIONS, REPORTS, TESTS AND CERTIFICATES: Paragraphs 3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, report, test, certificate or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document.** Agreements for payment of required work should be specified elsewhere in **paragraph 3Q, or 3R, or in a separate agreement** (such as C.A.R. Forms RR, RRRR, ADM or AEA). Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**
   B. **GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**
      (1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.
      (2) **POINT OF SALE REQUIREMENTS:**
         (A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6).** Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.
         (B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
      (3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.
      (4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.
   C. **HOME WARRANTY:**
      (1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18)**. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.
      (2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

11. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
   A. **TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**
      (1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).
      (2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.
      (3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

**RPA REVISED 12/22 (PAGE 7 OF 16)**   Buyer's Initials ___SW___ / ___   Seller's Initials ___ / ___



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com   RPA GROUP IV

Exhibit 5, Page 68

(4) In the event Seller or Seller's Agent prior to Close Of Escrow becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B. LEAD DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").

(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C,** and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(4)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11 A, B, C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**

(1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C,** or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.

(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**L. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

---

**RPA REVISED 12/22 (PAGE 8 OF 16)**     Buyer's Initials __JN__ / _____     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com  RPA GROUP IV

**(2)** If the Property is a condominium or located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**M. SOLAR SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar system. Seller may use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**N. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:

**(1)** Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

**(A)** A general home inspection.

**(B)** An inspection for lead-based paint and other lead-based paint hazards.

**(C)** An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

**(D)** Any other specific inspections of the physical condition of the land and improvements.

**(2)** Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations include, but are not limited to, an investigation of the availability and cost of general homeowner's insurance, flood insurance and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

**A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

**D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

---

**RPA REVISED 12/22 (PAGE 9 OF 16)**       Buyer's Initials  _JN_ / _____       Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       RPA GROUP IV

Exhibit 5, Page 70

**F.** Buyer shall, after Close Of Escrow, receive a Grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**G.** Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A.** **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 11N, 13A, 13C, and 28**.

**B.** **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

  (1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

  (2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

  (3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in **paragraph 11A or 11B**, is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.

  (4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to **paragraph 14C(1)**.

**C.** **SELLER RIGHT TO CANCEL:**

  (1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

  (2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1) or 3D(2)** or if the funds deposited pursuant to **paragraph 3D(1) or 3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B or 6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8G**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2) and 29**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

  (3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

**D.** **BUYER RIGHT TO CANCEL:**

  (1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Buyer shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

  (2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

  (3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

F. **EFFECT OF REMOVAL OF CONTINGENCIES:**
   (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
   (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

G. **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B;** **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS AND AGENTS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer. If Seller agrees to pay Buyer's Broker (see **paragraph 3G(3)**), Seller shall be entitled to a copy of the written portion of the compensation agreement between Buyer and Buyer's Broker identifying the compensation to be paid. See C.A.R. Form SPBB for further information.
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          RPA GROUP IV

Exhibit 5, Page 72

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions **of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11L(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33,** and **paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** or **paragraph 3 of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

B. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

C. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

D. Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A** and **paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

E. Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

F. Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

G. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23. ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K,** Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA). Parties shall provide any assignment agreement to Escrow Holder within 1 Day after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment as specified in this paragraph.

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

---

RPA REVISED 12/22 (PAGE 12 OF 16)        Buyer's Initials ____ / ____        Seller's Initials ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    RPA GROUP IV

Property Cases 3: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EO-BAS, SDOBE39ARDFNTL-C1192D23    Entered 11/22/23 17:46:58  Desc
Mali Dccrment  Pge 80 of 109  Date May 28 2025

**25. DEFINITIONS and INSTRUCTIONS:** The following words, when defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A.** **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

**B.** **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**

**C.** **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D.** **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E.** **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F.** **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G.** **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H.** **"Copy"** means copy by any means including photocopy, facsimile and electronic.

**I.** **"Counting Days"** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

**J.** **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**K.** **"Deliver"**, **"Delivered"** or **"Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

**L.** **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**M.** **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**N.** **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

**O.** **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

**P.** **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**Q.** **"Sign"** or **"Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

**26. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**27. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**RPA REVISED 12/22 (PAGE 13 OF 16)**          Buyer's Initials  JN / _____          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    RPA GROUP IV

28. **LEGALLY AUTHORIZED SIGNER:** Whenever this Agreement or any related documents, the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

---

29. **LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages):
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials _SW_ / _____          Seller's Initials _____ / _____

---

30. **MEDIATION:**
   A.   The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
   B.   **ADDITIONAL MEDIATION TERMS: (i)** Exclusions from this mediation agreement are specified in paragraph 31B; **(ii)** The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and **(iii)** Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.

---

31. **ARBITRATION OF DISPUTES:**
   A.   The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.
   B.   **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: **(i)** Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; **(ii)** an unlawful detainer action; and **(iii)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.
   C.   **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: **(i)** the filing of a court action to preserve a statute of limitations; **(ii)** the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or **(iii)** the filing of a mechanic's lien.
   D.   **AGENTS:** Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
   E.   **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

   **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _SW_ / _____          Seller's Initials _____ / _____

---

RPA REVISED 12/22 (PAGE 14 OF 16)          Buyer's Initials _SW_ / _____     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   RPA GROUP IV



Exhibit 5, Page 75

Property Address: 3625 GLENVIEW AVE, SAN BERNARDINO, CA 92440          Date: May 26, 2023

**32. BUYER'S OFFER**

   **A.**  **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

   **B.**  ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

      (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

      (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

      (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

      (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

      (5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #:

      _____

      _____

   **C.**  The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

   **D.**  **BUYER SIGNATURE(S):**

(Signature) By, _____ Date: 5/26/23

    Printed name of BUYER: **COBRA 28 NO. 8, LP**

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, _____ Date: _____

    Printed name of BUYER: _____

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

   **A.**  **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

    **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.**
    Seller shall return and include the entire agreement with any response.

    ☐ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)

    ☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

   **B.**  ☐ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

      (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

      (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

      (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

      (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).

      (5) If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #:

      _____

      _____

   **C.**  The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

   **D.**  **SELLER SIGNATURE(S):**

(Signature) By, _____ Date: _____

    Printed name of SELLER: _____

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, _____ Date: _____

    Printed name of SELLER: _____

    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

| OFFER NOT ACCEPTED: _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date) |
| --- |
| Seller's Initials |

RPA REVISED 12/22 (PAGE 15 OF 16)



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    RPA GROUP IV

Exhibit 5, Page 76

Property Address 3625 GLENVIEW AVE, SAN BERNARDINO, CA 92440 Date May 26, 2023

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   A. Buyer's Brokerage Firm **MZ BROKERAGE INC** _____ Lic. # **02054540**
   By _____ **MICHAEL GARCIA** Lic. # **01965127** Date **5/26/23**
   By _____ Lic. # _____ Date _____
   Address **4900 SANTA ANITA AVE #2C** City **EL MONTE** State **CA** Zip **91731**
   Email **MICHAEL.GARCIA@MZBROKERAGE.COM** Phone # _____
   ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
   ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

   **Designated Electronic Delivery Address(es) (Check all that apply):**
   ☐ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

   B. Seller's Brokerage Firm **44REALTY CORP** _____ Lic. # _____
   By _____ **JANINE KIRCHNAVY** Lic. # _____ Date _____
   By _____ Lic. # _____ Date _____
   Address _____ City _____ State _____ Zip _____
   Email _____ Phone # _____
   ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
   ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

   **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent) (Check all that apply):**
   ☐ Email above; ☐ Text to Phone # above; ☐ Alternate: _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail // _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** _____ / _____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
Agent or Seller Initials

Buyer's Initials _____ / Seller's Initials _____ / 

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RPA REVISED 12/22 (PAGE 16 OF 16)**



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com RPA GROUP IV

Exhibit 5, Page 77

**BUYER'S INVESTIGATION ADVISORY**
(C.A.R. Form BIA, Revised 12/21)

**Property Address** *3025 GLENVIEW AVE, SAN BERNARDINO, CA  92410*

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.

   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

**BIA REVISED 12/21 (PAGE 1 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

Exhibit 5, Page 78

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _____    *COBRA 28 NO. 8, LP* Date 5/26/23

Buyer _____    _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**BIA REVISED 12/21 (PAGE 2 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    RPA GROUP IV

Exhibit 5, Page 79

## CALIFORNIA ASSOCIATION OF REALTORS®

# FAIR APPRAISAL ACT ADDENDUM
### (C.A.R. Form FAAA, 6/22)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ___ Other _____ ("Agreement"), dated __05/26/2023__, on property known as __3025 GLENVIEW AVE, SAN BERNARDINO, CA 92410__ ("Property"), in which _____ is referred to as ("Seller") and _____ __COBRA 28 NO. 8, LP__ _____ is referred to as ("Buyer").

Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/ AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**By signing below, Buyer and Seller has each read, understands and acknowledges receipt of a copy of this Fair Appraisal Act Addendum.**

Buyer _____     Date _5/26/23_
       *COBRA 28 NO. 8, LP*

Buyer _____     Date _____

Seller _____     Date _____

Seller _____     Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**FAAA 6/22 (PAGE 1 OF 1)**



### FAIR APPRAISAL ACT ADDENDUM (FAAA PAGE 1 OF 1)

Nijjar Realty Inc. 4900 Santa Anita Ave. Ste. 2C El Monte, CA 91731                          Phone: 626.575.0062 x 1       Fax: 6265753084       RPA GROUP IV
Mike Nijjar                                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Exhibit 5, Page 80

CALIFORNIA ASSOCIATION OF REALTORS®

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/22)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _____    Date 5/26/23
COBRA 28 NO. 8, LP

Buyer/Seller/Landlord/Tenant _____    Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/22 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

Exhibit 5, Page 81

## COUNTER-OFFER

This agreement (the "Agreement" or "Counter-Offer") is intended to set forth the terms and conditions of a contract for the purchase by and sale to Cobra 28 No. 8, LP (the "Buyer") from 2nd Chance Investment Group, LLC, by and through its Chief Restructuring Officer David M. Goodrich and solely in its capacity as chapter 11 debtor in the bankruptcy case 8:22-bk-12142-SC.) (the "Seller"), of the real property more commonly known as 3025 Glenview, San Bernardino, California (the "Property"). When executed below, this Agreement will constitute conclusive evidence and the exclusive terms and conditions of the contract for such purchase and sale (the "Sale") of the Property and will supersede and replace in its entirety Buyer's written Residential Property Purchase Agreement and all attachments in support thereof dated May 26, 2023 (the "Offer") and any oral or written negotiations since the Offer.

**PURCHASE PRICE; DEPOSIT; ESCROW.** The purchase price for the Property shall be $250,000 (the "Purchase Price"). Buyer shall make an initial deposit of $10,000 (the "Initial Deposit") in the form of cashier's check or wire transfer made payable to "A&A Escrow Services, Inc." (the "Escrow Holder") which shall be delivered to A&A Escrow Services, Inc., 15250 Ventura Blvd, suite 715, Sherman Oaks, California, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement.

**FINANCIAL WHEREWITHAL.** Buyer shall deliver to the Seller, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement, proof of committed funds available to Buyer sufficient to enable Buyer to consummate the acquisition contemplated herein, which proof shall be in the form of a letter of credit, loan commitment, or other form acceptable to Seller in Seller's sole discretion. In the event that either (i) Buyer fails timely to provide any such proof, or (ii) Seller determines, in Seller's sole discretion, that any proof of funds provided to Seller by Buyer is unacceptable, Seller shall have the right, at Seller's option, to provide written notice to Buyer that this Counter-Offer is terminated. In the event that Seller exercises such termination right, this Counter-Offer shall terminate effective as of the date of Seller's written notice to Buyer, whereupon the Initial Deposit (if theretofore deposited with the Escrow Holder) shall be returned to Buyer and Buyer and Seller shall each be relieved of any further obligations hereunder.

**ESCROW INSTRUCTIONS.** Escrow instructions corresponding to the terms of this Agreement shall be provided by the Escrow Holder and signed by the parties within five (5) business days of the date of Buyer's and Seller's receipt of said escrow instructions. Buyer and Seller shall deposit such documents and instruments with the Escrow Holder as and when reasonably required to complete the sale. Prior to the Seller's filing of its motion to approve the sale of the Property, Buyer shall be free to assign this Agreement to another person or entity (the "Assignee") subject to Seller's prior review and written approval (which approval Seller may grant or withhold in his sole discretion), but Buyer shall remain liable

hereunder, together with such Assignee, in the event that such Assignee fails to perform any of Buyer's obligations hereunder. Buyer shall not assign this Agreement to another person or entity after the Seller has filed its motion for approval of the sale of the Property with the Bankruptcy Court.

**BUYER'S DUE DILIGENCE. Buyer waives the inspection contingency and understands that property is occupied and Seller has not been granted access to the property and Buyer will not be given access to the property.**

**APPRAISAL AND FINANCING. Buyer waives the appraisal and financing contingencies and is paying all cash for the property.**

**TITLE; TITLE INSURANCE.** Within three (3) business days after acceptance of this Agreement, Orange Coast Title Company or such other title company of Seller's choice (the "Title Company") will be instructed to provide a preliminary report of the condition of title to the Property, including copies of underlying documents referred to in Schedule B thereof, for Buyer's review. Buyer shall have three (3) business days after receipt of the preliminary title report and underlying documents in which to provide Seller written notice (the "Notice of Title Disapproval") that Buyer disapproves the condition of title with respect to a material matter(s) that interfere with the use or marketability of the Property for the purpose for which it is currently used or intended to be used. Such notice must refer to the specific exception(s) in Schedule B of the preliminary title report and the specific underlying document(s) which are the basis for Buyer's disapproval. Within five (5) business days after receipt of the Notice of title Disapproval, Seller may, in Seller's sole discretion, either (i) cancel this Agreement and the Sale, in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of the Initial Deposit, or (ii) elect to correct the item(s) that were disapproved by Buyer, in which event the Sale shall proceed. Seller may correct such item by any means that will result in the Title Company either removing the disapproved exception(s) from the preliminary report, providing title insurance coverage by endorsement against such exception(s), or providing that the order approving the Sale entered by the Bankruptcy Court shall resolve such exception. At the close of the Sale, Seller shall convey and Buyer shall accept title to the Property as shown in Schedule B of the preliminary title report, subject to any corrections as in this paragraph above, free and clear of all monetary liens, subject to the terms of the Agreement and the order approving the Sale. Seller shall pay the costs of a CLTA Standard Owner's policy of title insurance.

**REMOVAL OF CONTINGENCIES; COURT CONFIRMATION; CLOSING** If Buyer does not give Seller written Notice of Cancellation or Notice of Title Disapproval as and when provided in this Agreement, Buyer's silence shall be deemed acceptance and Buyer shall be deemed to have satisfied and removed all of Buyer's contingencies and to proceed with the Sale. Seller shall then file a motion with the Bankruptcy Court to confirm the Sale, which sale shall be subject to qualified overbids as approved by the Bankruptcy Court. Upon such removal of contingencies, Buyer shall be unconditionally obligated to proceed with the Sale, subject only to Bankruptcy Court confirmation as set forth below. If the Bankruptcy Court confirms the Sale to Buyer, the closing shall take place as soon as practicable after entry of the order approving the Sale, but no later than the later to occur of (i) the first business day after

Exhibit 5, Page 83

fourteen (14) calendar days following the entry of the operative Order of the Bankruptcy Court approving the Sale or (ii) if the effectiveness of the Order of the Bankruptcy Court approving the Sale is stayed, the first business day after the Order is no longer stayed (the "Closing Date"). The closing shall occur on the date the deed transferring the Property to Buyer is recorded with the County Recorder where the Property is located.

**BANKRUPTCY SALE.** Buyer acknowledges that Seller is a chapter 11 debtor in possession duly appointed to administer the bankruptcy estate, and is a party to this Agreement solely in that capacity. Seller and its brokers and agents (collectively, the "Seller's Brokers") have not and will not determine the condition or fitness for use of the Property for any particular purpose. The Sale shall be "as is," "where is," "with all faults," and with no warranty by or recourse whatsoever to Seller or Seller's Brokers herein. Transfer of the Property shall be by Quitclaim Deed. All parties acknowledge that Seller is a party to this Agreement solely in its capacity as chapter 11 debtor in possession and that in the event of any default in the performance of any of Seller's obligations under the Offer (as modified hereby) or in the event that any other claim is asserted against Seller, its Chief Restructuring Officer David M. Goodrich, or the estate in connection with this transaction, the the Seller and Mr. Goodrich shall in no event have any personal liability whatsoever , it being expressly understood and agreed that Buyer's sole recourse, if any, in such event shall be to the assets of the Seller's bankruptcy estate.

**TAXES; PRORATIONS; COSTS OF SALE.** All real property taxes and assessments for the current tax year shown in the current County Tax Bill shall be prorated between Seller and Buyer and charged as of the closing date to the applicable accounts of Seller and Buyer. The Sale shall be free and clear of any homeowner's association assessments and all real property taxes (other than those prorated as provided above) enforceable against the Property through the closing date of the Sale. Escrow fees shall be split between Buyer and Seller in the manner customary in the County where the Property is located. Seller shall pay any real property transfer tax. Seller shall pay the cost of a Natural Hazard Disclosure Report, from a vendor selected by Seller, to be furnished to Buyer through escrow. Buyer shall pay and have sole responsibility for compliance with any requirements imposed on the Property or this Sale by any governmental agency(ies), including compliance with any applicable governmental retrofit requirements. Buyer shall pay the cost of recording the deed. Buyer and Seller shall each pay their own expenses of every other type except as specifically provided in this Agreement.

**BANKRUPTCY COURT APPROVAL; OVERBIDDING.** The Sale is subject to notice to creditors, approval by the Bankruptcy Court, and better qualified bids received by Seller through and including the Bankruptcy Court hearing to confirm the Sale. Payment of any and all real estate brokers' commissions is also subject to notice to creditors and approval by the Bankruptcy Court. Buyer acknowledges and agrees that Seller may not seek to obtain the Bankruptcy Court's approval if Seller has determined that it would be in the best interest of the bankruptcy estate not to do so, and Seller holds sole and absolute discretion with regard to the foregoing.    Buyer acknowledges and agrees that if the Bankruptcy Court approves the Sale to a different buyer (the "Successful Overbidder") at the hearing on the Sale, the Seller may hold the Buyer's deposit pending close of the Sale to the Successful Overbidder and, if the Successful Overbidder does not timely close its purchase of the Property, the Seller has the right to close the Sale to the Buyer at the

Purchase Price hereunder, or such higher price as the Buyer may have bid at the hearing on the Sale.

**BROKERS.** Seller is represented by Coldwell Banker and 44Realty Corp. Buyer is represented by MZ Brokerage. Subject to Bankruptcy Court approval, Seller will pay a real estate broker's commission aggregating 6% of net sales price of the Property as follows: 1.5% to Coldwell Banker, 1.5% to 44 Realty Corp and 3% to MZ Brokerage in connection with the closing of the Sale. Seller's Brokers and Buyer's Brokers are collectively referred to herein as the "Brokers". No commission or compensation shall be due or payable to Brokers in connection with this Agreement or Sale except from the cash proceeds of an actual Sale of the Property that closes to Buyer. Buyer hereby represents and warrants that, other than the Brokers, Buyer has not dealt with any broker, finder, or other person entitled to any fee, commission, or other compensation in connection with the Sale and Buyer shall indemnify, defend, protect, and hold Seller and the related bankruptcy estate harmless of, from, and against any claims, demands, actions, causes of action, losses, liabilities, costs, and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as Seller may suffer or incur in the event that any claims for any such fees, commissions, or other compensation of any kind are hereafter asserted.

**MATERIAL CHANGE OF CONDITION.** In the event of any material change in the condition of the Property after the date of acceptance of this Counter-Offer, if Buyer demands repair of any resulting actual damage to the Property, Seller may, at Seller's sole option: (i) elect to terminate this Agreement, in which event Buyer's and Seller's obligations to buy or sell shall terminate and the Initial Deposit shall be refunded to Buyer without interest; or (ii) make required repairs at the bankruptcy estate's expense; or (iii) assign any insurance proceeds for the damage to the Property to Buyer as of the close of the Sale; or (iv) credit the cost of such repairs to Buyer through escrow, it being agreed that in the event that Seller elects and complies with subpart (b), (c), or (d) of this paragraph, Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property. Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property. Conditions related to the Covid-19 pandemic shall not constitute a material change in condition under this Counter-Offer.

**REMEDY FOR BUYER'S OR SELLER'S FAILURE TO CLOSE.** Buyer's sole remedy in the event that the Sale fails to close as a result of Seller's inability or failure to close for any reason, including but not limited to the reason of failure to obtain approval of the Sale by the Bankruptcy Court, shall be the mutual release of Buyer's and Seller's obligations to buy or sell and a full refund of the Initial Deposit (plus any increase thereof by Buyer). In the event Buyer fails to close the Sale for any reason other than Seller's default, after Buyer's contingencies have been removed as under this Agreement, Buyer's Initial Deposit (plus any increase thereof by Buyer) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action. This provision shall apply equally to the Initial Deposit (and any increase thereof by Buyer) without interest. If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, signed release instructions from both Buyer and

Exhibit 5, Page 85

Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT, BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R.FORM RID).

_____ [Buyer's Initials]

**BANKRUPTCY COURT JURISDICTION.** The United States Bankruptcy Court for the Central District of California, Santa Ana Division shall have sole and exclusive jurisdiction to interpret and enforce the terms of this Agreement and Buyer hereby consents and submits to such exclusive jurisdiction. This Agreement shall be interpreted and enforced pursuant to the laws of the State of California, the United States of America, and title 11 of the United States Code.

**"AS-IS," "WHERE-IS" CONDITION; NO WARRANTIES.** Buyer acknowledges and agrees that, to the maximum extent permitted by law, the sale contemplated by this Agreement is made "as-is," "where-is," and "with all faults," except as specifically provided in this Agreement. Seller and Seller's Brokers have not made, do not make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever, whether express or implied, oral or written, concerning or respecting (i) the value of the Property; (ii) the income to be derived from the Property; (iii) the suitability of the Property, or lack thereof for any activity or use which Buyer may intend to conduct thereon, including any possibilities or limitations for future development; (iv) the habitability, merchantability, marketability, profitability, or fitness for a particular purpose, of the Property, or lack thereof; (v) the manner, quality, state of repair, or lack of repair of the Property; (vi) the nature, quality, or condition of the Property, or any portion, system, or component thereof, including without limitation, water, soil, and geology; (vii) the compliance of the Property or its operation, or lack thereof, with any laws, ordinances, regulations, rules, or orders of any applicable governmental authority or body; (viii) the manner or quality of engineering, design, construction or materials, if any, incorporated into the Property; (ix) the compliance or lack of compliance with any land use, building and safety, or other laws, ordinances, regulations, rules, orders, or other requirements imposed or enforced by any governmental or non-governmental body, including without limitation the Americans with Disabilities Act of 1990; (x) the presence or absence at, on, under, or adjacent to the Property, of materials described as "hazardous substances, hazardous materials, or toxic substances" or by similar terms under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§ 9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. §§1801, et seq.), the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901, et seq.), the Toxic Substance Control Act (15 U.S.C. § 2601, et seq.), the Clean Water Act (33 U.S.C. § 1251, et seq.), California Health and Safety Code §§ 25117 or 25316, or other statutes and laws, all as amended and including all regulations issued thereunder; (xi) the content, completeness or accuracy of any due diligence materials or preliminary report regarding title to the Property; (xii) the conformity or lack of conformity of the improvements to any plans or specifications for the Property, including any plans and

Exhibit 5, Page 86

specifications that may have been or may be provided to Buyer; (xiii) the conformity or lack of conformity of the Property to past, current, or future applicable zoning or building requirements; (xiv) any deficiency of any undershoring, drainage, or other aspects, systems, or components of or affecting the Property; (xv) the fact, if applicable, that all or a portion of the Property may be located on or near any natural hazard zone as determined by any governmental agency or body; (xvi) the existence of vested land use, zoning, or building entitlements affecting the Property or any other property; or (xvii) any other matter. Without in any manner limiting the foregoing, Buyer hereby acknowledges and agrees that (i) Seller's Brokers have provided (and will hereafter provide) to Buyer various materials and information relating to the Property, including, without limitation, information and materials relating to the condition of the Property, and (ii) all such materials and information so provided to Buyer by Seller's Brokers shall, for all purposes of this Agreement, be deemed to have been disclosed to Buyer by the Seller, as well.

**BROKERS.** Seller's Brokers herein have not and will not perform any inspections, investigations, or due diligence on behalf of Buyer unless otherwise specified herein. Buyer is informed that Buyer must arrange for any inspections and investigations desired by Buyer utilizing suitable third party professionals selected and compensated by Buyer. In no event shall Seller have any liability or responsibility for any representation, warranty, statement made, or information furnished by Seller's Brokers, or any other person or entity, concerning the Property, this Agreement, or any other matter, unless expressly set forth in writing and signed personally by Seller.

**OPPORTUNITY TO INSPECT; BUYER'S SOLE RELIANCE.** Buyer represents, warrants, acknowledges, and agrees that **EXCEPT FOR PERFORMING AN INTERIOR INSPECTION OF THE PROPERTY,** Buyer has been given the opportunity to inspect and investigate the Property and all other facts and circumstances deemed by Buyer relevant and significant, and to review information and documentation affecting the Property. In deciding to proceed with the Sale, Buyer is relying solely on Buyer's own inspections and investigation of the Property (including by any outside professionals whom Buyer has elected to engage for such services) and review of such information and documentation, and not on any information provided or to be provided by Seller. Buyer further acknowledges and agrees that any information made available to Buyer or provided or to be provided by or on behalf of Seller with respect to the Property was obtained from a variety of sources and that neither Seller nor Seller's Brokers nor any other person has made or makes any representations as to the accuracy or completeness of such information. Buyer hereby fully and irrevocably releases all such sources and preparers of information and documentation affecting the Property which were retained or engaged by Seller or Seller's Brokers from any and all claims that Buyer may now or hereafter have against such sources and preparers of information, for any costs, expenses, losses, liabilities, damages, demands, actions, or causes of action arising from any such information or documentation. NEITHER SELLER NOR BROKERS HAVE PROVIDED OR WILL PROVIDE ANY LEGAL OR TAX ADVICE TO BUYER. Buyer is informed that Buyer must obtain any such advice, if desired by Buyer, from independent professionals selected and engaged by Buyer.

**PHYSICAL, GEOLOGICAL, PEST CONTROL, AND ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS.**

A.    OTHER THAN AN INTERIOR INSPECTION, BUYER SHALL CONDUCT THOROUGH PHYSICAL, GEOLOGICAL, PEST CONTROL, ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS MAY BE DETERMINED BY BUYER, THROUGH QUALIFIED PROFESSIONALS SELECTED BY BUYER. Seller and Seller's Brokers strongly recommend that Buyer fully exercise and not waive such inspections and investigations.

B.    Buyer shall select and employ, at Buyer's sole expense, a licensed engineer(s), architect(s), contractor(s), geologist(s), pest control licensee(s), environmental consultant(s), or other qualified professional(s), to make inspection(s) and investigations of the Property, including, but not limited to, (i) its general structure, plumbing, heating, air conditioning (if any), electrical system, built-in appliances, cesspool/sewer/septic system, well, roof, soils, foundation, mechanical systems, pool, spa, related equipment and filters, sprinklers, and those other matters affecting the desirability of the Property (all if and only to the extent any such structures, systems, and components are presently a part of the Property); (ii) any actual or potential wood destroying pests or other conditions damaging to the Property or any portion thereof; (iii) environmental hazards, substances, products, or conditions, including without limitation, asbestos, formaldehyde, lead, lead-based paint, contaminated soil or water, fuel, chemical storage tanks, hazardous waste, electromagnetic fields, and radon gas, any of which may constitute a health risk; (iv) the presence or absence of any required governmental permits, inspections, applications, approvals, and certificates of occupancy, and compliance or lack of compliance with building codes and laws applicable to the Property; (v) plans and specifications for the Property; (vi) all applicable zoning, municipal, county, state, and federal, including those affecting the past, current, or any future use of the Property; (vii) deed restrictions and other matters of public record which may govern, restrict, condition, or prohibit the use, alteration, or development of the Property; and (viii) generally, without limitation, any and all other items and matters of whatsoever nature, character, or description, which Buyer deems material to Buyer's interests, in, on, or affecting the Property, and to approve or disapprove said inspection within the period and in the manner set forth in this Agreement.

**RETROFITTING.** All required retrofitting including but not limited to the payment of City Report, installation of smoke and carbon monoxide detectors, low flow toilets and compliance with all governmental agencies shall be Buyer's responsibility for cost and completion.

**DOCUMENTS ATTACHED.** Buyer agrees to sign and acknowledge receipt of the following documents attached to this Counter-Offer:

**1.) USE OF NON-STANDARD FORMS ADVISOR,    2.) SIGHT UNSEEN**

DISCLOSURE ADVISORY AND HOLD HARMLESS 3.)     AGENT'S VISUAL
INSPECTION DISCLOSURE   4.) BUYER'S INSPECTION WAIVER

**COMPLETE AGREEMENT; NO OTHER REPRESENTATIONS OR WARRANTIES.**
Seller shall not be liable or bound in any manner by any oral or written statements,
representations, or information pertaining to the Property, or the operation thereof,
furnished by any real estate broker, agent, employee, contractor, or other person.
Buyer further acknowledges and agrees Seller has no obligations to make repairs,
replacements, or improvements to the Property except as may otherwise be expressly
stated herein. Without limiting any other provision hereof, Buyer represents, warrants,
and covenants to Seller that, except for Seller's express representations and warranties
specified in this Agreement, Buyer is relying solely upon Buyer's own investigation of
the Property.

**WRITTEN AFFIRMATION OF SELLER REQUIRED.** Buyer understands that Seller may
continue to receive and respond to other offers on the Property and may be making several
counter-offers concurrently containing the same or different terms. This Counter-Offer shall
not be binding until accepted by Buyer and executed by Buyer and Seller on the signature
page below; and then approved by Seller, in Seller's sole discretion, in the form of the Seller's
"Affirmation of Agreement" attached hereto as Exhibit "A" which, if so executed by Seller, will
constitute Seller's agreement that Seller will sell the Property to Buyer, subject to Bankruptcy
Court approval, the rights of any overbidding parties, and the terms and conditions of this
Agreement. Buyer further acknowledges that it would be imprudent and unrealistic to rely
upon the expectation of entering into a binding agreement regarding the subject matter of this
Counter-Offer prior to receipt of Seller's Affirmation of Agreement, and further represents to
Seller that any efforts to complete due diligence, or to perform any of the obligations provided
herein shall not be considered as evidence of binding intent without Seller's Affirmation of
Agreement, and understands that BUYER'S ACCEPTANCE HEREOF SHALL HAVE NO
FORCE OR EFFECT PRIOR TO BUYER'S RECEIPT OF SUCH AFFIRMATION OF
AGREEMENT SIGNED BY SELLER.

**ATTORNEYS' FEES.** In the event that either party hereto brings an action or other
proceeding to enforce or interpret the terms and provisions of this Agreement, the
prevailing party in that action or proceeding shall be entitled to have and recover from
the non-prevailing party all such fees, costs and expenses (including, without limitation,
all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur
in the pursuit or defense of such action or proceeding.

**TENANCY.** Seller entered into an agreement with one or more tenants in the Property.
David M. Goodrich ("CRO") was retained as Seller's chief restructuring officer after
Seller filed chapter 11 bankruptcy case. The CRO did not negotiate or enter into the
agreement with the tenant(s) for the occupancy of the Property.  The CRO has not
communicated with the tenant(s), except for a letter sent to the tenant(s) offering to pay
cash for a return of the Property to Seller. The CRO and Seller make no representations
or warranties regarding the rights of the tenant(s), the occupancy of the tenant(s), the
ability of the Buyer to remove the tenant(s), the ability of the Buyer to remove the

tenant(s), the collectability of rent from the tenant(s), and the suitability of the Property for a tenancy, the compliance, if at all, of the Property with all rental income producing property and/or tenancy requirements of all local, state and national governmental and/or homeowner association bodies. **BUYER IS PURCHASING PROPERTY SUBJECT TO EXISTING TENANCY.**

**EXPIRATION OF COUNTER-OFFER.** This Counter-Offer shall expire if not accepted by Buyer by delivering a copy hereof, fully signed and initialed by Buyer, to Seller, on or before 5:00 p.m., Pacific time, on June 20, 2023. Such acceptance shall nevertheless be subject to the receipt of Seller's Affirmation of Agreement.

**AGREED AND ACCEPTED:**

BUYER:

Dated: ___6/21/23___

By:

_____
Cobra 28 No. 8, LP


SELLER (subject to execution of Seller's Affirmation of Agreement):

Dated: ___June 16, 2023___

By: _____
David M. Goodrich, in his capacity as Chief Restructuring Officer, chapter 11 debtor and debtor in possession

**EXHIBIT "A"**

**SELLER'S AFFIRMATION OF AGREEMENT**

Seller hereby acknowledges Buyer's acceptance of the foregoing Counter-Offer and affirmatively agrees to sell the Property to Buyer on the terms and conditions of the foregoing Agreement, but subject to Bankruptcy Court approval and any qualified overbidders.  Seller shall revoke any other outstanding Counter-Offers made to other prospective buyers or make the same subject and subordinate to this Agreement.

SELLER

Dated: _June 21, 2023_

By: _____

David M. Goodrich, in his capacity as Chief Restructuring Officer, chapter 11 debtor and debtor in possession

## SIGHT UNSEEN DISCLOSURE, ADVISORY AND HOLD HARMLESS

Due to current and evolving conditions and limitations relating to the Bankruptcy sale of the property located at 3025 Glenview Ave, San Bernardino, California (the "Property"), the undersigned (individually and collectively referred to as "You") have elected to (a) enter into a contract to purchase or lease the Property without having personally visited the Property ("Property Preview"), and/or (b) not personally perform a walk-through or other pre-closing/occupancy inspection of the Property (including, but not limited to, for the purpose of determining the current condition of the Property, the number of bedrooms or bathrooms currently in the Property, the number of tenants at the Property, and any unpermitted additions to the Property ("Inspections").

**You acknowledge and agree that the Property is part of a pending bankruptcy action (2nd Chance Investment, LLC and Case No 8:33-bk-12142-SC. The Seller appointed by the Bankruptcy Court (Chief Restructing Officer, David M. Goodrich) has very limited information regarding the Property and will NOT be able to provide access to the Property and cannot guarantee the accuracy of the very limited lease / purchase agreements that Mr. Goodrich will provide to You and/or Coldwell Banker Realty and its representatives (collectively "Broker"). Mr. Goodrich may ask the Bankruptcy Court to terminate whatever lease agreements that may exist, but there is NO guarantee that the Court will agree to such a termination. Further, at your own expense, You will be responsible for removing any occupants from the Property after close of escrow.**

1.      Additionally, You acknowledge and agree that (a) Broker have recommended that You (or someone other than Broker that you designate) personally attend a Property Preview before entering into a contract and personally attend the Inspections, (b) virtual tours, videos, photographs, FaceTime and other images, descriptions and media (collectively **"Property Images and Descriptions"**) are not a substitute for an in-person Property Preview and being present at Inspections, (c) any information that Broker has provided to You regarding the Property is based on unverified sources including, but not limited to, the owner's representations, MLS information, and/or public records (**"Property Information"**), (d) although Broker may have viewed the Property or attended Inspections, Broker has not performed a Property Preview for You, has not verified the accuracy, quality, or completeness of the Property Images and Descriptions, Property Information or Inspections, and You have not and will not rely on Broker to do so, (e) Broker has not inspected the Property or conducted any due diligence on Your behalf, (f) Broker has advised You to retain appropriate professionals to verify the accuracy and completeness of the Property Images and Descriptions and Property Information and to evaluate any other matters regarding the Property (including the Inspections) that are important to You, and (g) Broker has advised YOU to retain an attorney to review the Bankruptcy Court action identified above to give You legal advice as Broker is NOT providing any legal assistance whatsoever.

2.      By signing below, You hold Broker and Seller harmless from all claims (including, but not limited to, claims of negligence) and damages of any kind in any way relating to or arising out of any of the matters set forth herein. You agree that if anyone other than You will occupy and/or acquire any interest in the Property with You, You will obtain their signatures on this agreement and, if you fail to do so, You will defend and indemnify Broker and Seller from any claims and losses by any such party that Broker would have been protected from had they signed it.

3.      This agreement contains the entire agreement relating to the matters set forth herein, may be executed electronically, in counterparts, and via facsimile, and may not be modified by any subsequent agreement between You and Broker unless in writing and specifically referenced therein.

Date:  6/21/23

Cobra 28 No. 8, LP



**BUYER'S INSPECTION WAIVER**
(C.A.R. Form BIW, Revised 12/21)

Property Address _3025 Glenview Ave, San Bernardino, CA 92407_____ ("Property")

This form is intended for use between a buyer and buyer's broker. It does not alter the legal or contractual relationship between a buyer and seller.

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** Unless otherwise specified in the purchase agreement used, the physical condition of the land and any improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, (i) you should conduct thorough inspections, investigations, tests, surveys and other studies ("Investigations") of the Property personally and with professionals of your own choosing who should provide written reports of their findings and recommendations, and (ii) you should not rely solely on reports provided by Seller or others. A general physical (home) inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If any professional recommends additional investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and to investigate and verify information and facts that you know or that are within your diligent attention and observation. If the purchase agreement gives you the right to investigate the Property the best way to protect yourself is to exercise this right. However, you must do so in accordance with the terms of, and time specified in, that agreement. It is extremely important for you to read all written reports/disclosures provided by professionals and to discuss the results of Investigations with the professionals who conducted the Investigations.

3. **WAIVERS:**

   A. **HOME INSPECTION WAIVER:** Broker recommends that Buyer obtain a home inspection, **even if Seller or Broker has provided Buyer with a copy of a home inspection report obtained by Seller or a previous buyer. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   ___SN__ /_____ Buyer has decided not to obtain a general home inspection at this time. Unless Buyer makes a subsequent election in writing during Buyer's investigation period, if any, Buyer waives the right to obtain a general home inspection.

   B. **WOOD DESTROYING PEST INSPECTION WAIVER:** Broker recommends that Buyer obtain an inspection for wood destroying pests and organisms (whether paid for by Buyer or Seller). **IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   ___SN__ /_____ Buyer has decided not to obtain an inspection for wood destroying pests and organisms at this time. Unless Buyer makes a subsequent election in writing during Buyer's investigation period, if any, Buyer waives the right to obtain an inspection for wood destroying pests and organisms.

   C. **OTHER:** Broker recommends that Buyer obtain an inspection for the following items: _____
   _____
   **IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   ___SN__ /_____ Buyer has decided not to obtain the inspection(s) noted above at this time. Unless Buyer makes a subsequent election in writing during Buyer's investigation period, if any, Buyer waives the right to obtain such inspection(s).

4. **WAIVERS OF ADDITIONAL INVESTIGATIONS RECOMMENDED BY OTHER REPORTS:** Buyer has received a:
   ☐ General Home Inspection Report prepared by _____ dated _____,
   ☐ Wood Destroying Pest and Organism Report prepared by _____ dated _____,
   ☐ Other _____ Report prepared by _____ dated _____.
   That report recommends that Buyer obtain additional Investigations. Broker recommends that Buyer obtain those additional investigations. **IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   ___SN__ /_____ Buyer has decided not to obtain any of the additional inspections, investigations, or reports at this time and, unless Buyer makes a subsequent election in writing during Buyer's investigation period, if any, Buyer waives the right to obtain such additional inspections, investigations, or reports.

**Buyer represents and agrees that Buyer has independently considered the above, and all other Investigation options, has read all written reports provided by professionals and discussed the results with the professional who conducted the Investigation. Buyer further agrees that unless Buyer makes a subsequent election in writing during Buyer's Investigation period, if any, Buyer waives the right to conduct the Investigation(s) above.**

Buyer X _____    _Cobra 28 No 8, LP_ Date _6/21/23_

Buyer _____    Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

BIW Revised 12/21 (PAGE 1 OF 1)

**BUYER'S INSPECTION WAIVER (BIW PAGE 1 OF 1)**

44Realty Corporation, 829 N Laurel Ave #C Upland CA 91786    Phone: 9098169851    Fax:    3025 Glenview
Janine Klenbasy    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

**AGENT VISUAL INSPECTION DISCLOSURE**
(CALIFORNIA CIVIL CODE § 2079 ET SEQ.)
**For use by an agent when a transfer disclosure statement is
required or when a seller is exempt from completing a TDS**
(C.A.R. Form AVID, Revised 12/21)

This inspection disclosure concerns the residential property situated in the City of _____ San Bernardino _____
County of _____ San Bernardino _____, State of California, described as _____ 3025 Glenview Ave _____
_____ TRACT 3732 LOT 134 DELMANN HEIGHTS NO 1 EX ALL MNL AND WATER RTS WITHOUT S E _____ ("Property").
☐ This Property is a duplex, triplex, or fourplex. This AVID form is for unit # _____. Additional AVID forms required for other units.
Inspection Performed By (Real Estate Broker Firm Name) _____ 44Realty Corporation _____

**California law requires**, with limited exceptions, that a real estate broker or salesperson (collectively, "Agent") conduct a reasonably competent and diligent **visual** inspection of reasonably and normally accessible areas of certain properties offered for sale and then disclose to the prospective purchaser material facts affecting the value or desirability of that property that the inspection reveals. The duty applies regardless of whom that Agent represents. The duty applies to residential real properties containing one-to-four dwelling units, and manufactured homes (mobilehomes). The duty applies to a stand-alone detached dwelling (whether or not located in a subdivision or a planned development) or to an attached dwelling such as a condominium. The duty also applies to a lease with an option to purchase, a ground lease or a real property sales contract of one of those properties.

**California law does not require** the Agent to inspect the following:
• Areas that are not reasonably and normally accessible
• Areas off site of the property
• Public records or permits
• Common areas of planned developments, condominiums, stock cooperatives and the like.

**Agent Inspection Limitations:** Because the Agent's duty is limited to conducting a reasonably competent and diligent visual inspection of reasonably and normally accessible areas of only the Property being offered for sale, there are several things that the Agent will not do. What follows is a non-exclusive list of examples of limitations on the scope of the Agent's duty.

<u>Roof and Attic:</u> Agent will not climb onto a roof or into an attic.

<u>Interior:</u> Agent will not move or look under or behind furniture, pictures, wall hangings or floor coverings. Agent will not look up chimneys or into cabinets, or open locked doors.

<u>Exterior:</u> Agent will not inspect beneath a house or other structure on the Property, climb up or down a hillside, move or look behind plants, bushes, shrubbery and other vegetation or fences, walls or other barriers.

<u>Appliances and Systems:</u> Agent will not operate appliances or systems (such as, but not limited to, electrical, plumbing, pool or spa, heating, cooling, septic, sprinkler, communication, entertainment, well or water) to determine their functionality.

<u>Size of Property or Improvements:</u> Agent will not measure square footage of lot or improvements, or identify or locate boundary lines, easements or encroachments.

<u>Environmental Hazards:</u> Agent will not determine if the Property has mold, asbestos, lead or lead-based paint, radon, formaldehyde or any other hazardous substance or analyze soil or geologic condition.

<u>Off-Property Conditions:</u> By statute, Agent is not obligated to pull permits or inspect public records. Agent will not guarantee views or zoning, identify proposed construction or development or changes or proximity to transportation, schools, or law enforcement.

<u>Analysis of Agent Disclosures:</u> For any items disclosed as a result of Agent's visual inspection, or by others, Agent will not provide an analysis of or determine the cause or source of the disclosed matter, nor determine the cost of any possible repair.

**What this means to you:** An Agent's inspection is not intended to take the place of any other type of inspection, nor is it a substitute for a full and complete disclosure by a seller. Regardless of what the Agent's inspection reveals, or what disclosures are made by sellers, California Law specifies that a buyer has a duty to exercise reasonable care to protect himself or herself. This duty encompasses facts which are known to or within the diligent attention and observation of the buyer. Therefore, in order to determine for themselves whether or not the Property meets their needs and intended uses, as well as the cost to remedy any disclosed or discovered defect, **BUYER SHOULD: (1) REVIEW ANY DISCLOSURES OBTAINED FROM SELLER; (2) OBTAIN ADVICE ABOUT, AND INSPECTIONS OF, THE PROPERTY FROM OTHER APPROPRIATE PROFESSIONALS; AND (3) REVIEW ANY FINDINGS OF THOSE PROFESSIONALS WITH THE PERSONS WHO PREPARED THEM. IF BUYER FAILS TO DO SO, BUYER IS ACTING AGAINST THE ADVICE OF BROKER.**

© 2021 California Association of REALTORS®, Inc.

**AVID REVISED 12/21 (PAGE 1 OF 3)**   Buyer's Initials X_SN_/ _____   Seller's Initials X_____/ _____

**AGENT VISUAL INSPECTION DISCLOSURE (AVID PAGE 1 OF 3)**

If this Property is a duplex, triplex, or fourplex, this AVID is for unit # _____.
Inspection Performed By (Real Estate Broker Firm Name) _____ *44Realty Corporation* _____
Inspection Date/Time: *06/07/2023*    *1pm*    Weather conditions: *Warm, cloudr*
Other persons present: *None*

**THE UNDERSIGNED, BASED ON A REASONABLY COMPETENT AND DILIGENT VISUAL INSPECTION OF THE REASONABLY AND NORMALLY ACCESSIBLE AREAS OF THE PROPERTY, STATES THE FOLLOWING:**

**Entry** (excluding common areas): *N/A*

**Living Room:** *Unknown. No interior access available*

**Dining Room:** *Unknown. No interior access available*

**Kitchen:** *Unknown. No interior access available*

**Other Room:** *N//A*

**Hall/Stairs** (excluding common areas): *No interior access available*

**Bedroom # _1_:** *Unknown. No interior access available*

**Bedroom # _2_:** *Unknown. No interior access available*

**Bedroom # _-_:** *Unknown. No interior access available*

**Bath # _1_:** *No interior access available*

**Bath # _-_:** *Unknown. No interior access available*

**Bath # _N/A_:**

**Other Room:** *N/A*

AVID REVISED 12/21 (PAGE 2 OF 3)        Buyer's Initials *X* _~~_ / _____    Seller's Initials *X* _____ / _____

**AGENT VISUAL INSPECTION DISCLOSURE (AVID PAGE 2 OF 3)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas TX 75201    www.lwolf.com        3825 Glenview

If this Property is a duplex, triplex, or fourplex, this AVID is for unit # _

Other:     *N/A*

Other:     *N/A*

Other:     *N/A*

☐ See Addendum for additional rooms/structures: _____

Garage/Parking (excluding common areas): *Unknown. No interior access available*

Exterior Building and Yard - Front/Sides/Back: *Some chipping paint noted*

Other Observed or Known Conditions Not Specified Above: *Unknown. No interior access available*

---

This disclosure is based on a reasonably competent and diligent visual inspection of reasonably and normally accessible areas of the Property on the date specified above.

Real Estate Broker (Firm who performed the Inspection)          *44Realty Corporation*
By _____  *Janine Kirchnavy* Date _____
      (Signature of Associate Licensee or Broker who performed the inspection)

---

Reminder: Not all defects are observable by a real estate licensee conducting an inspection. The inspection does not include testing of any system or component. Real Estate Licensees are not home inspectors or contractors. BUYER SHOULD OBTAIN ADVICE ABOUT AND INSPECTIONS OF THE PROPERTY FROM OTHER APPROPRIATE PROFESSIONALS. IF BUYER FAILS TO DO SO, BUYER IS ACTING AGAINST THE ADVICE OF BROKER.

I/we acknowledge that I/we have read, understand and received a copy of this disclosure.

Buyer X _____          *Cobra 28 No 8, LP* Date 6/21/23
Buyer _____  Date _____

I/we acknowledge that I/we have received a copy of this disclosure.
(The initials below are not required but can be used as evidence that the initialing party has received the completed form.)

Seller X_____ / _____

Real Estate Broker (Firm Representing Seller) _____  *44Realty Corporation*
By _____  *Janine Kirchnavy* Date _____
            (Associate Licensee or Broker Signature)

Real Estate Broker (Firm Representing Buyer) _____  M& BROKERAGE INC
By _____  Date 6/21/23
            (Associate Licensee or Broker Signature)

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

AVID REVISED 12/21 (PAGE 3 OF 3)

AGENT VISUAL INSPECTION DISCLOSURE (AVID PAGE 3 OF 3)
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com         3025 Glenview



## USE OF NON-STANDARD FORMS ADVISORY
(C.A.R. Form NSF, 6/22)

Property Address: _____ 3025 Glenview Ave, San Bernardino, CA 92407 _____

1. **TRANSACTION DOCUMENTS:** You will be asked to review, sign or initial many documents as part of the purchase/ sale of real property or a mobile/manufactured home. Organizations such as the California Association of REALTORS® (C.A.R.), a local Association of REALTORS® (Local AOR), or other entities that have no interest in your individual transaction, have prepared documents that are used by real estate licensees and their clients to enable buyers and sellers to enter into a purchase/sale transaction and address many issues that might arise during the transaction. Documents that are prepared by such organizations are referred to as "standard forms." These standard forms may be prepared for use statewide or regionally.

2. **ADVANTAGES OF STANDARD FORMS:** Standard forms are prepared by persons knowledgeable in real estate practice and law and designed to address commonalities that occur in such transactions without favoring buyer or seller in any individual transaction. Standard forms are easily accessible by real estate licensees. Because of their widespread presence, their use in a transaction can help facilitate the purchase/sale process from beginning to end.

3. **NON-STANDARD FORMS:** Non-standard forms are commonly associated with and prepared by a person or entity that is either a buyer or seller or a representative of such principal. Real estate licensees who are not associated with such principals may not be aware of the terms contained in those documents, have access to them or their development, or be aware of changes made to them. Therefore, those agents cannot provide their buyers or sellers advice on how to proceed in a transaction involving non-standard forms or whether the terms in such forms are beneficial or detrimental to the client's interests. What follows are some examples of terms that have appeared in some non-standard forms:
   A. Waivers of statutory rights created by the California legislature, local government or under federal law, even if not permitted under the applicable law;
   B. Blanket, automatic waivers of all contingencies;
   C. Applying the "passive" or "automatic" contingency removal method to the transaction, regardless of other documents in the transaction rather than the "active" method that requires written removal of contingencies;
   D. Providing for non-refundable or automatic release of deposits, regardless of fault;
   E. Attempt to limit liability of other parties by including release language, hold harmless clauses, indemnification agreements or other wording to limit the responsibility or liability of one party or the legal rights of the other.

4. **BROKER ADVICE:** Because non-standard forms may contain terms and conditions that differ from standard forms, and your real estate licensee is obligated to present to you all documents received from another party to your transaction, you are advised that:
   A. Non-standard forms may contain terms and conditions that differ from standard forms;
   B. Non-standard forms may contain terms and conditions which are not in your best interest or may negatively impact your legal, contractual and financial rights and obligations; and
   C. Your real estate licensee cannot advise you on the legal and practical implications of non-standard forms.

You are advised to consult a qualified California real estate attorney of your choice before making the decision to proceed in a transaction with non-standard forms. If you fail to do so, you are acting against the advice of your broker.

**The person(s) signing below has read and understands this Use of Non-Standard Forms Advisory and acknowledges receipt of a copy.**

_____   Date __6/21/23__

_____   Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**NSF 6/22 (PAGE 1 OF 1)**



## USE OF NON-STANDARD FORMS ADVISORY (NSF PAGE 1 OF 1)

| 44Realty Corporation, 829 N Laurel Ave #C Upland CA 91786 | Phone: 9098169951 | Fax: | 3025 Glenview |
|---|---|---|---|
| Janiee Kirchnavy | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com | | |

# Exhibit 6



**In Re: 2nd Chance Investment Group LLC**
**Sale of 2nd Chance Investment Group Property Gain and Tax Analysis**
**Sale of 3025 Glenview Ave. (Estimate)**

<u>Assumptions/Facts:</u>

| | | | | Rayshon Foster | | Sonja Foster | |
|---|---|---|---|---|---|---|---|
| Date of Estimate | **Est. Escrow** | 9/25/2023 | | 52.00% | | 48.00% | |

| <u>Fed Taxes:</u> | Total Gain | Tax Rate | Est Tax | Gain | Est Tax | Gain | Est Tax |
|---|---|---|---|---|---|---|---|
| Section 1231 Gain - Land | 6,288 | **20.0%** | 1,258 | 3,270 | 654 | 3,018 | 604 |
| CAP/Section 1231 Gain - Building | 12,577 | **20.0%** | 2,515 | 6,540 | 1,308 | 6,037 | 1,207 |
| Section 1250 Gain - Building | 15,782 | **25.0%** | 3,945 | 8,207 | 2,052 | 7,575 | 1,894 |
| NIT | - | | - | - | | - | |
| Total Gain | 34,647 | | | 18,016 | 4,014 | 16,630 | 3,705 |

| <u>CA Taxes:</u> | | | | | | | |
|---|---|---|---|---|---|---|---|
| Estimated Taxes (MFJ) | | | | | | | |
| California Income Tax (Net of IL Tax) | **10.30%** | | 3,569 | | 1,856 | | 1,713 |
| Mental Health Tax - Income > $1M | **NA** | | - | | - | | - |
| Total Taxes | | | 11,287 | | 5,869 | | 5,418 |
| Effective Tax Rate | | | 32.6% | | 32.6% | | 32.6% |

<u>Note:</u>
Based on an analysis of the 2020 and 2021 debtor tax returns, 2nd Chance Investment Group LLC is taxed as a partnership. As such, 2nd Chance Investment Group, LLC does not pay federal income taxes. Instead the Debtor passes through all income to its partners. Per the 2021 debtor return, Rayshon Foster owns a 52% interest in the partnership and Sonja Foster owns a 48% interest. The total taxable gain is estimated to be $34,647 and 52% of the taxable gain, or $18,016, will be allocated to Rayshon and 48%, or $16,630 will be allocated to Sonja.

The taxes owed by the partners related to the liquidation of the Debtor's real estate assets are estimated to be a total of $11,287 with Rayshon owing $5,869 and Sonja owing $5,418. The debtor will be responsible for the $800 CA minimum tax and any applicable LLC fee once income exceeds $250,000.

**GROBSTEIN TEEPLE**

**In Re: 2nd Chance Investment Group Inc**
**Sale of 2nd Chance Investment Group Property Tax Analysis and Cash Flow**
**Sale of 3025 Glenview Ave. (Estimate)**

**Assumptions/Facts:**

| | | |
|---|---|---|
| Date of Estimate | | 9/25/2023 |
| Estimated Sale Price | Est. Escrow | 250,000 |

**Analysis:**

| | | 3025 Glenview Ave. | |
|---|---|---|---|
| | | Gain Analysis | Cash flow |
| Estimated Sales Price | Est. Escrow | 250,000 | 250,000 |
| | | | |
| Basis | | | |
| Land | [1] | (70,000) | |
| Building | [1] | (140,000) | |
| Depreciation | [2] | 15,782 | |
| | | | |
| Total Basis | | (194,218) | - |
| | | | |
| Cost of Sale | Est. Escrow | (21,135) | (21,135) |
| Security Claim | A-1 | | (161,000) |
| Admin Claims | Est. Escrow | | (32,505) |
| Property Tax & Utilities | Est. Escrow | | (480) |
| **Taxable Gain/(Loss)** | | **34,647** | |
| **Net Cash Flow** | | | **34,880** |

**Breakdown of Gain:**

| | Land | Building |
|---|---|---|
| % of Cost | 33.33% | 66.67% |
| Alloc of Sales Price | 83,333 | 166,667 |
| Basis - Purchase price | (70,000) | (124,218) |
| Alloc of Other Costs | (7,045) | (14,090) |
| Admin Claims | | |
| **Total Gain** | **6,288** | **28,359** |

**Allocation of Gain**

| | | |
|---|---|---|
| 1231 Gain | 6,288 | 12,577 |
| 1250 Gain | | 15,782 |
| **Total Allocation of Gain** | **6,288** | **28,359** |
| | | - |

**Notes:**

[1] Basis value was not listed on the debtor's 2021 tax return. Cost was obtain throught external sources. Basis has been allocated for land and building based on the local county assessor's allocation as of the first subsequent assessment following the date of original purchase (B-01, B-01.2).

[2] Depreciation was not listed on the debtor's 2021 tax return. However, we have estimated the amount of allowable depreciation deductible between the date of purchase and the estimated sale date.

[3] Per Appraiser's Employment App (Doc. 80), the cost of sale was listed as $22,620. However, cost of sale was taken from the most recent estimated closing statement (B-01.1).

Exhibit 6, Page 99

# Exhibit 7



**ESCROW SERVICES, INC.**

15250 Ventura Blvd, Suite 715
Sherman Oaks, CA 91403

Phone: (310) 550-6055
Fax: (310) 550-6130

## SELLER'S ESTIMATED SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **PROPERTY:** | 3025 Glenview Avenue<br>San Bernardino, CA 92407 | **DATE:** | November 9, 2023 |
| **SELLER:** | 2nd Chance Investment Group, LLC | **CLOSING DATE:**<br>**ESCROW NO.:** | 105733-AA |

| | **DEBITS** | **CREDITS** |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 250,000.00 |
| | | |
| **PAYOFF CHARGES - Fay Servicing** | | |
| **[Total Payoff $196,353.20]** | | |
| Principal Balance | 179,060.19 | |
| Interest on Principal Balance at 5.3750% from 01/01/2023 to 12/15/2023 | 9,228.96 | |
| Amount Due as of 1/1/23 | 7,555.50 | |
| Late Charges | 508.55 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| 1st 1/2 County Taxes 2023-24 at $1,436.79/semi-annually from 12/15/2023 to 01/01/2024 | | 127.71 |
| | | |
| **COMMISSION CHARGES** | | |
| Coldwell Banker | 3,750.00 | |
| MZ Brokerage Inc. | 7,500.00 | |
| 44Realty Corporation | 3,750.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| MyNHD, Inc. for NHD Disclosure Report | 74.95 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES - Orange Coast Title Company** | | |
| Title - Owner's Title Insurance | 895.00 | |
| Title - BK Title Work Fee | 500.00 | |
| Title - Risk Fee | 2,500.00 | |
| Title - Messenger Fee | 75.00 | |
| Title - Sub Escrow Fee | 65.00 | |
| Title - Wire Fee | 50.00 | |
| Recording Certified Court Order | 75.00 | |
| Recording Release of lis pendens | 75.00 | |
| SB2 Recording Fees | 225.00 | |
| Transfer Tax - County to San Bernardino County | 275.00 | |
| 1st 1/2 Taxes 2023-24 to San Bernardino County Tax Collector | 1,436.79 | |
| Delinquent Taxes | 9,447.99 | |
| | | |
| **ESCROW CHARGES - A & A Escrow Services, Inc.** | | |
| Title - Escrow Fee | 1,000.00 | |
| Title - 1099 Processing Fee | 75.00 | |
| Title - Drawing Documentation Fee | 75.00 | |

Date:  November 9, 2023                                    Escrow No.:  105733-AA

Page 2 of 2:

| | **DEBITS** | **CREDITS** |
|---|---|---|
| Title - Wire Fee IF ANY | 50.00 | |
| Title - Messenger/FedEx Fees IF ANY | 75.00 | |
| Title - File Archive Fee* | 50.00 | |
| **Net Proceeds** | 21,754.78 | |
| **TOTAL** | $  250,127.71 | $   250,127.71 |

### THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE

2nd Chance Investment Group, LLC


By: _____
       David M. Goodrich, in his capacity as Chief
       Restructuring Officer, Chapter 11 debtor and
       debtor in possession

Exhibit 7, Page 101