Andy C. Warshaw SBN 263880
awarshaw@bwlawcenter.com
Rich Sturdevant SBN 269088
rich@bwlawcenter.com
**Financial Relief Law Center, APC**
1200 Main St., Suite C
Irvine, CA 92614
Telephone    714-442-3319
Facsimile    714-361-5380

Counsel for the Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>2nd Chance Investment Group, LLC,<br><br>Debtor. | Case No. 8:22-bk-12142-SC<br><br>Chapter 11<br><br>**APPLICATION OF 2nd CHANCE INVESTMENT GROUP LLC TO EMPLOY BROKER PURSUANT TO 11 U.S.C. §§ 327 AND 328; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF MAURICIO GONZALEZ IN SUPPORT**<br><br>[11 U.S.C. §§ 327(a) and 328(a); Fed. R Bankr. P. 2014; Loc. Bankr. R. 2014-1(b)]<br><br>[No Hearing Required Unless Requested] |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES DEBTOR; THE 20 LARGEST UNSECURED CREDITORS; AND ALL PARTIES IN INTEREST:**

2ND Chance Investment Group, LLC (the "Debtor"), files this *Application of 2nd Chance Investment Group LLC to Employ Pursuant to 11 U.S.C. §§ 327 and 328* ("Application").  In support of the Application, the Debtor submits the following memorandum of points and authorities and the attached declaration of broker Mauricio Gonzalez ("Gonzalez Declaration").

1216437.1                                                                                    EMPLOYMENT APPLICATION

I. **STATEMENT OF FACTS**

On December 21, 2022, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing case no. 8:22-bk-12142-SC (the "Case"). The Debtor remains as a debtor in possession. The Debtor scheduled thirteen parcels of real property on Schedule A/B of ECF No. 1. The real property listed on Schedule A whose address is 3122 Emery Lane, Robbins, IL, 60472 (the "Property"), is the subject property of this Application. A summary of the property and known encumbrances is provided below in Table I.

Table I: Real Property Equity Proceeds

| Address | Estimated Value | Cost of Sale | Secured Claim Totals | Equity Prior to Tax Analysis |
|---|---|---|---|---|
| 3122 Emery Lane, Robbins, IL | $50,000 | $3000 | $0.00 | $47,000 |
| Totals | $6,416,000 | $400,740 | $3,924,227 | $2,309,915 |

II. **PROPOSED EMPLOYMENT OF CO-BROKERS AND AGENTS**

To facilitate the sale of the Property, the Debtor seeks to employ an experienced and reputable real estate broker and proposes to employ Mauricio Gonzalez of Citywide Realty LLC (the "Broker"), whose address is pursuant to 11 U.S.C. §§ 327(a) and 328.

The Broker has agreed to advertise the Property, to market and show the Property, to represent the Estate in connection with the sale of the Property, and to advise the Debtor with respect to obtaining the best offer for the sale of the Property.

The terms of the employment agreed to by the Debtor, subject to approval of the Court, as set forth in the exclusive right to sell contract, the disclosure of real estate brokerage relationships, the addendum to exclusive authorization and right to sell, and the additional broker acknowledgment (together, "Listing Agreement") attached as **Exhibit 1**, are as follows:

1. Citywide Realty LLC will have an exclusive listing on the properties and will assist in marketing the Property. The listing price for the Property will be

$49,900. The Listing Agreement, including the listing price, may be modified by the Debtor in its discretion. The listing and sale of the Property is subject to Bankruptcy Court approval, and any sale of the Property will be "as is," without any representations, guarantees or warranties of any kind, whether expressed or implied, by the Debtor. Upon the presentation of an acceptable purchase offer for the Property, the Debtor will file a motion seeking authorization to sell the Property and pay the total broker's commission of six percent (6%) from the sale proceeds through escrow. A commission shall be paid only if the Property is sold by the Debtor. The Debtor's motion will contain an overbid procedure.

2. The Agents are informed and understand that no sale may be consummated until after notice and a hearing. Further, the Agents are aware of the provisions of 11 U.S.C. § 328(a) and understand and accept that, notwithstanding the terms and conditions of employment and compensation provided in the Listing Agreement, the Court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

The Broker its agent Mauricio Gonzalez are well qualified to represent the Debtor and the Estate in connection with the marketing and sale of the Property. Mr. Gonzalez's profile is attached as **Exhibit 2**.

### III.     MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to 11 U.S.C. § 327(a), a Debtor may employ attorneys and other professional persons who do not hold or represent an interest adverse to the estate, and who are disinterested persons, to represent or assist the Debtor in carrying out the Debtor's duties.

To the best of the Debtor's knowledge, and based upon the attached Gonzalez Declaration, the Broker and the Agent:

1. have no connection with the Debtors, the principals of the Debtors, insiders, creditors, the Debtor, or any other party in interest, or their respective attorneys and accountants, or any person employed in the Office of the United States Trustee;

2. are not creditors, equity security holders or insiders of the Debtor;

3. are not investment bankers for any outstanding security of the Debtor;

4. have not been, within three years prior to the date of the filing of the petitions, investment bankers for a security of the Debtor, or attorneys for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor;

5. are not and were not, within two years before the date of the filing of the petitions, directors, officers, or employees of the Debtor or of any investment banker for any security of the Debtor;

6. do not represent an individual or entity with an interest adverse to the Estate;

7. are not related to the United States Trustee or to the Bankruptcy Judge assigned to this case;

8. are disinterested within the meaning of 11 U.S.C. §§ 327(a) and 101(14);

9. do not have any fee sharing arrangement, understanding or compensation sharing arrangement with any other entity, except for the customary division of the commission from the sale of a property between the listing broker and the selling; and

10. will not receive a retainer in this case.

**IV.   CONCLUSION**

The Debtor believes the employment of the Brokers and the Agents on the terms and conditions provided herein is in the best interest of the Debtor and the Estate.

1  **WHEREFORE,** the Debtor prays that the Application be approved and it be
2  authorized to employ the Broker and its Agents, as an expense of the Estate, to market
3  the Property upon the terms and conditions set forth herein and in the Listing Agreement,
4  and that he be authorized to execute the Listing Agreement attached hereto and any and
5  all other ancillary documents necessary to list the Property for sale.

Respectfully submitted,

Dated: January 23, 2024                Financial Relief Law Center, APC

By: /s/ Rich Sturdeavnt
    Rich Sturdevant
    Attorneys for Debtor in Possession
    2nd Chance Investment Group, LLC

# **DECLARATION OF MAURICIO GONZALEZ**

I, Mauricio Gonzalez, declare:

1. I am a real estate broker licensed in the State of Illinois. I know each of the following facts to be true of my own personal knowledge or information and belief and, if called as a witness, I could and would competently testify with respect thereto. I am an agent of Citywide Realty LLC ("Citywide Realty"), located at 6614 S. Pulaski Rd., Chicago, IL 60629. I am submitting this Declaration in support of the *Application of 2nd Chance Investment Group LLC to Employ Pursuant to 11 U.S.C. §§ 327 and 328* (the "Application").

2. Citywide Realty and I are qualified to represent the Debtor and the Estate in connection with the marketing and sale of the Property. A true and correct copy of the Listing Agreement is attached as Exhibit 1. A true and correct copy of my profile is attached as Exhibit 2.

3. On behalf of Citywide Realty, I have agreed to accept employment on the terms and conditions set forth in the Application. The total commission for the Property is six percent (6%). The commission will be shared with the buyer's broker, if any, and will be paid from the sale proceeds through escrow.

4. To the best of my knowledge, except as provided above, Citywide Realty and I:

   a. have no connection with the Debtor, the principals of the Debtor, insiders, creditors, Debtor's counsel, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee;

   b. are not creditors, equity security holders or insiders of the Debtor;

   c. are not investment bankers for any outstanding security of the Debtor;

   d. have not been, within three (3) years before the date of the filing of the petition herein, investment bankers for a security of the Debtor, or attorneys for

such an investment banker in connection with the offer, sale or issuance of any security of the Debtor;

  e. are not and were not, within two (2) years before the date of the filing of the petition herein, directors, officers or employees of the Debtor or of any investment banker for any security of the Debtor;

  f. do not represent an individual or entity which holds an interest adverse to the Estate;

  g. are not related to the United States Trustee or to the Bankruptcy Judge assigned to this case;

  h. are disinterested within the meaning of 11 U.S.C. §§ 327(a) 101(14);

  i. have no fee sharing arrangement, understanding or compensation sharing arrangement with any other entity, except for the customary division of the commission from the sale of a property between the listing broker and the selling broker, as provided for in the Listing Agreement; and

  j. will not receive a retainer in this case.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23rd day of January, 2024, at Chicago, Illinois.

_____
Mauricio Gonzalez

EXHIBIT 1



**CHICAGO ASSOCIATION OF REALTORS®
EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT**
Rev 10/2012



1. **BROKER.** This Exclusive Right to Sell Listing Agreement ("*Agreement*") is entered into this by and between **Citywide Realty LLC**_____("*Broker*") and **2nd Chance Investment Group LLC** ("*Seller*"). In consideration of the following agreements and Broker's efforts to procure a ready, willing and able buyer for the sale or exchange of property and improvements described below (including the undivided interest in the common elements and accumulated reserves, if any) (collectively, "*Property*"), Seller hereby grants Broker the exclusive right ("*Exclusive Right*") to sell the Property (or, at Seller's direction, lease, exchange, joint venture or grant an option to purchase) the Property ("*Transfer of Property*") pursuant to the terms and conditions set forth below.

2. **TERM.** Broker's Exclusive Right shall extend from the Effective Date, as set forth on page 3 ("*Commencement Date*") until 11:59 P.M. on **April 25**_____, 20**24**, at which time this Agreement shall automatically terminate ("*Termination Date*"). From the date of Seller's acceptance of any offer and execution of a contract for the Transfer of Property ("*Accepted Offer*"), unless the Accepted Offer is expressly subject to the continual marketing of the Property, Broker shall have no further obligation to market, advertise for sale or show the Property. Once all of the contingencies for the Accepted Offer have been satisfied or waived, Broker shall have no further obligation to Seller except to present Seller with any offers or counteroffers pertaining to the Property.

3. **PRICE.** In the event that the Transfer of Property is a sale, Seller authorizes Broker to market the Property at a price of $**49900**_____ ("*Marketing Price*"). If the Transfer of Property is a lease, Seller authorizes Broker to market the Property at a price of $**0**_____ per month ("*Rental Price*"). The Marketing Price and Rental Price may be changed from time to time at Seller's direction.

4. **PROPERTY.**
Address: **3122 Emery Lane**_____ Unit Number(s): _____
City: **Robbins**_____ State: **IL**_____ Zip Code: **60472**_____
Parking Space Number(s):_____ (*check all that apply*) ☐ Deeded; ☐ Limited Common Element; ☐ Assigned; ☐ Indoor; ☐ Outdoor

5. **POSSESSION.** Seller shall surrender possession of the Property and remove all debris and Seller's personal property not conveyed to Buyer no later than the closing date set forth in the purchase and sale agreement.

6. **DESIGNATED AGENT.** Broker and Seller hereby agree that (a) **Mauricio Gonzalez**_____, a sponsored licensee of Broker, is Seller's exclusive designated agent ("*Designated Agent*") under this Agreement with Broker, and (b) neither Broker nor other sponsored licensees of Broker will be acting as agent for Seller. Seller understands and agrees that Broker and any of Broker's other sponsored licensees may enter into agreements with prospective buyers of the Property as agents of those buyers.

7. **MINIMUM SERVICES.** Pursuant to the Illinois Real Estate License Act of 2000 (265 ILCS 454/1 et seq.), as amended, Broker, through the Designated Agent, must provide to Seller, at a minimum, the following services: (a) accept delivery of and present to Seller offers and counteroffers to buy, sell, lease or otherwise transfer any interest in the Property or any portion thereof; (b) assist Seller in developing, communicating, negotiating and presenting offers, counteroffers and notices that relate to the offers and counteroffers until a lease or purchase agreement is fully executed and all contingencies are satisfied or waived; and (c) answer Seller's questions relating to the offers, counteroffers, notices and contingencies.

8. **SELLER OBLIGATIONS.** From and after the Commencement Date of this Agreement, Seller agrees to:
(i) cooperate fully with Broker and the Designated Agent; (ii) refer all inquiries to Broker and the Designated Agent; (iii) allow inspection of the Property and entry at convenient times by Broker, the Designated Agent and/or cooperating brokers (whether alone or accompanied by Broker or the Designated Agent) for the purpose of showing the Property to prospective buyers; (iv) conduct all negotiations through Broker or the Designated Agent; (v) pay to Broker on demand for Broker's out-of-pocket advertising and marketing costs in the amount of $_____; and (vi) pay Broker a commission or compensation pursuant to the terms of Paragraph 9 below.

9. **COMMISSION.** In the event Broker produces a buyer ready, willing and able to close on the Transfer of Property on the terms provided in this Agreement, then Seller shall pay Broker a commission in the amount of **6**_____ % [percent] of the Purchase Price ("*Sale Commission*") plus $----------_____ ("*Additional Fee*"). In the event Seller enters into a leasing agreement with a tenant during the term of this Agreement, Seller agrees to pay Broker a rental commission of -------------------------------------------------- ("*Rental Commission*") plus $----------_____ ("*Additional Rental Fee*"). In the event the Property is later purchased by the tenant, or an option to purchase is later granted to and exercised by tenant, then in addition to the Rental Commission and Additional Rental Fee, Seller must pay Broker the Sale Commission and Additional Fee. The Sale Commission, Additional Fee, Rental Commission and Additional Rental Fee are referred to collectively as "*Commission*". Broker shall be entitled to the Commission pursuant to this Agreement (a) upon the closing of any Transfer of Property prior to the Termination Date, regardless of whether the Transfer of Property resulted from the service and/or effort of the Broker, Designated Agent, Seller or any other persons or entities; or (b) upon the closing of any Transfer of Property within 180 days after the Termination Date to any person to whom the Property was submitted prior to the Termination Date. Notwithstanding the foregoing, if (i) the Property is residential property of four units or less, (ii) the Termination Date has passed, and (iii) Seller has entered into a valid, bona fide, written listing agreement with another licensed real estate broker during the 180 day period, then Broker shall not be entitled to any Commission pursuant to this Agreement on any Transfer of Property. For Property which is not residential property of four units or less, if the Property is listed with another licensed real estate broker during the 180 day period following the Termination Date, Seller shall be liable for the entire Commission, which shall be shared by the Broker and the other licensed real estate broker. The actual allocation of the Commission will be determined pursuant to a separate agreement between Broker and the other licensed real estate broker. Broker is authorized to share Broker's compensation or commission with all cooperating brokers regardless of any cooperating broker's agency relationship to Seller, Broker or the buyer. Seller expressly agrees to all of the terms of this Agreement with respect to payment of the Commission, including, without limitation, Paragraphs L & N of the General Provisions attached hereto.

10. **DUAL REPRESENTATION.** By checking "yes" and writing its initials below, Seller acknowledges and agrees that the Designated Agent ("*Licensee*") may undertake a dual representation (represent both seller and buyer or landlord and tenant, as the case may be) in connection with any Transfer of Property. Seller acknowledges and agrees that Seller has read the following prior to executing this Agreement:

Representing more than one party to a transaction presents a conflict of interest since both parties may rely upon the Licensee's advice and the parties' respective interests may be adverse to each other. The Licensee will undertake the representation of more

Seller Initials:_____ Seller Initials:_____       Broker Initials: _AMG_ Broker Initials:_____

1 of 4

than one party to a transaction only with the written consent of ALL parties to the transaction. Any parties who consent to dual representation expressly agree that any agreement between the parties as to any terms of the contract, including the final contract price, results from each party negotiating on its own behalf and in its own best interest. Seller acknowledges and agrees that (a) Broker has explained the implications of dual representation, including the risks involved, and (b) Seller has been advised to seek independent counsel from its advisors and/or attorneys prior to executing this Agreement or any documents in connection with this Agreement.

WHAT A LICENSEE <u>CAN</u> DO FOR CLIENTS WHEN UNDERTAKING DUAL REPRESENTATION:

1. Treat all clients honestly. 2. Provide information about the property to the buyer or tenant. 3. Disclose all latent material defects in the property that are known to the Licensee. 4. Disclose the financial qualification of the buyer or tenant to the seller or landlord. 5. Explain real estate terms. 6. Help the buyer or tenant arrange for property inspections. 7. Explain closing costs and procedures. 8. Help the buyer compare financing alternatives. 9. Provide information to seller or buyer about comparable properties that have sold so both clients may make educated decisions on what price to accept or offer.

WHAT A LICENSEE <u>CANNOT</u> DO FOR CLIENTS WHEN UNDERTAKING DUAL REPRESENTATION:

1. Disclose confidential information that the Licensee may know about either client without that client's express consent. 2. Disclose the price the seller or landlord will take other than the listing price without the express consent of the seller or landlord. 3. Disclose the price the buyer or tenant is willing to pay without the express consent of the buyer or tenant. 4. Recommend or suggest a price the buyer or tenant should offer. 5. Recommend or suggest a price the seller or landlord should counter with or accept.

Seller acknowledges having read these provisions regarding the issue of dual representation. Seller is not required to accept this Paragraph 10 unless Seller wants to allow the Licensee to proceed as a dual agent (*"Dual Agent"*) in this transaction. By checking "yes", initialing below, and signing this Agreement, Seller acknowledges that it has read and understands this Paragraph 9 and voluntarily consents to the Licensee acting as a Dual Agent (that is, to represent BOTH the seller and buyer or landlord and tenant, as the case may be) should it become necessary. (*check one*) ☑ Yes ☐ No (*Seller initials*) ___ (*Seller initials*) ___.

11. <u>ADDITIONAL TERMS AND PROPERTY INFORMATION</u>. Seller represents that the following information is true and correct as of the date of this Agreement:

(a) Property P.I.N. # 28-02-424-017-0000 ___.    Homeowner's Exemption: ___ Yes / ✓ No
    Real estate taxes for the year 20 22 equal $ 2179.34 ___.    Senior Citizen's Exemption: ___ Yes / ✓ No
    Senior Freeze Exemption: ___ Yes/ ✓ No

(b) Current monthly assessment equals $ ___ and includes ___.

(c) Percentage of interest in common elements is ___%.    Waiver of Right of First Refusal necessary ___ Yes / ___ No

(d) Seller (*check one*) ___ is ___ is not aware of a proposed special assessment. Seller shall keep listing Broker informed of all Board of Directors/Managers actions. Seller shall keep Broker informed of all changes to the above.

(e) If applicable, the amount of special assessment is $ ___ with a remaining balance due of $ ___ payable through ___. Special assessments are payable (*check all that apply*) ☐ Annually; ☐ Semi-Annually; ☐ Quarterly; ☐ Monthly; ☐ Other.

(f) The lot size is approximately 42X100 ___. Approximate square feet of Property: 4200 ___.

(g) Heating cost is approximately: $ ___ /Month   $ ___ /Year.

(h) If this property is new construction, Rider 13, "New Construction Insulation Disclosure", must be completed and attached.

(i) If the Property is income or commercial property, Seller shall provide Broker with accurate copies of all leases, income and expense statements, a rent roll, existing environmental reports and relevant information necessary to market the property within 14 days after the date of this Agreement.

(j) For residential properties located within the City of Chicago, local ordinances require that all properties must have smoke and carbon monoxide detectors present and in working condition. Seller shall comply with these ordinances. In addition, Seller shall provide Broker with the following, if applicable, within 72 hours after the written acceptance of this Agreement: (a) Illinois Residential Real Property Disclosure Report; (b) Heat Disclosure; (c) Lead Paint Disclosure; (d) Radon Disclosure; and (e) Zoning Certificate.

12. <u>FIXTURES AND PERSONAL PROPERTY</u>. In conjunction with any Accepted Offer, Seller agrees to transfer by a bill of sale, all heating, electrical, and plumbing systems that serve the Property together with the following to the buyer (*check or enumerate applicable items*):

| | | | | |
|---|---|---|---|---|
| ☐ Refrigerator___ | ☐ Sump Pump___ | ☐ Central air conditioner___ | ☐ Fireplace screen and equipment___ | ☐ Built-in or attached shelves or cabinets___ |
| ☐ Oven/Range___ | ☐ Smoke and carbon monoxide detectors___ | ☐ Window air conditioner___ | ☐ Fireplace gas log___ | ☐ Ceiling fan___ |
| ☐ Microwave___ | | ☐ Electronic air filter___ | ☐ Firewood___ | ☐ Radiator covers___ |
| ☐ Dishwasher___ | ☐ Intercom system___ | ☐ Central humidifier___ | ☐ Attached gas grill___ | ☐ All planted vegetation___ |
| ☐ Garbage disposal___ | ☐ Security system___ (rented or owned) (*strike one*) | ☐ Lighting fixtures___ | ☐ Existing storms and screens___ | ☐ Outdoor play set/swings |
| ☐ Trash compactor___ | ☐ Satellite Dish___ | ☐ Electronic garage door(s) with ___ remote unit(s)___ | ☐ Window treatments___ | ☐ Outdoor shed |
| ☐ Washer___ | ☐ Attached TV(s)___ | ☐ Tacked down carpeting___ | ☐ Home warranty (as attached)___ | |
| ☐ Dryer___ | ☐ TV Antenna___ | ☐ Other Equipment ___ | | |
| ☐ Water Softener___ | ☐ LCD/plasma/multimedia equipment___ | | | |
| | ☐ Stereo speakers/surround sound ___ | | | |

Seller also transfers the following: ___.

The following items are excluded: ___.

Seller Initials: ___ Seller Initials: ___    Broker Initials: ___ Broker Initials: ___

2 of 4

13. **PROMOTING AND ADVERTISING PROPERTY PER THE ILLINOIS REAL ESTATE ACT OF 2000, AS REVISED.** Broker is hereby authorized to promote and advertise the Property as Broker deems appropriate, including but not limited to (i) displaying signs on the Property, (ii) placing the Property in any multiple listing service in which Broker participates at the time a contract is executed, (iii) promoting the Property on Broker's internet website and on the internet websites of other brokers, and/or through any other advertising medium which Broker may subscribe to or otherwise use, and (iv) releasing information as to the amount of the selling price, type of financing, and number of days to sell this Property to any multiple listing service in which Broker participates at the time a contract is executed. Consistent with the foregoing, any internet website on which the Property is promoted may (a) allow third parties to write comments or reviews about the Property, or display a hyperlink to such comments or reviews, or (b) include an automated estimate of the fair market value of the Property, or display a hyperlink to such an estimate. The foregoing notwithstanding, by checking one or both of the boxes at the end of this Paragraph 13, and writing its initials below, Seller requests that on any internet website on which the Property is promoted, one or both of these features be disabled or discontinued. Broker in turn will disable or discontinue such designated features on its website, and will communicate to each multiple listing service in which it participates, and to each broker or other third party on whose internet website the Property is promoted or advertised, that the Seller has elected to have one or both of these features disabled or discontinued. However, notwithstanding any such Seller request, a broker's internet website may (1) communicate the broker's professional judgment concerning the Property, and (2) notify its customers and visitors to its website that a feature has been disabled or discontinued "at the request of Seller".

Disable/Discontinue Website Features *(check any that apply)*:
☐ Disable/Discontinue Comments/Reviews regarding Property;
☐ Disable/Discontinue Automated Estimate of Market Value of Property.
     Initial if boxes above are checked. *(Seller initials)* _____ *(Seller initials)* _____.

THIS AGREEMENT INCLUDES THE GENERAL PROVISIONS ON THE FOLLOWING PAGE.

**SELLER'S INFORMATION:**

Seller's Signature: [signed]
Seller's Signature: _____
Date: 1/12/24
All Legal Title Holders or Legal Agent for Seller:
_____
_____

Seller's Name (print): 2nd Chance Investment Group LLC
Address: _____
City: _____ State: _____ Zip: _____
Office Phone: _____
Home Phone: _____
Cell Phone: _____
Fax: _____
Email Address: _____

Seller's Name (print): 2nd Chance Investment Group
Address: _____
City: _____ State: _____ Zip: _____
Office Phone: _____
Home Phone: _____
Cell Phone: _____
Fax: _____
Email Address: _____

Managing Broker's Signature: [signed]
Date: Jan 12, 2024 _____ *("Effective Date")*

Broker Company Name (print): Citywide Realty LLC
Office Address: 6614 S Pulaski Rd
City: Chicago     State: IL     Zip: 60629
Office Phone: 773-498-2524
Office Fax Number: 773-498-2496
Office MLS Identification Number: 84818

Designated Agent Name (print): Mauricio Gonzalez
Designated Agent MLS Identification Number: 110478
Office Address: 6614 S Pulaski Rd
City: Chicago     State: IL     Zip: 60629
Office Phone: 773-498-2524
Agent Direct Line: 773-498-2579
Agent Cell Phone: 773-619-4045
Agent Fax Number: 773-498-2496
Agent Email Address: mauricio@citywide-realty.com

**BROKER'S INFORMATION:**
Seller Initials: [initialed] _____ Seller Initials: _____      Broker Initials: [initialed] _____ Broker Initials: _____

3 of 4

173 GENERAL PROVISIONS:
174   A. **Fair Housing Act.** IT IS ILLEGAL FOR EITHER THE SELLER OR THE BROKER TO REFUSE TO DISPLAY, LIST, LEASE OR SELL, OR REFUSE TO NEGOTIATE FOR THE LEASE OR SALE OF, OR OTHERWISE MAKE UNAVAILABLE OR DENY, REAL ESTATE TO ANY PERSON BECAUSE OF ONE'S MEMBERSHIP IN A PROTECTED CLASS, E.G.: RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, ANCESTRY, AGE, MARITAL STATUS, PHYSICAL OR MENTAL HANDICAP, FAMILIAL STATUS, OR ANY OTHER CLASS PROTECTED BY ARTICLE 3 OF THE ILLINOIS HUMAN RIGHTS ACT. SELLER AND BROKER ACKNOWLEDGE THAT THEY SHALL ALSO BE BOUND BY THE PROVISIONS OF STATE AND LOCAL (CITY AND/OR COUNTY) HUMAN RIGHTS OR FAIR HOUSING ORDINANCES IF ANY AND AGREE TO COMPLY WITH SAME.

  B. **Obligations of Seller.** Seller shall comply with the Real Estate Settlement Procedures Act of 1974, as amended, if applicable, and furnish all information required for compliance with the Act, and, if applicable, Seller agrees to comply with the Residential Real Property Disclosure Act, as amended.

  C. **Illinois Condominium Property Act.** If the property is a condominium, then no later than 15 days from the date of this Agreement, Seller shall furnish to Broker a complete set of condominium documents, including the declaration, bylaws, and if available, a survey. If the Property is a cooperative, then, no later than 15 days from the date hereof Seller shall furnish to broker a complete set of cooperative documents, including the proprietary lease or trust agreement, bylaws, and if available, a survey. If the Property is a townhouse or condominium and dependent upon the condominium association's governing documents, either upon execution of this Agreement or upon Seller's acceptance of an offer by buyer, Seller shall promptly notify the appropriate representative of the condominium association or any affiliated organization of the contemplated transaction. Seller shall furnish to the buyer a statement from an authorized officer or agent of the condominium association certifying payment of assessments for condominium common expenses, and if applicable, proof of waiver or termination of any right of refusal or general option contained in the declaration of condominium together with any other documents required by the declaration of condominium or its bylaws as a precondition to the transfer of ownership. At closing, Seller shall deliver to the buyer all appropriate documents properly endorsed and a survey or plat of the condominium unit showing the location of all improvements of the unit and further showing any parking spaces or garages that will be conveyed. Seller shall comply with all of the conditions and stipulations of the Illinois Condominium Property Act (765 ILCS 605/1 et seq.), as amended, as may be applicable.

  D. **Title.** At least 5 days prior to closing, Seller shall furnish an owner's title insurance policy in the amount of the purchase price showing good and merchantable title, and execute and deliver, or cause to be executed and delivered to the buyer a proper instrument of conveyance.

  E. **Survey.** If the Property is not a condominium or a cooperative, then prior to closing, Seller shall furnish to the buyer at least 5 days prior to closing a survey by a licensed land surveyor dated not more than 6 months prior to date of closing (as defined in the Seller's Real Estate Sale Contract) showing the present location of all improvements on the Property. If the buyer or buyer's mortgagee desires a more recent or extensive survey, then the survey shall be obtained at buyer's expense.

  F. **Lock Box.** Seller hereby authorizes Broker and its agent to place an electronic or combination lock box on the Property in accordance with the terms and conditions of this Agreement for the purpose of keeping a key to the Property for access by cooperating real estate agents. Seller shall hold Broker, its agents, and any Multiple Listing Service of which Broker is a participant harmless from any and all liability, claims, judgments, obligations, or demands against Broker and/or agent as a result of Seller's authorization to use a "Lock Box," including, but not limited to, any and all liabilities and costs, including reasonable attorneys' fees incurred by Broker and/or agents as a result of this authorization, except for any criminal or gross negligence on the part of the Broker and/or agents.

  G. **Seller's Personal Property.** Seller has been advised by Broker of the importance of safeguarding or removing valuables now located within the Property and the need to obtain personal property insurance through Seller's insurance company. If the Property is leased, Seller acknowledges that Seller has in fact notified and advised the tenant/occupant of the foregoing and that the tenant/occupant agrees to the terms and provisions of these Paragraphs F and G of the General Provisions.

  H. **Indemnity.** Seller hereby indemnifies and holds Broker and Broker's agents harmless, from any and all claims, disputes, litigation, judgments, costs and legal fees from the defense of Broker and Broker's agents, including reasonable attorneys' fees and costs, arising from any misrepresentation by the Seller or other incorrect information supplied by the Seller to Broker or any third party.

  I. **Authority.** Seller warrants that Seller has the authority to execute this Agreement and to deal with and on behalf of the Property as provided in this Agreement.

  J. **Broker's Duty.** Broker's sole duty is to use Broker's best efforts to effect a Transfer of Property, and Broker is not charged with the custody of the Property, its management, maintenance, upkeep or repair.

  K. **Disbursement of Earnest Money.** If a dispute arises between Seller and the buyer as to whether a default had occurred, Broker shall hold the earnest money and pay it out as agreed in writing by Seller and the buyer or as directed by a court of competent jurisdiction. In the event of a dispute Seller agrees that Broker may deposit the funds with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Seller agrees that Broker may be reimbursed from the earnest money for all costs, including reasonable attorneys' fees and court costs, related to the filing of the Interpleader and hereby agrees to indemnify and hold Broker harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs and expenses arising out of the default, claims and demands. If Seller defaults, earnest money, at the option of the buyer, and upon written direction by Seller and the buyer or as directed by a Court of competent jurisdiction, shall be refunded to the buyer and Seller shall not be released from any of its obligations under this Agreement. Notwithstanding anything in this Agreement to the contrary, disbursement of earnest money shall be in accordance with the Real Estate License Act, as amended.

  L. **Commission.** No amendment or alteration with respect to the amount of commission or time of payment of commission shall be valid or binding unless made in writing and signed by the parties hereto. Broker's commission is to be paid at time of execution and delivery of deed, option, lease, joint venture agreement, or installment agreement for deed, whichever occurs first, and Broker is authorized to deduct the commission and expenses from the earnest money deposit at time. BROKER IS AUTHORIZED TO ACCEPT AN EARNEST MONEY DEPOSIT FROM THE BUYER. IF THE BUYER DEFAULTS AND SELLER DECLARES A FORFEITURE OF THE EARNEST MONEY, THE EARNEST MONEY SHALL BE APPLIED FIRST TO PAYMENT OF BROKER'S COMMISSION AND ANY EXPENSES INCURRED, AND THE BALANCE SHALL BE PAID TO SELLER, EXCEPT AS OTHERWISE STATED BELOW IN PARAGRAPH "O" OF THE GENERAL PROVISIONS OF THIS AGREEMENT.

  M. **Representation of Multiple Sellers.** Seller understands and agrees that Broker may from time to time represent or assist other sellers who may be interested in selling property to the buyers with whom Broker has a buyer agency contract or with whom Broker is working as a customer. The Seller consents to Broker's representation of other sellers before, during and after the expiration of this Agreement and expressly waives any claims, including, but not limited to, breach of fiduciary duty or breach of contract, based solely upon Broker's representation or assistance of other sellers who may be interested in selling property to the buyers with whom Broker has a buyer agency contract or with whom Broker is working as a customer.

  N. **Cancellation of Agreement.** In the event this Agreement is cancelled by Seller pursuant to the terms of this Agreement, unless mutually agreed to in writing by Broker and Seller, Seller shall pay to Broker, upon written demand by Broker within 4 business days of the written demand, reimbursement of Broker's out-of-pocket expenses, including but not limited to: marketing, advertising, office expenses, Multiple Listing Service (MLS) fees, printing, attorneys' fees and court costs. The amount of Broker's out-of-pocket expenses shall be determined solely by Broker. In cases of the Seller's breach of this Agreement, Seller shall pay to Broker the commission or compensation previously described within this Agreement payable on the Transfer of Property to compensate Broker for Broker's time, expenses and services involved in marketing the Property.

  O. **Dispute Resolution.** The parties agree that any dispute, controversy or claim arising out of or relating to this Agreement, or any breach of this Agreement by either party, shall be resolved by arbitration in accordance with the Code of Ethics and Arbitration Manual of the National Association of REALTORS, as amended from time to time, through the facility of the Chicago Association of REALTORS. The parties agree to be bound by any award rendered by any professional standards arbitration hearing panel of the Chicago Association of REALTORS and further agree that judgment upon any award rendered by a professional standards arbitration hearing panel of the Chicago Association of REALTORS may be entered in any court having jurisdiction. The parties agree to execute any arbitration agreements, consents and documents as may be required by the Chicago Association of REALTORS to facilitate any arbitration.

  P. **Miscellaneous.**
  (1) Where applicable, the singular form shall include the plural, and the masculine form shall include the feminine and neuter, and vice versa.
  (2) This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, and assigns of the parties to this Agreement.
  (3) Any reference in this Agreement to "day" or "days" shall mean business days, not calendar days, including Monday, Tuesday, Wednesday, Thursday, and Friday and excluding all official federal and state holidays. #2314131_v13

Seller Initials:_____ Seller Initials:_____      Broker Initials: /MH/ Broker Initials:_____

4 of 4



# ILLINOIS ASSOCIATION OF REALTORS®
# DISCLOSURE OF INFORMATION ON RADON HAZARDS
### (For Residential Real Property Sales or Purchases)



**Radon Warning Statement**
*Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.*

*The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.*

**Seller's Disclosure (initial each of the following which applies)**

_____ (a) Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain).

_____ (b) Seller has provided the purchaser with the most current records and reports pertaining to elevated radon concentrations within the dwelling.

_[initialed]_ (c) Seller either has no knowledge of elevated radon concentrations in the dwelling or prior elevated radon concentrations have been mitigated or remediated.

_[initialed]_ (d) Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment (initial each of the following which applies)**

_____ (e) Purchaser has received copies of all information listed above.

_____ (f) Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's Acknowledgement (initial IF APPLICABLE)**

_[initialed]_ (g) Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she has provided is true and accurate.

Seller _[signed]_                                              Date  1/12/24
Seller _____                          Date _____
Purchaser _____                          Date _____
Purchaser _____                          Date _____
Agent _____                          Date _____
Agent _[signed]_____                         Date  1-12-24

Property Address: 3122 Emery Ln
City, State, Zip Code: Robbins, IL 60472

FORM 422 (6/14/13) COPYRIGHT ILLINOIS ASSOCIATION OF REALTORS®                    1/1

 

## CHICAGO ASSOCIATION OF REALTORS®
## DISCLOSURE OF INFORMATION AND ACKNOWLEDGEMENT
## LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

*Lead Warning Statement*

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

*Seller's Disclosure (initial) (All Sellers should initial)*

_____ (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

_____ ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):
_____

☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____ (b) Records and Reports available to the seller (check one below):

_____ ☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based hazards in the housing (list documents below):
_____

☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

*Purchaser's Acknowledgement (initial) (All Purchasers should initial)*

_____ (c) Purchaser has received copies of all information listed above.

_____ (d) Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home*.

_____ (e) Purchaser has (check one below):

☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

*Agent's Acknowledgement (initial) (Seller's Designated Agent)*

_____ (f) Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852 d and is aware of his/her responsibility to ensure compliance.

*Certification of Accuracy*

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

Seller _____ Date 1/12/24    Seller _____ Date _____

Purchaser _____ Date _____    Purchaser _____ Date _____

Agent _____ Date 1-12-24    Agent _____ Date _____

Location of Property 3122 Emery Ln    City Robbins    State IL    Zip Code 60472

**Keep a fully executed copy of this document for three (3) years from the date hereof.
This Disclosure From should be attached to the Real Estate Sale Contract.**

Phone:    Fax:

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035, (800) 383-9805 www.zipform.com

  

ILLINOIS REALTORS

# Illinois REALTORS®
## RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT
### (765 ILCS 77/35)

NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY BEFORE THE SIGNING OF A CONTRACT. THIS REPORT DOES NOT LIMIT THE PARTIES' RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW, SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY THE SELLER CREATES LEGAL OBLIGATIONS ON THE SELLER; THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address: 3122 Emery Lane

City, State & Zip Code: Robbins, IL 60472

Seller's Name: 2nd Chance Investment Group LLC

This Report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of Jan 12, 20 24. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form, a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes" (correct), "no" (incorrect), or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation in the additional information area of this form.

|   | YES | NO | N/A |   |
|---|---|---|---|---|
| 1. | ☐ | ☒ | ☐ | Seller has occupied the property within the last 12 months. (If "no," please identify capacity or explain relationship to property.) **Property was an investment** |
| 2. | ☐ | ☒ | ☐ | I currently have flood hazard insurance on the property. |
| 3. | ☐ | ☒ | ☐ | I am aware of flooding or recurring leakage problems in the crawl space or basement. |
| 4. | ☐ | ☒ | ☐ | I am aware that the property is located in a floodplain. |
| 5. | ☐ | ☒ | ☐ | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 6. | ☐ | ☒ | ☐ | I am aware of leaks or material defects in the roof, ceilings, or chimney. |
| 7. | ☐ | ☒ | ☐ | I am aware of material defects in the walls, windows, doors, or floors. |
| 8. | ☐ | ☒ | ☐ | I am aware of material defects in the electrical system. |
| 9. | ☐ | ☒ | ☐ | I am aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 10. | ☐ | ☒ | ☐ | I am aware of material defects in the well or well equipment. |
| 11. | ☐ | ☒ | ☐ | I am aware of unsafe conditions in the drinking water. |
| 12. | ☐ | ☒ | ☐ | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 13. | ☐ | ☒ | ☐ | I am aware of material defects in the fireplace or wood burning stove. |
| 14. | ☐ | ☒ | ☐ | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 15. | ☐ | ☒ | ☐ | I am aware of unsafe concentrations of radon on the premises. |
| 16. | ☐ | ☒ | ☐ | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 17. | ☐ | ☒ | ☐ | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 18. | ☐ | ☒ | ☐ | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 19. | ☐ | ☒ | ☐ | I am aware of current infestations of termites or other wood boring insects. |
| 20. | ☐ | ☒ | ☐ | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 21. | ☐ | ☒ | ☐ | I am aware of underground fuel storage tanks on the property. |
| 22. | ☐ | ☒ | ☐ | I am aware of boundary or lot line disputes. |
| 23. | ☐ | ☒ | ☐ | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |
| 24. | ☐ | ☒ | ☐ | I am aware that this property has been used for the manufacture of methamphetamine as defined in Section 10 of the Methamphetamine Control and Community Protection Act. |

FORM 108 (08/2023) COPYRIGHT ILLINOIS REALTORS®    Page 1 of 4

Note: These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary: _____

_____
_____
_____
_____

Check here if additional pages used: ☐

Seller certifies that seller has prepared this report and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

THE SELLER ACKNOWLEDGES THAT THE SELLER IS REQUIRED TO PROVIDE THIS DISCLOSURE REPORT TO THE PROSPECTIVE BUYER BEFORE THE SIGNING OF THE CONTRACT AND HAS A CONTINUING OBLIGATION, PURSUANT TO SECTION 30 OF THE RESIDENTIAL REAL PROPERTY DISCLOSURE ACT, TO SUPPLEMENT THIS DISCLOSURE PRIOR TO CLOSING.

Seller: _[signature]_____ Date: _1/12/24_

Seller: _____ Date: _____

THE PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. THE PROSPECTIVE BUYER IS AWARE THAT THE PROSPECTIVE BUYER MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: _____ Date: _____ Time: _____

Prospective Buyer: _____ Date: _____ Time: _____

A COPY OF SECTIONS 5 THROUGH 65 OF ARTICLE 2 OF THE RESIDENTIAL REAL PROPERTY DISCLOSURE ACT IS AFFIXED HERETO AND SHOULD BE REVIEWED BY PROSPECTIVE BUYER.

# RESIDENTIAL REAL PROPERTY DISCLOSURE ACT
## ARTICLE 2: DISCLOSURES
### 765 ILCS 77/5 et seq.

**Section 5. Definitions:** As used in this Act, unless the context otherwise requires the following terms have the meaning given in this section:

"**Residential real property**" means real property improved with not less than one nor more than four residential dwelling units: units in residential cooperatives; or, condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit. The term includes a manufactured home as defined in subdivision (53) of Section 9-102 of the Uniform Commercial Code that is real property as defined in the Conveyance and Encumbrance of Manufactured Homes as Real Property and Severance Act.

"**Seller**" means every person or entity who:
(1) is a beneficiary of an Illinois land trust; or
(2) has an interest, legal or equitable, in residential real property as:
    i.   an owner;
    ii.  a beneficiary of a trust;
    iii. a beneficiary pursuant to testate disposition, intestate succession, or a transfer on death instrument; or
    iv. a contract purchaser or lessee of a ground lease.

"Seller" does not include a party to a transfer that is exempt under Section 15 or a beneficiary who has both (i) never occupied the residential real property and (ii) never had management responsibility for the residential real property.

"**Prospective buyer**" means any person or entity negotiating or offering to become an owner or lessee of a ground lease of residential real property by means of a transfer for value to which this Act applies.

"**Contract**" means a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

**Section 10. Applicability.** Except as provided in Section 15, this Act applies to any transfer by sale, exchange, installment land sale-contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease of residential real property.

**Section 15. Seller Exemptions.** A seller in any of the following transfers is exempt from this Act, regardless of whether a disclosure report is delivered:

(1) Transfers pursuant to court order, including, but not limited to, transfers ordered by a probate court in administration of an estate, transfers between spouses resulting from a judgment of dissolution of marriage or legal separation, transfers pursuant to an order of possession, transfers by a trustee in bankruptcy, transfers by eminent domain and transfers resulting from a decree for specific performance.

(2) Transfers from a mortgagor to a mortgagee by deed in lieu of foreclosure or consent judgment, transfer by judicial deed issued pursuant to a foreclosure sale to the successful bidder or the assignee of a certificate of sale, transfer by a collateral assignment of a beneficial interest of a land trust, or a transfer by a mortgagee or a successor in interest to the mortgagee's secured position or a beneficiary under a deed in trust who has acquired the real property by deed in lieu of foreclosure, consent judgment or judicial deed issued pursuant to a foreclosure sale.

(3) Transfers by a fiduciary in the course of the administration of a decedent's estate, guardianship, conservatorship, or trust. As used in this paragraph, "trust" includes an Illinois land trust.

(4) Transfers from one co-owner to one or more other co-owners.

(5) Transfers from a decedent pursuant to testate disposition, intestate succession, or a transfer on death instrument.

(6) Transfers made to a spouse, or to a person or persons in the lineal line of consanguinity of one or more of the sellers.

(7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure report furnished to the entity by the seller.

(8) Transfers to or from any governmental entity.

(9) Transfers of newly constructed residential real property that has never been occupied. This does not include rehabilitation of existing residential real property.

**Section 20. Disclosure Report Requirements.** A seller of residential real property shall complete all items in the disclosure report described in Section 35. The seller shall deliver to the prospective buyer the written disclosure report required by this Act before the signing of a contract.

**Section 25. Liability of seller.**

(a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected, or (iii) the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy, or omission.

(b) The seller shall disclose material defects of which the seller has actual knowledge.

(c) The seller is not obligated by this Act to make any specific investigation or inquiry in an effort to complete the disclosure statement.

**Section 30. Disclosure report supplement.** If, prior to closing, any seller becomes aware of an error, inaccuracy, or omission in any prior disclosure report or supplement after delivery of that disclosure report or supplement to a prospective buyer, that seller shall supplement the prior disclosure report or supplement with a written supplemental disclosure, delivered by any method set forth in Section 50.

**Section 35. Disclosure report form.** . . . [omitted]

**Section 40. Material defect.**

(a) If a seller discloses a material defect in the Residential Real Property Disclosure Report, including a response to any statement that is answered "yes" except numbers 1 and 2, and, in violation of Section 20, it is delivered to the prospective buyer after all parties have signed a contract, the prospective buyer, within 5 business days after receipt of that report, may terminate the contract or other agreement with the return of all earnest money deposits or down payments paid by the prospective buyer in the transaction without any liability to or recourse by the seller.

(b) If a seller discloses a material defect in a supplement to this disclosure report, the prospective buyer shall not have a right to terminate unless:

(i) the material defect results from an error, inaccuracy, or omission of which the seller had actual knowledge at the time the prior disclosure was completed and signed by the seller; (ii) the material defect is not repairable prior to closing; or (iii) the material defect is repairable

prior to closing, but within 5 business days after the delivery of the supplemental disclosure, the seller declines, or otherwise fails to agree in writing, to repair the material defect.

(c) The right to terminate the contract, however, shall no longer exist after the conveyance of the residential real property. For purposes of this Act the termination shall be deemed to be made when written notice of termination is delivered to at least one of the sellers by any method set forth in Section 50, at the contact information provided by any seller or indicated in the contract or other agreement. Nothing in subsection (a) or (b) shall limit the remedies available under the contract or Section 55.

**Section 45. Other Law.** This Act is not intended to limit remedies or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction.

**Section 50. Delivery of disclosure report.** Delivery of the Residential Real Property Disclosure Report provided by this Act shall be by:

(1) personal delivery or facsimile, email, or other electronic delivery to the prospective buyer at the contact information provided by the prospective buyer or indicated in the contract or other agreement;

(2) depositing the report with the United States Postal Service, postage prepaid, first class mail, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement; or

(3) depositing the report with an alternative delivery service such as Federal Express or UPS, delivery charges prepaid, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement.

For purposes of this Act, delivery to one prospective buyer is deemed delivery to all prospective buyers. Delivery to an authorized individual acting on behalf of a prospective buyer constitutes delivery to all prospective buyers. Delivery of the Report is effective upon receipt by the prospective buyer. Receipt may be acknowledged on the Report, in an agreement for the conveyance of the residential real property, or shown in any other verifiable manner.

**Section 55. Violations and damages.** If the seller fails or refuses to provide the disclosure report prior to the conveyance of the residential real property, the prospective buyer shall have the right to terminate the contract. A seller who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that the seller knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney's fees incurred by the prevailing party.

**Section 60. Limitation of Action.** No action for violation of this Act may be commenced later than one year from the earlier of the date of possession, date of occupancy or date of recording of an instrument of conveyance of the residential real property.

**Section 65. Disclosure Report Form; Contents; Copy of Act.** A copy of Sections 5 through 65 of Article 2 of this Act, excluding Section 35, must be printed on or as a part of the Residential Real Property Disclosure Report form.

Date provided to Buyer: _____

Seller: _____

FORM 108 (08/2023) COPYRIGHT ILLINOIS REALTORS®    Page 4 of 4

EXHIBIT 2

Case 8:22-bk-12142-SC    Doc 362    Filed 01/26/24    Entered 01/26/24 18:34:39    Desc
Main Document    Page 19 of 20

# CITYWIDE REALTY
## The Customer First

**6614 S Pulaski Rd Chicago, Illinois, 60629. T: 773-498-2524 F: 773-498-2496**

To Whom It May Concern:

RE: Details of Mauricio Gonzalez's qualifications and training.

- Realtor / Licensed since 2001
- Completed courses in Certified Distress Property Specialist, Certified Negotiator, and Short Sale.
- Became a Managing Broker in 2011 and Opened Citywide Realty LLC.
- I was the listing agent for TCF National Bank for the Chicagoland area from 2009-2021 selling hundreds of distressed properties.
- I was a Listing agent for Freddie Mac from 2012-2016
- I am currently the Listing agent for The Huntington National Bank for the Greater Chicagoland area.
- I have received the "Top 1%" Award from the Chicago Association of Realtors since 2009
- I have been a Union Carpenter since 1999
- I have been involved in Bankruptcy Proceeding, relating to the sale of Real Estate since 2018
- I have many years of experience dealing with distressed properties, it's my specialty.
- I am fluent in Spanish